CHRISTOPHER SPROUL
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Tel: (415) 533-3376, Fax: (415) 358-5695
Email:    csproul@enviroadvocates.com

LEA HONG            5558-0
ALSTON HUNT FLOYD & ING
Attorneys At Law,
A Law Corporation
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Tel: (808) 524-1800, Fax: (808) 524-5976
Email:    lea@ahfi.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 4 2005

at ___6 o'clock and ___min.___M
SUE BEITIA, CLERK

Attorneys for Plaintiffs
SIERRA CLUB, HAWAI'I CHAPTER,
HAWAI'I'S THOUSAND FRIENDS
and OUR CHILDREN'S EARTH FOUNDATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF HONOLULU and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity, | Civil No. 04-00463 DAE/BMK <br><br> **PLAINTIFFS' MOTION FOR RECONSIDERATION** <br> (continued on next page) <br><br> **HEARING:** <br> Date: April 4, 2005 <br> Judge: Hon. David A. Ezra <br> Order Entered: 9/30/05 <br><br> **(NON-HEARING MOTION)** |

**EXHIBIT A**

Defendants.

)  **OF ORDER FILED**
)  **SEPTEMBER 30, 2005**
)  **REGARDING PLAINTIFFS'**
)  **MOTION FOR PARTIAL**
)  **SUMMARY JUDGMENT ON**
)  **PLAINTIFFS' THIRD AND**
)  **FOURTH CLAIMS;**
)  **MEMORANDUM IN**
)  **SUPPORT OF MOTION;**
)  **CERTIFICATE OF**
)  **COUNSEL; DECLARATION**
)  **OF LEA HONG; EXHIBITS**
)  **A and B; CERTIFICATE OF**
)  **SERVICE**
)

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF
ORDER FILED SEPTEMBER 30, 2005 REGARDING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
PLAINTIFFS' THIRD AND FOURTH CLAIMS**

Plaintiffs Sierra Club, Hawai'i Chapter, Hawai'i's Thousand Friends,

and Our Children's Earth Foundation (collectively, "Plaintiffs") move for

reconsideration of the Court's Order filed September 30, 2005 regarding

Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third And Fourth

Claims.

This Motion is based upon Rules 7, 56, 59, and 60 of the Federal

Rules of Civil Procedure; Rule 60.1 of the Rules of the United States District

Court for the District of Hawai'i; the attached memorandum, declarations, and

exhibits; and the files and records herein.

DATED: Honolulu, Hawai'i, October 14, 2005.

CHRISTOPHER SPROUL
ENVIRONMENTAL ADVOCATES

LEA HONG
ALSTON HUNT FLOYD & ING
Attorneys for Plaintiffs SIERRA CLUB,
HAWAI'I CHAPTER, HAWAI'I
THOUSAND FRIENDS, and OUR
CHILDREN'S EARTH FOUNDATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF HONOLULU and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity,<br><br>        Defendants. | Civil No. 04-00463 DAE/BMK<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

593251/7502-1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STANDARD OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Reconsideration Is Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   Summary Judgment In Plaintiffs' Favor Is Appropriate on
          Plaintiffs' Third Claim.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          1.   Count Three - NPDES Permit Violations For Enterococcus
               Average Daily Maximum (741 violations - no dispute). . . . . . 9

          2.   Count Three - NPDES Permit Violations For Dieldrin
               Maximum Daily Mass Limit (62 or 2 violations). . . . . . . . . 10

          3.   Count 3 - NPDES Permit Violations For Dieldrin Maximum
               Daily Concentration (31 violations or 1 violation). . . . . . . . 12

          4.   Count 3 - NPDES Permit Violations Of Dieldrin Average
               Annual Concentration (1,890 or 58 violations).  . . . . . . . . . 13

          5.   Count Three - NPDES Permit Violations For Dieldrin Average
               Annual Mass Limit (1,890 or 51 violations). . . . . . . . . . . . 14

          6.   Count Three - NPDES Permit Violations of Chlordane Average
               Annual Concentration (1,890 or 58 violations).  . . . . . . . . . 15

          7.   Count Three - NPDES Permit Violations of Chlordane Average
               Annual Mass Limit (1,890 or 58 violations). . . . . . . . . . . . 15

8.    Count Three - NPDES Permit Violations For BOD Average
      Monthly Removal Efficiency (123 or 4 violations).  . . . . . . . 16

9.    Count Three - NPDES Permit Violations For BOD Average
      Monthly Concentration (33 or 2 violations). . . . . . . . . . . . 17

10.   Count Three - NPDES Permit Violations For TSS Average
      Monthly Removal Efficiency (62 or 2 violations).  . . . . . . . . 18

C.    Summary Judgment On Plaintiffs' Fourth Claim (Disinfection
      Facility) Is Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................ 1

*Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128
(11th Cir. 1990) ...................................................................................... 8

*Bayview Hunters Point Community Advocates v. Metropolitan Transportation
Commission*, 177 F. Supp. 2d 1011 (N.D. Cal. 2001), *rev'd on other grounds*,
366 F.3d 692 (9th Cir. 2004) .................................................................. 20

*Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, 261 F.3d 810
(9th Cir. 2001), *aff'd* 537 U.S. 99 (2002) ........................................... 2, 21

*Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*,
791 F.2d 304 (4th Cir. 1986), *vacated on other grounds*, 484 U.S. 49 (1987) ...... 11

*EPA v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir. 1990), *cert. denied*,
502 U.S. 956 (1991) ................................................................................ 8

*Fisher v. Nt'l R.R. Passenger Corp.*, 152 F.R.D. 145 (S.D. Ind. 1993) ............... 4, 5

*Greenpeace Foundation Center for Biological Diversity v. Evans*,
Civil No. 00-00068, *SPK-KSC*, 2001 U.S. Dist. LEXIS 23062
(D. Haw. June 14, 2001) ......................................................................... 4

