IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SIERRA CLUB, HAWAII CHAPTER, HAWAII'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION, | ) ) ) ) ) ) | CV. NO. 04-00463 DAE-BMK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CITY AND COUNTY OF HONOLULU, and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.  After reviewing Plaintiffs' motion and the supporting and opposing memoranda, the Court GRANTS Plaintiffs' Motion for Reconsideration.

## BACKGROUND

On October 15, 2005, Plaintiffs filed a Motion for Reconsideration of Order Filed September 30, 2005 Regarding Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third and Fourth Claims ("Reconsideration Motion"). Before the Court could rule on Plaintiffs' motion, the parties filed a Joint Stipulation Re Stay of Litigation.  The Joint Stipulation stated that the parties intended to work with the Environmental Protection Agency and the Department of Health to reach a mutually agreeable settlement that would obviate the need for further litigation.  Therefore, the parties agreed to stay all proceedings in this case. After the motion had been pending for almost a year, this Court ordered the motion withdrawn, with the proviso that if the parties could not reach a settlement agreement and subsequently lift the stay, Plaintiffs could refile the Reconsideration Motion *nunc pro tunc*, thereby relating back to its original filing date.  The parties were unable to reach a settlement and Plaintiffs refiled their Reconsideration Motion on March 2, 2007.  The City and County of Honolulu (the "City") refiled its opposition on March 15, 2007.

In the September 30, 2005 Order, this Court granted Defendants' motion to dismiss Plaintiffs' first, second, ninth, and twelfth claims for relief, and denied Plaintiffs' motion for partial summary judgment on Plaintiffs' third, fourth,

2

eighth, and twelfth claims.  In their Reconsideration Motion, Plaintiffs argue that this Court should reconsider its denial of summary judgment in their favor on their third and fourth causes of action.

Plaintiffs' third and fourth claims are based on alleged violations of the City's National Pollution Discharge Elimination System Permit ("NPDES Permit") for its Sand Island Wastewater Treatment Plant.  Specifically, the third claim is based on alleged violations of effluent limitations in the NPDES Permit, and the fourth claim is based on alleged violations of the NPDES Permit deadlines to construct and operate a disinfection facility.  In their summary judgment motion, Plaintiffs requested that this Court impose a total of 14,205 violations of the Clean Water Act ("CWA") against the City under their third, fourth, and eighth claims. In particular, 8,613 violations under their third claim, 900 violations under their fourth claim, and the remainder under their eighth claim.[1]  The City acknowledged that it has not achieved full compliance with the terms of its NPDES Permit.

This Court denied Plaintiffs' third and fourth claims because "there are material factual disputes that cannot be resolved and [sic] this juncture in the

---

[1]This number was based upon calculations if this Court denied Plaintiffs' motion for summary judgment with respect to their twelfth claim regarding whether the NPDES Permit had expired.  This Court denied Plaintiffs' motion on that claim and granted Defendants' motion with respect to that claim.

case regarding the number of times and the extent to which the CWA has been

violated in relation to the Sand Island NPDES Permit." (September 30, 2005

Order at 22.) Plaintiffs' eighth claim for relief, which is also still pending, is based

on alleged violations of the 2002 EPA Sand Island Order, which required

Defendants to take specific measures to correct its NPDES Permit violations and

ensure permit compliance. In the September 30, 2005 Order, this Court ordered

Plaintiffs to file a more definite statement with respect to their eighth claim.

Plaintiffs filed that statement on November 14, 2005. That claim is not at issue in

the Reconsideration Motion.

