

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION IX
75 Hawthorne Street
San Francisco, CA 94105-3901

OCT 27 1999

Via Certified Mail No. Z 387 950 073
In Reply Refer to: CWA-308-9-00-003

Kenneth E. Sprague, Director
City and County of Honolulu
Department of Environmental Services
650 South King Street, 3rd Floor
Honolulu, HI 96813

RE: Finding of Violation and Order for Compliance for the Sand Island Wastewater Treatment Plant (NPDES No. HI0020117)

Dear Mr. Sprague:

The City and County of Honolulu (CCH) owns and operates Sand Island Wastewater Treatment Plant (WWTP). On September 30, 1998, EPA and Hawaii Department of Health issued National Pollutant Discharge Elimination System (NPDES) permit No. HI0020117 to CCH to regulate discharge from Sand Island WWTP. Requirements of the permit incorporate the EPA-granted variance from secondary treatment requirements issued under Section 301(h) of the Clean Water Act, as amended (Act), 33 U.S.C. Section 1311(h). The permit became effective on November 2, 1998.

Enclosed is a Finding of Violation and Order for Compliance pursuant to Sections 308(a) and 309 (a)(3), (a)(4), and (a)(5)(A) of the Act, 33 U.S.C. Section 1318 (a), and Section 1319 (a)(3), (a)(4), and (a)(5)(A). The violations cited in the Findings include:

- Effluent limits: Section A.1. of NPDES permit No. HI0020117 sets forth discharge limits for specified constituents of the effluent discharge from Sand Island WWTP, including $BOD_5$ and chlordane. The Discharge Monitoring Reports (DMRs) showed violations of the following discharge limits: chlordane concentration for the month of February 1999; $BOD_5$ concentration for the months of May and July, 1999; and $BOD_5$ percent removal for the months of April, July and August, 1999.

- Disinfection Study: Section A.2.g. of NPDES permit No. HI0020117 requires submittal of a planning document by June 30, 1999 for a disinfection facility that must operate continuously for one year and achieve effective effluent disinfection. Effective disinfection is defined as compliance with a maximum daily discharge

**EXHIBIT 9**

25068

Mr. Sprague  
City and County of Honolulu  
Page 2

> limit of 18,000 CFU/100 ml for enterococci. CCH submitted a disinfection study on August 12, 1999. EPA finds this study in violation with the requirements of the permit because it does not include final design flow, the recommended UV disinfection system is ineffective with poor quality primary wastewater effluent, and the study does not address operations and maintenance requirements of the recommended UV disinfection system.

- Inspection Report: On July 1, 1999, the Hawaii Department of Health conducted an Operation and Maintenance Inspection of Sand Island WWTP. The inspection report gives a "Conditional Acceptance" rating based on several operational and maintenance deficiencies, including: in-plant spills, violations of NPDES effluent limits, poor condition of clarifier DAF Nos. 1, 2, 5 and 6, inadequate spare inventory system, inadequate staffing, and increasingly $BOD_5$ strength of the wastewater.

The enclosed Order requires continuous compliance with the requirements of NPDES permit No. HI0020117. If CCH does not comply with the requirements of the permit, in accordance with 40 CFR 122.64, the permit can be terminated due to noncompliance by the permittee with any permit condition. Permit termination would legally terminate the 301(h) variance, and CCH would need a secondary treatment permit from the Hawaii Department of Health to continue legal discharge from Sand Island WWTP.

In addition, the enclosed Order requires CCH to:

- By December 15, 1999 (with the November 1999 DMR), submit a report on the actions taken to ensure compliance with the permit (e.g., adjustment of the dose of polymer to the thickener tank overflow and the centrate return flow waste streams).

- By December 15, 1999 (with the November 1999 DMR), submit a short-term plan with a schedule to conduct an independent evaluation of the operation and maintenance of Sand Island WWTP. At minimum, the evaluation shall include the following deficiencies: in-plant spills, refurbishing of clarifiers, adequacy of the spare parts inventory, and staffing levels at the plant. The schedule shall propose dates for implementation of recommendations. In addition, the short-term plan shall include proposed installation of treatment upgrades that will ensure continuous compliance with permit conditions. The treatment upgrades shall be in operation by December 15, 2000. CCH shall submit a final report when treatment upgrades are in operation.

