CARRIE OKINAGA, 5958
Corporation Counsel
MAILE R. CHUN, 4906
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone: (808) 527-5351
Facsimile: (808) 523-4583
Email: mchun@co.honolulu.hi.us

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400
Facsimile: (213) 680-6499
Email: nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAII CHAPTER, HAWAII'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>　　　　Defendant. | CIV. NO. CV04-00463 DAE-BMK<br><br>**DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO STAY**<br><br>Date:　　TBD<br>Time:　　TBD<br>Judge:　　Hon. David A. Ezra |

TABLE OF CONTENTS

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT .............................. 1

II.    BACKGROUND ........................................................................ 6

       A.    The Governments' 1994 Lawsuit ......................................... 6

       B.    Plaintiffs' Lawsuit ............................................................ 6

       C.    Interim Settlement Discussions And The Stipulated Order ............... 8

       D.    The Tolling Agreement And Imminent Settlement Negotiations
             On The Global Issues ........................................................ 9

       E.    Magistrate Chang Encouraged A Motion To Stay If The Parties
             Pursue Settlement ........................................................... 10

       F.    Plaintiffs' Litigation Tactics Have Resulted In Delay In Global
             Negotiations .................................................................. 11

       G.    Plaintiffs Are Currently Pursuing Litigation; Accordingly A
             Stay Is Necessary Now .................................................... 12

III.   ARGUMENT .......................................................................... 12

       A.    The Court Has The Power To Stay This Action ......................... 13

       B.    Judicial Economy Will Be Served If This Action Is Stayed ............. 14

       C.    Plaintiffs Will Not Be Prejudiced If This Court Grants A Stay ........ 15

       D.    CCH Will Be Prejudiced If A Stay Is Not Granted ...................... 17

       E.    A Stay Is Necessary Now Because Plaintiffs Are Pursuing
             Litigation ..................................................................... 18

IV.    CONCLUSION ....................................................................... 19

ACTIVE/40378913.3/2017866-0000309724

# TABLE OF AUTHORITIES

<u>Page</u>

<u>Cases</u>

<u>Ahern v. Cent. Pac. Freight Lines,</u>
 846 F.2d 47 (9th Cir. 1988).................................................................. 16

<u>Clinton v. Jones,</u>
 520 U.S. 681, 117 S.Ct. 1636, L. Ed. 2d 945 (1997)......................................... 13

<u>Coalition for a Livable Westside,</u>
 830 F. Supp. 194 (S.D.N.Y. 1993).................................................... 17

<u>Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Found., Inc.,</u>
 484 U.S. 49, 108 S.Ct. 376, 98 L. Ed. 2d. 306 (1987)...................................... 16

<u>Industrial Communications Sys., Inc. v. Pacific Tel. & Tel. Co.,</u>
 505 F.2d 152 (9th Cir. 1974).......................................................... 15

<u>Leyva v. Certified Grocers of California, Ltd.,</u>
 593 F.2d 857 (9th Cir. 1979).......................................................... 13

<u>Lockyer v. Mirant Corp.,</u>
 398 F.3d 1098 (9th Cir. 2005)..................................................... 13, 14

<u>Statutes</u>

33 U.S.C. § 1251 ..................................................................... 1

Section 505(b)(1)(B) ................................................................. 7

ACTIVE/40378913.3/2017866-0000309724

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

        This lawsuit is one of several pending judicial and administrative

actions against the City and County of Honolulu ("CCH") based on CCH's

wastewater collection and treatment system.  Plaintiffs Sierra Club, Hawaii

Chapter, Hawaii's Thousand Friends, and Our Children's Earth Foundation

(collectively, "plaintiffs") filed this action pursuant to the citizen suit provision of

the Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq.  Plaintiffs seek civil

