CARRIE K. S. OKINAGA, 5958
Corporation Counsel
MAILE R. CHUN, 4906
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone: (808) 527-5351/Facsimile: (808) 523-4583
Email: mchun@co.honolulu.hi.us

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400/Facsimile: (213) 680-6499
Email: nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAII CHAPTER, HAWAII'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | CIV. NO. CV04-00463 DAE-BMK<br><br>**DEFENDANT CITY AND COUNTY OF HONOLULU'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO STAY; DECLARATION OF MAILE R. CHUN; EXHIBITS A AND B; CERTIFICATE OF SERVICE**<br><br>Date:   September 10, 2007<br>Time:  11:15 a.m.<br>Judge: Hon. David A. Ezra |

I.  CCH HAS INVITED PLANTIFFS TO PARTICIPATE IN IMMINENT SETTLEMENT DISCUSSIONS, WHICH WOULD MAKE THIS MOTION UNNECESSARY; PLAINTIFFS HAVE NOT RESPONDED TO THE INVITATION

On October 1, 2007, the City and County of Honolulu ("CCH"), the United States Environmental Agency ("EPA"), and the State of Hawaii Department of Health ("DOH") (EPA and DOH are collectively referred to herein as the "Governments") will commence settlement on the Global Issues (i.e., potential additional enforcement related to (1) treatment system issues, (2) additional collection system issues not addressed in the 1995 Consent Decree, and (3) alleged violations of the 1995 Consent Decree). Attached Declaration of Maile R. Chun (Chun Decl."), ¶ 2. The Global Issues encompass the allegations in plaintiffs' Complaint. In an e-mail dated August 31, 2007, CCH invited plaintiffs to the settlement table:

> CCH would like to include the NGO's in these settlement discussions so that the NGO's concerns, to the extent different than those of the governments, can be considered during the settlement negotiations. In the past, CCH has requested that the NGO's commit in good faith to the settlement process by dismissing (without prejudice) their pending NPDES litigation against CCH prior to participating in negotiations so that the parties may focus their resources and attention on settlement

1

rather than on costly and unnecessary litigation. The NGO's have rejected this approach. In an effort to reach a compromise on this issue, CCH asks that the NGO's agree to stay their pending litigation against CCH and not pursue additional litigation during the pendency of the negotiations as a condition precedent to their participation in the negotiations…. Hopefully, we can defer completely the NGO's pending lawsuit, resolve our outstanding issues, and avoid future settlement challenges. CCH continues to believe that the public interest is better served by spending time and resources on addressing the wastewater system rather than continuously being in litigation.

Chun Decl., Exh. A. ***Plaintiffs did not respond to this invitation.*** Id.

## II. PLAINTIFFS' POSITION ON STAYS HAS BEEN INCONSISTENT AND DEFIES CREDIBILITY

In contrast to plaintiffs, CCH's position on litigation stays has been unwaveringly consistent -- litigation must be put on the backburner during settlement talks to avoid wasteful practice. Chun Decl., ¶ 3. The obvious benefits of a stay under this circumstance were recently recognized by Magistrate Chang in his May 4, 2007 Findings and Recommendation (approved by the Court on July 25, 2007), where the Magistrate recommended to this Court that "any party may

2

file a motion to stay the litigation for a reasonable period of time to allow the parties to further engage in settlement discussions" and the Court also offered to "facilitate" settlement through periodic telephonic conferences.  Motion to Stay at 10-11.

Plaintiffs' openness to stay litigation pending settlement has been inconsistent and self-serving.  For example, at the recent April 17, 2007 hearing, Magistrate Chang noted that plaintiffs "voluntarily agreed to . . . a stay of litigation for four months to allow for settlement negotiations."  Id.  Moreover, as noted in the Motion to Stay, *in April 2006, plaintiffs themselves stipulated to a stay of litigation so that the parties could pursue settlement.*  Now, although the prior stay resulted in a broad settlement with an ambitious injunctive relief program, plaintiffs will not agree to a stay so that this success can be repeated.

