CARRIE OKINAGA, 5958
Corporation Counsel
MAILE R. CHUN, 4906
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone: (808) 527-5351
Facsimile: (808) 523-4583
Email: mchun@co.honolulu.hi.us

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400
Facsimile: (213) 680-6499
Email: nancy.wilms@bingham.com

Attorneys for Defendant:
CITY AND COUNTY OF
HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | CIVIL NO. CV 04-00463 DAE-BMK<br><br>**DECLARATION OF ROSS TANIMOTO IN SUPPORT OF DEFENDANT CITY AND COUNTY OF HONOLULU'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' THIRD, FOURTH, AND EIGHTH CLAIMS**<br><br>Date:   October 9, 2007<br>Time:   10:30 a.m.<br>Judge:  Hon. David E. Ezra |

# DECLARATION OF ROSS TANIMOTO

I, ROSS TANIMOTO, hereby declare as follows:

1. I am Deputy Director of the Department of Environmental Services ("ENV") of the City and County of Honolulu ("CCH"), a defendant in this action. I have personal knowledge of and am competent to make this Declaration concerning the matters set forth herein. ENV, among other things, is charged with the responsibility to administer the planning of wastewater facilities, oversee the operation and maintenance of sewer lines, treatment plants and pumping stations, monitor the collection, treatment and disposal of wastewater, provide pumping of cesspools, provide solid waste processing, collection and disposal, promulgate rules and regulations as necessary to administer and enforce requirements established by law, and perform such other duties as may be required by law. As Deputy Director, I assist the Director in overseeing all of these activities. I have personal knowledge of the following facts, or have been informed of them by the responsible CCH personnel and/or CCH's technical/scientific consultants, and believe them to be true, and could and would testify competently thereto if called as a witness.

2. CCH operates nine Wastewater Treatment Plants ("WWTPs"), including the Sand Island WWTP. The Sand Island WWTP is the largest Oahu treatment facility and serves most areas of Honolulu, treating approximately 67

million gallons of flow per day. The National Pollutant Discharge Elimination System Permit No. HI0020117 ("Sand Island Permit" or "Permit"), which was issued by EPA because it has a waiver of secondary treatment under CWA §301(h), became effective on November 2, 1998, and expired on its face on November 3, 2003. On May 5, 2003, CCH submitted to EPA a renewal application for the Permit under 40 C.F.R. §122.21. EPA has not yet made a decision on the renewal application. A true and correct copy of the Sand Island Permit is attached to the Declaration of Maile R. Chun in Support of CCH's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Chun Decl.") as Exhibit D.

3. CCH's Honouliuli WWTP, which also has a waiver of secondary treatment, is Oahu's second largest facility. On March 27, 2007, EPA issued a Tentative Decision ("TD"), denying CCH's reapplication for a waiver of secondary treatment for Honouliuli; CCH submitted a technical response to the TD on August 27, 2007. A true and correct copy of CCH's technical response is attached to the Chun Decl. as Exhibit F.

4. The purpose of the ultraviolet Disinfection Facility is to protect the marine environment by controlling pollutants, such as bacteria, in the effluent. Thus, the operation of the Disinfection Facility is necessary to obtain data to evaluate the effect of disinfection on enterococcus in the effluent. The Sand Island

Permit (at page 54, No. 7) explicitly contemplates the parties would evaluate disinfection after one year of data was obtained.

5. The delays in construction of the Disinfection Facility directly resulted in CCH's failure to meet its Permit limit for enterococcus. Due to the delays in completing the construction of the Disinfection Facility, the Facility was not placed online until November 15, 2006. On that same date, and nearly every date thereafter, CCH has met the daily enterococcus limit. In fact, between November 15, 2006, and March 31, 2007, CCH met daily enterococcus limit on 112 days. *See* enterococcus daily sampling spreadsheet attached to the Chun Decl. as Exhibit G.

6. More than 6 years ago, CCH requested from EPA a modification clarifying the ambiguity in how to determine compliance with the Sand Island Permit enterococcus limit. In a July 26, 2001 reply, EPA informed CCH that the request is pending and it would respond shortly. EPA has yet to respond.

7. In accordance with the 2002 EPA Administrative Order ("AO"), which requires CCH to initiate measures to prevent violations of the Sand Island Permit, CCH submitted an Effluent Limits Action Plan, an Operations & Maintenance Plan and a Compliance Schedule Plan in November 2002. CCH revised the three plans in May 2003 in response to EPA verbal and written

comments. In 2004, CCH received and responded to three comment letters from EPA. CCH submitted annual progress reports in March of 2005, 2006 and 2007.

    8. CCH's Discharge Monitoring Reports ("DMRs") reported exceedances of dieldrin and chlordane. The reported exceedances of these pesticides were based on a standard analytical technique that uses gas chromatography with an electron capture detector ("GC/ECD").

    9. In preparing its technical response to EPA's March 27, 2007 Tentative Decision for the Honouliuli WWTP, CCH (through the assistance of its technical/scientific consultant) become aware that GC/ECD is not sensitive or specific enough to accurately detect the presence of dieldrin and chlordane in the effluent at the extremely low permit levels. *See* CCH's Response to Tentative Decision (specifically, Section II.C.2 pages II-10 to II-11 and Figures IIB-4 and IIB-5), attached to the Chun Decl. as Exhibit F. To test GC/ECD's reliability, CCH (through its technical/scientific consultant) tested effluent samples from both the Sand Island and Honouliuli WWTP using both GC/ECD and a more sensitive EPA-approved methodology, gas chromatography-mass spectrometry ("GC/MS"). Specifically, from April 24 to May 5, 2007, 12 samples (6 from the Honouliulu WWTP, 6 from the Sand Island WWTP) were analyzed by CCH's consultant simultaneously using both methods.

10. Samples tested using GC/MS found that actual dieldrin and chlordane levels were significantly lower than the results based on GC/ECD. With regard to chlordane, the GC/MS results were approximately half the level of those using GC/ECD. With regard to dieldrin, the GC/MS testing for all samples indicated that dieldrin was not present in those samples. Further, for each of the 12 dieldrin samples, the conventional testing method indicated an exceedance of the permit limit; because dieldrin was not detected using GC/MS, the conventional method resulted in false positive exceedances for each of these samples.

11. Prior wastewater samples were not preserved. The GC/MS methodology cannot therefore be performed to past sampling.

12. To determine compliance with the average annual limits for chlordane and dieldrin, each monthly sample is averaged with the samples taken in the prior 11 months to generate the annual average. Each month generates a new annual average because the annual averages are calculated on a rolling basis (*e.g.*, the September 2000 sample, averaged with the eleven prior monthly samples, generates the annual average for October 1999-September 2000). Prior to November 1998, when the Permit became effective, there was no annual average data (*i.e.*, 12 monthly samples) collected under the Permit to calculate an annual average.

13. The Sand Island Permit requires chlordane and dieldrin samples to be taken at least once per calendar month.

I, Ross Tanimoto, do declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21 day of September 2007 in Honolulu, Hawaii.

*/s/ Ross Tanimoto*

Ross Tanimoto