IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SIERRA CLUB, HAWAIʻI CHAPTER; HAWAIʻI'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>                Plaintiffs,<br><br>        v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>                Defendants.<br>_____ | Civil No. 04-00463 DAE/BMK<br><br>**DECLARATION OF CHRISTOPHER SPROUL** |

**DECLARATION OF CHRISTOPHER SPROUL**

I, CHRISTOPHER SPROUL, hereby declare as follows:

1.   I am a partner in the law firm of Environmental Advocates, co-counsel for Plaintiffs Sierra Club, Hawaiʻi Chapter, Hawaiʻi's Thousand Friends, and Our Children's Earth Foundation ("Plaintiffs").  I make this declaration based upon my personal knowledge, unless otherwise stated.

2.   Plaintiffs' Amended Complaint alleges that Defendants City and County of Honolulu ("CCH") committed thousands of Clean Water Act ("CWA") violations in managing its Sand Island Waste Water Treatment Plant ("WWTP").  On July 27, 2007, Plaintiffs filed their Motion for Partial Summary Judgment on their Third, Fourth, and Eighth Claims.

3.   On September 21, 2007, CCH filed its Opposition Memorandum.

4.    Plaintiffs conclude they cannot meet the word count limits established by Local Rules 7.5 and 7.9 (4,500 words) if they are to respond adequately to all the separate and highly technical factual and legal arguments made by the City in its CCH's Opposition Memorandum.

5.    Plaintiffs estimate they will need a word count of approximately 6,750 words to respond to CCH's memorandum.

6.    Plaintiff's Third, Fourth and Eighth Claims allege CCH violated the Clean Water Act requirements in the City's National Pollution Discharge Elimination System ("NPDES") Permit to operate the Sand Island WWTP.

7.    On April 16, 2007, this Court granted partial summary judgment for Plaintiffs on their Third and Fourth Claims, namely that CCH violated the CWA from May 1999 through July 2004. Order Granting Plaintiffs' Motion for Reconsideration ("April 16, 2007 Order"). In that April 16, 2007 Order, the Court resolved the legal methodology for *counting* CWA violations, but deferred final determination of the total number of violations. The Court indicated it (a) wanted to resolve CCH's liability on the Eighth Claim (b) before counting the total number of CCH's CWA violations.

8.    The CCH Opposition Memorandum refers extensively to numerous Exhibits and implicates numerous other EPA, DOH and CCH official government documents that Plaintiffs obtained via the federal Freedom of Information Act, the Hawai'i Uniform

Information Practices Act (UIPA), or in discovery.  The factual

history relevant to an adequate Reply to CCH's Opposition

Memorandum is intricate, entails a very large volume of

documents, and will require a reasonable extension of the word

limit to summarize and describe.  Plaintiffs cannot address how

this extensive factual history interrelates with the numerous

legal issues raised by the CCH Opposition within the 4,500 word

limit.

       9.   Plaintiffs' Third Claim alleges that CCH violated

the CWA by continuously exceeding the effluent limitations set

forth in the NPDES Permit governing CCH's discharge from the Sand

Island WWTP.

       a.   CCH claims that its own self reported Daily

Monitoring Reports (DMRs)and admissions do not establish that CCH

violated the Enterococcus limitations because the counting method

required by EPA and previously ruled on by this Court is in error

and that the period for counting violations should be different.

Plaintiffs must explain both the single day and "continuously in

effect" limitations under the NPDES permit and why each stands

alone unambiguously as a violation.

       b.   CCH claims that its own self reported Daily

Monitoring Reports (DMRs)and admissions do not establish that CCH

violated the chlordane and dieldrin limits because a different

technology suggests different results on recent water samples.

Plaintiffs must revisit the extensive documentary record of CCH's

own public reports and prior filings to correct CCH's misstatements that the evidence is not before the court when in fact the evidence already is in the record.

       c.   CCH argues that its efforts to comply with the CWA permit limits are factual issues to be considered and therefore summary judgment is inappropriate.  Plaintiffs must explain that the CWA is a strict liability law so that CCH attempts to comply have no bearing on liability, and apply, if at all, only in the later remedy phase.  CCH seeks to ignore prevailing Ninth Circuit law and prior decisions by this court in choosing methodologies more to their liking.

       d.   CCH attempts to re-argue this court's prior rulings *in this case* about how average violations within a period must be counted under the Clean Water Act.  Plaintiffs must explain again this Court's prior rulings to rebut CCH's misstatements.

       e.   CCH claims that its own self reported Daily Monitoring Reports (DMRs)and admissions fail to establish that CCH violated the Sand Island Permit's biochemical oxygen demand (BOD) and total suspended solids (TSS) limits.  Plaintiffs must reiterate earlier filings in 2005 in this case which establish the claims.

       10.   Plaintiffs' Fourth Claim alleges that CCH violated its Sand Island NPDES permit by failing to complete the disinfection facility.  CCH misconstrues *NRDC v. Southwest*

*Marine,* 236 F.3d 985 (2000) without acknowledging that this Court ruled <u>for</u> Plaintiffs on the issue.

11.  Plaintiffs' Eighth Claim alleges that CCH violated the September 30, 2002 U.S. Environmental Protection Agency ("EPA") Administrative Order requiring CCH to curtail CWA violations at the Sand Island WWTP. CCH claims that violating EPA Orders is double counting and should not be an independent basis for liability.  Plaintiffs respond by reiterating well established law.

12.  Plaintiffs then summarize and total the various kinds and number of violations: the sum is 16,573 violations.  If new violations from April 1 to July 31, 2007 (documented through a recent UIPA request) are included, the total number of violations reaches 17,097.

13.  Plaintiffs' counsel requested that CCH's counsel stipulate to extend the word limit.  CCH's counsel refused to stipulate to any increase.

14.  Plaintiffs request that they be allowed a word count of 6,750 words for its Reply Memorandum.  On January 4, 2005, this court granted a similar request in its Order Granting Plaintiffs' *Ex Parte* Motion for Leave to File Brief in Excess of Page Limits.  A true and correct copy of the January 4, 2005 Order is attached as **Exhibit A**.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  San Francisco, California, September 28, 2007.


_____
CHRISTOPHER SPROUL