IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| SIERRA CLUB, HAWAI‘I CHAPTER; ) <br> HAWAI‘I'S THOUSAND FRIENDS; and ) <br> OUR CHILDREN'S EARTH FOUNDATION,) <br>   ) <br>            Plaintiffs,        ) <br>   ) <br>      vs.                       ) <br>   ) <br> CITY AND COUNTY OF HONOLULU      ) <br>   ) <br>            Defendants.         ) <br>   ) | Civil No. 04-00463 DAE/BMK <br><br> **DECLARATION OF CHRISTOPHER SPROUL IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT; EXHIBITS 1-6** |

**DECLARATION OF CHRISTOPHER SPROUL**

I, CHRISTOPHER SPROUL, declare as follows:

1. I am an attorney licensed to practice in the State of California. I am also a member of the United States District Court of Hawai‘i bar. I am a member of the law firm Environmental Advocates and make this Declaration on my personal knowledge, unless otherwise stated.

2. On behalf of Plaintiff Our Children's Earth Foundation, Environmental Advocates submitted a Freedom of Information Act ("FOIA") request to the U.S. Environmental Protection Agency ("EPA") on May 12, 2004 and on August 23, 2004. **EXHIBITS 1, 2, and 5** attached to this Declaration are true and correct copies of selected pages of documents that EPA provided to our firm in response to the 2004 FOIA requests. Specifically,

    a. **EXHIBIT 1** is a true and correct complete copy of the U.S. Environmental Protection Agency, Region IX and Hawaii

658140-4 / 7502-3

State Department of Health Response to Comments for the Sand Island Wastewater Treatment Plant 301(h)-modified NPDES Permit, which sets forth EPA and DOH's responses to public comments on the draft Sand Island NPDES permit received by these agencies during the public comment period on the proposed Sand Island NPDES permit.

      b.    **EXHIBIT 2** is a true and correct copy of NPDES Permit No. HI 0020117 for the Sand Island Wastewater Treatment Plant ("Sand Island WWTP").

      c.    **EXHIBIT 5** is comprised of true and correct copies of relevant selected pages of CCH's Discharge Monitoring Reports ("DMRs") reporting CCH's pollutant monitoring of its Sand Island WWTP's discharges.  Plaintiffs previously filed some of these DMR pages on March 31, 2005 as Exhibit 90 to the Declaration of Patricia Nelson in Support of Plaintiffs' Reply Memoranda in Support of (1) Counter-Motion for Summary Judgment on Plaintiffs' Twelfth Claim Filed January 7, 2005, and (2) Motion for Partial Summary Judgment on Plaintiffs' Third, Fourth, Eighth, and Twelfth Claims filed January 6, 2005.  Ms. Nelson's Declaration and Exhibit 90 are item no. 81 in the Court's Docket.

      3.    On behalf of Our Children's Earth Foundation, Environmental Advocates submitted a Hawaii Uniform Information Practices Act, Haw. Rev. State. Chapter 92F ("UIPA") request to the Hawaii State Department of Health ("DOH") on September 19,

2007 for copies of CCH's most recent Discharge Monitoring Reports ("DMRs") sent to DOH.

**EXHIBIT 6** (attached) to this Declaration are true and correct copies of DMRs provided by DOH to Plaintiffs' counsel, Alston Hunt Floyd & Ing, in response to this UIPA request. The DMRs report pollutant levels in CCH's Sand Island discharges from April 1, 2007 through July 31, 2007 and report three categories of new CCH violation, discussed below:

      a.  Average Annual Mass and Concentration Limits for Both Dieldrin and Chlordane

In these April to July 2007 DMRs, CCH reported that it violated the Sand Island NPDES Permit's average annual mass and concentration limits for both dieldrin and chlordane in all four of these months: 488 violations (122 days times four limits violated per day).

      b.  Daily Maximum Enterococcus Limit

In these DMRs, CCH also reported that it violated the Sand Island Permit's daily maximum enterococcus limit at least once in each of these four months. Specifically, CCH violated the limits on six days: April 20; May 12 and 31; June 2; and July 9 and 13, 2007 (6 violations).

      c.  Monthly Average Biochemical Oxygen Demand ("BOD") Concentration Limit

CCH also reported that it violated the Sand Island Permit's monthly average biochemical oxygen demand ("BOD") concentration limit in June 2007 (30 CWA violations).

