IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER;<br>HAWAI'I'S THOUSAND FRIENDS; and<br>OUR CHILDREN'S EARTH FOUNDATION,<br><br>       Plaintiffs,<br><br>   vs.<br><br>CITY AND COUNTY OF HONOLULU and<br>FRANK DOYLE, DIRECTOR OF THE<br>DEPARTMENT OF ENVIRONMENTAL<br>SERVICES, in his official<br>capacity,<br><br>      Defendants. | Civil No. 04-00463 DAE-BMK<br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION** |

# TABLE OF CONTENTS

                                                                    Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 2

II.   FACTUAL AND PROCEDURAL BACKGROUND  . . . . . . . . . . . 3

      A.    CCH'S SEWAGE SPILL PROBLEM  . . . . . . . . . . . 3

      B.    EPA AND DOH'S 1994 CASE, *EPA I* . . . . . . . . . 4

      C.    PRIOR DISMISSAL OF CITIZENS' SEWAGE SPILL CLAIMS . . 5

      D.    CCH'S CONTINUING SEWAGE SPILLS POST-1994 . . . . . 6

      E.    EPA AND DOH ADMINISTRATIVE ENFORCEMENT . . . . . . 8

      F.    EPA II . . . . . . . . . . . . . . . . . . . . . 8

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    THE COURT'S ENTRY OF THE STIPULATED ORDER IN
            EPA I WARRANTS RECONSIDERATION OF THE COURT'S
            2005 DISMISSAL OF CITIZENS' SEWAGE SPILL CLAIMS. . 10

      B.    THE 1995 CONSENT DECREE DID NOT ADJUDICATE
            CITIZENS' SEWAGE SPILL CLAIMS PLED IN THIS CASE. . 12

      C.    THE 1995 CONSENT DECREE DID NOT CONSTITUTE
            DILIGENT PROSECUTION OF CCH SEWAGE SPILLS
            POST 1999. . . . . . . . . . . . . . . . . . . . 16

      D.    RECONSIDERATION IS APPROPRIATE AT THIS TIME
            GIVEN THE COURT'S NEW DECISION TO ENTER THE
            STIPULATED ORDER. . . . . . . . . . . . . . . . . 22

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alaska Sportfishing Association v. Exxon*,
34 F.3d 769 (9th Cir. 1994) ............................ 16, 18

*Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*,
933 F.2d 124 (2d Cir. 1991) ................................. 18

*Bayview Hunter's Point Community Advocates v. Metropolitan
Transit Commission*,
177 F. Supp. 2d 1011 (N.D. Cal. 2001),
*rev'd on other grounds*, 366 F.3d 692 (9th Cir. 2004)  14, 17, 18

*Chesapeake Bay Foundation, Inc. v. Bethlehem Steel Corp.*,
652 F. Supp. 620 (D. Md. 1987) ......................... 13, 17

*Citizens Legal Environmental Action Network ("CLEAN")
v. Premium Standard*,
2000 U.S. Dist. LEXIS 1990 (W.D. Mo. Feb. 23, 2000) ..... 15, 17

*City of Los Angeles, Harbor Division v.
Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ................................ 22

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) .............................. 22

*Ellis v. Gallatin Steel Co.*,
390 F.3d 461 (6th Cir. 2004) ............................... 13

*Errante v. United States*, 460 U.S. 1070 ..................... 23

*Friends of Milwaukee's Rivers & Lake Michigan Federation
v. Milwaukee Metropolitan Sewerage District*,
382 F.3d 743 (7th Cir. 2004),
*cert. denied*, 544 U.S. 913 (2005) .................. 17, 19, 21

*Kona Enterprises, Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000) ............................... 23

*Lawlor v. National Screen Serv. Corp.*,
349 U.S. 322 (1955) ........................................ 13

*Nordhorn v. Ladish Co.*,
9 F.3d 1402 (9th Cir. 1993) ............................... 9, 12

*Petersen v. Fee Intern., Ltd.*,
435 F. Supp. 938 (D. Okl. 1975) ........................... 11

*Public Interest Research Group, Inc. v. Rice*,
774 F. Supp. 317 (D. N.J. 1991) ........................... 17

*S.E.C. v. Capital Consultants, LLC*,
453 F.3d 1166 (9th Cir. 2006) ............................. 22

*Save Our Bays and Beaches v. City and County of Honolulu*,
904 F. Supp. 1098 (D. Haw. 1994) .......................... 15

*Secretary of Labor v. Fitzsimmons*,
805 F.2d 682 (7th Cir. 1986) .............................. 11

*Sierra Club v. Chevron U.S.A., Inc.*,
834 F.2d 1517 (9th Cir. 1987) ............................. 15

*Southwest Voter Registration Education Project v. Shelley*,
344 F.3d 882 (9th Cir. 2003),
vacated on other grounds, 344 F.3d 913 ................. 11, 14

*U.S. Environmental Protection Agency v. City of
Green Forest, Arkansas*,
921 F.2d 1394 (8th Cir. 1990) ............................. 21

*United States v. ITT Rayonier, Inc.*,
627 F.2d 996 (9th Cir. 1980) .......................... 13, 16

*United States v. LoRusso*,
695 F.2d 45 (2nd Cir. 1982) ............................... 23

