MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department Of Justice
ROBERT D. MULLANEY
J. THOMAS BOER
Trial Attorneys
Environmental Enforcement Section
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6491
Fax: (415) 744-6476
E-mail: Robert.Mullaney@usdoj.gov
        Tom.Boer@usdoj.gov

EDWARD H. KUBO, JR. (Hawaii Bar no. 2499)
United States Attorney
District of Hawaii
R. MICHAEL BURKE (Hawaii Bar no. 1902)
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Tel: (808) 541-2850
Fax: (808) 541-2958

Attorneys for Plaintiff United States of America

[Attorneys for the State of Hawaii on next page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, et. al.,<br><br>              Plaintiffs,<br><br>        v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>              Defendant. | Civil No. CV 07-00235 HG-KSC<br><br>STIPULATED ORDER |

EXHIBIT E

MARK J. BENNETT  (Hawaii Bar no. 2672)
Attorney General of Hawaii

KATHLEEN S. Y. HO  (Hawaii Bar no. 3424)
EDWARD G. BOHLEN  (Hawaii Bar no. 8333)
Deputy Attorneys General
Department of the Attorney General,
State of Hawaii
465 South King Street, Room 200
Honolulu, Hawaii  96813
Tel:  (808) 587-3050
Fax:  (808) 587-3077
E-mail:  Kathleen.S.Ho@hawaii.gov
         Edward.G.Bohlen@hawaii.gov

EXHIBIT E

TABLE OF CONTENTS

I. JURISDICTION AND VENUE ................................. -3-

II. APPLICABILITY ......................................... -3-

III. OBJECTIVES ........................................... -3-

IV. DEFINITIONS .......................................... -4-

V. COMPLIANCE REQUIREMENTS ............................. -6-

VI. ANNUAL AND COMPLIANCE REPORTS ...................... -16-

VII. REVIEW AND APPROVAL OF DELIVERABLES ............... -18-

VIII. STIPULATED PENALTIES ............................... -19-

IX. FORCE MAJEURE ........................................ -22-

X. DISPUTE RESOLUTION ................................... -24-

XI. INFORMATION COLLECTION AND RETENTION .............. -26-

XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........ -27-

XIII. COSTS ............................................... -28-

XIV. NOTICES ............................................. -29-

XV. EFFECTIVE DATE ...................................... -30-

XVI. RETENTION OF JURISDICTION ......................... -30-

XVII. MODIFICATION ....................................... -30-

XVIII. TERMINATION ....................................... -30-

XIX. PUBLIC PARTICIPATION ............................... -31-

XX. SIGNATORIES/SERVICE ................................ -31-

XXI. INTEGRATION ........................................ -32-

EXHIBIT E

WHEREAS:

Plaintiff, the United States of America, by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request of and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and Plaintiff State of Hawaii, acting at the request of and on behalf of the State of Hawaii Department of Health ("DOH") (collectively the United States and the State are referred to herein as the "Governments"), have filed a Complaint in this action against Defendant City and County of Honolulu ("CCH"), seeking injunctive relief pursuant to the Clean Water Act ("CWA" or the "Act") and State law. The Complaint alleges that CCH is violating the Act and State law by discharging untreated sewage from its Wastewater Collection System without a permit.

CCH, a county in the State of Hawaii, owns and operates a publicly owned treatment works ("POTW") that collects, treats, and disposes of sanitary sewage for a large portion of the island of Oahu within the District of Hawaii.

CCH owns and operates the 42-inch Beachwalk Force Main that conveys untreated wastewater containing raw sewage from Manoa, Mo'ili'ili, and Waikiki to the Sand Island Treatment Plant (the "Beachwalk Force Main").

The Beachwalk Force Main suffered a failure on March 24, 2006 that resulted in a significant release of wastewater (estimated by CCH to total 48.7 million gallons) into the Ala Wai Canal, which flows into the Pacific Ocean.

CCH does not admit any liability to the United States or the State for the transactions or occurrences alleged in the Complaint.

As part of their oversight of CCH's Collection System Compliance Program pursuant to the 1995 Consent Decree, the Governments have identified deficiencies with respect to certain other force mains in CCH's Wastewater Collection System.

CCH has agreed to take certain actions to evaluate, repair, rehabilitate or

EXHIBIT E

replace certain force mains in its Wastewater Collection System and the Beachwalk Pump Station to address the Governments' concerns. The Parties have agreed to stipulate to an Order to provide for these actions and to add provisions to facilitate the implementation of these additional actions. It is the position of CCH that the work required to accomplish these actions is being undertaken on an aggressive timetable which will require it to obtain the requisite goods and services as expeditiously as possible. DOH acknowledges CCH's position and supports the work being done on an aggressive timetable.

The Parties seek to avoid further litigation and to work cooperatively on issues relating to CCH's Wastewater Collection System by entering into this Stipulated Order as set forth herein. Nothing in this Stipulated Order shall be deemed an admission by any party of any fact or of any liability with respect to any issue addressed in the Stipulated Order.

The Parties expressly recognize that the filing of the Complaint limited to these specific claims and the filing of this Stipulated Order do not resolve and are without prejudice to other claims of the Governments regarding compliance with the 1995 Consent Decree, the Act, or State law, including, but not limited to, the Governments' claims for civil penalties with regard to the matters set forth in this Complaint.

Following entry of this Stipulated Order, the Parties intend to negotiate in good faith a comprehensive remedy addressing all compliance issues associated with CCH's wastewater system.

The Parties recognize, and the Court by entering this Stipulated Order finds, that this Stipulated Order has been negotiated by the Parties in good faith and will avoid further litigation between the Parties, and that this Stipulated Order is fair, reasonable, and in the public interest.

NOW, THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

-2-

EXHIBIT E

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, and the Act, and the Court has jurisdiction over the Parties.  Venue lies in this District pursuant to the Act, and 28 U.S.C. § 1391(b) because this is the District in which CCH is located.

## II. APPLICABILITY

2.     The provisions of this Stipulated Order shall apply to and be binding upon the United States, the State of Hawaii, CCH, and any successors or other entities or persons otherwise bound by law.

