IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF HAWAII, <br><br> Plaintiffs, <br> and <br><br> SIERRA CLUB, HAWAI`I CHAPTER, HAWAI`I'S THOUSAND FRIENDS AND OUR CHILDREN'S EARTH FOUNDATION <br> Intervenors, <br><br> v. <br><br> CITY AND COUNTY OF HONOLULU, <br><br> Defendant. | CV. NO. 07-00235 DAE-KSC |

ORDER APPROVING ENTRY OF STIPULATED ORDER

On October 9, 2007, the Court held a hearing regarding the entry of the proposed Stipulated Order, which had been lodged in this case by the United States on May 8, 2007. Robert D. Mullaney, U.S. Department of Justice attorney, appeared at the hearing on behalf of Plaintiff United States; Edward G. Bohlen and Kathleen S.Y. Ho, Deputy Attorneys General, appeared at the hearing on behalf of Plaintiff State of Hawaii; William Tam, Esq., and Christopher Sproul, Esq., appeared at the hearing on behalf of Sierra Club, Hawai`i Chapter, Hawai`i's

EXHIBIT F

Thousand Friends and Our Children's Earth Foundation (collectively, "Sierra Club"); James J. Dragna, Esq., Bryan K. Brown, Esq., and Kathleen A. Kelly, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendant City and County of Honolulu ("CCH"). After reviewing the proposed Stipulated Order, Sierra Club's Opposition to Entry of EPA Stipulated Order, and the United States, State of Hawaii, and CCH's reply briefs, the Court HEREBY APPROVES ENTRY OF THE STIPULATED ORDER. The Stipulated Order shall be entered in this case forthwith.

## BACKGROUND

The instant lawsuit is related to two other pending lawsuits, one filed in 1994 by the United States and State of Hawaii against CCH, and the other filed by Sierra Club in 2004 against CCH. All three lawsuits relate to spills from CCH's sewers and/or the adequacy of the sewer systems and wastewater treatment plants.

A.  1994 Government Lawsuit

In October 1994, the United States Environmental Protection Agency ("EPA") and the State of Hawaii Department of Health ("DOH") filed suit against CCH for spills from its wastewater collection and treatment system. See United States, et al. v. City and County of Honolulu, CV No. 94-00765 DAE/KSC ("1994 Government Lawsuit"). The parties entered into a Consent Decree on May 15,

1995, proscribing a 25-year comprehensive injunctive relief program to address spills from the collection system (the "1995 Consent Decree"). This Court retained jurisdiction over that lawsuit pending completion of the work proscribed by the 1995 Consent Decree. Sierra Club intervened in the 1994 Government Lawsuit in May 2007.

Sierra Club claims that CCH has not complied with the 1995 Consent Decree by repeatedly exceeding the sewage spill reduction goals. Sierra Club complains that EPA has written letters complaining of the noncompliance, but has not returned to Court to enforce the 1995 Consent Decree.

B.    2004 Sierra Club Lawsuit

Sierra Club filed their own lawsuit against CCH in July 2004, pursuant to the citizen suit provision of the Clean Water Act ("CWA"). See Sierra Club, et al. v. City and County of Honolulu, CV No. 04-00463 DAE/BMK ("2004 Sierra Club Lawsuit"). This lawsuit originally involved spills from the collection system, as well as alleged violations of the Sand Island and Honouliuli National Pollution Discharge Elimination System ("NPDES") Permits. EPA and DOH have not intervened in the 2004 Sierra Club Lawsuit. Sierra Club has seven claims remaining in the 2004 Sierra Club Lawsuit, all which pertain to alleged violations

of NPDES Permits or the 1999 EPA Sand Island Order and the 2002 EPA Sand Island Order.

On September 30, 2005, this Court granted CCH's motion to dismiss Sierra Club's first and second claims, which related to sewage spills since 1999, pursuant to *res judicata*, since those claims were substantially identical to the third claim of the 1994 Government Lawsuit.  This Court also denied Sierra Club's motion for partial summary judgment on its third, fourth, eighth, and twelfth claims.  Sierra Club filed a motion for reconsideration regarding their third and fourth causes of action.  Before this Court ruled on Sierra Club's reconsideration motion, the parties filed a Joint Stipulation Re Stay of Litigation.  The Joint Stipulation stated that the governments and Sierra Club intended to work toward a mutually agreeable settlement that would obviate the need for further litigation.  Therefore, the parties agreed to stay all proceedings in the 2004 Sierra Club Lawsuit.

