IN THE DEPARTMENT OF HEALTH

STATE OF HAWAII

| | |
|---|---|
| DEPARTMENT OF HEALTH, ) <br> STATE OF HAWAII, ) <br>     Complainant, ) <br> ) <br> vs. ) <br> ) <br> THE CITY AND COUNTY OF HONOLULU, ) <br>     Respondent. ) <br> _____ ) | DOCKET NOS. 2004-CW-EO-01N <br> and 04-WW-EO-2 <br><br> NOTICE AND FINDING OF <br> VIOLATION; ORDER; CERTIFICATE <br> OF SERVICE |

## NOTICE AND FINDING OF VIOLATION

The Department of Health ("DOH"), State of Hawaii, brings this action under Hawaii Revised Statutes ("HRS") Chapters 91, 321, 322 and 342D, and Hawaii Administrative Rules ("HAR") Chapter 11-54, entitled "Water Quality Standards," Chapter 11-55, entitled "Water Pollution Control," and Chapter 11-62, entitled "Wastewater Systems," and complains of THE CITY AND COUNTY OF HONOLULU ("CCH") regarding CCH's sewage system and discharges of sewage into State waters and onto the ground as listed in Attachment 1 and Attachment 2.

This action deals only with sewage and water pollution violations found in this case. The DOH reserves its rights to bring later actions for other possible violations. This action does not and is not intended to limit in any way action by any County, State, or Federal agency or any private party.

A. **AUTHORITY**

    1.    <u>General Authority</u>.

EXHIBIT H

    a.    Section 321-11, HRS, authorizes DOH to adopt rules as it deems necessary for public health and safety.

    b.    Section 322-1, HRS, authorizes DOH to examine all conditions which tend to be dangerous or injurious to health and to cause the same to be abated, destroyed, removed or prevented. Section 322-8(a), HRS, authorizes DOH to adopt rules to implement Part I of Section 322, HRS.

    c.    Sections 342D-2, 342D-4, and 342D-5, HRS, authorize the Director of Health ("Director") to administer Chapter 342D, HRS, to prevent, control, and abate water pollution in the State, and to adopt rules.

2.    <u>Enforcement</u>. Sections 322-8 and 342D-9, HRS, authorize the Director to issue this Notice and Finding of Violation and the attached Order.

3.    <u>Remedies</u>. The Director of Health ("Director") may impose by order the administrative penalties specified in Sections 322-8 and 342D-30, HRS.

4.    <u>Prohibitions</u>.

    a.    Section 342D-50(a), HRS, provides that:

No person, including any public body, shall discharge any water pollutant into state waters, or cause or allow any water pollutant to enter state waters, except as in compliance with the provisions of this chapter, rules adopted pursuant to this chapter, or a permit or variance issued by the Director.

    b.    Section 342D-50(d), HRS, provides that:

No person, including any public body, shall violate any rule adopted pursuant to this chapter or any permit or variance issued or modified pursuant to this chapter.

    c.    Section 11-55-03, HAR, prohibits the violation of Section 342D-50, HRS.

    d.    Section 11-62-06(g), HAR, provides in part that,

EXHIBIT H

No person or the owner shall cause or allow any wastewater system to create or contribute to any of the following:

   (1)  Human illness;
   (2)  Public health hazard;
   (3)  Nuisance;
   (4)  Unsanitary condition;
   (5)  Wastewater spill, overflow or discharge;
   (6)  Contamination or pollution of state waters;
   (7)  Harborage of vectors, including insects and rodents;
   (8)  Foul or noxious odors;
   (9)  Public safety hazard; and
   (10) Contamination, pollution or endangerment of drinking waters.

5. <u>Definition of Water Pollutant</u>. Section 342D-1, HRS, states that "Water Pollutant"

means:

Dredged spoil, solid refuse, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical waste, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, soil, sediment, cellar dirt and industrial, municipal, and agricultural waste.

