CARRIE OKINAGA, 5958
Corporation Counsel
KATHLEEN A. KELLY, 6729
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone:  (808) 527-5351
Facsimile:  (808) 523-4583
Email: kkelly@honolulu.gov

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone:  (213) 680-6400
Facsimile:  (213) 680-6499
Email:  nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>          Plaintiffs,<br><br>     v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>          Defendant. | CIV. NO. CV04-00463 DAE-BMK<br><br>**CITY AND COUNTY OF HONOLULU'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER FILED SEPTEMBER 30, 2005 DISMISSING PLAINTIFFS' FIRST AND SECOND CLAIMS; DECLARATION OF KATHLEEN A. KELLY AND EXHIBITS A-I;** |

)    **DECLARATION OF ROSS**
)    **TANIMOTO AND EXHIBIT A;**
)    **LR 7.5 CERTIFICATE OF**
)    **COUNSEL; CERTIFICATE OF**
)    **SERVICE**
)    Date:        Feb. 25, 2008
)    Time:        9:45 a.m.
)    Judge:      Hon. David Alan Ezra
_____    )

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................1

II.  FACTUAL BACKGROUND ......................................................5

     A.   The Governments' Collection System Lawsuit And The 1995
          Consent Decree ...........................................................5

     B.   Spills Have Decreased Significantly Since Implementation Of
          The 1995 Consent Decree ................................................7

     C.   Ongoing Oversight, The Beachwalk Spill, And The Resulting
          2007 Stipulated Order ...................................................7

     D.   Plaintiffs Have Intervened In The Governments' Actions And
          Have Sought To Dismiss The Beachwalk Claim.............................11

III. ARGUMENT.......................................................................13

     A.   Legal Standard Governing Reconsideration ..............................13

     B.   The September 30, 2005 Order Was Correctly Decided....................14

          1.   Plaintiffs' Motion Improperly Repeats Arguments
               Previously Rejected By The Court ...............................15

          2.   The Stipulated Order Confirms The September 30, 2005
               Order Was Correct .............................................17

          3.   An Alternative Ground For Dismissal Still Applies And
               Bars Plaintiffs' Spill Claims.................................18

     C.   The Stipulated Order Does Not Affect the Propriety of the Res
          Judicata Order ..........................................................21

          1.   The Court's Stipulated Order Is Not An Intervening
               Change In Law..................................................23

          2.   Res Judicata Was Not Before The Court When
               Considering The Stipulated Order...............................24

          3.   Entry Of The Stipulated Order Does Not Mean That The
               Consent Decree Prosecuted Spills Only Through October
               1994...........................................................26

i

TABLE OF CONTENTS
(continued)

Page

       4.    Entry Of The Stipulated Order Demonstrates The Governments' Diligent Prosecution Of The 1995 Consent Decree.....................................................................................28

   D.    Plaintiffs' Motivation Is To Impede Settlement And Reopen The Entire Injunctive Program To Litigation ...................................32

IV.   CONCLUSION ...........................................................................33

A/72421531.1/2017866-0000309724

## TABLE OF AUTHORITIES

Page

Cases

Adams v. Cal. Dep't of Health Servs.
  487 F.3d 684 (9th Cir. 2007).................................................................25

Alaska Sport Fishing Assoc. v. Exxon Corp.
  34 F.3d 769 (9th Cir. 1994)......................................... 17, 18, 28, 29

Ariz. v. Cal.
  530 U.S. 392, 120 S. Ct. 2304, 147 L. Ed. 2d 374 (U.S. 2000) ......................25

Arkansas Wildlife Fed'n v. ICI Americas, Inc.
  842 F. Supp. 1140 (E.D. Ark. 1993), aff'd, 29 F.3d 376 (8th Cir.
  1994) .................................................................................20

Atl. States Legal Found., Inc. v. Eastman Kodak Co.
  933 F.2d 124 (2d Cir. 1991)................................................................30

Cmty. of Cambridge Envtl. Health & Dev. Group v. City of
  Cambridge
  115 F. Supp. 2d 550 (D. Md. 2000).........................................................20

Connecticut Fund for the Env't v. Contract Plating Co.
  631 F. Supp. 1291 (D. Conn. 1986) .......................................................19

Donaldson v. Liberty Mut. Ins. Co.
  947 F. Supp. 429 (D. Haw. 1996) .........................................................13

Ellis v. Gallatin Steel Co.
  390 F.3d 461 (6th Cir. 2004)...............................................................21

Friends of Milwaukee's Rivers & Lake Michigan Fed'n v. Milwaukee
  Metro. Sewerage Dist.
  382 F.3d 743 (7th Cir. 2004)...........................................................29, 30

Friends of the Earth v. Consolidated Rail Corp.
  768 F.2d 57 (2d Cir. 1985)................................................................33

iii

TABLE OF AUTHORITIES
(continued)

Page

Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.
    484 U.S. 49, 108 S. Ct. 376, 98 L. Ed. 2d 306 (1987) .....................................19

Hansen v. Schubert
    459 F. Supp. 2d 973 (E.D. Cal. 2006) ......................................................16, 31

Home Depot, Inc. v. Guste
    773 F.2d 616 (5th Cir. 1985)...........................................................................24

Karr v. Hefner
    475 F.3d 1192 (10th Cir. 2007)......................................................................20

Kona Enters., Inc. v. Estate of Bishop
    229 F.3d 877 (9th Cir. 2000)....................................................................13, 23

Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.
    215 F.R.D. 581 (D. Ariz. 2003)................................................................17, 31

Nordhorn v. Ladish Co.
    9 F.3d 1402 (9th Cir. 1993)............................................................................28

St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.
    No. Civ. 04-0398, 2007 U.S. Dist. LEXIS 81829 (E.D. La. Nov. 5,
    2007) .........................................................................................16, 21, 30

U.S.A. v. City of Green Forest
    921 F.2d 1394 (8th Cir. 1991)............................................................18, 21, 33

United States v. Metro. St. Louis Sewer Dist.
    952 F.2d 1040 (8th Cir. 1992)........................................................................25

United States, et al. v. City and County of Honolulu
    No. 94-00765 DAE .........................................................................5, 10, 11

Statutes

Clean Water Act Section 301(a), 33 U.S.C. § 1311(a) .....................................5, 27

Clean Water Act Section 505(b)(1)(B), 33 U.S.C. §1365(b)(1)(B)...........18, 19, 21

A/72421531.1/2017866-0000309724

TABLE OF AUTHORITIES
(continued)

Page

Haw. Rev. Stat. § 342D-50(a) ..............................................................................27

I.    <u>INTRODUCTION</u>

More than two years after the fact, on November 15, 2007, plaintiffs Sierra Club, Hawai'i Chapter; Hawai'i's Thousand Friends; and Our Children's Earth Foundation ("plaintiffs") filed a Motion for Reconsideration seeking to overturn the part of this Court's September 30, 2005 Order dismissing, *with prejudice*, plaintiffs' first and second causes of action based on alleged spills from the City and County of Honolulu's ("CCH") wastewater collection system. In that Order, this Court found that plaintiffs' spill claims were barred by the doctrine of *res judicata* because the United States Environmental Protection Agency ("EPA") and the State of Hawai'i's Department of Health ("DOH") (collectively, the "Governments") are addressing the identical claims under a 1994 federal lawsuit in this Court and the resulting 1995 Consent Decree.

