# EXHIBIT C

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department Of Justice
ROBERT D. MULLANEY
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6491
Fax: (415) 744-6476
E-mail: Robert.Mullaney@usdoj.gov

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii
DERRICK K. WATSON
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Tel: (808) 541-2850
Fax: (808) 541-3752

Attorneys for Plaintiff United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF HONOLULU, <br><br> Defendant. | Civil No. 1:07-00235 DAE-KSC <br><br> DECLARATION OF JOANN COLA IN SUPPORT OF UNITED STATES' REPLY TO SIERRA CLUB'S OPPOSITION TO ENTRY OF STIPULATED ORDER <br><br> Date: October 9, 2007 <br> Time: 10:30 a.m. <br> Judge David Alan Ezra |

## DECLARATION OF JOANN COLA

I, JoAnn Cola, declare the following:

1. I am an Environmental Engineer employed by the U.S. Environmental Protection Agency, Region 9 ("EPA Region 9") in San Francisco. I obtained a Bachelor of Science degree in Chemical Engineering from the University of California, Berkeley in 1988. Since 1989, I have been employed in EPA Region 9. From 1989 to 2001, I worked as a Remedial Project Manager in EPA Region 9's Superfund Program. In this job, I was involved in developing cleanup remedies for sites contaminated with hazardous waste. As part of this work, I directed contractors, and managed budgets and schedules for multi-million dollar and multi-year projects. Since 2001, I have worked in the Clean Water Act Compliance Office of EPA Region 9's Water Division. As part of this work, I have had responsibility for inspecting dischargers operating under Clean Water Act National Pollutant Discharge Elimination System ("NPDES") permits, providing technical support for Clean Water Act enforcement actions, and serving as project officer for several municipal wastewater and infrastructure grants.

2. I submit this declaration in support of the United States' Reply to Sierra Club's Opposition to Entry of the Stipulated Order.

3. Since 2001, I have been assigned to oversight of United States, et al., v. City and County of Honolulu, Civil No. 94-00765 DAE-KSC, and to the matter now known as United States, et al., v. City and County of Honolulu, Civil No. 1:07-00235 DAE-KSC.

4. As part of these responsibilities, I have familiarized myself with records of EPA's oversight of the 1995 Consent Decree in United States, et al., v. City and County of Honolulu, Civil No. 94-00765 DAE-KSC, addressing the City and County of Honolulu's ("CCH") compliance with the Clean Water Act. I have on numerous occasions inspected CCH's wastewater treatment and collection system infrastructure. I have participated in the development of several administrative and judicial enforcement actions involving CCH's wastewater system. I was also involved in the negotiations that led to the lodging of the Stipulated Order.

1

5. Following the entry of the 1995 Consent Decree, EPA devoted substantial resources to overseeing CCH's compliance. This oversight included review of reports submitted by CCH, inspections of CCH's facilities, and correspondence addressing compliance issues associated with the 1995 Consent Decree.

6. In 2004 and 2005, EPA and the State of Hawaii Department of Health ("DOH") conducted a comprehensive review of CCH's wastewater collection system. This process included an extensive review of CCH, EPA, and DOH records associated with the collection system, interviews of CCH wastewater staff, and inspections of numerous components of CCH's wastewater collection system. I participated as a member of the review team and also oversaw the work of contractors retained by EPA to assist in conducting this review.

7. Concurrently with this review, EPA and DOH evaluated the compliance status of the Sand Island Treatment Plant and the Honouliuli Treatment Plant, two major wastewater treatment facilities owned and operated by CCH.

8. As a result of these efforts, EPA and DOH identified a number of deficiencies with CCH's collection system and wastewater treatment plants and communicated these concerns to CCH. This led to a series of a series of settlement meetings beginning in March 2006 with CCH, DOH, and the Sierra Club, Hawaii Chapter, Hawaii's Thousand Friends, and Our Children's Earth Foundation (collectively, "Sierra Club").

