# EXHIBIT I

CHRISTOPHER SPROUL
Environmental Advocates
5135 Anza Street
San Francisco, California  94121
Tel: (415) 533-3376,
Fax: (415) 358-5695
Email: csproul@enviroadvocates.com

PAUL ALSTON          1126-0
WILLIAM TAM          1887-0
BLAKE OSHIRO         7646-0
ALSTON HUNT FLOYD & ING
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i  96813
Tel: (808) 524-1800,
Fax: (808) 524-4591
Email: paltson@ahfi.com
       wtam@ahfi.com
       boshiro@ahfi.com

Attorneys for Intervenors
SIERRA CLUB, HAWAI'I CHAPTER,
HAWAI'I'S THOUSAND FRIENDS
and OUR CHILDREN'S EARTH FOUNDATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF HAWAI'I,<br><br>          Plaintiffs,<br><br>     and<br><br>SIERRA CLUB, HAWAI'I CHAPTER, HAWAI'I'S THOUSAND FRIENDS and OUR CHILDREN'S EARTH FOUNDATION,<br><br>          Intervenors,<br><br>     vs.<br><br>CITY & COUNTY OF HONOLULU,<br><br>          Defendant. | CIVIL NO. 07-00235 DAE KSC<br><br>**SIERRA CLUB, HAWAI'I CHAPTER, HAWAI'I'S THOUSAND FRIENDS AND OUR CHILDREN'S EARTH FOUNDATION'S MOTION TO DISMISS; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF CHRISTOPHER SPROUL; EXHIBITS A-O; CERTIFICATE OF SERVICE**<br><br>Judge:  Hon. David A. Ezra |

662725_1/7502-5

**PLAINTIFF-INTERVENORS SIERRA CLUB, HAWAI'I CHAPTER,
HAWAI'I'S THOUSAND FRIENDS AND OUR CHILDREN'S
EARTH FOUNDATION'S MOTION TO DISMISS**

PLAINTIFF-INTERVENORS SIERRA CLUB, HAWAI'I CHAPTER, HAWAI'I'S THOUSAND FRIENDS and OUR CHILDREN'S EARTH FOUNDATION (collectively "Citizens") by and through their undersigned counsel Move to Dismiss the Plaintiffs UNITED STATES OF AMERICA and STATE OF HAWAI'I's May 8, 2007 Complaint and subsequent orders in this matter pursuant to Rules 12(b)(1) and (6)of the Federal Rules of Civil Procedure ("FRCP").

This Court ruled in a related case, *Sierra Club, et al. v. City and County of Honolulu*, Civil No. 04-00463 DAE/BMK ("Sierra Club") that the 1995 Consent Decree in *United States, et al. v. City and County of Honolulu*, Civ. No. 94-00765 DAE-KSC ("*EPA I*") bars, as a matter of *res judicata,* new original Clean Water Act ("CWA") lawsuits for post-1994 sewage spills by the City and County of Honolulu ("CCH"). The present action is an original CWA action for CCH sewage spills post-1995.

/

/

/

/

/

/

/

This Motion is based on FRCP Rules 7, 9, and 12 and the pleadings and record in this case, the Declaration of Christopher Sproul, and the attached Exhibits A-O.

Dated:  Honolulu, Hawai'i, November 15, 2007.

    /s/ William M. Tam
CHRISTOPHER SPROUL
ENVIRONMENTAL ADVOCATES

PAUL ALSTON
WILLIAM TAM
BLAKE OSHIRO
ALSTON HUNT FLOYD & ING

Attorneys for Plaintiff-
Intervenors

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF HAWAI'I, | CIVIL NO. 07-00235 DAE KSC |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF MOTION** |
| and | |
| SIERRA CLUB, HAWAI'I CHAPTER, HAWAI'I'S THOUSAND FRIENDS and OUR CHILDREN'S EARTH FOUNDATION, | |
| Intervenors, | |
| vs. | |
| CITY & COUNTY OF HONOLULU, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION**

