CHRISTOPHER SPROUL
Environmental Advocates
5135 Anza Street
San Francisco, California  94121
Tel: (415) 533-3376,
Fax: (415) 358-5695
Email: csproul@enviroadvocates.com

PAUL ALSTON            1126-0
WILLIAM TAM            1887-0
BLAKE OSHIRO           7646-0
ALSTON HUNT FLOYD & ING
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i  96813
Tel: (808) 524-1800,
Fax: (808) 524-4591
Email: paltson@ahfi.com
       wtam@ahfi.com
       boshiro@ahfi.com

Attorneys for Plaintiffs
SIERRA CLUB, HAWAI'I CHAPTER,
HAWAI'I'S THOUSAND FRIENDS
and OUR CHILDREN'S EARTH FOUNDATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER;<br>HAWAI'I'S THOUSAND FRIENDS; and<br>OUR CHILDREN'S EARTH FOUNDATION,<br><br>       Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU and<br>FRANK DOYLE, DIRECTOR OF THE<br>DEPARTMENT OF ENVIRONMENTAL<br>SERVICES, in his official<br>capacity,<br><br>      Defendants. | Civil No. 04-00463 DAE-BMK<br><br>**PLAINTIFFS' REPLY MEMORANDUM<br>IN SUPPORT OF THEIR MOTION<br>FOR RECONSIDERATION OF ORDER<br>FILED SEPTEMBER 30, 2005<br>DISMISSING PLAINTIFFS' FIRST<br>AND SECOND CLAIMS;<br>CERTIFICATE OF WORD COUNT;<br>CERTIFICATE OF SERVICE**<br><br>Hearing:  February 25, 2008<br>Time:     9:45 am<br>Judge:    David Alan Ezra |

669951-2 / 7502-3

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 2

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    ENTRY OF THE 2007 STIPULATED ORDER CREATES
            GROUNDS FOR RECONSIDERATION . . . . . . . . . . . . 3

      B.    ENTRY OF THE STIPULATED ORDER REPRESENTS AN
            IMPLICIT FINDING THAT RES JUDICATA DOES NOT BAR
            A NEW ACTION FOR CCH'S POST-1995 SEWAGE SPILLS . . . 5

            1.    THE 1995 CONSENT DECREE DID NOT PROSECUTE
                  POST-1995 SEWAGE SPILLS FOR RES JUDICATA
                  PURPOSES . . . . . . . . . . . . . . . . . . . 7

            2.    A NEW CASE WITH ATTENDANT NEW REMEDIES
                  CANNOT DE DEEMED ENFORCEMENT OF THE
                  1995 CONSENT DECREE . . . . . . . . . . . . . . 9

            3.    ASSUMING ARGUENDO THAT THE 1995 CONSENT
                  DECREE PROSECUTES POST-1995 CCH SEWAGE
                  SPILLS, ENTRY OF THE STIPULATED ORDER
                  SHOWS THAT THE CITIZENS WERE NOT IN
                  PRIVITY WITH EPA AND DOH IN THEIR
                  PROSECUTION OF POST-1995 SEWAGE SPILLS . . . . 10

            4.    THERE IS NO CWA § 505(B)(1)(B) DILIGENT
                  PROSECUTION BAR TO THE CITIZENS' FIRST
                  AND SECOND CLAIMS . . . . . . . . . . . . . . 14

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alaska Sport Fishing Associate v. Exxon Corp.,*
34 F.3d 769 (9th Cir. 1994) ................................. 11

*Atlantic States Legal Foundation, Inc. v.
Eastman Kodak Co.,*
933 F.2d 124 (2d Cir. 1991) ............................. 11, 12

*City of Los Angeles, Harbor Division v.
Santa Monica Baykeeper,*
254 F.3d 882 (9th Cir. 2001) ................................ 4

*Friends of Milwaukee's Rivers & Lake Michigan
Federation v. Milwaukee Metropolitan Sewerage District,*
382 F.3d 743 (7th Cir. 2004), *cert. denied,*
544 U.S. 913 (2005), *dismissed on other grounds,*
2007 U.S. Dist. LEXIS 91909 (E.D. Wis. Dec. 14, 2007) .. 11, 12,
15

