IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAΓI

| | | |
|---|---|---|
| SIERRA CLUB, HAWAΓI CHAPTER, HAWAΓI'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION, | ) ) ) ) ) | CV. NO. 04-00463 DAE-BMK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CITY AND COUNTY OF HONOLULU, and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION OF
ORDER FILED SEPTEMBER 30, 2005 DISMISSING
 PLAINTIFFS' FIRST AND SECOND CLAIMS

On February 25, 2008, the Court heard Plaintiffs' Motion.

Christopher Sproul, Esq., and William Tam, Esq., appeared at the hearing on

behalf of Sierra Club, Hawai`i Chapter, Hawai`i's Thousand Friends and Our

Children's Earth Foundation (collectively, "Plaintiffs"); James J. Dragna, Esq.,

Corporation Counsel Carrie Okinaga, and Deputy Corporation Counsel Kathleen

A. Kelly appeared at the hearing on behalf of Defendant City and County of

Honolulu ("CCH").  After reviewing Plaintiffs' motion and the supporting and

opposing memoranda, the Court GRANTS Plaintiffs' Motion for Reconsideration

of Order Filed September 30, 2005 Dismissing Plaintiffs' First and Second Claims.

<u>BACKGROUND</u>

On October 3, 1994, the United States Environmental Protection

Agency ("EPA") and the State of Hawai`i Department of Health ("DOH") brought

suit ("EPA I") against the City and County of Honolulu ("CCH") asserting claims

for violations of the Clean Water Act ("CWA") resulting from ongoing spills from

CCH's sewage collection system (the "Collection System").[1]  Specifically, the

third claim for relief in EPA I (the "Third Claim") alleged that CCH violated

Section 301 of the CWA, 33 U.S.C. § 1311,[2] Hawai`i Revised Statutes ("HRS")

---

[1] The Collection System is defined as follows: "CCH's treatment plants receive wastewater from an approximately 1900 mile Collection System, which includes pipes, manholes, sewer lines, pump stations, and appurtenances thereto that convey domestic and industrial wastewater to CCH's treatment plants."  (EPA I Complaint, Ex. A ¶ 26, attached to Pls.' Mot. for Recon.)

[2] "Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into waters of the United States by any person except in accordance with Section 301 of the Act, 33 U.S.C. § 1311, and as authorized by and in compliance with certain other sections of the Act, including, inter alia, Sections 307 and 402 of the Act, 33 U.S.C. §§ 1317, 1342."  (<u>Id.</u> ¶ 6.)

§ 342D-50(a),[3] and Hawai`i Administrative Rule ("HAR") § 11-62-06(g)[4] for numerous unpermitted sewage discharges from the Collection System between 1987 to 1992.  EPA and DOH simultaneously lodged a proposed consent decree with CCH addressing the violations alleged in the complaint.

On May 19, 1995, this Court entered the consent decree as modified by stipulation (the "Decree"), which included several programmatic and capital improvement requirements designed to remedy CCH's sewage spill problem.  The Decree did not require CCH to end all sewage spills but instead required CCH to "use its best efforts to prevent, to the maximum extent reasonably possible, Collection System Spills in terms of frequencies, duration and volume."  (Decree, Ex. B at 15, attached to Pls.' Mot. for Recon.)  To meet these objectives, CCH was ordered to develop and implement comprehensive Collection System programs, carried out under the direction of the EPA and the continuing jurisdiction of this Court through at least 2019.

---

[3] "Section 342D-50(a), HRS, provides that no person shall discharge any water pollutant into state waters, or cause or allow any water pollutant to enter state waters, except in compliance with this chapter, or a permit or variance issued by the Director."  (Id. ¶ 17.)

[4] "HAR § 11-62-06(g) prohibits in part wastewater spills, overflows, and discharges onto the ground or into state waters."  (Id. ¶ 22.)

