CARRIE OKINAGA, 5958
Corporation Counsel
KATHLEEN A. KELLY, 6729
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone: (808) 768-5235
Facsimile: (808) 523-4583
Email: kkelly@co.honolulu.gov

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400
Facsimile: (213) 680-6499
Email: nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF HONOLULU, <br> Defendant. | CIVIL NO. CV 04-00463 DAE-BMK <br><br> **CITY AND COUNTY OF HONOLULU'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION; DECLARATION OF KATHLEEN A. KELLY; EXHIBITS A-M; CERTIFICATE OF SERVICE** <br><br> Date:  To Be Determined <br> Time:  TBD <br> Judge:  Hon. David Alan Ezra |

TO PLAINTIFFS SIERRA CLUB, HAWAI'I CHAPTER, HAWAI'I'S THOUSAND FRIENDS, AND OUR CHILDREN'S EARTH FOUNDATION, ("PLAINTIFFS") AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT as soon as counsel may be heard by the above Court, located at 300 Ala Moana Boulevard, Honolulu, Hawaii, defendant THE CITY AND COUNTY OF HONOLULU, by and through its attorneys, will move and hereby does move this Court for an Order dismissing the First and Second claims for relief in plaintiffs' Second Amended Complaint filed January 10, 2005 on the grounds that the Court lacks jurisdiction as 33 U.S.C. § 1365(b)(1)(B) precludes these claims.

This Motion is based upon Federal Rule of Civil Procedure 12(b)(1), the attached memorandum, declaration, and exhibits, and the files and records herein.

DATED:     Honolulu, Hawaii       CARRIE OKINAGA
           March 11, 2008         Corporation Counsel

                                  By: /s/Kathleen A. Kelly
                                      Kathleen A. Kelly
                                      Attorneys for Defendant
                                      The City and County Of Honolulu

1

## TABLE OF CONTENTS

Page

**MEMORANDUM OF POINTS AND AUTHORITIES** ......................... 2

I.  INTRODUCTION ................................................................. 2

II. BACKGROUND ................................................................. 4

    A.    Plaintiffs' Lawsuit And The Reinstated Collection System
Claims ........................................................................ 4

    B.    In Its February 26 Order, The Court Invited Additional Briefing
Regarding Statutory Preclusion Under Section 505(b)(1)(B) ............. 6

    C.    The Governments' Prior Collection System Lawsuit And The
Resulting 1995 Consent Decree ........................................... 7

    D.    Ongoing Government Prosecution Of Collection System Issues ....... 9

    E.    Plaintiffs Have Intervened In The 1994 Government Lawsuit
And The Beachwalk Claim ................................................ 13

III. THE CLEAN WATER ACT PROVIDES CITIZENS WITH A
LIMITED ROLE WHEN THE GOVERNMENT IS PROSECUTING ..... 14

    A.    The Government Has The Preeminent Role In  Enforcing The
CWA ........................................................................ 16

    B.    Under the CWA, The Role Of Citizens Is To Supplement
Government Action -- Not To Bring A Separate, Redundant,
And Potentially Conflicting Action....................................... 17

    C.    Statutory Preclusion And *Res Judicata* Do Not Serve The Same
Purpose ..................................................................... 19

IV. THIS COURT DOES NOT HAVE JURISDICTION OVER
PLAINTIFFS' COLLECTION SYSTEM CLAIMS.................................. 21

    A.    Standard Of Review ...................................................... 21

    B.    Plaintiffs' First And Second Claims Are Precluded........................ 21

        1.    Plaintiffs' Collection System Claims Are Based On The
Same "Standard, Limitation, Or Order" ................................. 23

        2.    The Governments Are Diligently Prosecuting Collection
System Spill Claims ...................................................... 29

TABLE OF CONTENTS
(continued)

Page

    a.   The Governments' Diligent Prosecution Is
        Presumed...................................................................... 29

    b.   The Governments' Long-Term Injunctive Relief
        Measures Constitute Diligent Prosecution And
        Require The Dismissal Of Plaintiffs' Collection
        System Claims ............................................................. 31

    c.   Plaintiffs' Collection System Claims Promote
        Litigation Over Settlement And Could Conflict
        With the Governments' Selected Remedy.................... 37

V.    CONCLUSION............................................................................ 38

A/72461623.1

## TABLE OF AUTHORITIES

Page

Cases

Ark. Wildlife Fed'n v. ICI Americas Inc.,
842 F. Supp. 1140 (E.D. Ark. 1993) ................................................... 17, 29, 37

Brown v. Felsen
442 U.S. 127 (1979) ...................................................................... 20

City of Heath v. Ashland Oil, Inc.
834 F.Supp. 971 (S.D. Ohio 1993) .................................................... 35

Cmty. of Cambridge Envtl. Health & Cmty. Dev. Group v. City of
Cambridge
115 F. Supp. 2d 550 (D. Md. 2000) ................................................... 27, 28, 34

Conn. Fund for Env't v. Contract Plating Co.
631 F. Supp. 1291 (D. Conn. 1986) ................................................... 22, 23, 24, 31

Envtl. Defense Ctr., Inc. v. EPA
344 F.3d 832 (9th Cir. 2003) ........................................................... 16

Friends of the Earth v. Laidlaw Envtl. Servs. (TOC)
890 F. Supp. 470 (D.S.C. 1995) ......................................................... 29

Glazer v. Am. Ecology Envtl. Servs. Corp.
894 F. Supp. 1029 (E.D. Tex. 1995) ................................................... 29

Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.
484 U.S. 49 (1987) .................................................................. passim

Hudson River Fishermen's Ass'n v. County of Westchester
686 F. Supp. 1044 (S.D.N.Y. 1988) .................................................... 19

Karr v. Hefner
475 F.3d 1192 (10th Cir. 2007) ...................................................... passim

Kokkonen v. Guardian Life Ins. Co. of Am.
511 U.S. 375 (1994) ...................................................................... 20

TABLE OF AUTHORITIES
(continued)

Page

Maryland Waste Coal. v. SCM Corp.
    616 F.Supp. 1474 (D. Md. 1985)........................................... 17, 23, 28, 37

Montana v. United States
    440 U.S. 147 (1979)............................................................... 20

Nordhorn v. Ladish Co.
    9 F.3d 1402 (9th Cir. 1993) ................................................ 28

North & South Rivers Watershed Ass'n v. Scituate
    949 F.2d 552 (1st Cir. 1991)............................................ 27, 32

Penn. Envtl. Defense Found. v. Borough of N.E.
    Civ. No. 96-362, 1997 U.S. Dist. LEXIS 23865 (W.D. Pa. Dec. 31,
    1997) ..................................................................... 23, 27, 29, 35

SPIRG of New Jersey, Inc. v. Georgia Pac. Corp.
    615 F.Supp. 1419 (D.N.J. 1985) ........................................ 31

Surcco v. Prasa
    157 F. Supp. 2d 160 (D.P.R. 2001)................................. 27, 32, 35

Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning
    Agency
    322 F.3d 1064 (9th Cir. 2003) ........................................... 28

Trentacosta v. Frontier Pac. Aircraft Indus., Inc.
    813 F.2d 1553 (9th Cir. 1987) .......................................... 21

U.S.A. v. Green Forest
    921 F.2d 1394 (8th Cir. 1990) ....................................... 17, 22

