# EXHIBIT M

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
LESLIE ALLEN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 514-4114

STEVEN S. ALM
United States Attorney
District of Hawaii
MICHAEL CHUN
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, HI 96850
(808) 541-2850

ROBERT A. MARKS    2163
Attorney General of Hawaii
SONIA FAUST        627
LAURENCE K. LAU    1466
Deputy Attorneys General, State of Hawaii
Kekuanao'a Building, Room 200
465 South King Street
Honolulu, Hawaii 96813
Telephone (808) 587-3050

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 4 1995

at _____ o'clock and _____ min. ___ M.
WALTER A. Y. H. CHINN, CLERK

'95 FEB 27 A8 45

RECEIVED
CORPORATION COUNSEL
C AND C OF HONO...

REFERRED TO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        and<br><br>STATE OF HAWAII, by Robert A.<br>Marks, Its Attorney General,<br>and PETER A. SYBINSKY, Ph.D.,<br>Director of Health, State of<br>Hawaii,<br><br>                Plaintiffs,<br><br>        v.<br><br>CITY AND COUNTY OF HONOLULU,<br>                Defendant. | CIV. NO.  94-00765 DAE<br><br>NOTICE OF MOTION; MOTION FOR ENTRY OF<br>CONSENT DECREE, AS AMENDED; MEMORANDUM<br>IN SUPPORT OF MOTION; EXHIBITS 1-6;<br>CERTIFICATE OF SERVICE<br><br><br>Date: May 1, 1995<br>Time: 10:30 a.m.<br>Judge:  David A. Ezra |

**EXHIBIT M**

<u>NOTICE OF MOTION</u>

TO:
Mr. Duane W.H. Pang, Deputy Corporation Counsel
Ms. Cheryl Okuma-Sepe, Esq.
Deputy Director
Department of Wastewater Management
City and County of Honolulu
650 South King Street
Honolulu, HI  96813

Mr. Laurence K. Lau, Esq.
Deputy Attorney General
State of Hawaii
Kekuanao'a Building, Room 200
465 South King Street
Honolulu, Hawaii 96813

Ms. Denise Antolini
Sierra Club Legal Defense Fund
223 South King Street, 4th Floor
Honolulu, HI  96813

PLEASE TAKE NOTICE that the United States of America's Motion for Entry of Consent Decree, As Amended, will be heard before the Honorable David A. Ezra, U.S. Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawaii, on <u>May 1, 1995</u> at <u>10:30 a.m.</u> or as soon thereafter as counsel may be heard.

DATED:  Honolulu, Hawaii, <u>February 23, 1995</u>.

LOIS J. SCHIFFER
Acting Assistant Attorney General
Environment and Natural Resources
Division


LESLIE ALLEN
Environmental Enforcement Section
United States Department of Justice
STEVEN S. ALM
United States Attorney
MICHAEL CHUN
Assistant U. S. Attorney

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
LESLIE ALLEN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:  (202) 514-4114

STEVEN S. ALM
United States Attorney
District of Hawaii
MICHAEL CHUN
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850

ROBERT A. MARKS    2163
Attorney General of Hawaii
SONIA FAUST        627
LAURENCE K. LAU    1466
Deputy Attorneys General, State of Hawaii
Kekuanao'a Building, Room 200
465 South King Street
Honolulu, Hawaii 96813
Telephone (808) 587-3050

Attorneys for Plaintiffs

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIV. NO. 94-00765DAE |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF HAWAII, by Robert A. | ) | |
| Marks, Its Attorney General, | ) | |
| and PETER A. SYBINSKY, Ph.D., | ) | |
| Director of Health, State of | ) | |
| Hawaii, | ) | UNITED STATES' MOTION |
| | ) | FOR ENTRY OF |
| Plaintiffs, | ) | CONSENT DECREE, AS AMENDED |
| | ) | |
| v. | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |

MOTION FOR ENTRY
OF CONSENT DECREE,
AS AMENDED - 1 -

_____    )
                          Defendant.      )
_____

Plaintiff United States of America, by and through its undersigned counsel, respectfully moves this Court to enter the proposed Consent Decree that was lodged with this Court to resolve this case on October 3, 1994, including several minor modifications that have subsequently been agreed to by all parties (as evidenced by the Joint Stipulation for Modification of Lodged Consent Decree filed concurrently with this motion).[1] Attached to this motion are a memorandum in support of the motion, including a discussion of, and responses to, the comments received during the public comment period; a copy of the comments received; a letter from the State of Hawaii supporting entry of the consent decree and also responding to certain comments; the Declaration of Steven Fuller, which provides certain factual information in response to the comments; and a proposed order (which includes the modified pages of the decree).

The lodged consent decree, as amended, is fair, reasonable, conforms to the Clean Water Act, and is in the public interest. For the reasons set forth in the attached memorandum and supporting documentation, the United States respectfully requests this Court to enter the amended decree.

DATED:

_____

[1] The minor changes are discussed both in the Joint Stipulation and in the United States' Memorandum in Support of Motion for Entry of Consent Decree, As Amended, at pp. 20-21.

MOTION FOR ENTRY
OF CONSENT DECREE,
AS AMENDED - 2 -

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice


_Leslie Allen_

LESLIE ALLEN
Senior Lawyer
Environmental Enforcement Section
Environment and Natural Resources
    Division
P.O. BOX 7611
U.S. Department of Justice
Washington, D.C. 20044
(202) 514-4114

STEVEN S. ALM
United States Attorney
District of Hawaii

MICHAEL CHUN
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
(808) 541-2850

Of Counsel:

THELMA ESTRADA
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California 94105

JOSEPH THEIS
Attorney Advisor
Office of Enforcement
U.S. Environmental Protection Agency
401 M Street, S.W.
Washington, D.C.  20460


MOTION FOR ENTRY
OF CONSENT DECREE,
AS AMENDED - 3 -

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
LESLIE ALLEN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:  (202) 514-4114

STEVEN S. ALM
United States Attorney
District of Hawaii
MICHAEL CHUN
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850

ROBERT A. MARKS    2163
Attorney General of Hawaii
SONIA FAUST        627
LAURENCE K. LAU   1466
Deputy Attorneys General, State of Hawaii
Kekuanao'a Building, Room 200
465 South King Street
Honolulu, Hawaii 96813
Telephone (808) 587-3050

