CHRISTOPHER SPROUL
Environmental Advocates
5135 Anza Street
San Francisco, California  94121
Tel: (415) 533-3376
Fax: (415) 358-5695
Email: csproul@enviroadvocates.com

PAUL ALSTON          1126-0
WILLIAM TAM          1887-0
BLAKE OSHIRO         7646-0
ALSTON HUNT FLOYD & ING
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i  96813
Tel: (808) 524-1800,
Fax: (808) 524-4591
Email: paltson@ahfi.com
       wtam@ahfi.com
       boshiro@ahfi.com

Attorneys for Plaintiffs
SIERRA CLUB, HAWAI'I CHAPTER,
HAWAI'I'S THOUSAND FRIENDS
and OUR CHILDREN'S EARTH FOUNDATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>      Plaintiffs,<br><br>   vs.<br><br>CITY AND COUNTY OF HONOLULU and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity,<br><br>      Defendants. | Civil No. 04-00463 DAE-BMK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF; CERTIFICATE OF WORD COUNT; CERTIFICATE OF SERVICE**<br><br>Hearing:  April 28, 2008<br>Time:     9:45 am<br>Judge:    David Alan Ezra |

674944-2 / 7502-3

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . 2

II.   STATUTORY BACKGROUND . . . . . . . . . . . . . . . 5

III.  FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . 6

      A.   CCH'S SEWAGE SPILL PROBLEM . . . . . . . . . . 6

      B.   EPA AND DOH'S 1994 CASE ("EPA I") . . . . . . . . . 7

      C.   PRIOR DISMISSAL AND REINSTATEMENT OF
           CITIZENS' SEWAGE SPILL CLAIMS . . . . . . . . . . . 8

      D.   CCH'S CONTINUING SEWAGE SPILLS POST-1994 . . . . . 10

      E.   EPA AND DOH ADMINISTRATIVE ENFORCEMENT . . . . . . 10

      F.   EPA II . . . . . . . . . . . . . . . . . . . . 11

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . 12

      A.   CONGRESS ESTABLISHED CITIZEN SUITS AS AN
           IMPORTANT AVENUE TO ENFORCE AND VINDICATE
           THE CWA'S PURPOSE. . . . . . . . . . . . . . . . 13

      B.   EPA I AND THE 1995 CONSENT DECREE DO NOT
           CREATE A DILIGENT PROSECUTION BAR TO THE
           CITIZENS' SEWAGE SPILL CLAIMS. . . . . . . . . . . 16

           1.   BECAUSE EPA AND DOH ARE NOT CURRENTLY
                PROSECUTING EPA I, EPA I DOES NOT BAR
                THE CITIZENS' CLAIMS.
                . . . . . . . . . . . . . . . . . . . . . 16

                a.   NINTH CIRCUIT PRECEDENT MANDATES
                     THAT ONLY GOVERNMENT ACTIONS THAT
                     HAVE NOT CONCLUDED IN FINAL ORDERS
                     CAN BAR CITIZEN CLAIMS UNDER CWA § 505. . 16

                b.   CCH'S CONTRARY RELIANCE ON
                     OUT-OF-CIRCUIT DECISIONS IS MISPLACED . . 22

c.   GOVERNMENT ACTIONS SEPARATE AND
INDEPENDENT OF EPA I ARE NOT
PROSECUTION OF EPA I. . . . . . . . . . . 24

2.   EPA I AND THE 1995 CONSENT DECREE
DID NOT DILIGENTLY PROSECUTE THE
SAME CLAIMS ALLEGED BY CITIZENS'
FIRST AND SECOND CLAIMS. . . . . . . . . . . 25

a.   EPA I DID NOT PROSECUTE THE SAME
CLAIMS ALLEGED BY THE CITIZENS'
FIRST AND SECOND CLAIMS. . . . . . . . 25

b.   ALTERNATIVELY, EPA I DID NOT
DILIGENTLY PROSECUTE CCH'S
POST-1999 SEWAGE SPILLS . . . . . . . . 26

C.   EPA AND DOH'S ADMINISTRATIVE ORDERS DO NOT
CREATE A DILIGENT PROSECUTION BAR TO THE
CITIZENS' SEWAGE SPILL CLAIMS.   . . . . . . . 31

D.   EPA II AND THE 2007 STIPULATED ORDER DO NOT
CREATE A DILIGENT PROSECUTION BAR TO THE
CITIZEN'S SEWAGE SPILL CLAIMS. . . . . . . . . . 32

E.   EPA, DOH, and CCH's ON-GOING OUT-OF-COURT
NEGOTIATIONS ARE NOT DILIGENT PROSECUTION
AND CAN NOT BAR TO THE CITIZENS' SEWAGE
SPILL CLAIMS. . . . . . . . . . . . . . . . . . 34

V.   CONCLUSION . . . . . . . . . . . . . . . . . . 34

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Altamaha Riverkeepers v. City of Cochran*,
162 F. Supp. 2d 1368 (D. Ga. 2001) ......................... 32

*Arizona Health Care Cost Containment System v. McClellan*,
508 F.3d 1243 (9th Cir. 2007) .............................. 18

*Atlantic States Legal Foundation, Inc. v. Eastman
Kodak Co.*, 933 F.2d 124 (2d Cir. 1991) ..................... 27

*Atlantic States Legal Foundation, Inc. v.
Tyson Foods, Inc.*, 897 F.2d 1128 (11th Cir. 1990) .......... 14

*Bayview Hunters Point Community Advocates v.
Metropolitan Transport Commission*,
177 F. Supp. 2d 1011 (N.D. Cal. 2001),
*rev'd on other grounds*, 366 F.3d 692 (9th Cir. 2004) ....... 26

*California Sportfishing Protection Alliance v.
City of West Sacramento*,
905 F. Supp. 792 (E.D. Cal. 1995) .......................... 21

*Chesapeake Bay Foundation v. American Recovery Co.*,
769 F.2d 207, 208 (4th Cir. 1985 ........................ 4, 32

*Chesapeake Bay Foundation, Inc. v. Bethlehem Steel Corp.*,
652 F. Supp. 620 (D. Md. 1987) ............................. 26

*Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) .......... 17

*Citizens for a Better Environment v. Union Oil Co.
Of California ("UNOCAL")*, 83 F.3d 1111, 1117-18
(9th Cir. 1996), *cert. denied,* 519 U.S. 1101 (1997) ......... 4

*Citizens Legal Environmental Action Network, Inc. v.
Premium Standard Farms, Inc.*,
2000 U.S. Dist. LEXIS 1990 (D. Mo. 2000) ............... 26, 33

*City of Heath v. Ashland Oil, Inc.*,
834 F. Supp. 971 (S.D. Ohio 1993) ......................... 23

*Coalition for a Liveable W. Side v. New York City
Department of Environmental Protection*,
830 F. Supp. 194 (S.D.N.Y. 1993) ........................... 23

*Coalition for Health Concern v. LWD, Inc.*,
834 F. Supp. 953 (D. Ky. 1993) *rev'd on other
grounds*, 60 F.3d 1188 (6th Cir. 1995) ..................... 20

*Commissioner v. Clark*, 489 U.S. 726 (1989) ................ 21

*Community of Cambridge Environmental Health and
Community Development Group v. City of Cambridge*,
115 F. Supp. 2d 550 (D. Md. 2000) ......................... 23

*Connecticut Fund for the Environment v. L & W Ind. Inc.*,
631 F. Supp. 1289 (D. Conn. 1986) ......................... 20

*Consumer Product Safety Commission v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980) ....................................... 17

*Equality Employment Opportunity Commission v.
Arabian American Oil Co.*, 499 U.S. 244 (1991) ............. 18

*Friends of Milwaukee's River v. Milwaukee Metropolitan
Sewerage District*, 382 F.3d 743 (7th Cir. 2004),
*rehrg. en banc denied*, 2004 U.S. App. LEXIS 20747,
*cert. denied*, 544 U.S. 913 (2005) ................. 16, 24, 25,
                                                      27, 28, 32, 34

