CARRIE OKINAGA, 5958
Corporation Counsel
KATHLEEN A. KELLY, 6729
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone:  (808) 768-5235
Facsimile:  (808) 523-4583
Email: kkelly@co.honolulu.gov

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone:  (213) 680-6400
Facsimile:  (213) 680-6499
Email:  nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br>Defendant. | CIVIL NO. CV 04-00463 DAE-BMK<br><br>**CITY AND COUNTY OF HONOLULU'S REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF; DECLARATION OF KATHLEEN A. KELLY; EXHIBITS 1-6; LR 7.5 CERTIFICATE OF COUNSEL CERTIFICATE OF SERVICE**<br><br>Date:      April 28, 2008<br>Time:      9:45 am<br>Judge:    Hon. David Alan Ezra |

I.    INTRODUCTION

          The United States Environmental Protection Agency ("EPA") and the

State of Hawai'i Department of Health ("DOH") (collectively, "Governments") are

currently diligently prosecuting two actions ("1994 Government Lawsuit" and

"2007 Beachwalk Lawsuit") against the City and County of Honolulu ("CCH")

based on spills from CCH's wastewater collection system.  These actions are based

on the *same* CWA limitations alleged in plaintiffs' first and second claims in this

action (the "claims").  CCH's Motion to Dismiss ("Motion"), 4-9, 22-28.  As a

result of Governments' prosecution of these lawsuits, EPA and DOH are currently

actively enforcing CCH's compliance with a 20-year, $910 million collection

system rehabilitation program under a 1995 Consent Decree ("1995 CD") and a

$300 million force main program under a 2007 Stipulated Order.  Under these

circumstances--where there is a "living and breathing" injunctive program that

addresses a plaintiffs' claims--plaintiffs' duplicate claims are precluded under 33

U.S.C. §1365(b)(1)(B), §505(b)(1)(B) of the Clean Water Act ("CWA"), and must

be dismissed.

          Despite the comprehensive existing remedy and ongoing

governmental enforcement, plaintiffs claim (1) the 1994 Government Lawsuit does

not preclude the claims because that action concluded with the entry of the 1995

CD and therefore there is no "current" diligent prosecution (Opp'n, 16-22), (2) the

1

1994 Government Lawsuit and subsequent 1995 CD do not prosecute the post-1999 spills their Complaint alleges, and therefore the same claims are not involved (Opp'n, 25-26), (3) the 1995 CD does not constitute diligent prosecution of the same claims because it does not eliminate (and does not require CCH to eliminate) all spills (Opp'n, 26-30), (4) Governments' long-term injunctive relief measures and other enforcement activities are not part of a comprehensive enforcement of collection system issues, but rather are disconnected "new and different remedies" (Opp'n, 24-25, 31-34), and (5) the claims should not be precluded because of the vital role the CWA affords citizens (Opp'n, 13-15).

Plaintiffs' Opposition is without merit. First, Governments' implementation and ongoing enforcement of long-term injunctive relief measures here constitute "current" diligent prosecution. Plaintiffs have provided no contrary controlling caselaw. Second, because plaintiffs' claims allege violations of the same CWA limitation as the 1994 Government Lawsuit--spills from the collection system--plaintiffs' claims are precluded, even though the prior lawsuit does not specifically allege the exact same spills. Third, the 1995 CD constitutes diligent prosecution because it is designed to address the same collection system issues that form the basis of plaintiffs' claims. Fourth, the Governments' actions over the past 14 years are part of a continuum of ongoing diligent oversight and enforcement that illustrate Governments are fully in the driver's seat with regard to collection

2

system issues.  Finally, plaintiffs ignore the government's preeminent role in

enforcing the CWA.  When the government has taken the enforcement reigns,

citizens are provided with a supporting role through intervention.  Here, plaintiffs

have successfully intervened in both the 1994 and the 2007 Lawsuits.

II.     IN ASSERTING THE 1995 CD DOES NOT CONSTITUTE
        "CURRENT" DILIGENT PROSECUTION, PLAINTIFFS
        RELY ON INAPPLICABLE CASELAW

        By citing to inapplicable Ninth Circuit caselaw, plaintiffs claim that

subsequent citizen lawsuits are not precluded if the prior government lawsuit has

already resulted in a remedy.  Opp'n, 16-22.  Plaintiffs' position exhibits a

fundamental misunderstanding of the CWA and the purposes underlying Section

505(b)(1)(B) .

