IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SIERRA CLUB, HAWAII CHAPTER, HAWAII'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION, | ) ) ) ) ) ) | CV. NO. 04-00463 DAE-BMK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CITY AND COUNTY OF HONOLULU, and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT CITY AND COUNTY OF
HONOLULU'S MOTION TO DISMISS
PLAINTIFF'S FIRST AND SECOND CLAIMS FOR RELIEF

On April 28, 2008, the Court heard Defendant City and County of

Honolulu's Motion.  William Tam, Esq., and Christopher Sproul, Esq., appeared at

the hearing on behalf of Sierra Club, Hawai`i Chapter, Hawai`i's Thousand Friends

and Our Children's Earth Foundation (collectively, "Plaintiffs"); James J. Dragna,

Esq., Carrie Okinaga, Corporation Counsel, and Kathleen A. Kelly, Deputy

Corporation Counsel, appeared at the hearing on behalf of Defendant City and County of Honolulu ("CCH"). After reviewing Defendant's motion and the supporting and opposing memoranda, the Court DENIES Defendant CCH's Motion to Dismiss Plaintiffs' First and Second Claims For Relief.

BACKGROUND

On October 3, 1994, the United States Environmental Protection Agency ("EPA") and the State of Hawai`i Department of Health ("DOH") (collectively the "governments") brought suit ("EPA I") against the City and County of Honolulu ("CCH") for unpermitted sewage overflows and spills from the Collection System. (CCH Ex. A at 12-13.) The Complaint refers to spills that occurred in the period between 1987 to 1992 as an example of the overflows and spills, and states that these discharges violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311, and Hawaii law. As relief, the governments sought civil penalties for each past violation and an injunction ordering compliance with the terms of the NPDES permits, and the laws set forth above.

EPA and DOH simultaneously lodged a proposed consent decree with CCH addressing the violations alleged in the complaint. On May 19, 1995, this Court entered the consent decree as modified by stipulation (the "Consent Decree"), which included several programmatic and capital improvement

2

requirements designed to remedy CCH's sewage spill problem.  The Consent

Decree required CCH to "use its best efforts to prevent, to the maximum extent

reasonably possible, Collection System Spills in terms of frequencies, duration and

volume."  (CCH Ex. B.)  To meet these objectives, CCH was ordered to develop

and implement comprehensive Collection System programs, carried out under the

direction of the EPA and the continuing jurisdiction of this Court through at least

2019.

       Within 30 days of the date of entry of the Consent Decree, CCH was

required to submit to EPA its annual goals for 1994 through 1999 for reduction of

spill frequencies and/or volumes from its Collection System.  (Consent Decree at

15.)  CCH remained liable under the CWA for "any unauthorized discharges from

its Collection System, and the United States and the State retains all authority,

judicial and administrative, to seek injunctive relief and/or penalties pursuant to

federal and State laws concerning such unauthorized discharges."  (Id. at 16

(emphasis in original).)  The United States and the State expressly reserved all

remedies available for violations of the CWA not specifically contained in the

complaint filed in EPA I.  (Id. at 56.)  Finally, the Consent Decree did not "limit or

affect the rights of CCH, the State, or the United States as against any third parties,

nor d[id] it limit the rights of third parties, not parties to this Consent Decree,

against CCH." (Id.) Plaintiffs in this suit were not parties to EPA I at the time the Consent Decree was filed.

In the years following the Consent Decree, CCH continued to experience sewage spills, albeit at a diminished rate. EPA and DOH issued administrative orders in 2003 and 2004 requiring CCH to take additional actions beyond those required by the Consent Decree.[1] In addition, EPA and DOH continued to monitor and inspect CCH's Collection System.

On July 29, 2004, Plaintiffs filed a complaint (Doc. # 1) in the instant suit alleging that CCH had violated the CWA by committing additional sewage spills from its Collection System between May 1999 and the date of the initiation of the suit. Plaintiffs' first claim for relief alleged sewage spill discharges of pollutants without a permit in violation of the CWA, 33 U.S.C. §§ 1311(a), 1365. Plaintiffs' second claim for relief alleged sewage spills in violation of CCH's National Pollutant Discharge Elimination System ("NPDES") permit conditions, also in violation of the CWA, 33 U.S.C. §§ 1311(a), 1365. Plaintiffs sought civil penalties and an injunction to certain violations of CWA effluent limitations.

