IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SIERRA CLUB, HAWAIʻI CHAPTER; HAWAIʻIʼS THOUSAND FRIENDS; and OUR CHILDRENʼS EARTH FOUNDATION,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF HONOLULU and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity,<br><br>　　　　　Defendants. | Civil No. 04-00463 DAE/BMK<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II.   LEGAL BACKGROUND . . . . . . . . . . . . . . . . . . . 4

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . 5

    A.    CCH'S WWTP PERMITS . . . . . . . . . . . . . . . 5

    B.    PERMIT REQUIREMENTS . . . . . . . . . . . . . . 6

    C.    PREVIOUS ENFORCEMENT ACTIONS . . . . . . . . . . 8

    D.    CCH'S ONGOING SEWAGE SPILL PROBLEM . . . . . . . 10

    E.    DOH's SPILL DATABASE . . . . . . . . . . . . . . 10

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    SUMMARY JUDGMENT IS PARTICULARLY APPROPRIATE
        IN CWA CASES . . . . . . . . . . . . . . . . . . 13

    B.    CITIZEN PLAINTIFFS MAY BRING AN ACTON TO
        ENFORCE THE CWA AGAINST CCH FOR ITS OWN
        VIOLATIONS . . . . . . . . . . . . . . . . . . . 15

    C.    CCH REPEATEDLY VIOLATED THE CWA BY SPILLING
        RAW OR PARTIALLY TREATED SEWAGE TO WATERS OF
        THE UNITED STATES . . . . . . . . . . . . . . . 17

        1.    CCH VIOLATED THE CWA'S PROHIBITION ON
            DISCHARGING POLLUTANTS TO WATERS WITHOUT
            PERMIT AUTHORITY (FIRST CLAIM) . . . . . . . 17

            a.    CCH IS A "PERSON" UNDER THE ACT . . . . . 17

            b.    THE SEWAGE DISCHARGED BY CCH IS A
                "POLLUTANT" . . . . . . . . . . . . . . . 17

            c.    CCH DISCHARGES FROM A "POINT SOURCE" . . 18

            d.    THE WATERS INTO WHICH CCH DISCHARGES
                POLLUTANTS ARE "WATERS OF THE UNITED
                STATES" . . . . . . . . . . . . . . . . . 19

(1) OCEAN WATERS ARE WATERS OF THE UNITED STATES . . . . . . . . . . 19

(2) CCH'S SPILLS TO CERTAIN NAMED WATER BODIES ARE WATERS OF THE UNITED STATES . . . . . . . . . . 20

e. CCH LACKS NPDES PERMIT AUTHORIZATION TO SPILL OR BYPASS RAW OR PARTIALLY TREATED SEWAGE . . . . . . . . . . . . 22

2. CCH VIOLATED THE HONOULIULI WWTP NPDES PERMIT PROVISIONS THAT PROHIBIT OVERFLOW AND BYPASS (SECOND CLAIM) . . . . . . . . . 26

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 14

*Atlantic States Legal Foundation, Inc. v.
Tyson Foods, Inc.*, 897 F.2d 1128 (11th Cir. 1990) .......... 16

*Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2006) ........... 24

*Borden Ranch Partnership v. United States Army
Corps of Eng'rs*, 261 F.3d 810 (9th Cir.
2001) ...................................................... 4

*British Airways Board v. Boeing Co.*,
585 F.2d 946 (9th Cir. 1978) .............................. 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............. 14

*City of Milwaukee v. Illinois and Michigan*,
451 U.S. 304 (1981) ................................... 18, 22

*Friends of the Earth v. Carey*,
535 F.2d 165 (2d Cir. 1976) ............................... 16

*Georgia v. City of East Ridge, Tenn.*,
949 F. Supp. 1571 (N.D. Ga. 1996) ..................... 17, 19

*Hawaii's Thousand Friends v. City and County of
Honolulu*, 821 F. Supp. 1368 (D. Haw. 1993) ........... 13, 14

*Headwaters, Inc. v. Talent Irrigation District*,
243 F.3d 526 (9th Cir. 2001) .............................. 20

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979) ......... 20

*Leslie Salt Co. v. Froehlke*,
578 F.2d 742 (9th Cir. 1978) .............................. 20

*Matsushita v. Zenith Ratio Corp.*, 475 U.S. 574 (1986) ...... 14

*Mokelumne River*, 13 F.3d at 308 (1994) ..................... 17

*Mumford Cove Association v. Town of Groton*,
640 F. Supp. 392 (D. Conn. 1986) .......................... 14

*Nishimoto v. Federman-Bachrach & Associates*,
903 F.2d 709 (9th Cir. 1990) ............................... 14

*North Carolina Shellfish Growers Associate v.
Holly Ridge Associate*, 2003 U.S. Dist. LEXIS 13674
(E.D.N.C. 2003) .......................................... 20

*Proffitt v. Municipal Authority of the Borough
of Morrisville*, 716 F. Supp. 837 (E.D. Pa. 1989) ........... 16

*San Francisco Baykeeper v. Tidewater Sand & Gravel Co.*,
1997 U.S. Dist. LEXIS 22602 at *22-*23;
46 ERC (BNA) 1778 (N.D. Cal. 1997) ........................ 18

*Save Our Bays & Beaches v. City and County of
Honolulu*, 904 F. Supp. 1098 (D. Haw. 1994) .......... 15, 16, 25

*Sierra Club v. Chevron U.S.A., Inc.*,
834 F.2d 1517 (9th Cir. 1987) .............................. 16

*Sierra Club v. Union Oil Co. of California*,
813 F.2d 1480 (9th Cir. 1987), *vac'd on other
grounds*, 485 U.S. 931 (1988), *reinstated*,
853 F.2d 667 (9th Cir. 1988) ...................... 4, 13, 15,
                                                       16, 25

*Trustees for Alaska v. EPA*,
749 F.2d 549 (9th Cir. 1984) .............................. 18

*United States v. Earth Sciences, Inc.*,
599 F.2d 368 (10th Cir. 1979) ............................. 18

*United States v. Phelps Dodge*,
391 F. Supp. 1181 (D. Ariz. 1975) ......................... 20

*United States v. Riverside Bayview Homes, Inc.*,
474 U.S. 121 (1985) ....................................... 20

