promote such certification shall be developed and enacted by the Permittee. Activities of this program shall be reported in the Annual Report in Part F of this permit.

2. The Permittee shall maintain in good working order a sufficient alternate power source for operating the wastewater treatment and disposal facilities. All equipment shall be located to minimize failure due to moisture, liquid spray, flooding, and other physical phenomena. The alternate power source shall be designed to permit inspection and maintenance and shall provide for periodic testing. If such alternate power source is not in existence, the Permittee shall halt, reduce, or otherwise control all discharges upon the reduction, loss, or failure of the primary source of power.

3. The Permittee is currently conducting the *Sand Island Wastewater Treatment Plant Chlorination Study* (see Part A.2.i of this permit) and will submit a Final Report to the EPA and DOH on March 31, 1999. Based on the results of this study, the EPA and DOH may determine that further ocean current monitoring or plume tracking studies are needed to assure that marine recreational waters are not impacted by the plume. At the request of the EPA and DOH, the Permittee shall submit a study plan (by date specified in the request), including detailed scopes of work and reporting schedules, to the EPA and DOH for approval. The Permittee shall implement the approved study plan, as directed by the EPA and DOH.

4. Based on the EPA's review of the *Sand Island Wastewater Treatment Plant Chlorination Study*, or additional ocean current or plume tracking studies, the EPA may conclude that potential impacts to the coral reef community may have occurred due to the plume. Based on this conclusion, the EPA may request the Permittee to study the effect(s) of the plume on the coral reef community. At the request of the EPA, the Permittee shall submit a study plan (by date specified in the request), including detailed scopes of work and reporting schedules, to the EPA for approval. The Permittee shall implement the approved study plan, as directed by the EPA.

5. This permit may be modified by the EPA and DOH to enable the Permittee to participate in regional monitoring activities conducted in the Mamala Bay during the term of this permit. The intent of regional monitoring activities is to maximize the efforts of all monitoring partners using a cost-effective monitoring design and to best utilize the pooled scientific resources of the region. During these coordinated monitoring efforts, the Permittee's sampling and analytical effort may be reallocated to provide a regional assessment of the impact of wastewater discharges to the Mamala Bay. Anticipated modifications to the monitoring program will be coordinated so as to provide a comprehensive picture of the ecological and statistical significance of monitoring results and to determine cumulative impacts of various pollutant sources. If predictable relationships among the biological, water quality and effluent monitoring variables can be demonstrated, it may be appropriate to decrease the Permittee's monitoring effort. Conversely, the monitoring program may be intensified if it appears that the objectives

22975

EXHIBIT 2 (part 2 of 2)

cannot be achieved through the Permittee's existing monitoring program. These changes will improve the overall effectiveness of monitoring in the Mamala Bay. Minor changes may be made without further public notice.

6.  In accordance with 40 CFR 125.66(d), the Permittee shall implement its EPA-approved public education program and Nonindustrial Source Control Program activities as scheduled. Progress shall be reported annually in the Annual Report in Part G of this permit.

7.  Following at least one year of continuous operation of the Sand Island WWTP Disinfection Facility, at the request of the Permittee, the EPA and DOH will re-evaluate the need for continuous effluent disinfection. To facilitate this process, the EPA and DOH will work with the Permittee and interested parties to evaluate all available information to assess the effects of the Sand Island WWTP discharge on nearshore and shoreline water quality without and with the operation of the Sand Island WWTP Disinfection Facility, where effective effluent disinfection is achieved (as specified in Part A.2.g of this permit). In order for the EPA and DOH to complete this assessment, the Permittee must provide all bacteriological indicator monitoring data required by this permit and other pertinent information to the EPA and DOH. The EPA and DOH will consider modifying this permit if: (1) the Permittee can demonstrate that the requested modification will not interfere with the attainment or maintenance of water quality that allows recreational activities in and on the water, consistent with federal 301(h) decision criteria, and will meet other NPDES permitting requirements; and (2) the Permittee is in compliance with the terms of this permit and all other applicable EPA requirements.

K.  **APPENDIX**

1.  Location Maps

2.  Process Diagrams

3.  Core Monitoring Stations

EXHIBIT 2 (part 2 of 2)

NPDES Permit No. HI 0020117
Page 55 of 59



Sand Island WWTP
1350 Sand Island Parkway Road
Hon., HI 96819
TMK: 1-05-041:005

Pacific Ocean

SAND ISLAND WASTEWATER TREATMENT PLANT
SITE LOCATION

LOCATION MAP

0        2021        4042

1" = 2021'

22977

Date: 07/16/98

EXHIBIT 2 (part 2 of 2)



EXHIBIT 2 (part 2 of 2)

22978

NPDES Permit No. HI 0020117
Page 57 of 59

SIWWTP LIQUID FLOW DIAGRAM



22979

EXHIBIT 2 (part 2 of 2)

NPDES Permit No. HI 0020117
Page 58 of 59



SIWTP SOLIDS FLOW DIAGRAM

NOTES:

1. HEAVY SOLID LINES INDICATE FLOWS COMMON TO GRAVITY AND DAF CLARIFICATION
2. SOLID LINES INDICATE FLOW PATTERNS NORMAL TO DAF CLARIFICATION
3. DASHED LINES INDICTE FLOWS PATTERNS NORMAL TO GRAVITY CLARIFICATION
4. DOTTED LINES REPRESENT DEWATTERED SLUDGE TO INCINERATION, AN ALTERNATE DISPOSAL OPTION
5. THE FLOW ROUTES SHOWN INDICATE NORMAL ROUTING OF SOLIDS, AND DO NOT INDICATE ALL POSSIBLE CONFIGURATIONS.
6. HT — HEAT TREATMENT, ALSO REFERRED TO AS THE THERMAL CONDITIONING PROCESS

22980

EXHIBIT 2 (part 2 of 2)

NPDES Permit No. HI 0020117
Page 59 of 59



FIGURE 3. SAND ISLAND SHORELINE, NEARSHORE AND OFFSHORE STATIONS FOR CORE MONITORING ACTIVITIES

Depth Contours in Meters

22981

EXHIBIT 2 (part 2 of 2)