*Hawaii's Thousand Friends v. City & County of Honolulu*, 821 F. Supp. 1368
(D. Haw. 1993) ................................................................................... 2, 11

*John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82 (1922) ............................. 5

*Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990),
*cert. denied*, 510 U.S. 859 (1993) .......................................................... 4

*Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1 (1943) ................... 5

*Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333 (D. Del. 1995) .... 4

*Molokai Chamber of Commerce v. Kukui (Molokai), Inc.*, 891 F. Supp. 1389
(D. Haw. 1995) ................................................................................... 20

*Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985
(9th Cir. 2000) .................................................................................. 19

*Nishimoto v. Federman-Bachrach & Associates*, 903 F.2d 709 (9th Cir. 1990) ..... 2

*Or. State Public Int. Res. Group, Inc. v. Pacific Coast Seafoods Co.*,
361 F. Supp. 2d 1232 (D. Or. 2005) ....................................................... 11

*Public Int. Res. Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*,
913 F.2d 64 (3d Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991) ........................... 8

*Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098
(D. Haw. 1994) ............................................................................... 2, 8

*Sierra Club v. Union Oil Co. of California*, 813 F.2d 1480 (9th Cir. 1987),
*vac'd on other grounds*, 485 U.S. 931 (1988), *reinstated*, 853 F.2d 667
(9th Cir. 1988) .................................................................................. 8

*United States v. Allegheny Ludlum Corp.*, 366 F.3d 164 (3d Cir. 2004) .............. 11

*United States v. Amoco Oil Co.*, 580 F. Supp. 1042 (W.D. Mo. 1984) .................. 8

*United States v. Trident Seafoods Corporation*, 60 F.3d 556 (9th Cir. 1995),
*cert. denied,* 519 U.S. 1109 (1997) ....................................................... 20

*University of Colo. Foundation Inc. v. America Cyanamid Co.*,
902 F. Supp. 221 (D. Colo. 1995), *vac'd on other grounds*, 196 F.3d 1366
(Fed. Cir. 1999) ................................................................................. 4

*Wanamaker v. Columbian Rope Co.*, 907 F. Supp. 522 (N.D.N.Y. 1995),
*aff'd*, 108 F.3d 462 (2d Cir. 1997) .......................................................... 5

*Zimzores v. Veterans Admin.*, 778 F.2d 264 (5th Cir. 1985) .................................. 4

## FEDERAL STATUTES & RULES

33 U.S.C. § 1319(d) ............................................................................ 8

Fed. R. Civ. P. 7 ................................................................................ 4

Fed. R. Civ. P. 56 .............................................................................. 4

Fed. R. Civ. P. 59 ................................................................ 4

Fed. R. Civ. P. 59(e) ........................................................... 4

Fed. R. Civ. P. 60.1 ......................................................... 3, 4

Fed. R. Civ. P. 60(b)(1), (6) .............................................. 4

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiffs Sierra Club, Hawai'i Chapter, Hawai'i's Thousand Friends, and Our Children's Earth Foundation (collectively, "Plaintiffs") move for reconsideration of the Court's Order filed September 30, 2005 ("Order") denying Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third and Fourth Claims.   Plaintiff's Third Claim asserts that Defendant City and County of Honolulu ("CCH") violated the numeric effluent limitations in its Sand Island WWTP[1] NPDES [2] permit.  Plaintiffs' Fourth claim alleges that CCH has not constructed disinfection facility required by the Sand Island WWTP NPDES permit.

CCH admits that it has committed violations of the Clean Water Act ("CWA") under Plaintiffs' Third and Fourth Claims.  *See* Plaintiffs' Overcount Violations Table ("CCH Table"), attached hereto as Exhibit A.  Plaintiffs and CCH disagree on a single issue:  How to count the number of violations.   This is a purely legal issue that can and should be decided now to avoid additional costly litigation and waste of judicial resources.   It is appropriate that this Court resolve purely legal issues and grant summary judgment.  *See, e.g.,  Anderson v. Liberty*

---

[1]  Wastewater Treatment Plant ("WWTP").

[2] National Pollution Discharge Elimination System ("NPDES").

*Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 716 (9th Cir. 1990).

With respect to Plaintiffs Third claim, Plaintiffs and CCH disagree on how to count violations for representative periods or average periods (e.g., monthly averages or yearly averages). Based on controlling Ninth Circuit precedent and this Court's prior ruling in similar citizens' suits, Plaintiffs contend that, for example, a violation of a monthly average is a violation of every day of the month (28-31 violations). *See, e.g., Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, 261 F.3d 810, 817 (9th Cir. 2001), *aff'd* 537 U.S. 99 (2002) ("*Borden Ranch P'ship*"); *Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098, 1125 (D. Haw. 1994) ("*SOBB*"); *Hawai'i's Thousand Friends v. City & County of Honolulu*, 821 F. Supp. 1368, 1393-94 (D. Haw. 1993) ("*HTF*"). CCH argues that this Court should reject the Ninth Circuit's and this Court's prior decisions and count a violation of a representative period or average period as a single violation.

With respect to Plaintiffs' Fourth claim, CCH admits that it did not build the required disinfection facility by July 1, 2002, the date mandated in the Sand Island WWTP NPDES permit, and that to date, the disinfection facility has not been completed. Plaintiffs contended that CCH's failure to build and operate the disinfection facility was a continuing violation of the CWA that subjected

CCH to additional violations for each day the required facility remains un-built

and non-operational. CCH contends that this is a one-time violation, and that it is

subject to no further penalty even if the facility is <u>never</u> built.