<u>STANDARD OF REVIEW</u>

Plaintiffs seek relief pursuant to Rules 59(e) and/or 60(b)(1) of the

Federal Rules of Civil Procedure, and under Local Rule 60.1(c). Rule 59(e)

provides that any motion to alter or amend a judgment shall be filed no later than

10 days after entry of the judgment. Fed. R. Civ. P. 59(e). Rule 60(b)(1) provides

that the court may relieve a party from an order for reason of "mistake,

inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). The Ninth

Circuit has recognized that Rule 60(b) may be used to reconsider legal issues and

to reconsider the court's own mistake or inadvertence. See <u>Liberty Mut. Ins. Co. v.</u>

<u>E.E.O.C.</u>, 691 F.2d 438, 441 (9th Cir. 1982) (holding that the "law in this circuit is

that errors of law are cognizable under Rule 60(b)"); <u>see also</u> <u>Kingvision</u>

<u>Pay-Per-View Ltd. v. Lake Alice Bar</u>, 168 F.3d 347, 350 (9th Cir. 1999) ("the

district court can correct its own mistake months after judgment, under Rule

60(b)").  Local Rule 60.1 explicitly mandates that reconsideration only be granted

upon discovery of new material facts not previously available, the occurrence of an

intervening change in law, or proof of manifest error of law or fact.  <u>See also</u>

<u>Reliance Ins. Co. v. Doctors Co.</u>, 299 F. Supp. 2d 1131, 1153 (D. Haw. 2003).

The Ninth Circuit requires a successful motion for reconsideration to

furnish both a reason why the court should reconsider its prior decision, as well as

facts or law of a strongly convincing nature to induce the court to reverse its prior

decision.  <u>Na Mamo O 'Aha 'Ino v. Galiher</u>, 60 F. Supp. 2d 1058, 1059 (D. Haw.

1999).  This rule derives from the compelling interest in the finality of judgments,

which should not be lightly disregarded.  <u>Rogers v. Watt</u>, 772 F.2d 456, 459 (9th

Cir. 1983); <u>Carnell v. Grimm</u>, 872 F. Supp. 746, 758 (D. Haw. 1994).  Mere

disagreement with a previous order is an insufficient basis for reconsideration and

reconsideration may not be based on evidence and legal arguments that could have

been presented at the time of the challenged decision.  <u>Haw. Stevedores, Inc. v. HT</u>

<u>& T Co.</u>, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).  The disposition of a motion

for reconsideration is within the discretion of the district court.  <u>Lolli v. County of</u>

Orange, 351 F.3d 410, 411 (9th Cir. 2003); Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

## DISCUSSION

Plaintiffs assert that this Court should reconsider its denial of summary judgment in their favor on their third and fourth claims for relief. Plaintiffs claim that this Court denied the third and fourth claims on a mistaken belief that it was compelled to do so since it denied their twelfth claim. Plaintiffs contend that their third and fourth claims are not dependant upon their twelfth claim and that this Court can therefore make a determination regarding the correct method for counting violations (e.g. whether violations of average limits should include each day of the average period or be counted as a single violation, or whether certain violations are continuing violations). Plaintiffs assert that the method of calculating violations is a purely legal issue and once that is determined, the number of violations is undisputed.

The City argues that Plaintiffs' Reconsideration Motion is improper because Plaintiffs are merely rehashing the same arguments they made in their motion for summary judgment and have not presented any new arguments entitling them to reconsideration under the rules.

Although Plaintiffs made similar arguments in their summary judgment motion, this Court finds that their Reconsideration Motion is properly before this Court because Federal Rule of Civil Procedure 60(b)(1) provides that the court may relieve a party from an order for reason of its own mistake or inadvertence and Rule 60(b) may be used to reconsider legal issues.  See Liberty Mut. Ins. Co., 691 F.2d at 441; see also Kingvision Pay-Per-View Ltd., 168 F.3d at 350.  Thus, this Court will reconsider its order to determine whether it is in a position to decide how violations should be counted.

The City contends that even though it admits to some violations of the CWA under the third and fourth claims, there are factual and legal disputes as to the number and extent of violations depending on how the violations are counted, and whether the Court could factually assume that a violation occurred on any particular day.  The City argues that the Court can only count violations when there is data to document such violation.  Plaintiffs argue that since there is evidence of monthly violations, the Court must assume a violation on each and every day and can impose a penalty for each and every day of the representative time period.