- By December 31, 1999, submit a comprehensive analysis of the different options considered under the long-term plans for upgrading treatment at Sand Island WWTP, including: Sand Island Wastewater Treatment Plant Unit 1 Phase 2A,

Mr. Sprague    Page 3
City and County of Honolulu

>   Sand Island Wastewater Treatment Plant Primary Treatment Expansion, Sand Island Wastewater Treatment Plant Disinfection Facility, Sand Island Wastewater Treatment Plant Interim Chemical Treatment Facility Improvements, Sewer Rehabilitation and Infiltration & Inflow Minimization Plan, and options for treatment of soluble $BOD_5$. This analysis should ensure full and continuous compliance with the permit conditions, 301(h) variance criteria, and Consent Decree requirements for sewer rehabilitation.
>
> · By December 31, 1999, submit a revised Disinfection Study to address the following deficiencies: final design flow; recommendations to maintain a good quality primary wastewater effluent that could be disinfected by UV; and design considerations to address redundancy, to ensure proper maintenance of UV lamps, and to implement a pilot test.

Any violation of the terms of the enclosed Order or the NPDES permit could subject CCH to a civil action for appropriate relief pursuant to Section 309 (b) of the Act, 33 U.S.C. Section 1318 (b), and/or civil penalties not to exceed $27,500 per day for each violation. Under Section 309 (g) of the Act, 33 U.S.C. Section 1319 (g), any violation of the NPDES permit could subject CCH to an administrative penalty action of up to $11,000 per day of violation not to exceed $137,500. In addition, Section 309 (c) of the Act, 33 U.S.C. Section 1319 (c), provides for criminal penalties in the event of either negligent or knowing violations of the Act. Negligent violations of the Act are punishable by a fine of not less than $2,500 no more than $25,000 per day of violation, or imprisonment for not more than one year, or both (Section 309 (c) (1), 33 U.S.C. Section 1319 (c) (1)). Knowing violations of the act shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or imprisonment for not more than three years, or both (Section 309 (c) (2), 33 U.S.C. Section 1319 (c) (2)).

This Order does not waive or modify or in any way relieve CCH of its obligations imposed by the Act or any other Local, State, or Federal law. EPA reserves the right to seek any and all remedies available under Section 309 (b), (c), (d), or (g) of the Act, 33 U.S.C. Section 1319 (b), (c), (d) or (g), for any violation cited in this Order.

We are planning to meet with you in San Francisco November 2, 3 and 4 to discuss CCH's progress towards satisfying CCH/EPA consent decree requirements for developing and implementing a long-term sewer rehabilitation plan for reducing sewer spills and inflow and infiltration into the collection system. Central to this discussion are the linkages between the CCH's plans for collection system rehabilitation, Sand Island WWTP headworks and treatment plant expansions, and the effluent disinfection facility. We want to ensure that the same design flow and effluent quality design parameters, as well as economic considerations, are used in all these long-term plans. We are concerned over how decisions regarding collection system rehabilitation and other upstream treatment options will affect the quality and quantity of primary effluent requiring disinfection at Sand Island WWTP. The recent violations discussed above

25070

Mr. Sprague  Page 4
City and County of Honolulu

highlight the need to discuss these plans in a comprehensive manner to ensure compliance with NPDES permit, 301(h) variance criteria, and Consent Decree requirements.

If you have any questions regarding the Finding of Violation and Order for Compliance, please call Jeremy Johnstone 415/744-1895 of my staff. If you would like to discuss any of these matters before our meeting in November, please call me at 415/744-1860.

Sincerely,

Alexis Strauss, Director
Water Division


Enclosure

cc:   Jeremy Harris, Mayor
      Ross Tanimoto, City and County of Honolulu
      Gary Gill, Hawaii Department of Health
      Dennis R. Lau, Hawaii Department of Health, Clean Water Branch

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 9

IN THE MATTER OF:

| | |
|---|---|
| City and County of Honolulu<br>Honolulu, Hawaii | Docket No. CWA-309-9-00-003 |
| Proceedings under Sections 308(a)<br>and 309(a)(3), (a)(4), and (a)(5)(A)<br>Clean Water Act, as amended,<br>33 U.S.C. Sections 1318(a), and<br>1319(a)(3), (a)(4), (a)(5)(A) | FINDING OF VIOLATION<br>AND<br>ORDER FOR COMPLIANCE |

STATUTORY AUTHORITY

The following Findings are made and Order is issued pursuant to the authority vested in the Administrator of the U.S. Environmental Protection Agency (EPA) by Sections 308(a) and 309 (a)(3), (a)(4), and (a)(5)(A) of the Clean Water Act, as amended (Act), 33 U.S.C. Section 1318 (a), and Section 1319 (a)(3), (a)(4), and (a)(5)(A). This authority has been delegated to the Regional Administrator of EPA, Region 9, and re-delegated by the Regional Administrator to the Director of the Water Division of EPA, Region 9.