penalties and injunctive relief based on alleged violations of CCH's National

Pollutant Discharge Elimination System ("NPDES") Permits for its Sand Island

and Honouliuli Wastewater Treatment Plants ("WWTP"), as well as alleged

violations of two administrative orders issued under the CWA by the

Environmental Protection Agency ("EPA").  Because the claims in this action are

*entirely duplicative of imminent settlement negotiations* by and between CCH,

EPA and the State of Hawaii Department of Health ("DOH") (EPA and DOH are

collectively referred to herein as the "Governments"), CCH requests that this

action be stayed pending the outcome of these negotiations with the Governments,

subject to a lifting of the stay by the Court upon a showing of good cause by any

party.  Plaintiffs have already agreed to a stay of litigation as a condition of

intervening in a 1994 lawsuit brought by the Governments involving CCH's

1

collection system, and Magistrate Chang has ruled that any party may file a motion to stay litigation to facilitate good faith settlement negotiations.

Plaintiffs' action was initially brought on July 29, 2004, against a backdrop of various ongoing enforcement actions taken by one or both of the Governments against CCH relating to CCH's wastewater collection and treatment systems, including a 25-year, $910,000,000 comprehensive collection system injunctive relief program under a 1995 Consent Decree between CCH and EPA. In late 2005 and early 2006, the Governments informed CCH of potential additional enforcement related to (1) treatment system issues, (2) additional collection system issues not addressed in the 1995 Consent Decree, and (3) alleged violations of the 1995 Consent Decree and other enforcement orders (collectively, the "Global Issues"). In lieu of additional litigation on the Global Issues, CCH and the Governments agreed instead to pursue settlement discussions on these comprehensive issues. CCH also agreed that plaintiffs could participate in these negotiations, on the condition that plaintiffs agree to stay this lawsuit so that the parties could pursue settlement without wasting resources on unnecessary, duplicative litigation. Plaintiffs agreed to stay this action, and a joint stipulation providing for the stay was approved on April 11, 2006.

In March 2006, prior to the commencement of settlement discussions regarding the Global Issues, CCH experienced a failure of its Beachwalk Force

ACTIVE/40378913.3/2017866-0000309724

Main, which resulted in a 48 million gallon spill from the collection system. The Beachwalk spill highlighted pressing needs with regard to certain of CCH's force mains, an issue not covered under the 1995 Consent Decree. As a result, CCH, the Governments and plaintiffs agreed to focus their initial settlement efforts on these critical interim issues before focusing on the broader Global Issues. Plaintiffs, however, unilaterally walked away from these settlement negotiations in August 2006, and again in February 2007. Despite plaintiffs' refusal to participate in the settlement talks, CCH and the Governments ultimately were successful in negotiating a settlement, and a Complaint and Stipulated Order providing for injunctive relief for the force main issues was lodged in this Court on May 8, 2007 ("Beachwalk Lawsuit"). In addition to the Stipulated Order, the Governments also agreed to stay any additional enforcement related to CCH's collection and treatment system for a period of at least five months after lodging of the Stipulated Order so that CCH and the Governments could focus on the settlement of the Global Issues.

Settlement talks on the Global Issues were postponed due to plaintiffs' subsequent motion to intervene in the Beachwalk Lawsuit, whereby plaintiffs sought to expand the issues in that lawsuit and discard the terms of the Stipulated Order. As a result of plaintiffs' action, the Court postponed its consideration of the Stipulated Order until after plaintiffs submit a "concurrence" or "challenge" to the

3

Stipulated Order, which is currently due August 24, 2007. Thus, but for plaintiffs'
efforts to undermine the Stipulated Order and delay its entry, CCH and the
Governments almost certainly would currently be engaged in the global
negotiations.

Despite the setback, CCH fully intends to enter settlement
negotiations on the Global Issues as soon as the Court makes a decision whether or
not to enter the Stipulated Order. Although these settlement negotiations have not
yet begun due to the delay in entry of the Stipulated Order, *a stay is necessary at
this time because plaintiffs continue to litigate unilaterally claims that will be
addressed in the global negotiations.* In particular, plaintiffs recently have filed a
Motion for Partial Summary Judgment on their Third, Fourth and Eighth claims,
alleging 17,595 violations of the CWA. Opposing this motion will require a
significant commitment of time and resources by CCH, its attorneys and its
technical consultants.