Apparently, plaintiffs will say whatever they think is necessary in order to achieve their goals.  When CCH argued that intervention was not appropriate because of the imminent global settlement negotiations (and more importantly, when Magistrate Chang questioned the appropriateness of active litigation in light of the upcoming settlement talks), plaintiffs suddenly and voluntarily agreed to a stay at the April 17, 2007 hearing.  Now, with no litigation advantage to be gained by agreeing to a stay, plaintiffs absurdly claim that litigation will be somehow more "expeditious" and should not "be deferred in

3

favor of CCH and EPA's prospective ***talk-athon***."[1] Opp. at 30 (emphasis added).

The Ninth Circuit has a decidedly less rosy view of litigation, and in fact, greatly prefers settlement. See Indus. Commc'ns Sys., Inc. v. Pac. Tel. & Tel. Co., 505 F.2d 152, 157 (9th Cir. 1974) (the Ninth Circuit recognized that the responsible agency "is much better equipped than the courts, 'by specialization, by insight gained through experience, and by more flexible procedure,' to gather the relevant facts that underlie a particular claim"); Ahern v. Cent. Pac. Freight Lines, 846 F.2d 47, 48 (9th Cir. 1988) (the Ninth Circuit is "firmly committed to the rule that the law favors and encourages compromise settlements . . . There is an overriding public interest in settling and quieting litigation . . . It is well recognized that settlement agreements are judicially favored as a matter of sound public policy.

---

[1] The derision in this statement is evident. What plaintiffs ignore is that the Beachwalk "talk-athon" was hugely successful by all measures and set a very aggressive schedule for addressing many of CCH's most pressing collection system needs at an estimated cost in excess of $300,000,000. Chun Decl., ¶ 4. Despite plaintiffs' ongoing (and time-consuming) litigation activities challenging the Beachwalk settlement, CCH is moving forward with these important programs because it believes action on these projects will protect its citizens. Id. Further, at just over 12 months from start to finish, the successful Beachwalk results inarguably were achieved more efficiently than had the Beachwalk claim been litigated in Court. Id. Claiming otherwise is either incredibly naïve or simply disingenuous. (Plaintiffs have requested that EPA remove the Beachwalk settlement from consideration and wastefully restart the process from the beginning under global settlement talks (see id.) -- while presumably simultaneously pursuing the Beachwalk claim in active litigation as party intervenors.)

ACTIVE/72195629.1/2017866-0000309724

Settlement agreements conserve judicial time and limit expensive litigation") (internal quotations and citations omitted). Thus, as the Ninth Circuit recognizes, if nothing else, litigation is good for racking up attorneys fees.

III. PLAINTIFFS MISCHARACTERIZE (BY OMMISION) THIS COURT'S SEPTEMBER 30, 2005 ORDER

Plaintiffs insinuate from this Court's September 30, 2005 Order denying CCH's request for a stay of this action that Judge Ezra is not predisposed to enter a stay in this case. Opp. at 11-12. In fact, plaintiffs fail to point out that Judge Ezra explicitly stated that *"Should a stay become prudent at a later date, the Court will consider it at that time."* Chun Decl., ¶ 5 (emphasis added). CCH's original request for a stay was brought as part of the initial briefing in response to the filing of this lawsuit. Although CCH disagrees that a stay was premature at that early stage, *the eve of global settlement talks with the regulators is certainly a prudent time for a stay.* As noted above, Magistrate Chang has recognized that a stay is an important tool to facilitate settlement. The Governments have also recognized the benefits of a stay and have accordingly refrained from bringing what plaintiffs refer to as a "parallel" proceeding.[2] Even

---

[2] Plaintiffs insinuate that the Governments' refrain from bringing a separate lawsuit (i.e., a "parallel proceeding") is somehow a dereliction and is ground to deny the stay. As plaintiffs are well aware, this is not the case. Plaintiffs do not even acknowledge, for example, the Tolling Agreement in their Opposition,

5

plaintiffs have acknowledged this by, as noted above, (1) stipulating to stay this lawsuit in April 2006 in order to participate in the settlement negotiations with the Governments and CCH, and (2) representing to Magistrate Chang that they would, as a condition of intervention, agree to stay litigation for four months while the parties pursued settlement.