In sum, the most recent (April 1 to July 31, 2007) DMRs show an additional 524 CCH violations of the CWA (488 chlordane and dieldrin violations; 6 enterococcus violations; 30 BOD violations).

4. **EXHIBIT 3** (attached) is a true and correct copy of EPA Method 1600, Membrane Filter Test Method for Enterococci in Water (EPA 821-R-97-004, May 1997) published on EPA's internet website at http://www.epa.gov/nerlcwww/1600sp02.pdf

5. **EXHIBIT 4** (attached) is a true and correct copy of EPA Method 608 for the analysis of Organochlorine Pesticides and PCBs published on EPA's internet website at http://www.epa.gov/waterscience/methods/method/organics/608.pdf This Method 608 is also published in the Code of Federal Regulations as 40 C.F.R. part 136, App. A, Meth. 608.

6. Using the sum function of the computer program Microsoft Excel, I added up the number of days between July 21, 2002 (the date that the Sand Island Permit's enterococcus limit and requirement that CCH complete construction and commence operation of the Sand Island Disinfection Facility became effective) and November 15, 2006 (the date CCH admitted that the Sand Island Disinfection Facility became operational). Including July 21, 2002 (the date the enterococcus limit and Disinfection Facility requirement were first effective), but excluding November 15, 2006 (accepting CCH's representation that it commenced operating the Disinfection Facility and complied with

the enterococcus limit on that day), this is a total of 1,578 days as follows:

| Time Period | Number of Days |
|---|---|
| 7/21/02 to 12/31/02 | 164 |
| 1/1/03 to 12/31/03 | 365 |
| 1/1/04 to 12/31/04 | 366 |
| 1/1/05 to 12/31/05 | 365 |
| 1/1/06 to 11/14/06 | 318 |
| Total | 1578 |

7.  In the Declaration of Maile Chun in Support of Defendant City and County of Honolulu's Opposition to Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third, Fourth and Eighth Claims ("Chun Declaration"), Ms. Chun indicates that Exhibit G to her Declaration sets forth CCH's daily monitoring results from November 15, 2006 to March 31, 2007 for the level of enterococcus in the Sand Island Wastewater Treatment Plant's effluent discharge.  Chun Declaration, ¶ 13; *see also* Declaration of Ross Tanimoto in Support of Defendant City and County of Honolulu's Opposition to Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third, Fourth and Eighth Claims, ¶ 5.

I counted the number of days that Exhibit G to the Chun Declaration indicates the level of enterococcus in Sand Island Wastewater Treatment Plant has exceeded the Sand Island Permit's daily enterococcus limit of 18,000 CFU/100 ml.

As further described below, CCH Exhibit G indicates a total of 25 days of CCH violation of CCH's Sand Island enterococcus permit limit.

    (a)    Exhibit G (page 2) indicates that CCH's Sand Island discharge exceeded the Sand Island Permit's enterococcus limit on the following 13 days: 11/20/2006, 11/22/2006, 11/23/2006, 11/24/2006, 11/25/2006, 11/26/2006, 12/9/2006, 12/11/2006, 12/15/2006, 12/16/2006, 12/18/2006, 12/26/2006, 12/28/2006.

    (b)    Exhibit G (page 3) indicates that CCH's Sand Island discharge exceeded the Sand Island Permit's enterococcus limit on the following 11 days: 1/2/2007, 1/5/2007, 1/6/2007, 1/9/2007, 1/10/2007, 1/15/2007, 1/16/2007, 1/18/2007, ½5/2007, 2/7/2007, 2/15/2007.

    (c)    Exhibit G (page 4) indicates that CCH's Sand Island discharge exceeded the Sand Island Permit's enterococcus limit on one day: 2/26/2007.

8. As indicated in my Declaration in support of Plaintiffs' Motion for Partial Summary Judgment (filed on July 26, 2007)(Item no. 113 in the Court's docket), I supervised the preparation of the summary tables of Sand Island NPDES permit effluent limitation violations set forth in Tables 1 to 5 included in that Declaration.