### STATE CASES

*McColm v. Anber, slip op.*,
2007 WL 607661 (N.D. Cal. 2007) .......................... 23

*St. Bernard Citizens for Environmental Quality, Inc.
v. Chalmette Refining, L.L.C.*, No. 04-0398,
2007 WL 2323387 (E.D. La. Aug. 10, 2007) ........... 18, 19, 21

## DOCKETED CASES

*United States, et al. v. City and County of Honolulu,*
Civ. No. 07-00235 .......................................... 1

*United States, et al. v. City and County of Honolulu,*
Civ. No. 94-00765 .......................................... 2

## FEDERAL STATUTES

Clean Water Act, 33 U.S.C. §§ 1311(a) ........................ 2

## RULES

Federal Rule Civil Procedure 54(b) ...................... 22, 23

U.S. District Court Local Rule 60.1 ........................ 22

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SIERRA CLUB, HAWAIʻI CHAPTER; HAWAIʻI'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>          Plaintiffs,<br><br>     vs.<br><br>CITY AND COUNTY OF HONOLULU and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity,<br><br>          Defendants. | Civil No. 04-00463 DAE-BMK<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

### MEMORANDUM IN SUPPORT OF MOTION

On October 10, 2007, this Court entered a Stipulated Order ("Stipulated Order") between the U.S. Environmental Protection Agency ("EPA"), the State of Hawaiʻi's Department of Health ("DOH") and the City and County of Honolulu ("CCH") in *United States, et al.* v. *City and County of Honolulu*, Civ. No. 07-00235 DAE-KSC ("*EPA II*".

This Order is a new case law development which warrants the Court's reconsideration of its September 30, 2005 Order ("September 2005 Dismissal Order") dismissing Plaintiffs Sierra Club, Hawaiʻi Chapter, Hawaiʻi's Thousand Friends, and Our Children's Earth Foundation (collectively, "Citizens") First and Second Claims in this 2004 case against CCH for sewage spill violations.

I.    INTRODUCTION

The September 2005 Dismissal Order dismissed the Citizens'

First and Second Claims[1] on the grounds that a 1995 Consent

Decree ("1995 Consent Decree") entered by this Court in the 1994

EPA and DOH action, *United States, et al.* v. *City and County of*

*Honolulu*, Civ. No. 94-00765 DAE-KSC ("*EPA I*") constitutes a *res*

*judicata* bar to any new action asserting post-1994[2] sewage spill

claims.

Yet the 2007 Stipulated Order is only permissible if a newly

filed action asserting new claims for CCH sewage spills post-1994

is NOT barred by any *res judicata* effect of the 1995 Consent

Decree.

Accordingly, Citizens urge this Court to respect the logic

required in entering the 2007 Stipulated Order by: (a)

determining that the 1995 Consent Decree is NOT a *res judicata*

bar to claims for post-1994 CCH sewage spills that violate the

Clean Water Act ("CWA"); and (b) reinstate Plaintiffs' First and

Second Claims for CCH's post 1994 sewage spills.[3]

---

[1]    Plaintiff's First Claim asserts that Defendant City and
County of Honolulu ("CCH") violated the Clean Water Act, 33
U.S.C. §§ 1311(a), 1365 ("CWA") by sewage spill discharges
without a NPDES permit.   Plaintiffs' Second Amended Complaint
filed January 10, 2005.   Plaintiffs' Second Claim alleges that
CCH violated the CWA by sewages spills in violation of its NPDES
permit conditions.   *Id*.

[2]    The 1995 Consent Decree expressly adjudicated only CCH
sewage spills up until the lodging of the Decree in October 1994.

[3]    The Citizens are simultaneously filing an alternative
(continued...)

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    CCH'S SEWAGE SPILL PROBLEM

CCH owns and operates several wastewater treatment plants (WWTP) and related collection systems that convey and treat domestic sanitary sewage on Oʻahu, including the Sand Island, Honouliuli, Kailua, Waiʻanae, and Kahuku WWTPs and appurtenant collection systems.  Since at least the late 1980s, CCH has repeatedly spilled raw sewage from its Oʻahu sewage collection systems due to sewer line blockages (generally caused by root intrusion, build-up of grease, and accumulation of sediment and debris), pump station failures, collapsing sewer lines, and excessive "infiltration and inflow" ("I/I") into sewer lines (rising groundwater or storm water runoff flowing into leaky sewer lines during rainy weather).  *Declaration of Christopher Sproul in Support of Motion for Reconsideration*, ("Sproul Decl.") ¶¶ 3, 11-17, Ex. L, M, N.  In these spills, raw sewage bubbles out of sewer manholes or other exit points from CCH's collection systems and flows into public streets, streams, beaches, and other publicly accessible areas.  *Id.*, ¶ 16.

---

[3](...continued)
Motion to Dismiss in *EPA II*.  If the Court declines to grant this Motion for Reconsideration and instead holds that *res judicata* bars the Citizens (in privity with EPA in *EPA I*) from bringing a new post-1995 Consent Decree action for sewage spills, then the Court should also dismiss EPA and DOH's post-1994 sewage spill claim in *EPA II*.  On the other hand, if the Court grants this Motion for Reconsideration, Citizens will withdraw their Motion to Dismiss in *EPA II*.