3.     CCH shall provide a copy of this Stipulated Order to all managers whose responsibilities include the management of the implementation of the material components of the work required to be performed under this Stipulated Order.  CCH shall make copies of the Stipulated Order available to any contractor retained to perform work required under this Stipulated Order.

4.     In any action to enforce this Stipulated Order, CCH shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Stipulated Order.

5.     CCH shall provide a copy of this Stipulated Order to any successor in interest at least thirty (30) days prior to transfer of that interest, and simultaneously shall verify in writing to EPA that such notice has been given.  Absent agreement of the Parties or order of the Court, any sale or transfer of CCH's interests in, or operating role with respect to, CCH's "treatment works" or "POTW," as those terms are defined in 33 U.S.C. § 1292(2)(A) and 40 C.F.R. § 403.3(o), shall not in any manner relieve CCH of its responsibilities for meeting the terms and conditions of this Stipulated Order.

## III. OBJECTIVES

6.     In entering into this Stipulated Order, the Parties intend to further the

EXHIBIT E

objectives set forth in the CWA, and to set out measures that CCH will implement with respect to certain force mains in the Wastewater Collection System to reduce Sanitary Sewer Overflows from specified force mains to the maximum extent feasible.

## IV. DEFINITIONS

7.     Unless otherwise defined herein, terms used in this Stipulated Order shall have the meaning given to those terms in the Act, 33 U.S.C. §§ 1251-1387, and the regulations promulgated thereunder.  Whenever terms set forth below are used in this Stipulated Order, the following definitions shall apply:

"Act" or "CWA" shall mean the Clean Water Act, 33 U.S.C. §§ 1251-1387.

"CCH" shall mean the City and County of Honolulu.

"Complaint" shall mean the Complaint filed by the United States and the State in this action seeking injunctive relief to address specific issues in CCH's Wastewater Collection System, in particular with regard to certain force mains and the Beachwalk Pump Station.

"Complete Construction" shall mean:  (i) all equipment testing has been satisfactorily performed under normal operating range; (ii) CCH personnel have been trained in proper operation; (iii) beneficial occupancy has occurred and CCH is able to use all necessary equipment; and (iv) the contractor has delivered a complete operations and maintenance manual to CCH.

"Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Stipulated Order, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"Defendant" shall mean CCH.

"Deliverable" shall mean any written report or other document required to be prepared and/or submitted pursuant to this Stipulated Order.

"DOH" shall mean the State of Hawaii Department of Health.

-4-

EXHIBIT E

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Force Main Condition Assessment" shall mean an inspection and evaluation program that includes, but is not limited to, all of the elements of the program listed in Appendix A to this Stipulated Order.

"1995 Consent Decree" shall mean the Consent Decree entered on May 15, 1995, by this Court in United States of America, et al. v. City and County of Honolulu, Case No. Civil 94-00765 DAE.

"Paragraph" shall mean a portion of this Stipulated Order identified by an Arabic numeral.

"Parties" shall mean the United States, the State, and CCH.

"Plaintiffs" shall mean the United States and the State.

"Pump Station Condition Assessment" shall mean an inspection and evaluation program that includes, but is not limited to, all of the elements of the program listed in Appendix B to this Stipulated Order.

"Sanitary Sewer Overflow" shall mean an overflow, spill, diversion, or release of wastewater from or caused by CCH's Wastewater Collection System, except that the term "Sanitary Sewer Overflow" does not include wastewater backups into buildings caused solely by a blockage or other malfunction in a building lateral that is privately owned.

"Section" shall mean a portion of this Stipulated Order identified by an uppercase Roman numeral.

"Spill Contingency Plan" shall mean a site-specific plan designed to minimize the volume of spills from a force main that includes, but is not limited to, all of the elements of the plan listed in Appendix C to this Stipulated Order.

"State" shall mean the State of Hawaii.

"United States" shall mean the United States of America, acting on behalf of EPA.

"Wastewater Collection System" shall mean all parts of the wastewater

EXHIBIT E

collection system owned or operated by CCH that are intended to convey domestic or industrial wastewater to CCH's wastewater treatment plants, including, without limitation, sewers, pipes, pump stations, lift stations, manholes or maintenance holes, and force mains.

## V.  COMPLIANCE REQUIREMENTS

8.    Beachwalk Projects

a.    Construction of Temporary Force Main:  By the compliance milestone of June 30, 2007 or the date of entry of this Interim Order (whichever is later), CCH shall Complete Construction of the Beachwalk temporary force main to serve as a back up force main in the event of a failure of the force main currently in operation.

b.    Construction of Permanent Force Main:  CCH shall design and Complete Construction of a new and permanent Beachwalk force main by the compliance milestone of December 31, 2012, and shall meet the following interim compliance milestones:

i.  By December 31, 2008, CCH shall execute a design contract and issue a notice to proceed with the design.

ii.  By December 31, 2010, CCH shall execute a construction contract and issue a notice to proceed with construction.

To the extent these compliance milestones conflict with any compliance milestones provided for by the 1995 Consent Decree or Deliverables approved thereunder, the compliance milestones set forth in this Paragraph shall control.

c.    Condition Assessment of Existing Force Main:  CCH shall conduct a Condition Assessment of the existing Beachwalk Force Main to determine the work appropriate so that:  (1) the force main can effectively function as the primary force main until the new, permanent Beachwalk force main is in operation, and (2) unless CCH's new Beachwalk Force Main is constructed to include both a new primary and back up force main, the force main shall remain in good operating condition to serve as a back up force main.  At a minimum, the

EXHIBIT E

Condition Assessment shall contain all of the elements for a force main condition assessment listed in Appendix A to this Stipulated Order. CCH shall conduct the Condition Assessment of the existing Beachwalk force main according to the following compliance milestones:

> i. By July 31, 2008, CCH shall submit to EPA and DOH, for review and approval, a copy of the Condition Assessment (including a follow-up action plan). The schedule submitted by CCH for approval in the follow-up action plan shall provide for the expeditious completion of the work provided for in the follow-up action plan consistent with sound engineering practices. The schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2016.