After Sierra Club's reconsideration motion had been pending for almost a year, this Court ordered the motion withdrawn, with the proviso that if the parties could not reach a settlement agreement and subsequently lift the stay, Sierra Club could refile their reconsideration motion.  The parties were unable to reach a settlement, and Sierra Club refiled their reconsideration motion on March 2, 2007.

EXHIBIT F

On April 16, 2007, this Court granted Sierra Club's reconsideration motion, resolving the legal methodology for counting CWA violations with respect to Sierra Club's third and fourth claims. This Court reserved for later decision the actual number of violations since Sierra Club's eighth claim was related to the third and fourth claims, and this Court wanted to avoid any double counting of violations.

On July 26, 2007, Sierra Club filed a motion for partial summary judgment on its third, fourth, and eighth claims to provide this Court with a basis for counting the number of CWA violations. CCH sought to stay the hearing of that motion so that it would not have to expend limited resources on filing an opposition to that motion, and could instead concentrate its efforts on settlement. CCH's motion to stay was denied by this Court on September 11, 2007. Sierra Club's motion for partial summary judgment is set for hearing on October 9, 2007, simultaneous with this case.

C.  The Instant Lawsuit ("2007 Government Lawsuit")

In March 2006, while settlement negotiations were ongoing between CCH, DOH, EPA, and Sierra Club with respect to deficiencies of CCH's sewage collection system and wastewater treatment plants, the Beachwalk Force Main sewer line in Waikiki ruptured spilling approximately 48 million gallons of sewage

EXHIBIT F

into the Ala Wai Canal. The parties then agreed to refocus negotiations to work out a stipulated preliminary injunction order related to the Beachwalk Force Main for CCH to implement on an immediate and emergency basis, and then the parties would discuss a global settlement of other sewer spills and treatment plant issues. Sierra Club participated in some of these negotiations. Sierra Club asserts that it has been excluded from additional settlement negotiations because CCH has outright rejected any question as to whether they would be a party signatory to any supplemental judicial relief with rights afforded a party. CCH claims that Sierra Club withdrew from settlement discussions.

After approximately 15 months of negotiations, DOH and the EPA filed the instant lawsuit against CCH on May 8, 2007, for CWA violations related to the Beachwalk Force Main spill, and simultaneously lodged a proposed Stipulated Order. The proposed Stipulated Order provides that CCH must build three new force mains and maintain back-up force mains at four locations. CCH must also implement a condition assessment and repair program for six force mains and one pump station. CCH is further required to implement a Spill Contingency Plan to minimize adverse consequences of a spill from six force mains. CCH values the cost of this at approximately $300,000,000. EPA and DOH expressly reserved their claims for further injunctive relief and civil penalties. CCH, EPA,

EXHIBIT F

and DOH also recognized in the Stipulated Order that following entry of the order, they intend to negotiate in good faith a comprehensive remedy addressing all compliance issues associated with CCH's wastewater system.

Sierra Club intervened into the instant lawsuit in July 2007. The Magistrate Judge recommended that conditions, if any, to be imposed upon Sierra Club's intervention, such as a stay of litigation of the 2004 Sierra Club case, would be determined after the Stipulated Order was ruled upon.

The lodged Stipulated Order represents a settlement between EPA and DOH on one side, and CCH on the other side. Sierra Club is not a party to the Stipulated Order, although they are a party to this case as an intervenor. Sierra Club filed an opposition to the Stipulated Order on August 24, 2007. Sierra Club alleges that the Stipulated Order is inadequate on the merits and excludes them as a party. EPA, DOH, and CCH each filed a reply brief.

STANDARD OF REVIEW

Although not titled a consent decree, all parties agree that the Stipulated Order is in essence a consent decree. A consent decree is a settlement agreement that is subject to continued judicial oversight. United States v. Oregon, 913 F.2d 576, 580 (9th Cir. 1990). Approval of a proposed settlement or consent decree is within the sound discretion of this Court. Id.

EXHIBIT F

The court should enter a consent decree if it is fundamentally fair, adequate, reasonable, and equitable, and does not violate the law or public policy. Id.; see also Sierra Club v. Elec. Controls Design, Inc., 909 F.2d 1350, 1355 (9th Cir. 1990). Because the parties seek to incorporate their settlement into a court order and because public interests are at stake, the court must make an independent and searching inquiry, giving the agreement more scrutiny. United States v. Telluride Co., 849 F. Supp. 1400, 1402 (D. Colo. 1994). The court must be satisfied that the consent decree represents a "reasonable factual and legal determination." Oregon, 913 F.2d at 581. The court cannot, however, substitute its judgment for that of the parties or alter the terms of the contract. Telluride, 849 F. Supp. at 1402.