6. <u>Definition of Water Pollution</u>. Section 342D-1, HRS, states that "Water Pollution"

means:

   (1)  Such contamination or other alteration of the physical, chemical, or biological properties of any state waters, including change in temperature, taste, color, turbidity, or odor of the waters, or
   (2)  Such discharge of any liquid, gaseous, solid, radioactive, or other substances into any state waters,

as will or is likely to create a nuisance or render such waters unreasonably harmful, detrimental, or injurious to public health, safety, or welfare, including harm, detriment, or injury to public water supplies, fish and aquatic life and wildlife, recreational purposes and agricultural and industrial research and scientific uses of such waters or as will or is likely to violate any water quality standards, effluent standards, treatment and pretreatment standards, or standards of performance for new sources adopted by the department.

7. <u>Definition of State waters</u>. Section 342D-1, HRS, states that "State waters" means:

All waters, fresh, brackish, or salt, around and within the State, including, but not limited to, coastal waters, streams, rivers, drainage ditches, ponds, reservoirs, canals,

EXHIBIT H

ground waters, and lakes; provided that drainage ditches, ponds, and reservoirs required as part of a water pollution control system are excluded.

8. <u>Basic water quality criteria applicable to all waters</u>. Section 11-54-04(a), HAR, states in part that:

All waters shall be free of substances attributable to domestic, industrial, or other controllable sources of pollutants, including:

(1) Materials that will settle to form objectionable sludge or bottom deposits;
(2) Floating debris, oil, grease, scum or other floating materials;
(3) Substances in amounts sufficient to produce taste in the water or detectable off-flavor in the flesh of fish, or in amounts sufficient to produce objectionable color, turbidity or other conditions in the receiving waters;
(4) High or low temperatures; biocides; pathogenic organisms; toxic, radioactive, corrosive, or other deleterious substances at levels or in combinations sufficient to be toxic or harmful to human, animal, plant, or aquatic life, or in amounts sufficient to interfere with any beneficial use of the water; and
(5) Substances or conditions or combinations thereof in concentrations which produce undesirable aquatic life.

**B. STATEMENT OF FACTS**

1. The CCH is an entity created by statute which may sue and be sued in its corporate name.

2. The CCH operates a separate sanitary sewage collection system that collects sanitary sewage within its legal boundaries and conveys this sewage for treatment at several wastewater treatment plants, including the Sand Island Wastewater Treatment Plant. The CCH collection system includes approximately 1,300 miles of separate sanitary sewage gravity mains and 65 pump stations and force mains (hereinafter collectively referred to as "the collection system").

3. The CCH provides reports to DOH of sewage spills from the collection system.

EXHIBIT H

4. Based on a review of the CCH sewage spill reports for the time period November 1996 through April 2004, CCH reported a total of twenty-three (23) sewage spills from force mains of the collection system into State waters and onto the ground. The total volume estimated for all these reported force main sewage spills was 8,436,846 gallons.

5. There were a total of fifteen (15) reported sewage spills from force mains into State waters in violation of Section 342D-50(a), HRS, for the time period November 1996 through April 2004. The sewage spills are listed in Attachment 1, which is incorporated by reference as factual matters supporting the subsequent Findings of Violation and Order. The total volume estimated for the reported force main sewage spills into State waters listed in Attachment 1 was 7,898,960 gallons.

6. The CCH has never received any National Pollutant Discharge Elimination System permit or other written authorization to discharge pollutants from any portion of the collection system into any State waters.

7. There were a total of eight (8) reported sewage spills from force mains onto the ground in violation of Section 11-62-06(g), HAR, for the time period November 1996 through April 2004. The sewage spills are listed in Attachment 2, which is incorporated by reference as factual matters supporting the subsequent Findings of Violation and Order. The total volume estimated for the reported force main sewage spills onto the ground listed in Attachment 2 was 537,886 gallons.