Plaintiffs argue that this Court's recent decision to enter the Stipulated Order between CCH, EPA and DOH, which provides for the upgrade of certain critical force mains, implicitly represents a "change in the controlling law" that warrants a reversal of the Court's *res judicata* Order or, as plaintiffs argue in a companion motion, a dismissal of the Stipulated Order. In essence, plaintiffs argue that by entering the Stipulated Order, the Court somehow contradicted its *res judicata* Order since the Stipulated Order and the Governments' underlying claim

1

("Beachwalk Claim") would otherwise likewise have been barred by *res judicata*. Thus, the Court must reconcile its conflicting decisions, the argument goes, by either formally reversing the *res judicata* decision or throwing out the Beachwalk Claim and Stipulated Order altogether-- a Hobson's Choice to be sure. The argument is without merit for the following reasons.

First, entry of the Stipulated Order is not an intervening change in the law. Rather, it is the latest *factual* development in the Governments' longstanding enforcement action involving CCH and its wastewater collection system and the 1995 Consent Decree. Since there is no change in the law governing *res judicata* and because plaintiffs concede that there are no errors in the Court's application of the law, this Motion should be denied under controlling local procedural rules and Ninth Circuit law governing reconsideration.

Second, the Stipulated Order is not a new, unrelated enforcement action, as the plaintiffs would have the Court believe. Rather, it is the most recent example of the Governments' continuing oversight of CCH's wastewater collection system pursuant to the 1995 Consent Decree. It was this Decree, and the continuing obligations that it created, that provided the basis for the *res judicata* Order. The obligations in the Stipulated Order could have been memorialized in an amendment to the 1995 Consent Decree or subsequent settlement, as it contains projects that are appropriate to minimize wastewater overflows -- the goal of the

2

1995 Consent Decree.  The fact that the Stipulated Order projects were memorialized in a separate action has no bearing on the validity of the *res judicata* Order.

Third, the cornerstone of the plaintiffs' argument--that the Stipulated Order is barred by *res judicata*--misunderstands the doctrine itself.  *Res judicata* is an affirmative defense for CCH to assert.  The fact that the defense was asserted successfully to defeat plaintiffs' spill claims has no bearing on whether it could or should have been asserted in defense of the Governments' Beachwalk Claim and the entry of the Stipulated Order.  The fact is, *res judicata* was not asserted in response to the Beachwalk Claim, the Court did not consider the issue when it entered the Stipulated Order, and plaintiffs cannot assert *res judicata* now. (Indeed, it would have been absurd for CCH to assert *res judicata* to prevent entry of a settlement that CCH spent months negotiating and fully supported.)  Thus, the filing of the Beachwalk Claim and Stipulated Order does not in any way undermine the *res judicata* Order.

Fourth, the Stipulated Order is also not an "implicit" recognition of the lack of diligent prosecution of the 1995 Consent Decree.  Putting aside the fact that plaintiffs are wrong on the application of the law governing diligent prosecution to the affirmative defense of *res judicata* (as explained fully in this

3

memorandum below), the Stipulated Order shows just the opposite: that the Governments *continue* to diligently prosecute these claims.

Finally, the duplicity inherent in plaintiffs' Motion -- holding the environmentally beneficial Stipulated Order hostage while seeking to resuscitate an unnecessary, wasteful and duplicative suit -- is staggering. For years, CCH has implored plaintiffs not to pursue unnecessary and expensive litigation and instead to defer to the Governments' continuing oversight of CCH's wastewater collection system under the 1995 Consent Decree, and the collaborative efforts of CCH and the Governments that are underway to ensure that all reasonable steps are taken to minimize spills from the wastewater collection system. The Court's *res judicata* Order is an important component of this progress because it enables CCH and the Governments to focus on collaboration, not litigation. The Court should not allow plaintiffs to use these efforts and achievements against CCH in order to reopen litigation terminated long ago and further impede the ongoing settlement dialogue among EPA, DOH and CCH.

For these reasons and for the reasons set forth below, the Court should deny plaintiffs' Motion.

4

II.    FACTUAL BACKGROUND

    A.    The Governments' Collection System Lawsuit And The
          1995 Consent Decree

As set forth fully in CCH's Motion to Dismiss Plaintiffs' First,

Second, Ninth, Eleventh, and Twelfth Claims ("CCH's Motion to Dismiss",

Docket # 19), at the time this lawsuit was filed, the Governments had already

initiated and were prosecuting a similar lawsuit, United States, et al. v. City and

County of Honolulu, No. 94-00765 DAE under section 309 of the Clean Water Act

("CWA") and State law ("1994 Government Lawsuit").  The (now dismissed) first

and second claims in plaintiffs' suit, which are based on alleged collection system

spills, mirrored the third claim in this earlier action.

On May 15, 1995, this Court entered a Consent Decree as Modified

by Stipulation ("1995 Consent Decree") in the 1994 Government Lawsuit.  See

Exhibit B to the Declaration of Christopher Sproul, filed with plaintiffs' Motion for

Reconsideration on November 15, 2007 ("Sproul Decl., Exh. B").  The Consent

Decree requires CCH to comply with CWA § 301(a); to establish a schedule under

which CCH shall implement preventative maintenance and sewer replacement and

rehabilitation necessary to reduce future spills; and "to use its best efforts to

prevent spills to the maximum extent reasonably possible in terms of frequencies,

5

duration, and volume."[1]  Sproul Decl., Exh. B at 5-20.  To meet these objectives,

CCH was ordered to develop and implement comprehensive collection system

programs, carried out under the direction of the EPA and the continuing

jurisdiction of this Court, through at least 2019.  Id. at 30, 60-61.

As part of the 1995 Consent Decree's injunctive relief program, CCH

was required to develop and implement a long-term Spill Reduction Action Plan

("SRAP"), aimed at "reducing the number and volume of spills from [CCH's]

Collection System to the maximum extent practicable."  Sproul Decl., Exh. B at

16.  CCH was also required to develop and implement a "Long-Term Sewer

Rehabilitation and Infiltration/Inflow Minimization Plan" ("Sewer I/I Plan")

providing for the rehabilitation of the entire collection system.  Id. at 23-30.  Under

the Sewer I/I Plan, CCH must implement a 20-year capital improvement program

for rehabilitation of the collection system.  Id. at 28.  As required by the 1995

Consent Decree, the Sewer I/I Plan includes project milestones established at 5-

year increments.  Id. at 29.  Under the terms of the 1995 Consent Decree, all

collection system rehabilitation projects must be complete by December 31, 2019.