9. On March 24, 2006, the Beachwalk Force Main suffered a failure, resulting in CCH's discharge of approximately 48.7 millions gallons of raw sewage into the Ala Wai Canal, which flows into the Pacific Ocean. After this discharge, EPA and DOH conducted investigations into the causes and impacts of the event.

10. EPA's 2004-05 review of CCH's compliance history had identified a significant number of compliance issues. However, after the March 2006 Beachwalk Force Main failure, EPA determined that it was appropriate to focus immediate attention on upgrades to CCH's most vulnerable force mains and the

2

Beachwalk pump station.

11. This shift in focus was communicated to CCH in April 2006 and eventually led to the negotiation of the Stipulated Order. EPA, DOH, and CCH participated in an extensive series of negotiations in which all parties were represented by technical staff and counsel who approved the terms of the settlement. Attorneys for Sierra Club participated in many of these settlement meetings, received and reviewed drafts of the settlement proposals that culminated in the Stipulated Order, and were able to communicate their positions to the parties throughout the negotiations. EPA also provided copies of drafts of the proposed settlement to Sierra Club attorneys when Sierra Club was not present at the negotiations with CCH. EPA carefully considered the views of Sierra Club throughout the negotiations.

12. The Stipulated Order will require construction of substantial wastewater infrastructure. CCH has informed EPA that it anticipates this work will cost approximately $300 million.

13. The Stipulated Order provides near-term and longer term remedial action to address the Beachwalk Pump Station and six critical force mains in CCH's collection system: the Beachwalk Force Main, the Ala Moana Force Main, the Hart Street Force Main, the Kaneohe-Kailua Force Main, the Waimalu Force Main, and the Kahala Force Main.

14. Most portions of wastewater collection systems are designed to transport wastewater by gravity. However, when wastewater reaches low points in the collection system, it needs to be pumped under pressure through force mains to a high point where it can again flow by gravity. Force mains are designed to convey wastewater being pumped under pressure.

15. When a force main fails or needs to be taken out of service for maintenance, alternate means must be found for storing or transporting the wastewater delivered to the pump station while the force main is being repaired. For smaller force mains, common strategies to address this problem include storing wastewater at the pump station, storing it in the upgradient sewer lines, or transporting it with tanker trucks. For large force mains, sufficient storage or

tanker transportation is generally not available either to handle wastewater flows during a force main failure or to allow the force main to be taken out of service for maintenance. Such force mains must, as practical matter, operate continuously. A failure of a large force main will generally result in a substantial spill of untreated sewage until the force main is repaired and returned to service unless a back-up force main is available to carry the pumped wastewater. In addition, only very limited maintenance can be performed on such force mains since they cannot be taken out of service for any significant length of time.

16. The March 2006 Beachwalk Force Main failure illustrates the problems that may result from the failure of a large force main. When the failure occurred, the Beachwalk Force Main was carrying well over 10 million gallons per day of untreated wastewater. That amount exceeded the wastewater volumes CCH could transport by tanker truck or store at the pump station or in the collection system. CCH was able to divert a small percentage of the flow that would normally go to the Beachwalk Pump Station and Beachwalk Force Main to another pump station at Fort DeRussy. Because CCH had no alternate means to transport the remaining wastewater, CCH discharged untreated wastewater to the Ala Wai Canal for four days while repairs were under way. As a result, CCH reported that it discharged 48.7 million gallons of untreated wastewater to the environment. This discharge resulted in economic disruption and significant environmental damage, and also put public health at risk by exposing the public to untreated sewage.

17. In determining the force mains that most urgently required remedial action, EPA considered the age of the force mains, the history of spills associated with each force main, and CCH's ability to minimize the risk of spills to the environment from each force main. This investigation led to the identification of six force mains that are particularly vulnerable to a spill like the March 2006 Beachwalk spill. For each of these force mains (identified above in Paragraph 13), CCH does not have effective back-up systems in place to manage wastewater in the event the force main failed. Each of these force mains carries too much wastewater to make storage or tanker transport a viable back-up strategy. In

4

addition, due to age and/or location, each of these force mains is particularly vulnerable to failure. With the partial exceptions of the Ala Moana Force Main and the Beachwalk Force Main, CCH has no back-up force mains in place to transport wastewater if any of these force mains fail.