## I.    INTRODUCTION

The City and County of Honolulu ("CCH") owns and operates several wastewater treatment plants ("WWTP") and related collection systems that convey and treat domestic sanitary sewage on O'ahu, including the Sand Island, Honouliuli, Kailua, Wai'anae, and Kahuku WWTPs and appurtenant collection systems. Since at least the late 1980s, CCH repeatedly spilled raw sewage from its O'ahu sewage collection systems due to sewer line blockages (generally caused by root intrusion, build-up of grease, and accumulation of sediment and debris), pump station failures, collapsing sewer lines, and excessive "infiltration and inflow" ("I/I") into sewer lines (rising groundwater or storm

water runoff flowing into leaky sewer lines during rainy
weather).  Sproul Decl., ¶¶ 3, 11-17, Ex. L, M, N. The problems
are unresolved.

In 1995, this Court entered a Consent Decree ("1995 Consent
Decree") between the United State Environmental Protection Agency
("EPA") and CCH to address serious CCH sewage problems. *United
States, et al. v. City and County of Honolulu*, Civ. No. 94-00765
DAE-KSC ("*EPA I*").

In 2004, the Sierra Club, Hawai'i Chapter, Hawai'i's Thousand
Friends, and Our Children's Earth Foundation (collectively,
"Citizens") filed an original Clean Water Act ("CWA") citizen
suit to force CCH to take remedial actions for its failing sewage
system. *Sierra Club, et al. v. City and County of Honolulu*, Civil
No. 04-00463 DAE/BMK ("*2004 Sierra Club*").

On May 25, 2007, EPA and State of Hawaii Department of
Health ("DOH ")filed this original action over CCH's 48 million
gallon March 2006 Beachwalk sewer rupture and sewage spill in
Waikiki. *United States of America and State of Hawai'i v. City &
County of Honolulu,* Civil No. 07-00235 DAE/KSC ("EPA II").

On October 10, 2007, this Court entered a Stipulated Order
("2007 Stipulated Order") between the EPA, DOH, and CCH in this
case ("*EPA II*") addressing post-1995 sewage spill(s) by CCH.

The 2007 Stipulated Order contradicts this Court's September
2005 Order in the *2004 Sierra Club* case ("September 2005

Dismissal Order") dismissing the Citizens's First and Second

Claims against CCH for post-1999 sewage spills.

In its September 2005 Dismissal Order, the Court found that

the Citizens' sewage spill claims in *2004 Sierra Club* and the EPA

and DOH's sewage spill claims in an earlier-filed 1994 case, "are

substantially identical claims." *Declaration of Christopher*

*Sproul in Support of Motion for Reconsideration*, ("Sproul

Decl."), Ex. C at 16.[1]  The Court further held that the Citizens

stand in the government's shoes in bringing a Clean Water Act

("CWA") citizen suit and thus effectively were party to *EPA I* for

*res judicata* purposes.  *Id.* at 15-16.  The Court concluded that

because *EPA I* and the 1995 Consent Decree constituted prosecution

of future sewage spill claims, the 1995 Consent Decree created a

*res judicata* bar to the Citizens' new sewage spill claims.

The Court cannot rule in 2004 *Sierra Club* that *EPA I* and the

1995 Consent Decree create a *res judicata* bar on newly filed

claims for post-1995 sewage spills and simultaneously rule here

that *EPA I* and the 1995 Consent Decree create no such bar.  The

two orders are inconsistent.

Simple logic dictates the Court now do one of two things:

(1) set aside the September 2005 Dismissal Order (as urged by the

Citizen's concurrent Motion for Reconsideration in *2004 Sierra*

*Club*); or (2) dismiss this *EPA II* action as barred by *res*

---

[1]  The Citizens submitted this Sproul Declaration and
Exhibits A-O in their *2004 Sierra Club* Motion for Reconsideration
filed simultaneously with this Motion to Dismiss.