*International Technologies Consultants, Inc. v.
Pilkington PLC,*
137 F.3d 1382 (9th Cir. 1998) ............................... 8

*Knee Deep Cattle Company, Inc. v.
Bindana Investment Co. Ltd.,*
94 F.3d 514 (9th Cir. 1996) ............................... 15

*Kona Enterprises, Inc. v. Estate of Bishop,*
229 F.3d 877 (9th Cir. 2000) ............................. 3, 4

*Lawlor v. National Screen Service,*
349 U.S. 322 (1955) ........................................ 8

*Mattel, Inc. v. Realtoy International Ltd.,*
2002 U.S. App. LEXIS 15925 (9th Cir. 2002) ................. 8

*National Resource Defense Council v. EPA,*
437 F. Supp. 2d 1137 (C.D. Cal. 2006) ...................... 8

*New York Coastal Fishermen's Association v.
New York City Department of Sanitation,*
772 F. Supp. 162 (S.D.N.Y. 1991) ......................... 12

*Nordhorn v. Ladish Co.,*
9 F.3d 1402 (9th Cir. 1993) ................................. 7

*Owens v. Kaiser Foundation Health Plan, Inc.,*
244 F.3d 708 (9th Cir. 2001) ........................... 7, 10

*Pedrina v. Chun,*
97 F.3d 1296 (9th Cir. 1996) ............................. 10

*Petersen v. Fee Intern., Ltd.,*
435 F. Supp. 938 (D. Okl. 1975) .......................... 6

*Secretary of Labor v. Fitzsimmons,*
805 F.2d 682 (7th Cir. 1986) .............................. 5

*Sierra Club v. Chevron,*
834 F.2d 1517 (9th Cir. 1987) ............................ 15

*Southwest Voter Registration Educ. Project v. Shelley,*
344 F.3d 882, 903 (9th Cir. 2003),
*vacated on other grounds,* 344 F.3d 913 ...................... 5

*United States v. ITT Rayonier, Inc.,*
627 F.2d 996 (9th Cir 1980) .............................. 5

*U. S. v. Sioux Nation of Indians,*
448 U.S. 371 (1980) ....................................... 6

*William Frilling v. Village of Anna,*
924 F. Supp. 821 (S.D. Oh.1996) .......................... 12

### STATE CASES

*St. Bernard Citizens for Environmental Quality, Inc.*
*v. Chalmette Refining, L.L.C.,*
No. 04-0398, 2007 WL 2323387 (E.D. La. Aug. 10, 2007) ....... 11

### DOCKETED CASES

*United States, et al. v. City and County of Honolulu,*
Civ. No. 94-00765 (EPA I) ................................ 2, 3,
                                                            5, 9

*United States, et al. v. City and County of Honolulu,*
Civ. No. 07-00235 (EPA II) ............................... 3, 4, 5,
                                                            6, 9, 12,
                                                            14, 15

**FEDERAL STATUTES**

CWA § 505, 33 U.S.C. § 1365 ................................... 2

CWA § 505(b)(1)(B) ................................... 14, 15

**FEDERAL RULES**

Federal Rules of Civil Procedures
     Rule 54(a) ............................................ 4
     Rule 60.1 ............................................ 3

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR RECONSIDERATION OF ORDER FILED SEPTEMBER 30, 2005
DISMISSING PLAINTIFFS' FIRST AND SECOND CLAIMS

I.    INTRODUCTION

Plaintiffs' Sierra Club, Hawai'i Chapter, Hawai'i's Thousand Friends, and Our Children's Earth Foundation (collectively, "Citizens") brought this 2004 Clean Water Act ("CWA") citizen suit (1) to address serious deficiencies with the City and County of Honolulu's ("CCH") sewage collection system and waste water treatment plants ("WWTP"); and (2) to ensure fast and effective relief from the attendant pollution for the citizens of O'ahu.  The Citizens seek no private gain.[1]

This Court's September 30, 2005 Order ("September 2005 Dismissal Order") in this case dismissed the Citizens' First and Second Claims against CCH for sewage spill violations on the grounds that the 1995 Consent Decree ("1995 Consent Decree") entered by the Court in the U.S. Environmental Protection Agency ("EPA") and State of Hawai'i's Department of Health ("DOH") action, *United States, et al. v. City and County of Honolulu*, Civ. No. 94-00765 DAE-KSC ("*EPA I*") is a *res judicata* bar to any new *post*-1995 sewage spill claims during the period of the Consent Decree (through 2019).