Within 30 days of the date of entry of the Decree, CCH was required to submit to EPA its annual goals for 1994 through 1999 for reduction of spill frequencies and/or volumes from its Collection System. (Decree at 15.) CCH remained liable under the CWA for "<u>any</u> unauthorized discharges from its Collection System, and the United States and the State retains all authority, judicial and administrative, to seek injunctive relief and/or penalties pursuant to federal and State laws concerning such unauthorized discharges." (<u>Id.</u> at 16 (emphasis in original).) The Decree "in no way affects or relieves CCH of its responsibility to comply with any federal, State, or local law, regulation, or permit." (<u>Id.</u> at 55.) In addition, the United States and the State expressly reserved all remedies available for violations of the CWA not specifically contained in the complaint filed in EPA I. (<u>Id.</u> at 56.) Finally, the Decree did not "limit or affect the rights of CCH, the State, or the United States as against any third parties, nor does it limit the rights of third parties, not parties to this Consent Decree, against CCH." (<u>Id.</u>)

In the years following the Decree, CCH continued to experience sewage spills, albeit at a diminished rate. EPA and DOH issued administrative orders in 2003 and 2004 requiring CCH to take additional actions beyond those

required by the Decree.[5]  In addition, EPA and DOH continued to monitor and inspect CCH's Collection System.

On July 29, 2004, Plaintiffs filed a complaint (Doc. # 1) in the instant suit alleging that CCH had violated the CWA by committing additional sewage spills from its Collection System between May 1999 and the date of the initiation of the suit.[6]  Plaintiffs' first claim for relief alleged sewage spill discharges of pollutants without a permit in violation of the CWA, 33 U.S.C. §§ 1311(a), 1365. Plaintiffs' second claim for relief alleged sewage spills in violation of CCH's National Pollutant Discharge Elimination System ("NPDES") permit conditions, also in violation of the CWA, 33 U.S.C. §§ 1311(a), 1365.

On September 30, 2005, this Court issued an order ("2005 Order") dismissing, *inter alia*, Plaintiffs' first and second claims in this action (Doc.

---

[5] The 2003 administrative order required CCH to develop a new action plan for reducing sewage spills into Kalihi and Nu`uanu streams.  The 2004 administrative order required CCH to implement measures to reduce spills from CCH's force mains (the sewer lines that transport sewage under pressure from pump stations).

[6] Plaintiffs filed a First Amended Complaint on October 1, 2004 and a Second Amended Complaint ("Amended Complaint") on January 10, 2005.  For purposes of this Order, all references to the complaint in general or the Dismissed Claims specifically are to the Amended Complaint (Doc. # 55).

5

# 100).[7]  The Court first noted that, "[w]hen the EPA is prosecuting CWA violations, it should be accorded a 'preeminent role' because it is charged with enforcing the CWA on behalf of all citizens."  (2005 Order, Ex. C at 15, attached to Pls.' Mot. for Recon (citing U.S. v. City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir. 1991)).)  Under these circumstances, the Court found, all citizens are deemed to be parties to an EPA CWA enforcement action and are thus potentially barred from filing their own actions by the doctrine of *res judicata*.  (Id. (citing Alaska Sport Fishing Assoc. v. Exxon Corp., 34 F.3d 769, 773 (9th Cir. 1994)).)  Furthermore, the Court noted that "for *res judicata* to operate, there must also be a substantial identity between the issues in controversy in both [a citizen suit and a prior EPA action]."  (Id. at 15-16 (quoting Alaska Sport Fishing, 34 F.3d at 773)).)  The Court held that the Dismissed Claims, like the Third Claim in EPA I, were based on spills from CCH's Collection System and were therefore "substantially identical claims."  (Id. at 16.)  Thus, the Court determined that Plaintiffs were precluded from re-litigating the Dismissed Claims based on *res judicata*.

---

[7] Hereinafter, the Court will refer to the first and second claims in this suit as, collectively, as the "Dismissed Claims."  In the alternative, when referring to the Dismissed Claims individually, the Court will use "First Claim" and "Second Claim."

In Spring 2006, CCH, EPA, and DOH were scheduled to commence talks to discuss global Collection Systems issues, including a review of the Decree. Prior to these talks, however, CCH experienced a massive sewage spill as a result of the failure of its Beachwalk force main. From March 26-30, 2006, the ruptured Beachwalk force main spilled approximately 48 million gallons of raw sewage into the Ala Wai Canal (the "Beachwalk Spill"), forcing the closure of Waikiki Beach for several days. As a result, EPA, DOH, and CCH focused their subsequent discussions on the force main issue.

On May 8, 2007, EPA and DOH filed a second suit against CCH ("EPA II") asserting a single CWA claim for injunctive relief for the Beachwalk Spill. Concurrently with the filing of the complaint, EPA and DOH lodged a Stipulated Order (the "Stipulated Order") purporting to resolve the one claim. The Stipulated Order requires CCH to undertake remedial action on six force main lines over a schedule lasting until 2018. This Court entered the Stipulated Order on October 10, 2007. The Stipulated Order indicates that EPA, DOH, and CCH are pursuing additional negotiations and additional judicial relief to address all compliance issues associated with CCH's Collection System.