Statutes

33 U.S.C. § 1251(a)............................................................... 14

33 U.S.C. § 1311 .......................................................... 2, 25, 33

33 U.S.C. § 1311(a)........................................................... 2, 33

TABLE OF AUTHORITIES
(continued)

Page

33 U.S.C. § 1319 ................................................................ 14, 15

33 U.S.C. § 1365 ................................................................ passim

33 U.S.C. § 1365(b)(1)(B) ................................................ 3, 23

Federal Rule of Civil Procedure 12(b)(1) ............................... 1, 2, 21, 37

Other Authorities

Clean Water Act Section 301(a) ........................................ passim

Clean Water Act Section 309(g)(6)(A).............................. 15, 32

Clean Water Act Section 505............................................. 1

Clean Water Act Section 505(b)(1)(B) ........................... passim

A/72461623.1

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION

At this Court's invitation, defendant City and County of Honolulu ("CCH") hereby moves to dismiss the first and second causes of action of the 2004 lawsuit of plaintiffs Sierra Club, Hawai'i Chapter, Hawai'i's Thousand Friends, and Our Children's Earth Foundation (collectively, "plaintiffs") under Federal Rule of Civil Procedure 12(b)(1). Plaintiffs' first and second claims are based on alleged unlawful discharges from CCH's wastewater collection system in violation of Section 301(a), 33 U.S.C. § 1311(a), of the Clean Water Act ("CWA" or "Act") and CCH's National Pollutant Discharge Elimination System ("NPDES") Permits. The United States Environmental Protection Agency ("EPA") and State of Hawaii Department of Health ("DOH") (collectively, the "Governments") have already commenced and are diligently prosecuting an action in this Court based on spills from the collection system in violation of Section 301(a) and CCH's NPDES Permits. Under these circumstances, this Court lacks jurisdiction over plaintiffs' first and second claims pursuant to the CWA's citizen suit provision, 33 U.S.C. § 1365, under a doctrine commonly called statutory preclusion.

The Congressional intent behind the statutory preclusion doctrine, discussed in detail below, is critical to understanding its proper application here. In promulgating the CWA, Congress assigned primary enforcement responsibility

2

to EPA.  When EPA declines to take enforcement action, or otherwise fails to
exercise satisfactorily its responsibility, Congress provided citizens a limited role
to enforce the Act in lieu of EPA pursuant to Section 505(a) of the Act, 33 U.S.C.
§ 1365(a).  The right of citizens to enforce the Act is limited, however, as Congress
did not provide District Courts jurisdiction over citizen claims when the
government has commenced and is diligently prosecuting the subject matter at
issue.  33 U.S.C. § 1365(b)(1)(B).  In such situations, a citizen plaintiff is limited
to a supporting role under intervention.  Id.  In this regard, statutory preclusion is
similar to preemption; that is, where EPA has assumed the primary role as
enforcer, the role of the citizen plaintiff in the subject matter of the enforcement
action is expressly limited.  In so tempering citizen enforcement rights under the
CWA, Congress is shielding defendants from duplicative and inconsistent
litigation and injunctive relief.  It is the subject matter of the enforcement
proceeding and the primacy of EPA in CWA enforcement proceedings that drive
statutory preclusion, not the specifics of the claim itself.

   In these very important respects, statutory preclusion under the CWA
is very different from the common law doctrine of *res judicata*, where the concern
is -- as the United States Supreme Court phrased it -- "the conclusive resolution of
disputes."  In reinstating plaintiffs' first and second claims in the February 26,
2008 Order, the Court found that the 1995 Consent Decree did not provide

A/72461623.1

sufficient finality of the dispute.  Indeed, the same factors that led this Court to reverse its decision on *res judicata* --the reservation of future claims and the prospects for future oversight and enforcement of CCH's collection system -- actually support the application of statutory preclusion here.  Here, EPA and DOH have initiated and are diligently prosecuting a broad enforcement proceeding under the CWA that by its own terms encompasses the upgrade of CCH's collection system, a 20-year program for injunctive relief, federal and state oversight, and where modifications to this program are necessary, the flexibility to negotiate settlements or to pursue addition litigation to address these new conditions.  Under these circumstances, EPA and DOH are certainly occupying the field with respect to the enforcement of the CWA against CCH with respect to its collection system.  Under the CWA, the plaintiffs must, therefore, pursue their interests as intervenors (which they have) to support (or oppose) the Governments' efforts.  Their claims in this litigation, therefore, must be dismissed.

II.    BACKGROUND

    A.    Plaintiffs' Lawsuit And The Reinstated Collection
          System Claims

        Plaintiffs brought this action on July 29, 2004 under the citizen suit provision of the CWA, U.S.C. § 1365, and filed a First Amended Complaint on October 1, 2004 and a Second Amended Complaint ("Complaint") on January 10, 2005.  Declaration of Kathleen A. Kelly ("Kelly Decl."), ¶ 2.  Plaintiffs' Complaint

4

included, among other things, claims brought under Section 301(a) of the CWA

based on alleged spills from the collection system after May 1999 ("Plaintiffs'

Collection System Claims"),[1] as well as alleged violations of the Sand Island and

Honouliuli NPDES Permits relating to treatment plant issues and alleged violations

of two EPA administrative orders. Id. Based on a 1995 Consent Decree between

CCH and the Governments, CCH moved, among other things, to dismiss Plaintiffs'

Collection System Claims under Section 505(b)(1)(B) of the CWA and under the

doctrine of *res judicata*. Id., ¶ 3. On September 30, 2005, this Court dismissed

Plaintiffs' Collection System Claims with prejudice based on the doctrine of *res

judicata,* but did not address CCH's argument with respect to statutory preclusion

under Section 505(b)(1)(B).[2] Id., ¶ 4. Nearly 29 months later, in a February 26,

---

[1]    Specifically, plaintiffs' first claim alleges that CCH has "repeatedly spilled
raw or inadequately treated sewage from CCH's sewage collection systems" in
violation of Section 301(a) of the CWA. Docket # 55, ¶ 74. Similarly, plaintiffs'
second claim alleges "spills of raw or partially treated sewage from [CCH's]
sewage collection and treatment system" in violation of NPDES Standard Permit
Condition paragraph 9. Id., ¶¶ 77, 82-84.

[2]    In addition to plaintiffs' first and second claims relating to collection system
spills, the Court also dismissed plaintiffs' ninth claim related to water reuse at the
Honouliuli facility, plaintiffs' eleventh claim related to stormwater plans, and
plaintiffs' twelfth claim related to permitting issues. See Order Granting
Defendants' Motion to Dismiss Plaintiffs' First, Second, Ninth, Eleventh, and
Twelfth Claims for Relief; Denying as Moot Defendants' Motion to Dismiss
Claims that are Time-Barred; Granting Defendants' Motion to Dismiss the
amended complaint as to Frank Doyle; Granting Defendants' Motion for a More
Definite Statement; Denying Defendants' Motion to Stay the Action; Denying

5

2008 Order ("February 26 Order"), the Court reversed its decision regarding *res judicata* and reinstated Plaintiffs' Collection System Claims.  Docket # 166.  The Court rationalized that the 1995 Consent Decree was not a final order for the purposes of *res judicata* because the Governments continued to prosecute collection system issues and the Consent Decree itself provided for continuing liability.  See id. at 16.