Attorneys for Plaintiffs

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   and<br><br>STATE OF HAWAII, by Robert A.<br>Marks, Its Attorney General,<br>and PETER A. SYBINSKY, Ph.D.,<br>Director of Health, State of<br>Hawaii,<br><br>         Plaintiffs,<br><br>      v.<br><br>CITY AND COUNTY OF HONOLULU, | CIV. NO. Civ. No. 94-00765-DAE<br><br><br><br><br>UNITED STATES'<br>MEMORANDUM IN SUPPORT<br>OF MOTION FOR ENTRY OF<br>CONSENT DECREE, AS AMENDED |

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 1 -

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . .    3

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . .    5

      A.  Allegations in the Complaint . . . . . . . . . .    5

      B.  Terms of the Consent Decree . . . . . . . . . .    6

          1.  Pretreatment Compliance Program . . . . . . .    6

          2.  Collection System Compliance Program . . . . .    7

          3.  Supplemental Environmental Projects: . . . . .    8

          4.  Civil Penalty . . . . . . . . . . . . . . . . .    9

          5.  Compliance Provisions . . . . . . . . . . . .    9

III.  STANDARD OF REVIEW APPLICABLE TO THIS CONSENT DECREE  .   11

IV.   THE DECREE IS FAIR, REASONABLE, EQUITABLE,
      AND FURTHERS THE ACT, AND SHOULD BE ENTERED. . . . .   13

      A.  The Consent Decree is Fair and Equitable . . . . . .   14

      B.  The Proposed Consent Decree is Consistent with
          the Clean Water Act. . . . . . . . . . . . . .   15

      C.  The Consent Decree is Reasonable. . . . . . . . . .   16

          1.  Comments Regarding Reuse SEPS . . . . . . . . .   16

              a.  Adequacy of Required Effluent and
                  Sludge Reuse . . . . . . . . . . . . . .   17

              b.  Inadequacy of Penalty for Failure
                  to Implement SEPs . . . . . . . . . . . .   20

          2.  Use of the State Penalty Money . . . . . . . .   26

          3.  Reporting Requirements . . . . . . . . . . . .   28

          4.  Enforcement of the Decree . . . . . . . . . . .   28

      CONCLUSION . . . . . . . . . . . . . . . . . . . . .   31

i

## TABLE OF AUTHORITIES

### CASES

Armstrong v. Board of School Directors,
    616 F.2d 305 (7th Cir. 1980) ......................... 10

Aro Corp. v. Allied Witan Co., 531 F.2d 1368
    (6th Cir. 1976) ........................................ 11

Byrd v. Civil Service Comm'n, 459 U.S. 1217 (1983) ......... 10

Citizens for a Better Environment v. Gorsuch,
    718 F.2d 1117 (D.C. Cir. 1983) ................... 10, 11

Hawaii's Thousand Friends, Life of the Land Inc. v.
    Honolulu, 37 Env't Rep. Cas. (BNA) 1523
    (D. Hawaii 1993) ..................................... 10

Kelley v. Thomas Solvent Co., 717 F. Supp. 507
    (W.D. Mich. 1989) .................................... 11

Makah Indian Tribe v. United States,
    501 U.S. 1250 (1991) ................................. 10

Nat'l Farmers' Org., Inc. v. United States,
    429 U.S. 940 (1976) .................................. 12

Officers for Justice v. Civil Service Comm'n,
    688 F.2d 615 (9th Cir. 1982) ..................... 10, 14

Rybachek v. EPA, 904 F.2d 1276 (9th Cir. 1990) ............. 12

Sam Fox Publishing Co. Inc. v. United States,
    366 U.S. 683 (1961) .................................. 12

Securities & Exchange Comm'n v. Randolph,
    736 F.2d 525 (9th Cir. 1984) ........................ 11

Sierra Club v. Electronic Controls Design,
    909 F.2d 1350 (9th Cir. 1990) ....................... 10

Union Carbide Corp. v. Natural Resources
    Defense Council, 467 U.S. 1219 (1984) ............... 10

United States v. Assoc. Milk Producers, Inc.,
    534 F.2d 113 (8th Cir. 1976) ........................ 12

United States v. Cannons Eng'g Corp.,
    899 F.2d 79 (1st Cir. 1990) ..................... 10, 13

ii

United States v. City of Jackson, 519 F.2d 1147
        (5th Cir. 1975) ......................................... 11

United States v. Hooker Chemical & Plastics Corp,
        776 F.2d 410 (2d Cir. 1985) ...................... 11, 14

United States v. Monterey Investments,
        No. C 88-4222-RFP, 1990 U.S. Dist. LEXIS 19445
        (N.D. Cal. July 31, 1990) ............................ 12

United States v. Nat'l Broadcasting Co., Inc.,
        449 F. Supp. 1127 (C.D. Cal. 1978) ................... 12

United States v. Oregon, 913 F.2d 576
        (9th Cir. 1990) .................................. 10, 19

United States v. Rohm & Haas Co., 721 F. Supp. 666
        (D.N.J. 1989) ........................................ 11

## STATUTES

Clean Water Act, Section 101, 33 U.S.C. § 1251, et seq.

        Section 101(a), 33 U.S.C. § 1251(a) ................... 14

        Section 301, 33 U.S.C. § 1311 .................... 2, 4, 5

        Section 307, 33 U.S.C. § 1317 .................... 2, 4, 5

        Section 505, 33 U.S.C. § 1365 ........................ 29

## MISCELLANEOUS

28 C.F.R. § 50.7 ............................................. 2

40 C.F.R. Part 403 .......................................... 5

59 Fed. Reg. 52556 (Oct. 18, 1995) .......................... 2

iii

<u>Defendant.    )</u>

I.   <u>INTRODUCTION</u>

    This memorandum is submitted in support of the motion by the United States of America, on behalf of the Environmental Protection Agency (EPA), requesting that this Court enter the proposed consent decree between plaintiffs the United States and the State of Hawaii and defendant City and County of Honolulu (CCH or the City).  The proposed consent decree was lodged with the Clerk of the United States District Court for the District of Hawaii on October 3, 1994.  The decree provides for the resolution of claims of the United States under Sections 301 and 307 of the Clean Water Act (the Act), 33 U.S.C. §§ 1311, 1317, against the City for the unauthorized discharge of pollutants, primarily sewage, from its Collection System, and for its failure to develop and fully implement a pretreatment program for industrial users of the City's treatment plants.  In addition, the decree resolves similar claims by the State of Hawaii under its laws.