*Friends of the Earth v. Carey*, 535 F.2d 165
(2d Cir. 1976) ........................................ 14, 22

*Frilling v. Village of Anna*, 924 F. Supp. 821
(S.D. Ohio 1996) ...................................... 26, 33

*Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007) ......... 23, 29

*Knee Deep Cattle Company, Inc. v. Bindana Investment
Co. Ltd.*, 94 F.3d 514 (9th Cir. 1996),
*cert. dismissed*, 519 U.S. 1144 (2007) .............. 3, 16, 18,
                                                      19, 23, 30

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
128 S. Ct. 1020 (2008) .................................... 19

*Molokai Chamber of Commerce v. Kukui, Inc.*,
891 F. Supp. 1389 (D. Haw. 1995) .......................... 20

*Natural Resources Defense Council, Inc. v. Lowengart & Co.*,
776 F. Supp. 996 (D. Pa. 1991) ............................. 33

*Natural Resources Defense Council, Inc. v. Vygen Corp.*,
803 F. Supp. 97 (N.D. Ohio 1992) .......................... 23

*North & South Rivers Watershed Association v. Scituate*,
949 F.2d 552 (1st Cir. 1991) ...................... 3, 22, 29

*PMC, Inc. v. Sherwin-Williams Co.*,
151 F.3d 610 (7th Cir. 1998) .............................. 34

*Paper, Allied-Industrial, Chemical & Energy Workers*
*International Union v. Continental Carbon Co.*,
2003 U.S. Dist. LEXIS 26858 (D. Okla. 2003),
*aff'd*, 428 F.3d 1285(10th Cir. 2005) ..................... 23

*Pennsylvania Environmental Defense Foundation v.*
*Borough of North E.*, 1997 U.S. Dist. LEXIS 23864
(W.D. Pa. June 17, 1997) .................................. 23

*Proffitt v. Municipal Authority of the Borough of*
*Morrisville*, 716 F. Supp. 837 (E.D. Pa. 1989) .......... 14, 15

*Public Interest Research Group, Inc. v. Rice*,
774 F. Supp. 317 (D. N.J. 1991) .......................... 30

*Save Our Bays & Beaches v. City and County of Honolulu*,
904 F. Supp. 1098 (D. Haw. 1994) .................. 14, 23, 26

*Scituate,Citizens for a Better Environment v.*
*Union Oil Co. Of California*, 83 F.3d 1111
(9th Cir. 1996), *cert. denied*, 519 U.S. 1101 (1997) .. 4, 5, 19,
                                                    23, 24, 29, 30,
                                                                 31

*Sierra Club v. Chevron*, 834 F.2d 1517
(9th Cir. 1987) ................................... 4, 5, 14,
                                              15, 16, 20, 22,
                                                  30, 31, 34

*Sierra Club v. Hyundai America*, 23 F. Supp. 2d 1177
(D. Or. 1997) ....................................... 21, 30

*St. Bernard Citizens for Environmental Quality,*
*Inc. v. Chalmette Refining, L.L.C.*, No. 04-0398,
2007 WL 2323387 (E.D. La. Aug. 10, 2007) ............... 27, 30

*Student Public Interest Research Group of*
*New Jersey, Inc. v. Georgia-Pacific Corp.*,
615 F. Supp. 1419 (D.N.J. 1985) ....................... 16, 20

*Surrco v. Prasa*, 157 F. Supp. 2d 160 (D.P.R. 2001) .......... 23

*United States v. Brace*, 41 F.3d 117 (3d Cir. 1994) .......... 21

*Washington Public Interest Research Group v.*
*Pendleton Woolen Mills* ("*Washington PIRG*"),
11 F.3d 883 (9th Cir. 1993) ....................... 4, 11, 14,
17, 20, 23,
30, 31, 33

## DOCKETED CASES

*United States, et al. v. City and County of Honolulu*,
Civ. No. 07-00235 (EPA II) ...................... 4, 11, 12, 22

*United States, et al. v. City and County of Honolulu*,
Civ. No. 94-00765 (EPA I) ........................ 3, 9, 10,
13, 16

## FEDERAL STATUTES

Clean Water Act, 33 U.S.C.:

§ 309(a) ......................................... 11
§ 309(g)(6) ............................... 6, 11, 13, 17,
18, 20, 21, 31
§ 309(g)(6)(A)(ii) .................................. 19
§ 309(g)(6)(A)(ii)(A)(ii) ........................... 18
§ 404(f) ........................................ 21
§ 505 ..................................... 5, 6, 16
§ 505(b)(1)(B) .............................. 2, 3, 4, 5,
13, 16, 17, 19,
20, 21, 22, 24,
25, 26, 27, 31,
32, 33, 34, 35
§ 1319 ......................................... 23
§ 1319(g)(6) ............................... 6, 17
§ 1365 ..................................... 5, 6, 23
§ 1365(b)(1)(B) .................................. 2, 5

H.R. Rep. No. 91-1783, at 56 (1970), reprinted in 1970
U.S.C.C.A.N. 5388 ......................................... 22

H.R. Rep. No. 92-911, at 133 (1972) reprinted in
A Legislative History of the Water Pollution Control
Act Amendments of 1972 .................................... 22

S. Rep. No. 99-50, at 27 (May 14, 1985) ................... 15

S. Rep. No. 414, 92d Cong., 2d Sess., *reprinted in*
1972 U.S. Code Cong. & Admin. News 3746 .................. 15

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY AND COUNTY
OF HONOLULU'S MOTION TO DISMISS PLAINTIFFS' FIRST
AND SECOND CLAIMS FOR RELIEF.

I.    INTRODUCTION

Plaintiffs' Sierra Club, Hawai'i Chapter, Hawai'i's
Thousand Friends, and Our Children's Earth Foundation
(collectively, "Citizens") brought this 2004 Clean Water Act
("CWA") citizen suit (1) to address serious deficiencies with the
City and County of Honolulu's ("CCH") sewage collection system
and waste water treatment plants ("WWTP"); and (2) to ensure fast
and effective relief for the citizens of O'ahu from pollution
problems created by CCH's raw sewage spills and failure to
adequately treat its WWTP discharges.

The Citizens' First and Second Claims respectively
allege that CCH violated the CWA: (1) by repeatedly spilling raw
sewage to waters of the United States without NPDES permit
authorization; and (2) by spilling raw sewage in contravention of
prohibitions on such spills in CCH's NPDES permits.

CCH moved to dismiss the Citizens' First and Second
Claims, arguing that they are barred by CWA § 505(b)(1)(B)[1] which
provides that citizen suit claims cannot be filed for CWA
violations if the U.S. Environmental Protection Agency ("EPA") or
the applicable State "has commenced and is diligently prosecuting
a civil or criminal action in a court of the United States" to
abate the same violations.  City and County of Honolulu's Motion

---

[1]    33 U.S.C. § 1365(b)(1)(B).

To Dismiss Plaintiffs' First and Second Claims for Relief ("CCH

Motion").   CCH argues that various judicial and administrative

actions and/or informal negotiations pursued by EPA and the State

of Hawai'i's Department of Health ("DOH") constitute diligent

prosecution by EPA and/or the State that bar the Citizens'

claims.

        CCH's arguments ignore Ninth Circuit precedent and rely

instead on out-of-circuit decisions that the Ninth Circuit has

rejected.   CCH argues that an EPA and DOH action, *United States,*

*et al. v. City and County of Honolulu*, Civ. No. 94-00765 DAE-KSC

("*EPA I*"), constitutes diligent prosecution of sewage spills

occurring **after** that case concluded in a 1995 consent

decree("1995 Consent Decree").   However, the Ninth Circuit is

clear that entry of a final order means that a government action

has ceased and  that the government is no longer actively

prosecuting an action that would bar a citizen suit.   *Knee Deep*

*Cattle Company, Inc. v. Bindana Investment Co. Ltd.*, 94 F.3d 514,

516 (9th Cir. 1996), *cert. dismissed*, 519 U.S. 1144 (2007).