        A.     Plaintiffs Fail To Acknowledge The CWA Contains Two Distinct
               Statutory Bars To Subject Matter Jurisdiction

        The CWA contains two distinct preclusion provisions--§505(b)(1)(B)

and §309(g) (6)(A) .  The former, upon which CCH's Motion is based, prevents

duplicative *compliance remedies* for the same types of violations already addressed

under a prior lawsuit.  Section 309(g)(6)(A), on the other hand, prevents

duplicative *administrative penalties* based on specific past violations.[1]  Thus,

---

[1]     Compare §505(b)(1)(B) ("is diligently prosecuting . . . to require
*compliance*") (emphasis added) with §309(g)(6)(A), which lacks the second
phrase.

§309(g)(6)(A) is much narrower in scope than §505(b)(1)(B), and is entirely irrelevant to CCH's Motion. In claiming the 1995 CD cannot act as a bar to their claims, plaintiffs fail to make this critical distinction. Opp'n, 16-22.

      1.     Section 505(b)(1)(B) Applies To *Compliance* Remedies *Moving Forward*

Section 505(b)(1)(B) precludes a subsequent citizen *lawsuit* when EPA is already prosecuting the same types of violations as part of a prior *lawsuit* under CWA. See Motion, 14-15. Thus, under §505(b)(1)(B), when the government has brought a court action based on a violation of a CWA "standard, limitation, or order" and is "diligently prosecuting" that type of violation to "require compliance" with CWA, citizens are barred from initiating a subsequent lawsuit based on that type of violation. 33 U.S.C. §1365(b)(1)(B). See also, e.g., Karr v. Hefner, 475 F.3d 1192 (10th Cir. 2007), Motion, 14-19. The purpose of preclusion under §505(b)(1)(B) , therefore, is to allow the government to implement a remedy while preventing duplicative or conflicting injunctive measures stemming from a subsequent citizen suit. See, e.g., Penn. Envtl Def. Found. v. Borough of North East, Civ. No. 96-362, 1997 U.S. Dist. LEXIS 23865, *33-34 (W.D. Pa. Dec. 31, 1997) (Under §505(b)(1)(B) , the government has discretion to choose the appropriate remedy: "a citizen-plaintiff cannot demonstrate a lack of diligence by showing that, if he were the captain of the State's case, he would have chosen an alternative enforcement strategy"). To

4

achieve this purpose, EPA need not currently be litigating the lawsuit in court; a court-approved consent decree including ongoing injunctive programs equally fulfills this function.  See, e.g., North & South Rivers Watershed Ass'n v. Scituate, 949 F.2d 552, 553-58 (1st Cir. 1991).

2.  Section 309(g)(6)(A) Only Precludes Duplicative *Penalties* For *Specific Past* Violations

In contrast, §309(g)(6)(A) precludes only subsequent claims for *penalties* when the government is currently prosecuting an action for *penalties* under §309(g).  See 33 U.S.C. §1319(g)(6)(A) ("any violation" for which EPA or the State is diligently prosecuting under §309(g) "shall not be the subject of a *civil penalty* action") (emphasis added).  Unlike §505(b)(1)(B), §309(g)(6)(A) is unrelated to the broad relief the government may seek, and accordingly, has a more narrow preclusive effect.

3.  It Is Irrelevant Here That Section 309(g)(6)(A) Precludes Subsequent Penalty Claims Under "Comparable" State Laws

Plaintiffs rely heavily on the Ninth Circuit's criticism that Scituate, 949 F.2d 552, was wrongly decided.  Opp'n, 3-4, 23, 29.  The contested point of law in Scituate, however, is irrelevant here.  The criticism of Scituate concerns the First Circuit's expansive reading of the "comparability" provision of CWA §309(g).  The essence of the "comparability" provision is when a state is prosecuting an action for *civil penalties* under a state scheme "comparable" to

§309(g), citizens' suits may be precluded.  See, e.g., Save Our Bays & Beaches v. City & County Honolulu, 904 F. Supp. 1098, 1126 (D. Haw. 1994) (Ezra, J.).

Scituate held a state law was "comparable" to §309(g) even though the statute (unlike §309(g)) did not provide for prior public notice of enforcement orders.  Scituate, 949 F.2d at 556.  Save Our Bays, noting that other courts had criticized Scituate's expansive reading of §309(g), construed §309(g) more narrowly by holding "state laws which do not provide similar mandatory safeguards of public notice and participation cannot be deemed 'comparable' to section 1319(g)."  Id. at 1133.  Whether or not 309(g)'s "comparability" provision regarding state and federal law should be interpreted narrowly or broadly, however, has nothing to do wh CCH's Motion, which is brought under §505(b), not §309(g).  By ignoring this critical distinction, plaintiffs mislead the court about the importance of Scituate's detractors.  CCH relies on Scituate not for this irrelevant "comparability" point of law in a civil penalties case, but rather for support of CCH's argument that a government's ongoing injunctive relief--like the 1995 CD here--constitutes diligent prosecution.  Motion, 31-33.