---

[1] The 2003 administrative order required CCH to develop a new action plan for reducing sewage spills into Kalihi and Nu`uanu streams. The 2004 administrative order required CCH to implement measures to reduce spills from CCH's force mains (the sewer lines that transport sewage under pressure from pump stations).

On September 30, 2005, this Court issued an order ("2005 Order") dismissing, *inter alia*, Plaintiffs' first and second claims in this action (Doc. # 100). The Court held that these claims, like the Third Claim in EPA I, were based on spills from CCH's Collection System and were therefore "substantially identical claims." (Id. at 16.) Thus, the Court determined that Plaintiffs were precluded from litigating those claims based on *res judicata*.

In Spring 2006, CCH, EPA, and DOH were scheduled to commence talks to discuss global Collection Systems issues, including a review of the Consent Decree. Prior to these talks, however, CCH experienced a massive sewage spill as a result of the failure of its Beachwalk force main. From March 26-30, 2006, the ruptured Beachwalk force main spilled approximately 48 million gallons of raw sewage into the Ala Wai Canal (the "Beachwalk Spill"). As a result, EPA, DOH, and CCH focused their subsequent discussions on the force main issue.

On May 8, 2007, EPA and DOH filed a second suit against CCH ("EPA II") asserting a single CWA claim for injunctive relief for the Beachwalk Spill. Concurrently with the filing of the complaint, EPA and DOH lodged a Stipulated Order (the "Stipulated Order") purporting to resolve the one claim. The Stipulated Order requires CCH to undertake remedial action on six force main lines

5

over a schedule lasting until 2018.  This Court entered the Stipulated Order on

October 10, 2007, after a hearing on Plaintiffs' opposition to the entry of such

Order in the EPA II case.  The Stipulated Order indicates that EPA, DOH, and

CCH are pursuing additional negotiations and additional judicial relief to address

all compliance issues associated with CCH's Collection System.

        After entry of the Stipulated Order in EPA II, Plaintiffs moved in this

case for reconsideration of the 2005 Order dismissing their first and second claims,

arguing that it was inconsistent to bar their claims on the grounds of *res judicata*,

yet allow the EPA II case to go forward, since both claims were based upon post-

1994 spills.  This Court agreed, and Plaintiffs first and second claims were

reinstated by this Court on February 26, 2008, by its Order Granting Plaintiffs'

Motion for Reconsideration of Oder Filed September 30, 2005 Dismissing

Plaintiff's First and Second Claims.  (Doc. # 166.)  This Court found that because

the Consent Decree should not be seen as the sole remedy for addressing post-1994

spills for entities that were not a party to the Consent Decree, and because

Plaintiffs' first and second claims were based on spills that occurred in 1999 and

thereafter, those claims were not barred by the entry of the Consent Decree and it

would be an incongruous result to allow the EPA II lawsuit based upon the 2006

Beachwalk Spill to go forward, but bar Plaintiffs from pursuing claims based upon post-1994 spills.

This Court expressed that it would not address the parties' additional arguments of whether the first and second claims should be dismissed based on alleged diligent prosecution because this Court wanted complete briefing on such an issue. In keeping with that order, on March 11, 2008, Defendant CCH filed the instant motion to dismiss the first and second claims, arguing that the governments are diligently prosecuting claims of Collection System spills and therefore, Plaintiffs' citizen suit claims based on such spills should be dismissed. (Doc. # 167.) Plaintiffs filed their opposition on April 10, 2008, and CCH filed its reply on April 17, 2008.

## STANDARD OF REVIEW

Section 1365(a) of the CWA "is a jurisdictional grant permitting citizen groups to bring suits to enforce permits where the federal and state authorities have chosen, for whatever reason, not to act." Pub. Interest Research Group of N.J., Inc. v. Carter-Wallace, Inc., 684 F. Supp. 115, 118 (D.N.J. 1988). However, "[w]hen the EPA is prosecuting CWA violations, it should be accorded a 'preeminent role' because it is charged with enforcing the CWA on behalf of all citizens." U.S. v. City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir. 1991).