*United States v. Wilson*, 881 F.2d 596 (9th Cir. 1989) ....... 14

**DOCKETED CASES**

*United States, et al. v. City and County of Honolulu*,
Civ. No. 94-00765 ("EPA I") ................................ 8

*United States, et al. v. City and County of Honolulu*,
Civ. No. 07-00235 ("EPA II") .............................. 9

## FEDERAL STATUTES

40 C.F.R.:

    § 122.2 .......................................... 19, 20

    § 122.22 ............................................ 8

    § 122.22(b) ........................................ 15

    § 122.41(a)(2) ..................................... 16

    § 122.41(k) ........................................ 15

    § 122.41(m) ................................... 7, 22, 23

33 U.S.C.:

    CWA § 301(a) ................................ 12, 16, 22

    § 1251(a) .......................................... 4

    § 1311(a) ................................... 4, 12, 13, 22

    § 1319(d) .......................................... 4

    § 1342 ............................................. 4

    § 1342(b) .......................................... 4

    § 1342(c) .......................................... 4

    § 1342(k) ......................................... 13

    § 1362(4) ......................................... 17

    § 1362(5) ......................................... 17

    § 1362(6) ......................................... 17

    § 1362(7) ......................................... 19

    § 1362(8) ......................................... 19

    § 1362(12) ........................................ 17

§ 1362(14) ........................................... 18

§ 1365(a) ............................................ 16

§ 1365(a)(1) ...................................... 4, 15

§ 1365(d) ............................................ 16

§ 1365(f)(1) ......................................... 16

§ 1365(f)(6) ......................................... 16

## STATE STATUTES

Haw. Rev. Stat., Title 19:

§ 342D-6 ......................................... 7, 17

§ 342D-50 ............................................ 7

§ 342D-51 (2007) ..................................... 7

Hawaii Administrative Rules:

§ 11-62-06(g) ........................................ 7

§ 11-62-06(h) ........................................ 7

§ 11-62-52 ........................................... 8

## FEDERAL RULES

Federal Rule of Civil Procedure 56 .......................... 13

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SIERRA CLUB, HAWAIʻI CHAPTER; HAWAIʻIʼS THOUSAND FRIENDS; and OUR CHILDRENʼS EARTH FOUNDATION, Plaintiffs, vs. CITY AND COUNTY OF HONOLULU and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity, Defendants. | Civil No. 04-00463 DAE/BMK **MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

**I.    INTRODUCTION**

On February 26, 2008, this Court granted Plaintiffsʼ Motion for Reconsideration and reinstated Plaintiffʼs First and Second Claims for Relief.[1]  On May 7, 2008, this Court denied Defendant City and County of Honoluluʼs Motion to Dismiss the Plaintiffsʼs same First and Second Claims.[2]

Plaintiffs Sierra Club, Hawaiʻi Chapter, Hawaiʻiʼs Thousand Friends, and Our Childrenʼs Earth Foundation (collectively, "Citizens") now move this Court for partial summary judgment against Defendant City and County of Honolulu ("CCH") to establish

_____

[1]    Order Granting Plaintiffsʼ Motion for Reconsideration of Order Filed September 30, 2005 Dismissing Plaintiffsʼ First and Second Claims filed February 26, 2008 (Docket Document No. 166) ("Reconsideration Order II").

[2]    Reinstated Order Denying City and County of Honoluluʼs Motion to Dismiss Plaintiffsʼ First and Second Claims, filed May 7, 2008 (Docket Document No. 175).

clear liability on the Citizens' First and Second Claims for sewage spills.

In the interest of judicial economy, Citizens bring this motion for a smaller number of violations than originally pled in the First and Second Claims.  The Citizens do not need to establish every single CCH violation to achieve the central objective: injunctive relief to remedy the long neglected repair of the City's wastewater collection and treatment system.

The Citizens' first and most important goal is injunctive relief--to protect the health and safety of Oʻahu's citizens and visitors from CCH's history of raw sewage spills.

The second and related goal is injunctive relief in the form of Supplemental Environmental Projects ("SEPs") authorized under the Clean Water Act ("CWA") under which CCH commits funds to local projects that protect and enhance the water quality in Oahu's near-shore marine environment.  SEPs are undertaken *in lieu of* conventional civil penalties paid to the U.S. Treasury, but serve the same purpose.  While the Environmental Protection Agency ("EPA") routinely requests civil penalties as a price for past conduct and a deterrent against future violations, penalty money transferred to the U.S. Treasury does nothing to actually solve the problem on the ground on Oʻahu.

According to the Hawaiʻi State Department of Health records, CCH self-reported at least 880 sewage spills and bypasses from

May 1, 1999 to February 18, 2008.[3]  For the injunctive relief which
Plaintiffs seek, it is enough to establish CCH's liability for a
portion of CCH's sewage spills and bypasses for this period. In
this motion, Plaintiffs address only 539 spill and bypass
violations for this period.

The Citizens' *First* Claim alleges CCH violated the Clean Water
Act by repeatedly spilling raw or inadequately treated sewage from
CCH's sewage collection systems to "waters of the United States."
The collection systems transport sewage to CCH's Sand Island,
Honouliuli, Kailua, Waiʻanae and Wahiawa Wastewater Treatment
Plants ("WWTPs").  The First Claim addresses only *spills of raw or
partially treated sewage to waters of the United States, regardless
of which collection system generated the spill.*

The Citizens' *Second* Claim, *inter alia,* alleges that CCH
violated the Standard Provisions and Reporting Requirements ¶¶ B.7,
C.2, and C.4 of the Honouliuli National Pollutant Discharge
Elimination System ("NPDES") permit by *spilling sewage or partially
treated wastewater from the Honouliuli WWTP collection system.*

The Honouliuli WWTP NPDES permit conditions expressly
*prohibit all unauthorized overflows of sewage*, whether the spills
reach waters of the United States or not.  In this motion, the
Citizens move to establish liability on their Second Claim *only* for
spills from the Honouliuli WWTP that did *not* reach waters of the

---

[3]    Separate and Concise Statement of Facts in Support of
Plaintiffs' Motion for Partial Summary Judgment on Claims One and
Two ("SCSF"), ¶ 30.

United States.  Thus, the Citizens avoid double-counting any CCH
spills as violations under their First and Second Claims.

In this motion, the Citizens seek partial summary judgment on
their First and Second Claims for CCH's CWA violations from May 30,
1999 through December 31, 2007.