DEPARTMENT OF HEALTH
STANDARD NPDES PERMIT CONDITIONS
UPDATED AS OF OCTOBER 1, 1997

TABLE OF CONTENTS

| SECTION | TITLE | PAGE |
|---|---|---|
| 1. | Basic water quality criteria | 3 |
| 2. | Onshore or offshore construction | 3 |
| 3. | Sampling requirements and definitions | 4 |
| 4. | Duty to reapply | 10 |
| 5. | Applications | 10 |
| 6. | Duty to comply | 12 |
| 7. | Need to halt or reduce activity not a defense | 14 |
| 8. | Duty to mitigate | 14 |
| 9. | Proper operation and maintenance | 14 |
| 10. | Permit actions | 14 |
| 11. | Property rights | 15 |
| 12. | Duty to provide information | 15 |
| 13. | Inspection and entry | 15 |
| 14. | Monitoring and records | 16 |
| 15. | Signatory requirement | 17 |
| 16. | Reporting requirements | 18 |
| 17. | Bypass | 19 |
| 18. | Upset | 21 |
| 19. | Existing manufacturing, commercial, mining, and silvicultural dischargers | 22 |
| 20. | Publicly owned treatment works | 23 |
| 21. | Reopener clause | 24 |
| 22. | Privately owned treatment works | 26 |
| 23. | Transfers by modification | 27 |
| 24. | Automatic transfers | 27 |
| 25. | Minor modification of permits | 28 |
| 26. | Termination of permits | 29 |
| 27. | Removed substances | 30 |
| 28. | Availability of reports | 30 |
| 29. | Civil and criminal liability | 30 |
| 30. | Oil and hazardous substance liability | 30 |
| 31. | Federal facility construction | 30 |
| 32. | State law | 31 |
| 33. | Severability | 31 |

Note:

All references to Title 40 of the Code of Federal
Regulations (40 CFR) are to regulations that are in effect on
July 1, 1996, unless otherwise specified.  The Clean Water Act

22982

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

(Act) is also known as the Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977, and appears in 33 U.S.C. §§1251 to 1387.

"This permit" means the applicable individual NPDES permit to which these standard conditions apply.

2

22983

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

1. **Basic water quality criteria** (comply with Hawaii Administrative Rules Section 11-54-04(a))

    a.  The discharge shall not interfere with the attainment or maintenance of the receiving State water quality which assures the protection and propagation of fish, shellfish, and wildlife, and allows recreational use in and on the water.  The discharge shall not cause the receiving State water to contain the following:

    (1)  Materials that will settle to form objectionable sludge or bottom deposits.

    (2)  Floating debris, oil, grease, scum, or other floating materials.

    (3)  Substances in amounts sufficient to produce taste or odor in the water or detectable off-flavor in the flesh of fish, or in amounts sufficient to produce objectionable color, turbidity, or other conditions in the receiving State waters.

    (4)  High or low temperatures; biocides; pathogenic organisms; toxic, radioactive, corrosive, or other deleterious substances at levels or in combinations sufficient to be toxic or harmful to human, animal, plant, or aquatic life, or in amounts sufficient to interfere with any beneficial use of the water.

    (5)  Substances or conditions or combinations thereof in concentrations which produce undesirable aquatic life.

    (6)  Soil particles resulting from erosion on land involved in earthwork, such as the construction of public works; highways; subdivisions; recreational, commercial, or industrial developments; or the cultivation and management of agricultural lands.

    b.  The discharge shall meet the basic requirements of Hawaii Administrative Rules, Section 11-54-04(b)(4).

2. **Onshore or offshore construction**

    This permit does not authorize or approve the construction

3

EXHIBIT 2 (part 2 of 2)

**STANDARD NPDES PERMIT CONDITIONS**

of any onshore or offshore physical structures or facilities
or the undertaking of any work in any State waters.

3.    **Sampling requirements and definitions**

   a.    **Sampling Points**

   All samples shall be taken at the monitoring points
   specified in this permit and, unless otherwise
   specified, before the effluent joins or is diluted by
   any other waste stream, body of water, or substance.
   Monitoring points shall not be changed without
   notification to and the approval of the Regional
   Administrator and the Director of Health.  No discharge
   is authorized which does not totally pass through the
   final monitoring point.

   b.    **Flow Measurements**

   Appropriate flow measurement devices and methods
   consistent with accepted scientific practices shall be
   selected and used to insure the accuracy and
   reliability of measurements of the volume of
   discharges.  The devices shall be installed,
   calibrated, and maintained to insure that the accuracy
   of the measurements are consistent with the accepted
   capability of that type of device.  Devices selected
   shall be capable of measuring flows with a maximum
   deviation of less than plus or minus ten (10) per cent
   from the true discharge rates throughout the range of
   expected discharge volumes.  Once-through condenser
   cooling water flow which is monitored by pump logs or
   pump hour meters as specified in this permit based on
   the manufacturer's pump curves shall not be subject to
   this requirement.  Guidance in selection, installation,
   calibration, and operation of acceptable flow
   measurement devices can be obtained from the following
   references:

   (1)    "A Guide of Methods and Standards for the
   Measurement of Water Flow," U.S. Department of
   Commerce, National Bureau of Standards, NBS
   Special Publication 421, May 1975, 97 pp.
   (Available from the U.S. Government Printing
   Office, Washington, D.C. 20402.  Order by SD
   catalog No. C13.10:421.)

4

22985

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

(2) "Water Measurement Manual," U.S. Department of Interior, Bureau of Reclamation, Second Edition, Revised Reprint, 1974, 327 pp. (Available from the U.S. Government Printing Office, Washington, D.C. 20402. Order by catalog No. 127.19/2:W29/2, Stock No. S/N 24003-0027.)

(3) "Flow Measurement in Open Channels and Closed Conduits," U.S. Department of Commerce, National Bureau of Standards, NBS Special Publication 484, October 1977, 982 pp. (Available in paper copy or microfiche from National Technical Information Service (NTIS), Springfield, VA 22151. Order by NTIS No. PB-273 535/5ST.)