Finally, the Court's Order appears to treat Plaintiffs' Third, Fourth

<u>and</u> Twelfth claims (expiration of Sand Island WWTP NPDES permit)

collectively. *See* Order at 21-22. However, the claims are separate and stand

alone. Plaintiffs offered violation calculations for two scenarios for their Third

and Fourth Claims: (a) a total of 7,482 violations if the Sand Island Wastewater

Treatment Plant's ("WWTP's") NPDES permit had expired, or (b) a total of 9,513

violations if the Sand Island WWTP's NPDES permit had <u>NOT</u> expired. *See*

Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary

Judgment on Plaintiffs' Third, Fourth, Eighth and Twelfth Claims filed March 18,

2005 ("Plaintiffs' Reply"), at 19-21. Under either scenario, violations occurred,

which CCH does not dispute. Again, the only dispute is how to count the

violations -- a purely legal issue. Accordingly, Plaintiffs respectfully request that

this Court reconsider their request for summary judgment on their Third and

Fourth Claims.

## II.    STANDARD OF REVIEW

Rule 60.1 of the Rules of the United States District Court for the

District of Hawai'i ("Local Rules") authorizes a district court to reconsider its

previous orders whenever it becomes clear that a manifest error of law or fact has

been made.  Local Rule 60.1; *see also* Fed. R. Civ. P. 60(b)(1), (6) (allowing

reconsideration for "mistake" and "any other reason justifying relief"), 59(e)

(allowing the court to alter or amend a judgment); *Univ. of Colo. Found. Inc. v.*

*Am. Cyanamid Co.*, 902 F. Supp. 221, 222 (D. Colo. 1995), *vac'd on other*

*grounds*, 196 F.3d 1366 (Fed. Cir. 1999) (FRCP 59(e) reconsideration appropriate

when court has misunderstood a party or has made mistake of apprehension rather

than reasoning).[3]

In addition, courts have the inherent power to reconsider their

interlocutory orders and reopen any part of a case *for any reason* before entry of

final judgment.  *See Fisher v. Nt'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149

(S.D. Ind. 1993) ("this authority is not predicated on any federal rule, but emanates

from the inherent power of the court."); *Lavespere v. Niagara Mach. & Tool*

*Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993)

("trial court is free to reconsider [an interlocutory order] and reverse its decision

---

[3] *See also Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)
(errors of fact or law are sufficient reasons to grant reconsideration); *Mobil Oil
Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1377 (D. Del. 1995) (granting
FRCP 59(e) reconsideration to avoid manifest injustice); *Greenpeace Found.
Center for Biological Diversity v. Evans*, Civil No. 00-00068 SPK-KSC, 2001
U.S.Dist LEXIS 23062, *1, *7 (D. Haw. June 14, 2001) (granting reconsideration
under Local Rule 60.1 where order was inconsistent with defendants' admission of
receiving adequate notice).

for any reason it deems sufficient, even in the absence of new evidence or an

intervening change in or clarification of the substantive law").[4] Courts have

"practically unbridled discretion" to review their interlocutory orders any time

before entry of final judgment. *Fisher*, 152 F.R.D. at 149. Therefore, "[n]ot only

is a motion to reconsider an allowable method of reviewing a prior order, it is the

most appropriate and advantageous method of seeking relief from an interlocutory

order for a party to pursue." *Id.*

## III.    ARGUMENT

### A.    Reconsideration Is Appropriate.

The Court's Order appears to treat Plaintiffs' Third, Fourth, and

Twelfth claims collectively. Because the Court denied Plaintiffs' Twelfth claim

(permit expiration), the Court apparently believed it was compelled to deny

Plaintiffs Third and Fourth claims. *See* Order at 21-22.[5] However, Plaintiffs'

---

[4] *See also Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943) (it is well established that a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment); *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 90-91 (1922) ("if an interlocutory decree be involved, a rehearing may be sought at any time before final decree"); *Wanamaker v. Columbian Rope Co.*, 907 F. Supp. 522, 527 (N.D.N.Y. 1995) ("It is within the plenary power of the court to review its interlocutory orders to afford such relief from them as justice requires") (internal quotation marks and citation omitted), *aff'd*, 108 F.3d 462 (2d Cir. 1997).

[5] "Plaintiffs ask the Court to find, specifically, that CCH lost NPDES permit authorization to discharge from the Sand Island WWTP when the Sand Island Permit expired on November 3, 2003. Plaintiffs request the Court to further

Third and Fourth claims are not dependent upon the Twelfth claim. Throughout

Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third, Fourth,

Eighth, and Twelfth Claims filed January 6, 2005 ("MSJ") and reply

memorandum, Plaintiffs offered two alternative calculations for the each claim:

    a.    the number of violations if the Sand Island permit had expired; **OR**

    b.    the number of violations if the Sand Island permit had **NOT** expired.

The following table illustrates the alternate calculations.[6]

| Claim | Number of Violations If Permit Had Expired 11/03/03 | Number of Violations If Permit Had NOT Expired |
|---|---|---|
| **Third** - NPDES permit violations for enterococcus, pesticides, BOD & TSS | 7,011 (5/30/99-11/3/03) | 8,613 (5/30/99-7/31/04) |
| **Fourth** - NPDES permit violations for capital improvements | 471 (no disinfection facility 7/21/02-11/3/03) | 900 (no disinfection facility 7/21/02-1/5/05) |
| **TOTAL** | 7,482 | 9,513 |

---

declare that CCH has committed a sum total of 13,916 CW violations as a result of this lost authorization."

"While CCH acknowledges that . . . it has not achieved full compliance with the terms of its Sand Island NPDES Permit, the Court finds that there are material factual disputes that cannot be resolved and [sic] this juncture in the case regarding the number of times and the extent to which the CWA has been violated in relation to the Sand Island NPDES Permit." Order at 21-22.

[6] The table summarizes the calculations in Plaintiffs' Reply, at 19-21; Exhibit 80 to the Declaration of Patricia Nelson filed January 11, 2005 ("1/11/05 Nelson Decl."); Exhibit 90 to the Declaration of Patricia Nelson filed March 31, 2005 ("3/31/05 Nelson Decl."), ¶ 6 at 3.