If the calculations of violations are done by counting violations only upon days on which there is evidence of a violation, then, as the City admits, with

7

respect to claim three, there have been 977 violations.  Plaintiffs contend that using their suggested calculation method, there have been 8,613 violations.

The CWA imposes a maximum penalty "per day for each violation." 33 U.S.C. § 1319(d).  In Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., the defendant engaged in repeated discharges in excess of its monthly average limit in its NPDES permit for a number of pollutants.  791 F.2d 304, 307 (4th Cir. 1986), vacated on other grounds, 484 U.S. 49 (1987).  The monthly average was determined from a limited number of samples taken during the month, according to the terms of the NPDES permit.  The district court "treated each monthly average violation as if it were a series of daily violations, one for each day of the month in question."  Id.  On appeal, the defendant argued that the district court erred by treating each violation of a monthly average limitation as equivalent to a daily violation and suggested that a monthly violation be treated as one violation.  Id. at 313.  The Fourth Circuit disagreed and held that while 33 U.S.C. § 1319(d)

> does not address directly the matter of monthly average limitations, it does speak in terms of penalties per day of violation, rather than penalties per violation. This language strongly suggests that where a violation is defined in terms of a time period longer than a day, the maximum penalty assessable for that violation should be defined in terms of the number of days in that time period.

8

Id. at 314.  The Fourth Circuit reasoned that it did not make sense to treat a

monthly violation as one day of violation because such approach is inconsistent

with the language of section 1319(d) since it would set a maximum penalty per

violation, rather than per day of violation.[2]  Id.

 Although not factually similar to the case at hand, in Borden Ranch

Partnership v. U.S. Army Corps of Engineers, the defendant argued that he should

be assessed a penalty for any day in which violations occurred, and not a separate

---

[2]The Fourth Circuit discussed the following hypothetical that was posed by
the district court, which it found illustrative of this point.  Id. at 314.  A polluter
very nearly exceeds its daily maximum every day of the month. This polluter
would far exceed its monthly average limitation, and would be liable for violating
that limitation. If that polluter was liable for only one day of violation for such
conduct, the court would be prevented from imposing over $10,000 in penalties for
a full month of substantial discharges.  The Fourth Circuit found this result
nonsensical and stated that

 [t]he illogic of the approach is further illustrated by considering a
 situation very similar to the district court's hypothetical: The polluter
 just barely exceeds its daily maximum for each day of a month. This
 polluter would be subject to liability for thirty days of violation (a
 maximum penalty of $300,000), although its total discharge is only
 slightly more than the first polluter, who, according to [defendant's]
 view, would be subject to only one day's penalty ($10,000 maximum).
 [Defendant's] approach thus could act to deprive a district court of the
 flexibility to deal with similar cases similarly, imposing a drastic
 limitation on the court's authority to assess "appropriate" civil
 penalties.

Id.

penalty for each violation.  261 F.3d 810 (9th Cir. 2001).  The Ninth Circuit

disagreed and found that

> [t]he statute imposes a maximum penalty "per day for
> each violation." 33 U.S.C. § 1319(d). It does not say "per
> each day in which violations occur" or "per day in which
> a party pollutes." The focus is clearly on each violation,
> and courts have consistently rejected attempts to limit
> civil penalties to the number of days in which violations
> occur. A contrary rule would encourage individuals to
> stack all their violations into one "Pollution Day," in
> which innumerable offenses could occur, subject only to
> the $25,000 maximum.

Id.

In Oregon State Pub. Interest Research Group, Inc. v. Pac. Coast

Seafoods Co., the court held that it "must construe a violation of a monthly average

discharge limit as a violation for each day during that month that discharge

occurred . . . ." 361 F. Supp. 2d 1232, 1241 (D. Or. 2005); see also United States v.