FINDINGS OF VIOLATION

On the basis of the following facts, the Director of the Water Division of EPA, Region 9, finds that the City and County of Honolulu (CCH) is in violation of the National Pollutant Discharge Elimination System (NPDES) permit No. HI0020117 for the Sand Island Wastewater Treatment Plant (Sand Island WWTP), and in violation of Section 301(a) of the Act, 33 U.S.C. Section 1311(a):

1. CCH is a municipality or political subdivision of the State organized under the laws of the State of Hawaii. CCH is therefore a "person" as defined by Section 502(5) of the Act, 33 U.S.C. Section 1362(5), and is thus subject to its requirements.

2.  CCH is the owner and operator of Sand Island WWTP located at 1150 San Island Parkway Road, which provides treatment to wastewater from Honolulu, Hawaii.

3.  Sand Island WWTP discharges to Mamala Bay of the Pacific Ocean, which is a "navigable water" as defined by Section 502(7) of the Act, 33 U.S.C. Section 1362(7), and "waters of the United States" as defined by EPA regulations in 40 C.F.R. Section 122.2.

4.  Section 301(a) of the Act, 33 U.S.C. Section 1311(a), prohibits the discharge of pollutants to waters of the United States except in compliance with certain sections of the Act, including Section 402, 33 U.S.C. Section 1342. Section 402 of the Act authorizes EPA, or delegated States, to issue National Pollutant Discharge Elimination System (NPDES) permits allowing for the discharge of pollutants into waters of the United States. Compliance with Section 301(a) of the Act, 33 U.S.C. Section 1311(a), therefore, requires compliance with a valid NPDES permit, inter alia.

5.  Section 301(h) of the Act, 33 U.S.C. Section 1311(h), authorizes EPA with the concurrence of the State, to issue a NPDES permit allowing publicly owned treatment works (POTWs) to discharge treated wastewater to marine waters with effluent limitations that will not meet the secondary treatment requirements under Section 301(b)(1)(B) of the Act, 33 U.S.C. Section 1311(b)(1)(B). Issuance of a Section 301(h) permit requires a determination that certain regulatory requirements have been met.

6.  EPA has delegated responsibility for implementation of the NPDES program within Hawaii to the State of Hawaii's Department of Health. However, EPA retains the responsibility for determining whether Section 301(h) requirements have been met.

7.  On September 30, 1998, EPA and Hawaii Department of Health issued NPDES permit No. HI0020117 to CCH, under the authority of Section 402(a) of the Act, 33 U.S.C. Section 1342 (a). Requirements of the permit incorporate the EPA granted variance from secondary treatment requirements issued under Section 301(h) of the Act, 33 U.S.C. Section 1311(h). The permit became effective on November 2, 1998 and will not expire until November 2, 2003. Section A.1. of the permit No. HI0020117 sets forth the discharge limits for specified constituents of the effluent discharged from Sand Island WWTP.

8.  CCH has violated Section 301(a) of the Act, 33 U.S.C. Section 1311(a), by failing to meet effluent limits in violation of permit No. HI0020017 for Sand Island WWTP. A review of Discharge Monitoring Reports (DMRs) shows violations of discharge limit for chlordane concentration for the month of

February 1999; $BOD_5$ concentration for the months of May and July, 1999; and $BOD_5$ percent removal for the months of April, July and August, 1999. The violations of effluent limits are summarized in Table I, which is attached to and made part of this finding of Violations.

9. On August 12, 1999, CCH transmitted to EPA the Sand Island WWTP Disinfection Study. This document was submitted as required under Section A.2.g. of the NPDES permit No. HI0020117. The permit requires the planning document to be completed by June 30, 1999, and that the planning document provides for a disinfection facility that will be operated continuously and achieve effective disinfection. Effective disinfection is defined as compliance with a maximum daily discharge limit of 18,000 CFU/100 ml for enterococci. EPA finds that the study presented by CCH is in violation of the requirements of the permit due to the following deficiencies:

A. The Study does not include a final design flow. The Study is based on an average flow of 80 MGD and a peak flow of 150 MGD. The Sewer Rehabilitation and Infiltration and Inflow Minimization Plan predicts a 270 MGD peak wet weather flow into the Sand Island WWTP. The disinfection study does not address how CCH plans to operate the plant during wet weather conditions.