Accordingly, CCH respectfully requests that the Court stay this action
pending the outcome of the upcoming global negotiations, subject to being lifted
by the Court upon a showing of good cause by any party, so these negotiations can
commence and proceed unhindered by duplicative and unnecessary litigation. A
stay will not only facilitate the negotiations by allowing the parties to focus on
resolving the Global Issues, it will also serve judicial economy and preserve

4

resources by avoiding unnecessary litigation. Further, plaintiffs will not be prejudiced by a stay because the federal and state regulators charged with overseeing CCH's collection and treatment system and responsible for protecting the public interests are addressing the very issues raised in plaintiffs' lawsuit. Moreover, plaintiffs can proceed with their claims, in the event the settlement negotiations are unsuccessful. CCH, on the other hand, will be prejudiced if a stay is not granted because it will be forced to commit significant resources defending against a duplicative and unnecessary litigation. Simply stated, rather than facilitating a resolution, the pursuit of the instant action in Court, including but not limited to the Motion for Partial Summary Judgment, ultimately will hinder the chances of a successful negotiation on the Global Issues. Indeed, Magistrate Chang recently encouraged the parties to seek a stay of litigation in the similar 1994 lawsuit if the parties choose to engage in settlement discussions.

CCH has already shown that it is committed to resolving potential enforcement through settlement. It should be given the chance to seek to resolve the Global Issues informally, without wasting time and money defending its interests in Court. Accordingly, CCH respectfully requests all litigation in this action be immediately stayed.

ACTIVE/40378913.3/2017866-0000309724

## II.    BACKGROUND

### A.    The Governments' 1994 Lawsuit

On October 3, 1994, the Governments initiated a lawsuit against CCH involving, among other things, spills from CCH's wastewater collection and treatment system ("Government Lawsuit").  Declaration of Maile R. Chun in Support of Ex Parte Application and Motion to Stay ("Chun Decl."), ¶ 4.  As a result of the lawsuit, on May 15, 1995, CCH and the Governments entered into a Consent Decree that proscribed a 25-year, $910,000,000 comprehensive injunctive relief program under the direction of EPA specifically designed to address spills from CCH's collection system ("1995 Consent Decree").  Id., ¶ 5.  The Court retained jurisdiction over the Government Lawsuit pending the completion of the work proscribed in the 1995 Consent Decree.  Id., ¶ 6.

### B.    Plaintiffs' Lawsuit

Plaintiffs initially brought this action on July 29, 2004 under the citizen suit provision of the CWA, and filed a First Amended Complaint on October 1, 2004 ("Complaint").  Chun Decl., ¶ 7.  Plaintiffs' Complaint included, among other things, claims based on alleged spills from the collection system, as well as alleged violations of the Sand Island and Honouliuli NPDES Permits relating to treatment plant issues and alleged violations of the two EPA administrative orders.  Id.  Given the Governments' prior prosecution of collection system spills, which resulted in the 1995 Consent Decree, CCH moved to dismiss

6

plaintiffs' two collection system claims under Section 505(b)(1)(B) of the CWA and under the doctrine of *res judicata*. Id., ¶ 8. On September 30, 2005, this Court dismissed both of plaintiffs' collection system claims with prejudice based on the doctrine of *res judicata*.[1] Id., ¶ 9. Seven of plaintiffs' original claims remain, each related to treatment plant issues at Sand Island or Honouliuli and alleged violations of prior EPA enforcement orders: alleged violations of effluent limitations at the Sand Island WWTP (third claim); alleged violations of compliance schedules (fourth claim); alleged violations of "proper operation and maintenance requirements for Sand Island WWTP imposed by NPDES permit conditions" (fifth claim), alleged violations of "grease program/pretreatment requirements imposed by Sand Island NPDES permit conditions" (sixth claim), alleged violations of "1999 EPA Sand Island Order" (seventh claim), alleged violations of "2002 EPA