IV.  PLAINITFFS MISCHARACTERIZE THE BEACHWALK SETTLEMENT NEGOTIATIONS

Plaintiffs assert that the complex Beachwalk settlement negotiations were not conducted in good faith or with the proper diligence because (1) it took approximately one year to reach an agreement, (2) plaintiffs were not provided with all the settlement communications, and (3) plaintiffs were unhappy with some of the ultimate settlement terms.[3]  Opp at 18-20.  As the chart attached as Exhibit B to the Chun Declaration makes clear, the process of the negotiations was extremely diligent, particularly given the complex technical nature of the issues and, among

---

whereby EPA and DOH agreed to stay and refrain from enforcement or other litigation in light of settlement talks.  Despite what plaintiffs might believe about the Governments' enforcement diligence in the past, they cannot deny that the Governments are taking an extremely active role today.

[3]  The Court should disregard statements made by plaintiffs regarding the substance of confidential settlement communication.  See Opp. at 16, 18, 19. These communications remain confidential under Federal Rule 403 and their confidentiality has not been waived.  Plaintiffs' self-serving attempt to use these communications for their own advantage is improper, unfair and highly prejudicial to CCH (and the Governments).

other things, the ordinary delays endemic with negotiations involving multiple parties in multiple locations. Chun Decl., Exh. B. CCH made a good faith effort to ensure all settlement communications were transmitted to the proper persons. On one occasion, however, CCH inadvertently used the wrong email for plaintiffs' counsel in transmitting a settlement letter (Chun Decl., ¶ 6); it is CCH's understanding that this communication was promptly provided to them by the Governments. On each other occasion where plaintiffs did not receive a settlement communication, it was due to plaintiffs unilaterally dropping out of the settlement talks by either seeking to lift the stay or pursuing litigation.[4]

Finally, plaintiffs' dissatisfaction with the Beachwalk Stipulated Order does not damage plaintiffs' interest as they are not entitled to a personalized remedy. See U.S.A. v. City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir. 1991) (When EPA is prosecuting CWA violations, it should be accorded a "preeminent role" because it is charged with enforcing the CWA on behalf of all

---

[4] Playing word games, plaintiffs assert that although "in August, 2006, Citizens terminated the stay and moved to reset a hearing on their Motion to Intervene," CCH's assertion that plaintiffs withdrew from the settlement negotiations was "unfounded" and that they "never communicated that they were withdrawing from settlement discussions." Opp. at 19. Plaintiffs' participation in settlement was contingent upon them refraining from litigation during the stay; seeking to terminate the stay or filing litigation is a blatant "communication" that they were withdrawing from the settlement talks.

ACTIVE/72195629.1/2017866-0000309724

citizens; thus, "[t]he thrust of the CWA is to provide *society* with a remedy....The Government, of course, as representative of society as a whole, usually is in the best position to vindicate societal rights and interests").[5] Plaintiffs filed their position with the Court on August 24, 2007 and will soon have their day in Court regarding their dissatisfaction with the Beachwalk Stipulated Order. In any event, CCH and the Governments intend to move forward with global settlement negotiations, regardless of the outcome of this Motion. Chun Decl., ¶ 7. It seems that plaintiffs' interests would be better served if their voices are heard (not to mention their credibility to challenge a document they refused to negotiate).

V. PLAINTIFFS' ASSERTION THAT THE MOTION TO STAY IS AKIN TO A DISMISSAL IS COMPLETELY WITHOUT MERIT

Plaintiffs' claim that a request for a temporary stay is the equivalent of a dismissal under the statutory preclusions under CWA § 505(b) or § 309(g)(6) is absurd. See Opp. at 31-34. These sections of the CWA, which were well-briefed in CCH's Motion to Dismiss the First and Second Claims for Relief, protect dischargers from duplicate enforcement in circumstances where a citizen plaintiff brings a claim that is already being prosecuted by the government. Under certain

---

[5] Plaintiffs cite alleged environmental harm as a justification for denying the stay. Opp. at 23-24. CCH reminds the Court that there has not been one violation proven, let alone any proof of any environmental harm. Plaintiffs' fiction is irrelevant and unduly prejudicial; accordingly these statements should be stricken and disregarded by the Court under the Federal Rules of Evidence.

8

narrow circumstances spelled out in the CWA, Congress determined that Federal Courts do not have jurisdiction over these redundant claims. Thus, such duplicative claims are *forever dismissed with prejudice*. Here, there is no dismissal, and there is no prejudice. The claims are merely put on hold as a matter of judicial economy pending settlement discussions. The statutory preclusion provisions of the CWA have no application here and are completely irrelevant to this Motion.