These Tables tallied CCH's CWA violations from August 1, 2004 to March 1, 2007 (to update the Court on CCH's new CWA violations not previously addressed by Plaintiffs' January 2005 Motion for Partial Summary Judgment and the Court's April 16, 2007 Order Granting Plaintiffs' Motion for Reconsideration). The tallies in Tables 2 to 5 remain valid.

The tally in Table 1 should be adjusted to reflect Plaintiffs' acceptance of CCH's representation that it committed only 25 violations of its Sand Island NPDES Permit enterococcus limit between November 15, 2006 and March 31, 2007. The original Table 1 assumed that CCH had violated its enterococcus limit every day during this four month period. Thus, Table 1 should be revised from 942 days of violation to 861. I used the sum function of the Microsoft Excel program to count the number of days from August 1, 2004 through November 14, 2006 and then added 25 days of violation to arrive at this total.

Plaintiffs' revised Tables 1-5, tallying CCH's violations of the Sand Island enterococcus, dieldrin and chlordane limits from August 1, 2004 (the beginning date of violations not previously addressed by Plaintiffs' January 2005 Motion for Partial Summary Judgment) through March 31, 2007 is as follows:

*Sand Island Effluent Violations From August 1, 2004 to March 31, 2007*

Table 1:  Violations of Daily Maximum Enterococcus Limit = 847

Table 2:  Violations Chlordane Average Annual Concentration Limit = 973

Table 3:  Violations of Chlordane Average Annual Mass Limit = 973

Table 4:  Violations Dieldrin Average Annual Concentration Limit = 973

Table 5:  Violations of Dieldrin Average Annual Mass Limit = 973

Total of all CCH Sand Island WWTP CWA Violations shown by Tables 1-5 = 4,739.

9.   To tally CCH's violations of the EPA 2002 Administrative Order, I added up the days from September 30, 2002 (the effective date of the Order) through March 31, 2007 using the sum function of the Microsoft Excel program.  Excluding September 30, 2002 but including March, 31, 2007, this total is 1,643 days as follows:

| Time Period | Number of Days |
|---|---|
| 10/1/02 to 12/31/02 | 92 |
| 1/1/03 to 12/31/03 | 365 |
| 1/1/04 to 12/31/04 | 366 |
| 1/1/05 to 12/31/05 | 365 |
| 1/1/06 to 12/31/06 | 365 |
| 1/1/07 to 3/31/07 | 90 |
| Total | 1643 |

10. I used the adjustments discussed above to the count of CCH's CWA violations offered by Plaintiffs' Motion for Partial Summary Judgment (filed on July 26, 2007) to derive the following revised count of CCH's CWA violations:

(1) 8,613 violations of the Sand Island Permit's enterococcus, chlordane, dieldrin, BOD and TSS limits from May 30, 1999 through July 31, 2004 as set forth in Plaintiffs' January 2005 Motion and effectively granted by this Court's April 16, 2007 Reconsideration Order;

(2) 4,739 violations of the Sand Island Permit's enterococcus, chlordane, and dieldrin limits from August 1, 2004 through March 31, 2007;

(3) 1,578 violations of the Sand Island Permit's compliance schedule provisions from July 21, 2002 through November 14, 2006 due to CCH's failure to complete the Sand Island Disinfection Facility;

(4) 1,643 violations of the 2002 EPA Order from October 1, 2002 through March 31, 2007.

The sum of these four categories of CWA violation is 16,573 CWA violations.

11. As discussed in paragraph 3, above, since Plaintiffs' filed their Motion for Partial on July 26, 2007, Plaintiffs have acquired additional CCH DMRs reporting 524 additional CCH NPDES Permit violations from April 1 through

July 31, 2007.  If these violations are added, CCH's updated total count of CWA violations totals 17,097.

I hereby declare under penalty of perjury that the foregoing is true and correct.

DATED:  San Francisco, California, September 28, 2007.

*Christopher A. Sproul*

_____
CHRISTOPHER SPROUL