B.    EPA AND DOH'S 1994 CASE, *EPA I*

On October 3, 1994, EPA and DOH filed EPA I against CCH

asserting claims for numerous CWA violations resulting from

ongoing spills of raw sewage spills from CCH's sewage collection

systems.   EPA and DOH's complaint alleged that CCH had committed

numerous sewage spills from 1987 to 1992.   Sproul Decl., Ex. A at

12, ¶ 46.   EPA and DOH simultaneously lodged a proposed consent

decree with CCH addressing CCH's violations alleged in the

agencies' complaint.   On May 15, 1995, the Court entered the

Consent Decree ("1995 Consent Decree").   Sproul Decl., Ex. B.

The 1995 Consent Decree included several programmatic and capital

improvement requirements designed to remedy CCH's sewage spill

problem.   The 1995 Consent Decree did not require CCH to end all

sewage spills.   Instead, it required CCH only to "use its best

efforts to prevent, to the maximum extent reasonably possible,

Collection System Spills in terms of frequencies, duration and

volume."   Sproul Decl., Ex. B at 15, ¶ VII.A.1.

The 1995 Consent Decree expressly resolved *only* CCH's CWA

sewage spill violations through the date the 1995 Consent Decree

was lodged, i.e., October 3, 1994:

> CCH's complete performance of all obligations
> established pursuant to this Consent Decree,
> including payment of all penalties hereunder,
> shall be in full satisfaction of all civil claims
> of the United States and the State alleged in the
> complaint *through the date of lodging of this
> Consent Decree.*

Sproul Decl., Ex. B at 56, ¶ XVII.B (emphasis added).

The 1995 Consent Decree further expressly provided that the Decree did not limit or affect the rights of third parties not party to the Decree to proceed against CCH: "[T]his Consent Decree does not . . . limit the rights of third parties, not parties to this Consent Decree, against CCH." Sproul Decl., Ex. B at 56, ¶ XVII.G.

C.    **PRIOR DISMISSAL OF CITIZENS' SEWAGE SPILL CLAIMS**

In 2004, nearly ten years <u>after</u> the 1995 Consent Decree was filed, CCH continued to experience numerous and voluminous spills of sewage from its collection systems. Sproul Decl., ¶¶ 11-17. The Citizens concluded that the 1995 Consent Decree lacked all the relief necessary to abate this sewage spill problem and that the Consent Decree was not being diligently complied with nor enforced. *Id.*, ¶ 5. Believing that the 1995 Consent Decree was not the exclusive judicial remedy for any and all future CCH sewage spills, the Citizens filed this separate CWA citizen suit action on July 29, 2004 alleging, *inter alia*, that CCH had repeatedly violated the CWA by committing numerous sewage spills from its collection systems between May 1999 and the present. Plaintiffs' Second Amended Complaint (First and Second Claims for Relief).

In September 2005, this Court dismissed the Citizens' First and Second Claims in this action. Sproul Decl., Ex. C.   The Court noted that all citizens must be deemed to be parties to an EPA CWA enforcement action and thus potentially barred from

filing their own actions by the *res judicata* effect of an EPA action.  The Court further noted that "for *res judicata* to operate, there must also be a substantial identity between the issues in controversy in both [a citizen suit and a prior EPA action]."  *Id.* at 15-16.  The Court found that the Citizens' First and Second Claims in this case for CCH sewage spill violations and EPA and DOH's sewage spill claims in *EPA I* "are substantially identical claims," thus warranting dismissal of the former on *res judicata* grounds.  *Id.* at 16.

### D.    CCH'S CONTINUING SEWAGE SPILLS POST-1994

The 1995 Consent Decree failed to end CCH's sewage spill violations.  In the over twelve years since the Decree, CCH committed several hundred sewage spills all over Oʻahu.  CCH spilled sewage on a regular basis at rates exceeding the 1995 Consent Decree's goals.  Sproul Decl., ¶¶ 11-18, Ex L, M, N, O. These spills frequently close beaches and continue to threaten the health and well-being of Hawaiʻi's residents and visitors. *Id.*  The cause of these spills remains the same--sewer line blockages, pump station failures, collapsing sewer lines, and excessive I/I.  *Id.* at ¶ 16.

Some of CCH's spills have been spectacularly large.  From March 26-30, 2006, CCH spilled about 48 million gallons of raw sewage into the Ala Wai Canal when its Beachwalk force main sewer line ruptured.  *Id.*, ¶ 12.  The Beachwalk spill ("Beachwalk spill") forced the closure of world famous Waikiki Beach for

several days, as the foul plume of raw sewage spread from the Ala
Wai Canal to Waikiki.  Bacteria levels spiked above the DOH safe
level.  *Id.*, ¶ 12.  Local residents could not safely swim or surf
in the ocean.

During the massive Beachwalk spill, CCH simultaneously
spilled large volumes of raw sewage from its Sand Island WWTP and
several Windward locations.  More beach closures followed.  *Id.*

On December 4-5, 2003, CCH spilled about 7.5 million gallons
of raw sewage from the Hart Street pump station into local waters
due to a short circuit that caused a power failure at the pump
station.  *Id.*, ¶ 17.  In early January 2004, CCH experienced
major spills causing beach closures all over eastern and southern
O'ahu.  *Id.*  In March 2004, the CCH force main line that
transports sewage from Ala Moana Pump Station underneath Honolulu
Harbor to the Sand Island WWTP ruptured.  Two million gallons of
raw sewage spilled into Honolulu Harbor and the Pacific Ocean.
Beaches from Point Panic to Ke'ehi Lagoon were closed.  *Id.*

As recently as October 17, 2007, CCH spilled about 2,600
gallons of raw sewage onto crowded South Beretania Street.  *Id.*,
¶ 12, Ex. O.