> ii. EPA's and DOH's review and approval of CCH's Condition Assessment (including the follow-up action plan) shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

> iii. The approved follow-up action plan shall be incorporated by reference into this Stipulated Order, and its design interim compliance milestones and construction compliance milestones shall become enforceable pursuant to this Stipulated Order.

> d.    Maintenance of Existing Force Main: CCH presently intends to use the existing Beachwalk force main as a back up force main after it has completed construction of a new and permanent Beachwalk Force Main. When the new, permanent force main is constructed, CCH shall retain, connect, and maintain the existing force main in good operating condition for use as a back up force main unless and until CCH has achieved Complete Construction of an alternate back up force main.

> e.    Condition Assessment of Existing Pump Station: CCH shall conduct a Pump Station Condition Assessment of the existing Beachwalk pump

-7-

EXHIBIT E

station in accordance with Appendix B to this Stipulated Order. CCH shall conduct the Pump Station Condition Assessment according to the following Deliverable schedule:

    i. By January 31, 2008, CCH shall submit to EPA and DOH, for review and approval, a copy of the Pump Station Condition Assessment (including a follow-up action plan). The schedule submitted by CCH for approval in the follow-up action plan shall provide for the expeditious completion of the work provided for in the follow-up action plan consistent with sound engineering practices. The schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2012.

    ii. EPA's and DOH's review and approval of CCH's Pump Station Condition Assessment (including the follow-up action plan) shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

    iii. The approved follow-up action plan shall be incorporated by reference into this Stipulated Order, and its design interim compliance milestones and construction milestones shall become enforceable compliance milestones pursuant to this Stipulated Order.

    9.   <u>Ala Moana Force Main Projects</u>

    a.   <u>Condition Assessment of Ala Moana Force Main No. 2</u>:  CCH shall conduct a Condition Assessment of Ala Moana Force Main No. 2 to determine the work appropriate so that: (1) the force main can effectively function as the primary force main until Ala Moana Force Main No. 3 is in operation, and (2) unless CCH's Ala Moana Force Main No. 3 is constructed to include both a new primary and back up force main, the force main shall remain in good operating condition to serve as a back up line. At a minimum, the Condition Assessment shall contain all of the elements for a force main condition assessment listed in Appendix A to this Stipulated Order. CCH shall conduct the Condition

EXHIBIT E

Assessment according to the following Deliverable schedule:

      i. By June 30, 2008, CCH shall submit to EPA and DOH, for review and approval, a copy of the Condition Assessment (including a follow-up action plan). The schedule submitted by CCH for approval with the follow-up action plan shall provide for the expeditious completion of the work provided for in the follow-up action plan consistent with sound engineering practices. The schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2018.

      ii. EPA's and DOH's review and approval of CCH's Condition Assessment (including the follow-up action plan) shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

      iii. The approved follow-up action plan shall be incorporated by reference into this Stipulated Order, and its design interim compliance milestones and construction compliance milestones shall become enforceable pursuant to this Stipulated Order.

      b.    <u>Additional Condition Assessment of Ala Moana Force Main No. 2</u>: CCH shall conduct an additional Condition Assessment of Ala Moana Force Main No. 2 in accordance with this subparagraph. The additional Condition Assessment shall be conducted in the same manner as in subparagraph a except that it will focus only on problem areas identified in the first Condition Assessment. This additional Condition Assessment (including a follow-up action plan) shall be submitted to EPA and DOH for review and approval by June 30, 2011.

      c.    <u>Construction of Ala Moana Force Main No. 3</u>: CCH shall design and Complete Construction of a new Ala Moana Force Main No. 3 by the compliance milestone of December 31, 2014, and shall meet the following interim compliance milestones:

-9-

EXHIBIT E

   i. By December 31, 2009, CCH shall execute a design contract and issue a notice to proceed with the design.

   ii. By July 31, 2012, CCH shall execute a construction contract and issue a notice to proceed with construction.

To the extent these compliance milestones conflict with any compliance milestones provided for by the 1995 Consent Decree or Deliverables approved thereunder, the compliance milestones set forth in this Paragraph shall control.

   d. Maintenance of Ala Moana Force Main No. 2 as Back Up Line: CCH presently intends to use Ala Moana Force Main No. 2 as a back up force main after it has completed construction of Ala Moana Force Main No. 3. When Ala Moana Force Main No. 3 is constructed, CCH shall retain, connect, and maintain Ala Moana Force Main No. 2 in good operating condition for use as a back up force main unless and until CCH has achieved Complete Construction of an alternate back up force main.

   10. Hart Street Force Main Project

   a. Force Main Connection: CCH completed construction of a new Hart Street Force Main in May 2001 and left the old Hart Street Force Main in place. By January 31, 2008, CCH shall connect the old Force Main, in its current condition, to the new Hart Street Pump Station for use as a back up force main to handle emergency flows to the extent possible.

   b. Condition Assessment: CCH shall conduct a Condition Assessment of the old Hart Street Force Main to determine the work appropriate so that the force main can remain in good operating condition to serve as a back up line. At a minimum, the Condition Assessment shall contain all of the elements for a force main condition assessment listed in Appendix A to this Stipulated Order. CCH shall conduct the Condition Assessment according to the following Deliverable schedule:

   i. By January 31, 2009, CCH shall submit to EPA and DOH, for review and approval, a copy of the Condition Assessment (including

EXHIBIT E

a follow-up action plan). The schedule submitted by CCH for approval with the follow-up action plan shall provide for the expeditious completion of the work provided for in the follow-up action plan consistent with sound engineering practices. The schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2016.

ii. EPA's and DOH's review and approval of CCH's Condition Assessment (including the follow-up action plan) shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

iii. The approved follow-up action plan shall be incorporated by reference into this Stipulated Order, and its design interim compliance milestones and construction compliance milestones shall become enforceable pursuant to this Stipulated Order.

c.    <u>Maintenance of old Hart Street Force Main</u>: CCH intends to use the old Hart Street force main as a back up force main. CCH shall retain, connect, and maintain the old Hart Street force main in good operating condition for use as a back up force main to handle emergency flows to the extent possible.