"The court's discretion is to be exercised in light of the strong policy favoring voluntary settlement of litigation. . . . The presumption in favor of settlement is particularly strong where a consent decree has been negotiated by a governmental agency specially equipped, trained, or oriented in the field." State of Cal. Dept. of Toxic Substances Control v. Waymire Drum Co., Inc., No. C-98-03834 PJH, 1999 WL 169536, *2 (N.D. Cal. March 19, 1999) (citations omitted). The court may not, however, "mechanically 'rubber stamp' a proposed consent decree." NE Iowa Citizens for Clean Water v. AgriProcessors, Inc., 469 F.

EXHIBIT F

Supp. 2d 666, 673 (N.D. Iowa 2006); <u>Telluride</u>, 849 F. Supp. at 1402 (the court may not "merely imprint [the parties'] decision as though possessed of a clerical rubber stamp.").

DISCUSSION

A.  <u>Procedurally Fair Process</u>

Sierra Club argues that the Stipulated Order was not adopted through a procedurally fair process because: (1) EPA has not provided sufficient evidence from which this Court could conclude whether key terms reflect the EPA's independent expertise or whether the EPA merely accepted CCH's point of view; and (2) EPA had not responded to the Sierra Club's adverse public comments before filing the Stipulated Order.

"To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." <u>United States v. Cannons Eng'g Corp.</u>, 899 F.2d 79, 86 (1st Cir. 1990). In <u>Telluride</u>, the court was concerned with whether the consent decree was developed in a procedurally or substantively fair manner because in that case the decree was not a product of the parties' desire to settle long-running litigation. 849 F. Supp. at 1403. Instead, the decree was filed as a vehicle to get judicial approval of the settlement agreement and the adversary process had yet to function. <u>Id.</u>

9

EXHIBIT F

Sierra Club asserts that there is no record to evaluate whether the EPA deferred to CCH in fashioning the remedial action schedule or whether the EPA applied its own expertise since the EPA filed the complaint at the same time as the Stipulated Order. Although the Stipulated Order was filed simultaneously with the Complaint in this case, it was filed only after approximately 15 months of negotiation. Id. (noting that it is not per se improper to file an enforcement action coupled with a consent decree, and that it serves a laudable purpose where the negotiations were themselves adversarial). There is no allegation that the negotiations were not at arms length, were not adversarial, or that there were only a few meetings. In addition, Sierra Club participated in some of the negotiations that led to the Stipulated Order. Furthermore, the instant lawsuit is related to overarching concerns of the 1995 Consent Decree and the 2004 Sierra Club Lawsuit, which were in existence long before the filing of the instant lawsuit. The parties had engaged in reviews of the sewer system and had started negotiations of the issues prior to the filing of the Stipulated Order. Therefore, although the Stipulated Order was filed simultaneously with the Complaint, there was a previous adversarial process. See United States v. District of Columbia, 933 F. Supp. 42, 49 (D.D.C. 1996) (finding that the consent decree differed from the one in Telluride because although it "was not the result of long drawn out negotiations

arising from a hotly disputed adversarial process, the two parties to this dispute have been litigating Blue Plains issues since essentially 1984."); see <u>NE Iowa Citizens for Clean Water</u>, 469 F. Supp. 2d at 673 (affirming district court's finding that the consent decree was procedurally fair, because there was no evidence that the negotiations were not in good faith or at arms-length and the parties spent a considerable amount of time, effort and expense negotiating a settlement).