EXHIBIT H

8. The sewage spill reports provided by CCH to DOH state that sewage spills from the force mains in CCH's collection system have been caused primarily by breaks due to corrosion, malfunctioning of air relief valves, and contractor-caused damage.

9. Pursuant to Sections 322-8 and 342D-31(b), HRS, the imposition of an administrative penalty is justified by one or more of the following factors:

    a. The nature, circumstance, extent, gravity, and history of the violation and of any prior violations;

    b. The economic benefit to the violator, or anticipated by the violator, resulting from the violation;

    c. The opportunity, difficulty, and history of corrective action;

    d. The lack of or extent of good faith effort to comply;

    e. The degree of culpability; and

    f. Such other matters as justice may require.

C. **FINDINGS OF VIOLATION**

1. On the basis of the provisions of Authority and Statement of Facts cited above, it is hereby found and determined that CCH is in violation of:

    a. Section 342D-50(a), HRS, for discharging or causing or allowing sewage to enter State waters on or about the dates listed in Attachment 1.

    b. Section 11-62-06(g), HAR, for discharging or causing or allowing sewage to spill onto the ground on or about the dates listed in Attachment 2.

2. The CCH is therefore subject to the provisions of Sections 342D-30 and 322-8, HRS, including penalties not to exceed $10,000 for each day of each violation occurring

EXHIBIT H

before June 16, 1997 and not to exceed $25,000 for each day of each violation occurring after June 16, 1997.

3.  Based upon the previous Authority, Statement of Facts, and Findings of Violation, CCH must comply with the following Order in order to protect the public health and to prevent further violations of the applicable statutes and rules.

DATED: Honolulu, Hawaii, *April 15, 2004*

*/s/ Laurence K. Lau*
LAURENCE K. LAU
Deputy Director for
Environmental Health

APPROVED AS TO FORM:

*/s/ Mark G. McConnell*
MARK G. MCCONNELL
Deputy Attorney General

---

**Department of Health, State of Hawaii v. City and County of Honolulu**
**Docket Numbers 2004-CW-EO-02N and 04-WW-EO-2**

EXHIBIT H

IN THE DEPARTMENT OF HEALTH

STATE OF HAWAII

| | |
|---|---|
| DEPARTMENT OF HEALTH, ) <br> STATE OF HAWAII, ) <br>     Complainant, ) <br> ) <br> vs. ) <br> ) <br> THE CITY AND COUNTY OF HONOLULU, ) <br>     Respondent. ) <br> _____ ) | DOCKET NOS. 2004-CW-EO-01N <br> and 04-WW-EO-2 <br><br> ORDER |

## ORDER

Pursuant to Chapters 91, 322, and 342D, HRS, CCH is hereby ordered to take all steps necessary to eliminate force main sewage spills from the collection system into State waters or onto the ground. The CCH shall report all information, and submit and implement all plans specified below.

**A.   ALA MOANA FORCE MAIN REPAIR MEASURES**: Commencing immediately and continuing until the Ala Moana force main break reported on March 4, 2004 has been successfully repaired, CCH shall:

1.   Immediately take all steps necessary to repair the broken force main so as to prevent all further discharge of sewage into State waters. During repairs, CCH shall contain all sewage and sewage-contaminated water and prevent contact with State waters. All sewage and sewage-contaminated waters from the spill location shall be conveyed to the headworks of the Sand Island Wastewater Treatment Plant for treatment prior to their discharge into State waters;

EXHIBIT H

2.  Immediately upon receipt of this Order, submit daily progress reports describing the work completed each day on a weekly basis. Daily reports shall also include an estimate of the amount of sewage or sewage-contaminated water discharged into State waters without proper treatment. Reports shall be submitted by fax to DOH and at the end of each work week; and

3.  Upon completion of the repair of the Ala Moana force main, CCH shall submit a full report to DOH describing the cause of the sewage spill, actions taken to respond to the spill, actions taken to minimize spill volume, and the actions taken to repair the broken force main.