Id. at 30.  CCH estimates that the Consent Decree injunctive program requires a

---

[1]     EPA has recognized it is impossible to have "zero spills anywhere....The goal
is to have as few spills as possible."  Declaration of Kathleen A. Kelly in Support of
this Opposition ("Kelly Decl."), Exh. A.

total investment of approximately $910,000,000 by CCH in its collection system.
Declaration of Ross Tanimoto in Support of this Opposition ("Tanimoto Decl."),  ¶ 2.

      B.    <u>Spills Have Decreased Significantly Since
Implementation Of The 1995 Consent Decree</u>

      In an apparent attempt to usurp the Governments' primary oversight function and persuade the Court to reinstate their first and second claims, plaintiffs misleadingly suggest that spills have continued unabated, or even increased, since the implementation of the 1995 Consent Decree.  To the contrary, spills have decreased dramatically.  Spills have declined from 321 in 1999 to 183 in 2007. Tanimoto Decl., ¶ 3.  Spills from CCH's gravity mainline sewers have likewise declined, from 120 in 1999 to 57 in 2007,  a decrease of more than 50 percent.  <u>Id.</u> Accordingly, not only are plaintiff's arguments about the state of CCH's collection system completely irrelevant to the propriety of this Court's *res judicata* Order, they are also inaccurate.

      C.    <u>Ongoing Oversight, The Beachwalk Spill, And The
Resulting 2007 Stipulated Order</u>

      Although the 1995 Consent Decree has been demonstrably effective in reducing spills, the Governments, as part of their continuing oversight of the collection system under the original spill claims, continue to inspect and audit the collection system injunctive relief program and enforce when necessary.  For

7

example, EPA affirms that it has "on numerous occasions inspected CCH's

wastewater treatment and collection infrastructure [and] develop[ed] . . . several

administrative and judicial enforcement actions involving CCH's wastewater

system."  Kelly Decl., Exh. C at ¶ 4.  Similarly, DOH agrees for its part that:

> [it] has devoted substantial resources to checking CCH's
>
> compliance with the 1995 Consent Decree and, more
>
> generally, its sewer system's compliance with the State's
>
> Clean Water Act . . .  In 2004, DOH issued a Notice and
>
> Finding of Violation and Order that required CCH to take
>
> steps to eliminate sewage spills from force mains, the
>
> pressurized pipes that transport sewage from pump
>
> stations toward the treatment plants.  In 2004 and 2005,
>
> DOH and EPA conducted a comprehensive review of
>
> CCH's wastewater collection and treatment, identified
>
> many deficiencies, and communicated them to CCH.
>
> DOH, EPA, CCH and the Citizens then began the
>
> negotiation process that led to the Stipulated Order.

Kelly Decl., Exh. D at 3 (internal citations omitted).

        In accordance with the Governments' ongoing oversight activities, CCH and

the Governments scheduled talks in early Spring 2006 to discuss "global"

8

collection system issues, including a review of the 1995 Consent Decree requirements, compliance, and enforcement.[2]

At about the same time CCH and the Governments were set to begin these discussions, on March 24, 2006 CCH experienced the failure of its Beachwalk Force Main.  See Tanimoto Decl., ¶ 4.  This event highlighted for both the Governments and CCH certain urgent needs with regard to the collection system.  Id.  As a result, CCH and the Governments focused their discussions on the urgent force main issues, including Beachwalk; these talks proceeded on a rigorous schedule throughout 2006 and into 2007.  Id.  On May 8, 2007, EPA lodged the Stipulated Order, which set forth the terms of the agreed-upon injunctive relief program regarding these force mains, thereby augmenting the existing injunctive program under the 1995 Consent Decree.  Id.

Concurrently with the lodging of the Stipulated Order, EPA also lodged a claim ("Beachwalk Claim") with a single cause of action based on the Beachwalk spill.  Kelly Decl., Exh. F at ¶ 37.  Although the Stipulated Order resolves the Beachwalk Claim specifically, it is obvious that the Beachwalk enforcement and resulting Stipulated Order were a part of the Governments'

---

[2]    As set forth in CCH's August 14, 2007 Motion to Stay (Docket # 121) at 8-9, plaintiffs initially participated in these discussions, but eventually withdrew because they would not agree to continue their stay of litigation.

*continuing* prosecution of the original collection system claims from the 1994 Government Lawsuit and the resulting 1995 Consent Decree. For example, in EPA's declaration in support of entry of the Stipulated Order, EPA expressly acknowledges that the Stipulated Order is part of the Governments' "oversight" of CCH's collection system injunctive program under 1995 Consent Decree and that EPA has devoted "substantial resources overseeing CCH's compliance." Kelly Decl., Exh. C at ¶¶ 3, 5.

Thus, the Stipulated Order is an additional and important measure in the Governments' ongoing oversight of the collection system under the 1994 Government Lawsuit and the 1995 Consent Decree. Nonetheless, in spite of plaintiffs' purported concern about enforcement, they vigorously objected to the entry of the Stipulated Order, and now seek to set it aside and have the entire Beachwalk claim dismissed.[3]

---

[3]    As CCH informed the Court in its August 14, 2007 Motion to Stay this action (Docket # 121), CCH again invited plaintiffs to participate in all future discussions on the condition that they agree to stay litigation. It has been CCH's consistent position to seek to resolve all outstanding issues informally outside of wasteful and polarizing litigation. This approach has proved very successful in resolving the force main issues, and accordingly, the Governments and CCH continue to pursue this approach. Plaintiffs, however, would not agree to a stay and continue to pursue litigation, including their Motion for Partial Summary Judgment (Docket # 52), extensive written discovery promulgated on October 11, 2007, and the instant Motion. Kelly Decl., ¶ 7.

10

D.    <u>Plaintiffs Have Intervened In The Governments' Actions</u>
<u>And Have Sought To Dismiss The Beachwalk Claim</u>

Plaintiffs' attempts to persuade the Court that reinstatement of their

first and second claims is necessary is further negated by their status as intervenors

in both the 1994 Government Lawsuit and the Beachwalk Claim.  Plaintiffs claim

in their current Motion that they wish only to exert "citizen oversight" over

collection system issues.  <u>See</u> Motion at 15.  However, plaintiffs' desire to exert

oversight of ongoing enforcement of the 1995 Consent Decree, as well as the

Stipulated Order, is already being adequately fulfilled.  On March 6, 2007,

plaintiffs filed a Motion to Intervene in the 1994 Government Lawsuit.  Kelly

Decl., ¶ 5.  On May 4, 2007, Magistrate Judge Chang issued Findings and

Recommendation allowing plaintiffs to intervene in the 1994 lawsuit, subject to

four conditions which allowed plaintiffs to oversee enforcement of the 1995

Consent Decree without disturbing that settlement.  Kelly Decl., Exh. G.  This

Court adopted those Findings and Recommendation on May 24, 2007.  Kelly

Decl., ¶ 5.  Thus, the Court effectively balanced oversight with the finality of the

settlement.