18. The Ala Moana Force Main does have an old back-up force main that can be placed in service if the existing force main fails. This back-up force main successfully transported these flows during a failure in the existing Ala Moana Force Main on March 5, 2004. However, this back-up force main does not have sufficient capacity to handle peak wet weather flows for this portion of CCH's collection system.

19. After the March 2006 Beachwalk spill, CCH installed a temporary back-up force main to provide back-up in the event of another failure of the Beachwalk Force Main. While under construction, this back-up system effectively served to prevent a second major wastewater spill when the primary force main failed a second time. However, this temporary back-up force main is not a viable long-term solution for Beachwalk. The temporary back-up force main is located in the Ala Wai Canal and above ground in Ala Moana Park. This location not only interferes with the public's enjoyment of these resources, it also leaves the force main exposed and vulnerable to damage.

20. The Stipulated Order provides for a two-track process for minimizing the risks of uncontrolled wastewater discharges from these six force mains and the Beachwalk Pump Station. First, the Stipulated Order requires CCH to conduct condition assessments of each of the six force mains and the Beachwalk Pump Station. After completing the condition assessments, CCH is required to develop a follow-up action plan to ensure that appropriate work is done to keep the force main functioning properly. This work must be conducted under a schedule providing for expeditious completion of the needed work consistent with sound engineering practices. The Stipulated Order also provides fixed deadlines for the completion of all work required in the follow-up action plan. These final deadlines range from 2016 to 2018 because of the likelihood that some of the needed work can be performed only after new force mains are built and the

existing force mains can be taken out of service for maintenance. The condition assessments and follow-up action plans are subject to EPA's and DOH's review and approval.

21. In addition, the Stipulated Order requires CCH to put in place back-up force mains for four of the six force mains at issue: Beachwalk, Ala Moana, Hart Street, and Kaneohe-Kailua. As explained in more detail in Paragraphs 22 through 28 below, the specific schedules for ensuring that necessary back-up force mains are in place have been developed to reflect the particular circumstances associated with each force main.

22. For the Beachwalk Force Main, the Stipulated Order requires near-term work to ensure that the installation of the temporary back-up force main is complete. Stipulated Order at ¶8.a. CCH is then required to complete construction of a new Beachwalk Force Main by no later than December 31, 2012. Stipulated Order at ¶8.b. In addition, CCH is required to maintain its existing force main in good operating condition as a back-up force main unless CCH elects to construct a new back-up force main when it builds its new primary Beachwalk Force Main. Stipulated Order at ¶8.d.

23. For the Ala Moana Force Main, the Stipulated Order requires CCH to complete construction of a new force main by no later than December 31, 2014. Stipulated Order at ¶9.c. In addition, CCH is required to maintain its existing Ala Moana Force Main in good operating condition as a back-up force main unless CCH elects to construct a new back-up force main when it builds its new primary Ala Moana Force Main. Stipulated Order at ¶9.d.

24. For the Hart Street Force Main, CCH completed construction of a new primary force main in 2001. However, given its location underneath Honolulu Harbor, this force main remains vulnerable to failure as a result of activities in the harbor. Therefore, the Stipulated Order requires CCH to reconnect its old Hart Street Force Main as a back-up force main by no later than December 31, 2008, and to maintain the old Hart Street Force Main in good operating condition as a back-up force main. Stipulated Order at ¶10.a., b.

25. For the Kaneohe/Kailua Force Main, the Stipulated Order requires

6

CCH to complete construction of a new force main by no later than December 31, 2014. Stipulated Order at ¶11.b. In addition, CCH is required to maintain its existing force main in good operating condition as a back-up force main unless CCH elects to construct a new back-up force main when it builds its new primary Kaneohe/Kailua Force Main. Stipulated Order at ¶11.c.