*judicata*.  The Citizens urge that the former is the proper

course.  If the Court agrees, the Citizens will withdraw this

Motion to Dismiss. Alternatively, the Court should dismiss *EPA II*

as barred by *res judicata*.[2]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    EPA AND DOH'S 1994 CASE, *EPA I*

On October 3, 1994, EPA and DOH filed *EPA I* against CCH

asserting claims for numerous CWA violations resulting from

ongoing spills of raw sewage spills from CCH's sewage collection

systems.  EPA and DOH's complaint alleged that CCH had committed

numerous sewage spills from 1987 to 1992.  Sproul Decl., Ex. A at

12, ¶ 46.  EPA and DOH simultaneously lodged a proposed consent

decree with CCH addressing CCH's violations alleged in the

agencies' complaint.  On May 15, 1995, the Court entered the

consent decree ("1995 Consent Decree).  Sproul Decl., Ex. B.  The

1995 Consent Decree included several programmatic and capital

improvement requirements designed to remedy CCH's sewage spill

problem.  The 1995 Consent Decree did not require CCH to end all

sewage spills, but instead required CCH only to "use its best

efforts to prevent, to the maximum extent reasonably possible,

---

[2] In seeking to dismiss this case, the Citizens do not
intend to waive any arguments that dismissal of the Citizens
First and Second Claims in *Sierra Club* on *res judicata* grounds
was improper.  If the Court declines to reconsider its September
2005 dismissal of these claims, the Citizens intend this issue to
be preserved for potential appeal.

Collection System Spills in terms of frequencies, duration and volume." Sproul Decl., Ex. B at 15, ¶ VII.A.1.

The 1995 Consent Decree expressly resolved *only* CCH's CWA sewage spill violations through the date the Consent Decree was lodged, i.e., October 3, 1994:

> CCH's complete performance of all obligations established pursuant to this Consent Decree, including payment of all penalties hereunder, shall be in full satisfaction of all civil claims of the United States and the State alleged in the complaint *through the date of lodging of this Consent Decree.*

Sproul Decl., Ex. B at 56, ¶ XVII.B (emphasis added).

The 1995 Consent Decree further expressly provided that the Decree did not limit or affect the rights of third parties not party to the Decree to proceed against CCH: "[t]his Consent Decree does not . . . limit the rights of third parties, not parties to this Consent Decree, against CCH." Sproul Decl., Ex. B at 56, ¶ XVII.G.

## B.    PRIOR DISMISSAL OF CITIZENS' SEWAGE SPILL CLAIMS

In 2004, nearly ten years after the 1995 Consent Decree was filed, CCH continued to have numerous and voluminous spills of sewage from its collection systems. Sproul Decl., ¶¶ 11-17. The Citizens concluded that the 1995 Consent Decree lacked all the relief necessary to abate this sewage spill problem. Moreover, it was not being diligently complied with nor enforced. *Id.*, ¶ 5. Believing that the 1995 Consent Decree was not the exclusive judicial remedy for any and all future CCH sewage spills, the

Citizens filed *Sierra Club* on July 29, 2004 as a separate CWA

citizen suit action alleging, *inter alia*, that CCH had repeatedly

violated the CWA by committing numerous sewage spills from its

collection systems between May 1999 and the present.  Plaintiffs'

Second Amended Complaint (First and Second Claims for Relief).

In September 2005, the court dismissed the Citizens' First

and Second Claims in this action.  Sproul Decl., Ex. C.  The

Court noted that all citizens must be deemed to be parties to an

EPA CWA enforcement action, thus potentially barred from filing

their own actions by the *res judicata* effect of an EPA action.

The Court further noted that "for *res judicata* to operate, there

must also be a substantial identity between the issues in

controversy in both [a citizen suit and a prior EPA action]."

*Id.* at 15-16.  The Court found that the Citizens' First and

Second Claims in *Sierra Club* for CCH sewage spill violations and

EPA and DOH's sewage spill claims in *EPA I* "are substantially

identical claims," thus warranting dismissal of the former on *res

judicata* grounds.  *Id.* at 16.

### C.  CCH'S CONTINUING SEWAGE SPILLS POST 1995

The 1995 Consent Decree failed to end CCH's sewage spill

violations.  In twelve years since the 1995 Consent Decree, CCH

has committed several hundred sewage spills all over O'ahu and

has regularly spilled sewage at rates exceeding the 1995 Consent

Decree's goals (as detailed in Citizens' companion Motion to

Reconsider in *2004 Sierra Club* case).  Sproul Decl., ¶¶ 11-18, Exs. L, M, N, O.