Three years after the Citizens filed their 2004 action and two years after the September 2005 Dismissal Order, EPA and

_____

[1]    CWA citizen suit provisions do not provide for any money damages to the Citizens.  *See* CWA § 505, 33 U.S.C. § 1365.

DOH filed a new 2007 action against CCH to address ongoing problems with CCH's sewage collection system, *United States, et al.* v. *City and County of Honolulu*, Civ. No. 07-00235 DAE-KSC ("*EPA II*"). *EPA II* asserted *only* one claim, namely, that CCH violated the CWA when 48 million gallons of raw sewage spilled into the Ala Wai Canal in March 2006 when CCH's Beachwalk force main ruptured. This Court entered a 2007 Stipulated Order ("Stipulated Order") resolving EPA and DOH's *EPA II* claims.

The Stipulated Order, by all accounts, was only meant as an interim settlement for the larger, ongoing universe of problems with CCH's collection system. By approving EPA and DOH prosecution of an entirely new sewage spill case, this Court's entry of the Stipulated Order created a serious inconsistency with its September 2005 Dismissal Order and the central determination that the 1995 Consent Decree in *EPA I* prosecutes and resolves **all** CCH sewage spills through 2019.

Accordingly, this Court should reconsider and set aside the September 2005 Dismissal Order in this case.

## II.   ARGUMENT

### A.   ENTRY OF THE 2007 STIPULATED ORDER CREATES GROUNDS FOR RECONSIDERATION

There must be new evidence, clear error, an intervening change in the controlling law, or other highly unusual circumstances for a Court to grant a motion for reconsideration, particularly one that has not been filed within the ten day period provided for by Local Rule 60.1. *Kona Enterprises, Inc.*

*v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Whether viewed as a change in law, change in facts, or simply an error, the entry of the Stipulated Order should be seen as a significant new event that created a serious inconsistency with dismissal of the Citizens' First and Second Claims on *res judicata* grounds.

The entry of the Stipulated Order changed the rights and the responsibilities of CCH, EPA, and DOH, and thereby represents a change of law and fact that warrants reconsideration under Fed. R. Civ. Proc. 54(a). Ten days after the Court entered the September 2005 Dismissal Order, the Citizens could not have known that EPA and DOH would file *EPA II* (2007) and take the position that the 1995 Consent Decree does not create a *res judicata* bar to filing a new, separate action asserting entirely new claims for CCH sewage spills. The Citizens could not have known that the Court would effectively sanction this view by granting EPA and DOH relief in this new action. Accordingly, the Citizens have justifiable reason for only seeking reconsideration now, after entry of the Stipulated Order, to reconcile the inconsistency between that order and the Court's September 2005 Dismissal Order. *See, e.g., City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001) (district courts always retain common law authority to rescind an interlocutory order over which they have jurisdiction to address errors or other circumstances warranting reconsideration).

B.    **ENTRY OF THE STIPULATED ORDER REPRESENTS AN IMPLICIT FINDING THAT RES JUDICATA DOES NOT BAR A NEW ACTION FOR CCH'S POST-1995 SEWAGE SPILLS**