On November 15, 2007, Plaintiffs filed the instant Motion for Reconsideration of the Court's 2005 Order (Doc. # 155) ("Motion for Recon"),

7

arguing that, in light of new developments, this Court should reconsider its 2005

Order in the instant matter, which dismissed Plaintiffs' First and Second Claims

based on *res judicata*, as inconsistent with the Stipulated Order in EPA II, which

allowed EPA and DOH to assert a new claim against CCH and which implicitly

found no such *res judicata* bar.  Simultaneously, Plaintiffs filed a Motion to

Dismiss in EPA II asserting the same arguments.[8]  CCH opposed the Motion for

Recon on February 7, 2008 (Doc. # 163).  On February 14, 2008, Plaintiffs filed a

reply (Doc. # 164).

## STANDARD OF REVIEW

The disposition of a motion for reconsideration is within the discretion

of the district court.  Lolli v. County of Orange, 351 F.3d 410, 411 (9th Cir. 2003);

Plotkin v. Pac. Tel. & Tel. Co., 688 F.2d 1291, 1292 (9th Cir. 1982).  This rule

derives from the compelling interest in the finality of judgments, which should not

be lightly disregarded.  Rodgers v. Watt, 722 F.2d 456, 459 (9th Cir. 1983);

Carnell v. Grimm, 872 F. Supp. 746, 758 (D. Haw. 1994).

The Ninth Circuit requires a successful motion for reconsideration to

furnish both a reason why the court should reconsider its prior decision, as well as

---

[8] Plaintiffs note that, should the Court grant the Motion for Recon, they will withdraw their Motion to Dismiss in EPA II.

8

facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  Carnell, 872 F. Supp. at 758.  Mere disagreement with a previous order is an insufficient basis for reconsideration and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.  See Haw. Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).  Four predominant grounds justify reconsideration: (1) newly discovered evidence; (2) clear error; (3) an intervening change in the controlling law; or (4) other highly unusual circumstances.  Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).  Federal Rule of Civil Procedure ("FRCP") 60(b) also provides that the court may grant relief from judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence
> could not have been discovered in time to move for a
> new trial under Rule 59(b); (3) fraud (whether heretofore
> denominated intrinsic or extrinsic), misrepresentation, or
> other misconduct of an adverse party; (4) the judgment is
> void; (5) the judgment has been satisfied, released, or
> discharged, or a prior judgment upon which it is based
> has been reversed or otherwise vacated, or it is no longer
> equitable that the judgment should have prospective
> application; or (6) any other reason justifying relief from
> the operation of the judgment.

The District of Hawai`i has implemented the federal standards in Local Rule ("LR") 60.1, which explicitly mandates that reconsideration only be granted upon discovery of new material facts not previously available, the occurrence of an intervening change in law, or proof of manifest error of law or fact. Reliance Ins. Co. v. Doctors Co., 299 F. Supp. 2d 1131, 1153 (D. Haw. 2003). The movant's basis for reconsideration, whether in law or fact, must be "strongly convincing" to induce the court to reverse its prior decision. Id. Local Rule 60.1 also places a ten business day time limitation on filing a motion for reconsideration based on proof of manifest error of law or fact.

## DISCUSSION

Plaintiffs assert that the Court's entry of the Stipulated Order in EPA II establishes that (1) new claims for CCH sewage spills after 1994 are not the same claims as those adjudicated by the Decree, and (2) as a result, the Court should reconsider its 2005 Order, which improperly dismissed the First and Second Claims on *res judicata* grounds. In other words, Plaintiffs contend that the Court cannot in this action rule that EPA I and the Decree created a *res judicata* bar on newly filed claims for post-1994 sewage spills and implicitly rule in EPA II that EPA I and the Decree created no such bar. This new development, Plaintiffs aver, creates a conflict in this Court's rulings and thus merits this Court's

10

reconsideration. Plaintiffs additionally argue that they should not be deemed in privity[9] with EPA and DOH for purposes of EPA I because that case does not constitute diligent prosecution of post-1994 CCH sewage spills.