Based on their Collection System Claims, plaintiffs seek declaratory relief, civil penalties, attorneys' fees and an "injunction pursuant to CWA section 505(a), 33 U.S.C. § 1365(a), ordering Defendants to take all measures necessary and appropriate to curtail their violations of CWA effluent limitations."  Docket #55, ¶¶ 151-154.

B.     In Its February 26 Order, The Court Invited Additional
       Briefing Regarding Statutory Preclusion Under Section
       505(b)(1)(B)

While the Court's February 26 Order reinstated Plaintiffs' Collection System Claims, the Court "expressly limited" its determination to the *res judicata* arguments made by the parties.[3]  Docket # 166 at 12 (2008 Order).  Moreover, the

---

Plaintiffs' Counter Motion for Summary Judgment on Plaintiffs' Twelfth Claim; and Denying Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Third, Fourth, Eighth, and Twelfth Claims ("September 30, 2005 Order"), Docket # 100.

[3]     The February 26 Order was the result of a motion for reconsideration, filed by plaintiffs on November 15, 2007.  Docket # 162.  In opposition to the motion

Court invited additional briefing on the issue of CWA preclusion under

505(b)(1)(B) by stating it did not "address the parties' additional arguments,

specifically whether EPA and DOH are diligently prosecuting CCH's post-1994

sewage spills. This matter may be addressed by the parties in motions subsequent

to this Order."[4] Id.

    C.    <u>The Governments' Prior Collection System Lawsuit And
The Resulting 1995 Consent Decree</u>

    At the time this lawsuit was filed, the Governments had already

initiated and were prosecuting a similar lawsuit, <u>United States, et al. v. City and</u>

<u>County of Honolulu</u>, No. 94-00765 DAE, under Section 309 of the CWA and State

law ("1994 Government Lawsuit"). Like Plaintiffs' Collection System Claims, the

1994 Government Lawsuit is also based on unpermitted discharges from the

collection system ("Governments' Collection System Spill Claims").[5] Kelly Decl.,

---

for reconsideration, CCH argued (as it did in its original motion to dismiss) that
Plaintiffs' Collection System Claims are barred under Section 505(b)(1)(B). <u>See</u>
Docket # 163 at 18-21.

[4]    CWA § 505(b)(1)(B) precludes a citizen action, like the one here, when "the
Administrator or State has commenced and is *diligently prosecuting* a civil . . .
action in a court of the United States, or a State to require compliance with the
standard, limitation, or order" that is the subject matter of the Complaint. 33
U.S.C. § 1365(b)(1)(B) (emphasis added).

[5]    Specifically, the Government's third claim is based on "chronic overflows
and spills from CCH's collection system that have resulted in discharges of raw
sewage or partially treated wastewater" in violation of CCH's NPDES permits, the
CWA, and Hawaii water quality laws. Kelly Decl., Exh. A at ¶46; Prayer for

Exh. A.  On May 15, 1995, this Court entered a Consent Decree as Modified by

Stipulation ("1995 Consent Decree") in the 1994 Government Lawsuit.  Id., Exh.

B.  In a Motion For Entry Of Consent Decree EPA filed on February 24, 1995,

EPA acknowledged it was the "primary overseer of compliance with the decree"

and emphasized that it would be "'vigilant' in overseeing the terms of this very

important decree."  Id., Exh. M at 28, 29.

  The 1995 Consent Decree requires CCH to comply with CWA §

301(a); to establish a schedule under which CCH shall implement preventative

maintenance and sewer replacement and rehabilitation necessary to reduce future

collection system spills; and "to use its best efforts to prevent collection system

spills to the maximum extent reasonably possible in terms of frequencies, duration,

and volume."[6]  Kelly Decl., Exh. B at 5-20.  To meet these objectives, CCH was

ordered to develop and implement comprehensive collection system programs,

carried out under the direction of EPA and the continuing jurisdiction of this Court,

through at least 2019.[7]  Id. at 30, 60-61. CCH estimates that the Consent Decree

_____

Relief ¶ 3.

[6] EPA has recognized it is impossible to have "zero spills anywhere....The goal is to have as few spills as possible."  Kelly Decl., Exh. C.

[7] As part of the 1995 Consent Decree's injunctive relief program, CCH was required to develop and implement a long-term Spill Reduction Action Plan ("SRAP"), aimed at "reducing the number and volume of spills from [CCH's]

A/72461623.1

injunctive program requires a total investment of approximately $910,000,000 by

CCH in its collection system.  Kelly Decl., Exh. K.  As the Court recognized in the

February 26 Order, spills have occurred at a diminished rate since CCH's

implementation of the 1995 Consent Decree.  Docket # 166 at 4.  For example,

gravity mainline sewer spills decreased more than 50 percent from 1999 to 2007.

Kelly Decl., Exh. K.

     D.     <u>Ongoing Government Prosecution Of Collection System
Issues</u>

     The Governments, as part of their oversight and prosecution of their

collection system claims, continue to inspect and audit the collection system

injunctive relief program and undertake additional enforcement, when necessary.

For example, EPA affirms that it has "on numerous occasions inspected CCH's

wastewater treatment and collection infrastructure [and] develop[ed] . . . several

administrative and judicial enforcement actions involving CCH's wastewater

---

Collection System to the maximum extent practicable."  Kelly Decl., Exh. B at 16.
CCH was also required to develop and implement a "Long-Term Sewer
Rehabilitation and Infiltration/Inflow Minimization Plan" ("Sewer I/I Plan")
providing for the rehabilitation of the entire collection system.  <u>Id.</u> at 23-30.  Under
the Sewer I/I Plan, CCH must implement a 20-year capital improvement program
for rehabilitation of the collection system.  <u>Id.</u> at 28.  As required by the 1995
Consent Decree, the Sewer I/I Plan includes project milestones established at 5-
year increments.  <u>Id.</u> at 29.  Under the terms of the 1995 Consent Decree, all
collection system rehabilitation projects must be complete by December 31, 2019.
<u>Id.</u> at 30.

9

system." Kelly Decl., Exh. E at ¶ 4.  Similarly, DOH acknowledges that:

> [it] has devoted substantial resources to checking CCH's
> compliance with the 1995 Consent Decree and, more
> generally, its sewer system's compliance with the State's
> Clean Water Act . . .  In 2004, DOH issued a Notice and
> Finding of Violation and Order that required CCH to take
> steps to eliminate sewage spills from force mains, the
> pressurized pipes that transport sewage from pump
> stations toward the treatment plants.  In 2004 and 2005,
> DOH and EPA conducted a comprehensive review of
> CCH's wastewater collection and treatment, identified
> many deficiencies, and communicated them to CCH.
> DOH, EPA, CCH and the Citizens then began the
> negotiation process that led to the Stipulated Order.

Kelly Decl., Exh. G at 3 (internal citations omitted).

As part of this ongoing enforcement of collection system issues, EPA
has issued a June 30, 2003 Findings of Violation and Order of Compliance, Docket
No. CWA-309-9-03-019, based on spills from CCH's collection system.  The June
30, 2003 Order "require[d] [CCH] to report measures taken to control the spills [in
the Kalihi and Nuuanu Stream watersheds] and to develop plans to eliminate

10

sewage spills" and reflects EPA's desire "to ensure that the [1995 Consent

Decree's] 20-year sewer improvement program is sufficient". Kelly Decl., Exh. I.