    Pursuant to 28 C.F.R. § 50.7, and as provided in Section XXIII of the decree, the Department of Justice solicited public comment on the proposed decree.  The public comment period expired on or about November 18, 1994.[1]  Only the Sierra Club

---

[1]    Notice of the proposed decree was published in the Federal Register on October 18, volume 59, number 200, page 52556.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 2 -

Legal Defense Fund (SCLDF) submitted comments.[2]  (These comments are attached as Exhibits 1 and 2 to this memorandum.)  In general, SCLDF commended the United States for its enforcement efforts and supported entry of the decree.  Letter from D. Antolini, Managing Attorney, to L. Schiffer, Assistant Attorney General, Nov. 18, 1994 (SCLDF Nov. 18 Ltr.), Exhibit 1, p. 1. However, SCLDF raised concerns about:  the adequacy of the wastewater and sludge reuse projects in the decree and the penalties for the City's failure to implement those projects; reporting requirements and SCLDF's ability to obtain information about implementation of the decree; who is responsible for enforcing the decree and whether there is a role that SCLDF can play in the decree's enforcement; and what use would be made of the civil penalty monies paid to the State under the decree.  The comments and the United States' responses thereto are discussed in depth in Section IV.C, _infra_.

After review and consideration of the comments received, the United States has conferred with the parties and received their concurrence to a slight clarification, as discussed further, _infra_, Section IV.C.1.b.  With that slight modification, the United States has concluded that the settlement embodied in the proposed decree is fair, reasonable, furthers the goals of the

_____

     [2]  The Sierra Club filed one timely set of comments and one comment that was sent after the public comment period had closed. However, the United States responds to all of the comments in this memorandum.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 3 -

Clean Water Act, and should be entered by this Court.  The State, after review of SCLDF's comments, agrees.  <u>See</u> Letter from L. Lau, Deputy A.G. for State of Hawaii, to D. Antolini and L. Schiffer, Dec. 22, 1994 (State Ltr.), attached hereto as Exhibit 3.  Thus, the United States moves this Court to enter the decree that was lodged with this Court on October 3, 1994.

II.   <u>BACKGROUND</u>

   A.   <u>Allegations in the Complaint</u>

   The complaint filed in this action asserts three claims against CCH under Sections 301 and 307 of the Act, 33 U.S.C. §§ 1311, 1317.  CCH owns and operates eleven wastewater treatment plants that treat industrial and domestic wastewater for major portions of the island of Oahu.  The City's treatment plants receive wastewater from an approximately 1900-mile "collection system" of pipes, sewer lines, manholes and pump stations that transport the wastewater to the treatment plants.  The United States' complaint alleges that the City has, for years, experienced chronic unauthorized discharges of raw or partially treated sewage from its collection system into island surface waters ("waters of the United States"), including a 50 million gallon spill of raw sewage into Pearl Harbor in April 1991.  (<u>See</u> Complaint, Third Claim for Relief.)  These discharges violate Section 301 of the Act, which prohibits discharges into waters of the United States, except as specifically authorized by, and in compliance with, the Act and a permit issued under the Act.  33

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 4 -

U.S.C. § 1311.  The complaint also alleges that CCH failed to properly develop and implement an island-wide Pretreatment Program for its Industrial Users that discharge wastewaters that flow into CCH's treatment plants, and that CCH violated the pretreatment provisions of its Sand Island treatment plant permit.  (See Complaint, First and Second Claims for Relief.) These actions violate, inter alia, Section 307 of the Act, 33 U.S.C. § 1317, EPA's pretreatment regulations, 40 C.F.R. Part 403, and the provisions of the Sand Island discharge permit.

B.  Terms of the Consent Decree

In general, the consent decree requires the City to comply with the pretreatment requirements of the Act and regulations, to perform preventive maintenance and a massive rehabilitation project on its collection system to reduce the unpermitted discharges, to perform two Supplemental Environmental Projects for wastewater and sludge reuse, and to pay a civil penalty of $1.2 million.  Each of these requirements, as well as certain other significant provisions, is discussed in more detail below.

1.  Pretreatment Compliance Program:  Section VI of the decree requires CCH to revise and implement its pretreatment program to regulate industrial discharges to its treatment plants, including completing its Industrial User ("IU") survey and database, performing compliance monitoring, developing and enforcing technically-based local limits, and committing

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 5 -

sufficient resources and qualified staff to implement its
pretreatment program. By July 31, 1995, CCH must certify that
its pretreatment program is fully consistent with the
regulations, that no significant IU is in non-compliance, or for
any that are, they are under a plan to come into compliance as
soon as practicable, and that all significant IUs that are
subject to categorical pretreatment standards are in full
compliance with such standards. (Section VI.I)

    2. <u>Collection System Compliance Program</u>: Section VII
of the decree requires CCH to implement preventive maintenance
and sewer replacement and rehabilitation necessary to reduce and
prevent spills from its collection system. Some of its
requirements are highlighted here.

    CCH is required to use its best efforts to reduce the
frequency, duration and volume of spills to the maximum extent
reasonably possible, including setting, and using best efforts to
meet, annual spill reduction goals. (Section VII.A.1-2) By the
end of 1995, CCH is, <u>inter alia</u>, required to develop a
comprehensive sewer maintenance plan and procedures to reduce
spills to the maximum extent practicable. On approval of this
Spill Reduction Action Plan by EPA, CCH is required to implement
it. (Section VII.A.4) Until that time, CCH is required to
perform specified interim preventive measures. (Section VII.A.5)
CCH will also install a state of the art computer data system
that will give it the capability to track the maintenance

activities conducted on a particular sewer line and the history of spills in that line to direct additional maintenance where it is needed. (Section VII.C)

Perhaps the decree's most extensive requirement is the program for sewer rehabilitation. (Section VII.E) The Decree requires CCH to undertake comprehensive infiltration and inflow (I&I) and structural integrity studies of its sewer system and to perform one or more pilot projects, all of which will assist in setting the priorities for its rehabilitation projects. CCH will then develop and, after EPA approval, implement a final plan for rehabilitating its collection system over the next twenty years. The decree contains numerous specific requirements and milestone deadlines for each phase of this massive project, to ensure that the work is conducted in a timely and appropriate fashion. The sewer rehabilitation must be completed by December 31, 2019.