        CCH further argues that EPA and DOH issuance of

administrative orders constitute diligent prosecution of CCH's

sewage spill violations that should bar the Citizen's First and

Second Claims under CWA § 505(b)(1)(B).   While CCH relies on a

First Circuit decision, *North & South Rivers Watershed*

*Association v. Scituate*, 949 F.2d 552, 553-58 (1st Cir. 1991),

the Ninth Circuit has twice expressly criticized *Scituate*[2] and

made plain a contrary rule that administrative enforcement can

**never** a bar to citizen suits under CWA § 505(b)(1)(B).  Instead,

only an action filed in *court* can have such preclusive effect.

*See, e.g., Sierra Club v. Chevron*, 834 F.2d 1517, 1525 (9th Cir.

1987).

    CCH then argues that EPA and DOH's prosecution of

*United States, et al. v. City and County of Honolulu*, Civ. No.

07-00235 DAE-KSC ("*EPA II*"), a case filed three years **after** the

Citizens filed this case ("*Sierra Club*") in 2004, also

constitutes diligent government prosecution that bars the

Citizens' First and Second Claims.  However, CCH ignores that EPA

and DOH prosecution of their 2007 case ceased when it was

resolved by a Stipulated Order ("2007 Stipulated Order") entered

October 10, 2007.  Moreover, EPA and DOH filed *EPA II* nearly

*three (3) years after* the Citizens filed *Sierra Club*.  Government

lawsuits only preclude citizen suits when the former are filed

**before** the citizen suit.  *E.g., Chesapeake Bay Foundation v.*

*American Recovery Co.*, 769 F.2d 207, 208 (4th Cir. 1985.

    Finally, CCH argues that EPA and DOH's current pursuit

of out-of-court negotiations bar the Citizens' First and Second

---

    [2]  *Citizens for a Better Environment v. Union Oil Co. Of*
*California* ("*UNOCAL*"), 83 F.3d 1111, 1117-18 (9th Cir. 1996),
*cert. denied,* 519 U.S. 1101 (1997); *Washington Pub. Interest*
*Research Group v. Pendleton Woolen Mills* ("*Washington PIRG*"), 11
F.3d 883, 886 (9th Cir. 1993).

Claims.  But informal negotiations do not constitute diligent

prosecution **in a court**.  While the First Circuit in *Scituate* may

have viewed informal government outreach to regulated entities to

promote compliance as the "commencement" and "prosecution" of

government enforcement, the Ninth Circuit has a clear strict

rule:  only when EPA or a state is actively prosecuting a

specific CWA violation *in a filed federal court action* is there a

diligent prosecution sufficient to bar to a citizen suit.  *E.g.*

*Sierra Club*, 834 F.2d at 1525.

     CCH's contentions that CWA § 505(b)(1)(B) bars the

Citizens' First and Second Claims lacks merit.  CCH's Motion

should be denied.

## II.  STATUTORY BACKGROUND

     Clean Water Act § 505 provides that any citizen may

commence a civil action in district court against any person who

is violating CWA standards or limitations or an order issued

pursuant to the CWA.  33 U.S.C. § 1365; *see generally UNOCAL*, 83

F.3d at 1115.

     The CWA imposes two specific limitations on this

general citizen suit right.  First, CWA § 505(b)(1)(B) precludes

citizens from commencing a new citizen suit:

> if the [EPA] Administrator or State has commenced and is
> diligently prosecuting a civil or criminal action in a court
> of the United States, or a State to require compliance with
> the standard, limitation, or order [that the citizen suit
> seeks to enforce].

33 U.S.C. § 1365(b)(1)(B).

Second, CWA § 309(g)(6) provides that EPA or State administrative penalty orders preclude citizens from pursuing civil penalty claims in the following situations:

[A]ny violation—

> (i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection,
> (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or
> (iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,

shall not be the subject of a civil penalty action under . . . section 1365 of this title [CWA § 505].

33 U.S.C. § 1319(g)(6).

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. CCH'S SEWAGE SPILL PROBLEM

CCH owns and operates several wastewater treatment plants (WWTP) and related collection systems that convey and treat domestic sanitary sewage on O'ahu, including the Sand Island, Honouliuli, Kailua, Wai'anae, and Kahuku WWTPs and appurtenant collection systems. As discussed and documented in multiple pleadings filed by the Citizens in this Court since at least the late 1980s, CCH repeatedly spilled raw sewage from its O'ahu sewage collection systems. These spills were and are due, *inter alia*, to: 1) sewer line blockages (generally caused by root intrusion, build-up of grease, and accumulation of sediment and debris); 2) pump station failures; 3) collapsing sewer lines; and

4) excessive "infiltration and inflow" ("I/I") into sewer lines
(rising groundwater or storm water runoff flowing into leaky
sewer lines during rainy weather).  *See, e.g.*, Plaintiffs Sierra
Club, Hawai'i Chapter; Hawai'i's Thousand Friends; and Our
Children's Earth Foundation's Motion for Reconsideration
("Reconsideration Motion") at 3, 6-7 (Docket Document No. 155-2,
filed Nov. 15, 2007); Declaration of Christopher Sproul in
Support of Motion for Reconsideration, ("Sproul Decl.") at ¶¶
11-17, Ex. L, M, N (Docket Document No. 155-3, filed Nov. 15,
2007).  In these spills, raw sewage bubbles out of sewer manholes
or other exit points from CCH's collection systems and flows into
public streets, streams, beaches, and other publicly accessible
areas.  Sproul Decl., ¶ 16.

> B.    EPA AND DOH'S 1994 CASE ("EPA I")

On October 3, 1994, EPA and DOH filed *EPA I* against CCH
and claimed numerous CWA violations resulting from ongoing spills
of raw sewage from CCH's sewage collection systems from 1987 to
1992.  Sproul Decl., Ex. A at 12, ¶ 46.  EPA and DOH
simultaneously lodged a proposed consent decree with CCH that
addressed CCH's violations as set forth in the EPA/DOH complaint.
On May 15, 1995, the Court entered a consent decree--the 1995
Consent Decree.  Sproul Decl., Ex. B.  The 1995 Consent Decree
included several programmatic and capital improvement
requirements designed to remedy CCH's sewage spill problem.  The
1995 Consent Decree did **not** require CCH to end all sewage spills,

but instead required CCH only to "use its best efforts to prevent, to the maximum extent reasonably possible, Collection System Spills in terms of frequencies, duration and volume." Sproul Decl., Ex. B at 15, ¶ VII.A.1.

The 1995 Consent Decree expressly resolved *only* CCH's CWA sewage spill violations through the date the 1995 Consent Decree was lodged, namely, October 3, 1994:

> "CCH's complete performance of all obligations established pursuant to this Consent Decree, including payment of all penalties hereunder, shall be in full satisfaction of all civil claims of the United States and the State alleged in the complaint *through the date of lodging of this Consent Decree*."

Sproul Decl., Ex. B at 56, ¶ XVII.B (emphasis added).

The 1995 Consent Decree *expressly* provided that the Decree did *not* limit or affect the rights of third parties not party to the Decree to proceed against CCH:

> This Consent Decree does not . . . limit the rights of third parties, not parties to this Consent Decree, against CCH.

Sproul Decl., Ex. B at 56, ¶ XVII.G.

C.  **PRIOR DISMISSAL AND REINSTATEMENT OF CITIZENS' SEWAGE SPILL CLAIMS**

In 2004, nearly ten years *after* the 1995 Consent Decree was filed, CCH continued to experience numerous and voluminous spills of sewage from its collection systems. Sproul Decl., ¶¶ 11-17. The Citizens concluded that the 1995 Consent Decree lacked all the relief necessary to abate this sewage spill

problem.  The Citizens also concluded that the 1995 Consent

Decree was not being diligently complied with nor enforced.  *Id.*,

¶ 5.  Believing that the 1995 Consent Decree was not the

exclusive judicial remedy for any and all future CCH sewage

spills, the Citizens filed this separate CWA citizen suit action

on July 29, 2004.  The citizens alleged, *inter alia*, that CCH

repeatedly violated the CWA by committing numerous sewage spills

from its collection systems between May 1999 and the present.