    B.    The 1995 CD Constitutes "Current" Diligent Prosecution Under §505(b)(1)(B)

Despite the comprehensive 20-year, $910 million injunctive program required under the 1995 CD and the $300 million program under the 2007 Beachwalk Lawsuit, plaintiffs assert the claims should not be precluded because

6

the prior EPA action and the 2007 Lawsuit have already resulted in settlements. Opp'n, 3-4, 16-25. As an initial matter, plaintiffs are simply incorrect as both the 1994 and 2007 claims are outstanding and this Court retains jurisdiction. Motion, 8-12. Second, plaintiffs' position would encourage citizen-plaintiffs to opportunistically wait until the government settled with the defendant in order to subsequently bring their own lawsuit, *without regard to the remedy imposed in the government's lawsuit*. Congress could not have intended this result. Indeed, if this were permitted, it is difficult to understand why a defendant would *ever* enter a settlement agreement with the government and risk being hauled back into court the next day, knowing citizens could immediately allege "new claims." Third, plaintiffs' position could result in multiple, redundant and conflicting remedies for the same violations, which would discourage settlement and impede CWA's primary enforcer--the government. This cannot be what Congress envisioned. See Karr, 475 F.3d at 1197-98; Orange Env't, Inc. v. County of Orange, 923 F.Supp. 529, 539-40 (S.D.N.Y. 1996), Motion 17-19.

1.    Plaintiffs' Reliance On §309(g)(6)(A) Is Misplaced

In asserting the ongoing implementation of the 1995 CD is not "current" diligent enforcement, plaintiffs rely primarily on irrelevant Ninth Circuit law interpreting §309(g)(6)(A)-- Citizens for a Better Environment v. Union Oil Co. of California ("UNOCAL"), 83 F.3d 1111 (9th Cir. 1996), and Knee Deep

7

Cattle Co., Inc. v. Bindana Investment Co., Ltd., 94 F.3d 514 (9th Cir. 1996).

Neither of these cases addresses whether long-term injunctive measures constitute

"current" diligent prosecution under *§505(b)(1)(B)*.

UNOCAL involved a cease and desist order issued under California

Water Code §13301.  UNOCAL, 83 F.3d at 1117.  In a subsequent citizen suit, the

court held the citizen action was not precluded under §309(g)(6)(A) because

§13301 is not comparable to §309(g) in that it provides only for injunctive

measures, not penalties.  83 F.3d at 1116.  Still, plaintiffs apparently rely on the

Ninth Circuit's statement  "it seems plain that no action is being prosecuted at this

time" (id.) in asserting EPA's prior action here is not currently being diligently

prosecuted because a settlement has been reached.  Opp'n, 22.  However, given

UNOCAL was brought under §309(g)(6)(A), which looks backward to protect the

defendant from duplicative penalties for past violations, it is clear the court's

statement references the fact there was no current action *for penalties* for the

violations alleged.  Accordingly, UNOCAL did not address whether an *ongoing*

*injunctive program*, such as exists here, constitutes current diligent prosecution

under §505(b)(1)(B).  UNOCAL is therefore irrelevant.

Plaintiffs' reliance on Knee Deep is similarly misplaced.  There, a

state agency brought an administrative enforcement action against defendant that

resulted in an injunctive order requiring facility upgrades, but did not assess civil

penalties.  Knee Deep, 94 F.3d at 515.  In a subsequent citizen suit, the Ninth

Circuit disagreed with defendant that §309(g)(6)(A) precluded the citizen's action

because the state agency's enforcement was not brought under a state law

comparable to §309(g) as the prior administrative action settled "past violations

*without penalty.*"  Id. at 517 (emphasis added).  The Knee Deep court did not reach

the question here--whether an ongoing injunctive program  constitutes current

diligent enforcement under §505(b)(1)(B).[2]

   Subsequent to UNOCAL and Knee Deep, other courts have

recognized the Ninth Circuit did not make a substantive holding that ongoing

injunctive relief programs cannot constitute current diligent enforcement, even

under §309(g)(6)(A).  See, e.g., Friends of Frederick Seig Grove #94 v. Sonoma

County Water Agency, 124 F.Supp.2d 1161, 1171-72 (N.D. Cal. 2000) (Knee

Deep and UNOCAL "ignore the possibility that a state environmental agency

might issue orders designed to prevent future violations of an NPDES permit as

well as remedy past violation . . . . *It is noteworthy that both* Knee Deep *and*

UNOCAL *involved state laws that were not comparable to the CWA penalty*

---

[2] Plaintiffs also ignore (Opp'n, 18-19) that the Knee Deep court, without
analysis, stated in *dicta* the order "was entered into before [plaintiff] filed suit, and
therefore . . . it cannot be said that the state was diligently prosecuting an action at
the time [ plaintiff] filed its citizen suit."  Id. at 516.  Because the court found the
state's action was taken pursuant to a state law that was not comparable to §309(g),
however, the court did not reach whether an ongoing *injunctive program*
constitutes current diligent prosecution under §505(b)(1)(B).