Defendant brought its motion based upon lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that because the federal and state governments have chosen to act, this Court does not have jurisdiction over Plaintiffs' first and second claims for relief in this citizen suit.

In a motion to dismiss for lack of the subject matter jurisdiction the plaintiff bears the initial burden of proving that subject matter jurisdiction exists. Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992). Upon a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may make a jurisdictional attack that is either facial or factual. Safe Air for Everyone, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. A factual attack occurs when the movant "disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction." Id.

In resolving a facial attack on the allegations of the complaint, the court must accept the allegations of the complaint as true. Mason v. Arizona, 260 F. Supp. 2d 807, 815 (D. Ariz. 2003). "Unlike a Rule 12(b)(6) motion, however,

the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction because a plaintiff must affirmatively allege such jurisdiction." Id.

       If the movant makes a factual attack on jurisdiction, the court may review evidence beyond the complaint. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In resolving an attack on the facts, however, a court may weigh evidence to determine whether it has jurisdiction, as long as the jurisdictional facts are not intertwined with the merits. Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987). "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publishing Co., 594 F.2d at 733. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2. (9th Cir. 2003).

DISCUSSION

CCH asserts that the entry of the 1995 Consent Decree in EPA I, the 2003 and 2004 administrative orders, the 2007 Stipulated Order in EPA II, and the ongoing negotiations regarding the Collection System, constitute diligent prosecution of the same issues brought by Plaintiffs in their first and second claims. Therefore, CCH argues that since the government is the primary enforcer of the CWA, the first two claims in this suit should be dismissed.

Plaintiffs argue that their claims cannot be barred because neither EPA I nor EPA II cover the same claims made by Plaintiffs in their first and second causes of action and the actions taken thus far by the governments do not constitute diligent prosecution.

The citizen suit provision of the CWA provides that a citizen may bring suit for an alleged violation of "(A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]" 33 U.S.C. § 1365(a). An effluent standard or limitation includes a "permit or condition thereof." 33 U.S.C. § 1365(f). However, no citizen suit may be brought "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or

10

order, but in any such action in a court of the United States any citizen may

intervene as a matter of right."  33 U.S.C. § 1365(B)(1)(b).

Citizen suits are to be regarded as an integral part of the overall

enforcement scheme of the CWA.  Save Our Bays and Beaches v. City and County

of Honolulu, 904 F. Supp. 1098, 1125 (D. Haw. 1994).  "The Ninth Circuit has

recognized that Congress intended citizen suits to be handled liberally, because

they perform an important public function. . . . citizens should be unconstrained to

bring these actions, and . . . courts should not hesitate to consider them."  Id. at

1125-26 (citations omitted).  However, this "'bar on citizen suits when

governmental enforcement action is under way suggests that the citizen suit is

meant to supplement rather than to supplant governmental action.' . . . citizen suits

[are] proper only 'if the Federal, State, and local agencies fail to exercise their

enforcement responsibility.'" Id. at 1126 (quoting Gwaltney of Smithfield, Ltd. v.

Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987)).

> If the EPA has discovered a violation of a standard and
> has brought a civil action to compel compliance with that
> standard, a subsequent private action against the alleged
> violator seeking compliance by the same source with the
> same standard is wholly redundant and adds nothing to
> the statutory enforcement scheme even though the private
> suit alleges past violations on occasions different than
> those relied upon by the EPA in its suit. Such a private
> action is wholly redundant because it seeks only an

11

> injunction against the polluter compelling compliance
> with the standard, i.e. prospective relief which is identical
> to that prayed in the earlier EPA action.

Md. Waste Coalition v. SCM Corp., 616 F. Supp. 1474, 1483 (D.C. Md. 1985).

The issues in this motion boil down to the following two questions: 1) was EPA I commenced to require compliance with the same "standard, limitation, or order" that is at issue in Plaintiffs' citizen suit; and 2) if so, are the governments "diligently prosecuting" EPA I to require such compliance. Conn. Fund For Env't v. Contract Plating Co., Inc., 631 F. Supp. 1291, 1293 (D. Conn. 1986) ("First, the court must determine whether any suit by the state (or the EPA Administrator) to enforce the same 'standard, order, or limitation' was pending in federal or state court on the date that the citizens' suit was commenced.  Second, if the answer to the previous question is affirmative, the court must also determine whether the prior pending action was being 'diligently prosecuted' by the state at the time that the citizens' suit was filed.").