## II.  LEGAL BACKGROUND

The Clean Water Act aims "to restore and maintain the
chemical, physical and biological integrity of the Nation's
waters."  33 U.S.C. § 1251(a).  To this end, the CWA prohibits any
discharge of pollutants from point sources into waters of the
United States unless first authorized by an NPDES permit.  33
U.S.C. §§ 1311(a), 1342(b) and (c).  The CWA authorizes EPA (or
states with permit programs approved by EPA) to issue NPDES permits
(with conditions) allowing the permit holder to discharge limited
"pollutants" into waters of the United States.  33 U.S.C. § 1342.
The CWA categorically forbids discharging pollutants to such waters
except as authorized by a NPDES permit.  33 U.S.C. § 1311(a).

The CWA Citizen Suit provision authorizes Citizens to bring
suit (1) for CCH's discharges without NPDES permit authorization;
and (2) to enforce CCH's violations of its permit conditions.  33
U.S.C. § 1365(a)(1); *Sierra Club v. Union Oil Co. of California*,
813 F.2d 1480, 1483 (9th Cir. 1987).  Each day that pollutants are
discharged without an authorized NPDES permit constitutes a
separate CWA violation.  33 U.S.C. § 1319(d); *Borden Ranch*

*Partnership v. United States Army Corps of Eng'rs,* 261 F.3d 810, 817 (9th Cir. 2001).

## III.  FACTUAL BACKGROUND

CCH owns and operates the Sand Island, Honouliuli, Kailua, Waiʻanae, and Wahiawa WWTPs and appurtenant collection systems. Declaration of Tim Houghton in Support of CCH's Motion to Dismiss the Citizens' First, Second, Ninth, Eleventh, and Twelfth Claims, ¶ 2, Case No.1:04-CV-00463-DAE-BMK (Docket Document No. 41).

The Sand Island WWTP and related collection system collects and treats sanitary sewage from the Honolulu portion of the City and County of Honolulu, Hawaiʻi.  *Id.*

The Honouliuli WWTP and related collection system collects and treats the sanitary sewage from the Ewa District.  *Id.*

CCH also operates six smaller WWTPs and related collection systems, including the Kailua and Waiʻanae WWTPs.  The smaller WWTPs collect and treat sanitary sewage from Windward, Central, and Leeward Oʻahu. *Id.*

### A.   CCH'S WWTP PERMITS

The EPA and/or Hawaii State Department of Health ("DOH") issued NPDES permits authorizing CCH to discharge treated sewage effluent from the Sand Island, Honouliuli, Kailua,  Waiʻanae, and Wahiawa WWTPs, subject to specific permit conditions.  *Id.* at ¶¶ 4, 5.

On November 2, 1998, EPA and DOH issued the most recent Sand Island WWTP NPDES permit.  NPDES Permit No. HI0020117 ("Sand Island Permit").  *Id.* at ¶ 5.

On June 6, 1991 EPA and DOH issued the most recent Honouliuli WWTP NPDES permit, NPDES Permit No. HI0020877 ("Honouliuli Permit").  *Id.* at ¶ 6.

### B.    PERMIT REQUIREMENTS

The Honouliuli and Sand Island Permits authorize CCH to discharge treated sewage from the WWTP's deep ocean outfalls, subject to effluent limitations, prohibitions, and other requirements.  SCSF, ¶ 28.

The Honouliuli Permit prohibits "any overflow or bypass of treatment facilities, including the waste collection system." SCSF, ¶ 10.   The Honouliuli Permit defines  "overflow" as the intentional or unintentional diversion of flow from the collection and transport systems, including pumping facilities.  SCSF, ¶ 11. The Honouliuli Permit defines "bypass" as the intentional diversion of any waste stream from any portion of the treatment facility whose operation is necessary to maintain compliance with the terms and conditions of the permit.  SCSF, ¶ 12.  The Honouliuli Permit is very strict.   It requires CCH to report any noncompliance with the permit, including sewage spills/overflows and bypasses that may endanger human health or the environment to DOH and EPA.  SCSF ¶ 1.

Similarly, the Sand Island Permit prohibits "bypass," as
defined by 40 C.F.R. § 122.41(m). The permit requires CCH to
report unanticipated bypasses (i.e. bypasses that CCH has not
planned in advance) to DOH and EPA. SCSF, ¶ 8. The Sand Island
Permit also requires CCH to submit reports of sewage spills
associated with the Sand Island WWTP collection system to DOH and
EPA.[4] SCSF, ¶ 2.

To satisfy the conditions in the Sand Island and Honouliuli
Permits, CCH is required to submit monthly "Wastestream Diversion
Reports" that report sewage spills and bypasses from these two
WWTPs (or their appurtenant collection systems) to EPA and DOH.
SCSF, ¶ 3. The Sand Island and Honouliuli Permits both require
that CCH sign and certify the accuracy of its sewage spill and
bypass reports under penalty of law. SCSF, ¶ 17. These duties are
unequivocal.

In addition to the Honouliuli and Sand Island Permit
requirements to submit monthly summaries of sewage spills, Hawai'i
state law imposes specific duties on CCH to immediately report
certain sewage spills. Hawaii Administrative Rules ("H.A.R.")
§ 11-62-06(g), (h), Appendix C, Responses for Wastewater Spills,
Overflows, and Discharges. Dischargers (like CCH) must notify DOH
of all sewage spills and overflows. The notification protocol

---

[4]    The DOH NPDES permit also contains DOH Standard NPDES
Permit Conditions (as of May 3, 1999) which reflect the duty
under State Law to report any unlawful discharges of pollutants
to state waters. Haw. Rev. Stat. §§ 342D-6, 342D-50, 342D-51
(2007).

varies in accordance with the amount, time, and location of the spill. *Id*. These immediate notification reports are also submitted under penalty of law.[5]

### C.    PREVIOUS ENFORCEMENT ACTIONS

As this Court is well aware, EPA sued CCH in 1994 for improperly spilling sewage without NPDES permit authorization. *United States, et al. v. City and County of Honolulu*, Civ. No. 94-00765 DAE-KSC ("EPA I"). On May 15, 1996, this Court entered a Consent Decree (first lodged in 1995) between EPA, DOH, and CCH ("1995 Consent Decree") that addressed CCH's unlawful sewage spills up to October 3, 1994. SCSF, ¶ 4.