(4) "NPDES Compliance Flow Measurement Manual," U.S. Environmental Protection Agency, Office of Water Enforcement, Publication MCD-77, September 1981, 135 pp. (Available from the General Services Administration (8BRC), Centralized Mailing Lists Services, Building 41, Denver Federal Center, Denver, CO 80225.)

c.   Calibration

The Permittee shall periodically calibrate and perform maintenance on all monitoring and analytical equipment used to monitor the pollutants discharged under this permit, at intervals which will insure the accuracy of measurements, but no less than the manufacturer's recommended intervals or six (6) month intervals (whichever comes first). Records of calibration shall be kept pursuant to section 14(b).

d.   pH Effluent Limitations Under Continuous Monitoring

If the Permittee continuously measures the pH of the discharge pursuant to a requirement or option in this permit, excursions from the range provided in Part A are permitted, provided:

(1) The pH limitation in Part A of this permit is based upon a requirement imposed under 40 CFR Subchapter N, Effluent Guidelines and Standards;

(2) The total time during which the pH values are outside the required range of pH values shall not exceed 446 minutes in any calendar month;

5

22986

EXHIBIT 2 (part 2 of 2)

### STANDARD NPDES PERMIT CONDITIONS

(3) No individual excursions from the range of pH values shall exceed 60 minutes; and

(4) For purposes of this section, an "excursion" is an unintentional and temporary incident in which the pH value of a discharge exceeds the range set forth in Part A of this permit. The number of individual excursions exceeding 60 minutes and the total accumulated excursion time in minutes occurring in any calendar month shall be reported in accordance with this permit.

e.   **Average**

As used in this permit, unless otherwise stated, the term average means the arithmetic mean of values taken at the frequency required for each parameter over the specified period. For fecal coliform, enterococcus, or *clostridium perfringens*, the "average" shall be the geometric mean. For total coliform, the "average" shall be the median.

f.   **Mass/Day Measurements**

(1) The "daily discharge" is the total mass (weight) of a pollutant discharged during a calendar day. The daily discharge shall be determined by using the following equations:

Daily Discharge (lbs/day) = 8.34 x Q x C; or

Daily Discharge (kg/day) = 3.785 x Q x C;

where "C" (in mg/l) is the measured daily concentration of the pollutant and "Q" (in million gallons per day) is the measured effluent flow rate for the same calendar day.

If only one (1) sample is taken during any calendar day, the mass (weight) of pollutant discharged that is calculated from it is the "daily discharge."

(2) The "average monthly discharge" is defined as the total mass of all daily discharges sampled and/or measured during a calendar month on which daily discharges are sampled and measured, divided by the number of daily discharges sampled and/or measured during the month. It is, therefore, an

6

22987

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

arithmetic mean found by adding the weights of the pollutant found each day of the month and then dividing this sum by the number of days. This limitation is identified as "Monthly Average" in Part A of this permit and the average monthly discharge value is reported in the "Average" column under "Quantity" on the Discharge Monitoring Report Form.

(3) The "average weekly discharge" is defined as the total mass of all daily discharges sampled and/or measured during the calendar week in which daily discharges are sampled and/or measured. It is, therefore, an arithmetic mean found by adding the weights of pollutants found each day of the week and then dividing this sum by the number of days. This limitation is identified as "Weekly Average" in Part A of this permit and the average weekly discharge value is reported in the "Maximum" column under "Quantity" on the Discharge Monitoring Report Form.

(4) The "maximum daily discharge" is the highest daily discharge value recorded during the reporting period. This limitation is identified as "Daily Maximum" in Part A of this permit and the maximum daily discharge value is reported in the "Maximum" column under "Quantity" on the Discharge Monitoring Report Form.

g. Concentration Measurements

(1) The "daily concentration" is the concentration of a pollutant discharged during a calendar day. It is equal to the concentration of a composite sample or in the case of grab samples, it is the arithmetic mean (weighted by flow value) of all samples collected during that calendar day. If only one (1) sample is taken during any calendar day, it represents the "daily concentration."

(2) The "average monthly concentration," other than for fecal coliform, enterococcus, *clostridium perfringens*, or total coliform, is the sum of the daily concentrations sampled and/or measured divided by the number of daily discharges sampled and/or measured during the month (arithmetic mean of the daily concentration values). The average monthly count for fecal coliform, enterococcus,

7

22988

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

and *clostridium perfringens* is the geometric mean of the counts for samples collected during a calendar month. The average monthly count for total coliform is the median of the counts for samples collected (not less than five (5) discrete samples) during a calendar month. This limitation is identified as "Monthly Average" or "Daily Average" or "Other Limits" in Part A of this permit and the average monthly concentration value is reported under the "Average" column under "Quality" on the Discharge Monitoring Report Form.

(3)  The "average weekly concentration," other than for fecal coliform, enterococcus, *clostridium perfringens*, or total coliform, is the sum of the concentrations of all daily discharges sampled and/or measured during a calendar week on which daily discharges are sampled and measured divided by the number of daily discharges sampled and/or measured during the week (arithmetic mean of the daily concentration values). The average weekly count for fecal coliform, enterococcus, or *clostridium perfringens* is the geometric mean of the counts for samples collected during a calendar week. The average weekly count for total coliform is the median of the counts for samples collected during a calendar week. This limitation is identified as "Weekly Average" or "Other Limits" in Part A of this permit and the average weekly concentration value is reported under the "Maximum" column under "Quality" on the Discharge Monitoring Report Form.

(4)  The "maximum daily concentration" is the highest daily concentration value recorded during the reporting period. This limitation identified as "Daily Maximum" or "Other Limits" in Part A of this permit and the maximum daily concentration is reported under the "Maximum" column under "Quality" on the Discharge Monitoring Report Form.

h.  The effluent flow expressed as cubic meters per day or million gallons per day (MGD), is the 24-hour average flow averaged monthly. It is the arithmetic mean of the total daily flows recorded during the calendar month. Where monitoring requirements for flow are specified in Part A of this permit, the flow rate values are reported in the "Average" column under "Quantity" on the Discharge Monitoring Report Form.

8

22989

EXHIBIT 2 (part 2 of 2)

### STANDARD NPDES PERMIT CONDITIONS

(1) An "instantaneous flow measurement" is a measure of flow taken at the time of sampling, when both the sample and flow will be representative of the total discharge.

(2) Where monitoring requirements for pH; dissolved oxygen; or fecal coliform, enterococcus, or *clostridium perfringens* are specified in Part A of this permit, the values are generally reported in the "Quality or Concentration" column on the Discharge Monitoring Report Form.

i. The "arithmetic mean" of any set of values is the summation of the individual values divided by the number of individual values.

j. The "geometric mean" of any set of values is the $N^{th}$ root of the product of the individual values where N is equal to the number of individual values. The geometric mean is equivalent to the antilog of the arithmetic mean of the logarithms of the individual values. For purposes of calculating the geometric mean, values of zero (0) shall be considered to be one (1).

k. "Weighted by flow value" means the summation of each concentration multiplied by its respective flow divided by the summation of the respective flows.

l. The "median" of any set of ordered values is the value below and above which there is an equal number of values or which is the arithmetic mean of the two (2) middle values if there is no one (1) middle number.

m. A calendar day is defined as the period from midnight of one day until midnight of the next day. However, for the purposes of this permit, any consecutive 24-hour period that reasonably represents the calendar day may be used for sampling.