Thus, even if the Court denied summary judgment on Plaintiffs'
Twelfth claim regarding permit expiration, Plaintiffs' Third and Fourth claims
were still alive, alleging 9,513 violations. Regardless of the outcome on the
Twelfth claim, CCH admits that it committed at least 978 violations (*see* CCH's
Table, attached hereto as Exhibit A). CCH argues only that Plaintiffs' methods of
counting violations are incorrect (e.g., whether violations of average limits should
include each day of the averaged period or be counted as a single violation, or
whether certain violations are continuing violations). These are purely legal
questions for which additional discovery would not be useful. With all due
respect to this Court, an error occurred, reconsideration is merited, and summary
judgment in Plaintiffs' favor on Plaintiffs' Third and Fourth claims is appropriate.

**B.    Summary Judgment In Plaintiffs' Favor Is Appropriate on
Plaintiffs' Third Claim.**

In their Third claim, Plaintiffs alleged 8,613 violations of CCH's
Sand Island WWTP's NPDES permit effluent limitations, even if the Court found
the permit had NOT expired (*i.e.*, if their Twelfth claim were denied). *See* Table,
*supra*.[7] In response, CCH admits that it committed at least 977 violations under

_____

[7]Plaintiffs' Third Claim was based on CCH's own Discharge Monitoring
Reports ("DMRs) which CCH is required to submit to the EPA and the Hawai'i
Department of Health under penalty of perjury. *See* DMRs attached to as Exhibit
90 to the 3/31/05 Nelson Decl. CCH cannot and does not dispute the accuracy of
its DMRs, or the tables summarizing the DMRs. *See* Tables attached to 3/31/05
Nelson Decl.; Exhibit 80 to 1/11/05 Nelson Decl. DMRS are "to be considered . .

Plaintiffs' Third claim. *See* CCH's Table (rows 1-10), attached here to as Exhibit A. The remaining dispute is legal -- whether measurements taken for representative periods (e.g., monthly or annual averages) should be counted as:

    a.    a single violation for that period (one violation per month or per year); or

    b.    a violation for every day in the period (all the days in the month or 365 days for the year).

Plaintiffs based their method of counting violations on Ninth Circuit precedent and this Court's decisions in similar citizen suit actions finding that a violation for a representative period (*e.g.*, a monthly average) should be counted as a violation for each day of the period (for a month, 28-31 violations).[8]  CCH argues that this

---

. conclusive evidence of an exceedance of a permit limitation. *Sierra Club v. Union Oil Co. of California*, 813 F.2d 1480, 1492 (9th Cir. 1987), *vac'd on other grounds*, 485 U.S. 931 (1988), *reinstated*, 853 F.2d 667 (9th Cir. 1988) ("*Union Oil*"). This Court has pointed out: "Because these reports are submitted under penalty of perjury, they constitute admissions of noncompliance which bind the defendant." *SOBB*, 904 F. Supp. at 1138. Allowing a defendant to impeach its own DMRs "would be sanctioning countless hours of NPDES litigation and creating new, complicated factual questions for district courts to resolve." *Union Oil*, 813 F.2d at 1492.

[8]*See* cases cited, *supra*, at p. 2; *see also* 33 U.S.C. § 1319(d) (imposing a maximum penalty "per day for each violation"); *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1137-38 (11th Cir. 1990);  *EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1407 (8th Cir. 1990), *cert. denied*, 502 U.S. 956 (1991);  *Pub. Int. Res. Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 78-79 (3d Cir. 1990) (it is not double counting to find that a single reported exceedance violated both the seven-day discharge limit and the thirty-day discharge limit for that pollutant), *cert. denied*, 498 U.S. 1109 (1991); *United States v. Amoco Oil Co.*, 580 F. Supp. 1042, 1045 (W.D. Mo. 1984)

Court should reject its prior decisions and count only a single violation per representative period.   A table summarizing the parties' respective violation calculations is attached hereto as Exhibit B.

      **1.**    **Count Three - NPDES Permit Violations For Enterococcus Average Daily Maximum (741 violations - no dispute).**

      Plaintiffs alleged 741 violations of the NPDES permit's daily maximum enterococcus limit, even if the permit was administratively extended. *See* Exhibit 80 (Table 1 at 28793-94) to 1/11/05 Nelson Decl.; Plaintiffs' Separate and Concise Statement of Facts filed January 11, 2005, ¶ 15 ("Plaintiffs' 1/11/05 Facts").  CCH does not dispute that it committed these violations. *See* CCH Table (row 1), attached hereto as Exhibit A; Defendants' Opposition to Plaintiffs' 1/11/05 Facts filed February 28, 2005 ("CCH's 2/28/05 Facts"), ¶ 15 (citing Declaration of Gary Bigham ("Bigham Decl."), ¶ 15 and Declaration of Timothy Houghton ("Houghton Decl."), ¶ 6); Bigham Decl., ¶ 15 (not disputing the number of enterococcus violations, but only whether the permit was administratively extended); Houghton Decl., ¶ 6 (same).  CCH does not dispute that it committed 741 violations of the daily maximum enterococcus limit (even if the permit was administratively extended).  Therefore, summary judgment is appropriate.

---

("Where effluent limitations are set on a monthly average 'basis, a violation' of that limit would be a violation covering and including all of the 30 days of that monthly period. . . .").

2.    **Count Three - NPDES Permit Violations For Dieldrin Maximum Daily Mass Limit (62 or 2 violations).**

Plaintiffs alleged 62 violations of the NPDES permit's dieldrin maximum daily mass limit based on representative samples taken for May 2002 and December 2003 (assuming that the permit was administratively extended). *See* Exhibit 80 (Table 2 at 28795) to 1/11/05 Nelson Decl.; Plaintiffs' 1/11/05 Facts, ¶ 23.   Because CCH's monthly discharge monitoring reports use a single representative sample for the mass value for dieldrin for the entire month, Plaintiffs calculated every day of each month as a violation of the mass daily limit for a total of 62 violations.   *See* Exhibit 80 (Table 2 at 28795 n. 7) to 1/11/05 Nelson Decl.