Amoco Oil Co., 580 F. Supp. 1042, 1045 (W.D. Mo. 1984) (finding that the

defendant was subject to a penalty for each day of each month in which a monthly

average limitation was exceeded and rejecting defendant's argument that "before a

penalty can be imposed for a given day, a violation must be shown to have

occurred on that specific day"); Save Our Bays and Beaches v. City and County of

Honolulu, 904 F. Supp. 1098, 1125 (D. Haw. 1994) (assuming that "violation of a

30-day average counts as a violation for every day of that month (i.e., there will be 31 violations if the month has 31 days, 30 violations if the month as 30 days, etc.) and that the violation for a 7-day average counts as 7 violations."); Pub. Interest Research Group of N.J. v. Star Enter., 771 F. Supp. 655, 668 (D.N.J. 1991) ("Of the courts that have considered this issue, most have determined that if a defendant has violated a monthly average limitation, it has committed thirty violations" and holding same).

Thus, with respect to claim three, this Court finds that a violation of a monthly average will be counted as a violation of every day of the month. Although this Court has determined that a penalty may be imposed for each day of the time period covered by the limitation, it does not mean that the maximum penalty is required for each day.  See Chesapeake Bay Found., 791 F.2d at 315 ("§ 1319(d) serves only to set a maximum penalty. Within this limit, the district court in its discretion may set an "appropriate" penalty."); see also  Amoco Oil Co., 580 F. Supp. at 1045 (the maximum penalty is not required for each day, only where circumstances warrant can a penalty reaching, but not exceeding, the maximum be imposed).

With respect to claim four, the City admits that it did not complete the disinfection facility by the July 1, 2002 deadline mandated in the NPDES permit

11

and that the facility had not been completed as of January 5, 2005.  The City argues

that this should count as only one violation.  Plaintiffs contend that such failure is a

continuing violation of the CWA that subjects the City to violations for each day

that the facility is not in operation.  Plaintiffs assert that through January 5, 2005,

this amounts to 900 violations.

Plaintiffs cite Natural Res. Def. Council v. Sw. Marine, Inc., 236 F.3d

985 (9th Cir. 2000), in support of their contention.  In that case, the permits had

required the defendant to develop and implement plans to limit its discharges of

pollutants in the water.  Id. at 991.  The permits did not have specific effluent

limitations, but instead required the defendant to create and follow best

management practices and prevention plans.  The defendant created such plans, but

they were inadequate, and thus, the defendant had violated its permit and the

CWA.  Id. at 992.  The district court held that the defendant's failure to implement

its plans adequately was the result of systemic problems and overall inadequacies,

rather than mere snapshots of isolated violations, and thus the defendant was

continuing to violate the permits.  Id. at 993, 999.  The court found that the

defendant had been in violation for a period of 799 days when the trial began and

imposed a civil penalty pursuant to 33 U.S.C. § 1319(d) for each of those 799 days.

Id. at 1001-02.

That case, however, is not directly on point.  First, unlike the NPDES Permit in this case, the permits at issue in that case did not have specific effluent limitations or construction deadlines, but instead required creation and implementation of best management practices and prevention plans.  Second, the court's finding of violations of the CWA were based in part on the defendant's systemic problems and overall inadequacies that led to their inability to implement adequate plans, rather than mere snapshots of isolated violations.  Here, however, evidence has not yet been presented regarding attempts to meet the scheduling deadline for the disinfection facility or reasons for its delay.  Thus, this Court does not find the Natural Res. Def. Council case as providing it with the authority to count each day in which the facility has not been operational as a violation.[3]

Neither does this Court find United States v. Trident Seafoods Corp., 60 F.3d 556 (9th Cir. 1995), which was cited by the City, as authority for counting the City's failure to build and operate the disinfection facility as only one violation.