B. According to the Study, use of UV disinfection is ineffective with poor quality primary wastewater effluent:

 i. Page ES-2: " ... UV disinfection is not used for primary wastewater effluent, and organic material, suspended solids, and other material in wastewater interfere and absorb UV light, and shield bacteria, all of which restricts disinfection."

 ii. Pages 3-8 and 3-9: "Primary effluent disinfection is a relatively new application for ultraviolet systems. Early UV installations (mid-1980s) at wastewater plants were used for the disinfection of high quality secondary effluent, such as for R-1 reuse applications, and have since become an accepted practice for disinfection of secondary and tertiary treated wastewater. Since the late 1980s, much research has focused on the UV disinfection of water such as lower quality secondary effluents, combined sewer overflows (CSOs), and advance primary wastewater effluent.

 At present, Canada has approximately seven UV system for disinfection of chemically enhanced primary treatment (CEPT) wastewater effluent that were anticipated to startup in 1998 or 1999." "There are currently no installations in the United States."

C. The report does not include adequate operations and maintenance practices, and a pilot test of the UV system:

i. According to the report, Page 5-14, "... the labor-intensive operation of removal and replacement of the lamp bank is typically performed monthly at many plants". However, the proposed design on Page 7-12 only accounts for "self-cleaning devices." In addition, costs listed in Page 8-4 do not include redundancy, and "... at maximum flow, all channels and all lamps must be on at full power to achieve the design 25 mW-s/cm2 dose at 20% UVT". The proposed design does not guarantee continuous disinfection during high flows and maintenance activities.

ii On Pages 8-4 and 8-5, the report states "If UV disinfection is selected for this facility, pilot testing or some other proof of UV manufacturer competency should be required. Historically, there have been UV projects which have been constructed and were not able to achieve the required dose, or had an unacceptable head loss when full-scale flow was tested. There have also been cases of premature equipment failures. Since primary effluent disinfection is a relatively new UV application, the City should consider pilot testing of *qualified* manufactures to assure that the equipment is sound and can achieve the necessary dose."

10. The "Standard NPDES Permit Conditions", Section 9 of the NPDES permit No. HI0020117 requires CCH to properly operate and maintain the Sand Island WWTP. CCH has violated this requirement due to deficiencies identified by the Hawaii Department of Health in its inspection of the Sand Island WWTP as set forth below.

On July 1, 1999, the Hawaii Department of Health conducted an Operation and Maintenance Inspection of the Sand Island WWTP. The inspection report gives a "Conditional Acceptance" rating based on the following deficiencies:

A. In-plant spills: 15 minor spills (<100 gallons), one spill on 10/8/98 of approximately 300 gallons, and one spill on 4/1/99 of approximately 500 gallons.

B. Violations of effluent limits in the NPDES permit.

C. Clarifier DAF Nos. 1, 2, 5, and 6 should be refurbished as soon as possible. Each clarifier showed signs of excessive corrosion. The sludge pumps were leaking excessively. Oil was noted leaking from the center drive motors of a couple of the clarifiers. Furthermore, the recirculation lines for these

CWA-309-9-00-003          Page 4 of 9

25075

   clarifiers were still leaking. This comment was noted in last year's inspection report.

D. The spare parts inventory system should be re-evaluated. Many parts are being purchased on an "as needed basis," resulting on delays of three weeks to five months to complete repairs. The delays have impacted the heat treatment units to process the sludge.

E. The facility appears to be inadequately staffed. Personnel often work 16 hour shifts to support normal facility operations.

F. The facility may experience problems complying with the 30 percent $BOD_5$ removal rate requirement because the $BOD_5$ strength of the wastewater is expected to increase.

## ORDER FOR COMPLIANCE

Considering the foregoing Findings, EPA has determined that compliance in accordance with the following requirements is reasonable. Pursuant to the authority of Sections 308 and 309 of the Act, 33 U.S.C. Sections 1318 and 1319, it is hereby ordered that City and County of Honolulu comply with the following requirements:

## CORRECTION PLAN

11. Immediately upon receipt of this Order, CCH shall initiate measures to prevent further violations of effluent limits and bring Sand Island WWTP into continuous compliance with NPDES permit No. HI0020117 Section A.1. By December 15, 1999 (with the November 1999 DMR), CCH shall submit a report on the actions taken to ensure compliance with the effluent limits set in the permit.

12. By December 15, 1999 (with the November 1999 DMR), CCH shall submit a short-term plan to describe the actions taken by CCH to assure full compliance with NPDES permit No. HI0020117. The plan shall include:

  A. A schedule to conduct an independent evaluation of the operation and maintenance of Sand Island WWTP. At minimum, the evaluation must include the following deficiencies:
   1. In-plant spills
   2. Refurbishing of clarifiers
   3. Adequacy of the spare parts inventory
   4. Staffing levels at the plant
  The schedule shall propose dates for implementation of recommendations.