---

[1]    In addition to plaintiffs' first and second claims relating to collections spills, the Court also dismissed three of plaintiffs' other claims: plaintiffs' ninth claim related to water reuse at the Honouliuli facility, plaintiffs' eleventh claim related to stormwater plans, and plaintiffs' twelfth claim related to permitting issues. See Order Granting Defendants' Motion to Dismiss Plaintiffs' First, Second, Ninth, Eleventh, and Twelfth Claims for Relief; Denying as Moot Defendants' Motion to Dismiss Claims that are Time-Barred; Granting Defendants' Motion to Dismiss the amended complaint as to Frank Doyle; Granting Defendants' Motion for a More Definite Statement; Denying Defendants' Motion to Stay the Action; Denying Plaintiffs' Counter Motion for Summary Judgment on Plaintiffs' Twelfth Claim; and Denying Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third, Fourth, Eighth, and Twelfth Claims ("September 30, 2005 Order"), attached to the Chun Decl. as Exhibit A.

ACTIVE/40378913.3/2017866-0000309724

Sand Island Order" (eighth claim), and alleged violations of "proper operation and

maintenance and monitoring requirements for Honouliuli WWTP imposed by

NPDES permit conditions" (tenth claim).  Id., ¶ 13.

C.    Interim Settlement Discussions And The Stipulated
        Order

In late 2005 and early 2006, the Governments informed CCH of

potential additional enforcement regarding some or all of the Global Issues.  Chun

Decl., ¶ 14.  CCH agreed to allow plaintiffs to participate in these discussions only

on the condition that plaintiffs agree to stay this lawsuit "to avoid the expense of

additional litigation during these negotiations."  Id., ¶ 15.  On April 11, 2006, the

Court entered a Joint Stipulation Re Stay of Litigation, attached to the Chun Decl.

as Exhibit B, providing for the stay of this lawsuit and any new claims by plaintiffs

until "at least" September 29, 2006.  Id., ¶ 16.

Prior to the commencement of these settlement talks, on March 24,

2006, CCH experienced a failure of its Beachwalk Force Main, resulting in a spill

of approximately 48 million gallons from the collection system.  Chun Decl., 18.

The Beachwalk spill highlighted urgent needs with regard to certain of CCH's

collection system force mains.  Id., ¶ 19.  As a result, CCH, the Governments and

plaintiffs chose to focus their initial settlement discussions on these critical issues

before pursuing broader settlement on the Global Issues.  Id.  Discussions on these

interim issues proceeded throughout 2006 and into 2007. Id., ¶ 20.  Plaintiffs,

8

however, unilaterally walked away from these negotiations in August 2006 and again in February 2007.[2]  Id.  Despite plaintiffs' refusal to participate, CCH and the Governments continued to pursue settlement, and ultimately were successful in coming to an agreement on the critical force main issues.  Id., ¶ 21.  On May 8, 2007, the EPA lodged a Complaint and "Stipulated Order" (the "Beachwalk Lawsuit") setting forth the terms of this interim force main settlement, which includes a significant injunctive relief program and a substantial resource commitment by CCH.  Id.

D.    The Tolling Agreement And Imminent Settlement
       Negotiations On The Global Issues

       In the Stipulated Order, CCH and the Governments recognized that, "following entry" of the Stipulated Order, CCH and the Governments "intend to negotiate in good faith a comprehensive remedy addressing all compliance issues associated with CCH's wastewater system."  Chun Decl., ¶ 21.  To "facilitate additional negotiations," on May 10, 2007, CCH and the Governments also entered into a Tolling Agreement in order to "negotiate in good faith a comprehensive remedy."  Id., ¶ 22.  Under the Tolling Agreement, which is attached to Chun Decl.

---

[2]    After a September 28, 2006 status conference before Magistrate Chang, plaintiffs returned to the settlement table.  Chun Decl., ¶ 20.  Plaintiffs did not return to settlement discussions after their February 2007 exit, however, and instead pursued litigation activities by bringing their motion to intervene in the Government Lawsuit.  Id., ¶¶ 20, 24.