VI.  PLAINTIFFS' RELIANCE ON CERTAIN CASE LAW IS MISPLACED

Plaintiffs cite a number of cases that have little or no application here. For example, plaintiffs rely on NRDC v. Outboard Marine Corp., 692 F. Supp. 801, 812 (N.D. Ill. 1988), to support their claim that the court declined a stay because defendant had not "met the heavy burden imposed on a party asking a court to decline the exercise of its jurisdiction." Plaintiffs also use this case to support their misguided assertion that there is a clear federal policy militating against a stay in CWA citizen suits given "Congressional intent to abate water pollution and to use citizen suits as one tool to that end." Opp. at 24. A stay is not jurisdictional and the issuance of a stay does not mean or imply that the Court has declined to exercise jurisdiction. Unlike here, the defendant in NRDC was in fact asking the court to decline jurisdiction by seeking a stay or dismissal under the doctrines of primary jurisdiction or abstention, neither of which is even remotely at

9

issue here.  Furthermore, while Congress may have intended Federal Court jurisdiction over the CWA to be broad as part of its intent to abate water pollution (and therefore drew the jurisdictional statutory preclusion provisions quite narrowly), *a stay is simply not jurisdictional -- it is ministerial, a means to achieve a greater good*.  Moreover, this assertion is not even logical.  If the expeditious resolution of claims and the resulting swift pollution abatement are the primary concern, actions that facilitate settlement -- like a stay -- should be *encouraged*.

Plaintiffs also mischaracterize the ruling in Lockyer v. Mirant Corp., 398 F.3d 1098 (9th Cir. 2005), to assert (1) a request for injunctive relief, as opposed to mere money damages, weighs against granting a stay (Opp. at 24); (2) it is inappropriate to issue a stay and only speculation that a parallel proceeding case will vindicate plaintiff's rights (Opp. at 25); and (3) being required to defend a suit does not constitute a clear case of hardship or inequity (Opp. at 26).  Mirant, however, is of no use to plaintiffs here.  First, Mirant involved primarily an automatic stay dealing with a Chapter 11 bankruptcy issue and the "police or regulatory power" exception to the automatic stay -- not the "discretionary" stay at issue here.  Second, the Mirant court cabined its holding to the specific and unique facts and cautioned against its use -- as plaintiffs have done here -- as support in other matters:

10

> We recognize the importance of the district court having the ability to control its own docket, particularly in this time of scarce judicial resources and crowded dockets. ***We do not intend that this opinion be read to restrict unduly the ability of the district court, in appropriate cases, to issue [discretionary] stays***…. We hold only that a [discretionary] stay is improper in the circumstances of this case -- where the power of the district court to decide whether the automatic stay applies is clear, where the inapplicability of the automatic stay is also clear, and where the proceeding in the bankruptcy court is unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court.

Mirant, 398 F.3d at 1112-13 (emphasis added).  Third, in deciding whether to grant a discretionary stay, a court looks not just at hardship but also at *"the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay*." Mirant at 1110 (emphasis added, internal citation omitted).  As set forth in the Motion to Stay, the balance of the equities clearly favors CCH.  Global settlement negotiations, even if the discussions only resulted in a partial settlement, would

11

greatly simplify the issues, proof and questions of law at issue in this suit. Indeed, when considered in this light, the Beachwalk settlement has had exactly that effect.

Similarly, a closer look at Am. Honda Motor Co. v. Coast Distrib. Sys., No. C 06-04752, 2007 U.S. Dist. LEXIS 19981 (N.D. Cal. Feb. 26, 2007), also reveals that this case is of little help to plaintiffs. See Opp. at 24, 26. First, the asserted "hardship" that formed the basis of the stay request in Honda involved only duplicative discovery requests. The parties were not, as here, on the verge of global settlement negotiations involving hundreds of millions of dollars. Further, because of the nature of the alleged "hardship," the district court noted that a stay would do nothing to narrow the issues. Here, in contrast, the earlier stay and the resulting $300,000,000 Beachwalk settlement has already proven that a stay can "promote the orderly course of justice" by resulting in a streamlining of the case and a narrowing of the issues.