Despite this consistent pattern of on-going sewage spill
violations by CCH, neither EPA nor DOH has ever returned to the
Court to seek any orders to enforce the 1995 Consent Decree.
*Id.*, ¶ 19.  Instead, EPA and DOH brought new independent original
enforcement actions.

E.    **EPA AND DOH ADMINISTRATIVE ENFORCEMENT**

In apparent recognition that the 1995 Consent Decree was inadequate by itself to curb CCH's sewage spill problem, EPA and DOH issued administrative orders to CCH in 2003 and 2004 requiring CCH to take additional actions to remedy the problem beyond those measures required by the 1995 Consent Decree. Specifically, EPA's June 30, 2003 administrative order ("EPA June 2003 Order") required CCH to develop a new action plan for reducing sewage spills into Kalihi and Nuʻuanu streams. Sproul Decl., Ex. G. On April 15, 2004, DOH issued an additional proposed administrative order ("DOH's 2004 Order") requiring CCH to implement measures to reduce spills from CCH's force mains (the sewer lines that transport sewage under pressure from pump stations). *Id.*, Ex. H.

F.    **EPA II**

On May 8, 2007, EPA and DOH filed *EPA II* seeking yet more judicial relief to curb CCH's sewage spill violations. EPA and DOH's complaint in *EPA II* asserts a single CWA claim for injunctive relief against CCH for the 2006 Beachwalk spill. Sproul Decl., Ex. D. Concurrently with filing their complaint, EPA and DOH lodged a Stipulated Order purporting to resolve their one asserted claim. The Stipulated Order requires CCH remedial action on six force main lines, the Beachwalk, Ala Moana, Old Hart Street, Kailua/Kaneohe, Waimalu, and Kahala lines over a

schedule lasting until December 2018. *Id.*, Ex. E. This Court entered the Stipulated Order on October 10, 2007. *Id.*, Ex. F.

The 2007 Stipulated Order indicates that CCH, EPA, and DOH intend to pursue additional negotiations and additional judicial relief to address "all compliance issues associated with CCH's wastewater system." *Id.*, Ex. E at 2. EPA, DOH, and CCH have all further represented to the Court that they are currently pursuing such negotiations with the intent of agreeing to additional judicial relief requiring CCH to implement additional measures to address deficiencies in its sewage collection systems. *E.g.,* *id.*, Ex. I at 2-3, 8-9, ¶¶ 6, 8, 10, 30-31, 33; Ex. J at 4, ¶ 17; Ex. K at 3-4, 7-9, ¶¶ 14, 19, 30, 37.

## III. ARGUMENT

A claim is precluded by *res judicata* when: (1) the claim is the same claim brought in an earlier action, (2) there was a final judgment on the merits of that claim in an earlier action, and (3) the earlier action involved the same parties or their privies. *E.g., Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1404 (9th Cir. 1993). This Court's entry of the 2007 Stipulated Order in *EPA II* effectively establishes (1) that new claims for CCH sewage spills after 1994 are not the same claims as those adjudicated by the 1995 Consent Decree and (2) that the Citizens should not be deemed in privity with EPA and DOH in these agencies' prosecution

of CCH sewage spills in *EPA I* because *EPA I* does not constitute a diligent prosecution of post-1994 CCH sewage spills.

Therefore, entry of the 2007 Stipulated Order is a new case law development warranting reconsideration and setting aside of the Court's September 2005 dismissal of the Citizens' 2004 sewage spill claims on *res judicata* grounds.

### A.    THE COURT'S ENTRY OF THE STIPULATED ORDER IN EPA I WARRANTS RECONSIDERATION OF THE COURT'S 2005 DISMISSAL OF CITIZENS' SEWAGE SPILL CLAIMS.

In its September 2005 Dismissal Order, this Court found that the Citizens' sewage spill claims in this case and EPA and DOH's sewage spill claims in the 1995 *EPA I* "are substantially identical claims." Sproul Decl., Ex. C at 16. The Court further held that the Citizens stand in the government's shoes in bringing a CWA citizen suit and thus effectively were party to *EPA I* for *res judicata* purposes. *Id.* at 15-16. The Court concluded that because *EPA I* and the 1995 Consent Decree constituted diligent prosecution of future sewage spill claims, the 1995 Consent Decree created a *res judicata* bar to the Citizens' new sewage spill claims.

By entering the Stipulated Order in *EPA II*, however, the Court necessarily contradicted the central premise for dismissing the Citizens' sewage spill claims in this 2004 case, namely, that any newly filed claims for sewage spills post-1994 are identical claims to those prosecuted in *EPA I* and resolved by the 1995 Consent Decree as a matter of *res judicata*. In entering the 2007

Stipulated Order in *EPA II*, the Court allowed EPA to prosecute a new claim for sewage spills post-1994 in a newly-filed action.