11.    <u>Kaneohe/Kailua Force Main Project</u>

a.    <u>Condition Assessment</u>: CCH shall conduct a Condition Assessment of the Kaneohe/Kailua Force Main to determine the work appropriate so that: (1) the force main can effectively function as the primary force main until the replacement line is in operation, and (2) unless CCH's new Kaneohe/Kailua Force Main is constructed to include both a new primary and back up force main, the force main shall remain in good operating condition to serve as a back up line. At a minimum, the Condition Assessment shall contain all of the elements for a force main condition assessment listed in Appendix A to this Stipulated Order. CCH shall conduct the Condition Assessment according to the following Deliverable schedule:

-11-

EXHIBIT E

i. By January 31, 2009, CCH shall submit to EPA and DOH, for review and approval, a copy of the Condition Assessment (including a follow-up action plan). The schedule submitted by CCH for approval with the follow-up action plan shall provide for the expeditious completion of the work provided for in the follow-up action plan consistent with sound engineering practices. The schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2018.

ii. EPA's and DOH's review and approval of CCH's Condition Assessment (including the follow-up action plan) shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

iii. The approved follow-up action plan shall be incorporated by reference into this Stipulated Order, and its design interim compliance milestones and construction compliance milestones shall become enforceable pursuant to this Stipulated Order.

b.    Construction of New Force Main: CCH shall design and Complete Construction of a new Kaneohe/Kailua Force Main by the compliance milestone of December 31, 2014, and shall meet the following interim compliance milestones:

i.    By December 31, 2009, CCH shall execute a design contract and issue a notice to proceed with the design.

ii.    By July 31, 2012, CCH shall execute a construction contract and issue a notice to proceed with construction.

c.    Maintenance of Old Force Main as Back Up Line: CCH presently intends to use the old Kaneohe/Kailua Force Main as a back up force main after it has completed construction of the new force main. When the new force main is constructed, CCH shall retain, connect, and maintain the old force main in good operating condition for use as a back up force main, unless, in

-12-

EXHIBIT E

constructing the replacement Force Main, CCH also constructs a back up Force Main.

    12.   <u>Waimalu Force Main Project</u>

        a.   <u>Condition Assessment</u>:  CCH shall conduct a Condition Assessment of the Waimalu Force Main to determine whether to repair, rehabilitate or replace the force main.  At a minimum, the Condition Assessment shall contain all of the elements for a force main condition assessment listed in Appendix A to this Stipulated Order.  CCH shall conduct the Condition Assessment according to the following Deliverable schedule:

           i. By January 31, 2009, CCH shall submit to EPA and DOH, for review and approval, a copy of the Condition Assessment (including a follow-up action plan).  If, as a result of the Condition Assessment, CCH determines that it is appropriate to replace the force main, then, in the follow-up action plan, CCH shall submit:  (1) a proposed work plan with a schedule for the design and construction of the replacement force main, and (2) a proposed work plan with a schedule to enable the existing force main to effectively function as the primary force main until the replacement line is in operation, and, unless, in constructing the replacement Force Main, CCH also constructs a back up force main, the force main shall remain in good operating condition to serve as a back up line.  The schedule submitted by CCH for approval with the work plan shall provide for the expeditious completion of the work provided for in the work plan consistent with sound engineering practices.  The schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2016, unless the follow-up action plan requires the replacement of the force main.  If replacement of the force main is required, the schedule for completion of all work required by the follow-up action plan shall extend no later than

EXHIBIT E

December 31, 2018.

ii.  EPA's and DOH's review and approval of CCH's Condition Assessment (including the follow-up action plan) shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

iii.  The approved follow-up action plan shall be incorporated by reference into this Stipulated Order, and its design interim compliance milestones  and construction compliance milestones shall become enforceable pursuant to this Stipulated Order.

13.    <u>Kahala Force Main Project</u>

a.    <u>Condition Assessment</u>:  CCH shall conduct a Condition Assessment of the Kahala Force Main to determine whether to repair, rehabilitate or replace the Force Main.  At a minimum, the Condition Assessment shall contain all of the elements for a force main condition assessment listed in Appendix A to this Stipulated Order.  CCH shall conduct the Condition Assessment according to the following Deliverable schedule:

i.  By January 31, 2009, CCH shall submit to EPA and DOH, for review and approval, a copy of the Condition Assessment (including a follow-up action plan).  If, as a result of the Condition Assessment, CCH determines that it is appropriate to replace the force main, then, in the follow-up action plan, CCH shall submit:  (1) a proposed work plan with a schedule for the design and construction of the replacement force main, and (2) a proposed work plan with a schedule to enable the existing force main to effectively function as the primary force main until the replacement line is in operation, and, unless, in constructing the replacement force main, CCH also constructs a back up force main, the force main shall remain in good operating condition to serve as a back up line.  The schedule submitted by CCH for approval with the work plan shall provide for

-14-

EXHIBIT E

the expeditious completion of the work provided for in the work plan consistent with sound engineering practices. The schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2016, unless the follow-up action plan requires the replacement of the force main. If replacement of the force main is required, the schedule for completion of all work required by the follow-up action plan shall extend no later than December 31, 2018.

ii. EPA's and DOH's review and approval of CCH's Condition Assessment (including the follow-up action plan) shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

iii. The approved follow-up action plan shall be incorporated by reference into this Stipulated Order, and its design interim compliance milestones and construction compliance milestones shall become enforceable pursuant to this Stipulated Order.

14.    CCH reserves the right to take immediate action at its discretion to address conditions identified during the Condition Assessments as necessary to protect public health and the environment. Such actions shall not be subject to the Governments' approval or dispute resolution under the 1995 Consent Decree or this Stipulated Order. Provided, however, CCH's decision to take such action shall be without prejudice to the Governments' right to determine whether to approve the Condition Assessments (including follow-up action plans).