      Sierra Club also claims that the time table for completing the projects set forth in the Stipulated Order is too long and therefore, reflects CCH's view and not that of the EPA. Although the time schedules do appear to be rather lengthy, and not necessarily "aggressive" and "expeditious," as stated in the Stipulated Order, this is insufficient to demonstrate that the EPA unquestionably accepted CCH's views. Indeed, the EPA and DOH state that they attended meetings with their own technical staff and counsel. The EPA and DOH also state that they carefully considered whether given the existing vulnerabilities of the force mains, it should allow CCH to forgo or truncate the planning and environmental review process in order to expedite completion of construction. (Stoddard Decl. ¶ 14.) Accordingly, there is evidence that the EPA did consider the remedial action schedule and applied their own expertise. Unlike the <u>Telluride</u> case, the EPA here appears to have relied on its own investigation and judgment to determine the relief

11

EXHIBIT F

necessary, and did not merely rely on the defendant's own expert. See Telluride, 849 F. Supp. at 1404 (noting that the EPA played only an oversight role and simply reacted to the proposals made by the violator's expert, rather than constructing some of the essential terms). This Court has no reason to doubt the evidence and therefore, does not find that the Stipulated Order was procedurally unfair on this basis.

   The thrust of Sierra Club's argument is that the Stipulated Order is unfair because they were not included in some of the settlement negotiations and are not signatories to the Stipulated Order. However, not being a party to the Stipulated Order, by itself, does not prevent the Stipulated Order from being entered, or necessarily indicate that it was procedurally unfair. Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 529 (1986) ("It has never been supposed that one party-whether an original party, a party that was joined later, or an intervenor-could preclude other parties from settling their own disputes and thereby withdrawing from litigation. Thus, while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent."); S. Cal. Edison Co. v. Lynch, 307 F.3d 794, 806-07 (9th Cir. 2002) ("An intervenor does not have the right to prevent

other parties from entering into a settlement agreement."); Oregon, 913 F.2d at 580 (approving entry of a settlement plan, even though the State of Idaho, who was a party in the case and participated in settlement negotiations, was not a party to the plan and opposed it).

Sierra Club also asserts that the fact that the EPA did not respond to public comments weighs against entering the Stipulated Order. In Telluride, the court found that due to the important role that the public plays in the process, the EPA's willingness to throughly consider all comments is "a key indicator of whether the decree was negotiated in good faith and is fair. Moreover, without consideration of these comments there is, essentially, no adversary presentation." 849 F. Supp. at 1404-05 (citation omitted). Although EPA did not respond to comments prior to filing the Stipulated Order, it did respond to those comments in the reply brief. Only two entities made comments, one of which was Sierra Club, and Sierra Club repeated those comments as arguments in its opposition to the Stipulated Order. EPA addressed Sierra Club's concerns in its reply brief and supported entry of the proposed Stipulated Order without amendment. Accordingly, the public comments have been addressed prior to entry of the Stipulated Order.

13

EXHIBIT F

B.  Substantive Fairness and Reasonableness

Sierra Club asserts that the Stipulated Order is substantively unfair, unreasonable, inequitable, and not in accord with the CWA because it does not require CCH to remedy the CWA violation by avoiding further sewage spills and does not assess any civil penalty.  Specifically, Sierra Club argues that the Stipulated Order is inadequate because it does not address many other force mains or most of the causes of sewage spills, which are allegedly due to blockage in gravity sewer main lines, pump station failures, and water runoff flowing into leaky sewer lines.  Sierra Club asserts that ruptures of force mains constitute a small amount of CCH's total spills.  Sierra Club, therefore, requests that this Court not enter the Stipulated Order and instead, direct CCH to prepare a prioritized remedial action plan addressing its most pressing sewage spill problems, which will evaluate the true costs and benefits of certain repairs to the overall system. Sierra Club also argues that the 1995 Consent Decree does not solve the spill problems, especially since the EPA has never returned to Court to enforce its terms.

In determining whether a consent decree is reasonable, the court should consider: "(1) whether the decree is technically adequate to accomplish the goal of cleaning the environment, (2) whether it will sufficiently compensate the

public for the costs of remedial measures, and (3) whether it reflects the relative strength or weakness of the government's case against the environmental offender." Telluride, 849 F. Supp. at 1402. The court must also decide "whether the consent decree is in the public interest and upholds the objectives of the Clean Water Act, the primary of which is to restore and maintain the chemical, physical and biological integrity of the Nation's waters." Id. at 1403.

"To the extent that the process was fair and full of 'adversarial vigor,' the results come before the court with a much greater assurance of substantive fairness." Cannons Eng'g, 899 F.2d at 87 n. 4 (citation omitted). "[O]nce the court is satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid and the objecting party has a heavy burden of demonstrating that the decree is unreasonable." Oregon, 913 F.2d at 581 (noting that other circuits have placed a heavy burden on the party objecting to the decree).