B.  **SPILL HISTORY AND FORCE MAIN INVENTORY**: By May 15, 2004, CCH shall submit a report to DOH providing the following information regarding sewage spills from CCH force mains:

1.  A list of all force main sewage spills (other than those listed in Attachment 1 and Attachment 2) occurring between November 1996 and April 2004 in CCH's collection system, including the date, duration, location, volume, cause, and land or surface water destination for each sewage spill; and

2.  An inventory listing each force main in CCH's collection system indicating the associated pump station and the force main construction material, age (or installation date), diameter, length, capacity, typical flow rates, cathodic protection (type and current condition), and inspection and maintenance history. The inventory shall include any redundant or standby force mains and indicate the carrying capacity of

EXHIBIT H

the redundant force main (as a percentage of the pump station discharge) and the typical operating regime (i.e., emergency standby, wet weather standby, etc.).

C. **FORCE MAIN CONDITION ASSESSMENT:** By September 30, 2004, CCH shall:

1. Complete an assessment of the condition of each force main in CCH's collection system. Where possible, assessments shall be based on direct inspection of the force main. If direct inspection is infeasible, the condition shall be deduced based upon the condition and performance of similar force mains. For this requirement, CCH may use any reliable condition assessment completed since April 1, 2003;

2. Submit a report to DOH describing the condition of each force main in CCH's collection system, the inspection method used and identification of each force main determined to be at risk of failure; and

3. Evaluate the existing force main operating pressures and maximum anticipated pressures which could occur in a force main due to pump failure, valve failure, pump start-up or shut-down, or other causes.

D. **FORCE MAIN CONTINGENCY PLAN**: By September 30, 2004, CCH shall submit to DOH:

1. A force main contingency plan, which includes all force mains in CCH's collection system, describing steps that will be taken in the event of force main failure including emergency repair, repair equipment, spare parts, use of redundant force mains, and other operational measures necessary to prevent discharges from force mains; and

2. An evaluation of the need for redundant force mains at critical pump stations.

EXHIBIT H

E.  **FORCE MAIN PREVENTIVE MAINTENANCE PLAN**: By September 30, 2004, CCH shall submit to DOH a report describing its force main preventive maintenance plans, which shall, at a minimum:

1.  Identify and ensure provision of all personnel and equipment needed to perform all necessary force main preventive maintenance, and in accordance with any and all manufacturer specifications;

2.  Establish procedures and schedules for the inspection, exercise, and maintenance of all force main gate valves on a routine basis, but no less frequently than once every twelve (12) months;

3.  Establish procedures and schedules for the inspection, exercise, and maintenance of all force main air release valves on a routine basis, but no less frequently than once every month;

4.  Establish any other necessary maintenance and inspection procedures to guard against corrosion, solids deposition, structural failure, etc.;

5.  Establish priorities for the scheduling of all such maintenance;

6.  Develop and implement procedures for using standard maintenance forms; and

7.  Establish record-keeping requirements for all maintenance performed.

F.  **FORCE MAIN REPAIR and UPGRADE MEASURES**: By September 30, 2004, CCH shall submit the following plans to DOH describing maintenance and repair measures for all CCH force mains, and thereafter submit, by March 1 of each calendar year until termination of this Order, an annual progress report describing activities performed during the previous calendar year to implement the plans:

EXHIBIT H

1. A plan, including schedule and financial plan, for completing all repairs, renovations, and upgrades necessary to ensure continuous operation of each force main in CCH's system and eliminate force main sewage spills; and

2. A plan, including schedule and financial plan, for construction of redundant force mains where the contingency plans completed pursuant to paragraphs D.1 and D.2 identify a risk of uncontrollable discharge from a failed force main.