Shortly thereafter, plaintiffs filed a Motion to Intervene on May 26,

2007, this time seeking to intervene in the 2007 Beachwalk Claim.  Kelly Decl.,

¶ 6.  Magistrate Chang again granted intervention in this action in a June 28, 2007

Findings and Recommendation, which the Court adopted on July 26, 2007.  <u>Id.</u>  On

11

November 21, 2007, Magistrate Judge Chang imposed the same four conditions on

plaintiffs' intervention, which again allowed oversight but prevented plaintiffs

from seeking "redetermination of any issue already settled in this case nor shall

they seek to set aside any provision of the Stipulated Order."  Kelly Decl., Exh. H

at 7-8.  This Court adopted those conditions in its December 13, 2007 Order.

Kelly Decl., ¶ 6.  Again, while the Court demonstrated it was interested in

preserving the finality of the settlement, it made sure to provide a clear mechanism

for plaintiffs to maintain oversight over the Governments' prosecution of

collection system issues.

Despite the Court's clear interest in promoting settlement and

preserving finality, while simultaneously recognizing plaintiffs' existing ability to

maintain oversight over the Governments' enforcement of spill issues, plaintiffs

proceeded to file their current Motion for Reconsideration and, concurrently, a

Motion to Dismiss the Beachwalk Claim as barred by *res judicata*.  Kelly Decl.,

Exh. I.  In their Motion to Dismiss, plaintiffs argue that if the Court does not grant

their Motion for Reconsideration, the Court must, "by simple logic" dismiss the

Beachwalk Claim and by extension, render the Stipulated Order null and void.[4]

---

[4]    To the extent plaintiffs state they only want to "supplement" the Stipulated
Order or any other injunctive relief order and not disturb or "vacate" it (Motion at
15), this assertion is directly contradicted by their Motion to Dismiss, which seeks

12

<u>Id.</u> at 9.  The impact of such a Motion to Dismiss is potentially enormous as CCH has already made substantial progress in implementing the Stipulated Order.   <u>See</u> Tanimoto Decl., Exh. A.

III.   <u>ARGUMENT</u>

    A.   <u>Legal Standard Governing Reconsideration</u>

        In the Ninth Circuit, "a motion for reconsideration must accomplish two goals.  First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth *facts or law of a strongly convincing nature* to induce the court to reverse its prior decision."  <u>Donaldson v. Liberty Mut. Ins. Co.</u>, 947 F. Supp. 429, 430 (D. Haw. 1996) (emphasis added).  To be entitled to reconsideration, a party must demonstrate one of the following:  (a) newly discovered evidence, (b) clear error, (c) an intervening change in the controlling law, or (d) other highly unusual circumstances.  Motion at 23, <u>citing</u> <u>Kona Enters., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 890-91 (9th Cir. 2000) (affirming Hawaii district court's denial of motion for reconsideration because no grounds for reconsideration present; noting that reconsideration is an "extraordinary remedy, to be used sparingly in the interests of

---

to *overturn* the Stipulated Order.  Further, plaintiffs have no reason to supplement as the Governments have already augmented the 1995 Consent Decree through the Stipulated Order and continue to address collection system issues through the ongoing settlement discussions.

A/72421531.1/2017866-0000309724

finality and conservation of judicial resources"). Similarly, the controlling Local Rule ("LR") for the United States District Court for the District of Hawaii limits the Court's reconsideration of interlocutory orders. Pursuant to LR60.1, reconsideration motions "may be brought *only* upon the following grounds: (a) discovery of *new* material facts not previously available; (b) intervening change in law; (c) manifest error of law or fact." Local Rule 60.1 (emphasis added).

Here, plaintiffs do not claim there is any newly discovered evidence that justifies reconsideration or that the Court made an error of law in deciding CCH's Motion to Dismiss. Indeed, plaintiffs admit they "are not asking the Court to reconsider prior arguments." Motion at 24. Rather, plaintiffs claim the recent enforcement of the narrow Beachwalk Claim and the resulting Stipulated Order somehow represent an "effective" intervening change in the controlling law. Id. at 23. However, plaintiffs' strained argument lacks merit and their Motion should be denied for the reasons set forth below.

B.    The September 30, 2005 Order Was Correctly Decided

While plaintiffs improperly attempt to reargue their opposition to CCH's December, 2004 Motion to Dismiss in their current Motion, the *only new fact* plaintiffs cite to is the entry of the $300 million Stipulated Order. This settlement, however, only emphasizes that the September 30, 2005 Order was decided correctly and does nothing to help plaintiffs here.

14

1.    <u>Plaintiffs' Motion Improperly Repeats Arguments
Previously Rejected By The Court</u>

Although plaintiffs acknowledge that "[i]t is inappropriate to seek reconsideration merely to have the Court reconsider prior arguments" and claim that they "are not asking the Court to reconsider prior arguments" (Motion at 23-24), a review of plaintiffs' Opposition to CCH's Motion to Dismiss ("Prior Opposition," Docket #54) shows that the instant Motion is overwhelmingly a rehash of their prior arguments.  For example, plaintiffs improperly repeat, sometimes verbatim, the following previously rejected arguments:

- The 1995 Consent Decree was not intended to resolve spills after October 1994 (Motion at 2n.2, 4, 13, 14, 16, 20, 21; Prior Opposition at 26, 29-30).

- Spills have occurred since entry of the 1995 Consent Decree (Motion at 5, 6, 7, 13, 14, 20, 22; Prior Opposition at 6-9).

- CCH fails to remedy the causes of spills (Motion at 6, 13, 14; Prior Opposition at 7).

- "[S]eparate events with similar causes are *not* the same nucleus of facts for *res judicata* purposes" (Motion at 14; Prior Opposition at 27) (emphasis in both originals).

15

- "[N]o EPA or DOH rights or interests established by the 1995 EPA Consent Decree will be destroyed or impaired by plaintiffs' suit" (Motion at 15; Prior Opposition at 28).

- "Moreover, [plaintiffs] do not seek to vacate the 1995 EPA Consent Decree . . . [plaintiffs] seek to supplement this relief with additional remedial measures and citizen oversight" (Motion at 15; Prior Opposition at 28).

- The Governments did not diligently prosecute the 1995 Government lawsuit and therefore are not in privity with plaintiffs (Motion at 16-22; Prior Opposition at 19-25, 29-30).

Because these arguments were previously presented to and rejected by this Court, they are an inappropriate basis for reconsideration and should be rejected out of hand.  See, e.g., St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C., No. Civ. 04-0398, 2007 U.S. Dist. LEXIS 81829, at *2 (E.D. La. Nov. 5, 2007) (denying motion for reconsideration because such a motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments'") (internal citation omitted); Hansen v. Schubert, 459 F. Supp. 2d 973, 998 (E.D. Cal. 2006) (denying reconsideration where "[p]laintiffs advanced arguments in their motion for reconsideration identical to the arguments they advanced in their opposition to defendants' motion for summary judgment.  The court found these arguments unpersuasive then and unpersuasive now"); Motorola, Inc. v. J.B. Rodgers Mech.