26. The schedules set in the Stipulated Order reflect a compromise between ensuring prompt construction of necessary infrastructure and allowing CCH the time to engage in orderly planning, budgeting, and construction management for a substantial amount of complex and expensive infrastructure. For example, construction of the new Kaneohe/Kailua Force Main will involve either building a new force main along the same route as the existing force main, or finding a new route through the affected areas. While using the existing right-of-way may represent the simplest path for planning purposes, use of this route will present significant construction challenges and result in neighborhood disruption because the existing right-of-way runs through a number of densely populated areas and along narrow, heavily-used roadways. CCH, after conferring with the affected community, will first need to decide which route is preferable through the environmental review process, and then address the attendant construction challenges.

27. If CCH were to construct the new force mains at issue on an emergency basis, thereby forgoing the planning and environmental review process, it could expedite the schedule for these projects. EPA and DOH carefully considered whether the existing vulnerabilities of these force mains warranted taking these short cuts. EPA and DOH concluded that, given CCH's commitment to comprehensive condition assessments and follow-up action plans in the Stipulated Order, it was reasonable to allow for the planning and construction schedules set forth in the Stipulated Order.

28. For the Kahala and Waimalu Force Mains, the Stipulated Order requires completion of the condition assessments of these force mains before a conclusion must be reached concerning construction of a new force main and back-up force main. Stipulated Order at ¶¶12.a, 13.a. EPA and DOH recognize

7

that these force mains are sufficiently old for there to be legitimate concerns about the risk of failure. However, neither force main has caused a significant sewage spill to date. Moreover, neither force main has been the subject of a detailed technical evaluation of its condition. Therefore, EPA and DOH concluded that CCH should conduct a detailed technical evaluation process of these force mains before deciding whether the substantial expense of building new force mains in these areas is warranted. As with the other condition assessment and follow-up action plans, the condition assessments and follow-up action plans for Waimalu and Kahala are subject to EPA's and DOH's review and approval.

29. With regard to the other force mains in CCH's collection system, EPA and DOH do not have information to suggest that any of the remaining force mains require attention as urgently as the six force mains at issue in the Stipulated Order. For example, CCH recently constructed a new force main at Kamehameha. While CCH does not have a back-up force main in place for this force main, it does not appear to be as vulnerable to failure as the force mains at issue in the Stipulated Order. Similarly, CCH replaced the Kailua Heights Force Main in 1998. While CCH does not have a back-up force main in place for this force main, it does not appear to be as vulnerable to failure as the force mains at issue in the Stipulated Order. The Lualualei Force Main presents a more significant spill risk than Kamehameha or Kailua Heights, since it is approximately 20 years old. However, it is substantially smaller than most of the force mains at issue in the Stipulated Order, and is in a relatively unpopulated area.

30. EPA and DOH intend to reevaluate the remaining force mains in CCH's collection system, including those discussed in Paragraph 29, as part of the final resolution of this matter. However, in negotiating the Stipulated Order, EPA has prioritized the largest and most vulnerable force mains in CCH's system.

31. DOH issued an Administrative Order to CCH in April 2004, requiring CCH to conduct a more broad reaching assessment of its force mains. This Administrative Order will, among other things, assist EPA and DOH in evaluating other aspects of CCH's force mains that warrant remedial action as part of the final resolution of this matter.

8

32. CCH has already commenced work under the Stipulated Order despite the fact that the Stipulated Order has not yet been entered. For example, CCH has substantially completed work on the temporary back-up to the Beachwalk force main. In addition, EPA and DOH have met and conferred with CCH on condition assessments required by the Stipulated Order for the Beachwalk, Ala Moana #2, Waimalu, and Kahala force mains. CCH has already begun preliminary work on each of these condition assessments, and has completed much of the inspection of the Beachwalk force main.

33. In the Stipulated Order, the parties stated their intention to negotiate in good faith a comprehensive remedy addressing all compliance issues associated with CCH's wastewater system. Stipulated Order at 2. To begin this task, the parties have scheduled negotiations to commence on October 1, 2007, to deal with other compliance issues identified by the United States and the State.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 25th day of September, 2007, at San Francisco, California.

_____
JOANN COLA