CCH spilled about 48 million gallons of raw sewage into the Ala Wai Canal from March 26-30, 2006 when its Beachwalk force main sewer line ruptured.  *Id.*, ¶ 12.

Despite this consistent pattern of on-going sewage spill violation by CCH, neither EPA nor DOH has ever returned to the Court to seek any orders to enforce the 1995 Consent Decree. *Id.*, ¶ 19.  Instead, EPA and DOH have brought new independent enforcement actions.

### D.    EPA AND DOH ADMINISTRATIVE ENFORCEMENT

In apparent recognition that the 1995 Consent Decree was inadequate by itself to curb CCH's sewage spill problem, EPA and DOH issued administrative orders to CCH in 2003 and 2004 requiring CCH to take additional actions to remedy the problem beyond those measures required by the 1995 Consent Decree (as discussed more fully in the *2004 Sierra Club* Motion for Reconsideration).  *See* June 30, 2003 EPA administrative order. Sproul Decl., Ex. G; April 15, 2004 DOH administrative order. *Id.*, Ex. H.

### E.    EPA II

On May 8, 2007, EPA and DOH filed this case seeking yet additional judicial relief to curb CCH's sewage spill violations. EPA and DOH's complaint in this case asserts a single CWA claim for injunctive relief against CCH for the Beachwalk spill.

Sproul Decl., Ex. D.  Concurrently with filing their complaint,
EPA and DOH lodged a Stipulated Order purporting to resolve their
one asserted claim. Ex. E.  The Court entered the Stipulated
Order on October 10, 2007.  *Id.*, Ex. F.

The Stipulated Order indicates that CCH, EPA, and DOH intend
to pursue additional negotiations and additional judicial relief
to address "all compliance issues associated with CCH's
wastewater system."  *Id.*, Ex. E at 2.  EPA, DOH, and CCH have all
further represented to the Court that they are currently pursuing
such negotiations with the intent of agreeing to additional
judicial relief requiring CCH to implement additional measures to
address deficiencies in its sewage collection systems.  *E.g.*,
*id.*, Ex. I at 2-3, 8-9, ¶¶ 6, 8, 10, 30-31, 33; Ex. J at 4, ¶ 17;
Ex. K at 3-4, 7-9, ¶¶ 14, 19, 30, 37.

## III. ARGUMENT

### A.   IF THE CITIZENS ARE BARRED BY RES JUDICATA FROM FILING NEW SEWAGE SPILL CLAIMS, EPA MUST BE SIMILARLY BARRED.

The Court can *only* have properly dismissed the Citizens'
sewage spill claims in *Sierra Club* on a finding that *EPA I* and
the 1995 Consent Decree creates a *res judicata* bar to the
Citizens' claims if *EPA I* and the 1995 Consent Decree creates a
similar *res judicata* bar on EPA and DOH's new sewage spill claim
in this case.  The Court dismissed the Citizens sewage spill
claims in *Sierra Club* on a finding that the Citizens were in
privity with EPA in the latter's prosecution of *EPA I*.  Privies,

however, *can face only the same res judicata bar faced by the original litigant with whom they are in* privity. *Res judicata* only bars a subsequent lawsuit by a privy derivatively, on the rationale that a privy is so closely aligned with an original litigant as to be properly given the same legal rights and bars *that the original litigant has.*[3]

Thus, if the Court continues to hold that *EPA I* and the 1995 Consent Decree creates a *res judicata* bar to the Citizens bringing claims for CCH sewage spills committed after entry of the Consent Decree, then the Court must, by simple logic, find that *EPA I* and the 1995 Consent Decree creates a similar *res judicata* bar to the newly filed EPA and DOH claim against CCH for the Beachwalk sewage spill in this case. The Court must then dismiss this claim and this action.