The Court's entry of the Stipulated Order reflects an implicit holding that the 1995 Consent Decree does not create a *res judicata* bar to a new action against CCH for post-1995 sewage spills.    EPA and DOH, just like the Citizens, are barred by *res judicata* from bringing a second action asserting the *same* claims that EPA and DOH already prosecuted in the 1994 action, but not later spills.    *United States v. ITT Rayonier, Inc.*, 627 F.2d 996,1002 (9th Cir 1980).    If the 1995 *EPA I* Consent Decree represented prosecution of all post-1995 Consent Decree sewage spills, then EPA and DOH are also barred by *res judicata* from bringing their new *EPA II* 2007 complaint for CCH's March 2006 sewage spill violation (a non-sensical proposition).    The Court's approval of EPA and DOH's 2007 *EPA II* action (reflected in the Court's entry of the Stipulated Order) implicitly holds the opposite.    The 1995 Consent Decree creates no *res judicata* bar to EPA and DOH bar to filing a new action against CCH for post-1995 sewage spills.    If EPA and DOH are not so barred, then the Citizens cannot be either.    The only *res judicata* bar the Citizens could face in bringing suit against CCH for sewage spills would be as EPA and DOH's privies, thus subject to *the same bar as EPA and DOH*.    *See Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 882, 903 (9th Cir. 2003), *vacated on other grounds*, 344 F.3d 913; *Secretary of Labor v. Fitzsimmons*,

805 F.2d 682, 688 n. 9 (7th Cir. 1986) ("[Privity] designates . .

. a person so identified in interest with a party to former

litigation that he represents *precisely the same legal right in*

*respect to the subject matter involved.*") (emphasis added);

*Petersen v. Fee Intern., Ltd.*, 435 F. Supp. 938, 942-43 (D. Okl.

1975) ("Privity involves a person so identified in interest with

another *as to represent the same legal rights* and who is

therefore bound by [a prior] judgment adjudging such rights.")

(emphasis added); Black's Law Dictionary (defining privity as

"such an identification of interest of one person with another *as*

*to represent the same legal right.*") (emphasis added).

　　　　CCH's argument that *res judicata* is an affirmative

defense that they did not raise during the filing of *EPA II* and

the lodging of the Stipulated Order does not change this logic.

CCH Opposition Motion ("CCH Opp") at 3, 22.   While *res judicata*

is a defense which can be waived, once a court is on notice that

it has previously decided the issue presented, the court may

consider *res judicata sua sponte.   U. S. v. Sioux Nation of*

*Indians*, 448 U.S. 371, 432-33 (1980).   *Res judicata* not only

vindicates a defendant's interest in avoiding the burdens of

twice defending a suit; res judicata also aims to prevent waste

of judicial resources.   A court may dismiss a case on *res*

*judicata* grounds even if a defendant does not assert this

defense.   *Id.*   The Citizens pointed out to the Court (in comments

prior to entry of the Stipulated Order) that the 2007 *EPA II*

case would necessarily be an improper and duplicative lawsuit under the logic of the September 2005 Dismissal Order. *Sierra Club et al. Opposition to Entry of EPA Stipulated Order,* Civil No. 07-00235 DAE/KSC at 33-34.

Given that the Court could have, but did not, decline to enter the 2007 Stipulated Order on *res judicata* grounds, the Court's entry of the Stipulated Order is properly seen as an implicit reversal of the September 2005 Dismissal Order's reasoning and instead, a holding that the 1995 Consent Decree does not create a *res judicata* bar to filing post-1995 CCH sewage spill actions.

> 1.    THE 1995 CONSENT DECREE DID NOT PROSECUTE POST-1995 SEWAGE SPILLS FOR RES JUDICATA PURPOSES

The Ninth Circuit identifies three elements to *res judicata*: (1) an identity of claims; (2) a final judgment on the merits; and (3) the same party or a privy to the party has brought the claims. *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001). The Ninth Circuit applies a four prong test to determine if there is an identity of claims for *res judicata* purposes:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Nordhorn v. Ladish Co.,* 9 F.3d 1402, 1405 (9th Cir. 1993).