Defendants counter that (1) the Stipulated Order is not an intervening change in law but is rather the latest factual development in EPA and DOH's enforcement action against CCH pursuant to the Decree; (2) the Stipulated Order is not an unrelated enforcement action but is the most recent example of EPA and DOH's continued oversight; (3) *res judicata* is an affirmative defense and, as it was not raised by CCH in response to EPA II, Plaintiffs cannot raise it here; (4) the Stipulated Order did not constitute an implicit recognition of the lack of diligent prosecution of the Decree; and (5) the Court should not allow Plaintiffs to resuscitate unnecessary and duplicative claims that will negatively impact the ongoing enforcement and cooperation between EPA, DOH, and CCH regarding the Collection System.

For the reasons set forth below, the Court holds that its 2005 Order dismissing Plaintiffs' First and Second Claims based on *res judicata* should be reconsidered in light of current circumstances. The Court notes at the outset of this

---

[9] Privity means "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter . . . ; mutuality of interest." Black's Law Dictionary 1237 (8th ed. 2004).

discussion, however, that this determination is expressly limited to the *res judicata* issue. The Court does not address the parties' additional arguments, specifically whether EPA and DOH are diligently prosecuting CCH's post-1994 sewage spills. This matter may be addressed by the parties in motions subsequent to this Order.

*Res judicata*, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (quoting Western Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997)). The Ninth Circuit has held that the application of *res judicata* is central to the purpose for which civil courts are established, namely the conclusive resolution of disputes. Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003). "Claim preclusion refers to the effect of a prior judgment foreclosing litigation of a claim in a subsequent lawsuit because it is determined that it should have been raised in the earlier proceeding." Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 867 (9th Cir. 1995) (internal quotations omitted). *Res judicata* applies when there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties. Tahoe-Sierra Preservation Council, Inc., 322 F.3d at

1077.  The Ninth Circuit employs a four-prong test to determine if there is an

identity of claims for *res judicata* purposes:

> (1) whether rights or interests established in the prior
> judgment would be destroyed or impaired by prosecution
> of the second action; (2) whether substantially the same
> evidence is presented in the two actions; (3) whether the
> two suits involve infringement of the same right; and (4)
> whether the two suits arise out of the same transactional
> nucleus of facts.

Nordhorn v. Ladish Co., 9 F.3d 1402, 1405 (9th Cir. 1993).

Plaintiffs contend that there can be no identity between the Third

Claim in EPA I and the Dismissed Claims here because the first and fourth prongs

of this test are not fulfilled.  Plaintiffs claim that no rights or interests established

by the Decree will be destroyed or impaired by allowing Plaintiffs to bring their

Dismissed Claims.  In support of this proposition, Plaintiffs claim that they are not

challenging the relief granted by the Decree but, rather, are seeking additional

remedial measures and citizen oversight in addition to the previous relief.

Moreover, Plaintiffs' assert that their Dismissed Claims do not share the same

transactional nucleus of operative facts as the Third Claim because the Dismissed

Claims are premised upon spills from 1999 onward, whereas the Third Claim is

based on pre-1994 spills.  Based on a searching analysis of the Third Claim, the

Decree, and the Dismissed Claims, the Court agrees with Plaintiffs that there is not, as the Court termed it in the 2005 Order, "substantial identity" between the claims.

The Third Claim in EPA I alleged unpermitted discharges from the Collection System in violation of the CWA and State law, citing "chronic overflows and spills from CCH's collection system" from 1987 to 1992.[10]  (EPA I Complaint ¶ 46.)  Approximately 61 of these discharges were greater than 1,000 gallons.  (Id.)  The Third Claim then identified two larger spills, one 50 million gallon spill into Pearl Harbor and one 267,000 gallon spill into the Ala Moana beach area, both of which occurred on April 9, 1991.  (Id.)  These are the only spill incidents specifically referenced in the Third Claim.  Accordingly, the plain language of the Third Claim indicates that it arose from sewage spills that occurred during the 1987 to 1992 time period.