Similarly, on April 15, 2004, DOH issued a Findings of Violation and Order,

Docket Nos. 2004-CW-EO-01N and 04-WW-EO-2, ordering CCH "to take all

steps necessary to eliminate force main sewage spills from the collection system".[8]

Id., Exh. J.

       In accordance with these ongoing oversight activities, CCH and the

Governments scheduled talks in early Spring 2006 to discuss "global" collection

system issues.[9] Id., Exh. K. Eventually, because of the intervening Beachwalk

Force Main failure on March 24, 2006, the Governments and CCH focused their

talks on certain urgent force main issues. Id. On May 8, 2007, EPA lodged a

Stipulated Order setting forth additional injunctive relief programs regarding these

force mains, thereby augmenting the existing injunctive program under the 1995

Consent Decree. Id. Concurrently with the lodging of the Stipulated Order, EPA

also lodged a claim according to its authority under Section 309 of the CWA based

---

[8]    These steps included Ala Moana force main repair measures, a report regarding spill history and force main inventory, an assessment of force main conditions, force main contingency and preventive maintenance plans, and force main repair and upgrade measures. Kelly Decl., Exh. J at 1-9.

[9]    As set forth in CCH's August 14, 2007 Motion to Stay (Docket # 121) at 8-9, plaintiffs initially participated in these discussions, but eventually withdrew because they would not agree to continue their stay of litigation.

on the Beachwalk spill ("Beachwalk Claim").  Kelly Decl., Exh. L at ¶ 37.  In

EPA's Declaration In Support Of Entry Of The Stipulated Order, EPA expressly

acknowledges that the Stipulated Order is part of the Governments' "oversight" of

CCH's collection system injunctive program under the 1995 Consent Decree and

that EPA has devoted "substantial resources overseeing CCH's compliance."  Id.,

Exh. F at ¶¶ 3, 5.

      With the Stipulated Order successfully negotiated, CCH and the

Governments turned once again to negotiation of the "global" collection system

issues, and have embarked on an ambitious negotiation schedule.[10]  To date, the

parties have met on October 1 in San Francisco, December 4 in Honolulu, and

February 12-13, 2008 in San Francisco.  Kelly Decl. ¶ 13.  These negotiations have

proven successful and CCH and the governments continue to seek resolution of all

outstanding issues informally outside of wasteful and polarizing litigation.  The

parties' next meeting is scheduled for April 22-23, 2008 in Honolulu.  Id., ¶ 14.

Judge Chang has taken an active role in monitoring the parties' progress, working

with CCH and plaintiffs to ascertain whether, and under what conditions, there is

an appropriate role for plaintiffs in the settlement negotiations.  Id.

---

[10]    CCH invited plaintiffs to participate in these discussions on the condition
that they agree to stay litigation.  See Docket # 121.  Plaintiffs, however, would not
agree to a stay and have not participated in the settlement talks.  Kelly Decl., ¶ 12.

A/72461623.1

E.    <u>Plaintiffs Have Intervened In The 1994 Government
Lawsuit And The Beachwalk Claim</u>

As noted above, under the CWA, citizens may not bring an action

when the government is already prosecuting an action in federal court regarding

the same standard or limitation. 33 U.S.C. § 1365(b)(1)(b). However, in such

circumstances, citizens may seek to intervene in the prior government action. <u>Id.</u>

On March 6, 2007, plaintiffs filed a Motion to Intervene in the 1994 Government

Lawsuit. Kelly Decl., ¶ 16. On May 4, 2007, Magistrate Judge Chang issued a

Findings and Recommendation allowing plaintiffs to intervene in the 1994 lawsuit,

subject to four conditions which allowed plaintiffs to oversee enforcement of the

1995 Consent Decree without disturbing that settlement. <u>Id.</u> This Court adopted

those Findings and Recommendation on May 24, 2007. <u>Id.</u> *Plaintiffs' intervention*

*in the 1994 Government Lawsuit provides them with "citizen oversight" over*

*collection system issues, which is exactly the role they seek.* <u>See</u> Pls.' Mtn. for

Recon (Docket # 162) at 15. Similarly, two days after plaintiffs were granted

intervention in the 1994 Government Lawsuit, they filed another Motion to

Intervene, this time seeking to intervene in the 2007 Beachwalk Claim. <u>Id.</u>

Magistrate Chang again granted intervention in this action in a June 28, 2007

Findings and Recommendation, which the Court adopted on July 26, 2007. <u>Id.</u>

*Plaintiffs' intervention in the Beachwalk Claim provides them with further "citizen*

*oversight" over collection system issues.*

13

III.   THE CLEAN WATER ACT PROVIDES CITIZENS WITH A
       LIMITED ROLE WHEN THE GOVERNMENT IS
       PROSECUTING

The CWA aims to "restore and maintain" the "integrity of the

Nation's waters." 33 U.S.C. § 1251(a). To that end, Congress has vested in EPA

the *primary* authority of enforcing the CWA. See 33 U.S.C. § 1319.[11] In

circumstances where the government has not commenced enforcement, "any

citizen may commence a civil action on his own behalf against (1) any person . . .

who is alleged to be in violation of (A) an effluent standard or limitation[12] under

this chapter or (B) an order . . . with respect to such standard or limitation"

33 U.S.C § 1365(a)(1). However, this grant of jurisdiction for citizen enforcement

is expressly limited under Section 505(b)(1)(B) of the Act:

> No action may be commenced [by a citizen] (1) under
>
> subsection (a)(1) of this section . . . (B) if the
>
> Administrator or State has commenced and is diligently
>
> prosecuting a civil . . . action in a court of the United

---

[11]    Section 309(b) allows EPA to bring a civil action for violations of the Act
seeking any "appropriate relief, including a permanent or temporary injunction."
33 U.S.C. § 1319(b).

[12]    The term "effluent limitation" signifies "any restriction established by a
State or the Administrator on quantities, rates, and concentrations of chemical,
physical, biological, and other constituents which are discharged from point
sources into navigable waters, the waters of the contiguous zone, or the ocean,
including schedules of compliance." 33 U.S.C. § 1362(11).

14

A/72461623.1

States . . . to require compliance with the standard,

limitation, or order . . . .

33 U.S.C. §1365(b)(1)(B). Succinctly stated, *when the government is diligently prosecuting a claim, citizens may not.*[13] Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987) (citing legislative history to support the conclusion that "citizen suits are proper only if the Federal, State, and local agencies fail to exercise their enforcement responsibility") (internal quotes omitted) (superseded by statute on other grounds).

   A.   The Government Has The Preeminent Role In
        Enforcing The CWA

        As made clear by the statutory scheme set forth above, it is the

Government which is vested by Congress with primary enforcement authority

under the CWA, a preeminent role recognized and upheld by the courts. Recently,

for example, in dismissing a subsequent citizen suit after the defendant entered into

_____

[13]    The CWA contains two statutory preclusion provisions that limit the District Court's jurisdiction over citizen enforcement -- Section 505(b)(1)(B), set forth above, and Section 309(g)(6)(A). The former is a broad statutory bar which, as discussed below, protects the defendant from redundant, duplicative remedies for claims that the government is already addressing and ensures the government the primary enforcement role. The latter is a narrower provision which precludes subsequent claims for penalties when the government has prosecuted and obtained penalties in an administrative action under Section 309(g) or a comparable state law. 33 U.S.C. § 1319(g)(6)(A). Administrative penalties for past CWA violations are not at issue here. Section 309(g) is therefore is not a basis for and is irrelevant to this Motion.

a Consent Decree which -- like here -- enjoined the discharge of pollutants in

violation of Section 301(a), the Tenth Circuit emphasized that under the CWA,

Congress "gives primary enforcement authority to the EPA and state enforcement

agencies." Karr v. Hefner, 475 F.3d 1192, 1197 (10th Cir. 2007). See also Envtl.