3. <u>Supplemental Environmental Projects</u>: Under Section VIII of the decree, CCH will implement two Supplemental Environmental Projects (SEPs). CCH has committed to spend at least $20 million for the beneficial reuse of wastewater at increasing rates on a schedule that ultimately requires reuse of at least 10 mgd from July 1, 2001 to July 1, 2011. Similarly, CCH has agreed to spend a minimum of $10 million on sludge reuse pursuant to a schedule that ultimately requires CCH to reuse 10 dry tons of municipal sludge per day from January 1, 1998 to December 31, 2005.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 7 -

As explained more fully in Section IV.C.1.a, _infra_, because there is not currently the demand for this reuse, and it is somewhat uncertain whether the City will be able to fully meet the schedules and amounts in the decree, Section VIII.F of the decree allows CCH to petition EPA to reduce the amount of reuse or to propose an alternative SEP, if the requirements of the decree prove infeasible.  The decree also requires CCH to pay an additional civil penalty if it is ultimately unable to implement a SEP.  The amount of the penalty depends on which project it abandons, and how much money CCH spent in good faith attempts to implement the SEP(s) prior to abandoning.  (Section VIII)

4.  _Civil Penalty_:  In addition to the injunctive relief and SEPs, Section X of the consent decree requires the City to pay a civil penalty of $1.2 million for its past violations.  Of this, $950,000 is to be paid to the U.S. Treasury, and, as discussed further, _infra_ Section IV.C.2, the State's portion of the penalty, $250,000, is to be placed into an escrow account to be used for a beneficial environmental project or purpose.

5.  _Compliance Provisions_:  There are numerous provisions to ensure CCH's compliance with the terms of the decree.  First, CCH is required to provide periodic comprehensive progress reports to EPA so that EPA may effectively monitor the implementation of the decree.  (Sections IX.B-.E, VI.I, VII.F, VIII.G.)  In addition, all plans developed under the decree are

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 8 -

subject to EPA review and approval, and each major completed component of work is subject to EPA's approval.[3] All reports, plans and submissions must be signed and certified by a City official or authorized agent and are submitted under penalty of perjury.  (Section XV)

The City is subject to rigorous stipulated penalties of $1000-$2000 per violation per day of the pretreatment and collection system requirements of the decree and $200 per violation per day of the reporting requirements.  (Section XI.A.1-.2)  In addition, CCH must pay escalating penalties of $1000-$2000 per day for failure to meet the schedules for wastewater or sludge reuse, and, as discussed above, an additional penalty if it abandons a SEP.  (Sections XI.A.3, VIII.I)  Moreover, these stipulated penalties are in addition to other remedies or sanctions that the United States has for CCH's violations of the decree or the Clean Water Act (Section XI.B), and the City remains liable for any unauthorized discharges from its collection system or any other violations of law that occur during implementation of the decree.  (Sections VII.A.3, XVII-XVIII)

---

[3]    See, e.g., Section VI.I (compliance certification procedures for pretreatment requirements); Section VII.A.4 (review and approval of Spill Reduction Action Plan); Section VII.E.4 (review and approval of deliverables for sewer rehabilitation project); Section VIII.H (EPA approval of completion of SEPs); Section XII (procedure for submittals and approvals of plans).

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 9 -

III.  STANDARD OF REVIEW APPLICABLE TO THIS CONSENT DECREE

As this court is aware, a district court reviews a consent decree to ensure that it is "fair, reasonable, and equitable and does not violate the law or public policy." Sierra Club v. Electronic Controls Design, 909 F.2d 1350, 1355 (9th Cir. 1990).[4] The questions to be resolved in reviewing the settlement, and the degree of scrutiny to be applied, are distinct from the merits of the underlying action.  In reviewing proposed settlements, courts do not substitute their judgment for that of the parties.  See Armstrong v. Board of School Directors, 616 F.2d 305, 315 (7th Cir. 1980).  Further, the court is "not empowered to rewrite the settlement agreed upon by the parties," or to "delete, modify, or substitute certain provisions of the consent decree." Officers for Justice, 688 F.2d at 630.  The inquiry is directed to whether the proposed settlement is a reasonable compromise and in the public interest, not to whether the Court would have reached the same terms that are embodied in

_____

[4]   See also, e.g., United States v. Oregon, 913 F.2d 576, 580 (9th Cir. 1990), cert. denied sub nom. Makah Indian Tribe v. United States, 501 U.S. 1250 (1991)("fair, adequate, and reasonable" and "conform[s] to applicable laws"); Officers for Justice v. Civil Service Comm'n, 688 F.2d 615 (9th Cir. 1982), cert. denied sub nom. Byrd v. Civil Service Comm'n, 459 U.S. 1217 (1983) (settlement as a whole is "fair, reasonable, and adequate"); United States v. Cannons Eng'g Corp., 899 F.2d 79, 85 (1st Cir. 1990); Hawaii's Thousand Friends, Life of the Land Inc. v. Honolulu, 37 Env't Rep. Cas. (BNA) 1523, 1525 (D. Hawaii 1993).

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 10 -

the settlement document.[5]

This limited standard of review reflects a public policy that "strongly favors settlements of disputes without litigation . . . particularly in an area where voluntary compliance by the parties will contribute significantly toward ultimate achievement of statutory goals." Kelley v. Thomas Solvent Co., 717 F. Supp. 507, 516 (W.D. Mich. 1989) (citations omitted).[6] A consent decree is a "highly useful tool for government agencies" because it "maximizes the effectiveness of limited law enforcement resources" by permitting the government to obtain compliance with the law without lengthy litigation. United States v. City of Jackson, 519 F.2d 1147, 1151 (5th Cir. 1975); see Randolph, 736 F.2d at 528 ("use of consent decrees encourages informal resolution of disputes, thereby lessening the risks and costs of litigation").

A legal presumption of validity attaches to a settlement agreement proposed by the federal government as plaintiff. Randolph, 736 F.2d at 529; United States v. Rohm & Haas Co., 721

_____

[5] See Officers for Justice, 688 F.2d at 625; Citizens for a Better Environment v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983), cert. denied sub nom. Union Carbide Corp. v. Natural Resources Defense Council, 467 U.S. 1219 (1984).