Plaintiffs' Second Amended Complaint (First and Second Claims for

Relief).

In September 2005, this Court dismissed the Citizens'

First and Second Claims in this action on the grounds that *res*

*judicata* barred these claims because EPA and DOH prosecuted these

claims in *EPA I* and the 1995 Consent Decree.  Sproul Decl., Ex.

C.  However, on February 26, 2008, this Court reviewed its prior

decision, granted the Citizens' Motion for Reconsideration, set

aside the  September 2005 dismissal order, and reinstated the

Citizens' First and Second Claims.  Order Granting Plaintiffs'

Motion for Reconsideration of Order Filed September 30, 2005

Dismissing Plaintiffs' First and Second Claims (Docket Document

No. 166) ("Reconsideration Order").  The Court held that, on

reconsideration, *EPA I* and the 1995 Consent Decree had **not**

prosecuted the same sewage spill claims alleged in the Citizens'

First and Second Claims.  Reconsideration Order at 13-17.  EPA I

and the 1995 Consent Decree addressed only CCH sewage spills **pre-**

**1994.** Sierra Club (2004) only alleged CCH spills from 1999 forward. *Id.* This Court found the lack of identity between the claims in *EPA I* (1994) and *Sierra Club* (2004) precluded any *res judicata* bar of the Citizens' First and Second Claims. *Id.*

### D.    CCH'S CONTINUING SEWAGE SPILLS POST-1994

As discussed and documented in detail in the Citizens' prior pleadings, the 1995 Consent Decree failed to end CCH's sewage spill violations. *See* Reconsideration Motion at 6-7. In the thirteen years since the 1995 Decree, CCH committed several hundred sewage spills all over Oʻahu. CCH regularly spills sewage at rates exceeding the 1995 Consent Decree's goals. Sproul Decl., ¶¶ 11-18, Ex L, M, N, O. These spills frequently closed beaches and continue to threaten the health and well-being of Hawaiʻi's residents and visitors. *Id.* The causes of these spills remain the same--sewer line blockages, pump station failures, collapsing sewer lines, and excessive I/I. *Id.*, ¶ 16. Despite this consistent pattern of on-going sewage spill violation by CCH, neither EPA nor DOH ever returned to the Court to seek any orders to enforce the 1995 Consent Decree. *Id.*, ¶ 19. Instead, as discussed below, EPA and DOH brought new independent enforcement actions.

### E.    EPA AND DOH ADMINISTRATIVE ENFORCEMENT

In apparent recognition that the 1995 Consent Decree was inadequate by itself to curb CCH's sewage spill problem, EPA and DOH issued administrative orders to CCH in 2003 and 2004.

These orders require CCH to take additional actions to remedy the problems beyond the measures set forth in the 1995 Consent Decree. Specifically, *EPA* issued a June 30, 2003 administrative order("EPA June 2003 Order") requiring CCH to develop a new action plan for reducing sewage spills into Kalihi and Nuʻuanu streams. Sproul Decl., Ex. G. *DOH* issued a proposed April 15, 2004 administrative order ("DOH 2004 Order") that would require CCH to implement measures to reduce spills from CCH's force mains (the sewer lines that transport sewage under pressure from pump stations). *Id.*, Ex. H.

Neither the June 2003 EPA Order nor the 2004 DOH Order sought or imposed civil penalties on CCH. EPA issued the EPA June 2003 Order pursuant to CWA § 309(a). That section does not authorize EPA to impose civil penalties. EPA may only impose administrative civil penalties by issuing an order under CWA § 309(g)(6), consistent with that provision's procedural requirements. *See Washington PIRG*, 11 F.3d at 885-86. The 2004 DOH Order stated that DOH intended to seek penalties in a future proceeding; but the 2004 Order did not otherwise impose civil penalties. Sproul Decl., Ex. H, Order at 6.

F.   EPA II

On May 8, 2007, EPA and DOH filed *EPA II* seeking additional judicial relief to curb CCH's sewage spill violations. The EPA and DOH complaint (*EPA II*) states a *single* CWA claim for injunctive relief against CCH for its 48 million gallon spill of

raw sewage into the Ala Wai Canal from March 26-30, 2006 which was caused by a rupture in CCH's Beachwalk force main.  Sproul Decl., Ex. D.  Concurrently with filing their complaint, EPA and DOH lodged a Stipulated Order purporting to resolve their one asserted claim.  The Stipulated Order requires CCH remedial action on six force main lines: 1) Beachwalk; 2) Ala Moana; 3) Old Hart Street; 4) Kailua/Kaneohe; 5) Waimalu; and 6) Kahala lines over a schedule extending to December 2018.  *Id.*, Ex. E. The Court entered the Stipulated Order on October 10, 2007.  *Id.*, Ex. F.

The Stipulated Order indicates that CCH, EPA, and DOH intend to pursue additional negotiations and additional judicial relief to address "all compliance issues associated with CCH's wastewater system."  *Id.*, Ex. E at 2.  EPA, DOH, and CCH have all represented to the Court that they are currently pursuing negotiations with the intent of agreeing on further judicial relief that would require CCH to implement additional measures and address deficiencies in CCH's sewage collection systems. *E.g.*, *id.*, Ex. I at 2-3, 8-9, ¶¶ 6, 8, 10, 30-31, 33; Ex. J at 4, ¶ 17; Ex. K at 3-4, 7-9, ¶¶ 14, 19, 30, 37.

IV.  **ARGUMENT**

CCH argues that the 1995 Consent Decree in *EPA I*, the EPA and DOH administrative orders, the 2007 Stipulated Order in *EPA II* and/or EPA, DOH and CCH's current global negotiations for additional judicial relief against CCH for the latter's

continuing sewage spill problem all constitute diligent government prosecution of CCH's post-1999 sewage spills alleged in the Citizens' First and Second Claims.  CCH contends that these government actions bar the Citizens' First and Second claims in the present suit pursuant to CWA § 505(b)(1)(B).  These arguments are without merit.

None of the described actions constitute a present on-going action in a United States District Court that is diligently prosecuting the same sewage spill violations alleged in the Citizens' First and Second Claims or that is likely to bring CCH into compliance with the CWA.  Under Ninth Circuit law, these actions can not bar the Citizens' First and Second Claims under CWA § 505(b)(1)(B).

A.    **CONGRESS ESTABLISHED CITIZEN SUITS AS AN IMPORTANT AVENUE TO ENFORCE AND VINDICATE THE CWA'S PURPOSE.**

CCH argues in essence that this Court should ignore the plain and unambiguous language of CWA §§ 505(b)(1)(B) and 309(g)(6) and dismiss the Citizens' First and Second Claims because (in CCH's view) it would be better policy to defer this litigation while EPA and DOH pursues uncertain and lengthy negotiations with CCH.  CCH Motion at 2-4, 36-37.  CCH argues that this approach fits Congressional intent that citizen suits should be precluded when EPA or a State is attempting to solve a pollution problem, so as not to interfere with the EPA or State's efforts.  *Id.*  CCH's arguments are meritless.

First, the Ninth Circuit squarely rejected a similar argument in *Washington PIRG, supra*. Arguments about sound policy involving deference to EPA and State enforcement can not trump the plain meaning of the applicable CWA provisions:

> [G]eneral arguments about congressional intent and the EPA's need for discretion cannot persuade us to abandon the clear language that Congress used when it drafted the statute. "The most persuasive evidence of . . . [congressional] intent is the words selected by Congress," . . . not a court's sense of the general role of citizen suits in the enforcement of the [Clean Water] Act.