provision . . . . *Those cases leave open the question of whether a series of orders . . . designed to remedy past violations as well as prevent future violations could constitute diligent prosecution*") (emphasis added).  In short, the cases plaintiffs rely on are neither applicable nor controlling.  Although the issue of whether long-term injunctive relief measures constitute current diligent prosecution is unsettled in the *Ninth* Circuit, a majority of *other* circuits have held they do.[3]

> 2.    Plaintiffs Fail To Cite Any Relevant §505(b)(1)(B) Authority

The *only* cases discussed by either side that are directly on point and address the specific statutory issue here--whether the implementation of an ongoing collection system injunctive relief program under a "living and breathing" settlement agreement constitutes "current" diligent enforcement under §505(b)(1)(B)--are Community of Cambridge Environmental Health & Community Development Group v. City of Cambridge, 115 F.Supp.2d 550 (D. Md. 2000) and Penn. Envtl. Def. Found., 1997 U.S. Dist. LEXIS 23865, which are fully described in CCH's Motion, 33-35.  Plaintiffs' only critique of these §505(b)(1)(B) cases is that they are outside the Ninth Circuit.  Opp'n, 22.

---

[3]    See, e.g., Karr, 475 F.3d at 1197-98; Ellis v. Gallatin Steel Co., 390 F.3d 461, 476-77 (6th Cir. 2004); Scituate, 949 F.2d at 557; EPA v. City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir. 1990).

10

In contrast to the "living and breathing" 1995 CD, plaintiffs rely on SPIRG of New Jersey, Inc. v. Georgia Pacific Corp., 615 F.Supp. 1419, 1427 (D.N.J. 1985) (Opp'n, 20), involving an inactive settlement agreement that required a *one-time* facility upgrade. *Subsequent* to the completion of this upgrade, a citizen plaintiff brought a lawsuit based on violations occurring after the injunctive relief was *complete*. Id. Accordingly, because the citizen suit was based on later violations not being addressed by any *current* injunctive program, the court held the citizen suit was not precluded. Id. Thus, unlike in Cambridge and Penn. Envtl. Defense Fund., PIRG did not address whether an ongoing injunctive relief program constitutes current diligent enforcement.[4]

Plaintiffs do not cite any relevant authority holding the 1995 CD is not "current" diligent prosecution under §505(b)(1)(B). Accordingly, plaintiffs' claims should be dismissed.

---

[4]    Plaintiffs also cite Connecticut Fund for the Environment v. L & W Ind., Inc., 631 F.Supp. 1289 (D. Conn. 1986) (Opp'n, 20), a case which does not indicate the prior action involved ongoing *injunctive* measures, or that the subsequent action was even based on the same types of violations. Likewise, plaintiffs cite Coalition for Health Concern v. LWD, Inc., 834 F.Supp. 953, 956 (D. Ky. 1993), *rev'd on other grounds*, 60 F.3d 1188 (6th Cir. 1995) (Opp'n, 20), even though in that case, unlike here, "[n]either the EPA nor the State has commenced a court action to require [defendant's] compliance with the RCRA provisions cited in Plaintiffs' complaint." Coalition, 834 F.Supp. at 956 (holding an *administrative proceeding* already begun does not preclude a citizen suit).

11

III.  BECAUSE THE 1994 GOVERNMENT LAWSUIT
      INVOLVES THE SAME "STANDARD, LIMITATION, OR
      ORDER" AS PLAINTIFFS' SPILL CLAIMS, THOSE
      CLAIMS ARE BARRED

   Plaintiffs argue since their lawsuit does not allege precisely the "same

claims"--i.e., spills subsequent to May 1999--as alleged in the 1994 Government

Lawsuit, the claims are not precluded.  See Opp'n, 25-26.  "Same claims",

however, is *not* the §505(b)(1)(B) standard.  Rather, a citizen suit is precluded

when the Government is diligently prosecuting an action "to require compliance

with the *standard, limitation, or order*" that is at issue in the citizen action.  33

U.S.C. § 1365(b)(1)(B) (emphasis added), Motion, 22-28.

   Only a cursory comparison of the pleadings is required to determine

whether both parties seek compliance with the same "standard, limitation, or

order".  Conn. Fund for Env't v. Contract Plating Co., 631 F.Supp. 1291, 1293 (D.

Conn. 1986).  As CCH's chart comparing the pleadings illustrates (Motion, 25-26),

the 1994 Government Lawsuit and plaintiffs' claims are *each* based on unpermitted

discharges from the collection system in violation of CWA §301(a) and/or CCH's

NPDES permits.  Because the same "standard, limitation, or order" is implicated in

both suits, plaintiffs' claims are precluded.