With respect to the first question, this Court should compare the Complaint filed in this case with that filed in EPA I.  Id. ("the court may rely primarily on a comparison of the pleadings filed in the two actions to determine whether the state and the citizen plaintiffs seek to require compliance with the

12

[same] standard, order or limitation.") (citation and internal quotation marks omitted).

Both the third cause of action in EPA I and the first and second causes of action in the instant lawsuit cover sewage spills and discharges from CCH's Collection System without a permit in violation of section 301 of CWA.[2]  Both lawsuits seek an injunction ordering CCH to comply with the CWA.  As part of the negotiated injunctive-type relief, the Consent Decree of EPA I provides that CCH is required to come into and maintain compliance with section 301 of the CWA. The Consent Decree further provides that "CCH shall use its best efforts to prevent, to the maximum extent reasonably possible, Collection System Spills in terms of frequencies, duration and volume."  (CCH Ex. B.)  The Consent Decree also provides that CCH must submit a long-term comprehensive spill reduction action plan.  Thus, EPA I and the instant lawsuit cover the same standard or limitation – those imposed by section 301 of the CWA that are violated by spills from the collection system.

The fact that EPA I did not seek civil penalties for violations based upon post-1999 sewage spills in its Complaint does not mean that EPA I and the

_____

[2]  Section 301(a) of the CWA prohibits unauthorized discharges of pollutants into waters of the United States. 33 U.S.C. § 1311(a).

13

citizen suit cover different standards or limitations.  Instead, it shows only that the citizen suit sought recovery for more, separate violations of the CWA by the collection system, which occurred after the filing of EPA I.  Separate violations of the same standard or limitation, however, is not the legal requirement for meeting the first step of the citizen suit bar provision of the CWA, and is inadequate to establish that EPA I and the citizen suit do not cover the same standard or limitation.  See Conn. Fund For Env't, 631 F. Supp. at 1293 ("a federal court ought not to allow a citizens' suit to proceed merely because a prior pending state suit has not alleged as many separate violations of the Act as has the citizens' suit and therefore seeks to impose a less substantial civil penalty on the defendant.").

        The next question then is whether the governments were diligently prosecuting EPA I.  To determine this issue, this Court may "rely primarily on objective evidence from the court files with respect to the status of the state's suit at the time that the citizens' suit was commenced and the prospects that the state suit would proceed expeditiously to a final resolution." Id.  The court is required to presume that the governmental prosecution is diligent.  Id.; Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 760 (7th Cir. 2004) ("We recognize that diligence on the part of the State is presumed.").  However, where there is a previous consent decree or settlement in place, a diligent

14

prosecution analysis "requires more than mere acceptance at face value of the potentially self-serving statements of a state agency and the violator with whom it settled regarding their intent with respect to the effect of the settlement." <u>Friends of Milwaukee's Rivers</u>, 382 F.3d at 760.  The Court should examine the agency action taken and determine "whether it is capable of requiring compliance with the Act and is in good faith calculated to do so." <u>Id.</u>  "[I]f the court view[s] the agency action as inadequate, it would have jurisdiction to consider the citizen action notwithstanding any pending agency action." <u>Conn. Fund For Env't</u>, 631 F. Supp. at 1293; <u>cf</u> <u>Atlantic States Legal Found., Inc. v. Eastman Kodak Co.</u>, 933 F.2d 124, 127 (2nd Cir. 1991) ("If the state enforcement proceeding has caused the violations alleged in the citizen suit to cease without any likelihood of recurrence-[it] has eliminated the basis for the citizen suit-[and] we believe that the citizen action must be dismissed.").

CCH cites to two administrative orders, the filing of EPA II and its Stipulated Order, and the global negotiations regarding the Collection System as evidence of diligent prosecution of the spills at issue in the instant lawsuit.  None of these actions, however, meet the standard required to bar the first and second claims of the citizen suit from going forward.