The 1995 Consent Decree, inter alia, required CCH to submit Quarterly Reports to DOH and EPA that explain the status of various long term capital improvements to CCH's collection systems and treatment plants required by the 1995 Consent Decree as well as report non-compliance with any requirements of the decree. SCSF, ¶ 5. The 1995 Consent Decree also mandates that Quarterly Reports "shall include reports of all collection system spills (dry and wet weather) and all WWTP emergency bypasses causes by "I&I"[6] in the previous quarter." SCSF, ¶ 6. All CCH reports submitted to EPA and DOH under the 1995 Consent Decree must be signed and certified as accurate by an official or authorized agent under penalty of

---

[5]    *See* H.A.R. § 11-62-52, *citing* 40 C.F.R. § 122.22.

[6]    "Infiltration and Inflow" is a term commonly used to describe the inflow of water from the soil or other sources into collection system pipes.

law.[7]  SCSF, ¶ 17.  To satisfy these requirements under the 1995

Consent Decree, CCH generally submits reports of sewage spills and

bypasses as attachments to its Quarterly Reports entitled

"Collection Systems Spills (Summary) & Treatment Plant Spills and

Bypasses."  SCSF, ¶ 7.

CCH complied with its duty to file Quarterly Reports up to

December 31, 2005.  However, between January 1, 2006 and

September 30, 2007, CCH failed to submit any Quarterly Reports with

DOH or EPA.  SCSF, ¶ 32.

On May 8, 2007, EPA and DOH brought a separate lawsuit against

CCH for the massive "Beachwalk" sewage spill.  *United States, et*

*al. v. City and County of Honolulu,* Civ. No. 07-00235 DAE-KSC

("EPA II").  EPA and DOH's complaint in EPA II asserts a single CWA

claim for injunctive relief against CCH for the 48 million gallons

of raw sewage that spilled into the Ala Wai Canal from March 26-30,

2006 due to a rupture in CCH's Beachwalk force main.  SCSF, ¶ 26.

Concurrently with filing their complaint, EPA and DOH lodged a

Stipulated Order purporting to resolve their one asserted claim.

---

[7]  Specifically, the 1995 Consent Decree requires CCH's
Quarterly Reports to include the following signed certification:
"I certify under penalty of law that the document and all
attachments were prepared under my direction or supervision in
accordance with a system designed to assure that qualified
personnel properly gather and evaluated the information
submitted.  Based on my inquiry of the person or persons who
manage the system, or those persons directly responsible for
gathering the information, the information submitted is, to the
best of my knowledge and belief, true, accurate, and complete.  I
am aware that there are significant penalties for submitting
false information, including the possibility of fine and
imprisonment for knowing violations."  SCSF, ¶ 17.

SCSF, ¶ 27.  In a *non sequitur*, the Stipulated Order addresses not one claim, but six.  The Order requires CCH remedial action on six force main lines:  Beachwalk, Ala Moana, Old Hart Street, Kailua/Kaneohe, Waimalu, and Kahala lines over a schedule lasting eleven years until December 2018.  SCSF, ¶ 27.  The Stipulated Order expressly provides that CCH does <u>not</u> admit liability for the Beachwalk spill.  The Stipulated Order did not impose any civil penalties or require any supplemental environmental projects in lieu of such penalties.  *Id.*  The Court entered the Stipulated Order on October 10, 2007.  SCSF, ¶ 27.

### D.    CCH'S ONGOING SEWAGE SPILL PROBLEM

As discussed and documented in detail in the Citizens' prior pleadings, the 1995 Consent Decree failed to end CCH's sewage spill violations.  *E.g.,* Reconsideration Order II at 6-7.  In the thirteen years since the Consent Decree, CCH has committed several hundred sewage spills all over Oʻahu and regularly spilled sewage at rates exceeding the 1995 Consent Decree's goals.  *Id.*; SCSF, ¶ 23.  These spills have frequently closed beaches.  They continue to threaten the health and well-being of Hawaiʻi's residents and visitors.  *Id.*  The causes of these spills remain the same--sewer line blockages, pump station failures, collapsing sewer lines, and excessive I/I.  SCSF, ¶ 24.

### E.    DOH's SPILL DATABASE

As noted above, DOH requires CCH to submit sewage spill and bypass reports to DOH that provide detailed information about CCH's

sewage spills and bypasses. DOH's Clean Water Branch then uses this information to produce its own continually updated sewage spill and bypass database ("DOH's spill database"). DOH then tracks and analyzes CCH's sewage spill problems. SCSF, ¶ 18. DOH's spill database include the following information (as reported by CCH to the agency) for each spill or bypass incident: the date that sewage spills begin, the date they ended, the location where the sewage spill originated, the quantity of sewage spilled, they type of wastewater spilled (raw sewage, partially treated sewage, etc.), whether the spill entered a storm drain or waterway and if so which one, whether warning signs were posted, the cause of the sewage overflow, and other pertinent information about the spill. SCSF, ¶ 29.

DOH spill database always identifies a geographic location for the spill or bypass, generally a street address close to the point where sewage spilled out of the relevant CCH sewer line, pump station, or overflowed from the relevant CCH treatment facility. SCSF, ¶ 29. In these spills or bypasses, raw or inadequately treated sewage bubbles out of sewer manholes, flows from ruptures in sewer lines, overflows pump stations, or overflows treatment plant equipment and flows into public streets, streams, beaches, the ocean, and other publicly accessible areas. SCSF, ¶ 24.

The Citizens here move for summary judgment on the Citizens' First Claim that on 332 different times CCH discharged pollutants into waters of the United States without NPDES permit authorization

in violation of CWA § 301(a).  33 U.S.C. § 1311(a).  These
violations consist of 278 overflows or spills of raw sewage from
the CCH collection system, 23 overflows or spills from the WWTP,
and 31 discharges of inadequately treated sewage in the form of
unlawful bypasses from CCH's WWTPs.  SCSF, ¶ 33.  CCH's self-
reporting to DOH establishes these violations.  CCH must self-
report these spills to DOH's Clean Water Branch which compiles a
database.  DOH reliably documents in summary fashion CCH's self-
reported spill and bypass violations.  SCSF, ¶ 29.