n. "Removal efficiency" is the ratio of pollutants removed by the treatment unit to pollutants entering the treatment unit. Removal efficiencies of a treatment plant shall be determined using the average monthly concentrations (C, in mg/l) of influent and effluent samples collected about the same time and the following equation (or its equivalent):

9

**22990**

EXHIBIT 2 (part 2 of 2)

**STANDARD NPDES PERMIT CONDITIONS**

$$\text{Removal Efficiency} = 100 \times \left( 1 - \frac{C \text{ (effluent)}}{C \text{ (influent)}} \right)$$
$$\text{(per cent)}$$

4.   **Duty to reapply**  (comply with 40 CFR §122.41(b) and Hawaii Administrative Rules Section 11-55-27)

If the Permittee wishes to continue an activity regulated by this permit after the expiration of this permit, the Permittee must apply for and obtain a new permit.  The Permittee shall submit a new application 180 days before the existing permit expires and as specified in the Hawaii Administrative Rules Section 11-55-27.

5.   **Applications**  (comply with 40 CFR §122.22)

a.   All permit applications shall be signed as follows:

(1)  For a corporation: By a responsible corporate officer.  For the purpose of this section, a responsible corporate officer means:

(A)  A president, secretary, treasurer, or vice-president of the corporation in charge of a principle business function, or any other person who performs similar policy- or decision-making functions for the corporation; or

(B)  The manager of one (1) or more manufacturing, production, or operating facilities employing more than 250 persons or having gross annual sales or expenditures exceeding $25 million (in second-quarter 1980 dollars), if authority to sign documents has been assigned or delegated to the manager in accordance with corporate procedures.

(2)  For a partnership or sole proprietorship: By a general partner or the proprietor, respectively; or

(3)  For a municipality, State, Federal, or other public agency: By either a principal executive officer or ranking elected official.  For purposes of this section, a principal executive officer of a Federal agency includes:

10

22991

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

    (A)  The chief executive officer of the agency; or

    (B)  A senior executive officer having responsibility for the overall operations of a principal geographic unit of the agency (e.g., Regional Administrators of EPA).

b.  All reports required by this permit and other information requested by the Director of Health shall be signed by a person described in section 5(a), or by a duly authorized representative of that person.  A person is a duly authorized representative only if:

    (1)  The authorization is made in writing by a person described in section 5(a);

    (2)  The authorization specifies either an individual or a position having responsibility for the overall operation of the regulated facility or activity such as the position of plant manager, operator of a well or a well field, superintendent, position of equivalent responsibility, or an individual or position having overall responsibility for environmental matters for the company.  (A duly authorized representative may thus be either a named individual or any individual occupying a named position.); and

    (3)  The written authorization is submitted to the Director of Health.

c.  Changes to authorization.  If an authorization under section 5(b) is no longer accurate because a different individual or position has responsibility for the overall operation of the facility, a new authorization satisfying the requirements of section 5(b) must be submitted to the Director of Health prior to or together with any reports or information to be signed by a duly authorized representative.

d.  Certification.  Any person signing a document under section 5(a) or 5(b) shall make the following certification:

      I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure

11

22992

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

6. **Duty to comply**  (comply with 40 CFR §122.41(a))

The Permittee shall comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or denial of a permit renewal application.

a.   The Permittee shall comply with effluent standards or prohibitions established under Section 307(a) of the Act for toxic pollutants and with standards for sewage sludge use or disposal established under Section 405(d) of the Act within the time provided in the regulations that establish these standards or prohibitions or standards for sewage sludge use or disposal, even if this permit has not yet been modified to incorporate the requirement.

b.   The Act provides that any person who violates Section 301, 302, 306, 307, 308, 318, or 405 of the Act, or any permit condition or limitation implementing any of the sections in a permit issued under Section 402 of the Act, or any requirement imposed in a pretreatment program approved under Section 402(a)(3) or 402(b)(8) of the Act, is subject to a civil penalty not to exceed $25,000 per day for each violation.

The Act provides that any person who *negligently* violates Section 301, 302, 306, 307, 308, 318, or 405 of the Act, or any permit condition or limitation implementing any of the sections in a permit issued under Section 402 of the Act, or any requirement imposed in a pretreatment program approved under Section 402(a)(3) or 402(b)(8) of the Act, is subject to criminal penalties of $2,500 to $25,000 per day of

12

22993

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

violation, or imprisonment of not more than one (1) year, or both.  In the case of a second or subsequent conviction for a negligent violation, a person shall be subject to criminal penalties of not more than $50,000 per day of violation, or imprisonment of not more than two (2) years, or both.

Any person who *knowingly* violates Section 301, 302, 306, 307, 308, 318, or 405 of the Act, or any permit conditions or limitations is subject to criminal penalties of $5,000 to $50,000 per day of violation, or imprisonment for not more than three (3) years, or both.  In the case of a second or subsequent conviction for a knowing violation, a person shall be subject to criminal penalties of not more than $100,000 per day of violation, or imprisonment of not more than six (6) years, or both.

Any person who knowingly violates Section 301, 302, 303, 306, 307, 308, 318, or 405 of the Act, or any permit condition or limitation implementing any of the sections in a permit issued under Section 402 of the Act, and who knows at that time that he thereby places another person in imminent danger of death or serious bodily injury, shall, upon conviction, be subject to a fine of not more than $250,000 or imprisonment of not more than 15 years, or both.  In the case of a second or subsequent conviction for a knowing endangerment violation, a person shall be subject to a fine of not more than $500,000 or by imprisonment of not more than 30 years, or both.

An organization, as defined in Section 309(c)(3)(B)(iii) of the Act, shall, upon conviction of violating the imminent danger provision, be subject to a fine of not more than $1,000,000 and can be fined up to $2,000,000 for second or subsequent convictions.

c.   Any person may be assessed an administrative penalty by the Administrator for violating Section 301, 302, 306, 307, 308, 318, or 405 of this Act, or any permit condition or limitation implementing any of the sections in a permit issued under Section 402 of the Act.  Administrative penalties for Class I violations are not to exceed $10,000 per violation, with the maximum amount of any Class I penalty assessed not to exceed $25,000.  Penalties for Class II violations are not to exceed $10,000 per day for each day during which

13

**22994**

<span style="color:red">EXHIBIT 2 (part 2 of 2)</span>

STANDARD NPDES PERMIT CONDITIONS

the violation continues, with the maximum amount of any
Class II penalty not to exceed $125,000.