CCH admits that it committed at least two violations – one in May 2002 and one in December 2003.  *See* CCH Table (row 2), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 23 (offering no controverting evidence).  CCH argues only that the Court should only find it in violation for the single day on which the sample was taken, rather than for each day of the month.

The method of counting violations is a purely legal or interpretive question, and one that EPA (to which this Court must give appropriate agency deference) has already answered, stating that it is appropriate to assume continuing violations for the representative period in the absence of contrary data.

*See* Plaintiffs' Reply, at 12-13. In addition, other courts have validated such an approach, assuming daily violations during the representative period (e.g., if representative period is a month, counting every day of the month as a violation). *HTF*, 821 F. Supp. at 1393-94; *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 791 F.2d 304, 314 (4th Cir. 1986) ("where a violation is defined in terms of a time period longer than a day, the maximum penalty assessable for that violation should be defined in terms of the number of days in that time period."), *vacated on other grounds*, 484 U.S. 49 (1987) ("*Gwaltney*"); *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 188 (3d Cir. 2004) ("The leading authority in this area is . . . *Gwaltney*."); *Or. State Pub. Int. Res. Group, Inc. v. Pac. Coast Seafoods Co.*, 361 F. Supp. 2d 1232, 1241 (D. Or. 2005) (construing a violation of a monthly average discharge limit as a violation for each day during that month).

Accordingly, summary judgment that CCH committed 62 violations of the NPDES permit's dieldrin maximum daily mass limit is appropriate (even assuming the permit was administratively extended). Moreover, even if the Court were to reject EPA's, its own, and other courts' method of counting violations, CCH admits to committing two violations, and summary judgment for two violations should be entered.

3.    **Count 3 - NPDES Permit Violations For Dieldrin Maximum Daily Concentration (31 violations or 1 violation).**

Plaintiffs alleged 31 violations of the NPDES permit's dieldrin maximum daily concentration based on a representative sample taken in May 2002 (assuming that the permit was administratively extended). *See* Exhibit 80 (Table 3 at 28796) to 1/11/05 Nelson Decl.; Plaintiffs' 1/11/05 Facts, ¶ 23. Because CCH's monthly discharge monitoring reports show a single concentration value for dieldrin for the entire month, Plaintiffs calculated every day of each month as a violation of the daily concentration limit for a total of 31 violations. *See* Exhibit 80 (Table 2 at 28796 n. 10) to 1/11/05 Nelson Decl.

CCH admits that it committed at least one violation in May 2002. *See* CCH Table (row 3), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 23 (offering no controverting evidence). The parties made the same arguments discussed above regarding the method of counting violations. Therefore, summary judgment that CCH committed 31 violations of the NPDES permit's dieldrin maximum daily concentration is appropriate. Even if the Court rejects EPA's and other courts' method of counting, CCH admits to one violation, and summary judgment for one violation is appropriate.

**4.     Count 3 - NPDES Permit Violations Of Dieldrin Average Annual Concentration (1,890 or 58 violations).**

Plaintiffs alleged a total of 1,890 violations of the dieldrin average annual concentration (assuming that the permit was administratively extended). *See* Exhibit 80 (Table 5 at 28800-02) to 1/11/05 Nelson Decl; Plaintiffs' Facts, ¶ 20; Table 5 to 3/31/05 Nelson Decl. As discussed in the 3/31/05 Nelson Declaration, ¶ 11 at 6-7, annual averages are continuously updated every month. When the annual average was first exceeded, Plaintiffs counted 365 violations since a violation of an average limit counts as a violation for every day in the averaging period, relying on this Court's decision in *HTF* and others. *See, supra* cases cited on page 10. However, in subsequent months in which the average limit was exceeded, to avoid double-counting, Plaintiffs added only the additional days of the month (28-31) to the total number of violations, rather than adding an additional 365 days. 3/31/05 Nelson Decl., ¶ 11 at 6-7.

CCH admits that it committed 58 violations. *See* CCH's Table (row 4), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 20 (citing Bigham Decl., ¶ 15 and Houghton Decl., ¶ 6); Bigham Decl., ¶ 15 (solely disputing permit extension and not violations). Houghton Decl., ¶ 6 (same). CCH disputes Plaintiffs' method of counting, rejecting this Court's decision in *HTF*. CCH

contends that a violation of a monthly average should be counted as a single violation.

The dispute is purely legal: Should this Court apply its prior reasoning in *HTF* and hold that a violation of an average limit is a violation of each day of the averaging period? If yes, summary judgment against CCH for 1,890 violations of the dieldrin average annual mass limit is appropriate. If no, summary judgment against CCH is still appropriate for 58 violations.

**5. Count Three - NPDES Permit Violations For Dieldrin Average Annual Mass Limit (1,890 or 51 violations).**

Plaintiffs alleged a total of 1,890 violations of the dieldrin average annual mass limit. *See* Exhibit 80 (Table 4 at 28797-99) to 1/11/05 Nelson Decl; Plaintiffs' Facts, ¶ 19; Table 4 to 3/31/05 Nelson Decl. Plaintiffs used the same calculations described above. 3/31/05 Nelson Declaration, ¶ 11 at 6-7.

CCH admits that it committed 51 violations. *See* CCH's Table (row 5), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 19 (citing Bigham Decl., ¶ 15 and Houghton Decl., ¶ 6); Bigham Decl., ¶ 15 (solely disputing permit extension and not violations); Houghton Decl., ¶ 6 (same). CCH disputes Plaintiffs' method of counting, and urges the Court to reject its prior analysis in *HTF*. Accordingly, summary judgment for either 1,890 or 51 violations is appropriate.

6. **Count Three - NPDES Permit Violations of Chlordane Average Annual Concentration (1,890 or 58 violations).**

Plaintiffs alleged a total of 1,890 violations of the dieldrin average annual concentration. *See* Exhibit 80 (Table 7 at 28806-08) to 1/11/05 Nelson Decl; Plaintiffs' Facts, ¶ 22; Table 7 to 3/31/05 Nelson Decl. Plaintiffs used the same calculations described above. 3/31/05 Nelson Declaration, ¶ 11 at 6-7.