---

[3]The two other cases relied upon by Plaintiffs are not applicable to the situation here.  Both of those cases discuss whether a violation can be considered a continuing violation for purposes of whether the plaintiffs have standing to bring a citizen suit, and do not discuss whether penalties for such violation should be assessed on a daily basis or counted as one violation under 33 U.S.C. § 1319(d).  See Molokai Chamber of Commerce v. Kukui (Molokai), Inc., 891 F. Supp. 1389, 1400 (D. Haw. 1995); Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 177 F. Supp. 2d 1011, 1022 (N.D. Cal. 2001), rev'd on other grounds, 366 F.3d 692 (9th Cir. 2004).

That case involved the defendant's failure to give advanced notice of its removal of asbestos before renovating its facility, in violation of the Clean Air Act.  The district court found a continuing violation and imposed penalties for everyday from the time the defendant should have given the notice to the time the state officials learned of the asbestos removal.  Id. at 558.  The Ninth Circuit reversed finding that only one day of penalty should be imposed.  The Ninth Circuit agreed with the policy concerns noted by the district court that only timely notice assures that the asbestos was properly removed before renovations were completed, but found that neither the statute, nor the regulation, expressly addressed whether the failure to comply with the notice requirement is a one-time violation or a continuing violation.  Id.  Thus, the Ninth Circuit concluded that

> notwithstanding policy concerns, the agency had both the opportunity and the obligation to state clearly in its regulations either that there is a continuous duty to notify or that a failure to notify gives rise to a penalty based on the length of time that the breach exists.  Thus, reliance on policies underlying a statute cannot be treated as a substitute for the agency's duty to promulgate clear and definitive regulations.

Id. at 559.  In addition, the Ninth Circuit noted that there were no specific time periods defined by the statute or regulation.  Id. at 558.  Therefore, as the defendant's "only obligation under the clear language of the regulation then in

14

effect was to notify EPA before renovation began. This could reasonably be interpreted to mean that the only "day of violation" occurred on the day before Trident commenced renovation." Id.

Here, however, unlike the Trident case, the obligation imposed upon the City to construct and operate a disinfection facility arose from the Permit, not the statute and regulations.  Accordingly, it is irrelevant that the statute and regulations do not contain language regarding whether a failure to construct a facility is a continuing or one-time violation since the Permit itself imposed that obligation and provided a clear and certain deadline by which the facility must be operational.  Furthermore, if this Court counted the violation as only one violation, rather than a violation for each day the facility is not in operation, there would be absolutely no incentive for the City to ever construct the facility, as a one-day maximum fine is far less than the costs of construction.  Therefore, this Court finds that the continuous failure to construct and operate the disinfection facility as required by the NPDES Permit constitutes a continuous daily violation and should be counted as such.

Although this Court has determined the appropriate method of calculating violations with respect to the third claim and fourth claim, this Court finds that the assessment of the actual number of violations and civil penalties is

15

more appropriately dealt with at a later date.  This is due to the fact that Plaintiffs filed a more definite statement with respect to their eighth claim and that claim is related to the third and fourth claims.  Specifically, as stated above, the third claim is based on alleged violations of effluent limitations in the NPDES Permit, the fourth claim is based on alleged violations of the NPDES Permit deadlines to construct and operate a capital improvement project, and the eighth claim is based on alleged violations of the 2002 EPA Sand Island Order, which required Defendants to take specific measures to correct its NPDES Permit violations and ensure permit compliance.  Therefore, this Court finds it appropriate to wait to make assessments until after all possible violations have been conclusively established as to each count in the complaint in order to avoid any double counting of violations.  See Save Our Bays and Beaches, 904 F. Supp. at 1125 (deciding to assess civil liabilities after all violations have been established).

## CONCLUSION

For the reasons stated above, this Court GRANTS Plaintiffs' Motion for Reconsideration as outlined herein.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 16, 2007.



_____
David Alan Ezra
United States District Judge

Sierra Club, Hawaii Chapter, et al. v. City and County of Honolulu et al., CV. NO. 04-00463 DAE-BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION

17