      B.    A schedule to install treatment upgrades that will ensure continuous compliance with permit conditions. The treatment upgrades shall be in operation by December 15, 2000. CCH shall submit a final report when treatment upgrades are in operation.

13.    By December 31, 1999, CCH shall submit a comprehensive analysis of the different options considered under the long-term plans for upgrading treatment at Sand Island WWTP including: Sand Island Wastewater Treatment Plant Unit 1 Phase 2A, Sand Island Wastewater Treatment Plant Primary Treatment Expansion, Sand Island Wastewater Treatment Plant Disinfection Facility, Sand Island Wastewater Treatment Plant Interim Chemical Treatment Facility Improvements, Sewer Rehabilitation and Infiltration & Inflow Minimization Plan, and options for treatment of soluble $BOD_5$. This analysis should ensure full and continuous compliance with permit conditions, 301(h) variance criteria, and Consent Decree requirements for sewer rehabilitation.

14.    By December 31, 1999, CCH shall submit a revised Disinfection Study to address the following deficiencies:

      A.    The study must have a final design flow consistent with all long-term plans, and must address treatment of wet weather flow.

      B.    The study must evaluate treatment options to maintain a good quality wastewater effluent that could be disinfected by UV.

      C.    The study must include design considerations to address redundancy, to ensure proper maintenance of UV lamps, and to implement a pilot test.

OTHER REQUIREMENTS AND CONDITIONS

15.    All reports submitted pursuant to this order must be signed by a principal executive officer, ranking elected official or duly authorized representative of CCH [as specified by 40 C.F.R. Section 122.22 (b)(2)] and shall include the following statement:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, I certify that the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there

are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

16. All submissions requested by this Order shall be mailed to the following addresses:

U.S. Environmental Protection Agency
Attention: Jeremy Johnstone
Office of CWA Compliance (WTR-7)
Water Division
75 Hawthorne Street
San Francisco, CA 94105

Department of Health, State of Hawaii
Attention: Dennis R. Lau
Clean Water Branch
P.O. Box 3378
Honolulu, Hawaii 96801

All telephone inquiries should be made to Jeremy Johnstone at (415) 744-1895.

17. Any violation of the terms of the enclosed Order or the NPDES permit could subject CCH to a civil action for appropriate relief pursuant to Section 309 (b) of the Act, 33 U.S.C. Section 1318 (b), and/or civil penalties not to exceed $27,500 per day for each violation. Under Section 309 (g) of the Act, 33 U.S.C. Section 1319 (g), any violation of the NPDES permit could subject CCH to an administrative penalty action of up to $11,000 per day of violation not to exceed $137,500. In addition, Section 309 (c) of the Act, 33 U.S.C. Section 1319 (c), provides for criminal penalties in the event of either negligent or knowing violations of the Act. Negligent violations of the Act are punishable by a fine of not less than $2,500 no more than $25,000 per day of violation, or imprisonment for not more than one year, or both (Section 309 (c) (1), 33 U.S.C. Section 1319 (c) (1)). Knowing violations of the act shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or imprisonment for not more than three years, or both (Section 309 (c) (2), 33 U.S.C. Section 1319 (c) (2)).

18. This Order does not waive or modify or in any way relieve CCH of its obligations imposed by the Act or any other Local, State, or Federal law. EPA reserves the right to seek any and all remedies available under Section 309 (b), (c), (d), or (g) of the Act, 33 U.S.C. Section 1319 (b), (c), (d) or (g), for any violation cited in this Order.

19. Issuance of an Order for Compliance shall not be deemed an election by EPA to forego any administrative, civil, or criminal action to seek penalties, fines, or other appropriate relief under the Act.

20. This Order shall become effective upon the date of receipt by CCH.

27 October 1999
Date

Alexis Strauss, Director
Water Division

CWA-309-9-00-003        Page 8 of 9

25079

Table I. Summary of Violations of Effluent Limitations

City and County of Honolulu
Sand Island Wastewater Treatment Plant
NPDES permit No. HI0020117
Reporting Period: January, 1999 to August, 1999.

| Parameter | Limit | Dates | Value | Days of violation |
|---|---|---|---|---|
| Chlordane, daily maximum | 0.38 µg/L | February 1999 | 2.96 µg/L | 1 |
| $BOD_5$, percent removal monthly average | 30 % | April 1999<br>July 1999<br>August 1999 | 28 %<br>23 %<br>29 % | 30<br>30<br>30 |
| $BOD_5$, concentration monthly average | 116 mg/L | May 1999<br>July 1999 | 118 mg/L<br>117 mg/L | 30<br>30 |