9

as Exhibit D, the Governments shall forbear from filing any claims under state or federal law in relation to CCH's "collection, conveyance and treatment systems" until at least September 7, 2007 (*i.e.*, 120 days after the effective date of the Tolling Agreement). Id. Further, after September 7, 2007, any party must provide 30 days written notice of termination of the settlement negotiations. Id. The Tolling Agreement expires one year from the date this Court enters the Stipulated Order or July 31, 2008, whichever is earlier. Id.

E.    Magistrate Chang Encouraged A Motion To Stay If The Parties Pursue Settlement

On May 4, 2007, Magistrate Chang conditionally granted plaintiffs' motion to intervene in the Government Lawsuit. Chun Decl., ¶ 26. As a condition of intervention, plaintiffs may not seek to overturn any provision of the 1995 Consent Decree and must seek leave of Court before filing any motion regarding the enforcement of the 1995 Consent Decree. Magistrate Chang's May 4, 2007 Findings and Recommendations is attached to the Chun Decl. as Exhibit F. Additionally, because Magistrate Chang understood that CCH and the Governments were on the verge of comprehensive settlement talks, a topic discussed at great length at the April 17, 2007 hearing on the motion to intervene, Magistrate Chang specifically noted that "any party may file a motion to stay the litigation for a reasonable period of time to allow the parties to further engage in settlement discussions" and the Court also offered to "facilitate" settlement

10

through periodic telephonic conferences.[3]  Chun Decl., ¶ 26.  Finally, Magistrate

Chang noted that at the April 17 hearing, plaintiffs "voluntarily agreed to . . . a stay

of litigation for four months to allow for settlement negotiations."  Id.

     F.     <u>Plaintiffs' Litigation Tactics Have Resulted In Delay In
Global Negotiations</u>

     Global settlement negotiations have not commenced under the Tolling

Agreement due to plaintiffs' efforts to derail the Stipulated Order.  Specifically, on

May 24, 2007, plaintiffs filed a Motion to Intervene in the Beachwalk Lawsuit

seeking to expand the issues in that lawsuit and to discard the terms of the

settlement.  Chun Decl., ¶ 27.  Plaintiffs' motivation was revealed by their June 13,

2007 public comments to the Stipulated Order, which asks EPA to set aside the

Stipulated Order despite the critical nature of the issues and the year's worth of

arms-length negotiations that resulted in the EPA-approved settlement.  Id., ¶ 28.

On June 26, 2007, this Court issued an Order staying its decision on the Stipulated

Order pending plaintiffs' submission to the Court of a "challenge" or

"concurrence" to the Stipulated Order.  Id., ¶ 29.  Plaintiffs' submission is due by

August 24, 2007 (id.), and there is little doubt they will seek to expand litigation

_____

[3]     Although the motion for intervention was brought in the Government
Lawsuit, Magistrate Chang's logic applies with equal force to the instant lawsuit.
The parties should not be compelled to litigate the same claims they are working to
settle.

even further by challenging in Court the settlement achieved between CCH and the Governments.

As a result of plaintiffs' efforts to undermine the Stipulated Order and delay its entry, CCH and the Governments have not recommenced settlement negotiations as the parties wait until the fate of the Beachwalk Stipulated Order has been determined.  Chun Decl., ¶ 30.

G.     Plaintiffs Are Currently Pursuing Litigation; Accordingly
        A Stay Is Necessary Now

On July 26, 2007, plaintiffs filed a Motion for Partial Summary Judgment on their Third, Fourth, and Eighth claims, alleging 17,595 violations of the CWA.  Chun Decl., ¶ 31.  These claims are duplicative of issues that will be addressed in the global negotiations between CCH and the Governments.  CCH's opposition to their Motion will require a significant commitment of time and resources by CCH, its attorneys and its technical consultants (the latter of which intend to show that questions of fact exist as to many of the alleged violations).  Id., ¶ 33.