Finally, plaintiffs' reliance on PIRG v. Star Enter., 771 F. Supp. 655, 668 (D.N.J. 1991), is also unjustified. In Star Enter., the defendants sought a stay pending the outcome of an administrative variance proceeding. The court declined to enter the stay as the "fairest course," citing the well-known adage that a request for a variance "is carried out on the polluter's time, not the public's" (internal quotation and citations omitted). Unlike in Star Enter., the stay here would not be carried out on the "public's time" but rather for the "public's benefit" as a

12

mechanism to facilitate settlement and ultimately further Congress' goal of abating water pollution.

## VII. PLAINTFFS' TACTICS ARE IMPROPER, PREJUDICIAL AND DESIGNED TO GAIN UNFAIR LITIGATION ADVANTAGE

Nearly a third of plaintiffs' Opposition is a long exposition of unproven allegations and innuendo regarding CCH, its wastewater program and environmental impacts. See Opp. at 3-11. This exposition, more appropriate for a trial brief than a Motion to Stay, is completely improper, designed purely to prejudice CCH before this Court, wholly irrelevant, one-sided, unproven or outright wrong, and accordingly, undeserving of a point-by-point response. Accordingly, because this exposition is irrelevant, unduly prejudicial and improper expert testimony, CCH objects to these statements, including related statements in the Sproul Declaration and attachments thereto, and requests that these statement be stricken under the FRE and not be considered by the Court in ruling on this Motion.[6]

Likewise, plaintiffs attempt to prejudice CCH by citing the amount of attorneys and consultant fees approved by the City Council for defending

---

[6] Plaintiffs' "factual" exposition does, however, highlight the complexity and breadth of the allegations, as well as the serious charges plaintiffs intend to cast against CCH. Given plaintiffs' own admission as to the scope and seriousness of issues involved here, it is ludicrous for plaintiffs to assert -- as they have -- that the litigation of these issues will be "expeditious" when compared to settlement.

wastewater enforcement and responding to other regulatory wastewater activity. See Opp. at n.1, 30. The wastewater issues involved here are broad, complex and their resolution undoubtedly will have a serious impact on the citizens and visitors of Oahu. CCH would be derelict to responsibilities if it responded to the allegations in any less serious manner.[7] Because the factual information is irrelevant and unduly prejudicial, it should be stricken under the Federal Rules of Evidence and the Court should not consider it in ruling on this Motion.

VIII.   CONCLUSION

For these reasons and the reasons stated in CCH's Motion, CCH respectfully requests that the Court stay this action pending the outcome of the upcoming global negotiations, subject to being lifted by the Court upon a showing of good cause by any party, so these negotiations can commence and proceed unhindered by duplicative and unnecessary litigation. A stay will not only facilitate the negotiations by allowing the parties to focus on resolving the Global Issues, it will also serve judicial economy and preserve resources by avoiding unnecessary litigation. Further, plaintiffs will not be prejudiced by a stay because

---

[7]   While plaintiffs cite with derision the public funds earmarked for responding to wastewater issues, they are unconcerned about the use of public coffers for *simultaneous* settlement and litigation. Of course, this financial information is provided only to prejudice CCH and to gain unfair litigation advantage -- not to make any legal point about the justification (or lack thereof) for a stay.

the federal and state regulators charged with overseeing CCH's collection and treatment system and responsible for protecting the public interests are addressing the very issues raised in plaintiffs' lawsuit.  Moreover, in the event the settlement negotiations are unsuccessful, plaintiffs can proceed with their claims.  CCH, on the other hand, will be prejudiced if a stay is not granted because it will be forced to commit significant resources defending against a duplicative and unnecessary litigation.  Simply stated, rather than facilitating a resolution, the pursuit of the instant action in Court ultimately will hinder the chances of a successful negotiation on the Global Issues.  Indeed, Magistrate Chang recently encouraged the parties to seek a stay of litigation in the similar 1994 lawsuit if the parties choose to engage in settlement discussions.  Judge Ezra stated in the September 30 Order that he would consider a stay at an appropriate time.  It is hard to imagine a more appropriate time for a stay than now -- at the eve of settlement.

        CCH has already shown that it is committed to resolving potential enforcement through settlement.  It again should be given the chance to make further progress to seek to resolve the Global Issues informally.

DATED:   Honolulu, Hawaii                   Respectfully submitted,
           September 5, 2007                   CARRIE K. S. OKINAGA
                                                Corporation Counsel
                                                By: /s/ Maile R. Chun
                                                     Maile R. Chun
                                                     Attorneys for Defendant
                                                     The City and County Of Honolulu