The Court cannot in this action rule that *EPA I* and the 1995 Consent Decree create a *res judicata* bar on newly filed claims for sewage spills post-1994 and simultaneously rule in *EPA II* that *EPA I* and the 1995 Consent Decree create no such bar. Both can not be correct. One or the other is wrong.

The Citizens' sewage spill claims in this case can only be barred by *res judicata* if *EPA I* and the 1995 Consent Decree would also bar EPA from filing new sewage spill claims and the Citizens faced the same bar as EPA's privies.

If EPA faces no such bar, then the Citizens can not either. A party in privity can not face a *res judicata* bar when the original litigant itself faces no such bar. By definition, one in privity with another has the same legal rights/disabilities as the original litigants under *res judicata*.[4]

---

[4] *See Southwest Voter Registration Educ. Project v. Shelley,* 344 F.3d 882, 903 (9th Cir. 2003), *vacated on other grounds,* 344 F.3d 913; *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 688 n. 9 (7th Cir. 1986) ("[Privity] designates . . . a person so identified in interest with a party to former litigation that he represents *precisely the same legal right in respect to the subject matter involved.*") (emphasis added); *Petersen v. Fee Intern., Ltd.,* 435 F. Supp. 938, 942-43 (D. Okl. 1975) ("Privity involves a person so identified in interest with another *as to represent the same legal rights* and who is therefore bound by [a prior] judgment adjudging such rights.") (emphasis added); Black's Law Dictionary (defining privity as "such an identification of interest of one person with another *as to represent the same legal right.*") (emphasis added).

Accordingly, by entering the Stipulated Order in *EPA II*, the Court implicitly and effectively found that the Court's September 2005 dismissal of the Citizens' sewage spill claims in this 2004 case on *res judicata* grounds was in error. Accordingly, the Court should reconsider and set aside its dismissal of the Citizens' First and Second Claims in this action.

### B.    THE 1995 CONSENT DECREE DID NOT ADJUDICATE CITIZENS' SEWAGE SPILL CLAIMS PLED IN THIS CASE.

*Res judicata* only bars re-filing the same claim already litigated in a prior action. For *res judicata* purposes, two separately-filed claims are the same when (1) rights or interests established by a prior judgment would be destroyed or impaired by prosecution of a new claim, (2) substantially the same evidence is presented to establish a prior and a newly-filed claim, (3) the two claims involve infringement of the same right, *and* (4) the two claims arise out of the same transactional nucleus of facts. *Nordhorn*, 9 F.3d at 1405. The Court's entry of the 2007 Stipulated Order implicitly establishes that the Citizens' sewage spill claims in this 2004 case are not the same as those prosecuted in *EPA I* under this Ninth Circuit test.

In *EPA II*, EPA and DOH are prosecuting a new claim for CCH sewage violations post-1994. The Court granted the agencies relief in *EPA II* on this claim by entering the Stipulated Order. EPA and DOH can only lawfully bring their new sewage spill claim in *EPA II* if and only if this claim is not the same claim EPA

prosecuted in *EPA I* and the 1995 Consent Decree.  Otherwise, EPA and DOH's *EPA II* claim would be barred by *res judicata*.[5]

EPA and DOH's sewage spill claim in *EPA II* is indeed properly viewed as a new claim *not already prosecuted by EPA I* and the 1995 Consent Decree.  The scope of the *res judicata* bar created by an EPA consent decree is determined by the consent decree's own recitation of what claims it purports to resolve.[6] If a consent decree recites that it only resolves claims "'through the date of entry' of the decree," the consent decree will only create a subsequent *res judicata* bar *for such claims*.[7]

In *EPA I*, EPA and DOH complained of CCH sewage spills from 1987 to 1992.  Sproul Decl., Ex. A at 12, ¶ 46.  The 1995 Consent Decree expressly recited that it resolved EPA and DOH's claims for spills alleged in the complaint "*through the date of lodging of this Consent Decree.*"  *Id.*, Ex. B at 56, ¶ XVII.B (emphasis added).  The Decree further expressly reserved EPA and DOH's rights *separately* to prosecute CCH's future sewage spill

---

[5]  *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980) (holding EPA barred by collateral estoppel/*res judicata* from relitigating issues resolved by prior proceeding brought by state regulatory agency).

[6]  *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 473 (6th Cir. 2004) ("The touchstone of *res judicata* effect, however, is the consent decree itself. . . ."); see *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).

[7]  390 F.3d at 473; see *Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*, 652 F. Supp. 620, 628-29 (D. Md. 1987) (allowing citizen suit to proceed for on-going CWA violations occurring after entry of EPA consent decree).

violations.  *Id.* at 56, ¶ XVII.C.  Read together, these clauses
make plain that the parties to the 1995 Consent Decree and the
Court (in approving the Decree) intended the Decree *only* to
constitute prosecution of spills through the October 3, 1994 date
that EPA lodged the Decree.  The 1995 Consent Decree's *res
judicata* effect is limited to barring additional prosecution of
pre-October 1994 spills.

Like EPA and DOH's complaint in *EPA II*, the Citizens' First
and Second Claims in this case allege sewage spill violations
years **after** the 1995 Consent Decree was lodged (spills from May
1999 to the present).  Just as the Court should find (and must
have in order to properly enter the Stipulated Order) EPA and
DOH's sewage spill claim in *EPA II* for post-1994 spills to be a
new and unique claim (and thus not barred by *res judicata)*, so
the Court should find the Citizens' First and Second Claims for
CCH post 1994 spills to be new and unique claims not prosecuted
by *EPA I* and the 1995 Consent Decree.