15.    Spill Contingency Plans. By January 31, 2008, CCH shall prepare a site-specific Spill Contingency Plan designed to minimize the volume of any spills from the following force mains: Beachwalk, Ala Moana No. 2, Hart Street, Kaneohe/Kailua, Waimalu, and Kahala. At a minimum, each Spill Contingency Plan shall contain all of the elements for a Spill Contingency Plan listed in Appendix C to this Stipulated Order. CCH shall prepare and submit to the

EXHIBIT E

Governments each Spill Contingency Plan according to the following Deliverable schedule:

a. By January 31, 2008, CCH shall submit to EPA and DOH, for review and approval, a copy of each site-specific Spill Contingency Plan as a Deliverable.

b. EPA's and DOH's review and approval of CCH's Spill Contingency Plans shall be conducted in accordance with Section VII (Review and Approval of Deliverables) of this Stipulated Order.

c. CCH shall implement the Spill Contingency Plans as approved. CCH's responsibility to implement the pertinent Spill Contingency Plan in response to a force main spill is a compliance milestone for purposes of this Stipulated Order. CCH's responsibility to annually update its Spill Contingency Plans as required by Appendix C is an interim compliance milestone for purposes of this Stipulated Order.

## VI. ANNUAL AND COMPLIANCE REPORTS

16.    Reporting Requirements.

a. Annual Reports: For each project required by Paragraphs 8 through 13 and Paragraph 15 of Section V (Compliance Requirements) of this Stipulated Order, CCH shall submit an Annual Report ("Annual Report") to EPA and DOH for their review. The Annual Report shall be due on January 30 (covering the previous January 1 to December 31).[1/] Each Annual Report shall report the status of each project required by Paragraphs 8 through 13 and Paragraph 15. For projects that are completed, the Annual Report shall state whether the project was completed by the applicable deadline. For projects that have not been completed, the Annual Report shall briefly describe the status of the

---

[1/] The first Annual Report, due on January 30, may cover a portion of the year after the Effective Date of the Stipulated Order. For example, if the Stipulated Order is entered on February 1, the first Annual Report shall cover the period of February 1 through December 31.

EXHIBIT E

project including whether the project remains on schedule for completion by the applicable deadline. If any projects identified in Paragraphs 8 through 13 and Paragraph 15 are not completed by the applicable deadline, subsequent Annual Reports shall continue to set forth the status of these uncompleted projects until each project is completed. The Annual Reports shall not be subject to approval pursuant to Section VII (Review and Approval of Deliverables) below.

      b. <u>Compliance Milestone Reports</u>: Within 30 days of a compliance milestone (including interim compliance milestone), CCH shall submit a brief report noting whether the work called for in the compliance milestone or interim compliance milestone is complete. If the work is completed at a date later than the compliance milestone or the interim compliance milestone, within 30 days of completion, CCH shall submit a follow-up report documenting when the work called for by the milestone is complete. These compliance milestone reports shall not be subject to approval pursuant to Section VII (Review and Approval of Deliverables) below.

      17.    All Deliverables shall be submitted to the persons designated in Section XIV (Notices) of this Stipulated Order.

      18.    Each Deliverable submitted by CCH under this Stipulated Order shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that to the best of my knowledge and belief the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

      19.    The reporting requirements of this Stipulated Order do not relieve

EXHIBIT E

CCH of any reporting obligations required by the Act or its implementing
regulations, or by any other federal, State, or local law, regulation, permit, or other
requirement.

VII.  REVIEW AND APPROVAL OF DELIVERABLES

20.    After review of the Deliverables submitted pursuant to Paragraphs 8
through 13 and Paragraph 15, EPA, after consultation with DOH, shall in writing
within 90 days of submission of these Deliverables:  (a) approve the submission;
(b) approve the submission upon specified conditions; (c) approve part of the
submission and disapprove the remainder; or (d) disapprove the submission.  If
EPA does not submit a decision in writing within the time specified, CCH shall
have the right to invoke the procedures set forth in Section X (Dispute Resolution)
of this Stipulated Order.

21.    If the submission is approved pursuant to Paragraph 20, CCH shall
take all actions required by the Deliverable, in accordance with the schedules and
requirements of the Deliverable as approved.  If the submission is conditionally
approved or approved only in part, pursuant to Paragraph 20(b) or (c), CCH shall,
upon written direction of EPA, take all actions required by the approved
Deliverable that EPA determines are technically severable from any disapproved
portions, subject to CCH's right to dispute only the specified conditions or the
disapproved portions, under Section X (Dispute Resolution) of this Stipulated
Order.

22.    If the submission is disapproved in whole or in part pursuant to
Paragraph 20(c) or (d), CCH shall, within 60 days or such other time as the Parties
agree to in writing, correct all deficiencies and resubmit the Deliverable, or
disapproved portion thereof, for approval, in accordance with the preceding
Paragraphs.  Alternatively, CCH may invoke Section X (Dispute Resolution) of
this Stipulated Order.

23.    If a resubmitted Deliverable, or portion thereof, is disapproved in
whole or in part, EPA may itself correct the deficiencies and approve the

EXHIBIT E

Deliverable upon specified conditions. CCH shall, upon written direction of EPA, take all actions required by the conditionally approved Deliverable, subject to CCH's right to invoke Dispute Resolution and the right of EPA and the State to seek stipulated penalties.

24.   <u>Permits</u>.  Where any compliance obligation under this Stipulated Order requires CCH to obtain a federal, State, or local permit or approval, CCH shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. CCH may seek relief under the provisions of Section IX (Force Majeure) of this Stipulated Order for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if CCH has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

VIII.  <u>STIPULATED PENALTIES</u>

25.   CCH shall be liable for stipulated penalties to the United States and the State for violations of this Stipulated Order as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Stipulated Order, including any follow-up action plan or schedule approved under this Stipulated Order, according to all applicable requirements of this Stipulated Order within the time schedules established or approved under this Stipulated Order.