Sierra Club has not met their heavy burden. Although the Stipulated Order does not address all of CCH's sewage system problems or all of the force mains, the Stipulated Order does reflect the claims brought in this enforcement action. The instant lawsuit was based on violations of the CWA from the March 2006 Beachwalk force main rupture. The Stipulated Order requires CCH to build

EXHIBIT F

and repair certain force mains, including the force main in the Beachwalk area, at a cost of approximately $300,000,000.

Sierra Club is essentially arguing that the EPA should have brought a broader lawsuit and that the Stipulated Order does not go far enough. This Court, however, cannot "reach beyond the complaint to evaluate claims that the government did not make and to inquire as to why they were not made." United States v. Microsoft Corp., 56 F.3d 1448, 1459 (D.C. Cir. 1995). This Court must not "impose its own judgments as to how it would prosecute and resolve a particular case." District of Columbia, 933 F. Supp. at 51. Sierra Club is also requesting that this Court fashion a remedy by requiring CCH to make a priority list. This Court, however, cannot substitute its judgment for that of the EPA. See United States v. Chevron U.S.A., Inc., 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005) ("With respect to substantive fairness, it is not the duty of the court to determine whether the settlement is one which the court itself might have fashioned, or considers ideal.") (citation and internal quotation marks omitted).

The Stipulated Order requires CCH to conduct condition assessments of vulnerable force mains and prepare spill contingency plans. CCH must also build back-up force mains. Thus, the Stipulated Order protects the public interest, is consistent with the purpose of the CWA to restore and maintain the integrity of

EXHIBIT F

our waters, and is technically adequate to clean the environment. Although it does not address other sewer issues, "the court need not require that the decree be 'in the public's best interest' if it is otherwise reasonable." Oregon, 913 F.2d at 581. Furthermore, after the 2006 Beackwalk force main spill, all of the parties, including the Sierra Club, agreed to focus negotiations to find a resolution for CCH to implement related to the Beachwalk Force Main, and then the parties would discuss a global settlement of other sewer spills and treatment plant issues. This Court has been informed that those global settlement negotiations have continued, and that CCH has already taken construction steps to implement the Stipulated Order. Moreover, the parties to the Stipulated Order agreed that the EPA retained the right to obtain civil penalties in a future enforcement action, and require additional injunctive relief. Finally, Sierra Club has intervened into the 1994 Government Lawsuit and thus, could attempt to enforce the 1995 Consent Decree, in addition to enforcing this Stipulated Order and any order in the 2004 Sierra Club Lawsuit.

        The force mains addressed in the Stipulated Order are either near the end of their useful life or have demonstrated vulnerability through sewage spills and they have such a large capacity that if one were to fail, CCH would not have an effective back-up system in place. In order to avoid another catastrophic spill, like

EXHIBIT F

that of March 2006, EPA and DOH determined that the public interest would not be served by additional delay of broad negotiations of the overall sewer system. This Court agrees. Although the time deadlines for remedial action are lengthy, due to the complexity of the overall sewer system, the complexity of the construction required by the Stipulated Order, and the CWA, it was not unreasonable for the EPA to conclude that the construction deadlines (e.g. 7 years and 11 years) may result in environmental benefits earlier than negotiating a global settlement of all the other sewer issues and implementing those remedies. Chevron U.S.A., Inc., 380 F. Supp. 2d at 1118 (" because of the complexity of Clean Air Act litigation, it was reasonable for EPA to conclude that even a due date eight years after the signing of the Consent Decree may create environmental benefits earlier than litigating.").

      The EPA's case is strong against CCH and the Stipulated Order reflects this strength. Indeed, CCH is required to make substantive improvements, at a cost of approximately $300,000,000. Accordingly, this Court finds that the Stipulated Order is substantively fair.

C.    Request for Dismissal

      Sierra Club requests that this case be dismissed. This Court finds that such argument is not appropriate in an objection to a Stipulated Order brief where

18

EXHIBIT F

the moving party does not have an opportunity to file a reply brief.  Thus, this Court will not address this request and DENIES Sierra Club's request for dismissal WITHOUT PREJUDICE.

## CONCLUSION

For the reasons stated above, the Court APPROVES ENTRY OF THE STIPULATED ORDER.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 10, 2007.



_____
David Alan Ezra
United States District Judge

<u>United States of America, et al. vs. City and County of Honolulu,</u> Civil No. 07-00235 DAE-KSC; ORDER APPROVING ENTRY OF STIPULATED ORDER

19

EXHIBIT F