G. **PLAN REVIEW AND APPROVAL**: Where this Order requires the submittal of a plan to DOH, that plan shall be subject to DOH review, comment, and approval. The DOH will, as expeditiously as possible, review and approve or comment on the plan. The CCH shall make any revisions requested by DOH in writing or respond to any DOH comments and submit a revised plan to DOH within 30 days of receipt of DOH's comments or requested revisions. Upon approval by DOH, the plans shall be implemented by CCH and be incorporated by reference as an enforceable part of this Order. All annual progress reports required by this Order are also subject to DOH review and approval in accordance with this paragraph. Failure to submit a plan or revise a plan in accordance with DOH comments or failure to submit progress reports required by this Order shall constitute a violation of this Order.

H.  **INFORMATION SUBMITTAL**:

    1.  All submittals made pursuant to this Order shall be mailed to the following addresses:

        Mr. Denis R. Lau, P.E., Chief
        Clean Water Branch
        Hawaii Department of Health
        919 Ala Moana Boulevard, Room 301
        Honolulu, HI 96814-4920
        Telephone: 586-4309
        Fax: 586-4352

    2.  Such submittals shall include the following certification signed by a duly authorized representative:

        I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, I certify that the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

I.  **PENALTY**: The CCH shall pay a monetary penalty to be determined later.

J.  **GENERAL PROVISIONS**

    1.  The CCH shall appear at a hearing to be held on a date, time and place to be specified later. The issue to be heard will be how much of a monetary penalty should be assessed for the violations covered in the Notice and Finding of Violation ("NFV").

    2.  This Order and the NFV are effective and become final 20 days after receipt unless, before the 20 days expire, CCH submits a written request to the Director for a

EXHIBIT H

hearing before the Director to contest any issue, fact, or order raised by any paragraph or section in the NFV or Order, pursuant to Section 342D-9, HRS. If a hearing on any of the foregoing is requested, it may be held in conjunction with the hearing on the penalty.

3. When a hearing is requested or ordered, the following paragraphs apply:

   a. The hearing will be held on a date, time, and place, and before a hearing officer to be specified later.

   b. A pre-hearing conference may be held on a date, time, and place to be specified later.

   c. Any request to change the hearing or pre-hearing conference schedule should be directed to Mr. Denis R. Lau, Chief of the Clean Water Branch ("CWB"), or the hearing officer, after one is appointed by the Director.

   d. At any scheduled hearing, the issues and facts raised by the Order (paragraphs A through F) and/or any request by CCH for a hearing on any specific issues and facts in the NFV or Order for this case will be addressed.

   e. After the hearing, the hearings officer will recommend a decision to the Director relating to any contested issues in the NFV or Order based on Sections 322-8, 342D-9, 342D-11, 342D-30, and 342D-31, HRS.

   f. After the hearing, the hearings officer will recommend a decision relating to any disputed or unresolved penalty amount based on evidence presented at the hearing.

EXHIBIT H

g. The hearing will be conducted in accordance with Chapter 91, HRS, and the Rules of Practice and Procedure of the Department.

h. Parties may present evidence and argument on any issue or fact raised by any paragraph in the NFV or Order or otherwise raised by this case. Parties may examine witnesses and present exhibits.

i. Parties may be represented by lawyers at their own expense. An individual may appear on his or her own behalf. A partner may represent the partnership. An officer or authorized employee of a corporation, trust or association may represent the corporation, trust, or association.

j. After such hearing, this Order will be affirmed, modified, or rescinded by the Director. Before the Director's decision, Respondent may file exceptions and present argument to the Director under Section 91-11, HRS.

4. This Order is not a permit under the Act, and does not relieve CCH of any obligations imposed by the Act or any other law, regulation or permit.

5. Failure to comply with this Order may subject the Respondent to additional penalties and measures under Chapters 322 and 342D, HRS, and Chapters 11-54 and 11-55, HAR.

6. If due to disability or language, you have special needs for responding to this Order or the attached NFV, or for participating in any hearing, please contact Mr. Michael Tsuji, Supervisor of the Enforcement Section, CWB, at 586-4309 (voice) or via the telecommunications relay service at 546-2565.