16

Contractors, Inc., 215 F.R.D. 581, 586 (D. Ariz. 2003) ("[n]o motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion").

2.    The Stipulated Order Confirms The September 30,
2005 Order Was Correct

Under the doctrine of *res judicata*, a subsequent lawsuit is barred by *res judicata* when the later suit involves the "same parties and privies based on the same cause of action." Alaska Sport Fishing Assoc. v. Exxon Corp., 34 F.3d 769, 773 (9th Cir. 1994) (citations omitted). In the September 30, 2005 Order, the Court found that "the First Claim and Second Claims in the current action, and the Third Claim in the EPA Lawsuit, are all based on spills from the Collection System and are substantially identical claims." Docket # 100 at 16. Here, *nothing* in the Stipulated Order or the Beachwalk Claim changes this Court's express finding that the plaintiffs' 2004 spills claims are nearly identical to the Governments' 1994 spill claim. Thus, plaintiffs have offered no new facts or law demonstrating that the Court was wrong in finding that the 1994 and 2004 actions are based on "substantially identical claims." Id.

Further, in holding that plaintiffs' spill claims were precluded, the Court noted in the September 30, 2005 Order that when "EPA is prosecuting CWA violations, it should be accorded a 'preeminent role' because it is charged with enforcing the CWA on behalf of all citizens." Docket # 100 at 15, citing U.S.A. v.

17

City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir. 1991). Under these circumstances, according to the Court, "all citizens are 'parties' to the prosecution 'within the meaning of *res judicata*.'" Id., citing Alaska Sport Fishing, 34 F.3d at 773. Here, again, entry of the Stipulated Order (as well as the continuing settlement discussions), conclusively demonstrates that the Governments continue to prosecute spill claims on behalf of all citizens, and that they are in the driver's seat and should be afforded a preeminent role in enforcing the CWA without undue interference. Again, *plaintiffs have offered no new facts or law demonstrating the Court was wrong* in finding the parties are in privity.

Because the Court's September 30, 2005 Order was correctly decided, this Motion must be denied.

> 3.    An Alternative Ground For Dismissal Still Applies
>        And Bars Plaintiffs' Spill Claims

As an alternative to the affirmative defense of *res judicata*, CCH argued in its Prior Motion to Dismiss that plaintiffs' first and second claims were barred by the statutory bar to subsequent actions set forth under Section 505(b)(1)(B) of the CWA, 33 U.S.C. §1365(b)(1)(B) (prosecution of CWA claim is prohibited "if the [EPA] or State has commenced and is diligently prosecuting a civil . . . action in a court of the United States, or a State to require compliance with the standard, limitation, or order" that is the subject matter of the Complaint). See CCH's Motion to Dismiss (Docket # 19) at 12-16; CCH's Reply to Motion to

18

Dismiss (Docket # 68) at 2-15.  As a result, citizen lawsuits under CWA have a merely "interstitial" role since Congress did not intend them to be even "potentially intrusive" on agency discretion.  <u>Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.</u>, 484 U.S. 49, 61, 108 S. Ct. 376, 98 L. Ed. 2d 306 (1987).  Simply put, when the government is diligently prosecuting a claim, citizens may not.  <u>Gwaltney</u>, 484 U.S. at 60 ("citizen suits are proper only if the Federal, State, and local agencies fail to exercise their enforcement responsibility") (internal quotes omitted).[5]  The Court did not rule on this alternate ground for dismissal in its September 30, 2005 Order.

Here, there can be no dispute that the EPA lawsuit is a "civil . . . action in a Court of the United States".  Moreover, as the Court's September 30, 2005 Order specifically found, the "subject matter" prong of CWA § 505(b)(1)(B) is also met as the Court found that the same claims are at issue.  <u>See</u> Docket # 100 at 16 ("the First and Second Claims in the current action, and the Third Claim in the EPA Lawsuit, are all based on spills from the Collection system and are *substantially identical* claims.") (emphasis added).  Finally, there can be no dispute

---

[5]    In addition, plaintiff's burden of proving the agency's prosecution was not diligent is a heavy one: diligence is presumed "absent evidence that [the agency] has engaged in a pattern of conduct that could be considered dilatory, collusive, or otherwise in bad faith."  <u>Connecticut Fund for the Env't v. Contract Plating Co.</u>, 631 F. Supp. 1291, 1293 (D. Conn. 1986).

that the Governments are diligently prosecuting their spill claims against CCH. The 1995 Consent Decree, the 2007 Stipulated Order, and the ongoing negotiations with CCH on the remaining collection system issues are not designed simply to redress past spills, but to establish comprehensive programs that over time will result in the reduction of spills.  Such long-term injunctive relief measures clearly evidence the Governments' continuing diligent prosecution of spill claims.  See, e.g., Karr v. Hefner, 475 F.3d 1192 (10th Cir. 2007) (consent decree constituted diligent prosecution and precluded citizen suit); Arkansas Wildlife Fed'n v. ICI Americas, Inc., 842 F. Supp. 1140 (E.D. Ark. 1993), aff'd, 29 F.3d 376 (8th Cir. 1994) (consent administrative order constituted diligent prosecution and precluded citizen suit); Cmty. of Cambridge Envtl. Health & Dev. Group v. City of Cambridge, 115 F. Supp. 2d 550 (D. Md. 2000) (consent order constituted diligent prosecution and precluded citizen suit).[6]  Indeed, the Governments' diligent prosecution has been acknowledged by the Court.  See Magistrate Judge Chang's

---

[6]    Furthermore, the 1995 Consent Decree and 2007 Stipulated Order call for judicial deference to the Governments' ongoing enforcement: "Particularly when the EPA chooses to enforce the CWA through a consent decree, failure to defer to its judgment can undermine agency strategy. If a defendant is exposed to a citizen suit whenever the EPA grants it a concession, defendants will have little incentive to negotiate consent decrees.  The Supreme Court has recognized the importance of deference to the EPA's bargains." Karr v. Hefner, 475 F.3d 1192, 1197 (10th Cir. 2007) (citation to Gwaltney omitted).

A/72421531.1/2017866-0000309724

May 4, 2007 Findings and Recommendation, adopted by this Court on May 24, 2007 ("find[ing] that implicit in the September 30, 2005 Order is a finding that [plaintiffs] are in privity with the EPA and that the *EPA is already diligently prosecuting* the First and Second Claim raised by [plaintiffs] in their 2004 lawsuit.")  Kelly Decl., Exh. G at 8 (emphasis added).