---

[3] *See Southwest Voter Registration Educ. Project v. Shelley,* 344 F.3d 882, 903 (9th Cir. 2003), *vacated on other grounds,* 344 F.3d 913; ); *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 688 n. 9 (7th Cir. 1986) ("[Privity] designates . . . a person so identified in interest with a party to former litigation that he represents *precisely the same legal right in respect to the subject matter involved.*") (emphasis added); *Petersen v. Fee Intern., Ltd.,* 435 F. Supp. 938, 942-43 (D. Okl. 1975) ("Privity involves a person so identified in interest with another *as to represent the same legal rights* and who is therefore bound by [a prior] judgment adjudging such rights.") (emphasis added); Black's Law Dictionary (defining privity as "such an identification of interest of one person with another *as to represent the same legal right.*") (emphasis added).

**B.    EPA IS WRONG THAT THE CITIZENS COULD FACE A RES
JUDICATA BAR WHEN EPA DOES NOT.**

In its reply to the Citizens' opposition to entry of the
Stipulated Order, EPA contended that the Court could properly
rule in *Sierra Club* that the Citizens are barred from filing new
claims for CCH sewage spills in a new action while at the same
time ruling that EPA faces no such bar.  United States Reply to
Sierra Club's Opposition to Entry of Stipulated Order
(September 26, 2007) ("EPA Reply") at 21-22.  In support, EPA
advances the *non sequiturs* that it was not a party to *Sierra
Club*, is not bound by the decision in that case and is not bound
by citizen suit enforcement of the CWA generally.  While the
truth of these propositions is questionable,[4] they are presently
irrelevant.  Neither the Citizens nor CCH are arguing that the
citizens prosecution of *Sierra Club* or the Court's September 2005
Dismissal Order create a *res judicata* bar to EPA's claim in this
case.  If there is a *res judicata* bar on EPA's claim in this
case, *this would be due to EPA's prosecution of EPA I which*

---

[4] In *Electronic Controls Design*, the Ninth Circuit observed
in *dicta* that EPA would not be bound by a CWA citizen suit
consent decree and could subsequently file its own action.  909
F.2d 1350, 1356 n. 8 (9th Cir. 1990).  In a case decided one
month later, however, the Ninth Circuit indicated that private
citizen enforcement under the CWA *might* bind EPA for *res judicata*
purposes.  *United States v. ITT Rayonier, Inc.*, 627 F.2d 996,
1003 (9th Cir. 1980).  In holding that EPA was in privity with a
state regulatory agency in the latter's prior judicial action for
collateral estoppel/*res judicata* purposes, the Court further
noted:  "In some contexts, the relationship between governmental
authorities as public enforcers of ordinances *and private parties
suing for enforcement as private attorneys general is close
enough to preclude relitigation.*"  *Id.* (emphasis added).

*culminated in the 1995 Consent Decree*-a case to which EPA was most certainly a party and thus bound by.  None of the cases cited by the EPA Reply support that EPA cannot face a *res judicata* bar created *by its own lawsuit.  See Sierra Club, Inc. v. Electronic Controls Design, Inc.*, 909 F.2d 1350 (9th Cir. 1990); *U.S. v. East Baton Rouge Parish School Bd.*, 594 F.2d 56 (5th Cir. 1979); *Antrim Min., Inc. v. Davis*, 775 F. Supp. 165 (M.D. Pa. 1991).  Indeed, the Ninth Circuit has held that prior judicial actions even by state environmental protection agencies *can* serve as a *res judicata bar* to a subsequent EPA lawsuit. *Rayonier*, 627 F.2d at 1003.  Following *Rayonier, EPA I*, a judicial action brought both by EPA and a state environmental protection agency (DOH), *could* bar EPA's claim in this case.

EPA further argues that it faces no *res judicata* bar to its present claim because the 1995 Consent Decree expressly reserved all remedies available to EPA and DOH for violation of the CWA not specifically pled in EPA's 1994 complaint in *EPA I*.  EPA Reply at 17.  The Citizens agree that this provision, along with the 1995 Consent Decree's express recitation that it resolved EPA and DOH's claims for spills alleged in the complaint only "through the date of lodging of this Consent Decree,"[5] should properly be interpreted to signify that the 1995 Consent Decree created no *res judicata* bar for claims for CCH sewage spills occurring after the October 3, 1994 date that EPA lodged the

---

[5] Sproul Decl., Ex. B at 56, ¶ XVII.B.