Regarding the "transactional nucleus" prong, the
Supreme Court has instructed that "a judgment . . . 'cannot be
given the effect of extinguishing claims which did not even then
exist and which could not possibly have been sued upon in the
previous case.'"  *Lawlor v. National Screen Service*, 349 U.S.
322, 328 (1955).  In *Lawlor*, the Supreme Court held that a prior
lawsuit *cannot possibly preclude* a later lawsuit when the second
suit is based on actions that occurred *after the judgment* in the
prior action, even if the cases are closely related.  349 U.S. at
328.  The Ninth Circuit likewise indicates that when a lawsuit is
based on conduct that occurs *after* the entry of an earlier
judgment or that did not arise out of the same facts as those
brought in a previous case, *res judicata* does not bar subsequent
litigation.    *Int'l Techs. Consultants, Inc. v. Pilkington PLC*,
137 F.3d 1382, 1387 (9th Cir. 1998), *see also Mattel, Inc. v.
Realtoy Int'l Ltd.*, 2002 U.S. App. LEXIS 15925 (9th Cir. 2002).
"Two suits arise from the same transaction or series of
transactions when they are 'related to the same set of facts' and
'could conveniently be tried together.'"  *Nat'l Res. Def. Council
v. EPA*, 437 F. Supp. 2d 1137, 1154 (C.D. Cal. 2006).  In
considering if an earlier suit involved the same "nucleus of
facts," the scope of the earlier action should be construed
narrowly.  *Id.* at 1154-55.

Sewage spills that occurred after the entry of the 1995
Consent Decree *can not* be characterized as "arising out of the

same transactional nucleus of facts" as pre-1994 CCH spills--the only sewage spills that the 1995 Consent Decree specifically acknowledges EPA and DOH were prosecuting.  Any spills that occurred after *EPA I* happened at different times, places, and for different, albeit similar, causes.  EPA and DOH could not possibly have brought *EPA II*, which addressed the enormous 48 million gallon spill from the Beachwalk force main, until March 2006 when that event occurred.  Thus, neither EPA, DOH, nor the Citizens can be barred from bring enforcement actions for CCH's post-1995 Consent Decree sewage spills.

> 2.   **A NEW CASE WITH ATTENDANT NEW REMEDIES CANNOT DE DEEMED ENFORCEMENT OF THE 1995 CONSENT DECREE**

CCH argues nonsensically that EPA and DOH were merely enforcing the 1995 Consent Decree when they filed *EPA* II in 2007 (12 years later) and are thus not subject to a *res judicata* bar-- even though the Citizens' First and Second Claims are barred. CCH Opp. at 3-4, 31-32.  EPA and DOH obviously could have sought to enforce the 1995 Consent Decree by bringing a motion in *EPA I* to enforce, alter, or amend the 1995 Consent Decree without potentially running afoul of *res judicata*. They did not.  Such a motion would not have been a new action, one of the necessary elements of *res judicata*.  By filing a completely new action and securing what amounts to a new consent decree in the form of the Stipulated Order, EPA and DOH obviously did not move in *EPA I* to enforce the 1995 Consent Decree.  If bringing a second action to

obtain relief won in a first case is only "prosecuting" the first case (as CCH argues), there is little if anything left of the *res judicata* doctrine barring multiple lawsuits. Simply put, by filing a new action, EPA is prosecuting new and separate claims, not enforcing its existing claims under the 1995 Consent Decree. A second action is only permissible if there is no *res judicata* bar to bringing new actions for post-1995 CCH sewage spills.

> 3.    ASSUMING *ARGUENDO* THAT THE 1995 CONSENT DECREE PROSECUTES POST-1995 CCH SEWAGE SPILLS, ENTRY OF THE STIPULATED ORDER SHOWS THAT THE CITIZENS WERE NOT IN PRIVITY WITH EPA AND DOH IN THEIR PROSECUTION OF POST-1995 SEWAGE SPILLS

Assuming *arguendo* that the 1995 Consent Decree prosecutes post-1995 CCH sewage spills, entry of the Stipulated Order shows that the Citizens were not in privity with EPA and DOH in their prosecution of post-1995 sewage spills. As noted above, a plaintiff filing a second action who was not also party to a first action can only face a *res judicata* bar if that plaintiff is in privity with the plaintiff who brought the first action. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d at 713. It is the well-established common law rule that:

> For res judicata purposes, privity will be found only where interests of a nonparty were adequately represented in an earlier action and the previous litigation afforded proper protection to the rights of the person sought to be bound.

*Pedrina v. Chun*, 97 F.3d 1296, 1302 (9th Cir. 1996) (internal citations omitted).