The language of the Decree also indicates that it was intended to address pre-1994 spills.  The Decree: (1) resolved EPA and DOH's claims for spills alleged in the complaint, which, as previously mentioned, arose from spills occurring from 1987 through 1992, "through the date of lodging of this Consent Decree" (Decree at 56.); (2) reserved EPA and DOH's rights to separately

---

[10] The first and second claims for relief in EPA I were for CCH's failure to implement an EPA-approved pretreatment program in general and at the Sand Island WWTP, respectively.  (EPA I Complaint ¶¶ 30-43.)

prosecute CCH's <u>future</u> sewage spills (<u>Id.</u>); (3) specified that, within 30 days of its entry, CCH was required to submit to EPA its annual goals for reduction of spill frequencies and/or volumes for the years 1994 through 1999 only (<u>Id.</u> at 15.); (4) clarified that CCH remained liable under the CWA for <u>any</u> unauthorized discharge from the Collection System (<u>Id.</u> at 16.); (5) explicitly did not relieve CCH of its responsibility to comply with federal, State, or local laws, regulations, or permits (<u>Id.</u> at 55.); (6) expressly reserved for the United States and the State all remedies available for violations of the CWA not specifically contained in the complaint filed in EPA I (<u>Id.</u> at 56.); and (7) did not limit the rights of third parties, who were not parties to the Decree, against CCH."  (<u>Id.</u>)

Read together, these clauses make it clear that the Decree encompassed prosecution of spills only through the May 19, 1995 date of entry of the Decree and, therefore, created a *res judicata* bar only for subsequent claims based on pre-1994 spills.[11]  Tellingly, the Decree explicitly did not relieve CCH of its ongoing responsibility to comply with the CWA and State laws, did not

---

[11] The scope of the *res judicata* bar created by a consent decree is determined by the language of the consent decree.  <u>Ellis v. Gallatin Steel Co.</u>, 390 F.3d 461, 473 (6th Cir. 2004) ("The touchstone of the res judicata effect, however, is the consent decree itself, which resolves all claims through the date of entry of the decree." (internal quotations and citations omitted)).  If the consent decree therefore only purports to resolve claims through the date of entry of the decree, the consent decree will only create a subsequent *res judicata* bar for such claims.

eviscerate CCH's liability for future spills, and did not limit the rights of third parties.  While the Decree is to remain effective up to the estimated 2019 completion date of all the improvement projects, it does not necessarily follow that this same time frame acts as an outright bar to potential future prosecution of post-Decree spills, especially in light of CCH's continued liability for CWA violations. The entry of the Stipulated Order in a new federal law suit premised upon a 2006 spill (EPA II) underscores this point.  As such, the Decree should not be seen as the sole remedy for addressing post-1994 spills for entities that were not party to the Decree.[12]

Plaintiffs' Dismissed Claims, in contrast, are expressly based on spills that occurred from 1999 onward.  While the First Claim does not mention specific spills by date, it incorporates by reference spills described in an earlier portion of the Amended Complaint.  These spills, which occurred from CCH's Sand Island, Honouliuli, Kailua, Wai`anae, and Kahuku Waste Water Treatment Plants, all occurred after 1999.  (See Amended Complaint ¶ 22.)  The Second Claim specifically references 309 spills of raw or partially treated sewage from the

---

[12] Plaintiffs in the instant suit were granted intervenor status in EPA I on May 4, 2007, more than 12 years after the entry of the Decree.  As such, for purposes of this analysis, the Court does not consider them a "party" to the Decree.

Collection System in 1999, 305 such spills in 2000, 237 spills in 2001, 194 spills in 2002, and 183 spills in 2003.  (Id. ¶ 78.)

The above discussion establishes that there is no identity between EPA I's Third Claim and the Dismissed Claims here.  The Supreme Court has held that "a judgment . . . cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."  Lawlor v. Nat'l Screen Service, 349 U.S. 322, 328 (1955) (holding that a prior lawsuit cannot preclude a later lawsuit when the second suit is based on actions that occurred after the judgment in the prior action, even if the cases are closely related) (internal quotation and citation omitted).  The Ninth Circuit has held similarly, finding that when a lawsuit is based on conduct that occurs after the entry of an earlier consent decree and that did not arise out of the same facts as those brought in a previous case, *res judicata* does not bar subsequent litigation. Int'l Techs. Consultants, Inc. v. Pilington PLC, 137 F.3d 1382, 1387 (9th Cir. 1988).  Two suits "arise from the same transaction or series of transactions when they are related to the same set of facts and could conveniently be tried together." Nat'l Res. Def. Council v. EPA, 437 F. Supp. 2d 1137, 1154 (C.D. Cal. 2006) (internal quotation and citation omitted).