Defense Ctr., Inc. v. EPA, 344 F.3d 832, 853 (9th Cir. 2003) ("Primary

responsibility for enforcement of the requirements of the Clean Water Act is vested

in the Administrator of the EPA"). Similarly, the Eighth Circuit has also

recognized the prominent government role:

> In view of the *preeminent role* that must be afforded the
> EPA in enforcing CWA act [sic] violations -- a role
> contemplated by the legislative history and recognized by
> the Supreme Court in Gwaltney -- we hold that it was
> proper for the district court to dismiss [plaintiff's] CWA
> claims against [defendant] after the latter had entered into
> a consent decree with the EPA. The EPA is charged with
> enforcing the CWA on behalf of all citizens. Since
> citizens suing under the CWA are cast in the role of
> private attorneys general, as a practical matter there was
> little left to be done after the EPA stepped in and
> negotiated a consent decree.

A/72461623.1

U.S.A. v. Green Forest, 921 F.2d 1394, 1404 (8th Cir. 1990)

(emphasis added).

B.    Under the CWA, The Role Of Citizens Is To Supplement
Government Action -- Not To Bring A Separate,
Redundant, And Potentially Conflicting Action

Because of the government's primary role in CWA enforcement,

Section 505(b)(1)(B) makes it clear that a "citizen suit is meant to supplement

rather than to supplant governmental action." Gwaltney, 484 U.S. at 60.  Thus,

citizen lawsuits under CWA have an "interstitial" role since Congress did not

intend them to be even "potentially intrusive" on the important and independent

exercise of agency discretion.  Id. at 61.  Furthermore, since the "central purpose"

of allowing citizen suits is to "abate pollution when the government cannot or will

not command compliance" (id. at 62), citizen suits, as discussed above, are

precluded when the government can and is commanding compliance.  See 33

U.S.C. §1365(b)(1)(B).  This reflects the underlying rationale of CWA statutory

preclusion: to prevent redundant or conflicting injunctive measures in deference to,

and so as not to impede the actions of, the statute's primary enforcer as mandated

by Congress.  See, e.g., Karr, 475 F.3d at 1197; Ark. Wildlife Fed'n v. ICI

Americas Inc., 842 F. Supp. 1140, 1147 (E.D. Ark. 1993), aff'd, 29 F.3d 376 (8th

Cir. 1994); Maryland Waste Coal. v. SCM Corp., 616 F.Supp. 1474, 1483 (D. Md.

1985).

17

Given the Act's overall concern with protection of the Nation's waters, the limited role of citizens should not be seen as unfair or as serving the interests of finality for finality's sake to the possible detriment to the environment:

> The thrust of the CWA is to provide *society* with a remedy against polluters in the interest of protecting the environment. . . . If the Government's action achieves that end, the fact that [plaintiff citizen group] or any other private attorney general is barred from duplicating [the government's] effort should hardly seem surprising or harsh. The Government, of course, as representative of society as a whole, usually is in the best position to vindicate societal rights and interests. In those instances where, for whatever reasons, the Government fails or declines to take action, the CWA allows citizens acting as private attorneys general to fill the void. That does not mean, however, that [citizen group] is *ipso facto* entitled to its own, "personalized" remedy in this or any other CWA case. See especially Gwaltney, 108 S. Ct. at 382 (noting that if government action is initiated, it presumably renders citizen suit unnecessary).

18

Hudson River Fishermen's Ass'n v. County of Westchester, 686 F. Supp. 1044, 1052 (S.D.N.Y. 1988) (emphasis in original).

Here, as discussed below, the Governments have taken the driver's seat and are diligently prosecuting collection system spills; as a result, the statutory role for plaintiffs is that of oversight through intervention, not the prosecution of a redundant and potentially conflicting action.

C.    Statutory Preclusion And *Res Judicata* Do Not Serve The
      Same Purpose

The underlying rationale for statutory preclusion is, as described above, to prevent redundant or conflicting injunctive measures in deference to, and so as not to impede the actions of, the statute's primary enforcer as mandated by Congress. See, e.g., Karr, 475 F.3d at 1197. The Tenth Circuit also intimated another rationale behind statutory preclusion: the encouragement of negotiation and settlement between defendants and the government. Id. at 1197-98 ("If a defendant is exposed to a citizen suit whenever the EPA grants it a concession, defendants will have little incentive to negotiate consent decrees . . . We should not interpret § 1365 in a manner that would undermine the EPA's ability to reach voluntary settlements with defendants").

These goals contrast with that of *res judicata*, which is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." Montana v. United States, 440 U.S. 147, 153

A/72461623.1

(1979). The *finality* of a *res judicata* decision "encourages reliance on judicial decisions, bars vexation litigation, and frees the courts to resolve other disputes." Brown v. Felsen, 442 U.S. 127, 131 (1979) (superseded by statute on other grounds). Because *res judicata* is concerned with ensuring final resolutions, it therefore distinct from statutory preclusion, with its focus on the Congressionally-mandated enforcement role of governments. As a result, there is no inconsistency between the Court's February 26 Order -- where the Court found there was not sufficient finality because the Governments continued to enforce collection system issues and the 1995 Consent Decree itself provided for continuing liability -- and the dismissal of the Plaintiffs' Collection System Claims under the statutory preclusion doctrine.

IV.    THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFFS' COLLECTION SYSTEM CLAIMS

   A.    Standard Of Review

Federal courts are courts of limited jurisdiction and possess only the powers conferred by the federal Constitution or statute. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A federal court must presume it lacks subject matter jurisdiction over a case unless the party asserting jurisdiction can establish otherwise. Id. Plaintiffs, as the parties seeking to invoke federal jurisdiction, thus bear the burden of establishing subject matter jurisdiction. See

20

id. Where the Court lacks subject matter jurisdiction over claims, the Court must grant a motion to dismiss.[14]  Fed. R. Civ. P. 12(b)(1).

Because, as described below, plaintiffs' first and second claims are barred by 33 U.S.C. § 1365(b)(1)(B), plaintiffs cannot meet their burden of establishing that this Court has jurisdiction over these claims, which, accordingly, must be dismissed.  Fed. R. Civ. P. 12(b)(1).

B.      Plaintiffs' First And Second Claims Are Precluded

As discussed above, prosecution of CWA claims is prohibited "if the Administrator or State has commenced and is diligently prosecuting a civil . . . action[15] in a court of the United States, or a State to require compliance with the standard, limitation, or order" that is the subject matter of the Complaint.  33 U.S.C. §1365(b)(1)(B).  Courts must thus engage in a two-part inquiry to decide whether the citizen suit bar applies:

First, the court must determine whether any suit by the

state (or the EPA Administrator) to enforce the same

---

[14]    When considering whether plaintiffs have established subject matter jurisdiction, the allegations in the pleadings are mere evidence on the issue; the Court may consider evidence outside the pleadings such as the Kelly Declaration and attached exhibits without converting the motion to one for summary judgment. See Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987).