[6] See also United States v. Hooker Chemical & Plastics Corp, 776 F.2d 410, 411 (2d Cir. 1985) (judge should exercise discretion to further strong public policy of voluntary settlement); accord Securities & Exchange Comm'n v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984); Citizens for a Better Environment, 718 F.2d at 1126; Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir. 1976), cert denied, 429 U.S. 862 (1976).

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 11 -

F. Supp. 666, 681 (D.N.J. 1989). Where the public interest is represented by the Department of Justice and its client agency, the courts give "proper deference to the judgment and expertise of those empowered and entrusted by the Congress to prosecute the litigation as to the appropriateness of the settlement."[7]

Deference is particularly appropriate where, as here, the administrative agency that negotiated the settlement is "specially equipped, trained, and oriented in the field. . . ." United States v. Nat'l Broadcasting Co., Inc., 449 F. Supp. 1127, 1144 (C.D. Cal. 1978). EPA used its expertise in evaluating the proposed compliance measures and determining their adequacy for purposes of injunctive relief in this action. It used its experience in applying standards of the Clean Water Act to determine an appropriate civil penalty.

As discussed in detail in the next Section, the proposed Consent Decree meets the above-stated requirements and should be entered expeditiously.

---

[7]  United States v. Monterey Investments, No. C 88-4222-RFP, 1990 U.S. Dist. LEXIS 19445 at *6-7 (N.D. Cal. July 31, 1990) (citing Rybachek v. EPA, 904 F.2d 1276 (9th Cir. 1990)); see also, Sam Fox Publishing Co. Inc. v. United States, 366 U.S. 683, 689 (1961) ("sound policy would strongly lead us to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting the . . . consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting."); United States v. Assoc. Milk Producers, Inc., 534 F.2d 113, 117 (8th Cir. 1976), cert. denied sub nom. Nat'l Farmers' Org., Inc. v. United States, 429 U.S. 940 (1976) (Attorney General must retain discretion in "controlling government litigation and in determining what is in the public interest").

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 12 -

IV.  THE DECREE IS FAIR, REASONABLE, EQUITABLE,
     AND FURTHERS THE ACT, AND SHOULD BE ENTERED.

As discussed, this Court must evaluate the proposed Honolulu
decree for fairness, reasonableness, and for consistency with the
Act and its purposes.  The proposed consent decree meets all
three of these requirements.  Further, the comments received by
SCLDF, which essentially concern the reasonableness of certain of
the decree's provisions, do not raise concerns that warrant this
Court's disapproval of the decree.

A.  The Consent Decree is Fair and Equitable.

This Court's review of the decree requires an analysis of
both procedural and substantive fairness.  Cannons Engineering
Corp., 899 F.2d at 86, 87.  In the present case, no one has
challenged the fairness of the negotiation process for the
decree.  Nor has anyone challenged the substantive fairness or
commented that the decree is inequitable.  The decree before the
Court was the result of intensive, arms-length negotiations over
a period of many months.  All parties were represented by
counsel, and negotiations were candid and open.

Further, the decree requires the City to come into
compliance with the Clean Water Act, to better the Island
environment by performing the reuse SEPs, and to pay a very
significant civil penalty.  On the other hand, the decree is
even-handed in its approach, in that the United States and State
have negotiated an ambitious but achievable schedule for the
injunctive relief, and have compromised on the civil penalty that

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 13 -

they otherwise could have sought.  This court should easily reach
the "reasoned judgment that the agreement is not the product of
fraud or overreaching by, or collusion between, the negotiating
parties," that the decree meets the Ninth Circuit's requirement
of "gross approximations and rough justice," Officers for
Justice, 688 F.2d at 625 (citations omitted), and thus, that the
proposed decree is fair and equitable.

     **B.**   **The Proposed Consent Decree is Consistent with
the Clean Water Act.**

The decree comports with the Act and the specific statutory
policies that underlie this case and is, therefore, in the public
interest.  See Hooker Chemical & Plastics Corp., 607 F. Supp. at
1057.  The overarching goal of the Clean Water Act is "to restore
and maintain the chemical, physical, and biological integrity of
the Nation's waters." 33 U.S.C. § 1251(a).  This decree furthers
those goals, as discussed above, by, inter alia, requiring the
City to completely overhaul its sewer collection system, to
reduce unauthorized discharges to the extent practicable, to
bring its pretreatment system into compliance with the Act and
its regulations, and to conserve resources and reduce pollution
by reusing wastewater and sludge.  If the Court does not enter
this decree, the ensuing litigation would cause a significant
delay in achieving these ends.  Further, as discussed below, even
if the United States were wholly successful in litigating its
case, it might not obtain all of the environmental benefits to be
provided by this decree, since the SEPs go beyond what is

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 14 -

required by law.  In short, this is a very beneficial decree for the environment and should be entered.

C.   The Consent Decree is Reasonable.

Finally, the consent decree is reasonable.  It will effectively require the City to come into compliance with the Act; it exacts a significant civil penalty from the City as a deterrent against future violations of the Act; it requires the City to perform two beneficial environmental projects; and it has sufficient provisions to ensure that the City remains in compliance with the decree's ambitious requirements.

However, SCLDF has taken issue with the reasonableness of several of the decree's provisions.  The United States has carefully considered these comments and has determined that one of them points out a potential ambiguity in the language of the decree.  The parties have agreed to make a slight modification to clarify their intent.  With this change made, the United States has determined that, despite SCLDF's other comments, the decree is nevertheless reasonable and should be entered.