11 F.3d at 886 (citations omitted).

Second, CCH's recitation of Congressional intent omits Congress' strong support for citizen suits as a vital public policy tool.  The CWA's legislative history reveals

> Congress' clear intention . . . that citizen plaintiffs [in CWA citizen suits] are not to be treated as 'nuisances or troublemakers' but rather as 'welcomed participants in the vindication of environmental interests.'

*Proffitt v. Municipal Auth. of the Borough of Morrisville*, 716 F. Supp. 837, 844 (E.D. Pa. 1989) (*quoting Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d Cir. 1976); *see also Sierra Club*, 834 F.2d. at 1525 (9th Cir. underscoring that citizen suits perform important public function); *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1136 (11th Cir. 1990) ("citizen suits are an important supplement to government enforcement of the Clean Water Act, given that the government has only limited resources to bring to its own enforcement actions."); *Save Our Bays & Beaches v. City and*

*County of Honolulu*, 904 F. Supp. 1098, 1125 (D. Haw. 1994) (Ezra, J.).

      The Congressional committee that drafted the CWA explained.

> It is the Committee's intent that enforcement of these control provisions be immediate, that citizens should be unconstrained to bring these actions, and that the courts should not hesitate to consider them.

*Sierra Club*, 834 F.2d at 1525 quoting S. Rep. No. 414, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin. News 3746. In 1985, when considering CWA amendments, Congress reviewed and expressed its approval of the widespread use of citizen suits:

> Citizen suits are a proven enforcement tool. They operate as Congress intended to both spur and supplement to government enforcement actions. They have deterred violators and achieved significant compliance gains. In the past two years, the number of citizen suits to enforce [CWA] NPDES permits has surged so that such suits now constitute a substantial portion of all enforcement under this Act.

*Proffitt*, 716 F. Supp. at 844 (quoting S. Rep. no. 99-50, at 27 (May 14, 1985).

      Both the express language in the CWA and Congress's intent in providing for citizen suits require that CCH's Motion be denied.

B.    EPA I AND THE 1995 CONSENT DECREE DO NOT CREATE A
      DILIGENT PROSECUTION BAR TO THE CITIZENS' SEWAGE
      SPILL CLAIMS.

Clean Water Act § 505(b)(1)(B) precludes citizen suits

only when (1) an EPA or State action is *currently* being

prosecuted; (2) the EPA or the State action is *diligently*

prosecuting *the same* violations alleged by a citizen suit; and

(3) the EPA or State action is designed to achieve complete

compliance with the CWA, not merely a decrease in the number or

magnitude of violations.  *See, e.g., Knee Deep*, 94 F.3d at 516;

*Sierra Club*, 834 F.2d at 1525; *Friends of Milwaukee's River v.*

*Milwaukee Metropolitan Sewerage District,* 382 F.3d 743, 764 (7th

Cir. 2004), *rehrg. en banc denied*, 2004 U.S. App. LEXIS 20747,

*cert. denied*, 544 U.S. 913 (2005); *Student Public Interest*

*Research Group of New Jersey, Inc. v. Georgia-Pacific Corp.*, 615

F. Supp. 1419, 1427 (D.N.J. 1985).  EPA and DOH prosecution of

*EPA I* fails these tests. EPA I does not bar citizen suits for

post 1994 sewage spills.

    1.    BECAUSE EPA AND DOH ARE NOT CURRENTLY
          PROSECUTING EPA I, EPA I DOES NOT BAR THE
          CITIZENS' CLAIMS.

        a.    NINTH CIRCUIT PRECEDENT MANDATES THAT
              ONLY GOVERNMENT ACTIONS THAT HAVE NOT
              CONCLUDED IN FINAL ORDERS CAN BAR
              CITIZEN CLAIMS UNDER CWA § 505.

Clean Water Act § 505(b)(1)(B) bars citizen suits only

if EPA or a State "*is* diligently prosecuting" a judicial case for

the same claims pursued by citizen plaintiffs (emphasis added).

Literally, this section provides that only when a government *is currently litigating in court* can the action bar a citizen suit. Courts are obligated to give effect to the plain, clear, and unambiguous meaning of statutes. *See, e.g.*, *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)("the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."); *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-844 (1984) (same); *Washington PIRG*, 11 F.3d at 886 (same).

Congress intended precisely this literal meaning. Examine the "is prosecuting" language in CWA § 505(b)(1)(B) in context. CWA § 505(b)(1)(B) provides that a citizen suit is only barred if EPA or a State "*has commenced*" and "*is* diligently prosecuting" an action. Congress used the past tense "has commenced" immediately prior to the present tense "is prosecuting." Similarly, in a closely related CWA section, CWA § 309(g)(6),[3] barring citizen suit penalty claims when agencies are prosecuting or have prosecuted certain administrative actions, Congress also employed changing verb tenses. CWA § 309(g)(6) bars citizen suit penalty claims 1) when EPA or the State "*has commenced* and *is* diligently prosecuting*" an administrative action seeking civil penalties; or 2) when EPA or the State "*has issued*

---

[3]    33 U.S.C. § 1319(g)(6)

a final order not subject to further judicial review and the violator *has paid* a penalty" pursuant to the order.  Congress's use, alternately, of verbs in the present and past tense underscores that Congress was mindful of verb tenses and chose the tenses deliberately to impart two  different and specific meanings.  A citizen suit alleging a particular violation is not barred *unless* 1) a government action was filed *before* the citizen suit; and 2) the government action has not yet concluded.  *Equal Employment Opportunity Commission v. Arabian American Oil Co.*, 499 U.S. 244, 258 (1991) (Alternating uses of language in similar contexts evidences Congressional awareness of the differing language's significance and a demonstration that Congress knows what words to use to convey different meanings–thus that the word choice is deliberate and must be respected);  *Arizona Health Care Cost Containment System v. McClellan*, 508 F.3d 1243, 1250 (9th Cir. 2007) ("a court must presume that Congress intended a different meaning when it uses different words in connection with the same subject").

The Ninth Circuit adopted this literal approach in construing the identically worded CWA § 309(g)(6).  The Court held that because CWA § 309(g)(6)(A)(ii)(A)(ii) uses the present tense "is prosecuting," agency administrative actions bar citizens' civil penalty claims only when the former are *currently on-going and have not yet concluded in a settlement or final order.  Knee Deep Cattle Co.*, 94 F.3d 514, 516 (9th Cir. 1996);

*Unocal,* 83 F.3d at 1118.   In *Knee Deep*, a citizen-enforcer
brought a CWA citizen suit against a sewage treatment system
operator.   The defendant sewage system operator argued that the
citizen suit should be barred because the applicable State agency
had issued a consent order requiring the defendant to implement
various future remedial measures over time to address its sewage
discharge violations.   Though the consent order required the
defendant to implement future remedial measures, the Ninth
Circuit held that because the consent order "was entered into
before [the citizen-plaintiff] filed suit . . . it cannot be said
that the state was diligently prosecuting an action at the time
Knee Deep filed its citizen suit."   94 F.3d at 516; *see also*
*Unocal* 83 F.3d at 1118 (noting that because final administrative
order had been issued, agency is no longer prosecuting an action,
even though the order imposed a time-line for future remedial
actions).

          Under well-accepted cannons of statutory construction,
this Ninth Circuit interpretation of "is prosecuting" in CWA §
309(g)(6)(A)(ii) logically applies to the identically worded "is
prosecuting" clause in CWA § 505(b)(1)(B).   *See LaRue v. DeWolff,*
*Boberg & Associates, Inc.*, 128 S.Ct. 1020, 1026-27 (2008) (it is
"our usual preference for construing the "same terms [to] have
the same meaning in different sections of the same statute'").
It would be illogical to hold that when an agency has issued a
final *administrative* consent order, the agency's prosecution has

necessarily concluded and the agency no longer "is prosecuting"
an action and not similarly hold that when the same agency has
secured a final *judicial* consent order, the agency has also
concluded its prosecution and no longer "is prosecuting" an
action.   Thus, CWA § 505(b)(1)(B) only bars citizen suits when an
EPA or State judicial case is still *currently* being prosecuted
(namely, the action has not yet concluded in a settlement or
judgment).   *SPIRG of New Jersey*, 615 F. Supp. at 1427; *Coalition
for Health Concern v. LWD, Inc.*, 834 F. Supp. 953, 956 (D. Ky.
1993) *rev'd on other grounds*, 60 F.3d 1188 (6th Cir. 1995);
("The fact that the terms of the settlement are still being
carried out does not mean that the dispute is ongoing.");
*Connecticut Fund for the Environment v. L & W Ind. Inc.*, 631 F.
Supp. 1289, 1291 (D. Conn. 1986).