   The case plaintiffs rely on, Frilling v. Village of Anna, 924 F.Supp.

821, 838-39 (S.D. Ohio 1996) (Opp'n, 26), actually supports CCH's position.  In

Frilling, the court's "cursory examination" of the state's civil enforcement action

and the plaintiffs' complaint revealed that the state's action sought compliance with "only two of the six parameter violations listed in Count One of Plaintiffs' Complaint, and did not seek to require compliance . . . with the laws or permit requirements which provide the bases of [six other] Counts . . . of the Plaintiffs' Complaint." Frilling, 924 F.Supp. at 839. As a result, the plaintiffs' lawsuit was not precluded under §505(b)(1)(B). Id. at 844. Unlike in Frilling, where the plaintiffs' complaint exceeded the scope of the state's action, here there is an absolute overlap and unity of scope.[5] Since plaintiffs' suit alleges the same type of violations under the same "standard, limitation, or order" as the 1994 Government Lawsuit, plaintiffs' first and second claims are barred. See Motion, 22-28 (and cases cited therein).

## IV.    THE 1995 CD REFLECTS "DILIGENT PROSECUTION"

Plaintiffs claim the 1995 CD does not reflect "diligent prosecution" by

---

[5]    The remainder of plaintiffs' cases (Opp'n, 26) are equally unavailing as none of them even apply the relevant standard. Citizens Legal Envtl. Action Network, Inc. v. Premium Std. Farms, Inc., No. 97-6073-CV-SJ-6, 2000 U.S. Dist. LEXIS 1990, *14 (D. Mo. Feb. 23, 2000) compared the parties' claims under the res judicata standard, focusing on whether the claims were "identical" and arose from the same nucleus of operative facts. This irrelevant standard is distinct from and more stringent than the §505(b)(1)(B) same "statute, limitation or order" standard. Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp., 652 F.Supp. 620, 629 (D. Md. 1987), and Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 177 F.Supp.2d 1011, 1023-25 (N. D. Cal. 2001), were similarly decided under the res judicata, not the §505(b)(1)(B), standard.

13

EPA because it "has not ended CCH's violations, is not designed to end these

violations, and is not capable of doing so." Opp'n, 29. Plaintiffs' position is

without merit for a number of reasons.

First, plaintiffs ignore that the 1995 CD sets forth strong language

requiring CCH to "use its best efforts to prevent, *to the maximum extent*

*reasonably possible*, Collection System Spills . . . ." Declaration of Kathleen A.

Kelly in Support of CCH's 2008 Motion to Dismiss ("Kelly Decl."), Exh. B at 15,

Motion, 7-9 (emphasis added). The fact that plaintiffs may not like the scope of

the relief set forth in the 1995 CD does not give them license to replace EPA's

judgment with their own.[6] Further, plaintiffs do not acknowledge the

"reasonableness" standard set forth in the 1995 CD is common in EPA's spill

prevention consent decrees as it is simply impossible to prevent all sewage spills.[7]

For example, in a recent Congressionally-mandated report to Congress, EPA

---

[6]     Citizen suits are not appropriate simply because plaintiff seeks relief
different than required by the government. See, e.g., Friends of the Earth v.
Laidlaw Envtl. Servs. (TOC), 890 F. Supp. 470, 490 (D.S.C. 1995), *rev'd on other*
*grounds*, 149 F.3d 303 (4th Cir. 1998) ("[t]he mere fact that a settlement reached
by the state is less burdensome to the defendant than the remedy sought in the
complaint in the citizen suit does not establish that the state failed to prosecute its
action diligently"); Scituate, 755 F.Supp. at 487.

[7]     Many other courts, in addition to this one, have entered EPA consent decrees
recognizing that spills cannot be completely eliminated. Declaration of Kathleen
A. Kelly in Support of CCH's 2008 Reply to Opposition to Motion to Dismiss
("Kelly Reply Decl."), at ¶2, Exhs. 1-5.

14

acknowledged it is "generally not feasible to eliminate all discharges."  Kelly

Decl., Exh. D at 8.1, Motion, 31.  Agency recognition of technological

impossibility does not mean the agency's action is not "diligent."  As the First

Circuit recognized in another sewage spill case:

> Where an agency has specifically addressed the concerns
> of an analogous citizen's suit, deference to the agency's
> plan of attack should be particularly favored . . . .
> Appellants argue their claim for injunctive relief should
> stand because the violations have been ongoing since the
> Order issued.  Yet violations may continue despite
> everything reasonably possible being done by the State
> and Appellee to correct them . . . . Merely because the
> State may not be taking the precise action Appellant
> wants it to or moving with the alacrity Appellant desires
> does not entitle Appellant to injunctive relief.