15

First, the Ninth Circuit has held that "a citizen enforcement suit is not precluded by nonjudicial enforcement action[.]"  Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1525 (9th Cir. 1987) (The citizen suit provision "does refer specifically to 'courts,' and it makes no direct or veiled reference to any type of administrative proceeding. . . . section 1365 is unambiguous and the legislative history supports a literal reading." ).  This is because administrative action may not be the functional equivalent of court action because the "EPA cannot on its own provide relief equivalent to that available in federal court."  See Student Pub. Interest Research Group of N.J., Inc. v. Georgia-Pac. Corp., 615 F. Supp. 1419, 1427 (D.N.J. 1985).  For example, under Section 309 of the Act, 33 U.S.C. § 1319, the EPA is required to go to federal court to obtain civil penalties for CWA violations.  The 2004 Administrative Order, however, did not actually seek civil penalties, and the provision under which EPA issued the 2003 Administrative Order did not authorize the EPA to impose civil penalties.  Id.  ("[d]iligent prosecution is considered to be underway, so as to bar a citizen suit, when an agency is engaging in activity in which it has the 'power to accord relief which is the substantial equivalent to that available to the EPA in federal courts.'") (citing Baughman v. Bradford Coal Co., Inc., 592 F.2d 215, 219 (3rd Cir. 1979)).  Therefore, in this case, the administrative orders were not the functional equivalent

16

of court action, and cannot demonstrate diligent prosecution.  Id. ("[b]ecause EPA cannot on its own provide relief equivalent to that available in federal court, EPA administrative enforcement activity of the sort present in this case is incapable of barring a citizen suit."); Coalition for Health Concern v. LWD, Inc., 834 F. Supp. 953, 956 (W.D. Ky. 1993) ("enforcement of the agreed order constitutes administrative action, not diligent prosecution of a court action within the meaning of [the Resource Conservation and Recovery Act ]") rev'd on other grounds, 60 F.3d 1888 (1995).

Second, for a governmental court action to bar a citizen suit, that action must be pending at the time the citizen suit is filed and must address the same standard of the citizen suit.  33 U.S.C. § 1365(B)(1)(b) (the government "has commenced" an action); Conn. Fund For Env't, 631 F. Supp. at 1293 (the governmental lawsuit must be "pending in federal or state court on the date that the citizens' suit was commenced.").  Here, the filing of EPA II and the resulting Stipulated Order do not meet this requirement because EPA II was filed in 2007, almost three years after the instant lawsuit was filed.  See Friends of Milwaukee's Rivers, 382 F.3d at 754-55 ("But the clear and unambiguous language of § 1365 (b)(1)(B) and its uniform interpretation by the courts on a jurisdictional point dictate a conclusion that the State's 2002 litigation (and resulting 2002 Stipulation)

17

cannot qualify as a timely commenced action barring the plaintiffs' [citizen] suit"

under the CWA because it was filed several hours <u>after</u> the citizen suit was filed).

Furthermore, as noted in <u>Friends of Milwaukee's Rivers</u>, the court

should be

> reluctant to use the initiation of an older judicial action to
> back-date the commencement of a[] [second] action
> under the Clean Water Act . . . If a state agency were
> allowed to indefinitely continue an enforcement action so
> as to ensure that it always has on the back burner a court
> action that has been "commenced" before any later
> citizens' suit could be filed, that arrangement would
> eviscerate the timely commencement requirement
> because the agency could wait as long as it liked before
> responding to any citizens' suit.  Using the earlier
> commencement date might also indicate a lack of
> diligence in resolving problems known about for years.

382 F.3d at 754.

Therefore, as EPA II was not in existence at the time of the filing of

the citizen suit, it cannot be relied upon to demonstrate that the governments were

expeditiously resolving violations of the Consent Decree or the standard at issue in

EPA I due to post-1999 sewage spills at the time the citizen suit was filed.