The Citizens also move for summary judgment on the Citizens'
Second Claim that on 207 separate occasions CCH  discharged sewage
or bypassed treatment in violation of the Honouliuli Permit's
Standard Provisions and Reporting Requirements, Section B, ¶ 7 and
Section C, ¶¶ 2,4 on at least 207 days.  SCSF, ¶ 34.[8]

---

[8]  CCH reported additional sewage spills and bypasses to DOH
and EPA from WWTPs and collection systems other than the
Honouliuli WWTP and collection system; however, CCH did not
provide enough information to determine if the discharge reached
"waters of the United States."  NPDES permits for the other WWTPs
should be read as prohibiting all these spills and bypasses, but
they are not as explicit as the Honouliuli NPDES permit.  As
noted, Citizens do not seek to prove every single CCH sewage
spill or bypass violation.  This is unnecessary to secure the
basic objective: establishing sufficient CCH liability to support
appropriate injunctive relief and an award of a supplemental
environmental project in lieu of civil penalties.  Accordingly,
Citizens seek only liability for CCH spills and bypasses that
either (1) reached waters of the United States or (2) were from
the Honouliuli WWTP or collection system.

IV.   ARGUMENT

A.   SUMMARY JUDGMENT IS PARTICULARLY APPROPRIATE IN CWA
     CASES

CWA cases are particularly appropriate for summary
adjudication under Rule 56, Federal Rules of Civil Procedure.  The
CWA was designed for strict, speedy, and simple enforcement.  The
CWA imposes strict liability for violations of any limitations
established under the Act, including all terms of NPDES permits.
33 U.S.C. §§ 1311(a), 1342(k); *see also Hawaii's Thousand Friends
v. City and County of Honolulu,* 821 F. Supp. 1368, 1392 (D. Haw.
1993) ("Courts throughout the country have held that NPDES
compliance is a matter of strict liability and a defendant's intent
and good faith are irrelevant"); *Sierra Club v. Union Oil Co. of
California,* 813 F.2d 1480, 1490-91 (9th Cir. 1987), *vac'd on other
grounds,* 485 U.S. 931, (1988), *reinstated,* 853 F.2d 667 (9th Cir.
1988).

To establish CCH's CWA liability, the Citizens need only prove
that CCH spilled pollutants to waters regulated under the CWA
without NPDES permit authorization or violated an NPDES permit
condition.  The Citizens are not required to prove that the
violations caused harm or involved culpable misconduct.  *See, e.g.,
Sierra Club v. Union Oil Co. of Cal.,* 813 F.2d 1480, 1490-91 (9th
Cir. 1987) (that violations are *de minimis,* "technical," "rare" or
insignificant is irrelevant to liability), *vacated for
reconsideration,* 485 U.S. 931, *reinstated & amended,* 853 F.2d 667

(9th Cir. 1988); *Hawaii's Thousand Friends v. City and County of Honolulu,* 821 F. Supp. 1368, 1392 (D. Haw. 1993); *Mumford Cove Ass'n v. Town of Groton,* 640 F. Supp. 392, 395 (D. Conn. 1986).

To defeat the Citizens' motion, CCH "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Zenith Ratio Corp.,* 475 US 574, 586 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Nishimoto v. Federman-Bachrach & Assocs.,* 903 F.2d 709, 716 (9th Cir. 1990); *United States v. Wilson,* 881 F.2d 596, 601 (9th Cir. 1989) (non-moving party must offer evidence of such a caliber that a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented).

CCH may not rely solely on the pleadings or the absence of the Citizens' evidence, but must affirmatively introduce specific facts which controvert the facts presented by the Citizens. *Liberty Lobby,* 477 U.S. at 248-52; *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951-52 (9th Cir. 1978). Thus, the use of summary judgment is encouraged in appropriate cases. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

Summary judgment is particularly appropriate here. The evidence establishing CCH's CWA liability comes from CCH's own reporting to DOH and/or EPA. The reports are required by CCH's NPDES permits, the 1995 Consent Decree, and DOH's duly promulgated Hawai'i Administrative Rules. CCH cannot genuinely dispute the material facts relevant to its liability. A CWA "self-monitoring

report is to be considered . . . conclusive evidence of an
exceedance of a permit limitation." *Union Oil*, 813 F.2d at 1492.
Allowing a defendant discharger to impeach its own reports "would
be sanctioning countless additional hours of NPDES litigation and
creating new, complicated factual questions for district courts to
resolve[.]" *Id.* As this Court pointed out: "Because these
reports are submitted under penalty of perjury, they constitute
admissions of noncompliance which bind the defendant." *Save Our
Bays & Beaches v. City and County of Honolulu,* 904 F. Supp. 1098,
1138 (D. Haw. 1994), *see also* 40 C.F.R. §§ 122.41(k), 122.22(b)
(requiring all reports submitted pursuant to permit requirements to
be signed and certified).

Thus, self-monitoring reports provide an unequivocal
evidentiary foundation for summary judgment in CWA cases such as
this. For the sewage spills and bypasses addressed by this motion,
CCH's own reports to DOH and EPA irrefutably establish that CCH
discharged pollutants to CWA regulated waters without permit
authorization or spilled sewage in violation of the Honouliuli
NPDES Permit.

### B.    CITIZEN PLAINTIFFS MAY BRING AN ACTON TO ENFORCE THE CWA AGAINST CCH FOR ITS OWN VIOLATIONS

Whenever EPA or a State has not previously commenced, and is
not currently prosecuting, a judicial action in federal court for
given CWA violations, the CWA expressly authorizes citizens to file
a civil suit against any person violating an effluent standard or
limitation established under the CWA. 33 U.S.C. § 1365(a)(1). CWA

effluent standards or limitations include CWA § 301(a)'s prohibition against unpermitted discharges of pollutants as well as NPDES permit conditions.   33 U.S.C. § 1365(f)(1), (6); *accord* 40 C.F.R. § 122.41(a)(2).   Thus, citizens may sue any person who violates CWA § 301(a)'s prohibition on unpermitted discharges and/or any NPDES permit term.   *Union Oil Co.*, 813 F.2d at 1483.

The Citizens' right to enforce the CWA is firmly established in case law, in keeping with

> Congress' clear intention . . . that citizen plaintiffs
> are not to be treated as 'nuisances or troublemakers'
> but rather as 'welcomed participants in the vindication
> of environmental interests.'