7.  **Need to halt or reduce activity not a defense**  (comply with
40 CFR §122.41(c))

It shall not be a defense for a Permittee in an enforcement
action that it would have been necessary to halt or reduce
the permitted activity in order to maintain compliance with
the conditions of this permit.

8.  **Duty to mitigate**  (based in part on 40 CFR §122.41(d))

The Permittee shall take all reasonable steps to minimize or
prevent any discharge or sludge use or disposal in violation
of this permit or applicable law.

9.  **Proper operation and maintenance**  (comply with 40 CFR
§122.41(e))

The Permittee shall at all times properly operate and
maintain all facilities and systems of treatment and control
(and related appurtenances) which are installed or used by
the Permittee to achieve compliance with the conditions of
this permit.  Proper operation and maintenance also includes
adequate laboratory controls and appropriate quality
assurance procedures.  This provision requires the operation
of back-up or auxiliary facilities or similar systems which
are installed by the Permittee only when the operation is
necessary to achieve compliance with the conditions of this
permit.

10.  **Permit actions**  (comply with 40 CFR §122.41(f))

This permit may be modified, revoked and reissued, or
terminated for cause.  The filing of a request by the
Permittee for a permit modification, revocation and
reissuance, or termination, or a notification of planned
changes or anticipated noncompliance does not stay any
permit condition.

14

22995

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

11.  **Property rights**  (comply with 40 CFR §122.41(g))

This permit does not convey any property rights of any sort or any exclusive privilege.

12.  **Duty to provide information**  (comply with 40 CFR §122.41(h))

The Permittee shall furnish to the Director of Health, within a reasonable time, any information which the Director of Health may request to determine whether cause exists for modifying, revoking and reissuing, or terminating this permit or to determine compliance with this permit.  The Permittee shall also furnish to the Director of Health upon request, copies of records required to be kept by this permit.

13.  **Inspection and entry**  (comply with 40 CFR §122.41(i))

The Permittee shall allow the Director of Health, or a duly authorized agent (including an authorized contractor acting as a duly authorized agent of the Administrator), upon the presentation of credentials and other documents as may be required by law, to:

a.  Enter upon the Permittee's premises where a regulated facility or activity is located or conducted or where records must be kept under the conditions of this permit;

b.  Have access to and copy, at reasonable times, any records that must be kept under the conditions of this permit;

c.  Inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices, or operations regulated or required under this permit; and

d.  Sample or monitor at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the Act, any substances or parameters at any location.

15

22996

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

14. **Monitoring and records**   (based in part on 40 CFR §122.41(j))

    a.    Samples and measurements taken for the purpose of monitoring shall be representative of the monitored activity.

        As used in this section, a representative sample means that the content of the sample shall:

        (1)    Be identical to the content of the substance sampled at the time of the sampling;

        (2)    Accurately represent the monitored item (for example, sampling to monitor final effluent quality shall accurately represent that quality, even though the sampling is done upstream of the discharge point); and

        (3)    Accurately represent the monitored item for the monitored time period (for example, sampling to represent monthly average effluent flows shall be taken at times and on days that cover significant flow variations).  Representative sampling may mean including weekends and storm events and may mean taking more samples than the minimum number specified in this permit.

    The burden of proving that sampling or monitoring is representative shall be on the Permittee.

    b.    Except for records of monitoring information required by this permit related to the Permittee's sewage sludge use and disposal activities, which shall be retained for a period of at least five (5) years (or longer as required by 40 CFR Part 503), the Permittee shall retain records of all monitoring information, including all calibration and maintenance records and all original strip chart recordings for continuous monitoring instrumentation, copies of all reports required by this permit, and records of all data used to complete the application for this permit, for a period of at least three (3) years from the date of the sample, measurement, report, or application.  This period may be extended by request of the Director of Health at any time.

    c.    Records of monitoring information shall include:

16

22997

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

    (1)   The date, exact place, and time of sampling or measurements;

    (2)   The individual(s) who performed the sampling or measurements;

    (3)   The date(s) analyses were performed;

    (4)   The individual(s) who performed the analyses;

    (5)   The analytical techniques or methods used; and

    (6)   The results of the analyses.

d.    Monitoring must be conducted according to test procedures approved under 40 CFR Part 136 or, in the case of sludge use or disposal, approved under 40 CFR Part 136 unless otherwise specified in 40 CFR Part 503, unless other test procedures have been specified in this permit.

e.    The Act provides that any person who falsifies, tampers with, or knowingly renders inaccurate any monitoring device or method required to be maintained in this permit shall, upon conviction, be punished by a fine of not more than $10,000 per violation, or by imprisonment for not more than two (2) years per violation, or by both for a first conviction. For a second and subsequent conviction, the person is subject to a fine of not more than $20,000 per day of violation, or imprisonment for not more than four (4) years, or both.

15.  **Signatory requirement**  (comply with 40 CFR §122.41(k))

a.    All applications, reports, or information submitted to the Director of Health shall be signed and certified. (See 40 CFR §122.22.)

b.    The Act provides that any person who knowingly makes any false statement, representation, or certification in any record or other document submitted or required to be maintained under this permit, including monitoring reports or reports of compliance or noncompliance shall, upon conviction, be punished by a fine of not more than $10,000 per violation, or by imprisonment for not more than six (6) months per violation, or by both.

17

22998

EXHIBIT 2 (part 2 of 2)

**STANDARD NPDES PERMIT CONDITIONS**

16. **Reporting requirements** (based in part on 40 CFR §122.41(1))

    a.    Planned changes. The Permittee shall give notice to the Director of Health as soon as possible of any planned physical alterations or additions to the permitted facility. Notice is required only when:

        (1)    The alteration or addition to a permitted facility may meet one of the criteria for determining whether a facility is a new source in 40 CFR §122.29(b); or

        (2)    The alteration or addition could significantly change the nature or increase the quantity of pollutants discharged. This notification applies to pollutants which are subject neither to effluent limitations in the permit, nor to notification requirements under 40 CFR §122.42(a)(1).

        (3)    The alteration or addition results in a significant change in the Permittee's sludge use or disposal practices, and the alteration, addition, or change may justify the application of permit conditions that are different from or absent in the existing permit, including notification of additional use or disposal sites not reported during the permit application process or not reported pursuant to an approved land application plan.

    b.    Anticipated noncompliance. The Permittee shall give advance notice to the Director of Health of any planned changes in the permitted facility or activity which may result in noncompliance with this permit's requirements.

    c.    Transfers. This permit is not transferable to any person except after notice to the Director of Health. The Director of Health may require modification or revocation and reissuance of the permit to change the name of the Permittee and incorporate other requirements as may be necessary under the Act or Chapter 342D, HRS. (See 40 CFR §122.61; in some cases, modification or revocation and reissuance is mandatory.)