CCH admits that it committed 58 violations. *See* CCH's Table (row 6), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 22 (citing Bigham Decl., ¶ 15 and Houghton Decl., ¶ 6); Bigham Decl. filed 2/28/05, ¶ 15 (solely disputing permit extension and not violations); Houghton Decl., ¶ 6 (same). The same counting arguments discussed above apply. Accordingly, summary judgment for either 1,890 or 58 violations is appropriate.

7. **Count Three - NPDES Permit Violations of Chlordane Average Annual Mass Limit (1,890 or 58 violations).**

Plaintiffs alleged a total of 1,890 violations of the chlordane average annual mass limit. *See* Exhibit 80 (Table 6 at 28803-05) to 1/11/05 Nelson Decl; Plaintiffs' 1/11/05 Facts, ¶ 21; Table 6 to 3/31/05 Nelson Decl. Plaintiffs used the same calculations described above. 3/31/05 Nelson Declaration, ¶ 11 at 6-7.

CCH admits that it committed 58 violations. *See* CCH's Table (row 7), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 21 (citing Bigham Decl., ¶ 15 and Houghton Decl., ¶ 6); Bigham Decl. filed 2/28/05, ¶ 15 (solely disputing

permit extension and not violations). Houghton Decl., ¶ 6 (same). The same

counting arguments apply. Accordingly, summary judgment for either 1,890 or 58

violations is appropriate.

      **8.**    **Count Three - NPDES Permit Violations For BOD Average Monthly Removal Efficiency (123 or 4 violations).**

      Plaintiffs alleged 123 violations of the BOD average monthly

removal efficiency requirement. *See* Exhibit 80 (Table 8 at 28809) to 1/11/05

Nelson Decl; Plaintiffs' 1/11/05 Facts, ¶ 25. Again, if the monthly average was

violated, Plaintiffs counted all days in the averaged month pursuant to this Court's

decision in *HTF*.

      CCH admits that it committed 4 violations. *See* CCH's Table (row 8),

attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 25(citing Bigham Decl., ¶

15; Houghton Decl., ¶ 6, and Declaration of Bryan Brown filed 2/28/05 ("Brown

Decl."), ¶ 10); Bigham Decl., ¶ 15 (solely disputing permit extension and not

violations); Houghton Decl. filed 2/28/05, ¶ 6 (same); Brown Decl., ¶ 10 (not

disputing that the monthly average was violated, but stating that CCH occasionally

met the average requirements on individual days in November 2003). CCH

contends that a violation of a monthly average requirement should be counted only

once per month.

Depending on whether this Court adopts or rejects its prior reasoning in *HTF* for counting of violations of a monthly average as a violation for each day of the month, summary judgment for either 123 or 4 violations is appropriate.

      9.    **Count Three - NPDES Permit Violations For BOD Average Monthly Concentration (33 or 2 violations).**

Plaintiffs alleged 33 violations of the BOD average monthly concentration. *See* Exhibit 80 (Table 10 at 28811) to 1/11/05 Nelson Decl; Plaintiffs' 1/11/05 Facts, ¶ 36. Again, if the monthly average was violated, Plaintiffs counted all days in the averaged month pursuant to this Court's decision in *HTF*.[9]

CCH admits that it committed two violations of the BOD average monthly concentration, arguing that a monthly average violation should be counted only once for each month. *See* CCH's Table (row 9), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 36 (citing no controverting evidence).

Depending on whether this Court adopts or rejects its prior reasoning in *HTF* for counting of violations of a monthly average as a violation for each day of the month, summary judgment for either 33 or 2 violations is appropriate.

---

    [9] Violations outside the applicable 5-year statute of limitations were not counted for May 1999. *See* Exhibit 80 (Table 10 at 28811 n. 36) to 1/11/05 Nelson Decl.

10.    **Count Three - NPDES Permit Violations For TSS Average Monthly Removal Efficiency (62 or 2 violations).**

Plaintiffs alleged 62 violations of the TSS average monthly removal efficiency requirements. *See* Exhibit 80 (Table 9 at 28810) to 1/11/05 Nelson Decl; Plaintiffs' 1/11/05 Facts, ¶ 25. Again, if the monthly average was violated, Plaintiffs counted all days in the averaged month pursuant to this Court's decision in *HTF*.

CCH admits that it committed two violations of the TSS average monthly removal efficiency requirements, arguing that a monthly average violation should be counted only once for each month. *See* CCH's Table (row 10), attached hereto as Exhibit A; CCH's 2/28/05 Facts, ¶ 25 (citing the Bigham Decl., ¶ 15; Houghton Decl., ¶ 6 and Brown Decl., ¶ 10); Bigham Decl., ¶ 15 (solely disputing permit extension and not violations); Houghton Decl. filed 2/28/05, ¶ 6 (same); Brown Decl., ¶ 10 (not disputing that the monthly average was violated, but stating that CCH occasionally met the average requirements on individual days during November 2003).

Depending on whether this Court adopts or rejects its prior reasoning in *HTF* for counting of violations of a monthly average as a violation for each day of the month, summary judgment for either 62 or 2 violations is appropriate.

**C.    Summary Judgment On Plaintiffs' Fourth Claim (Disinfection Facility) Is Appropriate.**

In their Fourth claim, Plaintiffs alleged that the Sand Island WWTP's NPDES permit required CCH to construct a disinfection facility by July 21, 2002, and that its failure to do so resulted in 900 violations (even if the permit was extended).  Plaintiffs' 1/11/05 Facts, ¶ 17; 3/31/05 Nelson Decl., ¶ 13 and Table 14 attached thereto.   Plaintiffs counted each day that the disinfection facility remained uncompleted though January 5, 2005 (the date of supporting declarations filed in support of the MSJ).[10]  3/31/05 Nelson Decl., ¶ 13 and Table 14 attached thereto.