III.   ARGUMENT

CCH requests that the Court stay plaintiffs' action in its entirety pending the negotiations between CCH, EPA, and DOH of a comprehensive remedy addressing the Global Issues, subject to being lifted by the Court upon a showing of good cause by any party.

12

A.    The Court Has The Power To Stay This Action

"A district court has discretionary power to stay proceedings in its own court." Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005). The District Court's "broad discretion to stay proceedings" is "an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L. Ed. 2d 945 (1997). Accordingly, in a "just determination of the cases pending before it," a court may stay an action pending the resolution of another proceeding:

A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

The Ninth Circuit has outlined the considerations appropriate to the decision to grant or not grant a stay:

> Where it is proposed that a pending proceeding be stayed, the
> competing interests which will be affected by the granting or refusal
> to grant a stay must be weighed. Among those competing interests
> are the possible damage which may result from the granting of a stay,
> the hardship or inequity which a party may suffer in being required to
> go forward, and the orderly course of justice measured in terms of the
> simplifying or complicating of issues, proof, and questions of law
> which could be expected to result from a stay.

Mirant Corp., 398 F.3d at 1110.

Under the formulation outlined by the Ninth Circuit, this Court should stay plaintiffs' lawsuit pending CCH's and the Governments' negotiation of a comprehensive remedy on the Global Issues, subject to a lifting of the stay upon a showing of good cause by any party.

B.    Judicial Economy Will Be Served If This Action Is
      Stayed

The limited time and resources of the Court will be conserved if the Court stays plaintiffs' remaining claims and allows CCH and the Governments to resolve the complex and technical issues associated with the CCH's wastewater and collection system issues informally and without being hampered by litigating these same issues in Court. It simply makes no sense for the Court to offer to facilitate settlement, as Magistrate Chang graciously offered in his May 4 Findings

14

and Recommendation, while being forced to oversee active litigation of the issues being settled. Further, judicial economy will be served if the Court defers to the judgment of EPA and DOH -- the agencies charged with regulating CCH's collection and treatment system -- on the complex issues associated with wastewater conveyance and treatment. See Industrial Communications Sys., Inc. v. Pacific Tel. & Tel. Co., 505 F.2d 152, 157 (9th Cir. 1974) (in upholding a stay pending an administrative action, the Ninth Circuit stated that the responsible state agency "is much better equipped than the courts, 'by specialization, by insight gained through experience, and by more flexible procedure,' to gather the relevant facts that underlie a particular claim").

Because judicial economy will be served, and because Magistrate Chang implicitly recognized that settlement should proceed unhindered by litigation in his May 4 Findings and Recommendation, this Court should stay this lawsuit pending negotiations on the Global Issues, subject to a lifting of the stay by the Court upon a showing of good cause by any party.

C.    Plaintiffs Will Not Be Prejudiced If This Court Grants A
      Stay

As discussed in detail above, CCH and the Governments have worked diligently over the last year on a settlement of an urgent issue related to CCH's collection system, and succeeded in negotiating the Stipulated Order, which contains a comprehensive injunctive program addressing these force main issues.

15

CCH and the Governments hope to take advantage of the momentum and goodwill achieved over the last year to continue settlement discussions on the remaining Global Issues.  Thus, through the Governments' action in settlement, plaintiffs' and the public's interests are being fully represented.[4]  Indeed, such negotiations, and the settlements they lead to, are strongly favored in the Ninth Circuit.  Ahern v. Cent. Pac. Freight Lines, 846 F.2d 47, 48 (9th Cir. 1988) (the Ninth Circuit is "firmly committed to the rule that the law favors and encourages compromise settlements . . .There is an overriding public interest in settling and quieting litigation . . . It is well recognized that settlement agreements are judicially favored as a matter of sound public policy.  Settlement agreements conserve judicial time and limit expensive litigation") (internal quotations and citations omitted).

Additionally, CCH is willing to discuss terms under which plaintiffs may participate in these negotiations.  However, based on the settlement talks on the critical force main issues, CCH is obviously concerned that plaintiffs will once again -- despite the gains made between the Governments and CCH -- unilaterally walk away from the settlement table and attempt to derail the negotiations through re-starting litigation.