CCH's sewage spills before October 1994 and after May 1999
had similar causes.  CCH fails to remedy the persistent causes of
its spills, but separate events with similar causes are *not* the
same nucleus of facts for *res judicata* purposes.[8]

---

[8] *See Southwest Voter Registration Educ. Project v.
Shelley*, 344 F.3d 882, 903 (9th Cir. 2003), *vacated on other
grounds*, 344 F.3d 913 (two elections with similar vote
tabulations defects are not the same transactional nucleus of
facts for *res judicata* purposes); *Bayview Hunter's Point
Community Advocates v. Metropolitan Transit Commission*, 177
(continued...)

No EPA or DOH rights or interests established by the 1995 Consent Decree will be destroyed or impaired by allowing Citizens' to bring their First and Second Claims. The 1995 Consent Decree assessed appropriate civil penalties and supplemental environmental projects for CCH's pre-1994 CWA violations. Citizens do not and could not challenge that.[9]

Moreover, Citizens do not seek to vacate the 1995 Consent Decree's injunctive relief, nor seek any remedy inconsistent with that relief. The injunctive relief in the 1995 EPA Consent Decree is a start, but it is not the full solution, to CCH's sewage spill violations. The Citizens seek to supplement this relief with additional remedial measures and citizen oversight. Indeed, in persuading the Court to enter the Stipulated Order in *EPA II* and in expressly representing to the Court that it is seeking yet more judicial relief beyond that already secured in the 1995 Consent Decree and Stipulated Order, EPA and DOH have

---

[8](...continued)
F. Supp. 2d 1011, 1024 (N.D. Cal. 2001), *rev'd on other grounds*, 366 F.3d 692 (9th Cir. 2004) ("every day of violation constitutes a new violation of the law--i.e., a new wrong" and is thus not the same nucleus of operative fact); *Citizens Legal Environmental Action Network ("CLEAN") v. Premium Standard*, 2000 U.S. Dist. LEXIS 1990, at *27 (W.D. Mo. Feb. 23, 2000) ("each violation of each particular [CWA] standard is separately actionable" and is thus not the same nucleus of operative fact, relying in part on *Save Our Bays and Beaches v. City and County of Honolulu*, 904 F. Supp. 1098, 1125 (D. Haw. 1994)).

[9]    CCH's pre-1994 violations are beyond the statute of limitations applicable to Citizens' suit, barring Citizens from seeking a different outcome for these violations. *See Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1521, 1523-24 & n.5 (9th Cir. 1987).

manifestly signaled that they also see additional judicial relief beyond that in the 1995 Consent Decree as necessary and appropriate rather than as a contradiction to their rights secured under the 1995 Consent Decree.

CCH has in the past contended that finding *res judicata* to bar Plaintiffs's First and Second Claims is supported by *Alaska Sportfishing Association v. Exxon,* 34 F.3d 769 (9th Cir. 1994). However, in *Alaska Sportfishing*, the Ninth Circuit held only that when citizens allege claims out of the same, wholly past event addressed by a federal agency's consent decree, the consent decree creates a *res judicata* bar to the citizens' claim. *Alaska Sportsfishing* is not on point here where the Citizens' claims against CCH arise out of continuing violations occurring **after** the 1995 Consent Decree and, by the Consent Decree's express terms, that were not addressed by the Decree.

## C.    THE 1995 CONSENT DECREE DID NOT CONSTITUTE DILIGENT PROSECUTION OF CCH SEWAGE SPILLS POST 1999.

The third elements of *res judicata* is that for the new action to be barred, the new action must be brought by the same party or one in privy to the original action. A third party is only in privity with an original litigant if that original litigant has diligently prosecuted the third party's claim.[10]

---

[10]    *Rayonier,* 627 F.2d at 1003 (9th Cir. 1980) (holding EPA in privity with state regulatory agency, noting "It is undisputed that [the state agency] maintained the same position as the EPA before the state hearings board and state courts. . . . The EPA does not contend that DOE failed to assert vigorously its
(continued...)

Thus, the Citizens are presently in privity with EPA and DOH in the latter's prosecution of *EPA I only if* the agencies have diligently prosecuted the same sewage spill violations Citizens seek to redress. *Friends of Milwaukee's Rivers & Lake Michigan Fed'n v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 759 (7th Cir. 2004), *cert. denied*, 544 U.S. 913 (2005), *CLEAN*, 2000 U.S. Dist. LEXIS 1990 at *41-42.

As discussed in the preceding section, the Court's entry of the Stipulated Order in *EPA II* implicitly recognizes that *EPA I* and the 1995 Consent Decree *prosecuted only CCH spills through October 2004 and thus did not prosecute the same sewage spills at issue in Plaintiffs's First and Second Claims– which all post-date May 1999.* Alternatively, even if the 1995 Consent Decree were deemed diligent prosecution of post-1994 CCH sewage spills, this Court's entry of the 2007 Stipulated Order in *EPA II* implicitly recognizes that *EPA I* and the 1995 Consent Decree do not constitute a sufficiently diligent prosecution of these spills to create privity and *res judicata* bar for the Citizens.[11]

---

[10] (...continued)
position in the state proceedings.").