26.   <u>Work Projects' Compliance Milestones</u>.

a.   For each violation of a compliance milestone identified in, or incorporated by reference pursuant to, Paragraphs 8 through 13 and Paragraph 15 of this Stipulated Order, CCH shall be liable for stipulated penalties per day for each violation as set forth below:

-19-

EXHIBIT E

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| Days 1-30 | $1,000 |
| Days 31-60 | $2,000 |
| Days over 60 | $3,000 |

27.    Work Projects' Interim Compliance Milestones.

For each violation of an interim compliance milestone identified in, or incorporated by reference pursuant to, Paragraphs 8 through 13 and Paragraph 15 of this Stipulated Order, CCH shall be liable for stipulated penalties per day for each violation as set forth below:

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| Days 1-60 | $250 |
| Days over 60 | $500 |

28.    Delays in Submission of Deliverables or Annual Reports.  CCH shall be liable for the following stipulated penalties for each failure to timely submit to EPA and DOH a Deliverable or an Annual Report subject to a deadline under this Stipulated Order:

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| Days 1-30 | $250 |
| Days 31-60 | $500 |
| Days over 61 | $2,000 |

29.    Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Stipulated Order.  Defendant shall pay any stipulated penalty within 30 days of receiving the United States' written demand.

30.    The United States or the State may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due that sovereign under

EXHIBIT E

this Stipulated Order. The determination by one sovereign to reduce or waive stipulated penalties shall not preclude the other sovereign from seeking stipulated penalties. In exercising their discretion under this Paragraph, the United States and the State will take into consideration the amount of time that has elapsed since they received notice of the underlying violation.

31. Fifty percent (50%) of each payment of stipulated penalties made pursuant to this Section shall be made to the United States, and fifty percent (50%) of each payment shall be made to the State, using the penalty payment procedures set forth in Paragraphs 32 and 33. EPA and DOH may modify these payment procedures through written notice to CCH.

32. CCH shall pay stipulated penalties owing to the United States by certified or cashier's check in the amount due payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-3825/1 and delivered to the office of the United States Attorney, District of Hawaii, Financial Litigation Unit, 300 Ala Moana Boulevard, Honolulu, Hawaii 96850, *unless* the United States directs CCH to pay by FedWire Electronic Funds Transfer ("EFT") in accordance with instructions provided by the Financial Litigation Office of the U.S. Attorney's Office of the District of Hawaii. If the United States directs payment by EFT, CCH shall, at the time of payment, send written notice of payment and a copy of any transmittal documentation (which should reference DOJ case number 90-5-1-1-3825/1) to the United States in accordance with Section XIV (Notices) of this Stipulated Order.

33. CCH shall pay stipulated penalties owing to the State by sending a certified or cashier's check made payable to the State of Hawaii. At the time of each payment, CCH shall simultaneously send written notice of payment and a copy of any transmittal documentation (which should reference the civil action number of this case) to the State in accordance with Section XIV (Notices) of this Stipulated Order.

EXHIBIT E

34.    If CCH fails to pay stipulated penalties according to the terms of this Stipulated Order, CCH shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due, subject to the following Paragraph.

35.    Upon receipt of EPA's or DOH's written demand for payment of a stipulated penalty, CCH may dispute its liability for such stipulated penalty pursuant to the dispute resolution provisions of Section X (Dispute Resolution). Pending resolution of any such dispute, stipulated penalties continue to accrue if the obligation at issue has not been met and interest on any unpaid penalties accrue pursuant to the terms of Paragraph 34, provided, however, that the City may argue to the Court that stipulated penalties and interest should not run after the matter has been fully briefed and submitted to the Court, and provided that the Governments can argue the contrary. Upon the completion of dispute resolution, any stipulated penalties that are ultimately determined to be due, plus interest as applicable, shall be paid within twenty (20) days of the date of EPA's written decision or, if applicable, any Court order.

36.    The payment of stipulated penalties shall not alter in any way CCH's obligation to complete the performance of all activities required under this Stipulated Order.

37.    Payment of stipulated penalties as set forth above shall be in addition to any other rights or remedies that may be available to EPA or DOH by reason of CCH's failure to comply with requirements of this Stipulated Order or any applicable federal, State, or local laws, regulations, National Pollutant Discharge Elimination System permits, and all other applicable permits.

IX. FORCE MAJEURE

38.    A "Force Majeure event" is any event beyond the control of CCH, its contractors, or any entity controlled by CCH that delays the performance of any obligation under this Stipulated Order despite CCH's best efforts to fulfill the

EXHIBIT E

obligation. "Best efforts" includes anticipating reasonably foreseeable force majeure events and taking appropriate preventive actions before a Force Majeure event occurs. "Best efforts" also includes addressing the effects of any Force Majeure event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the extent reasonably practicable. "Force Majeure" does not include CCH's financial inability to perform any obligation under this Stipulated Order.

39.    CCH shall provide written notice, as provided in Section XIV (Notices) of this Stipulated Order, within 30 days of the time CCH first knew of, or by the exercise of due diligence, should have known of, a claimed Force Majeure event. The notice shall state the anticipated duration of any delay, its cause(s), CCH's past and proposed actions to prevent or minimize any delay, a schedule for carrying out those actions, and CCH's rationale for attributing any delay to a Force Majeure event. Failure to provide written notice as required by this Paragraph shall preclude CCH from asserting any claim of Force Majeure.

40.    If the United States agrees that a Force Majeure event has occurred, it may agree to extend the time for CCH to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a Force Majeure event shall not, by itself, extend the time to perform any other obligation. When the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XVII (Modification) of this Stipulated Order, and the modified dates shall be the basis for determining compliance with this Stipulated Order, including for purposes of Section VIII (Stipulated Penalties).

41.    If the United States does not agree that a Force Majeure event has occurred, or does not agree to the extension of time sought by CCH, the United States' position shall be binding, unless CCH invokes Dispute Resolution under Section X of this Stipulated Order. In any such dispute, CCH bears the burden of

EXHIBIT E

proving, by a preponderance of the evidence, that each claimed force majeure event is a Force Majeure event, that CCH gave the notice required by Paragraph 39, that the Force Majeure event caused any delay CCH claims was attributable to that event, and that CCH exercised best efforts to prevent or minimize any delay caused by the event. If the Court agrees that the event was a Force Majeure event, the dates for performance shall be adjusted to reflect the time the Court determines to be appropriate pursuant to the Dispute Resolution process, and the modified dates shall be the basis for determining compliance with this Stipulated Order, including for purposes of Section VIII (Stipulated Penalties).