7. This Order shall be terminated by the Director upon CCH's satisfactory completion of all actions required by this Order. Upon completing all actions required by the

EXHIBIT H

Order, CCH may submit a certification of completion and petition the Director to terminate the Order.

DATED: Honolulu, Hawaii, *April 15, 2004*

*/s/ Laurence K. Lau*
LAURENCE K. LAU
Deputy Director for
Environmental Health

APPROVED AS TO FORM:

*/s/ Mark G. McConnell*
MARK G. MCCONNELL
Deputy Attorney General

-------------------------------------------------------------------------------

**Department of Health, State of Hawaii v. City and County of Honolulu**
**Docket Numbers 2004-CW-EO-02N and 04-WW-EO-2**

EXHIBIT H

ATTACHMENT 1:  Finding of Violation and Order
Docket No's 2004-CW-EO-01N
and 04-WW-EO-2
City and County of Honolulu
Force Main Sewage Spills to State waters Reported to Hawaii Department of Health
November 1996 to April 2004

| Date (mo./da./yr.) | Spill Location (nearest address) | Spill Volume (gallons) | Receiving Waters |
|---|---|---|---|
| 11/29/96 | Waikapoki PS, Kaneohe | 50 | Keaahala Stream/Kaneohe Bay |
| 1/30/98 | Waikapoki PS, Kaneohe | 10 | Holding pond which discharges into Kaneohe Stream |
| 2/1/99 | Waikapoki PS, Kaneohe | 7,200 | Keaahala Stream/Kaneohe Bay |
| 4/16/99 | Pier 35 near Hart St. PS | 1,990,000 | Honolulu Harbor |
| 12/7/99 | Kahuku WWTP | 10,600 | Wildlife sanctuary/wetlands |
| 10/3/00 | Kahuku WWTP | 4,300 | Wildlife sanctuary/wetlands |
| 10/14/00 | Kahuku WWTP | 4,400 | Wildlife sanctuary/wetlands |
| 12/6/00 | Waikapoki PS, Kaneohe | 10,000 | Keaahala Stream/Kaneohe Bay |
| 12/11/00 | Pier 52, Honolulu | 300 | Honolulu Harbor |
| 2/1/02 | Kaneohe Bay Drive, Kaneohe | 30,000 | Kaneohe Bay |
| 3/7/02 | Nimitz Highway, Honolulu | 3,500,000 | Keehi Lagoon |
| 3/24/02 | Aliamanu PS #2, Honolulu | 12,000 | Storm drain |
| 7/29/02 | Nimitz Highway, Honolulu | 330,000 | Keehi Lagoon |
| 7/4/03 | Kailua Road PS, Kailua | 100 | Kawainui Stream |
| 3/4/04 | Sand Island Beach Park | 2,000,000 | Honolulu Harbor |
|  | **TOTAL VOLUME** | **7,898,960** |  |

EXHIBIT H

ATTACHMENT 2: Finding of Violation and Order
Docket No's 2004-CW-EO-01N
and 04-WW-EO-2
City and County of Honolulu
Force Main Sewage Spills to Ground Reported to Hawaii Department of Health:
November 1996 to April 2004

| Date (mo./da./yr.) | Spill Location (nearest address) | Spill Volume (gallons) |
|---|---|---|
| 8/18/97 | Maloelap Navy Housing | 2,000 |
| 8/31/97 | Niu Valley PS #38 | 15 |
| 9/11/97 | 464 Wana'ao Street, Kailua | 110,000 |
| 10/2/99 | Fort Armstrong/Forrest Ave. | 400,000 |
| 10/20/99 | Kahuku WWTP | 5,671 |
| 1/12/00 | Waipahu Depot Road, Waipahu | 20,000 |
| 3/14/00 | 91-1024 Kapapapuhi Street, West Lock Estate PS | 100 |
| 4/21/00 | 91-1024 Kapapapuhi Street, West Lock Estate PS | 100 |
| | TOTAL VOLUME | 537,886 |

EXHIBIT H