 Accordingly, since the Governments are diligently prosecuting the claims through long-term and ongoing injunctive relief, the statutory bar to subsequent actions under Section 505(b)(1)(B) remains a bar to the present action and is an alternative and separate grounds for dismissal of plaintiffs' 2004 spill claims.  See, e.g., Ellis v. Gallatin Steel Co., 390 F.3d 461 (6th Cir. 2004) (consent decree precluded citizen suit in Clean Air Act context); U.S.A. v. City of Green Forest, 921 F.2d 1394 (8th Cir. 1991) (consent decree precluded citizen suit); St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining, L.L.C., No. 04-0398, 2007 LEXIS 58581 (E.D. La. August 10, 2007) (consent decree precluded citizen suit in Clean Air Act context).

 C. The the Stipulated Order Does Not Affect the Propriety of the Res Judicata Order

 Plaintiffs' stated basis for reconsideration is the novel argument that the entry of the Stipulated Order "effectively" represents  a "change in controlling law" because it "effectively constitutes a ruling by this Court."  Motion at 23.  As a result, according to plaintiffs, the Court has "implicitly and effectively" found that

their spill claims are not barred by *res judicata* because the Court did not find such a bar to the Governments' Beachwalk Claim in approving the Stipulated Order. Id. at 11-12. Plaintiffs also argue that by entering the Stipulated Order, the Court has "implicitly" recognized (1) that the 1995 Consent Decree was intended to prosecute only claims through October 1994, or alternatively, (2) that such prosecution was not sufficiently diligent to rise to the level of *res judicata*. Id. at 17.

Plaintiffs' arguments fail for several reasons. First, entry of the Stipulated Order is in no way an intervening change of law, and accordingly, the requisite grounds for reconsideration are not present here. Second, *res judicata* is an affirmative defense *available only to CCH*. Because CCH did not raise the defense, the issue was not before the Court. Third, as the Court necessarily acknowledged in dismissing plaintiffs' spill claims in the September 30, 2005 Order and as the 1995 Consent Decree itself makes clear, the 1995 Consent Decree prosecutes post-decree spills. The fact that the Governments brought the narrow Beachwalk Claim separately does not change the fact that the Governments' 1994 claim and plaintiffs' 2004 claims are nearly identical. Finally, the affirmative defense of *res judicata* does not require a showing of diligent prosecution. Even if it did, the entry of the Stipulated Order demonstrates that, without question, the Governments *continue* to diligently prosecute collection system issues.

22

1.    The Court's Stipulated Order Is Not An
Intervening Change In Law

As stated above, Ninth Circuit case law and the governing local rules make clear that reconsideration is only appropriate in very narrow circumstances -- none of which are applicable here.  See L.R. 60.1; Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890-91 (9th Cir. 2000).  Plaintiffs' basis for seeking reconsideration here is that the Stipulated Order "is a new case law development" (Motion at 1, 10) and "a change in controlling law."[7]  Motion at 23.  However, the Stipulated Order is a judicially approved and enforceable settlement agreement binding on the parties in the Beachwalk action; it is not new "controlling law" in the (wholly separate) action.  Indeed, this claim is patently absurd in the context of a motion for reconsideration as *plaintiffs have shown no change in the law governing the doctrine of res judicata* -- the controlling law at issue here.  The ***fact*** of the Stipulated Order, as discussed above, simply serves to demonstrate that the

---

[7]    Without any citation to legal authority or even argument, plaintiffs make a conclusory statement on the last page of their Motion that the September 30, 2005 Order "had to have been clear error" and the entry of the Stipulated Order "should be seen as a highly unusual circumstance."  Motion at 24.  Even if plaintiffs did sufficiently argue an error, which they did not, their Motion is clearly time-barred under LR60.1 ("Motions asserted under Subsection (c) of this rule must be filed not more than ten (10) business days after the court's written order is filed").  Also, plaintiffs do not attempt to show that the entry of an additional enforcement action amounts to a highly unusual circumstance; indeed, they cannot since far from "highly unusual," the prospect of additional enforcement actions was implicitly recognized in the 1995 Consent Decree.

23

Court got it right when it issued the September 30, 2005 Order. Because there has been no intervening change in the controlling *law*, or other grounds for reconsideration, this Motion lacks merit and must, on that basis alone, be denied.

      2.    <u>*Res Judicata* Was Not Before The Court When Considering The Stipulated Order</u>

Plaintiffs argue that the Court, by entering the Stipulated Order, implicitly found the Governments' Beachwalk Claim was not barred by the doctrine of *res judicata* by virtue of the 1995 Consent Decree. Motion at 9. Therefore, according to plaintiffs' theory, the Court also found "implicitly" and "effectively" that their 2004 spill claims are likewise not barred by *res judicata*. <u>See id.</u> at 9-10, 12, 17, 19, 23. This is not the case as the issue of *res judicata* was not before the Court and, therefore, the Court could not conceivably have found that *res judicata* was not a bar to the Beachwalk Claim. The Court's approval of the Stipulated Order simply has no bearing on the dismissal of plaintiffs' spill claims under the doctrine of *res judicata* in the instant action. Accordingly, this Motion must be denied.

      a.    <u>CCH Has The Discretion To Raise Affirmative Defenses Such As *Res Judicata*</u>

It is axiomatic that a defendant has the discretion to raise, or not raise, an affirmative defense. <u>See</u> <u>Home Depot, Inc. v. Guste</u>, 773 F.2d 616, 620 n.4 (5th Cir. 1985) ("[T]he party *wishing to raise* the [*res judicata*] defense is obliged to

24

assert it at the earliest moment practicable") (emphasis added). It is also well-established that *res judicata* is an affirmative defense. Ariz. v. Cal., 530 U.S. 392, 410, 120 S. Ct. 2304, 147 L. Ed. 2d 374 (U.S. 2000); Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 692 (9th Cir. 2007). Therefore, it is the prerogative of CCH to decide whether to raise *res judicata* in defense of a claim brought against it. See United States v. Metro. St. Louis Sewer Dist., 952 F.2d 1040, 1043 (8th Cir. 1992) (the defense of *res judicata*, to the extent "it is available at all, may be raised *only* by [the defendant]") (emphasis added).

Here, CCH did not raise *res judicata* as a defense to the Governments' Beachwalk Claim. Plaintiffs, accordingly, cannot claim that the Court "implicitly" determined that the Beachwalk Claim was not barred by *res judicata* when it approved the Stipulated Order.[8] The Court could not possibly have adjudicated, "implicitly" or otherwise, an affirmative defense that was not even before it. The fact that the defense of *res judicata* was never raised or reached in the Beachwalk

---

[8]    Plaintiffs also assert that if the Court denies this Motion it must necessarily dismiss the 2007 Beachwalk Claim because "one or the other is wrong." Motion at 2-3 n.3, 11. Again, plaintiffs offer no authority that the Governments' Beachwalk Claim would have been barred by *res judicata* had that issue been before the Court (which it was not), that the Court was required to consider that defense before it entered the Stipulated Order (which it was not), or, most importantly, that CCH must assert that defense (which it was not required to do).