Decree.  As the Citizens argue in their simultaneously filed
Motion for Reconsideration, the scope of the *res judicata* bar
created by an EPA consent decree is determined by the consent
decree's own recitation of what claims it purports to resolve.
*Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 473 (6th Cir. 2004)
("The touchstone of *res judicata* effect, however, is the consent
decree itself. . . ."); *see Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322, 328 (1955).  Thus, for example, if a consent decree
recites that it only resolves claims "'through the date of entry'
of the decree," the consent decree will only create a subsequent
*res judicata* bar *for such claims.* 390 F.3d at 473; *see*
*Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*,
652 F. Supp. 620, 628-29 (D. Md. 1987) (allowing citizen suit to
proceed for on-going CWA violations occurring after entry of EPA
consent decree).

    Where EPA falters, however, is in arguing that these
provisions of the 1995 Consent Decree could properly be read as
precluding a *res judicata* bar for EPA but not also precluding
such a bar for the Citizens.  The proper reading of these clauses
following the *Ellis* rule discussed above, is that the 1995
Consent Decree creates *no res judicata bar whatsoever to new*
*claims for CCH sewage spill violations post October 1994, for*
*either EPA or any of EPA's privies.*  As EPA's privies, the
Citizens can only face a *res judicata* bar to filing a new action
and asserting new claims for sewage spills if EPA does also.

662704-1 / 7502-5                    -12-

If anything, the 1995 Consent Decree's plain language is even stronger that the Citizens face no *res judicata* bar to post-1994 sewage spill claims than does EPA. As noted, the Decree expressly provided that the Decree did not limit or affect the rights of third parties not party to the Decree to proceed against CCH: "[t]his Consent Decree does not . . . limit the rights of third parties, not parties to this Consent Decree, against CCH. Sproul Decl., Ex. B at 56, ¶ XVII.G.

Finally, the EPA Reply, in a footnote, argues that several cases have held that EPA enforcement actions culminating in consent decrees can create *res judicata* bars to citizen suits. EPA Reply at 22 n.10. Whether this is true, however, is also irrelevant to the issue at hand: whether EPA can escape having *its own case* creating a *res judicata* to a new EPA action while a citizen privy is barred. None of the cases cited by EPA support that an EPA consent decree can be deemed to create no *res judicata* bar on EPA while simultaneously imposing such a bar on an EPA privy, a result contradicting common law principles of *res judicata* and privity.

In sum, the EPA Reply is incorrect that the Court can hold that EPA faces no *res judicata* bar in this case, but the Citizens do in *Sierra Club*. The only way that EPA can escape dismissal of this case is if the Court finds erroneous its *Sierra Club* holding that *EPA I* and the 1995 Consent Decree create a *res judicata* bar

to new actions and new claims for CCH sewage spills occurring after the Decree's entry.

## IV.  CONCLUSION

As urged in their simultaneously filed Motion for Reconsideration in *Sierra Club*, the Court should adhere to the logic of its recent entry of the Stipulated Order in this case, which effectively holds that a new action asserting new claims for CCH sewage spills post-1995 are not barred by any *res judicata* effect of the 1995 Consent Decree.  The Court should reconsider its September 2005 dismissal of the Citizens' First and Second Claims in *Sierra Club* for CCH's sewage spills on *res judicata* grounds and reinstate these claims.  If the Court reinstates these claims, the Court should deem this Motion to Dismiss withdrawn.

Alternatively, if the Court continues to hold that *EPA I* and the 1995 Consent Decree create a *res judicata* bar to filing a new action asserting claims for post-1995 sewage spills, thus precluding the Citizens sewage spill claims in *Sierra Club*, the Court should dismiss EPA and DOH's claim in this case.

Dated: Honolulu, Hawaii, November 15, 2007.

                          /s/ William M. Tam
                         CHRISTOPHER SPROUL
                         ENVIRONMENTAL ADVOCATES

                         PAUL ALSTON
                         WILLIAM TAM
                         BLAKE OSHIRO
                         ALSTON HUNT FLOYD & ING
                         Attorneys for Intervenors