While *Alaska Sport Fishing* holds that citizens are generally found to be in privity with EPA in the latter's prosecution of CWA violations, the case **does not hold** that traditional common law analysis is abandoned.  The court still must determine whether a judgment or consent decree obtained by EPA adequately represented the citizens' rights *before* such a consent decree or judgment bars citizens' claims in their own suit. *Alaska Sport Fishing Assoc. v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994).

The majority approach reflected by decisions in the Seventh Circuit, the Second Circuit, and several district courts is clear: an EPA judgment or consent decree only provides adequate representation of citizens' rights for privity purposes if the judgment or consent decree constitutes "diligent prosecution" of the CWA violations in issue. *Friends of Milwaukee's Rivers & Lake Michigan Fed'n v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 759-760, 764 (7th Cir. 2004), *cert. denied*, 544 U.S. 913 (2005), *dismissed on other grounds*, 2007 U.S. Dist. LEXIS 91909 (E.D. Wis. Dec. 14, 2007); *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir. 1991); *St. Bernard Citizens for Environmental Quality, Inc. v. Chalmette Refining, L.L.C.*, No. 04-0398, 2007 WL 2323387, at *13-*14 (E.D. La. Aug. 10, 2007).  Moreover, an EPA CWA judgment or consent decree is only "diligent prosecution" if it is capable of bringing the defendant into eventual full

compliance with the CWA. *Friends of Milwaukee's Rivers*, 382 F.3d at 759-760, 764.(agency diligent prosecution exists only "if the judicial action is 'capable of requiring compliance' with the [Clean Water] Act and is 'calculated to do so. . . .Compliance means an end to violations, not merely a reduction in the number or size of them."); *Atlantic States Legal Foundation*, 933 F.2d at 127 (2nd Cir. 1991) (citizen suit may proceed if there "is a realistic prospect that the violations alleged in Atlantic State [the citizen's] complaint will continue notwithstanding the settlement"); *William Frilling v. Village of Anna*, 924 F. Supp. 821 (S.D. Oh.1996); *New York Coastal Fishermen's Association v. New York City Department of Sanitation*, 772 F. Supp. 162 (S.D.N.Y. 1991).

By its own accounts, CCH continues to spill sewage at a rate of a spill at least every other day in the years since the 1995 Consent Decree was entered. CCH Opp at 7. However, rather than moving to enforce the 1995 Consent Decree, EPA and DOH brought a new, separate case against CCH. EPA and DOH have thus informed the Court that the 1995 Consent Decree is not adequate to resolve CCH's post-1995 sewage spill problems. Furthermore, this Court, by entering the Stipulated Order in *EPA II*, agreed that further judicial relief beyond the 1995 Consent Decree is fair, appropriate and in the public interest to solve sewage spill problems not resolved by the 1995 Consent Decree.

The 1995 Consent Decree was intended only to improve CCH's massive and persistent sewage spill problem, not to bring CCH into full compliance with the CWA by eliminating CCH's spills altogether.  The 1995 Consent Decree provided only that CCH was to "use its best efforts to prevent, to the maximum extent reasonably feasible, Collection System [sewage] spills," implement a SRAP "aimed at reducing the number and volume of spills from its Collection System to the maximum extent practicable," and implement a Sewer I/I Plan designed "to prevent and/*or reduce the frequency and volume* of dry weather and wet weather spills from its Collection System and wet weather bypasses at Sewer Pump Stations and WWTPs."  1995 Consent Decree at 15, 16-18, 23, ¶¶ V.II.A.1, 4; VII.E.1 (emphasis added).

Accordingly, EPA insisted (and all parties agreed) that in entering into the 1995 Consent Decree, "the United States does not...warrant or aver in any manner that compliance with this Decree will result in compliance with" the CWA or CCH's NPDES permits.  *Id.* at 57, ¶ XVIII.  The Decree also expressly provided that it only resolved EPA and DOH's claims against CCH **through October 3, 1994**, the date that the proposed Decree was lodged with the Court.  *Id.* at 55-56, ¶ XVII.B.  Furthermore, EPA and DOH expressly reserved their rights to pursue new violations of the CWA or state law not pled in their original complaint.  *Id.* at 56, ¶ XVII.C.