Sewage spills that occurred from 1999 onward and well after the entry of a Decree that prosecuted spills from 1987 up to May 1995 cannot be characterized as arising out of the same transactional nucleus of facts. Spills occurring after 1995, including the Beachwalk Spill, happened at different times and involved different circumstances than the pre-1995 claims encompassed by the Decree. It would be an incongruous result for this Court to find that EPA and DOH may bring subsequent suit based on post-1995 spills but Plaintiffs may not.[13]

Plaintiffs move for reconsideration on three grounds: (1) the Court's entry of the Stipulated Order effectively represents a change in controlling law; (2) the Court's entry of the Stipulated Order indicates that the Court's contrary 2005 Order was clear error; and (3) the Stipulated Order's implicit reversal of the Court's holding in the 2005 Order as to the *res judicata* effect of the Decree should be viewed as a highly unusual circumstance. For the reasons set forth above, the

---

[13] The Court also finds its previous reliance on <u>Alaska Sport Fishing Association v. Exxon</u> to be misplaced. In that case, the Ninth Circuit held that when citizens allege claims out of the same, past event addressed by a federal agency's consent decree, the consent decree creates a *res judicata* bar to the citizens' claims. <u>Alaska Sport Fishing Ass'n</u>, 34 F.3d at 773-74. Here, however, Plaintiffs' Dismissed Claims against CCH arise out of continuing violations occurring after the Decree. Furthermore, the consent decree at issue in <u>Alaska Sport Fishing Ass'n</u> specifically provided that the government agencies were acting "in all capacities for their citizens. <u>Id.</u> at 773. As discussed in detail above, the Decree here provides a far more limited scope, specifically with regard to CCH's future liability and the rights of third parties.

Court finds that, in light of current circumstances, its 2005 Order dismissing

Plaintiffs' Dismissed Claims now represents clear error. The Court also finds that

the issuance of the apparently conflicting Stipulated Order, nearly two years after

the 2005 Order, constitutes a highly unusual circumstance meriting

reconsideration. Accordingly, the Court does not address whether the issuance of

the Stipulated Order constituted a change in controlling law.[14]

   The Court is cognizant of CCH's arguments that (1) Plaintiffs raised

many of the same arguments it relies on in the instant Motion for Recon in their

opposition to the Stipulated Order and (2) the Motion for Recon was filed over two

years after the entry of the 2005 Order. Normally, arguments previously presented

to and rejected by a court are an inappropriate basis for reconsideration. See, e.g.,

Hansen v. Schubert, 459 F. Supp. 2d 973, 998 (E.D. Cal. 2006) (denying

reconsideration where "[p]laintiffs advanced arguments in their motion for

reconsideration identical to the arguments they advanced in their opposition to

---

[14] Plaintiffs do not contend that the CWA has been amended. Rather, Plaintiffs apparently contend that the "law of the case" doctrine applies here. Plaintiffs are incorrect. Under the "law of the case" doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted and emphasis added). The instant lawsuit and EPA II are two distinct cases.

defendants' motion for summary judgment. The court found these arguments unpersuasive then and unpersuasive now.")

CCH cites extensively to Plaintiffs' Opposition to CCH's Motion to Dismiss ("Prior Opposition") (Doc. # 54) for the proposition that Plaintiffs have raised, and this Court has rejected, many of the same arguments they make in the instant motion. While this may be true with regard to some of Plaintiffs' arguments, the Court finds that the interests of justice are furthered by rectifying its previous erroneous ruling and that this benefit outweighs CCH's arguments to the contrary. This is in keeping with the Court's discretionary power to grant reconsideration. See, e.g., Lolli, 351 F.3d at 411. The Court further finds that the issuance of the Stipulated Order, which essentially exposed the 2005 Order to new scrutiny, represented a highly unusual circumstance justifying reconsideration over two years after the 2005 Order was filed.

The Court GRANTS Plaintiffs' Motion for Recon based on the limited finding that the 2005 Order's reliance on res judicata for dismissing Plaintiffs' First and Second Claims was in error.

<u>CONCLUSION</u>

For the reasons stated above, this Court GRANTS Plaintiffs' Motion for Reconsideration of Order Filed September 30, 2005 Dismissing Plaintiffs'

20

Dismissed Claims as outlined herein.  Plaintiffs' Dismissed Claims are hereby

reinstated.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, February 26, 2008.



_____
David Alan Ezra
United States District Judge

Sierra Club, Hawaii Chapter, et al. v. City and County of Honolulu et al., CV. NO.
04-00463 DAE-BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR
RECONSIDERATION  OF ORDER FILED SEPTEMBER 30, 2005
DISMISSING PLAINTIFFS' FIRST AND SECOND CLAIMS