[15]    There can be no dispute that the 1994 Government Lawsuit is a civil action in a Court of the United States.

21

"standard, order, or limitation" was pending in federal or

state court on the date that the citizens' suit was

commenced. Second, if the answer to the previous

question is affirmative, the court must also determine

whether the prior pending action was being "diligently

prosecuted" by the state at the time that the citizens' suit

was filed.[16]

Conn. Fund for Env't v. Contract Plating Co., 631 F. Supp. 1291,

1293 (D. Conn. 1986).

As shown below, both of these prongs are easily met and plaintiffs'

first and second claims are barred and must be dismissed.

      1.    Plaintiffs' Collection System Claims Are Based
              On The Same "Standard, Limitation, Or Order"

The CWA allows citizens affected by a particular water pollution

source to sue in federal district court to enforce "an *effluent standard or limitation*

under this chapter *or . . . an order* issued by the Administrator [of the EPA] or a

State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1)

------

[16]    But see Green Forest, 921 F.2d at 1403, where the Eighth Circuit, "faced squarely with the question whether *citizens' claims brought prior* to a government action are properly dismissed when a consent decree is entered in a later-filed EPA action" held that they were, in recognition of the "preeminent role that government actions must play in the CWA enforcement scheme" (emphasis added).

22

(emphasis added).[17]  However, as discussed above, the ability of citizens to sue is

statutorily limited by the CWA, which also provides that no citizen action may be

commenced "if the Administrator or State has commenced and is diligently

prosecuting [an action] . . . to require compliance with the *standard, limitation, or*

*order*" that is at issue in the citizen action.  33 U.S.C. § 1365(b)(1)(B) (emphasis

added).  Courts must therefore determine "whether any suit by the state (or the

EPA Administrator) to enforce the same 'standard, order, or limitation' was

pending in federal or state court on the date that the citizens' suit was

commenced."  Conn. Fund, 631 F. Supp. at 1293 (holding citizen suit precluded

where both state and citizens sought an injunction requiring defendant's

compliance with NPDES permit).  See also Penn. Envtl. Defense Found. v.

Borough of N.E., Civ. No. 96-362, 1997 U.S. Dist. LEXIS 23865, *20 (W.D. Pa.

Dec. 31, 1997) (citizen suit precluded where government's suit "seeks compliance

with the same NPDES permit that form the basis of [plaintiff's] citizens suit").  See

generally Maryland Waste Coal. v. SCM Corp., 616 F.Supp. 1474, 1483 (D. Md.

1985)

       (in the context of analogous Clean Air Act citizen suits):

       If the EPA has discovered a violation of a standard and

---

[17]    An "effluent standard or limitation" includes a "permit or condition thereof."
33 U.S.C. § 1365(f).

has brought a civil action to compel compliance with that

standard, a subsequent private action against the alleged

violator seeking compliance by the same source with the

same standard is wholly redundant and adds nothing to

the statutory enforcement scheme even though the private

suit alleges past violations on occasions different than

those relied upon by the EPA in its suit. Such a private

action is wholly redundant because it seeks only an

injunction against the polluter compelling compliance

with the standard, i.e., prospective relief which is

identical to that prayed in the earlier EPA action.

Accordingly, it is barred . . . .

To determine whether the government and the citizen plaintiffs seek

to require compliance with the same standard, limitation, or order, a court only

needs to compare the pleadings filed in each action. See Conn. Fund, 631 F. Supp.

at 1293 ("It was surely not the intent of Congress to 'overburden the courts' and

the parties by requiring prolonged litigation over the similarities between the

state's suit and the citizens' suit before the latter could be dismissed"). Here, it is

clear here that the same "standard, limitation, or order" is at issue in the

Governments' third claim of the 1994 Government Lawsuit and plaintiffs' first and

second claims in the within litigation:

|  | Governments | Plaintiffs |
|---|---|---|
| Claim | CCH has experienced "chronic overflows and spills from CCH's collection system that have resulted in discharges of raw sewage or partially treated wastewater in violation of CCH's NPDES permits, the Clean Water Act, and Hawaii water quality laws."  Kelly Decl., Exh. A at ¶46; Prayer for Relief ¶ 3.  "By these discharges, CCH has violated Section 301 of the Act, 33 U.S.C. § 1311, which prohibits the discharge of pollutants | CCH has "repeatedly spilled raw or inadequately treated sewage from CCH's sewage collection systems" in violation of Section 301(a) of the CWA.  Pls.' Compl., Docket # 55, ¶ 74. CCH has experienced "spills of raw or partially treated sewage from [CCH's] sewage collection and treatment system" in violation of NPDES Standard Permit Condition paragraph 9.  Id., ¶¶ 77, 82-84. See generally Pls.' Compl., Docket # 55, ¶¶ 67-84. |

25

| | | |
|---|---|---|
| | except in compliance with NPDES permits . . . ." <u>Id.</u> at ¶47 <u>See</u> <u>generally</u>, Kelly Decl., Exh. A at ¶¶44-50. | |
| Relief Sought | The Governments seek civil penalties, an "injunction ordering [CCH] to comply with the terms of its NPDES permits, the Clean Water Act, and the pretreatment regulations and with Hawaii water quality laws," and "[s]uch other relief as this Court deems appropriate." Kelly Decl., Exh. A at Prayer for Relief ¶¶ 1-4. | Plaintiffs seek declaratory relief, civil penalties, attorneys' fees and an "injunction pursuant to CWA section 505(a), 33 U.S.C. § 1365(a), ordering Defendants to take all measures necessary and appropriate to curtail their violations of CWA effluent limitations." Pls.' Compl., Docket #55, ¶¶ 151-154. |

Thus, the inquiry is not whether the exact same *violations* are at issue (*e.g.*, individual collection system spills on February 3, 2001, March 18, 2003 and September 15, 2003), but whether the same *limitation* under the CWA and/or

A/72461623.1

NPDES Permit is involved. Thus, courts hold that later citizen suits alleging a later set of violations are barred when the government is prosecuting *the same type of violations* under the same standard or limitation at issue. See, e.g., N. & S. Rivers Watershed Ass'n v. Scituate, 949 F.2d 552, 557-58 (1st Cir. 1991) (both the citizen and government actions based on sewage system discharges); Surcco v. Prasa, 157 F. Supp. 2d 160, 171 (D.P.R. 2001) (both actions based on unspecified CWA violations); Cmty. of Cambridge Envtl. Health & Cmty. Dev. Group v. City of Cambridge, 115 F. Supp. 2d 550, 556 (D. Md. 2000) (both actions based on combined sewage and stormwater system discharges); Penn. Defense Found., 1997 U.S. Dist. LEXIS 23865, *32-35 (both actions based on sewage system discharges).[18]

The same situation is involved here -- the Governments' and plaintiffs' collection system claims are *each* based on unpermitted discharges from the collection system in violation of Section 301(a) and/or CCH's NPDES permits. Thus, because plaintiffs' Collection System Claims are "wholly redundant" as they seek "prospective relief which is identical to that prayed in the earlier EPA action"

_____

[18]    Obviously, because the government action was commenced prior to the citizen suit, these cases do not involve the exact same individual violations as were alleged in the later citizen suit. However, under the jurisdictional parameters mandated by Congress in the CWA, what is paramount in these cases is that the government has taken the primary enforcement role for the *types* of violations at issue.