SCLDF's comments and the United States' responses are as follows:

1.   Comments Regarding Reuse SEPS

While SCLDF "wholeheartedly support[s]" effluent and sludge reuse projects in the Islands, it has raised several concerns about the reuse provisions in the decree.  SCLDF Nov. 18 Ltr., p. 2.  Before addressing these concerns, it is important for this

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 15 -

Court to understand the nature of SEPs. Supplemental
Environmental Projects, as their name suggests, are projects that
are supplemental to the requirements of the law. They are
substantive settlement conditions, in addition to those required
as injunctive relief to correct the underlying violation(s),
which the defendant may undertake in exchange for some reduction
in the amount of the civil penalty it pays. Thus, by definition,
these are negotiated beneficial environmental projects that EPA
could not otherwise obtain through its injunctive authorities.
See generally, EPA Policy on the Use of Supplemental
Environmental Projects in Enforcement Settlements, Feb. 12, 1991
("EPA Policy") (attached hereto as Exhibit 4). In exchange for
the significant sludge and wastewater reuse projects the decree
contains, the United States agreed to a partial reduction of the
civil penalty that otherwise would have been required for CCH's
violations by EPA's penalty policies.

      a.  Adequacy of Required Effluent and Sludge Reuse

     SCLDF requests clarification of the amount of reuse
ultimately required by the decree, asserting that the terms of
the decree are unclear. SCLDF Nov. 18 Ltr., pp. 2-3. Section
VIII.D.2 of the decree requires the City to meet the following
sludge reuse schedule:

    a.  Two and a half (2.5) dry tons of municipal sludge
per day by December 31, 1995;
    b.  An additional two and half (2.5) dry tons of
municipal sludge per day by December 31, 1996; and
    c.  At least ten (10) dry tons of municipal sludge per
day from January 1, 1998 until December 31, 2005.

As to effluent reuse, Section VIII.E.2 requires:

    a.  Two (2) million gallons per day (mgd) of municipal
effluent by July 1, 1998;
    b.  An additional three (3) mgd of municipal effluent
by June 30, 1999;
    c.  At least ten (10) mgd of municipal effluent per day
by from July 1, 2001 until at least July 1, 2011.

These provisions by their terms require, and it was the intent of
the parties to require, the City to meet an increasing schedule
of 2.5, 5, and a total of 10 dry tons of sludge reuse and 2, 5,
and a total of 10 mgd of effluent reuse.  _See also_ Declaration of
Steve Fuller (Fuller Dec.), attached hereto as Exhibit 5, ¶ 2;
State Ltr., p. 2.

    However, SCLDF asserts that, assuming these amounts are as
just set forth, they are insufficient and that the City can
achieve at least 15 mgd of wastewater reuse by 2011 and 15 tons
per day of sludge reuse by 2005.  As discussed in detail in the
attached Declaration of Steve Fuller, EPA disagrees.  _See_ Fuller
Dec. ¶¶ 3-10.  The requirements of this decree represent the
first major reuse effort undertaken by the City.  _Id._ ¶ 3.
Although, as EPA hopes, there may ultimately be a considerable
demand for the reuse of both sludge and wastewater, these markets
are currently undeveloped and speculative.  _Id._ ¶ 3.  For
example, at present, the only major reuse of effluent is 2 mgd by
the one sugar company for irrigation of cane fields, but that
company has announced that may be closing in the future.  _Id._ ¶
6.  Similarly, another sugar company that would be a potential
reuse recipient may also be closing.  _Id._  Thus, the current

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 17 -

market appears to be contracting, rather than expanding.
Further, because the State Department of Health is currently
developing regulations that will govern wastewater reuse, the
ultimate permissible uses of the water are somewhat uncertain.
Id. ¶ 4.

SCLDF asserts that the Honouliuli Wastewater Treatment Plant
alone generates 45 tons per day of dry sludge.[8] SCLDF Nov. 18
Ltr., p. 2. However, supply of sludge is not the issue. Rather,
as with the wastewater, it is the demand for reuse that has not
been explored or developed extensively to date. Fuller Dec. ¶ 9.
This consent decree is intended to push the City, at a reasonable
rate, to develop these markets. It is the governments' desire,
as expressed by the decree's requirements, to reuse "at least"
the amounts set forth, and that the City will find even more
demand for reuse than currently required by the decree, so that
the decree will ultimately promote long-term reuse in the
Islands. Fuller Dec. ¶ 10. However, given the uncertainty of
the present markets and the threat of stipulated penalties and
sanctions for violation of the terms of the decree, the City was
unwilling to commit to achieve greater reuse in this settlement.

The United States' determination to accept this level of
reuse, given the uncertainty of reuse options, was reasonable.
This is particularly true given that SEPs are in addition to

_____

[8]   EPA has been unable to confirm this number and believes
it to be closer to 27 dry tons per day total from all of the CCH
wastewater treatment plants. Fuller Dec. ¶ 9.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 18 -

injunctive relief and penalties and represent a negotiated compromise between two parties with litigation strengths and weaknesses in both of their cases.  There is no question that this consent decree is both reasonable and in the public interest.  While SCLDF may believe that additional reuse is possible and more environmentally beneficial that what is required by the decree, as the Ninth Circuit Court of Appeals has stressed that this Court "need not require that the decree be 'in the public's <u>best</u> interest' if it is otherwise reasonable."  <u>United States v. Oregon</u>, 913 F.2d at 580 (emphasis added; citations omitted).

> b.  Inadequacy of Penalty for Failure
>      to Implement SEPs

SCLDF asserts that perhaps its most serious problem with the decree is the civil penalty that the City would have to pay if it abandoned one or both of the SEPs.  SCLDF notes that the decree's "weak penalty scheme directly encourages the City to abandon the SEPs."  SCLDF Nov. 18 Ltr., p. 3.  In reviewing this comment, the United States discovered a drafting ambiguity that appeared to give the City complete discretion to abandon a SEP.  This was not the intent of the parties, and the City has agreed to a modification to the SEP provisions that may alleviate much of SCLDF's concern.

Given the uncertainty of the reuse options discussed above, the parties believed it was important to have the flexibility in the decree if the City were ultimately unable to meet its reuse

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 19 -

commitments, including the ability to propose alternative SEPs and/or to abandon a SEP in exchange for payment of additional civil penalty. Sections VIII.F and .I set forth this process. If "after making all good faith efforts necessary" to perform reuse, CCH is not able to make its commitments in the decree, it may petition EPA for a reduction in the amount it must use (plus performance of a corresponding additional SEP), (Section VIII.F.1), or it may petition EPA to implement an alternative SEP (Section VIII.F.2). EPA must concur that the level of reuse is not feasible, or that the SEP is infeasible altogether, and unless EPA agrees otherwise, CCH must propose an alternative SEP(s). (Section VIII.F.3) CCH's proposal(s) must conform with any applicable EPA SEP guidance and must cost at least as much as the costs avoided by failure to implement the SEPs required by the decree. Id. After EPA review and a procedure for resubmittals and corrections, if EPA ultimately disapproves the proposed alternative(s), CCH is required to pay the additional civil penalty set forth in Section VIII.I. (Section VIII.F.5) This is the process the parties intended the City to go through prior to not performing a SEP and paying the alternative additional penalty.