        This interpretation is consistent with the Ninth
Circuit's conclusion that the CWA's citizen suit preclusion
provisions should be construed narrowly and literally to respect
the important public function of citizen suits.   *See Sierra Club*,
834 F.2d at 1525 (CWA § 505(b)(1)(B) bars citizen suits only when
agency prosecution is literally in "court," not before
administrative tribunal); *Washington PIRG*, 11 F.3d at 886 (CWA §
309(g)(6) literally construed; agency administrative actions
seeking compliance but not civil penalties do not bar citizen
claims and administrative actions can only bar civil penalty
claims); *Molokai Chamber of Commerce v. Kukui, Inc.*, 891 F. Supp.

1389, 1403-05 (D. Haw. 1995) (same); *Sierra Club v. Hyundai Am.*, 23 F. Supp.2d 1177, 1179 (D. Or. 1997) (CWA § 309(g)(6) literally construed; agency administrative enforcement bars citizen suit claims for penalties, but not injunctive relief); *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 803 (E.D. Cal. 1995) (same). Consistent with the Ninth Circuit's literal careful approach to CWA citizen suit preclusion, CWA § 505(b)(1)(B) precludes a citizen suit *only* when an agency is *currently* prosecuting a court action.

The Ninth Circuit's narrow and detailed approach in construing an exception to Congressional authorization of citizen suits also reflects the United States Supreme Court's view that exceptions to the general policies enunciated by a statute should be construed narrowly. *See, e.g., Comm'r v. Clark*, 489 U.S. 726, 739 (1989)) ("In construing [statutory] provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision. . . . To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people"); *see also United States v. Brace*, 41 F.3d 117, 125 (3d Cir. 1994) (express exceptions to CWA regulation stated in CWA § 404(f) are to be given "strict construction" in accord with overall environmental protection purpose of CWA). Congress broadly provided for citizen suits as

674944-2 / 7502-3                                    21

an important and worthy supplement to EPA and state enforcement. *E.g., Sierra Club*, 834 F.2d at 1525; *Friends of the Earth*, 535 F.2d at 172. To effectuate Congress' intent, restrictions on citizen suits must be construed narrowly. *Id.*

The relevant legislative history supports this reading of CWA § 505(b)(1)(B). Congress intended to bar citizen suits if a government "abatement action *is pending* and is being diligently prosecuted." H.R. Rep. No. 91-1783, at 56 (1970), reprinted in 1970 U.S.C.C.A.N. 5388; H.R. Rep. No. 92-911, at 133 (1972) reprinted in A Legislative History of the Water Pollution Control Act Amendments of 1972 (emphasis added). Thus, Congress clearly intended CWA § 505(b)(1)(B) to bar citizen suits only when an agency case is currently pending in court.

*EPA I* concluded in 1995 with a consent decree entered in this Court. EPA and DOH have not been back to court in *EPA I* since 1995. Thus, EPA and DOH are not currently prosecuting *EPA I*. The Citizens' First and Second Claims cannot be barred under CWA § 505(b)(1)(B).

> **b.    CCH'S CONTRARY RELIANCE ON OUT-OF-CIRCUIT DECISIONS IS MISPLACED.**

In arguing that *EPA I* is an on-going action that bars the Citizens' First and Second Claims even though this Court entered the 1995 Consent Decree concluding *EPA I*, CCH relies on cases outside the Ninth Circuit that are not good law inside the Ninth Circuit. CCH relies on the First Circuit's decision, *Scituate*, 949 F.2d 552, and similar decisions from other out-of-

circuit courts[4] for the proposition that when a State issues or secures an order requiring future remedial measures and is taking some steps to ensure implementation of these measures, the State is effectively prosecuting an on-going action that bars a citizen suit. CCH Motion at 32-36. The Ninth Circuit twice expressly disavowed *Scituate* as wrongly decided. *Unocal*, 83. F.3d at 1117-18; *Washington PIRG*, 11 F.3d. at 886.[5] *Scituate* squarely conflicts with the Ninth Circuit's controlling holdings in *Knee Deep* and *UNOCAL* (discussed above). Once a State order is issued and final, the State is no longer prosecuting an action even if

---

[4] The out-of-circuit decisions are: *Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007); *Community of Cambridge Environmental Health and Community Development Group v. City of Cambridge*, 115 F. Supp.2d 550 (D. Md. 2000), *Surrco v. Prasa*, 157 F. Supp.2d 160 (D.P.R. 2001); *Pennsylvania Envtl. Defense Found. v. Borough of North E.*, 1997 U.S. Dist. LEXIS 23864 (W.D. Pa. June 17, 1997); *City of Heath v. Ashland Oil, Inc.*, 834 F. Supp. 971 (S.D. Ohio 1993).

[5] *Scituate* has been repeatedly criticized as improperly disregarding the plain and unambiguous meaning of the applicable CWA provisions by numerous other courts, including this Court. *Save Our Bays & Beaches*, 904 F. Supp. at 1132 (D. Haw. 1994) (District Court Judge Ezra holding that "this court finds the rationale of *Scituate* and its progeny to be inconsistent with the liberality with which the Ninth Circuit has recently addressed citizen enforcement actions."); *Coalition for a Liveable W. Side v. New York City Dep't of Envtl. Protection*, 830 F. Supp. 194, 197 (S.D.N.Y. 1993) ("I find no basis for the First Circuit's redrafting of the statute [in *Scituate*]."); *Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 2003 U.S. Dist. LEXIS 26858, *21 (D. Okla. 2003) ("the Court has no choice but to follow the plain language of the statute" and reject *Scituate*), *aff'd*, 428 F.3d 1285 (10th Cir. 2005) ("It is difficult to read the provisions of [33 U.S.C.] § 1365 and § 1319 without conceding that the terms do not support the conclusion" reached in *Scituate*); *Natural Resources Defense Council, Inc. v. Vygen Corp.*, 803 F. Supp. 97, 101 & n.2 (N.D. Ohio 1992).

the order requires future remedial measures that the State will
continue to oversee.  *Scituate* and other non-Ninth Circuit cases
provide no support for CCH's argument.

     c.    GOVERNMENT ACTIONS SEPARATE AND
           INDEPENDENT OF EPA I ARE NOT PROSECUTION
           OF EPA I.

       Though unclear on this point, CCH appears to argue that
filing the June 2003 EPA Order and the 2004 DOH Order, filing *EPA
II*, securing the 2007 Stipulated Order, and on-going out-of-court
negotiations with CCH should all be viewed as "diligent
prosecution" of *EPA I* and the 1995 Consent Decree.  CCH Motion at
9-12, 30-31, 36.  This argument is also without merit and is
simply bootstrapping.  By issuing wholly separate administrative
orders, filing a completely new claim in a separate judicial
action and conducting out-of-court negotiations, EPA and DOH are
not prosecuting the claims they asserted in *EPA I*.  EPA and DOH
are pursuing new and different remedies.  *See Friends of
Milwaukee's Rivers*, 382 F.3d at 754-55 (a different and earlier
filed suit cannot be deemed to be the same as a later filed for
determining whether the government has commenced an action for
CWA § 505(b)(1)(B) purposes).