Scituate, 949 F.2d. at 557-558.

Finally, plaintiffs cite no controlling authority supporting their

position a settlement must end all violations in order to constitute diligent

prosecution. [8]  As addressed in CCH's Motion at 28-36, as a matter of law, the

---

[8]    Unlike here, in Atlantic States Legal Found., Inc. v. Eastman Kodak Co., 933 F.2d 124 (2d Cir. 1991) (Opp'n, 27), the government action was brought *after* the citizen suit, and the violations (excessive chemical discharges from industrial facility) were capable of being completely eliminated.  St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining, LLC, 500 F.Supp.2d 592 (E.D. La. 2007) (Opp'n, 27, 30), was decided on the basis of *res judicata*, not statutory preclusion.  Furthermore, the court's holding supports *CCH's* position: the court found even though the refinery was still in violation, violations had decreased substantially and immediate, perfect compliance was not necessary.  Id. at 606-08. Finally, PIRG v. Rice, 774 F.Supp.317 (D.N.J. 1991) (Opp'n, 30), involved a

1995 CD acts as a legal bar to their duplicative claims.

V.     THE ADMINISTRATIVE ORDERS, 2007 BEACHWALK
       CLAIM, 2007 STIPULATED ORDER, AND ONGOING
       SETTLEMENT NEGOTIATIONS REFLECT
       GOVERNMENTS' CONTINUING DILIGENT
       PROSECUTION

       Rather than acknowledging Governments' continuing oversight over

collection system issues stemming from the claims in the 1994 Government

Lawsuit (Motion, 7-12), plaintiffs downplay Governments' subsequent

enforcement activities related to the collection system as disconnected "new and

different remedies" and incorrectly assert CCH has cited these subsequent

enforcements as independent bases for statutory preclusion.  See Opp'n, 24-25, 31-

34.  Plaintiffs are incorrect; these subsequent enforcement activities simply

illustrate beyond any doubt that Governments are fully in the driver's seat with

regard to the collection system and are diligently prosecuting collection system

spills under the 1994 Lawsuit.  Compare, New York Coastal Fishermen's Ass'n v.

New York City Dep't of Sanitation, 772 F.Supp. 162, 162-63 (S.D.N.Y. 1991)

---

situation where, unlike here, EPA had not filed any enforcement actions.  It is
notable that even the Rice plaintiffs acknowledged full compliance is impossible
("Realizing that absolute compliance . . . is not possible, plaintiffs urge the court to
order the defendant to come as close as it can to the [permit] limits") Id. at 328.
The fourth case, Friends of Milwaukee Rivers v. Milwaukee Metro. Sewer District,
382 F.3d 743 (7th Cir. 2004) (Opp'n, 27-28), is also distinguishable as decided
under res judicata, not §505(b)(1)(B).

A/72505986.4/2017866- 0000309724

(diligent prosecution defense "could not be taken seriously" given the "sordid details of this bureaucratic and political nightmare" where the state had been acting "as a pen pal, not a prosecutor"); <u>Laidlaw</u>, 890 F.Supp. at 489 (diligent prosecution not found where defendant was allowed to (1) draft, file, and pay the fee for the state's complaint against itself; and (2) draft the settlement agreement, which was done with "unusual haste", precluding citizens' participation).

VI.    <u>THE 1995 CD DOES NOT WAIVE §505(b)(1)(B)</u>

Plaintiffs contend the 1995 CD permits their lawsuit despite the CWA's preclusion provision because ¶ XVII.G states the CD "does not . . . limit the rights of third parties, not parties to this Consent Decree, against CCH." Opp'n, 8. This boilerplate provision merely ensures third parties retain the ability to sue CCH under the CWA, *to the extent the Court has subject matter jurisdiction* over such claims under the Act.[9] In this particular case, as determined by Congress, the Court lacks subject matter jurisdiction under §505(b)(1)(B). Neither CCH--nor EPA for that matter--has the authority to enlarge this Court's subject

---

[9]    Such provisions are routine and do not affect the preclusive effect of ongoing government actions. Nearly verbatim "reservation of rights" language can be found, for example, in the <u>Karr</u> Consent Decree at XIII ¶¶ 77-80 ("79. This Consent Decree does not limit . . . the rights of third parties, not party to this Consent Decree, against [defendant], except as otherwise provided by law"). Kelly Reply Decl. at ¶3, Exh. 6. Just as that language did not preclude dismissal of the citizens' suit under §505(b)(1)(B) in <u>Karr</u>, similar language does not preclude dismissal here.

matter jurisdiction through agreement.  See United Investors Life Ins. Co. v.

Waddell & Reed, Inc., 360 F.3d 960, 966-67 (9th Cir. 2004) ("It is well established

that lack of federal jurisdiction cannot be waived or be overcome by an agreement

of the parties").