Additionally, the complaint of EPA II covered only the 2006

Beachwalk Spill and did not address the alleged CWA violations for other post-

1999 spills, which are those covered by the instant action.  If the governments truly

believed that, as a post-1999 sewage spill from the Collection System, the

Beachwalk Spill was covered by EPA I and the Consent Decree, then the

governments should have filed a motion in that case for breach of the Consent

Decree, a motion to compel compliance with the Consent Decree, a motion to

amend the Consent Decree, some other filing in that case regarding the 2006

Beachwalk Spill, or moved to consolidate the new case with EPA I.  The

governments did not do so.  The filing of a second independent lawsuit

demonstrates that the governments were not attempting to prosecute EPA I through

seeking remedies based on the Beachwalk Spill.  See generally, Conn. Fund For

Env't, 631 F. Supp. at 1293 ("It appears to have been the intent of Congress to bar

a citizens' suit whenever the same purpose could adequately be achieved by a prior

pending state suit regardless of whether the identical violations were asserted or the

identical remedy was sought in the two actions.").  Accordingly, the existence of

EPA II and the Stipulated Order do not establish diligent prosecution of EPA I.

        Likewise, current global negotiations of the Collection System do not

bar the citizen suit because there is no indication that the governments have

included all post-1999 spills and all areas of the Collection System that are

addressed in the citizen suit in their global negotiations.  Neither have the

governments established that current global negotiations demonstrate that at the

time the citizen suit was filed, the prospects that EPA I would proceed

expeditiously to a final resolution of all the issues was likely.  Instead, the citizen

suit was filed in 2004, four years ago and at that time, nothing had been filed in

this Court pertaining to EPA I since 1995.  This Court does not see how alleged

negotiations that began approximately in 2005, ten years after entry of the Consent

Decree, without other enforcement measures taken in this Court, can establish

diligent prosecution of post-1999 spills from the Collection System.  Thus, even

though EPA I and the instant suit broadly cover the same limitation or standard, the

governments have constrained EPA I to a limited time frame -- pre-1999 spills and

failed to act in that case for ten years.  As such, CCH has not proven that EPA I

could adequately achieve the same purpose as the instant citizen lawsuit and that

they were diligently prosecuting such case.[3]

Moreover, the United States and the State expressly reserved all

remedies available to enforce the provisions of the Consent Decree and for

---

[3] This Court finds Plaintiffs' reliance on <u>Knee Deep Cattle Co., Inc. v. Bindana Inv. Co. Ltd.</u>, 94 F.3d 514, 516 (9th Cir. 1996) and other cases which analyzed section 309 of the CWA, 33 U.S.C. § 1319, to be inapplicable or unpersuasive to the facts of this case because section 309 relates to barring citizen suits seeking penalties.  The fact that a consent decree or settlement over a certain penalty violation was entered and therefore bars future litigation for that same penalty is quite different from the injunctive portion of a consent decree, which requires future compliance to prevent future violations.

violations of the CWA not specifically contained in the complaint filed in EPA I. (CCH Ex. B at 56.) The Consent Decree stated that CCH remained liable under the CWA for "any unauthorized discharges from its Collection System, and the United States and the State retains all authority, judicial and administrative, to seek injunctive relief and/or penalties pursuant to federal and State laws concerning such unauthorized discharges." (Id. at 16) (emphasis in original).) Finally, the Consent Decree did not "limit the rights of third parties, not parties to this Consent Decree, against CCH." (Id.)

        Despite this authority to take action related to sewage spills from the Collection System in violation of section 301 of the CWA, and the allegations by Plaintiffs that spills have occurred from May 30, 1999 onward, and other actions occurred that violated the 1995 Consent Decree, the governments did not come back to this Court to enforce the Consent Decree or otherwise seek remedies for these other spills through the EPA I lawsuit. Thus, the government has failed to continue to prosecute EPA I. Indeed, the existence of EPA II demonstrates that the governments did not believe that EPA I was calculated to require the compliance needed in response to a post-1999 sewage spill such as the 2006 Beachwalk Spill. This Court is constrained by the governments' own limitation of the issues in EPA I and its lack of prosecution thereof.

21

CONCLUSION

For the reasons stated above, this Court DENIES Defendant City and County of Honolulu's Motion to Dismiss Plaintiffs' First and Second claims for Relief as specified herein.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 7, 2008.



_____
David Alan Ezra
United States District Judge

Sierra Club, Hawaii Chapter, et al. v. City and County of Honolulu, et al., CV. NO. 04-00463 DAE-BMK; ORDER  DENYING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFF'S FIRST AND SECOND CLAIMS FOR RELIEF