*Proffitt v. Municipal Auth. of the Borough of Morrisville*, 716 F. Supp. 837, 844 (E.D. Pa. 1989) *(quoting Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d Cir. 1976)); *see also See Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987) (citizen suits perform an important public function in the Ninth Circuit); *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1136 (11th Cir. 1990) ("citizen suits are an important supplement to government enforcement of the Clean Water Act, given that the government has only limited resources to bring to its own enforcement actions."); *Save Our Bays & Beaches*, 904 F. Supp. at 1125.   Citizens who prevail against violators are entitled to injunctions, declaratory relief, attorney fees and costs, as appropriate.   33 U.S.C. § 1365(a), (d).

C.    **CCH REPEATEDLY VIOLATED THE CWA BY SPILLING RAW OR PARTIALLY TREATED SEWAGE TO WATERS OF THE UNITED STATES**

1.    **CCH VIOLATED THE CWA'S PROHIBITION ON DISCHARGING POLLUTANTS TO WATERS WITHOUT PERMIT AUTHORITY (FIRST CLAIM)**

To establish the City's CWA liability on the First Claim, the Citizens need only prove that:  (1) CCH is a person, (2) that has discharged a pollutant, (3) from a point source, (4) into the navigable waters of the United States, (5) without authorization from an NPDES permit.  *Mokelumne River,* 13 F.3d at 308 (1994); *Georgia v. City of East Ridge, Tenn.,* 949 F. Supp. 1571, 1575-76 (N.D. Ga. 1996).

a.    **CCH IS A "PERSON" UNDER THE ACT**

As a Hawaiian municipal corporation, the City is a "person" under the Act.  The CWA's definition of "person" includes a "corporation" and a "municipality."  33 U.S.C. § 1362(5).  The term "municipality" is defined as "a city, town, borough, county, parish, district, association, or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage."  33 U.S.C. § 1362(4).

b.    **THE SEWAGE DISCHARGED BY CCH IS A "POLLUTANT"**

CCH discharged "a pollutant" within the meaning of the CWA. The Act defines a "pollutant" to include any "sewage," "sewage sludge," "chemical wastes," "biological materials," and "municipal waste," that is discharged into water.  33 U.S.C. § 1362(6), (12), *see also* Haw. Rev. Stat., Title 19, § 342D-6.  Raw or partially

treated sewage from CCH's collection system includes chemical
wastes from businesses and residences, as well as human wastes that
constitute biological materials.  By definition, these are both
"sewage" and "municipal" waste.  *See City of Milwaukee v. Illinois
and Michigan,* 451 U.S. 304, 320 (1981).

### c.    CCH DISCHARGES FROM A "POINT SOURCE"

CCH's sewage spills and bypasses are discharges from a point
source.  The sewage spills and bypasses at issue in this motion
occurred from sewer lines, manholes, force mains, pump stations,
WWTP equipment and other locations within CCH's sewage collection
and wastewater treatment system.  SCSF, ¶¶ 32, 17.

The CWA defines a "point source" as "any discernible, confined
and discrete conveyance, including but not limited, to any pipe
[or] . . . conduit."  33 U.S.C. § 1362(14).  Courts have long
recognized that

> [t]he concept of a point source was designed to further
> [regulation of water pollution] by embracing the
> broadest possible definition of any identifiable
> conveyance from which pollutants might enter the waters
> of the United States.

*United States v. Earth Sciences, Inc.,* 599 F.2d 368, 373 (10th Cir.
1979); *Trustees for Alaska v. EPA,* 749 F.2d 549, 558 (9th Cir.
1984) (*citing Earth Sciences'* view on point source with approval);
*San Francisco Baykeeper v. Tidewater Sand & Gravel Co.,* 1997 U.S.
Dist. LEXIS 22602 at *22-*23; 46 ERC (BNA) 1778, 1784 (N.D. Cal.
1997).  CCH's sewage collection and wastewater treatment system,
including all CCH's sewer lines, pump stations, force mains,

manholes and WWTP equipment all confine and convey sewage within identifiable points and are thus all point sources within the meaning of the CWA. *See City of East Ridge,* 949 F. Supp. at 1578.

> ### d.    THE WATERS INTO WHICH CCH DISCHARGES POLLUTANTS ARE "WATERS OF THE UNITED STATES"

CCH spilled sewage into CWA regulated waters of the United States.

> ### (1)    OCEAN WATERS ARE WATERS OF THE UNITED STATES

CCH's own spill reports specify that many of its sewage spills and bypasses flowed into near-shore ocean waters of Oʻahu, including Ala Moana Beach, Honolulu Harbor, Kailua Bay, Mamala Bay, Maunalua Bay, and Pearl Harbor. All are part of the Pacific Ocean. SCSF, ¶¶ 20, 21. The CWA defines regulated navigable waters as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The CWA further defines the "territorial seas" to be ocean waters extending three miles from shore. 33 U.S.C. § 1362(8). EPA regulations further define waters of the United States to include, inter alia, "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide." 40 C.F.R. § 122.2. All of Oʻahu's near-shore ocean waters are part of the territorial seas, waters subject to the ebb and flow of the tide, and waters used in interstate and foreign commerce. Accordingly, such waters are CWA regulated waters of the United States.

678132-1 / 7502-3                             19

(2)    CCH'S SPILLS TO CERTAIN NAMED WATER
       BODIES ARE WATERS OF THE UNITED STATES

CCH's own reports to DOH and EPA specify that many of CCH's sewage spills and bypasses were discharged to named inland water bodies that flow to the ocean and/or are themselves navigable. Pursuant to EPA's CWA regulations, all tributaries to waters of the United States are themselves waters of the United States regardless of size, whether they flow continuously, or whether they are artificially created.    40 C.F.R. § 122.2; *Kaiser Aetna v. United States,* 444 U.S. 164, 183 (1979) (man-made channel connecting an isolated pond to the ocean and upland areas dredged to make the pond larger are waters of the United States); *Headwaters, Inc. v. Talent Irrigation Dist.,* 243 F.3d 526, 533-36 (9th Cir. 2001) (man-made irrigation canals tributary to a water of the United States are themselves waters of the United States); *Leslie Salt Co. v. Froehlke,* 578 F.2d 742, 755 (9th Cir. 1978) (*citing with approval holding in United States v. Phelps Dodge,* 391 F. Supp. 1181, 1187 (D. Ariz. 1975) that normally dry arroyos are waters of the United States); *North Carolina Shellfish Growers Assoc. v. Holly Ridge Assoc.,* 2003 U.S. Dist. LEXIS 13674 at *39-*42 (E.D.N.C. 2003) (man-made ditches tributary to CWA regulated waters are also jurisdictional waters).    Furthermore, any water body that is navigable in fact is a water of the United States.    40 C.F.R. § 122.2; *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 133 (1985).