22999

EXHIBIT 2 (part 2 of 2)

### STANDARD NPDES PERMIT CONDITIONS

d.  Monitoring reports. Monitoring results shall be reported at the intervals specified elsewhere in this permit.

    (1)  Monitoring results must be reported on a Discharge Monitoring Report Form.

    (2)  If the Permittee monitors any pollutant more frequently than required by the permit, using test procedures approved under 40 CFR Part 136 or as specified in this permit, the results of this monitoring shall be included in the calculation and reporting of the data submitted in the Discharge Monitoring Report Form.

    (3)  Calculations for all limitations which require averaging of measurements shall utilize an arithmetic mean unless otherwise specified by the Director of Health in this permit.

e.  Compliance schedules. Reports of compliance or noncompliance with, or any progress reports on, interim and final requirements contained in any compliance schedule of this permit shall be submitted no later than 14 days following each schedule date.

f.  Other noncompliance. The Permittee shall report all instances of noncompliance not reported under section 16(d) and 16(e), at the time monitoring reports are submitted. The written submission shall contain a description of the noncompliance and its cause; the period of noncompliance, including exact dates and times, and if the noncompliance has not been corrected, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance.

g.  Other information. When the Permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application or in any report to the Director of Health, the Permittee shall promptly submit the facts or information.

17.  **Bypass**  (based in part on 40 CFR §122.41(m))

a.  Definitions.

19

**23000**

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

(1)   "Bypass" means the intentional diversion of any waste stream from any portion of a treatment facility.

(2)   "Severe property damage" means substantial physical damage to property, damage to the treatment facilities which causes them to become inoperable, or substantial and permanent loss of natural resources which can reasonably be expected to occur in the absence of a bypass. Severe property damage does not mean economic loss caused by delays in production.

b.   Prohibition of bypass. Every bypass is prohibited and the Director of Health may take enforcement action against a Permittee for bypass, except as provided in section 17(c).

c.   Exceptions to bypass prohibition.

(1)   Bypass not exceeding limitations. A bypass is allowable under this paragraph only if it does not cause any effluent limitation to be exceeded, and only if the bypass is necessary for essential maintenance to assure efficient operation.

(2)   Bypass unavoidable to prevent specified harm. A bypass is allowable under this paragraph if,

(A)   The bypass was unavoidable to prevent loss of life, personal injury, or severe property damage;

(B)   There was no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of equipment downtime. This condition is not satisfied if adequate back-up equipment should have been installed in the exercise of reasonable engineering judgment to prevent a bypass which occurred during normal periods of equipment downtime or preventative maintenance; and

(C)   The Permittee submitted notices as required under section 17(d).

(3)   Approved anticipated bypass. An anticipated

20

23001

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

bypass is allowable if the Director of Health approves it. The Director shall approve the anticipated bypass only if he receives information sufficient to show compliance with section 17(c)(2), including information on the potential adverse effects with and without the bypass, and information on the search for and the availability of alternatives, whether the Permittee ultimately considers the alternatives feasible or not.

d.   Notice.

(1)   Anticipated bypass. If the Permittee knows in advance of the need for a bypass, the Permittee shall submit prior notice, if possible at least ten (10) days before the date of the bypass.

(2)   Unanticipated bypass. The Permittee shall submit reports of unanticipated bypasses.

(A)   Reports required by the Reporting Requirements of this permit shall be made in accordance with that section. If the Permittee questions whether the Reporting Requirements apply, the Permittee shall follow the Reporting Requirements of this permit;

(B)   For all other bypasses, reports shall be made orally within 24 hours from the time the Permittee becomes aware of the bypass. Written reports may be required on a case-by-case basis.

e.   Burden of proof. In any enforcement proceeding, the party seeking to establish that any exception to the bypass prohibition applies has the burden of proof. Proof that effluent limitations were met requires effluent monitoring during the bypass.

18.   Upset  (based in part on 40 CFR §122.41(n))

a.   Definition.  "Upset" means an exceptional incident in which there is unintentional and temporary noncompliance with technology-based permit effluent limitations because of factors beyond the reasonable control of the Permittee. An upset does not include

21

EXHIBIT 2 (part 2 of 2)

**STANDARD NPDES PERMIT CONDITIONS**

noncompliance to the extent caused by operational error, improperly designed treatment facilities, inadequate treatment facilities, lack of preventive maintenance, or careless or improper operation.

b.    Effect of an upset.  An upset constitutes an affirmative defense to an action brought for noncompliance with the technology based permit effluent limitations if the requirements of section 18(c) are met.  No determination made during administrative review of claims that noncompliance was caused by upset, and before an action for noncompliance, is final administrative action subject to judicial review.

c.    Conditions necessary for a demonstration of upset.  A Permittee who wishes to establish the affirmative defense of upset shall demonstrate, through properly signed, contemporaneous operating logs, or other relevant evidence that:

    (1)   An upset occurred and that the Permittee can identify the cause(s) of the upset;

    (2)   The permitted facility was at the time being properly operated;

    (3)   The Permittee submitted notice within 24 hours of any upset which exceeded any effluent limitation in this permit; and

    (4)   The Permittee complied with any remedial measures required under 40 CFR §122.41(d).

d.    Burden of proof.  In any enforcement proceeding the Permittee seeking to establish the occurrence of an upset has the burden of proof.

19.    **Existing manufacturing, commercial, mining, and silvicultural dischargers**  (comply with 40 CFR §122.42(a))

In addition to the reporting requirements under 40 CFR §122.41(1), all existing manufacturing, commercial, mining, and silvicultural dischargers must notify the Director of Health as soon as they know or have reason to believe:

a.    That any activity has occurred or will occur which would result in the discharge, on a routine or frequent

22

23003

EXHIBIT 2 (part 2 of 2)

### STANDARD NPDES PERMIT CONDITIONS

basis, of any toxic pollutant which is not limited in this permit, if that discharge will exceed the highest of the following "notification levels":

(1)  One hundred micrograms per liter (100 μg/l);

(2)  Two hundred micrograms per liter (200 μg/l) for acrolein and acrylonitrile; five hundred micrograms per liter (500 μg/l) for 2,4-dinitrophenol and for 2-methyl-4,6-dinitrophenol; and one milligram per liter (1 mg/l) for antimony;

(3)  Five times the maximum concentration value reported for that pollutant in the permit application in accordance with 40 CFR §122.21(g)(7); or

(4)  The level established by the Director of Health in accordance with 40 CFR §122.44(f).

b.  That any activity has occurred or will occur which would result in any discharge, on a non-routine or infrequent basis, of a toxic pollutant which is not limited in this permit, if that discharge will exceed the highest of the following "notification levels":

(1)  Five hundred micrograms per liter (500 μg/l);

(2)  One milligram per liter (1 mg/l) for antimony;

(3)  Ten times the maximum concentration value reported for that pollutant in the permit application in accordance with 40 CFR §122.21(g)(7); or

(4)  The level established by the Director of Health in accordance with 40 CFR §122.44(f).