CCH admits that the disinfection facility was not completed by 1/5/05, but argues that only one violation may be counted.  *See* CCH's Table (row 11); CCH's 2/28/05 Facts, ¶ 17 (citing the Bigham Decl., ¶ 15 and Houghton Decl., ¶ 6); Bigham Decl., ¶ 15 (solely disputing permit extension and not violations); Houghton Decl. filed 2/28/05, ¶ 6 (same).

The question of whether a continuous failure to construct and operate a capital project required under an NPDES permit constitutes a single violation or is a continuous daily violation, is a purely legal question.  Plaintiffs argued that it was a continuous violation based on *Natural Resources Defense Council v.*

---

[10]  To date, CCH has not completed the disinfection facility.

*Southwest Marine, Inc.,* 236 F.3d 985, 1002 (9th Cir. 2000) (failure to implement

monitoring plan required by NPDES Permit constitutes a violation for every day

that defendant out of compliance); *Bayview Hunters Point Community Advocates*

*v. Metropolitan Transportation Commission,* 177 F. Supp. 2d 1011, 1022 (N.D.

Cal. 2001), *rev'd on other grounds,* 366 F.3d 692 (9th Cir. 2004) (failure to

implement on-going compliance duty constitutes a daily violation); *Molokai*

*Chamber of Commerce v. Kukui (Molokai), Inc.,* 891 F. Supp. 1389, 1400 (D.

Haw. 1995) (failure to obtain NPDES permit coverage constitutes daily CWA

violation).

CCH argued its failure to build and operate a disinfection facility was

a one-time violation based on *United States v. Trident Seafoods Corporation,* 60

F.3d 556 (9th Cir. 1995), *cert. denied,* 519 U.S. 1109 (1997) ("*Trident Seafoods*").

In *Trident Seafoods,* the Ninth Circuit held that a notice violation was not an on-

going daily violation of the Clean Air Act because the defendant's sole duty was

to give EPA a single notice *before* commencing a regulated activity. The ruling is

not relevant to CCH's on-going duty to construct *and operate* a disinfection

facility. *Bayview Hunters Point,* 177 F. Supp. at 1022.

Moreover, CCH's single violation/fine theory would seriously

undermine the deterrent goals underlying the CWA. CCH would be free from **any**

further sanction even if CCH ***never*** built the facility, nullifying the CWA's

deterrence goals. *See Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, 261

F.3d 810, 817-18 (9th Cir. 2001) (continued conduct violating the CWA must be

counted as separate violations to deter continued noncompliance), *aff'd* 537 U.S.

99 (2002).

Again, the issue is purely legal. If this Court agrees that the CWA's

deterrent goals require giving CCH a strong incentive to comply with its permit

requirement to construct and operate a disinfection facility, summary judgment for

900 violations is appropriate. If not, summary judgment on at least one violation

is appropriate.

## IV.    CONCLUSION

Plaintiffs respectfully request that this Court grant summary judgment

against CCH that:

1.    Under Plaintiffs' Third Claim, CCH committed 8,613

violations of its Sand Island WWTP's NPDES permit effluent limitations; and

2.    Under Plaintiffs' Fourth Claim, CCH committed 900 violations

of its Sand Island WWTP's NPDES permit for failure to construct and operate a

required disinfection facility.

DATED: Honolulu, Hawai‘i, October 14, 2005.

_____
CHRISTOPHER SPROUL
ENVIRONMENTAL ADVOCATES

LEA HONG
ALSTON HUNT FLOYD & ING
Attorneys for Plaintiffs SIERRA CLUB,
HAWAI‘I CHAPTER, HAWAI‘I'S
THOUSAND FRIENDS, and OUR
CHILDREN'S EARTH FOUNDATION

22

## CERTIFICATE OF COUNSEL

Pursuant to Local Rule 7.5, I hereby certify that Plaintiffs'

Memorandum in Support of Motion for Reconsideration of Court's Order Filed

September 30, 2005 Regarding Plaintiffs' Motion for Partial Summary Judgment

on Plaintiffs' Third and Fourth Claims contains 4,829 words in length, exclusive

of the case caption, table of contents, and table of authorities.

DATED: Honolulu, Hawai'i, October 14, 2005.

_____
CHRISTOPHER SPROUL
ENVIRONMENTAL ADVOCATES

LEA HONG
ALSTON HUNT FLOYD & ING
Attorneys for Plaintiffs SIERRA CLUB,
HAWAI'I CHAPTER, HAWAI'I'S
THOUSAND FRIENDS, and OUR
CHILDREN'S EARTH FOUNDATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY AND COUNTY OF HONOLULU and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity,<br><br>　　　　　Defendants. | Civil No. 04-00463 DAE/BMK<br><br>**DECLARATION OF LEA HONG** |

## DECLARATION OF LEA HONG

I, LEA HONG, declare as follows:

1.　　I am an attorney licensed to practice before all courts in the State of Hawai'i. I am a shareholder and director of Alston Hunt Floyd & Ing, a law corporation, co-counsel for Plaintiffs Sierra Club, Hawai'i Chapter, Hawai'i Thousand Friends, and Our Children's Earth Foundation. I make this declaration on my personal knowledge, unless otherwise stated.

2.　　Attached hereto as Exhibit A is a true and correct copy of a table handed to me and the Court at the April 4, 2005 hearing by counsel for Defendant City and County of Honolulu ("CCH"). CCH's counsel informed me

that CCH intended to use this table in oral arguments. I have added handwritten "row" number(s) in the left hand side of the Table for ease of citation.

       3.     Attached hereto as Exhibit B is a table summarizing the parties' respective violation calculations for Plaintiffs' Third and Fourth Claims.

      I hereby declare under penalty of perjury that the foregoing is true and correct.

      DATED: Honolulu, Hawai'i, October 14, 2005.