---

[4]    See Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Found., Inc., 484 U.S. 49, 58-61, 108 S.Ct. 376, 98 L. Ed. 2d 306 (1987) (because the "citizen suit is meant to supplement rather than supplant governmental action," the citizen's role should be "interstitial" rather than "potentially intrusive").

ACTIVE/40378913.3/2017866-0000309724

Because the Governments are representing the public's interest in settlement, plaintiffs are not prejudiced by the stay and, accordingly, the stay should be granted.

D.    CCH Will Be Prejudiced If A Stay Is Not Granted

CCH will be prejudiced if this action is not stayed. CCH is a public entity with limited resources to expend on the improvement of its wastewater collection system. CCH and its constituency will suffer prejudice if it is required to unnecessarily expend substantial resources on a duplicative action while pursuing settlement of these *same* issues with the Governments. See Coalition for a Livable Westside, 830 F. Supp. 194, 197 (S.D.N.Y. 1993) ("a court which entertains a citizen action for injunctive relief can manage the action so as to ensure that the diligently pursued State enforcement action will dominate and that the city will not be whipsawed by multiple actions"). Moreover, CCH will be further prejudiced if subjected to different and inconsistent injunctive relief as a result of the present action. See id. ("Of course, the federal court must manage the citizen suit seeking injunctive relief with deference to the injunctive relief already applied by the state prosecution. This deference will ensure that a defendant is not subject to different and inconsistent injunctive relief").

Indeed, both Magistrate Chang and plaintiffs have already acknowledged that a stay of litigation is appropriate when the parties are pursuing

17

settlement discussions.  In the May 4 Findings and Recommendation, Magistrate Chang ruled that any "any party may file a motion to stay the litigation for a reasonable period of time to allow the parties to further engage in settlement discussions," thus implicitly recognizing that ongoing litigation is not conducive to settlement. Chun Decl., ¶ 26.  Furthermore, it is obvious from the Findings and Recommendation that Magistrate Chang is interested in helping the parties facilitate settlement. Id.  Moreover, Magistrate Chang recognized that plaintiffs, themselves, have volunteered to stay litigation "to allow for settlement negotiations." Id.  Thus, plaintiffs, too, implicitly recognize that litigation can be a hindrance to successful settlement, and settlement and litigation should not be pursued simultaneously.

Accordingly, because CCH will be prejudiced if it is compelled to expend limited resources on litigating the same claims it seeks to settle, the Court should stay this lawsuit pending the outcome of the settlement negotiations on the Global Issues, subject to a lifting of the stay by the Court upon a showing of good cause by any party.

E.    A Stay Is Necessary Now Because Plaintiffs Are
        Pursuing Litigation

On July 26, 2007, plaintiffs filed a Motion for Partial Summary Judgment on their Third, Fourth, and Eighth claims, alleging 17,595 violations of the CWA.  Chun Decl., ¶ 31.  These claims are *duplicative* of issues that will be

18

addressed in the global negotiations between CCH and the Governments. CCH's

opposition to their Motion will require a significant commitment of time and

resources by CCH, its attorneys and its technical consultants (the latter of which

intend to show that questions of fact exist as to many of the alleged violations).

Id., ¶ 33. CCH should not be forced to litigate issues unilaterally with plaintiffs

now when the Governments will pursue these same issues later, commencing with

the settlement negotiations.

IV.    CONCLUSION

        For each and all of these reasons, CCH respectfully requests that the

Court stay plaintiffs' lawsuit pending the commencement and completion of

CCH's negotiations with the Governments addressing a comprehensive remedy on

the Global Issues, subject to a lifting of the stay by the Court upon a showing of

good cause by any party.

DATED:    Honolulu, Hawaii         Respectfully submitted,
          August 14, 2007
                                   CARRIE OKINAGA
                                   Corporation Counsel


                                   By:  /s/Maile R. Chun
                                        Maile R. Chun
                                        Attorneys for Defendant
                                        The City and County Of Honolulu