[11]    If an agency has not sought a further court order to curtail violations occurring *after* entry of a decree, at least some courts have held that the agency has *per se* not "diligently prosecuted" such post-decree violations, rendering *res judicata* inapplicable to a subsequent post-decree citizen suit. *See Public Interest Research Group, Inc. v. Rice*, 774 F. Supp. 317, 327 (D. N.J. 1991), *Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*, 652 F. Supp. 620, 629 (D. Md. 1987), *CLEAN*, 2000 U.S. Dist. LEXIS 1990, at *18-20; *Bayview Hunter's Point*, 177 F.
(continued...)

While the Ninth Circuit has not addressed the extent to which an EPA consent decree providing for prospective relief can constitute diligent prosecution of future CWA violations,[12] the Second, Seventh and Eighth Circuits have.  The Second and Seventh Circuit's standards would preclude finding the 1995 Consent Decree to be diligent prosecution.

The Second Circuit held that an EPA consent decree only constitutes diligent prosecution and only creates a *res judicata* bar to citizen suits:

> [i]f the [government] enforcement proceeding has caused the violations alleged in the citizen suit to cease without any likelihood of recurrence. . . . If . . . such violations are in fact continuing or . . . the terms of the settlement are such that a realistic prospect of continuing violations exists, [the citizens] may continue to pursue relief under the Clean Water Act.[13]

The Seventh Circuit endorsed a slightly less rigorous test, that an EPA consent decree constitutes diligent prosecution and a

---

[11](...continued)
Supp. 2d at 1024.  As noted in the Factual Background, EPA and DOH have not sought any additional court orders to curtail CCH's post-1994 sewage spill violations other than bringing the claim in *EPA II* for a single CCH sewage spill, CCH's March 2006 Beachwalk spill.  Under this standard, EPA and DOH clearly have not diligently prosecuted any post-1994 sewage spills other than, arguably, the Beachwalk spill.

[12] As noted, the Ninth Circuit *Alaska Sportfishing* decision dealt only with a consent decree resolving a wholly past, one-time incident, not on-going future violations.  34 F.3d 769.

[13] *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*, 933 F.2d 124 (2d Cir. 1991); *see St. Bernard Citizens for Environmental Quality, Inc. v. Chalmette Refining, L.L.C.*, No. 04-0398, 2007 WL 2323387, at *13-*14 (E.D. La. Aug. 10, 2007).

*res judicata* bar to CWA citizen suits if the decree awarded
relief both calculated to and capable of requiring a complete end
to CWA violations, not merely a reduction in the number or size
of them.[14]  Applying this standard, the Seventh Circuit found
that an EPA consent decree did not constitute a diligent
prosecution given the City of Milwaukee's continued sewage spills
and the apparent goal of agency enforcement being only the
eventual reduction of sewer overflows, not their elimination.
382 F.3d at 763-64.

By entering the Stipulated Order in *EPA II*, the Court
effectively held that the 1995 Consent Decree *is not* a diligent
prosecution of post-1994 sewage spills within the meaning of the
Second and Seventh Circuit tests.  The Court effectively held
that additional post-1995 Consent Decree relief is necessary and
appropriate to curb CCH's on-going sewage spill violations.

EPA and DOH's recent prosecutorial conduct reenforce this
conclusion.  EPA and DOH implicitly acknowledged that the 1995
Consent Decree does not constitute a diligent prosecution of
post-1994 sewage spills within the meaning of the Second and
Seventh Circuit standards by:  (1) issuing the EPA June 2003
Order and DOH 2004 Order that imposed new requirements on CCH to
address sewage spills; (2) filing *EPA II* along with the
Stipulated Order that similarly imposed new sewage spill remedial

---

[14] *Milwaukee's Rivers*, 382 F.3d at 757-65; *see St. Bernard
Citizens*, 2007 WL 2323387, at* 13-*14.

requirements on CCH; and (3) by declaring to the Court their
intention to seek yet additional judicial relief for CCH's sewage
spill problems.

Obviously, EPA and DOH would have no reason to impose
additional remedial actions on CCH if the 1995 Consent Decree:
(1) caused CCH's post-1994 sewage spill violations "to cease
without any likelihood of recurrence" as required by the Second
Circuit standard; and/or (2) awarded enough relief calculated to
and capable of requiring a complete end to CWA violations (as
required under the Seventh Circuit standard).

Finally, as noted above, CCH has committed hundreds of
sewage spill violations **after** entry of the 1995 Consent Decree.
Moreover, the 1995 Consent Decree expressly required CCH only to
"use its best efforts to prevent, to the maximum extent
reasonably possible, Collection System Spills in terms of
frequencies, duration and volume," rather than come into full
compliance with the CWA and halt all unlawful spills.  Sproul
Decl., Ex. B at 15, ¶ VII.A.1.  This continuing spill violation
history coupled with the plain language of the 1995 Consent
Decree makes clear that the Decree did not ended CCH's
violations, is not designed to end these violations, and is not
capable of doing so.  Thus, the 1995 Consent Decree could not
possibly be deemed to be a diligent prosecution within the
meaning of the Second or Seventh Circuit tests.