## X. DISPUTE RESOLUTION

42.    Unless otherwise expressly provided for in this Stipulated Order, all disputes under this Stipulated Order are subject to dispute resolution and the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Stipulated Order. However, such procedures shall not apply to actions by the United States or the State to enforce obligations of CCH that have not been disputed in accordance with this Section.

43.    Informal Dispute Resolution. Any dispute subject to dispute resolution under this Stipulated Order shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when CCH sends the United States and the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, CCH invokes the dispute resolution procedures as set forth in Paragraphs 44 to 48 below.

EXHIBIT E

44.    Formal Dispute Resolution.  CCH shall invoke the dispute resolution procedures of these Paragraphs 44 to 48 within the time period provided in Paragraph 43 above by serving on the United States and the State a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting the position and any supporting documentation relied upon by CCH when invoking formal dispute resolution.

45.    The United States, after consultation with the State, shall serve its Statement of Position within 45 days after service of CCH's Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding unless CCH files a motion for judicial review of the dispute in accordance with the following Paragraphs.

46.    Judicial Dispute Resolution.  CCH may seek judicial review of the dispute against the United States by filing with the Court and serving on the United States, in accordance with Section XIV (Notices) of this Stipulated Order, a motion requesting judicial resolution of the dispute.  The motion must be filed within 60 days after service of the United States' Statement of Position pursuant to Paragraph 45.  The motion shall contain a written statement of CCH's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Stipulated Order.

47.    The United States shall have at least 60 days in which to respond to CCH's motion.  CCH may file a reply memorandum to the extent permitted by the Local Rules.

48.    In any dispute in District Court under these Paragraphs 44 to 48, CCH

EXHIBIT E

shall bear the burden of demonstrating by a preponderance of the evidence that CCH's position on the issues in dispute should prevail over the United States' position.

49.    <u>Effect on Stipulated Order Obligations</u>.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of CCH under this Stipulated Order, unless and until the final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 35, above.  If CCH does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

XI.  <u>INFORMATION COLLECTION AND RETENTION</u>

50.    EPA, DOH, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry on CCH's property at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Stipulated Order;

b.    verify any data or information submitted to EPA in accordance with the terms of this Stipulated Order;

c.    obtain samples and, upon request, splits of any samples taken by CCH or its representative, contractors, or consultants;

d.    obtain documentary evidence, including photographs and similar data; and

e.    assess CCH's compliance with this Stipulated Order.

51.    Upon request, CCH shall provide EPA, DOH, or their authorized representatives splits of any samples taken by CCH.  Upon request, EPA and DOH shall provide CCH splits of any samples taken by EPA or DOH.

-26-

EXHIBIT E

52.    Until the termination of this Stipulated Order, CCH shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all records and documents (including records or documents in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, that document CCH's performance of its obligations under this Stipulated Order. This record retention requirement shall apply regardless of any CCH, corporate, or institutional document-retention policy to the contrary. At any time during this record-retention period, EPA or DOH may request copies of any documents or records required to be maintained under this Paragraph.

53.    This Stipulated Order in no way limits or affects any right of entry and inspection, or any right to obtain information, held by EPA or DOH pursuant to applicable federal or State laws, regulations, or permits, nor does it limit or affect any duty or obligation of CCH to maintain records or information imposed by applicable federal or State laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

54.    The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Stipulated Order, except as expressly stated herein. This Stipulated Order shall not be construed to prevent or limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, or under State law, except as expressly specified herein.

55.    The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, CCH's POTW, whether related to the violations addressed in this Stipulated Order or otherwise.

56.    In any subsequent administrative or judicial proceeding initiated by

EXHIBIT E

the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to CCH's POTW, CCH shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the Complaint or resolved in this Stipulated Order.

57.    Except as specifically set forth herein, entry of this Stipulated Order in no way affects or relieves CCH of its responsibility to comply with the 1995 Consent Decree. This Court shall retain jurisdiction to enforce the terms and conditions of the 1995 Consent Decree.

58.    This Stipulated Order is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. CCH is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits. The United States and the State do not, by their consent to the entry of this Stipulated Order, warrant or aver in any manner that CCH's compliance with any aspect of this Stipulated Order will result in compliance with provisions of the CWA or applicable State law.

59.    This Stipulated Order does not limit or affect the rights of Defendant or of the Plaintiffs against any third parties not party to this Stipulated Order, nor does it limit the rights of third parties not party to this Stipulated Order against CCH, except as otherwise provided by law.

60.    This Stipulated Order shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Stipulated Order.

### XIII. COSTS

61.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to

EXHIBIT E

collect any stipulated penalties due but not paid by CCH.

XIV.  <u>NOTICES</u>

62.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Stipulated Order, they shall be made in writing and sent by certified mail, return receipt requested, or deposited with an overnight mail/delivery service, and addressed as follows:

    a.    <u>To EPA</u>:

        Chief, Clean Water Act Compliance Office (WTR-7)
        Water Division
        Attn:  JoAnn Cola
        U.S. Environmental Protection Agency, Region 9
        75 Hawthorne Street
        San Francisco, CA  94105

    b.    <u>To the United States</u>:

        Chief, Clean Water Act Compliance Office (WTR-7)
        Water Division
        Attn:  JoAnn Cola
        U.S. Environmental Protection Agency, Region 9
        75 Hawthorne Street
        San Francisco, CA  94105

        and

        Chief, Environmental Enforcement Section
        Attn:  Robert Mullaney
        U.S. Department of Justice
        301 Howard Street, Suite 1050
        San Francisco, CA  94105
        Re:  DOJ No. 90-5-1-1-3825/1

    c.    <u>To State of Hawaii</u>:

        Kathleen S. Y. Ho
        Edward G. Bohlen
        Deputy Attorneys General
        Department of the Attorney General, State of Hawaii
        465 South King Street, Room 200
        Honolulu, Hawaii  96813

    d.    <u>To CCH</u>:

        Carrie K.S. Okinaga, Esq.
        Corporation Counsel
        Dept. of the Corporation Counsel
        City and County of Honolulu
        530 South King Street, Room 10
        Honolulu, HI  96813

EXHIBIT E

and

James J. Dragna, Esq.
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071

63.   Any Party may, by written notice to the other Parties, change its
designated notice recipient(s) or notice address(es) provided above.