25

Claim is completely irrelevant to the Court's application of *res judicata* in this case.  As a result, plaintiffs' argument fails.

        3.      <u>Entry Of The Stipulated Order Does Not Mean That The Consent Decree Prosecuted Spills Only Through October 1994</u>

Plaintiffs claim the entry of the Stipulated Order shows that the 1995 Consent Decree did not prosecute spills after October 1994.  <u>See</u> Motion at 17.  According to plaintiffs, the Governments' Beachwalk Claim is a separate action under which the Governments "are prosecuting a new claim for CCH sewage violations post-1994."  <u>Id.</u> at 12.  This argument ignores the plain language of both the 1995 Consent Decree and the Beachwalk Claim.  As the Court necessarily acknowledged in dismissing plaintiffs' spill claims, the 1995 Consent Decree prosecutes post-decree spills. [9]  Moreover, plaintiffs ignore the plain language of the Beachwalk Claim, which is narrowly based on the allegation that  "the Beachwalk Spill constituted a separate violation of Section 301(a), 33 U.S.C. §

---

[9]      Again, plaintiffs impermissibly rehash the already rejected argument that the language of the 1995 Consent Decree shows that the Decree was not intended to prosecute post-decree spills.  <u>See</u> Motion at 4, 9-10, 13-14; Prior Opposition at 26-27.  Plaintiffs are obviously wrong; as described above, one of the stated objectives of the 1995 Consent Decree is to "prevent spills to the maximum extent reasonably possible" and, to achieve this objective, the Consent Decree established a 25-year, $1 billion injunctive program.  Tanimoto Decl., ¶ 2.  In any event, this precise argument previously was rejected by the Court, is impermissible in the context of a Motion for Reconsideration, and can be dismissed out of hand here.

A/72421531.1/2017866-0000309724

1311(a), and Haw. Rev. Stat. § 342D-50(a)" Kelly Decl., Exh. F. Plaintiffs' claim

that the narrowly tailored Beachwalk Claim (which is nothing more than a

procedural vehicle upon which to base the Stipulated Order) somehow evidences

that the 1995 Consent Decree -- and the comprehensive 25-year injunctive relief

program -- was not intended to prosecute post-decree spills is false and should be

rejected here. The Governments' decision to initiate a separate action should not

be construed to limit the application of the 1995 Consent Decree.

Because the Beachwalk Claim in no way implies that the 1995

Consent Decree only prosecuted spills through October 1994, plaintiffs' Motion

must be denied.[10]

---

[10]    See, e.g., Sproul Decl., Exh. B at 15-16 (CCH's projected "annual goals for
1994 *through 1999* for reduction of Spill frequencies and/or volumes from its
Collection System . . . will be reviewed annually and may be adjusted to reflect
improvements in CCH's Collection System preventive maintenance efforts"); at 16
("CCH shall submit to DOH for review and to EPA for review and approval, a
*long-term comprehensive* Spill Reduction Action Plan (SRAP) that is specifically
aimed at reducing the number and volume of Spills from its Collection System to
the maximum extent practicable"); at 61 (Sewer I/I Plan compliance "should occur
on or about the year 2019 . . . However, the requirement that CCH continue to
implement and comply with its approved SRAP and Sewer I/I Plan *shall remain in
effect* as an order of this Court") (emphasis added).

27

4.    <u>Entry Of The Stipulated Order Demonstrates The
Governments' Diligent Prosecution Of The 1995
Consent Decree</u>

Plaintiffs argue that entry of the Stipulated Order shows that the

Governments did not sufficiently diligently prosecute post-decree spills because

spills are continuing and the Governments have not enforced post-decree spills.

Motion at 6-7.  As discussed below, plaintiffs' position lacks merit and should be

rejected here.

a.    <u>Plaintiffs Confuse The Applicable Standards</u>

As an initial matter, "diligent prosecution" is not a prong of the Ninth

Circuit's legal test for *res judicata* which, as stated above, bars a later suit when

that suit involves the "same parties and privies based on the same cause of action"

involved in a prior action.  <u>Alaska Sport Fishing</u>, 34 F.3d at 773.  Indeed, the Court

in the September 30, 2005 Order has already implicitly rejected plaintiffs' prior

attempt to piggyback the CWA's statutory concept of "diligent prosecution" onto

the common law affirmative defense of *res judicata*.[11]  <u>See</u> Docket # 100 at 15-16;

---

[11]    As stated above, the CWA contains a jurisdictional bar to a subsequent
citizen lawsuit when the government is diligently prosecuting the same claims in a
prior lawsuit.  CWA § 505(b)(1)(B), 33 U.S.C. §1365(b)(1)(B).  Even plaintiffs'
own characterization of the *res judicata* doctrine -- the only legal issue relevant
here -- does not include a "diligent prosecution" requirement.  Motion at 9, citing
<u>Nordhorn v. Ladish Co.</u>, 9 F.3d 1402, 1404 (9th Cir. 1993).  In their Prior
Opposition, plaintiffs cited a single non-binding case that linked the concept of
"privity" under the *res judicata* doctrine to the concept of "diligent prosecution,"

CCH's Reply to Motion to Dismiss (Docket # 68) at 17 n.16. Thus, plaintiffs'

raising of diligent prosecution here is a red herring and nothing more than

regurgitation of an irrelevant standard.

b.    Post-Decree Spills Are Not Evidence Of Lack
Of Diligent Prosecution

Attempting to piggyback the "diligent prosecution" standard onto *res*

*judicata*, plaintiffs cite Second and Seventh Circuit cases in claiming that *any* post-

decree violations of the CWA prevents a finding of diligent prosecution. Motion at

18-22. As an initial matter, plaintiffs once again impermissibly raise an argument

already raised in the Prior Opposition (Docket # 54) at 19-25, 29-30 and rejected

by this Court by virtue of the September 30, 2005 Order. As set forth in CCH's

Prior Reply (Docket # 68) at 11-14, these cases simply do not apply when there are

complex ongoing remediation programs in place like the one here.[12] No one denies

---

Friends of Milwaukee's Rivers & Lake Michigan Fed'n v. Milwaukee Metro.
Sewerage Dist., 382 F.3d 743 (7th Cir. 2004). Prior Opposition (Docket # 54) at
29-30. Although nowhere in the September 30, 2005 Order does the Court find
that a showing of "diligent prosecution" is necessary to a finding of *res judicata*,
plaintiffs improperly reargue this concept throughout their Motion (see Motion at
16-22), despite their acknowledgement that "[i]t is inappropriate to seek
reconsideration merely to have the Court reconsider prior arguments" and their
claim that they "are not asking the Court to reconsider prior arguments" (Motion at
23-24). Furthermore, nowhere do plaintiffs claim that the Court erred in not
reading a "diligent prosecution" requirement in the Ninth Circuit's *res judicata* test
set forth in Alaska Sport Fishing, 34 F.3d at 773, *et al.*