By their 2007 filing, Stipulated Order, and their
actions, EPA and DOH have implicitly communicated to the Court
that the 1995 Consent Decree did not diligently prosecute all
post-1995 sewage spills when they filed a new case against CCH in
2007.  The Court accepted this and granted EPA and DOH new relief
in this newly filed 2007 action (*EPA II*).

Accordingly, this Court should likewise now find that
CCH's post-1999 spills (as alleged in the Citizens' First and
Second Claims here) were not diligently prosecuted by the 1995
Consent Decree.

  **4. THERE IS NO CWA § 505(B)(1)(B) DILIGENT
   PROSECUTION BAR TO THE CITIZENS' FIRST AND
   SECOND CLAIMS**

CCH also argues that CWA section 505(b)(1)(B) barring
citizen suits when EPA or a State is diligently prosecuting a CWA
violation provides an alternative basis to dismiss the Citizens'
First and Second Claims.  CCH Opp. at 19-21.  Specifically, CCH
contends that the 1995 Consent Decree, the Stipulated Order
and/or EPA, DOH and CCH's now on-going global negotiations for
additional judicial relief against CCH for the latter's
continuing sewage spill problem all constitute diligent
prosecution of CCH's post-1995 sewage spills alleged in the
Citizens' First and Second claims.  *Id.*  This contention is
without merit.

First, as discussed above, the 1995 Consent Decree was
not designed to bring CCH into eventual full compliance with the

CWA.   Only EPA or state consent decrees that will bring CCH into
eventual full compliance with the CWA constitute diligent
prosecution for the purposes of CWA section 505(b)(1)(B)'s
diligent prosecution bar.   *Friends of Milwaukee's River*, 382 F.3d
at 764.

     Second, EPA and DOH's claims in *EPA II* and the
Stipulated Order prosecuted and resolved a *single* spill
violation, the March 2006 Beachwalk force main spill.   Obviously,
the 2007 Stipulated Order does not address and can not be
construed as diligent prosecution of the *many hundreds* of
post-1995 CCH sewage spills that the Citizens addressed in their
suit filed three years earlier.   And twelve years between 1995
and 2007 is hardly "diligent."

     Third, the present and on-going EPA, DOH, and CCH
out-of-court negotiation do not constitute diligent prosecution
*in a court*.   Only when EPA or a state is actively prosecuting a
given CWA violation in a filed court action is there a diligent
prosecution bar to a citizen suit.   *See Sierra Club v. Chevron*,
834 F.2d 1517, 1525 (9th Cir. 1987) (CWA § 505(b)(1)(B) bars
citizen suits only when EPA is prosecuting an action in Article
III court); *Knee Deep Cattle Company, Inc. v. Bindana Investment
Co. Ltd.*, 94 F.3d 514, 516 (9th Cir. 1996) (finding that
similarly worded diligent prosecution bar in CWA
§ 309(g)(6)(A)(ii), which also uses present tense "is
prosecuting," mandates that EPA or state must currently be

actively pursuing a filed action for bar to citizen suit to exist).

## III. CONCLUSION

If CCH is correct, then **no** new law suit may be brought by the Citizens, EPA or the DOH for any sewage spills until after 2019-no matter what happens.  The Court has already decided that this not the case.

For the reasons described above, entry of the 2007 Stipulated Order constitutes a change in law and facts that is incompatible and inconsistent with this Court's prior dismissal of the Citizens First and Second claims for post-1999 CCH sewage spills.

Therefore, the Citizens' Motion for Reconsideration to set aside the September 2005 Dismissal Order in this case should be granted.

DATED:   Honolulu, Hawai'i, February 14, 2008.

Respectfully submitted,


   /s/ William M. Tam
CHRISTOPHER SPROUL
Environmental Advocates

PAUL ALSTON
WILLIAM M. TAM
BLAKE K. OSHIRO
Alston Hunt Floyd & Ing
Attorneys for Plaintiffs