27

and "add[] nothing to the statutory enforcement scheme," they are barred under Section 505(b)(1)(B) and must be dismissed.[19]  See Maryland Waste Coal., 616 F.Supp. at 1483.

2.    The Governments Are Diligently Prosecuting
      Collection System Spill Claims

As discussed below, where -- as here -- long-term injunctive relief is ongoing under the oversight of the regulators, citizen claims must be precluded.

a.    The Governments' Diligent Prosecution Is
      Presumed

Courts generally undertake a deferential review of a government's enforcement action and presume that the earlier prosecution was diligent.  See, e.g., Cmty. of Cambridge Envtl. Health & Cmty. Dev. Group v. City of Cambridge, 115 F. Supp. 2d 550, 554, 556 (D. Md. 2000) ("Most courts considering the diligence of a state or federal prosecution have exhibited substantial deference for the agency's process") (diligent prosecution threshold met

---

[19]    This analysis is distinct from the *res judicata* analysis, which is concerned with the "substantial identity" of claims and the extent to which the claims share a "transactional nucleus of facts" (Nordhorn v. Ladish Co., 9 F.3d 1402, 1405 (9th Cir. 1993) in order to ensure the "central . . . purpose for which civil courts have been established, the conclusive resolution of disputes" Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal citation omitted).  As discussed above, this concern for finality differs from the "central purpose" of statutory preclusion: the prevention of redundant or conflicting injunctive measures in deference to, and so as not to impede the actions of, government agencies when they have opted to take the primary enforcement role.  See, e.g., Karr, 475 F.3d at 1197.

28

where agency, *inter alia*, filed a judicial action and "required, reviewed, and

approved the planning, development, and construction of a new system to

eliminate wastewater problems and alleviate unauthorized discharges").[20]  It is

plaintiffs' burden to overcome this heavy presumption by offering "persuasive

evidence that the state has engaged in a pattern of conduct in its prosecution of the

defendant that could be considered dilatory, collusive or otherwise in bad faith."

Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), 890 F. Supp. 470, 487

(D.S.C. 1995).

Furthermore, "[w]here an agency has specifically addressed the

concerns of an analogous citizen's suit, deference to the agency's plan of attack

should be particularly favored."  Scituate, 949 F.2d at 557.  Thus, deference to the

governments' plan is due even when plaintiffs are unsatisfied with the government-

imposed relief and even "if [plaintiff] were the captain of the State's case, he

would have chosen an alternative enforcement strategy."  Penn. Envtl. Defense

Found., 1997 U.S. Dist. LEXIS 23865, *34.  Such deference is essential especially

when a consent decree is in place as "failure to defer to [EPA's] judgment can

---

[20]     See also Glazer v. Am. Ecology Envtl. Servs. Corp., 894 F. Supp. 1029,
1037 (E.D. Tex. 1995) ("Diligence of the state's prosecution should be
presumed"); Ark. Wildlife Fed'n v. ICI Americas Inc., 842 F. Supp. 1140, 1147
(E.D. Ark. 1993), *aff'd*, 29 F.3d 376 (8th Cir. 1994) ("[T]he state agency must be
given great deference to proceed in a manner it considers in the best interests of all
parties involved").

undermine agency strategy." <u>Karr</u>, 475 F.3d at 1197 ("If a defendant is exposed to

a citizen suit whenever the EPA grants it a concession, defendants will have little

incentive to negotiate consent decrees").

Deference should therefore be afforded to the Governments' long-

term injunctive relief measures under the 1995 Consent Decree and 2007

Stipulated Order, particularly since plaintiffs have sought and have been granted

intervention in the 1994 Government Lawsuit and 2007 Beachwalk Claim.  This

role as intervenor, which is the exact role Congress intended for plaintiffs as set

forth in the CWA, provides plaintiffs with "citizen oversight" over collection

system issues, which is the precise role they seek.  <u>See</u> Pls.' Mtn. for Recon,

Docket # 162, at 15.

> b.    <u>The Governments' Long-Term Injunctive</u>
>        <u>Relief Measures Constitute Diligent</u>
>        <u>Prosecution And Require The Dismissal Of</u>
>        <u>Plaintiffs' Collection System Claims</u>

As described above, the 1995 Consent Decree implemented a billion

dollar, 20-year comprehensive preventative maintenance program for injunctive

relief to address spills from CCH's collection system over which the Court retains

jurisdiction until at least 2019.  Kelly Decl., Exh. K.  The Consent Decree

expressly requires CCH "to come into and maintain compliance with the [CWA],

specifically Section 301, which prohibits discharging pollutants except in

compliance with the Act . . . ." (Kelly Decl., Exh. B at 5) and instructs CCH to

30

"use its best efforts to prevent, to the maximum extent reasonably possible, Collection System Spills . . . ." [21]  Id. at 15.  That Decree has been reinforced by subsequent government actions, including Administrative Orders in 2003, 2004, and the 2007 Stipulated Order.  Kelly Decl., Exhs. I, J, ¶ 11.  This ongoing enforcement has resulted in the significant reduction of spills since the commencement of the 1995 Consent Decree programs.  Kelly Decl., Exh. K. Further, the Governments continue to prosecute collection system issues under the ongoing "global" settlement negotiations, under which the parties have already made significant progress. [22]  Kelly Decl., ¶ 13.

Long-term relief like the injunction program under the 1995 Consent Decree is commonly recognized to be diligent prosecution under Section 505(b)(1)(B), thereby warranting dismissal of subsequent citizen suits based on the

---

[21]    As EPA has acknowledged, "[m]ost technologies and operating practices [used to control spills] are designed to reduce, not eliminate, the discharge of pollutants and attendant impacts because it is generally not feasible to eliminate all discharges."  Kelly Decl., Exh. D at 8.1.

[22]    Thus, even though the Governments only needed to have been diligently prosecuting *at the time the citizens' suit was filed in 2004* (Conn. Fund, 631 F. Supp. at 1293), they continue to diligently prosecute collection system discharges to this day.  This ongoing prosecution contrasts with cases where the citizen claims were not barred under Section 505(b)(1)(B) because there was no ongoing enforcement activity on the part of the government.  See, e.g., SPIRG of New Jersey, Inc. v. Georgia Pac. Corp., 615 F.Supp. 1419, 1427 (D.N.J. 1985) (citizen suit permitted where inactive settlement agreement required a one-time facility upgrade).

31

same type of violation, even when violations continue during the implementation of the injunctive program.[23]  For example, in <u>North & South Rivers Watershed Association v. Scituate,</u> 949 F.2d 552, 553-58 (1st Cir. 1991), a Massachusetts state agency issued an Administrative Order alleging defendant's sewage treatment facility produced an unpermitted discharge of pollutants.  The town was ordered to prohibit new connections to its sewer system and to "take all steps necessary to plan, develop and construct new wastewater treatment facilities".  <u>Scituate,</u> 949 F.2d at 553.  The State did not impose penalties but reserved the right to do so.  Two years later, a citizen group brought suit under Section 505 alleging violations of the CWA and seeking civil penalties, declaratory and injunctive relief, and attorneys' fees.  The district court held their suit was barred under CWA 309(g)(6)(A).  The First Circuit affirmed, finding the citizens' "charges were based on the same discharge violations as the State's Order, which, at some level, had been ongoing since the issuance of [the Order]."  <u>Id.</u> at 554.  The court found diligent prosecution was evidenced by the possibility of future penalties as well as the town's compliance with a "variety of mandatory and ongoing tasks since the Order was issued," including the ongoing submission of test results and the

---

[23]    <u>See, e.g.,</u> <u>Scituate,</u> 949 F.2d at 557-58; <u>Surcco,</u> 157 F. Supp. 2d at 171; <u>Cambridge,</u> 115 F. Supp. 2d at 557; <u>Penn. Envtl. Defense Found.,</u> 1997 U.S. Dist. LEXIS 23865, *32-35.

expenditure of nearly one million dollars on the new treatment facility. Id. at 557

("In light of [both parties' actions] we conclude that the State Order represents a

substantial, considered and ongoing response to the violation, and that the

[agency's] enforcement action does in fact represent diligent prosecution").