Unfortunately, the decree as lodged does not make this clear. Section VIII.I, p. 42, in subsection 2, provides that:

> In the event CCH informs EPA and the United States Department of Justice in writing that it will abandon a SEP (either one of the initial reuse SEPs or an approved alternative

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 20 -

> SEP) and that it will not submit an
> alternative SEP, CCH agrees to be liable for
> an additional civil penalty . . . .

This language suggests that CCH may of its own accord, without making the necessary efforts, or without EPA concurrence, simply abandon a SEP. This was not the parties' intent. The parties have agreed that the language should be modified as follows:

> After compliance with the procedures set forth in paragraph VIII.F. above, if~~In the event~~ CCH informs EPA and the United States Department of Justice in writing that it ~~is~~ unable to perform ~~will abandon~~ a SEP (either one of the initial reuse SEPs or an approved alternative SEP) ~~and that it will not submit an alternative SEP~~, and upon the concurrence of EPA, CCH may abandon a SEP, and CCH agrees to be liable for an additional civil penalty . . . .

A corresponding change must also be made to Section XI.A.3, p. 49, of the stipulated penalties provisions, as follows:

> . . . . provided, however, if CCH informs EPA and DOJ of its intent to abandon the SEP(s), in accordance with paragraph VIII.I.2. above, . . . .

The decree, as revised,[9] makes clear that, prior to abandoning a SEP, CCH must have made all necessary good faith efforts to make the project work, and EPA must also concur that CCH has made sufficient efforts and that the project, or reuse amount, is truly infeasible. This should close the potential loophole that would allow the City to simply abandon a SEP and pay a

_____

[9] The United States has attached to its proposed Order for Entry of Consent Decree, As Amended, an amended copy of pages 42-42a and 49-49a of the decree to which the above changes were made.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 21 -

significantly less expensive civil penalty.

Even with this change, it appears that SCLDF would still question the adequacy of the civil penalty that applies if CCH abandons a SEP. As discussed above, SEPs are voluntary projects that are negotiated between the United States and a defendant, inter alia, in exchange for a reduction in a portion of the civil penalty that would otherwise be sought. Thus, if a defendant is unable to perform an agreed-upon SEP, it is appropriate, in determining the additional penalty, to look to the amount of the penalty mitigated by the SEP. A party that in good faith is unable to complete a SEP should be no worse off than one that never sought to perform a SEP at all. Here, the decree requires that CCH pay essentially the civil penalty that is being avoided for each project, minus half of any amount that EPA finds CCH spent in reasonable and good faith efforts trying to implement the SEP. (The decree provides that if the costs are not legitimate, or not spent in good faith efforts, they would not count toward crediting the civil penalty.) See Paragraph VIII.I. In other words, if the City did its best to try to implement the projects, and EPA agreed that it had done so, the City will not (and should not) be penalized beyond making it spend at least twice the amount of the avoided civil penalty in its implementation attempts.

These provisions are reasonable. While the United States believes it would have a strong liability case if it were to

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 22 -

litigate against the City, the United States would be unable to seek SEPs as injunctive relief. Moreover, there is litigation risk as to whether a court would impose a penalty as large as what this consent decree obtains by the combination of SEPs and penalty (over $30 million). Thus, if the City is unable to implement the SEPs required by the decree, the United States believes it is unreasonable to make the City pay a penalty as high as the full cost of the SEPs. Rather, the United States will be monitoring the City's progress, will require that the City make good faith implementation efforts, and may approach this Court, if necessary, to enforce the terms of the decree. If, notwithstanding the City's good faith efforts, the projects prove infeasible, and assuming the City has followed the process for alternative set forth in the amended provisions of the consent decree, EPA may exercise its discretion and agree to relieve the City from the requirement to implement the project. As long as the City has spent at least twice the amount of the avoided civil penalty in good faith efforts, no additional penalty will be due. If it has not spent that amount, an additional penalty will be due. This is a reasonable approach given that the reuse markets are not currently fully developed and that the City has committed to use its best efforts to implement these expensive and highly environmentally beneficial

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 23 -

projects.[10]

## 2.  Use of the State Penalty Money

Under Section X.C of the proposed consent decree, the State will receive $250,000 in civil penalty money which is to be placed into a separate interest earning escrow account established by the City and that will be paid out "pursuant to a separate escrow agreement between CCH and the State." SCLDF is concerned that this provision is unacceptably vague and unenforceable because it does not spell out the intended use of the funds.  See Letter from D. Antolini, Managing Attorney, to L. Schiffer, Assistant Attorney General, Nov. 30, 1994, Exh. 2. SCLDF also asserts that the determination of what the money is to be used for should not take place outside of a public review process.

SCLDF is correct in that the language of the consent decree does not specify the use of these State penalty funds.  These are funds for use by the State and are governed by State laws.  A full response to this comment is provided by the State at pages 1-2 of the letter attached hereto as Exhibit 3.

In brief, it was the intent of the State and the City, and the understanding of the United States, that the money would be

---

[10]   It should be noted that the City is making progress, even before entry of the decree, toward implementing the reuse projects.  Among other things, it has already let a contract for treatment of the sludge, which would be necessary prior to reuse, and it has begun discussions with various entities for reuse of both the sludge and the wastewater.  Fuller Dec. ¶ 11.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 24 -

used toward an environmental project relating to water quality improvement. State Ltr., p. 1; _see also_ Fuller Dec. ¶ 12. However, the City and State negotiated the escrow account provisions because they needed sufficient time to select an appropriate project without delaying the conclusion of the consent decree negotiations. State Ltr., p.2; _see also_ Fuller Dec. ¶ 10.

This use of the escrow account does not mean that the project will be selected without public participation. The State has committed to provide a 30-day public comment period on the proposed project or projects before a final project is selected, and once selected, the proposal must go before the City Council, which will provide an additional opportunity for public participation. State Ltr. at p. 1.