       Moreover, even if EPA and DOH were now to move for new
and supplemental relief in *EPA I*, this would not bar the
Citizens' First and Second Claims.  When the Citizens filed these
claims (July 2004), EPA and DOH were not and had not for several
years been actively prosecuting *EPA I*.  In rejecting a filing

date of a long-dormant State judicial action as the date when

government enforcement action "has commenced" (for CWA §

505(b)(1)(B) purposes), the Seventh Circuit in *Friends of*

*Milwaukee's Rivers* explained:

> If a state agency were allowed to
> indefinitely continue an enforcement action
> so as to ensure that it always has on the
> back burner a court action that has been
> "commenced" before any later citizens' suit
> could be filed, that arrangement would
> eviscerate the timely commencement
> requirement because the agency could wait as
> long as it liked before responding to any
> citizens' suit.  Using the earlier
> commencement date might also indicate a lack
> of diligence in resolving problems known
> about for years. . . . Any other conclusion
> would allow state agencies to file
> "placeholder" lawsuits or consent decrees to
> ensure timely commencement and then to
> grapple with the problem at their (relative)
> leisure. . . .

Friends of Milwaukee's Rivers, 382 F.3d 743, 754-55 & n.5.

2.   **EPA I AND THE 1995 CONSENT DECREE DID NOT
     DILIGENTLY PROSECUTE THE SAME CLAIMS ALLEGED
     BY CITIZENS' FIRST AND SECOND CLAIMS.**

a.   **EPA I DID NOT PROSECUTE THE SAME CLAIMS
     ALLEGED BY THE CITIZENS' FIRST AND
     SECOND CLAIMS.**

CCH erroneously contends that *EPA I* and the 1995

constitute diligent prosecution of the same sewage spill claims

alleged by the Citizens' First and Second Claims.  However, this

Court already held that *EPA I* and the 1995 Consent Decree did not

prosecute the same claims as those alleged by the Citizens' First

and Second Claims.  EPA I prosecuted CCH sewage spills prior to

1994; Sierra Club (2004) allege spill violations after 1999.

Reconsideration Order at 13-17.   Given that *EPA I* and the 1995

Consent Decree did **not** prosecute post-1999 sewage spills at all,

CCH cannot logically argue that *EPA I* and the 1995 Consent Decree

are currently doing so diligently.   *See Frilling v. Village of*

*Anna,* 924 F. Supp. 821, 838-39 (S.D. Ohio 1996) (CWA §

505(b)(1)(B) diligent prosecution bar only applies when

government court action has prosecuted the *same* violations

alleged by citizens); *Citizens Legal Envtl. Action Network, Inc.*

*v. Premium Std. Farms, Inc.*, 2000 U.S. Dist. LEXIS 1990, *18-19

(D. Mo. 2000) (government action only bars CWA citizen claims

when it has prosecuted the same violations alleged by citizens

and holding that separate days of pollutant discharges constitute

separately cognizable CWA violations, relying in part on *Save Our*

*Bays and Beaches*, 904 F. Supp. at 1125 (J. Ezra)); *Chesapeake Bay*

*Found., Inc. v. Bethlehem Steel Corp.*, 652 F. Supp. 620, 629 (D.

Md. 1987) (same); *Bayview Hunters Point Cmty. Advocates v. Metro.*

*Transp. Comm'n*, 177 F. Supp. 2d 1011, 1023-1025 (N.D. Cal. 2001),

*rev'd on other grounds*, 366 F.3d 692 (9th Cir. 2004) (same rule,

Clean Air Act actions).

        **b.**    **ALTERNATIVELY, EPA I DID NOT DILIGENTLY**
            **PROSECUTE CCH'S POST-1999 SEWAGE SPILLS.**

Even if *EPA I* and the 1995 Consent Decree were

construed to prosecute *post-1999* CCH sewage spills, the 1995

Consent Decree is not diligent prosecution of these spills

sufficient to bar the Citizens' First and Second Claims under CWA § 505(b)(1)(B).

While the Ninth Circuit has not determined the standard for finding a government CWA enforcement action to be a diligent prosecution, the Second and Seventh Circuits have issued instructive decisions.  The Second Circuit held that an EPA action only constitutes diligent prosecution:

> [i]f the [government] enforcement proceeding has caused the violations alleged in the citizen suit to cease without any likelihood of recurrence. . . . If . . . such violations are in fact continuing or . . . the terms of the settlement are such that a realistic prospect of continuing violations exists, [the citizens] may continue to pursue relief under the Clean Water Act.

*Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*, 933 F.2d 124 (2d Cir. 1991); *see St. Bernard Citizens for Environmental Quality, Inc. v. Chalmette Refining, L.L.C.*, No. 04-0398, 2007 WL 2323387, at *13-*14 (E.D. La. Aug. 10, 2007).

The Seventh Circuit endorsed a slightly less rigorous test.  An EPA action constitutes diligent prosecution if it has secured relief both calculated to and capable of requiring a complete end to CWA violations, not merely a reduction in the number or size of them.  *Milwaukee's Rivers*, 382 F.3d at 757-65; *see St. Bernard Citizens*, 2007 WL 2323387, at* 13-*14.  Applying this standard, the Seventh Circuit found that an EPA consent decree did not constitute a diligent prosecution given the City of Milwaukee's continued sewage spills and the apparent goal of

agency enforcement was only the eventual reduction of sewer
overflows, not their elimination.  382 F.3d at 763-64.

By entering the Stipulated Order in *EPA II*, the Court
effectively held that the 1995 Consent Decree *is not* a diligent
prosecution of post-1994 sewage spills within the meaning of the
Second and Seventh Circuit tests, in as much as the Court
effectively held that additional post-1995 Consent Decree relief
is necessary and appropriate to curbing CCH's on-going sewage
spill violations.

EPA and DOH's recent prosecutorial conduct buttresses
this conclusion.  EPA and DOH implicitly acknowledged that the
1995 Consent Decree does not constitute a diligent prosecution of
post-1994 sewage spills within the meaning of the Second and
Seventh Circuit standards by:  (1) issuing the June 2003 EPA
Order and 2004 DOH Order that imposed new requirements on CCH to
address sewage spills; (2) filing *EPA II* along with the
Stipulated Order that similarly imposed new sewage spill remedial
requirements on CCH; and (3) by declaring to the Court their
intention to seek yet additional judicial relief for CCH's sewage
spill problems.  *A fortiori*, EPA and DOH would only impose
additional sewage spill remedial action requirements on CCH if
the 1995 Consent Decree: (1) has not caused CCH's post-1994
sewage spill violations "to cease without any likelihood of
recurrence" (as required by the Second Circuit standard); and/or
(2) has not awarded relief both calculated to and capable of

requiring a complete end to CWA violations (as required by the
Seventh Circuit standard).

Finally, as well-documented, CCH has committed hundreds
of sewage spill violations after entry of the 1995 Consent
Decree.  Moreover, the 1995 Consent Decree expressly required CCH
only to "use its best efforts to prevent, to the maximum extent
reasonably possible, Collection System Spills in terms of
frequencies, duration and volume," rather than come into full
compliance with the CWA and halt all unlawful spills.  Sproul
Decl., Ex. B at 15, ¶ VII.A.1.  This continuing spill violation
history coupled with the plain language of the 1995 Consent
Decree further establishes that the Decree has not ended CCH's
violations, is not designed to end these violations, and is not
capable of doing so.  Thus, the 1995 Consent Decree can not
possibly be deemed to be diligent prosecution within the meaning
of the Second or Seventh Circuit tests.

CCH relies on the *Scituate* decision and a Tenth Circuit
decision for the proposition that an EPA action should be
presumed diligent regardless of whether the action will bring the
violator into CWA compliance.  CCH Motion at 28-30 citing
*Scituate*, 949 F.2d at 557; *Karr v. Hefner*, 475 F.3d 1192,
1197-1198 (10th Cir. 2007).  The Court should reject this
minority approach.  As noted, the Ninth Circuit twice expressly
criticized the *Scituate* opinion for faulty reasoning.  Moreover,
the *Karr* decision conflicts with the Ninth Circuit's narrow

approach to the CWA's citizen suit bars as reflected in
*Washington PIRG*, *Sierra Club*, *UNOCAL*, and *Knee Deep*.  Instead,
the Court should be guided by the Second Circuit or Seventh
Circuit standards.