VII.    GOVERNMENTS' PREEMINENT ROLE IN CWA
        ENFORCEMENT IS TO BE SUPPLEMENTED BY
        CITIZENS, WHO HAVE ALREADY SUCCESSFULLY
        INTERVENED

        CCH does not dispute that citizen suits have a role to play in the CWA

statutory scheme.  See Opp'n, 13-15, Motion, 17-19.  Rather, CCH objects to (1)

plaintiffs' failure to acknowledge the undisputed, mandated preeminent role the

Government must play in enforcing the Act (Envtl. Defense Ctr., Inc. v. EPA, 344

F.3d 832, 853 (9th Cir. 2003), Motion, 15-17), (2) plaintiffs' failure to

acknowledge the supplemental role, provided via intervention, citizens must play

when the government "has commenced and is diligently prosecuting" an action

involving the same types of violations as the citizens' action (CWA §505(b)(1)(B),

Motion, 17-19), and (3) plaintiffs' failure to acknowledge the deference that must

be afforded government enforcement actions within the CWA statutory scheme

(Laidlaw, 890 F. Supp. at 487 (plaintiffs' burden to overcome heavy presumption

of diligence by alleging conduct that is "dilatory, collusive or otherwise in bad

faith"), Motion, 28-30).

        The citizen suit provision of the CWA is clear: when the government

18

is diligently prosecuting, the citizens are limited to intervention. Here, there is no question Governments are diligently prosecuting collection system issues that also form the basis of plaintiffs' claims. Motion, 22-36. Furthermore, *plaintiffs already have intervened both in the underlying 1994 Government Lawsuit and in the 2007 Beachwalk Lawsuit*. Motion, 13. Both interventions provide plaintiffs with what they have claimed to be seeking--citizen oversight over collection system issues. Id. Under the circumstances here, where Governments have taken the reigns and citizens have intervened, citizens have no additional role to fill. Certainly, the CWA does not provide this Court with subject matter jurisdiction over such a role, and plaintiffs' redundant spill claims therefore must be dismissed.

VIII.  CONCLUSION

For the foregoing reasons, plaintiffs' Opposition is without merit, and the Court should dismiss plaintiffs' first and second claims pursuant to §505(b)(1)(B) as set forth in CCH's Motion.


DATED:    Honolulu, Hawaii                Respectfully submitted,
          April 17, 2008                  CARRIE OKINAGA
                                          Corporation Counsel

                                          By: /s/Kathleen A. Kelly
                                              Kathleen A. Kelly
                                              Attorneys for Defendant
                                              The City and County of Honolulu

19

TABLE OF CONTENTS

Page

I.      INTRODUCTION .....................................................................1

II.     IN ASSERTING THE 1995 CD DOES NOT CONSTITUTE
        "CURRENT" DILIGENT PROSECUTION, PLAINTIFFS RELY ON
        INAPPLICABLE CASELAW ......................................................3

        A.      Plaintiffs Fail To Acknowledge The CWA Contains Two
                Distinct Statutory Bars To Subject Matter Jurisdiction......................3

                1.      Section 505(b)(1)(B) Applies To *Compliance* Remedies
                        *Moving Forward*......................................................4

                2.      Section 309(g)(6)(A) Only Precludes Duplicative
                        *Penalties* For *Specific Past* Violations ...................................5

                3.      It Is Irrelevant Here That Section 309(g)(6)(A) Precludes
                        Subsequent Penalty Claims Under "Comparable" State
                        Laws ...............................................................5

        B.      The 1995 CD Constitutes "Current" Diligent Prosecution Under
                §505(b)(1)(B)..........................................................6

                1.      Plaintiffs' Reliance On §309(g)(6)(A) Is Misplaced................7

                2.      Plaintiffs Fail To Cite Any Relevant §505(b)(1)(B)
                        Authority .............................................................10

III.    BECAUSE THE 1994 GOVERNMENT LAWSUIT INVOLVES
        THE SAME "STANDARD, LIMITATION, OR ORDER" AS
        PLAINTIFFS' SPILL CLAIMS, THOSE CLAIMS ARE BARRED ........12

IV.     THE 1995 CD REFLECTS "DILIGENT PROSECUTION".....................14

V.      THE ADMINISTRATIVE ORDERS, 2007 BEACHWALK CLAIM,
        2007 STIPULATED ORDER, AND ONGOING SETTLEMENT
        NEGOTIATIONS REFLECT GOVERNMENTS' CONTINUING
        DILIGENT PROSECUTION...................................................16

VI.     THE 1995 CD DOES NOT WAIVE §505(b)(1)(B) ................................17

VII.    GOVERNMENTS' PREEMINENT ROLE IN CWA
        ENFORCEMENT IS TO BE SUPPLEMENTED BY CITIZENS,
        WHO HAVE ALREADY SUCCESSFULLY INTERVENED .................18