CCH's spill and bypass reporting to DOH (pursuant to the 1995 Consent Decree, the Honouliuli and Sand Island Permits, and state law) indicate that CCH's sewage spills and bypasses flowed from identified points in CCH's collection system into the following specifically identified receiving waters:  Ahuimanu Stream, Aiea Stream, Ala Wai Boat Harbor, Ala Wai Canal, Enchanted Lake, Halawa Stream, Inoanole Stream, Kaelepulu Stream, Kahala Stream, Kahana Stream, Kahanaiki Stream, Kalawahine Stream, Kalihi Stream, Kana Stream, Kanaha Stream, Kaneohe Stream, Kapalama Canal, Kawa Stream, Kawainui Marsh, Kawainui Stream, Keaahala Stream, Keehi Lagoon, Kewalo Basin, Komo Mai Bridge Canal, Kuou Stream, Lake Wilson (Wahiawa Reservoir), Kaelepulu Stream, Kahauiki Stream, Kapakahi Stream, Kamooalii Stream, Liliha Stream, Makakilo Gulch, Manoa Stream, Maunalua Bay, Maunawili Stream, Moanalua Stream, Nanakuli Stream, Niniko Stream, Nuuanu Stream, Nuupia Ponds, the Pacific Ocean, Palolo Stream, Pauoa Stream, Puehuehu Stream, Puekiuehu Stream, Puha Stream, Waiawa Stream, Waikalua Stream, Waikele Stream, Waikalua Stream, Wailupe Stream, Waimalu Stream, Waiola Stream, Waiomao Stream, and Waolani Stream.  SCSF, ¶¶ 19, 20. Each of these water bodies is part of the Pacific Ocean, a tributary to the Pacific Ocean, or itself a navigable water, and thus are waters of the United States.  SCSF, ¶ 22.  Accordingly, all sewage spills and bypasses CCH reported as reaching these waters are spills to regulated waters of the United States.

### e.    CCH LACKS NPDES PERMIT AUTHORIZATION TO SPILL OR BYPASS RAW OR PARTIALLY TREATED SEWAGE

CCH's NPDES permits only authorize CCH to discharge *treated* sewage out specified discharge outfalls.  SCSF, ¶¶ 28, 31.  None of CCH's NPDES permits authorize CCH to discharge sewage at any other location.  None of the permits authorize CCH to discharge raw sewage from CCH's collection system to waters of the United States.

Accordingly, any discharges of raw sewage from CCH's collection system to waters of the United States from May 30, 1999 to the present constitute an unauthorized discharge of pollutants in violation of CWA section 301(a).  33 U.S.C. § 1311(a).  *See City of Milwaukee v. Illinois and Michigan,* 451 U.S. 304, 320 (1981) (sewage overflows "are point sources discharges and, under the Act, are prohibited unless subject to a duly issued permit").

Furthermore, "bypasses" (discharges of untreated, partially treated, or even fully treated wastewater from a WWTP to waters of the United States) from any point other than the authorized discharge point described in a NPDES permits are for purposes of the CWA, the same as a collection system spill – which are also discharges of pollutants without express NPDES permit authorization.

For this reason, any time CCH bypasses any portion of its treatment works and discharges partially treated effluent from its outfalls, the incident constitutes a violation of CWA 301(a).

Moreover, EPA regulations (40 C.F.R. § 122.41(m)) (incorporated into CCH's NPDES permits) prohibit CCH from

"bypassing" sewage (*e.g.* from diverting sewage around any portion of a CCH sewage treatment facility and then discharging this untreated or inadequately treated sewage from a CCH sewage treatment facility). SCSF, ¶¶ 9, 10, 11, 12.

EPA regulations state that WWTP dischargers may not be prosecuted for bypasses if (1) the bypass was unavoidable to prevent loss of life, personal injury, or severe property damage; (2) there were no feasible alternatives to the bypass; and (3) the discharger provided notice and explanation of these two facts within 24 hours of the bypass. 40 C.F.R. § 122.41(m). The Honouliuli Permit similarly limits DOH and EPA's enforcement authority for any bypasses that meet the criteria in 40 C.F.R. § 122.41(m); SCSF, ¶ 13. The Honouliuli Permit adds that CCH must submit written notice of bypasses within five days to DOH and EPA SCSF, ¶ 13.

The Sand Island Permit provides that bypass will not be considered permit violations if CCH can demonstrate the following: the bypass (1) did not cause any effluent limitation to be exceeded, and (2) was necessary for essential maintenance to assure efficient operation, or alternatively, 1), the bypass was unavoidable to prevent loss of life, personal injury, or severe property damage, (2), there were no feasible alternatives to the bypass, and (3), CCH provided notice to DOH and CCH of these two facts within 24 hours of the bypass. SCSF, ¶ 8. The Sand Island Permit also states that in any enforcement proceeding, CCH has the

burden of proof to establish that any exception to the bypass
prohibition applies.  SCSF, ¶ 9.  To avail itself of this
affirmative defense, CCH must monitor its effluent discharges
during a bypass to prove that it met effluent limitations during
the bypass.  *Id*.

In sum, the exceptions (to the prohibitions against bypass) in
EPA regulations and CCH's NPDES Permits are affirmative defenses
that CCH must assert and prove.  CCH has the burden to establish
each affirmative defense to defeat summary judgment of liability on
each reported bypass.  The Citizens need not prove that these
affirmative defenses do not apply to establish summary judgment.
*Bennett v. Mueller,* 322 F.3d 573, 585 (9th Cir. 2006) (burden of
proving an affirmative defense is on the party asserting it.)