20.  **Publicly owned treatment works**  (comply with 40 CFR §122.42(b))

This section applies only to publicly owned treatment works as defined in 40 CFR §122.2.

a.  All publicly owned treatment works must provide adequate notice to the Director of Health of the following:

23

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

(1)  Any new introduction of pollutants into the publicly owned treatment works from an indirect discharger which would be subject to Section 301 or 306 of the Act if it were directly discharging those pollutants;

(2)  Any substantial change in the volume or character of pollutants being introduced into that publicly owned treatment works by a source introducing pollutants into the publicly owned treatment works at the time of issuance of the permit; and

(3)  For purposes of this paragraph, adequate notice shall include information on 20(a)(1), the quality and quantity of effluent introduced into the publicly owned treatment works, and 20(a)(2), any anticipated impact of the change on the quantity or quality of effluent to be discharged from the publicly owned treatment works.

b.  (The following condition has been established by EPA Region 9 to enforce applicable requirements of the Resource Conservation and Recovery Act.)  Publicly owned treatment works may not receive hazardous waste by truck, rail, or dedicated pipe except as provided under 40 CFR Part 270.  Hazardous wastes are defined in 40 CFR Part 261 and include any mixture containing any waste listed under 40 CFR §§261.31-261.33.  The Domestic Sewage Exclusion (40 CFR §261.4) applies only to wastes mixed with domestic sewage in a sewer leading to a publicly owned treatment works and not to mixtures of hazardous wastes and sewage or septage delivered to the treatment plant by truck.

21.  **Reopener clause**  (comply with 40 CFR §122.44(c) and 40 CFR §125.123(d)(4))

a.  For any discharger within a primary industry category (see 40 CFR Part 122, Appendix A), requirements under Section 307(a)(2) of the Act as follows:

(1)  On or before June 30, 1981:

(A)  If applicable standards or limitations have not yet been promulgated, this permit shall include a condition stating that, if an applicable standard or limitation is

24

**23005**

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

promulgated under Sections 301(b)(2)(C) and
(D), 304(b)(2), and 307(a)(2) and that
effluent standard or limitation is more
stringent than any effluent limitation in
this permit or controls a pollutant not
limited in this permit, this permit shall be
promptly modified or revoked and reissued to
conform to that effluent standard or
limitation.

(B)   If applicable standards or limitations have
been promulgated or approved, this permit
shall include those standards or limitations.
(If EPA approves existing effluent
limitations or decides not to develop new
effluent limitations, it will publish a
notice in the Federal Register that the
limitations are "approved" for the purpose of
this regulation.)

(2)   On or after the statutory deadline set forth in
Sections 301(b)(2)(A), (C), and (E) of the Act,
any permit issued shall include effluent
limitations to meet the requirements of Sections
301(b)(2)(A), (C), (D), (E), and (F), whether or
not applicable effluent limitations guidelines
have been promulgated or approved.   These permits
need not incorporate the clause required by
section 21(a).

(3)   The Director shall promptly modify or revoke and
reissue any permit containing the clause required
under section 21(a) to incorporate an applicable
effluent standard or limitation under Sections
301(b)(2)(C) and (D), 304(b)(2), and 307(a)(2)
which is promulgated or approved after this permit
is issued if that effluent standard or limitation
is more stringent than any effluent limitation in
this permit, or controls a pollutant not limited
in this permit.

(4)   For any permit issued to a treatment works
treating domestic sewage, including "sludge-only
facilities," the Director shall include a reopener
clause to incorporate any applicable standard for
sewage sludge use or disposal promulgated under
Section 405(d) of the Act.   The Director may
promptly modify or revoke and reissue any permit
containing the reopener clause required by this

25

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

paragraph if the standard for sewage sludge use or disposal is more stringent than any requirements for sludge use or disposal in this permit, or controls a pollutant or practice not limited in this permit.

b.   All permits which authorize the discharge of pollutants pursuant to 40 CFR §123.125(c) shall contain the following clause:  In addition to any other grounds specified herein, this permit shall be modified or revoked at any time if, on the basis of any new data, the Director of Health determines that continued discharge may cause unreasonable degradation of the marine environment.

22.   **Privately owned treatment works**  (The following conditions were established by EPA Region 9 to enforce applicable requirements of the Resource Conservation and Recovery Act and 40 CFR §122.44(m).)

This section applies only to privately owned treatment works as defined in 40 CFR §122.2.

a.   Materials authorized to be disposed of into the privately owned treatment works and collection system are typical domestic sewage.  Unauthorized materials are hazardous waste (as defined  40 CFR Part 261), motor oil, gasoline, paints, varnishes, solvents, pesticides, fertilizers, industrial wastes, or other materials not generally associated with toilet flushing or personal hygiene, laundry, or food preparation, unless specifically listed under "Authorized Non-domestic Sewer Dischargers" elsewhere in this permit.  The Domestic Sewage Exclusion (40 CFR §261.4) does not apply to hazardous wastes mixed with domestic sewage in a sewer leading to a privately owned treatment works.

b.   It is the Permittee's responsibility to inform users of the privately owned treatment works and collection system of the prohibition against unauthorized materials and to insure compliance with the prohibition.  The Permittee must have the authority and capability to sample all discharges to the collection system, including any from septic haulers or other unsewered dischargers, and shall take and analyze the samples for conventional, toxic, or hazardous

26

23007

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

pollutants when instructed by the permitting authority
or by an EPA or State inspector.  The Permittee must
provide adequate security to prevent unauthorized
discharges to the collection system.

c.    Should a user of the privately owned treatment works
desire authorization to discharge non-domestic wastes,
the Permittee shall submit a request for permit
modification and an application, pursuant to 40 CFR
§122.44(m), describing the proposed discharge.  The
application shall, to the extent possible, be submitted
using EPA Forms 1 and 2C, unless another format is
requested by the permitting authority.  If the
privately owned treatment works or collection system
user is different from the Permittee, and the Permittee
agrees to allow the non-domestic discharge, the user
shall submit the application and the Permittee shall
submit the permit modification request.  The
application and request for modification shall be
submitted at least six (6) months before authorization
to discharge non-domestic wastes to the privately owned
treatment works or collection system is desired.