                          _____
                          LEA HONG

# Plaintiffs Overcount Violations

| Claim # | Alleged Violation | Plaintiffs | City | Percent Inflation | Comments |
|---|---|---|---|---|---|
| 3 | Enterococcus – Average Daily Maximum | 741 | 741 | 0% | No dispute. |
| 3 | Dieldrin – Maximum Daily Mass | 62 | 2 | 3,100% | • Permit requires once-per-month sampling.<br>• Plaintiffs' 93 alleged violations based on only three exceedances of once-per-month sampling. |
| 3 | Dieldrin – Maximum Daily Concentration | 31 | 1 | 3,100% | • Plaintiffs improperly *infer* 90 additional violations for each day of the three months when the City exceeded once-per-month sampling. |
| 3 | Dieldrin – Average Annual Concentration | 1,890 | 58 | 3,259% | • Plaintiffs inflate *single* violation of average annual requirement into 365 violations. |
| 3 | Dieldrin – Average Annual Mass | 1,890 | 51 | 3,706% | • Plaintiffs' position contradicts Permit's *daily* maximum limits. Plaintiffs admit the city has violated the daily maximum limits on only three occasions, yet are seeking 7,560 daily violations. |
| 3 | Chlordane – Average Annual Concentration | 1,890 | 58 | 3,259% | • Thus, plaintiffs are *inventing* a maximum daily limit that is *lower* than the daily limit in the Permit which was only exceeded on three occasions. |
| 3 | Chlordane – Average Annual Mass | 1,890 | 58 | 3,259% | • The City acknowledges 225 violations based on monthly rolling annual averages. |
| 3 | BOD Average Monthly Removal Efficiency | 123 | 4 | 3,075% | • Based on eight exceedances of monthly average limitations for BOD and TSS, plaintiffs seek violation for *each* day within these eight months for 210 additional violations. |
| 3 | BOD Average Monthly Concentration | 33 | 2 | 1,650% | • Plaintiffs' position contradicts DMRs which show that there were many days within these eight months for which the City did not exceed monthly average. |
| 3 | TSS Average Monthly Removal Efficiency | 62 | 2 | 3,100% | |
| 4 | Disinfection Unit Compliance Schedule | 900 | 1 | 90,000% | • Under 9th Circuit case law, failure to meet one-time duty is not a continuous violation. |
| 8 | Violation of 9/30/02 AO | 4,837 | 0 | — | • The 2002 AO merely establishes a compliance process; it does not impose duplicative substantive requirements.<br>• Plaintiffs may not double-count violations.<br>• Plaintiffs' calculations are wrong. |
| | **Total** | 14,349 | 978 | **1,467%** | |

# EXHIBIT "A"

## Table Summarizing Alternate Violation Calculations

| Claim No. | Violation | Plaintiffs | CCH |
|---|---|---|---|
| Third | Enterococcus - Average Daily Maximum | 741 | 741 |
| Third | Dieldrin - Maximum Daily Mass | 62 | 2 |
| Third | Dieldrin - Maximum Daily Concentration | 31 | 1 |
| Third | Dieldrin - Average Annual Concentration | 1,890 | 58 |
| Third | Dieldrin - Average Annual Mass | 1,890 | 51 |
| Third | Chlordane - Average Annual Concentration | 1,890 | 58 |
| Third | Chlordane - Average Annual Mass | 1,890 | 58 |
| Third | BOD Average Monthly Removal Efficiency | 123 | 4 |
| Third | BOD Average Annual Monthly Concentration | 33 | 2 |
| Third | TSS Average Monthly Removal Efficiency | 62 | 2 |
| Fourth | Disinfection Unit | 900 | 1 |
| | **TOTAL:** | **9,513** | **978** |

**EXHIBIT** "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

SIERRA CLUB, HAWAIʻI CHAPTER; )   Civil No. 04-00463 DAE/BMK
HAWAIʻI'S THOUSAND FRIENDS; and )
OUR CHILDREN'S EARTH )   **CERTIFICATE OF SERVICE**
FOUNDATION, )
                               )
        Plaintiffs, )
                               )
    v. )
                               )
CITY AND COUNTY OF HONOLULU and )
FRANK DOYLE, DIRECTOR OF THE )
DEPARTMENT OF ENVIRONMENTAL )
SERVICES, in his official capacity, )
                               )
        Defendants. )
                               )
_____ )

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date I caused a true and correct

copy of the foregoing to be served on the following persons by facsimile, hand-

delivery or U.S. mail, postage prepaid (as indicated below) to their respective

addresses:

|  | HAND-<br>DELIVERED | FAX | MAILED |
|---|---|---|---|
| CARRIE K.S. OKINAGA, ESQ.<br>Corporation Counsel<br>**MAILE R. CHUN, ESQ.**<br>Deputy Corporation Counsel<br>Department of Corporation Counsel<br>City and County of Honolulu<br>530 South King Street, Room 110<br>Honolulu, HI  96813<br>    and | ( x ) | (   ) | (   ) |
| JAMES J. DRAGNA, ESQ.<br>NANCY M. SAUNDERS, ESQ.<br>**BRYAN K. BROWN, ESQ.**<br>DARSHANN M. TURPIN, ESQ.<br>Bingham McCutchen LLP<br>355 South Grand Avenue<br>Suite 4400<br>Los Angeles, CA   90071-3106 | (   ) | (   ) | ( x ) |

Attorneys for Defendants
CITY AND COUNTY OF
HONOLULU AND FRANK DOYLE,
DIRECTOR OF THE
DEPARTMENT OF
ENVIRONMENTAL SERVICES, IN
HIS OFFICIAL CAPACITY

593251/7502-1

DATED:  Honolulu, Hawai'i, October 14, 2005.

_____
CHRISTOPHER SPROUL
ENVIRONMENTAL ADVOCATES

LEA HONG
ALSTON HUNT FLOYD & ING
Attorneys for Plaintiffs
SIERRA CLUB, HAWAI'I CHAPTER,
HAWAI'I THOUSAND FRIENDS, and
OUR CHILDREN'S EARTH
FOUNDATION