While the Eighth Circuit has held that an EPA consent decree serves *per se* as a *res judicata* bar to citizen suit prosecution of the same claims as those addressed by the consent decree, this Court should reject this minority approach.[15]  Instead, the Court should either adopt the Second Circuit standard or follow a recent well-reasoned district court decision in the Eleventh Circuit and adopt the Seventh Circuit standard.  *St. Bernard Citizens*, 2007 WL 2323387, at* 13-*14.  As this court pointed out:

> the Seventh Circuit's "diligent prosecution" standard in *Friends of Milwaukee's Rivers* is the most practical and realistic approach to determining whether a government enforcement action is *res judicata* as to an earlier filed citizen suit . . . .  That is, the "diligent prosecution" analysis should look to whether the government enforcement action is capable of requiring compliance with the [environmental statute] and is in good faith calculated to do so. . . . This approach does not give the polluter a pass simply because it has reached a settlement with a government enforcement agency.

*Id.*

In sum, the 1995 Consent Decree was not designed to end, is not sufficient to end, and manifestly has not ended CCH's sewage spill violations.  This is established beyond doubt by (1) this Court's approval of supplemental sewage spill relief against CCH in the *EPA II* Stipulated Order, (2) EPA and DOH's own actions seeking recent supplemental relief against CCH for sewage spills

---

[15]    *See U.S. Environmental Protection Agency v. City of Green Forest, Arkansas*, 921 F.2d 1394, 1403-05 (8th Cir. 1990).

and professed intent to be seeking yet more such judicial relief,
(3) CCH's twelve year history of numerous post-1995 Consent
Decree sewage spill violations, and (4) the plain language of the
Decree itself.  Accordingly, the diligent prosecution element of
*res judicata* has not been met under either the Second or Seventh
Circuit test which the Court should likewise adopt.

This Court should reinstate the Citizens' First and Second
Claims.

**D.    RECONSIDERATION IS APPROPRIATE AT THIS TIME GIVEN THE
COURT'S NEW DECISION TO ENTER THE STIPULATED ORDER.**

The September 2005 Dismissal Order is an interlocutory, non-
final order.  The Court did not direct entry of final judgment
upon an express determination under Federal Rule of Civil
Procedure ("FRCP") 54(b) "that there is no just reason for delay"
in entry of partial final judgment for CCH.[16]    Local Rule 60.1
generally provides a ten day time limit to request
reconsideration of interlocutory orders.  Local Rule 60.1,
however, cannot and does not abrogate the Court's inherent power
and authority under FRCP 54(b) to amend its interlocutory orders
as justice demands.  *See, e.g.*, *City of Los Angeles, Harbor Div.
v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001) ("a
district court's authority to rescind an interlocutory order over
which it has jurisdiction is an inherent power rooted firmly in

---

[16]    *See* FRCP 54(b); *S.E.C. v. Capital Consultants, LLC*, 453
F.3d 1166, 1169 (9th Cir. 2006); *Continental Airlines, Inc. v.
Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1524 (9th Cir. 1987).

the common law and is not abridged by the Federal Rules of Civil Procedure"); *United States v. LoRusso*, 695 F.2d 45, 53 (2nd Cir. 1982), *cert. denied, Errante v. United States*, 460 U.S. 1070 ("so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."); *McColm v. Anber*, slip op., 2007 WL 607661, *1 (N.D. Cal. 2007) (hearing motion for reconsideration not provided for by Local Rules but allowed by the FRCP); Fed. Rule Civ. Proc. 54(b) ("any order or other form of decision . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").

Granting a motion for reconsideration requires one of the following: (a) newly discovered evidence, (b) clear error, (c) an intervening change in the controlling law, or (d) other highly unusual circumstances. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). It is inappropriate to seek reconsideration merely to have the Court reconsider prior arguments. *Id.* As discussed above, the Court's entry of the Stipulated Order effectively represents a change in controlling law as it effectively constitutes a ruling by this Court that the 1995 Consent Decree does not create a *res judicata* bar to the filing of a new action asserting new claims for sewage spills occurring after October 1994.

The Court's entry of the 2007 Stipulated Order further indicates that the Court's contrary September 2005 ruling had to have been clear error. Finally, the inherent reversal of the Court's holding on the *res judicata* effect reflected in entry of the Stipulated Order should be seen as a highly unusual circumstance. In seeking reconsideration on the basis of the Court's entry of the Stipulated Order in *EPA II*, the Citizens are not asking the Court to reconsider prior arguments. At the time the Court issued the September 2005 Dismissal Order, EPA had not yet filed *EPA II* and the Court had not yet entered the Stipulated Order.

## IV.  CONCLUSION

The entry of the Stipulated Order in *EPA II* effectively holds that new post-1994 claims for CCH sewage spills are not barred by any *res judicata* effect of the 1995 Consent Decree. This Court should reconsider its September 2005 dismissal of Plaintiff's First and Second Claims for CCH's sewage spills on *res judicata* grounds and reinstate these claims.

Dated: Honolulu, Hawaii, November 15, 2007.

    /s/ William M. Tam
CHRISTOPHER SPROUL
ENVIRONMENTAL ADVOCATES

PAUL ALSTON
WILLIAM TAM
BLAKE OSHIRO
ALSTON HUNT FLOYD & ING
Attorneys for Plaintiffs