64.   Notices submitted in accordance with this Section shall be deemed
submitted on the date they are postmarked.

## XV. EFFECTIVE DATE

65.   The Effective Date of this Stipulated Order shall be the date upon
which this Stipulated Order is entered by the Court.

## XVI. RETENTION OF JURISDICTION

66.   The Court shall retain jurisdiction over this case until termination of
this Stipulated Order for the purpose of resolving disputes arising under this
Stipulated Order pursuant to Section X (Dispute Resolution), entering orders
modifying this Stipulated Order pursuant to Section XVII (Modification), or
effectuating or enforcing compliance with the terms of this Stipulated Order.

## XVII. MODIFICATION

67.   The terms of this Stipulated Order may be modified only by a
subsequent written agreement signed by all the Parties.  When the modification
constitutes a material change to any term of this Stipulated Order, it shall be
effective only upon approval by the Court.

## XVIII. TERMINATION

68.   After CCH has complied with all requirements of Paragraphs 8
through 13 and Paragraph 15 of this Stipulated Order, including any construction
schedules incorporated by reference into this Stipulated Order pursuant to those
Paragraphs, CCH may serve upon the United States and the State a Request for
Termination, stating that CCH has satisfied those requirements, together with all
necessary supporting documentation.

EXHIBIT E

69.    Following receipt by the United States and the State of CCH's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether CCH has satisfactorily complied with the requirements for termination of this Stipulated Order.  If the United States, after consultation with the State, agrees that the Stipulated Order may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Stipulated Order.

70.    If the United States, after consultation with the State, does not agree that the Decree may be terminated, CCH may invoke Dispute Resolution under Section X of this Stipulated Order.  However, CCH shall not seek Dispute Resolution under Section X of any dispute regarding termination until 60 days after service of its Request for Termination.

## XIX.  PUBLIC PARTICIPATION

71.    This Stipulated Order shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if comments regarding this Stipulated Order disclose facts or considerations indicating that this Stipulated Order is inappropriate, improper, or inadequate. CCH consents to entry of this Stipulated Order without further notice.

## XX.  SIGNATORIES/SERVICE

72.    Each undersigned representative of CCH, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Stipulated Order and to execute and legally bind the Party he or she represents to this document.

73.    This Stipulated Order may be signed in counterparts, and its validity shall not be challenged on that basis.

74.    CCH agrees not to oppose entry of this Stipulated Order by the Court

-31-

EXHIBIT E

or to challenge any provision of this Stipulated Order, unless the United States notifies CCH in writing that it no longer supports entry of this Stipulated Order.

## XXI. INTEGRATION

75.    This Stipulated Order constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Stipulated Order, and this Stipulated Order supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than Deliverables that are subsequently submitted pursuant to this Stipulated Order, no other document and no other representation, inducement, agreement, understanding, or promise constitutes any part of this Stipulated Order or the settlement it represents, nor shall they be used in construing the terms of this Stipulated Order.

Dated and entered this _____ day of _____, 2007.


_____

DAVID A. EZRA
UNITED STATES DISTRICT JUDGE

EXHIBIT E

THE UNDERSIGNED PARTY enters into this Stipulated Order in the matter of United States v. City and County of Honolulu.

For Plaintiff the United States of America:

Dated: _5/2/07_

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment and Natural Resources
    Division
United States Department of Justice
Washington, DC  20530

Dated: _May 8, 2007_

ROBERT D. MULLANEY
J. THOMAS BOER
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources
    Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105
Tel:  (415) 744-6491
Fax:  (415) 744-6476

EXHIBIT E

For Plaintiff the United States of America (con't):


Dated: 5/7/2007                         *Granta Y. Nakayama*

                                        GRANTA Y. NAKAYAMA
                                        Assistant Administrator
                                        Office of Enforcement and Compliance
                                          Assurance
                                        U.S. Environmental Protection Agency

-34-

EXHIBIT E

For Plaintiff the United States of America (con't):


Dated: 02 MAY 2007

WAYNE NASTRI
Regional Administrator
U.S. Environmental Protection Agency
Region 9


Of Counsel:

HUGH BARROLL
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 9

EXHIBIT E

THE UNDERSIGNED PARTY enters into this Stipulated Order in the matter of
<u>United States v. City and County of Honolulu</u>.

For Plaintiff the State of Hawaii:

Dated: <u>May 7, 2007</u>          _____

DR. CHIYOME LEINAALA FUKINO, M.D.
Director of Health

Dated: <u>May 7, 2007</u>          _____

MARK J. BENNETT
Attorney General
Department of the Attorney General
State of Hawaii
425 Queen Street
Honolulu, Hawaii  96813
Tel:  (808) 586-1282
Fax:  (808) 586-1239

EXHIBIT E

THE UNDERSIGNED PARTY enters into this Stipulated Order in the matter of <u>United States v. City and County of Honolulu</u>.

For Defendant the City and County of Honolulu:

CITY AND COUNTY OF HONOLULU

_____   5/7/07
Mayor, Mufi Hannemann            Date

APPROVED:

_____   5/7/07
Dr. Eric S. Takamura, P.E.         Date
Director
Department of Environmental Services


APPROVED:

_____   5/04/07
Eugene C. Lee, P.E.                Date
Director
Department of Design and Construction


APPROVED:

_____   5/7/07
Mary Patricia Waterhouse          Date
Director
Budget and Fiscal Services


APPROVED AS TO FORM AND LEGALITY:

_____   5/4/07
Carrie K.S. Okinaga                Date
Corporation Counsel

-37-

EXHIBIT E