[12]    Two of the three cases discussed by plaintiffs, Atl. States Legal Found., Inc.

that spills have occurred since the entry of the 1995 Consent Decree. Indeed, the

Consent Decree itself anticipates this fact by establishing a 25-year injunctive

program with the stated goal of "reducing . . . Spills . . . to the maximum extent

practicable." Sproul Decl., Exh. B at 16. In light of this ongoing injunctive relief

program, plaintiffs' citation of recent spills has no legal significance and is merely

another attempt to prejudice CCH before this Court.[13] See Motion at 6-7; Prior

---

v. Eastman Kodak Co., 933 F.2d 124 (2d Cir. 1991) and Friends of Milwaukee's
Rivers & Lake Michigan Fed'n v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743
(7th Cir. 2004), were raised in the Prior Opposition (Prior Opposition (Docket #
54) at 23, 25, 29) and distinguished in the Reply (CCH's Prior Reply (Docket # 68)
at 13-14, 17). The third case, St. Bernard Citizens for Envtl. Quality, Inc. v.
Chalmette Ref., L.L.C., 500 F. Supp. 2d 592 (E.D. La. 2007), is also of no help to
plaintiffs. Plaintiffs neglect to mention the court's important qualification that
immediately follows plaintiffs' cited language:

> On the other hand, [the diligent prosecution analysis] does not require
> a showing of immediate, perfect compliance when the polluter and a
> government enforcement agency have reached a settlement that puts
> into place a complex remediation plan.

St. Bernard Citizens, 500 F. Supp. 2d at 606. Such a "complex remediation plan"
is exactly what is outlined in both the 1995 Consent Decree and the Stipulated
Order.

[13]    Plaintiffs even use the same overwrought language they used in their Prior
Opposition to introduce their "new spills" argument. Compare Motion at 6 ("Some
of CCH's spills have been spectacularly large . . . CCH spilled about 48 million
gallons of raw sewage . . . .") to Prior Opposition (Docket # 54) at 7 ("Some of
CCH's spills have been spectacularly large . . . CCH spilled about 7.5 million
gallons of raw sewage . . . ."). Thus, not only is this argument legally irrelevant
and prejudicial, as a rehash of a prior argument it is also an invalid grounds for
reconsideration. See, e.g., St. Bernard Citizens for Envtl. Quality, Inc., 2007 U.S.

Opposition (Docket # 54) at 6-8.  In fact, as described above, the Consent Decree has been effective in reducing the number of spills.

      c.      <u>The Stipulated Order Does Not Evidence A<br>Lack Of Diligent Enforcement</u>

Perhaps most absurdly, plaintiffs claim that the Governments have not diligently prosecuted spills because there has been no post-decree enforcement. Motion at 7, 17-18 n.11.  As the Governments acknowledge[14] and as even plaintiffs grudgingly concede,[15] the Stipulated Order -- which mandates $300 million in addition relief -- is *itself* post-decree enforcement.  Even if diligent prosecution were a prong of the *res judicata* test (which it is not), plaintiffs' argument is a strikingly inconsistent Catch-22.  On the one hand, plaintiffs argue that in order for there to be adequate diligent prosecution, the Governments have to go to the Court to enforce the 1995 Consent Decree.  Motion at 7; <u>see also</u> Prior Opposition (Docket # 54) at 29.  On the other hand, when the Court *does* approve additional relief (like the Stipulated Order), plaintiffs use this additional enforcement as evidence there was inadequate diligent prosecution.  Motion at 9-10, 19.  Plaintiffs'

---

Dist. LEXIS 81829, at *2; <u>Hansen</u>, 459 F. Supp. 2d at 998; <u>Motorola, Inc.</u>, 215 F.R.D. at 586.

[14]    <u>See</u> Kelly Decl., Exh. C at ¶ 4; <u>Id.</u>, Exh. D at 3.

[15]    "The Stipulated Order requires CCH remedial action on six force main lines. . . ."  Motion at 8.

31

position effectively eviscerates the whole concept of *res judicata* and preclusion generally, because their stance results in the governments' inability to continue to pursue the claim at issue unhindered by new lawsuits. Such an evisceration of the *res judicata* doctrine should not be endorsed by the Court.

There is no question that the Governments have diligently prosecuted the 1994 claims and the Consent Decree; plaintiffs' inherently self-serving and inconsistent arguments do not justify reconsideration, and their Motion should be denied.

D.    <u>Plaintiffs' Motivation Is To Impede Settlement And Reopen The Entire Injunctive Program To Litigation</u>

It is impossible not to question plaintiffs' motivation in bringing this Motion. Plaintiffs have successfully sought to intervene in both the Governments' 1994 Lawsuit and the Beachwalk Claim -- a status which *currently* allows them to oversee the Governments' enforcement of spill claims under the 1995 Consent Decree and its 25-year injunctive program, as well as the 2007 Stipulated Order. Still, not only have they sought to resurrect their own spill claims -- which this Court has already found would duplicate the Governments' claims -- plaintiffs have also sought dismissal of the Beachwalk Claim and the 2007 Stipulated Order (which is in the process of being implemented). Motion at 2-3n.3; Kelly Decl., Exh. I at 9. Plaintiffs' goal is obviously not to work cooperatively to seek the speedy resolution of outstanding issues through negotiated, good-faith settlement,

32

but to undermine intergovernmental cooperation and reopen all spill-related issues -- including *resolved* issues -- to active litigation.  In so doing, plaintiffs elevate self-interest over the public interest.

Resurrecting plaintiffs' first and second causes of action would serve only to impede CCH's ongoing compliance efforts with the 1995 Consent Decree and the 2007 Stipulated Order and interfere with the ongoing settlement negotiations.  Such a result is wholly counterproductive and should not be abided by this Court.  See U.S.A. v. City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir. 1991) (when "EPA is prosecuting CWA violations, it should be accorded a 'preeminent role' because it is charged with enforcing the CWA on behalf of all citizens" ); Friends of the Earth v. Consolidated Rail Corp., 768 F.2d 57, 63 (2d Cir. 1985) (preclusion of duplicate suits designed to avoid the "obvious danger that unlimited public actions might disrupt the implementation of the act and overburden the courts").

Plaintiffs' preference for litigation over negotiated resolution is contrary to public policy and the public interest, as evidenced by the consensus and collaboration of all levels of government, and is fundamentally prejudicial to CCH.  On this basis alone, plaintiffs' Motion should be denied.

IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, CCH respectfully requests that the

Court DENY reconsideration of its September 30, 2005 Order dismissing, *with*

*prejudice*, plaintiffs' first and second claims.

DATED:    Honolulu, Hawaii          Respectfully submitted,
          February 7, 2008          CARRIE OKINAGA
                                    Corporation Counsel

                                    By:  /s/Kathleen A. Kelly
                                         Kathleen A. Kelly
                                         Attorneys for Defendant
                                         The City and County Of Honolulu

34