    Similarly, in the recent case Karr v. Hefner, 475 F.3d 1192, 1194-96

(10th Cir. 2007), the EPA brought claims against the defendants involving the

construction, operation and maintenance of oil and gas sites.  EPA simultaneously

submitted a proposed consent decree that enjoined defendants from discharging

pollutants from well sites in violation of 33 U.S.C. § 1311(a); required defendants,

at their expense, to remediate sites to prevent further water contamination; and

ordered defendants to comply with applicable CWA permits, including the

implementation of a plan to minimize or eliminate stormwater discharges.  On the

same day EPA filed its enforcement action, plaintiffs brought a citizen suit under

Section 505(a) based on, *inter alia*, the unpermitted discharge of pollutants from

point sources in violation of 33 U.S.C. § 1311(a).  The Tenth Circuit dismissed the

citizen lawsuit under 505(b)(1)(B), holding that EPA "chose to investigate and

reach a settlement with [defendants] concerning essentially the same violations

alleged in Plaintiffs' complaint . . . it appears that the prosecution was not only

diligent but vigorous and thorough . . . ." Karr, 475 F.3d at 1198.

    The court in Community of Cambridge Environmental Health &

Community Development Group v. City of Cambridge, 115 F. Supp. 2d 550, 551-57 (D. Md. 2000) similarly found the State's Consent Order constituted diligent prosecution and barred the citizens' suit. In Cambridge, the State filed suit in 1993, alleging violations of the City's combined sewage and stormwater collection and drainage system permit's effluent discharge limits, as well as other unauthorized discharges in violation of state law. The enforcement action was settled by a Consent Order on the same day. The Order imposed a minimal fine and set forth a timetable for remediation, and the court retained jurisdiction until implementation of the project was complete. Plaintiffs filed suit five years later in 1998, alleging the City had allowed unpermitted discharges to occur an average of four times a month. The court found the State's actions evidenced diligent prosecution because, *inter alia*, the City bore the substantial costs ($6,400,000) of the sewage and stormwater project; and the State reserved the right to assess penalties, brought a judicial action, and "required, reviewed, and approved the planning, development, and construction of a new system to eliminate wastewater problems and alleviate unauthorized discharges." Cambridge, 115 F. Supp. 2d at 556. The court did not find the compliance timetable demonstrated a lack of diligent prosecution, even though violations were ongoing, because the Consent Order's time frame was "not inconsistent with standard processes for complex environmental projects . . . ." Id. at 557.

34

Numerous other courts are in accord that diligent prosecution is found despite on-going violations. For example, see Surcco v. Prasa, 157 F. Supp. 2d 160, 171 (D.P.R. 2001) (diligent prosecution evidenced even though plaintiffs established 91 CWA violations had occurred after EPA entered an Administrative Order where investigation and prosecution were ongoing, EPA "refus[ed] to close the Administrative Order," and the Order allowed for the imposition of penalties); Penn. Envtl. Defense Found. v. Borough of N. E., Civ. No. 96-362, 1997 U.S. Dist. LEXIS 23865, *32-35 (W.D. Pa. Dec. 31, 1997) (diligent prosecution evidenced by, *inter alia*, the Consent Decree's requirement that the Borough "spend over $ 2 million implementing various long-term improvements to the POTW. These long-term improvements, by their very nature, will take time to complete . . . If these measures prove inadequate, the Borough will have to implement additional measures, as required by the [government agency], until compliance with its permit is achieved. When analyzing similar settlements between polluters and enforcement agencies, other courts have recognized that settlements which allow some subsequent violations are not inadequate if 'compliance will ultimately be accomplished.'") (lack of diligent prosecution not evidenced by, *inter alia*, the fact that the Consent Decree did not "address the basic problems that led to the violations" or because there had been numerous post-decree violations); City of Heath v. Ashland Oil, Inc., 834 F.Supp. 971, 982 (S.D. Ohio 1993) (in the

35

analogous RCRA context, citizen suit was precluded and diligent prosecution evidenced by a "detailed and legally binding [twenty page] consent order requiring [defendants] to incur substantial costs associated with investigation and remedial work").

As these cases show, due to the ongoing, long-term injunctive relief measures currently being undertaken by CCH as a result of the Governments' enforcement of collection system issues, there is no question that the Governments have taken the driver's seat in prosecuting these issues and are diligently prosecuting unauthorized discharges from the collection system. Consequently, Plaintiffs' Collection System Claims are barred under Section 505(b)(1)(B) and must be dismissed.

c.    Plaintiffs' Collection System Claims
      Promote Litigation Over Settlement And
      Could Conflict With the Governments'
      Selected Remedy

As demonstrated above, Plaintiffs' Collection System Claims fail to meet the requirements for citizen suits mandated by Congress under CWA 505(b)(1)(B) and must be dismissed. And for good reason. Implicit in the statutory scheme limiting the circumstances under which citizens may enforce the CWA in court is the recognition that giving citizens free reign to sue despite on-going diligent prosecution by the government would discourage settlement of agency enforcement actions and promote wasteful litigation rather than focusing

36

resources to fix the problem which led to enforcement in the first place. See Karr, 475 F.3d at 1197-98. Indeed, a municipality such as CCH would be discouraged from settling with the government if it knew it would be forced to continue litigation of the same CWA limitation regardless of its good faith settlement. Moreover, the prosecution by citizens of litigation in the face of a government settlement could lead to conflicting results, putting the municipality in a "lose/lose" situation and further discouraging settlement. The promotion of litigation over settlement, such as that advocated by plaintiffs here, runs counter to the purpose behind the limited grant of jurisdiction for citizen suits. See Gwaltney, 484 U.S. at 60-62; Karr, 475 F.3d at 1197-98; Ark. Wildlife Fed'n, 842 F. Supp. at 1147; Maryland Waste Coal, 616 F.Supp. at 1483. As set forth above, the CWA rejects the result sought by plaintiffs and their Collection System Claims must be dismissed under Section 505(b)(1)(B).

//

//

//

//

//

//

//

37

V.    <u>CONCLUSION</u>

For the reasons set forth above, this Court lacks jurisdiction over

plaintiffs' first and second claims and, accordingly, these claims must be dismissed

with prejudice under Federal Rule 12(b)(1).


DATED:    Honolulu, Hawaii         Respectfully submitted,
          March 11, 2008           CARRIE OKINAGA
                                   Corporation Counsel

                                   By:  /s/Kathleen A. Kelly
                                        Kathleen A. Kelly
                                        Attorneys for Defendant
                                        The City and County Of Honolulu

A/72461623.1