In short, the use of the State penalty money is governed by State law and mutual agreement of the State and the City. The decision to use the money for a water quality project, and to hold the money in an escrow account until such project has been selected (after appropriate public participation) seems a fair and reasonable approach for the parties to have chosen, given the exigencies of the negotiation schedule.

3. Reporting Requirements

SCLDF requests that the progress reports for the SEPs, required by Section VIII.G of the decree, be provided to the

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 25 -

public on request at no charge.  SCLDF Nov. 18 Ltr., p. 3.[11]
The City has agreed to put SCLDF on the distribution list to
receive these progress reports so that SCLDF will not need to pay
for the reports or to request them pursuant to FOIA or UIPA.  See
Letter from C. Okuma-Sepe to L. Allen, December 12, 1994,
attached hereto as Exhibit 6.  The United States is unaware of
what other City policy, ordinance, or resolution might govern
distribution of, or the requirement to pay for copies of, the
progress reports.  However, placing SCLDF on the distribution
list, in addition to whatever public access is required by FOIA
and UIPA, reasonably assures that SCLDF and the general public
will be able to obtain the progress reports.

    4.  <u>Enforcement of the Decree</u>

    SCLDF asserts that the decree is unclear as to who has
primary enforcement responsibility to ensure that the City
complies with the decree's SEP obligations.  In addition, SCLDF
requests "recognition of the rights of citizens' groups to
enforce the Decree."  SCLDF Nov. 18 Ltr., p. 4.

    Although the decree does not contain a specific declaration
concerning enforcement authorities and roles, its terms are clear
that EPA has the lead in monitoring the City's compliance with

---

[11]  To the extent that SCLDF seeks confirmation of its
assertion that the progress reports are public records under the
Freedom of Information Act (FOIA) and the Hawaii Uniform
Information Practices Act (UIPA), such an advisory legal opinion
is beyond the scope of this response to comments.  The State
notes in its letter, however, that the reports would in fact be
subject to UIPA.  State Ltr. at p.3.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 26 -

the SEP provisions (as well as the other provisions of the decree).[12]  The City must provide progress reports to EPA. (Sections VIII.G, IX.B)  EPA must approve the sludge reuse proposals and plan for implementation of the reuse.  (Section VIII.D.3-.4)  Together with DOH, EPA must approve the wastewater reuse proposals, and EPA must approve the plan for implementation of the selected wastewater reuse project.  (Section VIII.E.1-.3) If the City is unable to implement a SEP, it is EPA that must approve an alternative SEP that is in accordance with EPA's SEP policy.  (Section VIII.F)  Further, when the City has completed a SEP, it must submit a Notification of Completion to EPA, and EPA must agree that the SEP has in fact been satisfactorily completed.  If EPA believes that additional work is necessary, the City must perform it and resubmit its Notification, until EPA is satisfied.  (Section VIII.H)  If the City abandons a SEP, it must notify EPA, and EPA is responsible for reviewing the submittal to determine any additional civil penalty that must be paid.[13]  Further, stipulated penalties for violations of the SEP provisions are paid to the U.S. Treasury, and not to the State.

---

[12]  Should judicial enforcement of the decree be necessary, DOJ would serve as lead counsel in those proceedings, at the request of EPA.

[13]  The decree requires that this and certain other notices also be sent to DOJ in certain circumstances where it is more likely that a dispute which would require judicial resolution might arise, e.g., force majeure (Section XIII.A), and to allow DOJ to separately track payment of civil or stipulated penalties (Sections X.B, XI.C).

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 27 -

(Section XI.C)

Other provisions of the decree similarly confirm EPA's role as primary overseer of compliance with the decree.  For example, Section XII sets for the procedures by which EPA reviews and approves plans, reports, and other submittals.

In short, although the United States and the State are co-plaintiffs in this case, the decree is clear, and the State recognizes, that EPA will be the lead enforcement agency.  State Ltr., p. 3.  EPA of course works closely with the State, which will also be overseeing compliance, and the State's specific concurrence is required to determine compliance with certain provisions of the decree.  See, e.g., Section XV.B.  In addition, the decree is clear that the State retains its separate enforcement authorities to monitor and enforce the terms of the decree and compliance with environmental laws.  See, e.g., Sections XI.B, XVII.F.

SCLDF suggests that the decree be amended to provide SCLDF an enforcement role because the City would be more apt to comply if it "face[d] the specter of vigilant citizen enforcement of the Decree."  SCLDF Nov. 18 Ltr., p.4.  The United States recognizes the important contributions SCLDF has made in its vigorous enforcement, through citizen suits, of the Clean Water Act.  However, its suggestion in this instance is neither appropriate nor necessary.  First, SCLDF was not a party to the action or a signatory to the decree, and it would be inappropriate to provide

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 28 -

them a role under this decree.  Moreover, as discussed above, the
decree contains strong enforcement provisions, including
significant stipulated penalties, for noncompliance, and the
United States will be "vigilant" in overseeing the terms of this
very important decree.[14]

CONCLUSION

For the reasons set forth above, the United States
respectfully requests this Court to find that the proposed decree
lodged with this Court on October 3, 1994, and modified as
discussed above, is fair, reasonable, and consistent with the
goals of the Clean Water Act, and that the comments of SCLDF to
not warrant this Court's disapproval of the consent decree.  The
United States respectfully requests this Court to enter the
decree, as modified, as an order of this Court.


DATED:

                    Respectfully submitted,

                    **FOR THE UNITED STATES OF AMERICA**

                    LOIS J. SCHIFFER
                    Assistant Attorney General
                    Environment and Natural Resources
                         Division
                    U.S. Department of Justice

_____

[14]    SCLDF implies that the citizen suit provision of the
Clean Water Act, 33 U.S.C. § 1365, provides it with the authority
to itself enforce the terms of the decree.  The United States
takes no position on SCLDF's interpretation of this provision,
and it is unnecessary for this Court to reach it in this
preceding for entry of this decree.

MEMORANDUM IN SUPPORT
OF MOTION FOR ENTRY
OF CONSENT DECREE - 29 -

_Leslie Allen_

LESLIE ALLEN
Senior Lawyer
Environmental Enforcement Section
Environment and Natural Resources
    Division
P.O. BOX 7611
U.S. Department of Justice
Washington, D.C. 20044
(202) 514-4114

STEVEN S. ALM
United States Attorney
District of Hawaii

MICHAEL CHUN
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
(808) 541-2850