A 2007 district court in the Eleventh Circuit recently
found that:

> the Seventh Circuit's "diligent prosecution"
> standard in *Friends of Milwaukee's Rivers* is
> the most practical and realistic approach. .
> . .  That is, the "diligent prosecution"
> analysis should look to whether the
> government enforcement action is capable of
> requiring compliance with the [environmental
> statute] and is in good faith calculated to
> do so. . . . This approach does not give the
> polluter a pass simply because it has reached
> a settlement with a government enforcement
> agency.

*St. Bernard Citizens*, 2007 WL 2323387, at* 13-*14; *see
also Public Interest Research Group, Inc. v. Rice*, 774 F. Supp.
317, 326-27 (D. N.J. 1991) (EPA enforcement action does not
constitute diligent prosecution when action will not curtail CWA
violations).

In sum, the 1995 Consent Decree was not designed to
end, is insufficient to end, and manifestly has not ended CCH's
sewage spill violations.  This precludes finding that *EPA I* and
the 1995 Consent Decree constitute diligent prosecution of the
CWA violations alleged by Citizens' First and Second Claims.

C.   **EPA AND DOH'S ADMINISTRATIVE ORDERS DO NOT CREATE A DILIGENT PROSECUTION BAR TO THE CITIZENS' SEWAGE SPILL CLAIMS.**

CCH apparently argues that the June 2003 EPA Order and the 2004 DOH Order constitute diligent prosecution of the sewage spill claims asserted by the Citizens' First and Second Claims and that the EPA and DOH administrative actions should also preclude these Claims pursuant to CWA § 505(b)(1)(B).  CCH Motion at 9-12.  This is wrong under controlling Ninth Circuit law.  The EPA and DOH administrative orders are not government actions *in court*.  Only government actions filed *in courts* can have any diligent prosecution bar effect under CWA § 505(b)(1)(B).  *Sierra Club*, 834 F.2d at 1525.

Further, CCH has no basis for alternatively seeking to rely on CWA § 309(g)(6)'s citizen suit bar to dismiss the Citizens' First and Second Claims.  First, CWA § 309(g)(6) only bars citizen suit civil penalty claims if (1) EPA or the State has either issued a final order imposing civil penalties and collected those penalties; or (2) is currently prosecuting an administrative adjudication that is seeking civil penalties.  *E.g.*, *Washington PIRG*, 11 F.3d at 885-86; *UNOCAL*, 83. F.3d at 1115-17.  Neither the June 2003 EPA Order nor the 2004 DOH Order imposed civil penalties.  Second, at most, CWA § 309(g)(6) only bars citizen claims *for civil penalties*, not injunctive relief.  *E.g.*, *Washington PIRG*, 11 F.3d at 887.

Therefore, at a minimum, the Citizens are entitled to pursue their First and Second Claims and to seek injunctive relief even if these orders were seeking or had imposed civil penalties.

D.    **EPA II AND THE 2007 STIPULATED ORDER DO NOT CREATE A DILIGENT PROSECUTION BAR TO THE CITIZEN'S SEWAGE SPILL CLAIMS.**

CCH also argues that *EPA II* and the 2007 Stipulated Order constitute diligent prosecution of the sewage spill claims asserted by the Citizens' First and Second Claims and preclude these Claims pursuant to CWA § 505(b)(1)(B). CCH Motion at 11-12, 30-31. This argument is without merit.

First, EPA and DOH ended their prosecution of *EPA II* with the equivalent of a consent decree. As discussed above, the entering of a consent decree precludes finding that EPA and DOH are *presently* prosecuting an action–a necessary finding for barring a citizen suit under CWA § 505(b)(1)(B).

Second, EPA and DOH filed *EPA II* in 2007, almost three years *after* the Citizens filed their First and Second Claims in July 2004. As CWA § 505(b)(1)(B) plainly provides that a citizen suit is only barred if EPA or the State "*has commenced*" an action. For a government action to preclude a later citizen suit, the government action must be filed **before** the citizen suit. *Friends of Milwaukee's Rivers*, 382 F.3d at 754-55; *Chesapeake Bay Foundation*, 769 F.2d at 208; *Altamaha Riverkeepers v. City of Cochran*, 162 F. Supp. 2d 1368, 1373 (D. Ga. 2001);

*Natural Resources Defense Council, Inc.* v. *Lowengart & Co.*, 776 F. Supp. 996, 1000 (D. Pa. 1991); see *Washington PIRG*, 11 F.3d. at 886 (facially plain meaning of CWA's citizen suit bars are to be given effect).

Therefore, *EPA II* and the 2007 Stipulated Order can not bar the Citizens' First and Second Claims pursuant to CWA § 505(b)(1)(B).

Third, the EPA and DOH complaint in *EPA II* and the 2007 Stipulated Order alleged and resolved only a *single* spill violation, CCH's March 2006 Beachwalk force main spill. Obviously, *EPA II* and the 2007 Stipulated Order do not address and cannot be construed as diligent prosecution of the *many hundreds* of post-1995 CCH sewage spills that the Citizens addressed in this suit filed three years earlier. *See, e.g.*, *Frilling*, 924 F. Supp. at 838-39 (CWA § 505(b)(1)(B) diligent prosecution bar only applies when government court action has prosecuted the same violations alleged by citizens); *Citizens Legal Envtl. Action Network*, 2000 U.S. Dist. LEXIS 1990, *18-19 (government action only bars CWA citizen claims when it has prosecuted the same violations alleged by citizens).

EPA II and the 2007 Consent Decree can not bar the Citizen's First and Second Claims.

E.   EPA, DOH, and CCH's ON-GOING OUT-OF-COURT
     NEGOTIATIONS ARE NOT DILIGENT PROSECUTION AND CAN
     NOT BAR TO THE CITIZENS' SEWAGE SPILL CLAIMS.

CCH finally contends that EPA, DOH, and CCH's currently
on-going out-of-court negotiations (that may culminate *some day*
in additional judicial relief) constitutes diligent prosecution
within the meaning of CWA § 505(b)(1)(B) of the sewage spill
claims asserted by the Citizens' First and Second Claims.   CCH
Motion at 12, 31.   However, EPA and DOH have no currently
pending, unresolved sewage spill claims before this Court.   The
agencies' out-of-court negotiations do not constitute diligent
prosecution *in a court*.   Only when EPA or a state is actively
prosecuting a given CWA violation in a filed United States court
action is there a diligent prosecution bar to a citizen suit.
*Sierra Club*, 834 F.2d at 1525; *see also Friends of Milwaukee's
Rivers*, 382 F.3d at 757 (action is "commenced" only when filed in
court); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618-19
(7th Cir. 1998) (informal agency actions, such as letter writing,
do not constitute commencement of an enforcement action for
citizen suit preclusion purposes).

Out of court negotiations are not and can not be a
diligent prosecution bar to the Citizen's claims.

V.   CONCLUSION

Neither the 1995 Consent Decree in *EPA I*, EPA and DOH
administrative orders, the 2007 Stipulated Order in *EPA II*, nor
EPA, DOH and CCH's now on-going negotiations for additional

judicial relief against CCH for the latter's continuing sewage spill problem constitute "diligent government prosecution" of CCH's post-1999 sewage spills alleged in the Citizens' First and Second Claims.

These government actions can not serve to bar the Citizens' First and Second Claims under CWA § 505(b)(1)(B). CCH's Motion should be denied.

DATED:  Honolulu, Hawai'i, April 10, 2008.

Respectfully submitted,

    /s/ William M. Tam
CHRISTOPHER SPROUL
Environmental Advocates

PAUL ALSTON
WILLIAM M. TAM
BLAKE K. OSHIRO
Alston Hunt Floyd & Ing
Attorneys for Plaintiffs