VIII.   CONCLUSION ......................................................................19

# TABLE OF AUTHORITIES

Page

Cases

Atl. States Legal Found., Inc. v. Eastman Kodak Co.,
    933 F.2d 124 (2d Cir. 1991)............................................................15

Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,
    177 F.Supp.2d 1011 (N. D. Cal. 2001)...........................................13

Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.,
    652 F.Supp. 620 (D. Md. 1987).....................................................13

Citizens for a Better Env't v. Union Oil Co. of California
    ("UNOCAL"),
    83 F.3d 1111 (9th Cir. 1996)...................................................7, 8, 9

Citizens Legal Envtl. Action Network, Inc. v. Premium Std. Farms,
    Inc.,
    No. 97-6073-CV-SJ-6, 2000 U.S. Dist. LEXIS 1990 (D. Mo. Feb.
    23, 2000)..........................................................................................13

Coal. for Health Concern v. LWD, Inc.,
    834 F.Supp. 953 (D. Ky. 1993).....................................................11

Cmty. of Cambridge Envtl. Health & Cmty. Dev. Group v. City of
    Cambridge,
    115 F.Supp.2d 550 (D. Md. 2000) .................................................10

Conn. Fund for Env't v. Contract Plating Co.,
    631 F.Supp. 1291 (D. Conn. 1986) ...............................................12

Connecticut Fund for the Env't v. L & W Ind., Inc.,
    631 F.Supp. 1289 (D. Conn. 1986) ...............................................11

Ellis v. Gallatin Steel Co.,
    390 F.3d 461 (6th Cir. 2004).........................................................10

Envtl. Def. Ctr., Inc. v. EPA,
    344 F.3d 832 (9th Cir. 2003).........................................................18

TABLE OF AUTHORITIES
(continued)

Page

Friends of Frederick Seig Grove #94 v. Sonoma County Water
    Agency,
    124 F.Supp.2d 1161 (N.D. Cal. 2000)................................................9

Friends of Milwaukee Rivers v. Milwaukee Metro. Sewer Dist.,
    382 F.3d 743 (7th Cir. 2004).....................................................16

Friends of the Earth v. Laidlaw Envtl. Servs. (TOC),
    890 F. Supp. 470 (D.S.C. 1995).........................................14, 17, 18

Frilling v. Village of Anna,
    924 F.Supp. 821 (S.D. Ohio 1996)..........................................12, 13

Karr v. Hefner,
    475 F.3d 1192 (10th Cir. 2007)........................................4, 7, 10, 17

Knee Deep Cattle Co., Inc. v. Bindana Inv. Co., Ltd.,
    94 F.3d 514 (9th Cir. 1996)...........................................................8, 9

New York Coastal Fishermen's Ass'n v. New York City Dep't of
    Sanitation,
    772 F.Supp. 162 (S.D.N.Y. 1991)..............................................16

North & South Rivers Watershed Ass'n v. Scituate,
    949 F.2d 552 (1st Cir. 1991).....................................5, 6, 10, 14, 15

Orange Env't, Inc. v. County of Orange,
    923 F.Supp. 529 (S.D.N.Y. 1996)................................................7

Penn. Envtl. Def. Found. v. Borough of North East, Civ. No. 96-362,
    1997 U.S. Dist. LEXIS 23865 (W.D. Pa. Dec. 31, 1997)...............4, 10, 11

PIRG v. Rice,
    774 F.Supp.317 (D.N.J. 1991)..................................................15, 16

Save Our Bays & Beaches v. City & County Honolulu,
    904 F. Supp. 1098 (D. Haw. 1994)................................................6

## TABLE OF AUTHORITIES
(continued)

Page

SPIRG of New Jersey, Inc. v. Georgia Pac. Corp.,
    615 F.Supp. 1419 (D.N.J. 1985)........................................................................11

St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining,
    LLC,
    500 F.Supp.2d 592 (E.D. La. 2007) ...............................................................15

United Investors Life Ins. Co. v. Waddell & Reed, Inc.,
    360 F.3d 960 (9th Cir. 2004)..........................................................................18

EPA v. City of Green Forest,
    921 F.2d 1394 (8th Cir. 1990).......................................................................10

Statutes

§301(a) ...............................................................................................................12

§309(g) ........................................................................................................passim

§309(g)(6)(A) ..............................................................................................passim

§13301 .................................................................................................................8

§505(b) ........................................................................................................passim

§505(b)(1)(B) ..............................................................................................passim

33 U.S.C. §1319(g)(6)(A) ...................................................................................5

33 U.S.C. § 1365(b)(1)(B) ........................................................................1, 4, 12