CCH will not be able to meet its burden.  Based on the
Citizens' review of documents provided to them by DOH and EPA in
response to the Citizens' requests for documents under the Freedom
of Information Act and the Uniform Information Practices Act, CCH
did not provide notice to EPA or DOH within 24 hours of any of the
bypasses on which the Citizens are now seeking summary judgment CCH
failed to provide notice that any of CCH's bypasses (1) did not
cause any effluent limitation to be exceeded, and (2) were
necessary for essential maintenance to assure efficient operation,
or alternatively, 1) that these bypasses were unavoidable to
prevent loss of life, personal injury, or severe property damage,
or (2) there were no feasible alternatives to the bypasses.  SCSF,

¶ 31. It further appears that CCH did not report to EPA or DOH the results of any effluent monitoring CCH performed during such bypasses. SCSF, ¶ 31. Accordingly, summary judgment is appropriate. All CCH's self-reported bypasses were unauthorized discharges to waters of the United States.

As discussed above, CCH submits its self-reports of sewage spills and bypasses to DOH and/or EPA under penalty of law. SCSF, ¶ 17. Thus, CCH's reporting to DOH and EPA conclusively establish that CCH violated the CWA by causing unlawful and unpermitted discharges of raw or partially treated sewage into the waters of the United States from its sewage collection and treatment systems. *Id.; Union Oil,* 813 F.2d at 1492; *Save Our Bays & Beaches,* 904 F. Supp. at 1138.

To reduce the burden on this Court and on litigants, the Citizens seek to establish CCH's liability for CCH's spills to waters of the United States alleged in the Citizens' First Claim based on DOH's summary list. This list compiles in one document the information submitted by CCH in its required sewage spill reports to DOH. SCSF, ¶¶ 16, 18. Further, Citizens only seek to establish CCH's liability on their First Claim for those spills CCH unequivocally admitted reached either the Pacific Ocean, a tributary to the ocean, or other navigable water body (such as Lake Wilson). SCSF, ¶¶ 18-21.

The Citizens do *not* include in their First Claim spills that CCH identified as reaching *only* a storm drain, even though CCH's

storm drains generally flow to the ocean or waters that flow into the ocean and even though such spills almost certainly contributed some pollutant entering waters of the United States (given that storm drains eventually flush with rain water and carry any residual pollutants to the ocean).

Under the First Claim, Citizens move that this Court find: (a) CCH's 278 overflows or spills of raw sewage from the CCH collection system; (b) 23 overflows or spills from the WWTP; and c) 31 discharges of inadequately treated sewage in the form of unlawful bypasses from CCH's WWTPs constitute 332 violations of the CWA.

### 2. CCH VIOLATED THE HONOULIULI WWTP NPDES PERMIT PROVISIONS THAT PROHIBIT OVERFLOW AND BYPASS (SECOND CLAIM)

The Honouliuli Permit prohibits "[a]ny 'overflow' or 'bypass' of facilities, including the 'waste' collection system." SCSF, ¶ 10. The Honouliuli Permit expressly requires CCH to operate its collection, treatment, and disposal systems in a manner that precludes public contact with wastewater. SCSF, ¶¶ 14, 15. Finally, the Honouliuli Permit requires CCH to "at all times, properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the discharger to achieve compliance with this permit." SCSF, ¶ 14.

CCH's sewage spills and bypasses which do not reach waters of the United States are nonetheless expressly and categorically prohibited by the Honouliuli Permit. Such spills and bypasses

violate the Honouliuli Permit because they represent CCH operation of the Honouliuli collection and treatment system in a manner that fails to preclude public contact with wastewater.  Such spills and bypasses violate the Honouliuli Permit because they represent CCH's failure to properly operate and maintain its facilities and systems of sewage treatment and control.  SCSF, ¶¶ 14, 15, 22

Therefore, any spill of raw or partially treated sewage from the Honouliuli WWTP collection system (even those that do not reach the waters of the United States) violates one or more aforementioned provisions of the Honouliuli Permit.

CCH's spill and bypass reporting (to DOH and EPA pursuant to the 1995 Consent Decree, the Honouliuli and Sand Island Permits, and by law) indicates that CCH spilled raw or partially treated sewage from the Honouliuli WWTP or collection system a total of 880 times from May 30, 1999 to December 31, 2007[9] in violation of the Standard Provisions and Reporting Requirements, Section B, ¶¶ B(7), C(2), and C(4) of the Honouliuli Permit.  SCSF, ¶¶ 22, 30, 34.

The Citizens move this Court to find and determine that on at least 207 occasions, CCH spilled or bypassed raw or partially treated sewage from the Honouliuli WWTP and appurtenant collection system.  SCSF, ¶ 34. Even if these 207 spills or bypasses did not reach waters of the United States, CCH is still liable for 207 violations of the CWA.

---

[9]  This includes at least 23 collection system sewage spills and 31 WWTP bypasses. SCSF ¶ 33.

## V.    CONCLUSION

This Court should grant partial summary judgment in favor of the Citizens and against CCH on the Citizens' First and Second Claims.

This Court should make a determination and issue an order that CCH is liable for unlawfully spilling or bypassing raw or partially treated sewage from CCH's sewage collection and treatment system.

This Court should issue an order determining that CCH violated the federal Clean Water Act (between May 30, 1999 and December 31, 2007) as follows:

1.    332 violations of the CWA for discharging pollutants to waters of the United States without NPDES permit authorization; and

2.    207 violations of CWA for discharging raw or partially treated sewage to ground from the Honouliuli WWTP or collection system in violation of the Honouliuli Permit.

This Court should order injunctive relief to cure past violations and to prevent similar violations in the future.

The Court should invite proposals to conduct Supplemental Environmental Projects in lieu of civil penalties in order to clean up, remediate, reduce risk, and prevent future harm to Oʻahu's near shore marine environment.

Due to the extraordinary delays on the part of CCH, the unusual ongoing circumstances, and the clear need for (but long ignored) remedial action, this Court should seriously entertain

granting such other and appropriate equitable relief that this Court determines is just and proper.

Plaintiff Citizens remain available to assist the Court in any way the Court deems appropriate.

Finally, Plaintiff Citizens reserve their claims for attorneys fees and costs.

For the reasons stated above, and in light of the important public need for immediate, expeditious, and transparent remedial actions, Citizens urge this Honorable Court to act quickly on this motion.

Dated: Honolulu, Hawaii, May 19, 2008.


        /s/ William M. Tam
CHRISTOPHER SPROUL
Environmental Advocates

PAUL ALSTON
WILLIAM TAM
BLAKE K. OSHIRO
Alston Hunt Floyd & Ing

Attorneys for Plaintiffs
Sierra Club, Hawai'i, Chapter,
Hawai'i's Thousand Friends, and Our
Children's Earth Foundation