23.  **Transfers by modification**  (comply with 40 CFR §122.61(a)
and Hawaii Administrative Rules Section 11-55-16)

Except as provided in section 24, a permit may be
transferred by the Permittee to a new owner or operator only
if the permit has been modified or revoked and reissued
(under 40 CFR §122.62(b)(2)), or a minor modification made
(under 40 CFR §122.63(d)), to identify the new Permittee and
incorporate other requirements as may be necessary under the
Act.

24.  **Automatic transfers**  (comply with 40 CFR §122.61(b) and
Hawaii Administrative Rules Section 11-55-04(d))

As an alternative to transfers under section 23, any NPDES
permit may be automatically transferred to a new Permittee
if:

a.    The current Permittee notifies the Director of Health
at least 30 days in advance of the proposed transfer
date in paragraph b of this section;

b.    The notice includes a written agreement between the

27

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

existing and new Permittees containing a specific date
for transfer of permit responsibility, coverage, and
liability between them; and

c.   The Director of Health does not notify the existing
Permittee and the proposed new Permittee of his or her
intent to modify or revoke and reissue the permit.   A
modification under this paragraph may also be a minor
modification under 40 CFR §122.63.   If this notice is
not received, the transfer is effective on the date
specified in the agreement mentioned in section 24(b).

25.  **Minor modification of permits**   (comply with 40 CFR §122.63)

Upon the consent of the Permittee, the Director of Health
may modify a permit to make the corrections or allowances
for changes in the permitted activity listed in this
section, without following the procedures of 40 CFR Part
124.   Any permit modification not processed as a minor
modification under this section must be made for cause and
with 40 CFR Part 124 draft permit and public notice as
required in 40 CFR §122.62.   Minor modifications may only:

a.   Correct typographical errors;

b.   Require more frequent monitoring or reporting by the
Permittee;

c.   Change an interim compliance date in a schedule of
compliance, provided the new date is not more than 120
days after the date specified in the existing permit
and does not interfere with attainment of the final
compliance date requirement;

d.   Allow for a change in ownership or operational control
of a facility where the Director of Health determines
that no other change in the permit is necessary,
provided that a written agreement containing a specific
date for transfer of permit responsibility, coverage,
and liability between the current and new Permittees
has been submitted to the Director of Health;

e.   (1)  Change the construction schedule for a discharger
which is a new source.  No change shall affect a
discharger's obligation prior to discharge under
40 CFR §122.29.

28

23009
EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

    (2)   Delete a point source outfall when the discharge from that outfall is terminated and does not result in discharge of pollutants from other outfalls except in accordance with the permit limits.

f.   (Reserved.)

g.   Incorporate conditions of a publicly owned treatment works pretreatment program that has been approved in accordance with the procedures in 40 CFR §403.11 (or a modification thereto that has been approved in accordance with the procedures in 40 CFR §403.18) as enforceable conditions of the publicly owned treatment works permit.

26.  **Termination of permits**  (comply with 40 CFR §122.64 and Hawaii Administrative Rules Section 11-55-18)

a.   The following are causes for terminating a permit during its term, or for denying a permit renewal application:

    (1)   Noncompliance by the Permittee with any condition of the permit;

    (2)   The Permittee's failure in the application or during the permit issuance process to disclose fully all relevant facts or the Permittee's misrepresentation of any relevant facts at any time;

    (3)   A determination that the permitted activity endangers human health or the environment and can only be regulated to acceptable levels by permit modification or termination; or

    (4)   A change in any condition that requires either a temporary or a permanent reduction or elimination of any discharge or sludge use or disposal practice controlled by the permit (for example, plant closure or termination of discharge by connection to a publicly owned treatment works).

b.   An NPDES Permittee shall report within thirty (30) days after the permanent discontinuance or dismantlement of that treatment works or waste outlet for which the NPDES permit had been issued.  The NPDES permit shall

23010

EXHIBIT 2 (part 2 of 2)

STANDARD NPDES PERMIT CONDITIONS

then be surrendered to the Director within thirty (30) days of the report.

27. **Removed substances**  (pursuant to Section 301 of the Act)

Solids, sludges, filter backwash, or other pollutants removed in the course of treatment or control of wastewaters shall be disposed of in a manner which would prevent any pollutant from the materials from entering navigable waters.

28. **Availability of reports**  (pursuant to Section 308 of the Act)

Except for data determined to be confidential under 40 CFR Part 2, all reports prepared in accordance with the terms of this permit shall be available for public inspection at the offices of the Director of Health.  As required by the Act, permit applications, permits, and effluent data shall not be considered confidential.

29. **Civil and criminal liability**  (pursuant to Section 309 of the Act)

Except as provided in permit conditions on "Bypass" (section 17) and "Upset" (section 18), nothing in this permit shall be construed to relieve the Permittee from civil or criminal penalties for noncompliance.

30. **Oil and hazardous substance liability**  (pursuant to Section 311 of the Act)

Nothing in this permit shall be construed to preclude the institution of any legal action or relieve the Permittee from any responsibilities, liabilities, or penalties to which the Permittee is or may be subject under Section 311 of the Act.

31. **Federal facility construction**  (pursuant to Section 313 of the Act)

Construction shall not be initiated for facilities for treatment of wastewater at any Federal property or facility if alternative methods for wastewater treatment at the

23011

23012

EXHIBIT 2 (part 2 of 2)

## STANDARD NPDES PERMIT CONDITIONS

property utilizing innovative treatment processes and techniques, including, but not limited to, methods utilizing recycle and reuse techniques and land treatment are not utilized, unless the life cycle cost of the alternative treatment works exceed the life cycle cost of the most effective alternative treatment by more than 15 per cent.

32. **State law** (pursuant to Section 510 of the Act)

Nothing in this permit shall be construed to preclude the institution of any legal action or relieve the Permittee from any responsibilities, liabilities, or penalties established pursuant to any applicable State law or regulation.

33. **Severability** (pursuant to Section 512 of the Act)

The provisions of this permit are severable, and if any provision of this permit, or the application of any provision of this permit to any circumstance, if held invalid, the application of the provision to other circumstances, and remainder of this permit, shall not be affected thereby.

31

23012

EXHIBIT 2 (part 2 of 2)