CARRIE OKINAGA, 5958
Corporation Counsel
KATHLEEN A. KELLY, 6729
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone: (808) 768-5235
Facsimile: (808) 768-5105
Email: kkelly@co.honolulu.gov

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400
Facsimile: (213) 680-6499
Email: nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br>Defendant. | CIVIL NO. CV 04-00463 DAE-BMK<br><br>**CITY AND COUNTY OF HONOLULU'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION; REQUEST FOR JUDICIAL NOTICE; EXHIBITS A-B; CERTIFICATE OF SERVICE**<br><br>Date:    To Be Determined<br>Time:    TBD<br>Judge:  Hon. David Alan Ezra |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................... 2

II.   PLAINTIFFS' SECOND CLAIM ............................................. 5

III.  THIS COURT DOES NOT HAVE JURISDICTION OVER
      PLAINTIFFS' SECOND CLAIM ............................................. 7

      A.    Standard Of Review................................................... 7

      B.    Congress' Limited Authority Under The Commerce Clause.............. 7

      C.    Under The Law Of This Circuit, Federal Jurisdiction Is Limited
            To Traditionally Navigable Waters Or Waters/Wetlands That
            Have A Significant Nexus To Waters That Are Actually
            Navigable ................................................................. 9

            1.    SWANCC (Supreme Court, 2001): The "Significant
                  Nexus" Test Established.............................................. 9

            2.    Rapanos (Supreme Court, 2006): The "Significant
                  Nexus" Test Applies Even When There Is A
                  Hydrological Connection To Navigable Waters.................... 11

                  a.    Background of the Rapanos Consolidated Cases ......... 12

                  b.    Justice Kennedy Applied The SWANCC
                        "Significant Nexus" Test Even When There Is A
                        Hydrological Connection To A Navigable Water ........ 14

                  c.    Joint EPA And Corps Rapanos Guidance.................... 16

            3.    Post Rapanos Ninth Circuit Cases............................... 18

                  a.    Cargill (9th Cir., 2006)................................... 18

                  b.    City of Healdsburg (9th Cir., 2007)....................... 20

                  c.    Pacific Lumber (N.D. Cal. 2007)........................... 21

      D.    Plaintiffs' Claims Not Based On Impacts To "The Waters Of
            The United States" Are Improper And Must Be Dismissed ............ 22

IV.   PLAINTIFFS' SECOND CLAIM MUST BE DISMISSED FOR
      FAILURE TO STATE A CLAIM ............................................. 25

      A.    Standard of Review........................................................ 25

# TABLE OF CONTENTS
## (continued)

Page

B.  Plaintiffs Cannot Base Their Claim On Implied Permit Conditions ........................................................................... 26

C.  Plaintiffs Can Not Base Their Claim On Spills At The Honouliuli WWTP ...................................................................... 28

D.  Plaintiffs Cannot State A Claim For Spills To Locations That EPA Does Not Regulate As "The Waters Of The United States" .... 28

V.  CONCLUSION ............................................................................ 30

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

American Canoe Ass'n, Inc. v. D.C. Water and Sewer Auth.
    306 F. Supp. 2d 30 (D.D.C. 2004) ............................................................ 26, 27

Arbaugh v. Y & H Corp.
    546 U.S. 500 (2006) ..................................................................................... 26

Atl. States Legal Found., Inc., v. Tyson Foods, Inc.
    897 F.2d 1128 (11th Cir. 1990) ...................................................................... 6

Balistreri v. Pacifica Police Dep't
    901 F.2d 696 (9th Cir. Cal. 1988) ............................................................... 25

Bays and Beaches v. City and County of Honolulu
    904 F. Supp. 1098 (D. Haw. 1994) .............................................................. 23

Carabell v. United States Army Corps of Engineers
    391 F.3d 704 (6th Cir. 2004)................................................ 12, 13, 14, 16

Conn. Fund for the Env't v. Raymark Indus., Inc.
    631 F. Supp. 1283 (D. Conn. 1986) ............................................................ 23

De La Cruz v. Tormey
    582 F.2d 45 (9th Cir. 1978)......................................................................... 25

Environmental Protection Information Center v. Pacific Lumber Co.
    469 F. Supp. 2d 803 (N.D. Cal. 2007) ........................................................ 21

Kokkonen v. Guardian Life Ins. Co. of Am.
    511 U.S. 375 (1994) ...................................................................................... 7

Locust Lane v. Swatara Township Auth.
    636 F. Supp. 534 (M.D. Pa. 1986) .............................................................. 23

Mason v. Arizona
    260 F.Supp.2d 807 (D. Ariz. 2003)............................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

Northern California River Watch v. City of Healdsburg
   496 F.3d 993 (9th Cir. 2007)............................................................ 12, 15, 20, 21

Northwest Envtl. Advocates v. City of Portland
   56 F.3d 979 (9th Cir. 1995).......................................................................... 23

Prescott v. United States
   973 F.2d 696 (9th Cir. 1992)........................................................................ 7

Rapanos v. United States
   547 U.S. 715 (2006)................................................. 11, 12, 13, 14, 16, 18, 23, 24

Safe Air v. Meyer
   373 F.3d 1035 (9th Cir. 2004)...................................................................... 7

San Francisco Baykeeper v. Cargill Salt Division
   481 F.3d 700 (9th Cir. 2006)................................................ 18, 19, 21, 25, 28, 29

Solid Waste Agency of Northern Cook County v. United States Army
Corps of Engineers
   531 U.S. 159 (2001)..................................................... 9, 11, 13, 15, 18, 23, 24, 29

St. Michael's Convalescent Hosp. v. Cal.
   643 F.2d 1369 (9th Cir. Cal. 1981)............................................................... 25

U.S.A. v. Lopez
   514 U.S. 549 (1995).................................................................................. 8

United States v. Johnson
   467 F.3d 56 (1st Cir. 2006).......................................................................... 12

United States v. Morrison
   529 U.S. 598 (U.S. 2000)............................................................................ 8

United States v. Moses
   496 F.3d 984 (9th Cir. 2007)........................................................................ 12

## TABLE OF AUTHORITIES
### (continued)

**Page**

United States v. Rapanos
376 F.3d 629 (6th Cir. 2004) ................................................... 12, 13, 14

United States v. Riverside Bayview Homes, Inc.
474 U.S. 121 (1985) ...................................................................... 29

Statutes

33 U.S.C. § 1311(a) ..................................................................... 6, 22

33 U.S.C. § 1365 ............................................................................ 5

33 U.S.C. §§1362(12),(7) ................................................................ 22

U.S. Constitution Article I, § 8, clause 3 ................................................ 8

Regulations

51 Fed. Reg. 41206, 41217 (Nov. 13, 1986) ........................................... 10

Fed. R. Civ. P. 12(b)(1) ..................................................................... 9

Fed. R. of Civ. Proc. 12(b)(6) ............................................................ 25

TO PLAINTIFFS SIERRA CLUB, HAWAI'I CHAPTER, HAWAI'I'S THOUSAND FRIENDS, AND OUR CHILDREN'S EARTH FOUNDATION, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT as will be heard at a time to be determined by the above Court located at 300 Ala Moana Boulevard, Honolulu, Hawaii, defendant THE CITY AND COUNTY OF HONOLULU, by and through its attorneys, will move and hereby does move this Court for an Order dismissing, with prejudice, the Second Claim for Relief in plaintiffs' Second Amended Complaint on the grounds that (1) the violations alleged thereunder do not impact the waters of the United States, and the Court therefore lacks subject matter jurisdiction, and (2) the violations alleged thereunder are based on an implied permit condition, or on spills that are not Permit violations, or on spills to unregulated waters, and accordingly, plaintiffs have failed to state a claim upon which relief can be granted.

This Motion is based upon Federal Rule of Civil Procedure 12(b)(1) and (6), the attached memorandum, declaration, and exhibits, and the files and records herein.

DATED:    Honolulu, Hawaii        CARRIE OKINAGA
          June 12, 2008           Corporation Counsel

                                  By: /s/Kathleen A. Kelly
                                      Kathleen A. Kelly
                                      Attorneys for Defendant
                                      The City and County Of Honolulu

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

1

I.    INTRODUCTION

The Second Claim for Relief of plaintiffs' Sierra Club, Hawai'i

Chapter, Hawai'i's Thousand Friends, and Our Children's Earth Foundation

(collectively, "plaintiffs") Second Amended Complaint seeks penalties and

injunctive relief for violations of the Clean Water Act ("CWA" or the "Act") based

on wastewater spills that plaintiffs concede did not enter "the waters of the United

States" as that term is used in the CWA.  Plaintiffs allege that these spills violate

the CWA because they violate various conditions set forth in the City and County

of Honolulu's ("CCH") National Pollution Discharge Elimination System

("NPDES") Permits for its wastewater treatment plants.  Recent United States

Supreme Court authority, subsequent case law and EPA guidance make clear that

jurisdiction under the CWA is limited to impacts to "waters of the United States."

Since plaintiffs concede that the spills alleged in the Second Claim did not enter

the United States, they cannot be the subject of a citizen CWA enforcement action.

It is important to note at the outset that this Motion is based only on

spills that plaintiffs *concede* did not enter "the waters of the United States" and are

therefore, by definition, not actionable under their First Claim.  To the extent that

plaintiffs claim any particular spill entered a "water of the United States," such

spill has been alleged by plaintiffs as a First Claim spill and not subject to

dismissal in the instant Motion.  Thus, the term "Second Claim" as used herein and

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

2

as acknowledged by plaintiffs only includes the non-Section 301(a) spills.

Plaintiffs' Second Claim based on these "non-Section 301(s) spills" must be

dismissed as set forth below.

First, this Court lacks subject matter jurisdiction over the Second

Claim, which is based on the premise that a citizen may enforce in federal court

*any* NPDES permit condition under the CWA's citizen suit enforcement provision,

without regard to whether "the waters of the United States" are impacted.  Even

assuming, *arguendo*, that the Second Claim spills are prohibited under CCH's

Permits, the United States Supreme Court has recently affirmed that Congress'

Constitutional authority is limited to impacts to "the waters of the United States,"

and therefore this Court lacks jurisdiction over claims that do not have such an

impact.  In order to establish federal jurisdiction, a discharge must either enter a

traditionally protected waterway or a waterway with a "significant nexus" to a

water that is navigable-in-fact.  To avoid duplication of the First Claim, the Second

Claim spills *by definition* did not enter such a waterway.  Accordingly, plaintiffs

are unable to meet their burden to establish federal court subject matter jurisdiction

over their Second Claim and it must be dismissed, with prejudice.

Second, plaintiffs' Second Claim is impermissibly based, in part, on

Standard Permit Condition ¶ 9 in the Sand Island, Kailua, and Wai'anae NPDES

Permits.  Standard Permit Condition ¶ 9 provides that CCH "shall properly operate

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

3

and maintain all facilities and systems of treatment . . . which are installed or used by [CCH] to achieve compliance with the conditions of this permit." Standard Permit Condition ¶ 9 does not expressly prohibit spills, rendering such a prohibition -- at best -- an implied permit condition. Such implied conditions cannot be the basis for a claim under the Act, and accordingly, plaintiffs have failed to state a claim with regard to the standard permit conditions. Additionally, with regard to the Honouliuli Permit's overflow prohibition, such prohibition expressly does not apply to spills outside of the collection system. Thus, plaintiffs have failed to state a claim based on spills at the Honouliuli treatment plaint.

Finally, recent Ninth Circuit authority makes clear that plaintiffs cannot state a claim based on impact to "waters" that are not regulated by the relevant federal administrative agency -- here the Environmental Protection Agency ("EPA"). Because EPA can only regulate traditionally protected waterways or a waterways with a "significant nexus" to a water that is navigable-in-fact, plaintiffs cannot make a showing that EPA regulates the location of their Second Claim spills and plaintiffs have therefore failed to state a claim for all such spills.

For these reasons discussed more fully below, plaintiffs' Second Claim must be dismissed with prejudice pursuant to FRCP 12(b)(1) and 12(b)(6).

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

4

II.    PLAINTIFFS' SECOND CLAIM

            Plaintiffs brought this action on July 29, 2004 under the citizen suit

provision of the CWA, 33 U.S.C. § 1365, and filed their Second Amended

Complaint ("Complaint") on January 10, 2005.  Docket # 1, 55.  Plaintiffs' Second

Claim seeks relief for spills allegedly in violation of various provisions of CCH's

NPDES Permits for its Honouliuli,[1] Sand Island, Kailua, and Wai'anae Waste

Water Treatment Plants ("WWTP").  The Second Claim is based on alleged

violations of conditions in the Honouliuli NPDES Permit that (1) prohibit

overflows and bypasses of facilities (Complaint, ¶ 79) (Permit ¶ B.7); (2) require

CCH to operate the collection system such that public contact with wastewater is

avoided (Complaint, ¶ 80) (Permit ¶ C.4); and (3) require CCH to properly operate

and maintain all facilities and systems used to comply with the Permit (Complaint,

¶ 81) (Permit ¶ C.2).  The Second Claim is also based on alleged violations of

NPDES Standard Permit Condition ¶ 9 in the Sand Island, Kailua, and Wai'anae

Permits.  Standard Permit Condition ¶ 9 provides that CCH "shall properly operate

and maintain all facilities and systems of treatment . . . which are installed or used

by [CCH] to achieve compliance with the conditions of this permit."  Complaint, ¶

---

[1]    With regard to Honouliuli, plaintiffs' Second Claim is based only on spills
from the Honouliuli collection system, and not from the treatment plant.
Complaint, ¶ 81.

82. Plaintiffs claim Standard Permit Condition ¶ 9 is an "effluent limitation" for the purposes of Section 505(a) of the CWA.  Jodene Isaacs Declaration, attached to MPSJ, Exhs. 1 and 2.

Because it is based on alleged violations of the Permits, the Second Claim is distinguishable from the First Claim, which is based on discharges of pollutants to "waters of the United States" in violation of CWA section 301(a), 33 U.S.C. § 1311(a).[2]  The Second Claim is limited to spills that plaintiffs *concede* did not enter "waters of the United States"[3] *and it is only such spills that CCH seeks dismissal of here.*  See MPSJ at 3-4.  Indeed, in their MPSJ, they only seek liability under their Second Claim for spills to the ground.[4]

_____

[2]     Were plaintiffs to have alleged that any spills under their Second Claim did enter "the waters of the United States," such spills would be impermissibly duplicative of plaintiffs' First Claim and would be properly included only under their First Claim based on CWA section 301(a) -- plaintiffs cannot seek multiple violations based on the same event.  See, e.g., Atl. States Legal Found., Inc., v. Tyson Foods, Inc., 897 F.2d 1128, 1140 (11th Cir. 1990).

[3]     See Complaint, ¶¶ 24 (spills to the ground), 27 (spills into "private residences and businesses, streets, storm drains, and numerous waterways"), 80 (spills to "public streets, waterways, and other areas"); see also plaintiffs' Motion For Partial Summary Judgment On Plaintiffs' First And Second Claims ("MPSJ"), filed May 20, 2008 (Docket # 177) at 26 ("CCH's sewage spills and bypasses which do not reach waters of the United States are nonetheless expressly and categorically prohibited by the [Permit]").

[4]     Plaintiffs' MPSJ is based on a certain identified subset of Honouliuli spills under their First and Second Claims.  Docket #177.  The spills at issue in the MPSJ arising from the Second Claim all went only to ground, not navigable waters.  See

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

6

III.    THIS COURT DOES NOT HAVE JURISDICTION OVER
        PLAINTIFFS' SECOND CLAIM

   A.    Standard Of Review

           Federal courts are courts of limited jurisdiction and possess only the

powers conferred by the federal Constitution or statute.  Kokkonen v. Guardian

Life Ins. Co. of Am., 511 U.S. 375 (1994).  In a motion to dismiss for lack of

subject matter jurisdiction the plaintiff bears the initial burden of proving subject

matter jurisdiction exists.  Prescott v. United States, 973 F.2d 696, 701 (9th Cir.

1992).  Upon a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure, a party may make a jurisdictional attack that is either facial or

factual.  Safe Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack

occurs when the movant "asserts that the allegations contained in a complaint are

insufficient on their face to invoke federal jurisdiction."  Id.  In resolving a facial

attack on the complaint's allegation, such as the one brought by CCH here, the

court must accept the allegations as true.  Mason v. Arizona, 260 F.Supp.2d 807,

815 (D. Ariz. 2003).

   B.    Congress' Limited Authority Under The Commerce
         Clause

           The Commerce Clause[5] of the United States Constitution limits

---

MPSJ at 3.

[5]     The Commerce Clause provides Congress the authority to regulate

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

7

A/72565639.1/2017866-0000309724

Congress' authority to legislate over intrastate matters which are entirely within the purview of individual states.  See United States v. Morrison, 529 U.S. 598, 613 (U.S. 2000) (invalidating a federal civil remedy under the Violence Against Women Act on the grounds Congress lacked authority under the Commerce Clause to regulate gender-motivated violent crimes because they were not considered economic activities affecting interstate commerce); U.S.A. v. Lopez, 514 U.S. 549 (1995) (invalidating the federal Gun-Free School Zones Act on the grounds Congress lacked authority under the Commerce Clause to regulate wholly intrastate activity that has no substantial effect on interstate commerce).  As discussed below, this Constitutional limit defines the outside limit of Congress' authority to regulate municipal wastewater systems under the CWA.

Plaintiffs' Second Claim fails in the face of this authority because it seeks to use the CWA to seek redress over a purely intrastate, local matter -- spills to the ground only or that otherwise do not enter a "water of the United States." As described below, the United States Supreme Court and other federal courts have repeatedly acknowledged that Congressional authority -- as couched in the phrase "the waters of the United States" -- does not and cannot reach such local matters. Indeed, since 2001, the Supreme Court in two separate cases has found that the

---

commerce "among the several states."  U.S. Constitution Article I, § 8, clause 3.

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

8

CWA does not regulate and may not be used to seek redress for matters that have no or little impact to waters that are actually navigable.  Accordingly, because plaintiffs' Second Claim is limited, by virtue of the scope of their First Claim, to spills that do not have any connection to or impact on navigable waters -- or, indeed, any waters -- this Court lacks subject matter jurisdiction over the Second Claim, and the Second Claim must be dismissed with prejudice.  Fed. R. Civ. P. 12(b)(1).

        C.     <u>Under The Law Of This Circuit, Federal Jurisdiction Is Limited To Traditionally Navigable Waters Or Waters/Wetlands That Have A Significant Nexus To Waters That Are Actually Navigable</u>

            1.     <u><i>SWANCC</i> (Supreme Court, 2001): The "Significant Nexus" Test Established</u>

In <u>Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers</u>, 531 U.S. 159 (2001) ("<u>SWANCC</u>"), the Supreme Court firmly established that Congress' constitutional authority to legislate under the CWA "is not unlimited" and attempts to expand federal jurisdiction to purely peripheral matters like those alleged here are improper.  <u>See</u> 531 U.S. at 173.

In <u>SWANCC</u>, several suburban municipalities purchased an abandoned gravel mine to be used as a disposal facility, which required filling permanent, seasonal, intrastate ponds.  531 U.S. at 162-63.  The Army Corps of Engineers ("Corps") had determined that it had jurisdiction over the wholly

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

A/72565639.1/2017866-0000309724

intrastate ponds based on the Corps' "migratory bird" regulation,[6] even though the ponds had no connection whatsoever to waters that were actually navigable. Id. at 163-65. The municipalities sued, arguing that (1) the Corps had exceeded its authority under the CWA by promulgating the regulation and applying that rule to the wholly intrastate, isolated waters at issue; and (2) Congress lacked power under the Commerce Clause to legislate or grant jurisdiction over such waters. Id. at 165-66.

The Supreme Court agreed. Striking down the "migratory bird" regulation, the Court found the ponds were "a far cry, indeed" from "the waters of the United States" as that term was defined by Congress. Id. at 173. According to the Court's construction of the CWA, Congress only intended to legislate over waters with a "significant nexus" to "open water[s]" that were navigable in fact. Id. at 167-68. In so holding, the Court found Congress intended only to regulate waters "inseparably bound up with the 'waters' of the United States." Id. at 167. Congress' inclusion of the term "navigable" in the CWA is therefore significant, because it reveals "what Congress had in mind as its authority for enacting the CWA: its traditional jurisdiction over waters that were or had been navigable in

---

[6]     The "migratory bird" regulation stated that if migratory birds used or would use an isolated intrastate body of water as a habitat, that water would be considered a "jurisdictional" water of the United States. See 51 Fed. Reg. 41206, 41217 (Nov. 13, 1986).

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

10

fact or which could reasonably be made so." Id. at 172 (citation omitted).  The

Corps' more expansive regulation "would result in a significant impingement of

the States' traditional and primary power over land and water use" and would raise

"significant constitutional questions." Id. at 174 (citation omitted).  According to

the Court, "where an otherwise acceptable construction of a statute would raise

serious constitutional problems, the Court will construe the statute to avoid such

problems." Id. at 173 (citation omitted).

> 2.  *Rapanos* (Supreme Court, 2006): The "Significant
>      Nexus" Test Applies Even When There Is A
>      Hydrological Connection To Navigable Waters

Because government agencies continued to test the Constitutional

concern expressed in SWANCC through "expansive interpretation" of the CWA

that impinged on traditional state authority and "stretche[d] the outer limit of

Congress's commerce power," the Supreme Court recently revisited the boundaries

of federal power in Rapanos v. United States, 547 U.S. 715, 737-38 (2006).  In a

concurring opinion that has been adopted by the Ninth Circuit as controlling

authority, Justice Kennedy found that the "significant nexus" test established in

SWANCC should be applied even where there is a hydrological connection to

waters that are actually navigable.[7]  547 U.S. at 750.

---

[7]    The plurality opinion in Rapanos found Congressional authority even more
limited.  Rapanos was decided 4-4-1, with Justice Scalia writing the plurality

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

11

a.    Background of the *Rapanos* Consolidated
Cases

*Rapanos* resolved two consolidated Sixth Circuit cases, United States

v. Rapanos, 376 F.3d 629 (6th Cir. 2004) ("Rapanos I") and Carabell v. United

States Army Corps of Engineers, 391 F.3d 704 (6th Cir. 2004).  In the consolidated

cases, the Supreme Court considered whether four wetlands that had an actual

hydrological connection through ditches or man-made drains to traditionally

navigable waters were part of "the waters of the United States" under the CWA,

and therefore subject to federal regulation.  Rapanos, 547 U.S. at 729.  In

Rapanos I, the Rapanos and affiliated businesses (referred to herein as "the

Rapanos") deposited fill material without a CWA Section 404 permit from the

---

opinion, Justice Stevens penning the dissent, and Justice Kennedy concurring and
writing a separate opinion.  The plurality's restrictive construction of "the waters
of the United States" would cover such traditionally protected waters as "relatively
permanent, standing or continuously flowing bodies of water 'forming geographic
features' that are described in ordinary parlance as 'streams[,] . . . oceans, rivers,
[and] lakes'" and "wetlands with a continuous surface connection to" such
relatively permanent waters.  Rapanos, 547 U.S. at 739 (citations omitted).  The
dissent would have given deference to and upheld the Corps' historically broad
exercise of jurisdiction.  Id. at 788.  Although the issue of which opinion controls
has caused controversy and some courts have found that the plurality and
concurring opinions provide two alternative standards for CWA jurisdiction (see,
e.g., United States v. Johnson, 467 F.3d 56, 66 (1st Cir. 2006)), the Ninth Circuit
has unequivocally determined Kennedy's concurrence and the test set forth therein
are the controlling rule of law in this Circuit.  N. Cal. River Watch v. City of
Healdsburg, 496 F.3d 993, 999-1000 (9th Cir. 2007); United States v. Moses, 496
F.3d 984, 990 (9th Cir. 2007).

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM
12

Corps onto wetlands at three sites they planned to develop. Unlike the isolated

ponds at issue in SWANCC, the three wetlands at issue had an actual hydrological

connection to a traditional navigable water: (1) site one connected to a man-made

drain, which drained into a creek, which flowed into a river that emptied into a bay

and Lake Huron; (2) site two connected to a drain with a surface connection to the

navigable Tittabawasseee River and (3) site three had a direct surface connection

to a river that flowed into Lake Huron. Rapanos, 547 U.S. at 729. The Corps

brought an action against the Rapanos for CWA Section 301 violations, alleging

that the defendants illegally discharged fill material into "the waters of the United

States" without a permit. Rapanos, 547 U.S. at 763; Rapanos I, 376 F.3d at 632.

The district court found each of the wetlands were "within federal jurisdiction"

since they were "adjacent to other waters of the United States." Rapanos I, 376

F.3d at 634; Rapanos, 547 U.S. at 729. The Sixth Circuit affirmed, holding federal

jurisdiction existed, noting "there were hydrological connections between all three

sites and corresponding adjacent tributaries of navigable waters." Rapanos I, 376

F.3d at 643; Rapanos, 547 U.S. at 729.

In the second consolidated case, Carabell, 391 F.3d 704, the plaintiffs

were denied a Section 404 permit to deposit fill material to a wetland on their

property. Carabell, 391 F.3d at 705; Rapanos, 547 U.S. at 730. The wetland at

issue was located about one mile from Lake St. Clair. Rapanos, 547 U.S. at 730.

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

13

A ditch, separated by a man-made berm, ran alongside one side of the wetland.  Id. at 730.  The berm was impermeable to water and blocked drainage from the wetland, but may have allowed occasional overflow to the ditch.  Id.  Any flow in the ditch would empty to another ditch or drain, which connected to a creek, and finally would empty into Lake St. Clair. [8]  Id.  After exhausting their administrative appeals, the Carabells filed suit in district court, challenging the Corps' jurisdiction over the wetland even thought it had a potential hydrological connection to an actual navigable water.  Id.  The district court found federal jurisdiction because the wetland was "adjacent to neighboring tributaries of navigable waters and has a significant nexus to 'waters of the United States.'"  Id.  Once again, the Sixth Circuit affirmed, holding that because the wetland was separated from a tributary of "waters of the United States" only by a man-made berm, it was considered an "adjacent wetlands" and thus fell within the Corps' jurisdiction.  Carabell, 391 F.3d at 708-09; Rapanos, 547 U.S. at 730.

> b.    Justice Kennedy Applied The *SWANCC* "Significant Nexus" Test Even When There Is A Hydrological Connection To A Navigable Water

---

[8]     The Court stated it was unclear whether the hydrological connections between the wetlands and the drains (at Rapanos I sites one and two) and ditches (in Carabell) were continuous or intermittent, or if they contained continuous or occasional water flows.  Rapanos, 547 U.S. at 729.

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

A/72565639.1/2017866-0000309724

The Supreme Court consolidated the cases and granted *certiorari* to determine whether these four wetlands were subject to federal regulation, given their close proximity and actual hydrological connections to waters that were actually navigable.  See Rapanos, 547 U.S. at 730.  Justice Kennedy's concurrence, which, as noted above, is recognized as controlling authority in the Ninth Circuit (Healdsburg, 496 F.3d at 999-1000), reiterated the test established by SWANCC that federal jurisdiction under the CWA only extends to "a water or wetland" that has a "significant nexus" to "waters that are or were navigable in fact or that could reasonably be so made."  Rapanos, 547 U.S. at 759 (citation to SWANCC omitted).  According to Justice Kennedy, a "significant nexus" is found when the tributaries/wetlands

> either alone or in combination with similarly situated
> lands in the region, significantly affect the chemical,
> physical, and biological integrity of other covered waters
> more readily understood as 'navigable.'  When, in
> contrast, wetlands' *effects on water quality are*
> *speculative or insubstantial, they fall outside the zone*
> *fairly encompassed by the term 'navigable waters.'*

Id. at 780 (emphasis added).  Moreover, addressing whether a hydrological connection satisfies the "significant nexus" test, Justice Kennedy explained "*mere*

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM
15

*hydrologic connection should not suffice in all cases*." Id. at 784 (emphasis added).

Because Justice Kennedy believed the record suggested the possible existence of a "significant nexus" (Rapanos, 547 U.S. at 783), he recommended remanding the cases to determine whether the wetlands possessed the necessary nexus with navigable waters.[9] Id. at 787.

    c.    Joint EPA And Corps *Rapanos* Guidance

Nearly a year after Rapanos was decided, the Environmental Protection Agency ("EPA") and the Corps issued a Joint Guidance that provides the agencies' interpretation of the divided opinion. See EPA/Corps, Clean Water Act Jurisdiction Following the U.S. Supreme Court's Decision in Rapanos v. United States & Carabell v. United States (June 5, 2007) ("Joint Guidance"), attached to the Request for Judicial Notice in Support of this Motion as Exhibit A. The Joint Guidance adopted the position that if a wetland or tributary[10] is jurisdictional under either the Rapanos plurality or Kennedy test, it is a "water of

---

[9]    The plurality ultimately vacated the lower courts' judgments and remanded the cases for further proceedings due to "the paucity of the record." Rapanos, 547 U.S. at 757.

[10]    The Joint Guidance defines a tributary to include "natural, man-altered, or man-made water bodies that carry flow directly or indirectly into a traditional navigable water." Joint Guidance at 5 n.21.

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

16

the United States." Joint Guidance at 3. Thus, according to Scalia's plurality opinion, EPA and the Corps determined the agencies will assert jurisdiction over traditionally navigable waters and the wetlands adjacent to them, non-navigable tributaries of traditional navigable waters that are relatively permanent where the tributaries typically flow year-round or have continuous flow at least seasonally, and wetlands that directly abut such tributaries. Id. at 1, 4-6. Further, in deference to Justice Kennedy's "significant nexus" test and based on a fact-specific inquiry, EPA and the Corps will determine whether jurisdiction extends to the following waters: non-navigable tributaries that are not relatively permanent and the wetlands adjacent to them, and wetlands adjacent to but that do not directly abut a relatively permanent non-navigable tributary. Id. at 1, 7-10. Finally, the Joint Guidance states it generally will not assert jurisdiction over swales or erosional features (gullies, small washes), or over ditches, including roadside ditches, "excavated wholly in and draining only uplands and that do not carry a relatively permanent flow of water," because such erosional features and ditches are not tributaries and do not have a significant nexus to downstream navigable waters. Id. at 11.

In determining whether a "significant nexus" exists between a wetland or water and a traditional navigable water, EPA and the Corps will look at a variety of factors including the "volume, duration, and frequency of flow," "size of . . .

watershed, average annual rainfall, average annual winter snow pack, slope, and channel dimensions," "water temperatures," "habitat," "physical proximity," "shared hydrological and biological characteristics," in addition to other "ecological characteristics." Joint Guidance at 7, 9-10. After assessing these factors, the agencies will evaluate whether the water at issue is "likely to have an effect that is more than speculative or insubstantial on the chemical, physical, and biological integrity of a traditional navigable water." Joint Guidance at 10.

3.    Post _Rapanos_ Ninth Circuit Cases

Following the Supreme Court's lead first in SWANCC and later Rapanos, the Ninth Circuit and lower courts have recognized the limited nature of federal jurisdiction under the CWA and have provided additional guidance about what constitutes a "significant nexus" for the purposes of federal jurisdiction.

a.    Cargill (9th Cir., 2006)

In San Francisco Baykeeper v. Cargill Salt Division, 481 F.3d 700 (9th Cir. 2006), Baykeeper brought a citizen suit alleging that defendant salt producer Cargill discharged pollutants without a permit into "the waters of the United States" in violation of CWA Section 301(a). 481 F.3d at 702. Cargill allegedly discharged pollutants into a non-navigable, wholly intrastate pond that collected runoff within Cargill's waste containment facility near the San Francisco Bay. Id. The district court granted summary judgment for Baykeeper, finding that

the pond was a "water[] of the United States" because it was adjacent to a

protected water, the Mowry Slough.  Id.

   The Ninth Circuit reversed and found Baykeeper failed to state a

claim, holding that the district court "improperly expanded the regulatory

definition of 'waters of the United States.'"  Cargill, 481 F3d at 705; 709 at n 9.

Although the Ninth Circuit's holding that federal agencies *are not required* to

regulate all water bodies with a significant nexus to navigable waters is not

material to the question of whether this Court lacks subject matter jurisdiction,[11]

the court, in *dictum*, elaborated on the application of Justice Kennedy's "significant

nexus" test, noting that

> [b]y any permissible view of the evidence, the effect of
>
> Cargill's Pond on Mowry Slough is speculative or
>
> insubstantial; the Pond does not significantly affect the
>
> integrity of the Slough.  First, there is no evidence that
>
> any water has ever flowed from the Pond to the Slough.
>
> One expert, asked whether 'given the right hydrology
>
> conditions,' water could flow from the Pond to the
>
> Slough, answered that 'it is possible.'  There is no

---

[11] Grounds for dismissal of plaintiffs' Second Claim for failure to state a claim based on Cargill are set forth at Section IV.D below.

evidence, however, that those 'right hydrology

conditions' have ever existed or were likely to exist.

This testimony fits the definition of 'speculative.'  There

was also much emphasis on the fact that, in some high

tide situations, water from the Slough has flowed over

the levee, or seeped through the levee, into the Pond.  But

flow in that direction does not affect the navigable body

of water in the Slough.

Id. at 708.

    b.  City of Healdsburg (9th Cir., 2007)

   In Northern California River Watch v. City of Healdsburg, 496 F.3d

993 (9th Cir. 2007), *cert. denied*, 2008 U.S. LEXIS 1230, a citizens group brought

suit against the City of Healdsburg for violating the CWA by discharging sewage

from its WWTP without a Permit into a pond -- a former rock quarry pit near the

Russian River ("river").  496 F.3d at 996.  The pond was separated from the river

by a levee and wetlands.  Id.  The wetlands were extensive, surrounded the pond,

and directly connected to the river.  Id. at 998.  In fact, the pond's shoreline had

receded, transforming much of the original pond area itself into wetlands.  Id.

Moreover, the WWTP's outflow would overflow the pond were the pond not

draining into a surrounding aquifer, and the pond water overflow in the aquifer

seeped into the river along a couple of thousand feet of riverbank.  Id.

The Ninth Circuit first found that the pond was a wetlands and not an

isolated water, distinguishing it from the isolated pond in Cargill.  Healdsburg, 496

F.3d at 998.  The Court next determined the pond was a "water of the United

States" both because it was a wetlands adjacent to the navigable river (id. at 998-

99) and because it had a "substantial nexus" to the river (id. at 1000-001).  With

regard to the latter finding, the Court found the following facts pertinent:

- An obvious hydrological connection was established because pond water

  seeped into the river from surface wetlands and an underground aquifer.  Id. at

  1000.

- The hydrological connection affected the river's physical, chemical integrity.

  Id. at 1000.

- The wetlands and the river were ecologically connected as the wetlands were

  indistinguishable from the rest of the river's ecosystem, and thus threatened the

  river's biological integrity.  Id. at 1000-001.

c.     Pacific Lumber (N.D. Cal. 2007)

In Environmental Protection Information Center v. Pacific Lumber

Co., 469 F. Supp. 2d 803 (N.D. Cal. 2007), a citizens group brought suit against

lumber companies for, among other things, violating CWA Section 301 by

discharging silts and sediments into streams that flowed into the "undisputedly

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

21

navigable" Bear Creek, a tributary of the Eel River.  469 F. Supp. 2d at 809-10.

The district court found that although plaintiffs had established a hydrologic

connection between the streams and Bear Creek (Pacific Lumber, 469 F. Supp. 2d

at 824), because evidence showed the streams were intermittent or ephemeral (id.

at 823), plaintiffs had to demonstrate, under Justice Kennedy's "controlling"

significant nexus test, "that the streams in dispute have a significant nexus to Bear

Creek." Id.  As plaintiffs provided no evidence of the streams' chemical, physical,

or biological effect on Bear Creek, they failed to establish the streams were waters

of the United States.  See id. at 824.

D.    Plaintiffs' Claims Not Based On Impacts To "The Waters Of
      The United States" Are Improper And Must Be Dismissed

Under a plain reading of the CWA's enforcement provision, a citizen

plaintiff is limited to enforcing permit conditions which implement, among other

things, the Act's prohibition against unpermitted "discharge[s] of any pollutant"

(33 U.S.C. §1311(a) which, in turn, is specifically defined as the addition of any

pollutant into "the waters of the United States" (33 U.S.C. §§1362(12),(7)).

Despite this limitation, which recognizes the limits of federal authority under the

Constitution, plaintiffs' Second Claim, admittedly, is based on spills that *did not*

*involve* the discharge of a pollutant into "the waters of the United States." See,

e.g., MPSJ at 3-4.  Indeed, in their MPSJ, plaintiffs only seek liability under their

Second Claim for spills to the ground.  Thus, plaintiffs simply cannot establish --

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

22

as they must under the controlling Ninth Circuit authority -- that any violation alleged under their Second Claim involves impacts to the physical, chemical or biological character of a navigable water, or otherwise threatens the integrity of the water quality of such a water.  Without such a showing, this Court does not have jurisdiction over the plaintiffs' Second Claim under the Constitutional limits recognized in SWANCC and Rapanos.  Furthermore, it is highly significant that in deference to the Supreme Court's Constitutional pronouncements, EPA has issued a guidance document that *confirms its lack of jurisdiction* over the alleged violations under plaintiffs' Second Claim.  If EPA cannot enforce those alleged violations under the CWA given the Constitutional limits to its jurisdiction, how can plaintiffs?

In opposition to this Motion, plaintiffs may try to get around the Constitutional limits on the Court's jurisdiction by arguing that all NPDES permit conditions are enforceable in CWA citizen suits, citing such cases as Save our Bays and Beaches v. City and County of Honolulu, 904 F. Supp. 1098, 1115-16 (D. Haw. 1994), Northwest Envtl. Advocates v. City of Portland, 56 F.3d 979, 986 (9th Cir. 1995), *rehearing en banc denied*, 74 F.3d 945, *cert. denied*, 518 U.S. 1018 (1996), Conn. Fund for the Env't v. Raymark Indus., Inc., 631 F. Supp. 1283, 1285 (D. Conn. 1986), and Locust Lane v. Swatara Township Auth., 636 F. Supp. 534, 537-38 (M.D. Pa. 1986).  These cases, however, are unavailing here because

they (1) do not address the Constitutional issue raised in this Motion, and (2) were all decided before the Supreme Court's seminal SWANCC and Rapanos decisions. In addition, while CCH is not (at this time) challenging either any specific permit term or EPA's authority to prescribe any particular permit condition, it is important to note that each of the permit conditions at issue were established before SWANCC and Rapanos were decided. Furthermore, the Permit terms at issue here are like the "migratory bird" regulation struck down SWANCC, which provided that *if* migratory birds *used or would use* an isolated intrastate body of water as a habitat, that water would be considered a "jurisdictional" water of the United States. Here, it simply not enough that a spill *could* enter a water of the United States. Finally, plaintiffs may argue that Standard Permit Condition ¶ 9 requires CCH to comply with all applicable laws and regulations, and plaintiffs may sue to enforce violations of the Permits which violate Hawaii Department of Health regulations not subject to United States Constitutional limitations. Plaintiffs, however, *brought their claims in federal court under the federal Clean Water Act-- not Hawaii state law.* Therefore, the Constitutional limits on this Court's jurisdiction are controlling.

Accordingly, just as the Corps in SWANCC and Rapanos was not authorized to regulate non-navigable, intrastate bodies of water, this Court does not have jurisdiction over the spills at issue in the Second Claim. Any other

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

24

interpretation of the citizen enforcement provision would raise the same serious

Constitutional issues that the Supreme Court recognized in <u>SWANCC</u> and

<u>Rapanos</u> -- issues that, according to the Court in <u>SWANCC</u>, should be avoided if

there is an otherwise acceptable interpretation of the statute.

      Accordingly, the Second Claim must be dismissed, with prejudice, for

lack of subject matter jurisdiction under Rule 12(b)(1).

## IV.   <u>PLAINTIFFS' SECOND CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM</u>

### A.   <u>Standard of Review</u>

      The standard for a Fed. R. of Civ. Proc. 12(b)(6) motion for failure to

state a claim upon which relief can be granted is "whether or not it appears to a

certainty under existing law that no relief can be granted under any set of facts that

might be proved in support of [plaintiffs'] claims." <u>St. Michael's Convalescent</u>

<u>Hosp. v. Cal.</u>, 643 F.2d 1369, 1372 (9th Cir. Cal. 1981) (citing <u>De La Cruz v.</u>

<u>Tormey</u>, 582 F.2d 45, 48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965).  A Rule

12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal

theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

<u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. Cal. 1988) (citation

omitted).  A plaintiff's failure to establish that a defendant is covered by a

governing statute constitutes a Rule 12(b)(6) failure to make out a claim.  <u>San</u>

<u>Francisco Baykeeper v. Cargill Salt Div.</u> 481 F.3d 700, 709 n. 9 (9th Cir. 2006)

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

(citing Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), *overruled* on unrelated

statute of limitation grounds, 127 S.Ct. 2877).

      B.      <u>Plaintiffs Cannot Base Their Claim On Implied Permit
Conditions</u>

      As described above, plaintiffs' Second Claim is partly based on spills

that allegedly violate Standard Permit Condition ¶ 9 of CCH's NPDES Permits,[12]

which states:

> The Permittee shall at all times properly operate and
>
> maintain all facilities and systems of treatment and
>
> control (and related appurtenances) which are installed or
>
> used by the Permittee to achieve *compliance with the*
>
> *conditions of this permit.*

Complaint, ¶ 82 (emphasis added).

      Plaintiffs apparently base this claim on the supposition that the

prohibition of spills is a "condition" of the permit. However, unless such

prohibition is expressly set forth in the permit it is--at most--an implied permit

condition. American Canoe Ass'n, Inc. v. D.C. Water and Sewer Auth., 306 F.

Supp. 2d 30, 42 (D.D.C. 2004). When implied permit provisions are the basis of a

---

[12]    This includes spills that occurred within the Sand Island, Kailua, and
Wai'anae collection and treatment system. Complaint, ¶ 82.

A/72565639.1/2017866-0000309724

claim, however, the person "bring[ing] suit under the CWA to enforce an NPDES permit provision . . . must demonstrate [that, among other things, the] obligation is enforceable through the . . . Permit." Id. at 45.

Plaintiffs can not make this required showing, as here, other than spills that occurred within the Honouliuli collection and treatment system (discussed below), plaintiffs fail to allege *any* enforcement basis for such implied condition. In fact, there is strong contrary evidence that ¶ 9, relied on by plaintiffs, was not intended to be used require compliance with implied permit provisions. In EPA's NPDES Permit Writer's Manual, for example, ¶ 9 requires only maintenance of equipment "used by permittee for compliance with the *terms* of the permit." RJN, Exh. B at 3. Thus, the EPA Manual interprets ¶ 9 "*not* to require maintenance of equipment used to comply with implied permit conditions." American Canoe, 306 F. Supp. 2d at 46 (emphasis in original). Because, with the exception of the Honouliuli spills, plaintiffs fail to cite any permit provision that expressly prohibits spills from the collection system or at the treatment plants, they have failed to meet their burden of demonstrating that spill prevention is enforceable through CCH's Permits. Accordingly, plaintiffs fail to state a claim based on these spills from within the Sand Island, Kailua, and Wai'anae collection and treatment systems, and the portions of their Second Claim based thereon should be dismissed.

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

27

C.    Plaintiffs Can Not Base Their Claim On Spills At The
      Honouliuli WWTP

Based on the Honouliuli Permit's overflow prohibition, plaintiffs'

Second Claim includes spills at the Honouliuli treatment plant that did not enter

*any* waters. MPSJ at 3-4.  Honouliuli Permit Standard Provision B.7 states that

"Any 'overflow' or 'bypass' of facilities, including the 'waste' collection system,

is prohibited." Jodene Isaacs Declaration, attached to MPSJ, Exh. 1.  However,

Standard Provision A.19 defines "overflow" to "mean[] the intentional or

unintentional diversion of flow from the collection and transport systems,

including the pumping facilities." Id.  As the term "overflow" specifically

excludes spills at the treatment plant, such spills are not permit violations.

Accordingly, plaintiffs have failed to state a claim based on spills at the Honouliuli

treatment plant, and their Second Claim with regard to such spills must be

dismissed.

D.    Plaintiffs Cannot State A Claim For Spills To Locations
      That EPA Does Not Regulate As "The Waters Of The
      United States"

In San Francisco Baykeeper v. Cargill Salt Division, 481 F.3d 700

(9th Cir. 2006), discussed above, the Ninth Circuit held that the citizen plaintiffs

failed to state a claim that the defendant Cargill violated Section 301(a) of the

CWA by allegedly discharging pollutants into a non-navigable, wholly intrastate

pond that collected runoff within Cargill's waste containment facility near the San

MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

28

Francisco Bay. 481 F.3d at 702. The pond at issue was adjacent to a protected

navigable water, the Mowry Slough. Id. In so holding, the Ninth Circuit first

noted that under controlling federal Army Corps regulations, "the only areas that

are defined as waters of the United States by reason of adjacency to other such

waters are 'wetlands.'" Cargill, 481 F.3d at 705. Second, and more importantly,

the Ninth Circuit rejected Baykeeper's argument that Supreme Court precedent

*necessarily* protects *all* bodies of water with a "significant nexus" to navigable

waters. Cargill, 481 F.3d at 706. The Ninth Circuit noted that of the cases

Baykeeper relied on, Rapanos and United States v. Riverside Bayview Homes,

Inc., 474 U.S. 121 (1985), both involved "adjacent *wetlands*." Cargill, 481 F.3d at

706-07 (emphasis in original) ("Justice Kennedy's controlling concurrence

explained that only wetlands with a significant nexus to a navigable-in-fact

waterway are covered by the Act"). Furthermore, SWANCC "did not hold . . . that

the Corps *would be required* to regulate all non-navigable bodies of water with

some nexus to navigable waters, and it certainly did not hold that a court would be

free to impose such a regulatory requirement if the administering agencies did

not." Cargill, 481 F.3d at 707 (emphasis added). Nor did any Rapanos Justice,

"even in dictum," address whether the CWA *necessarily* covers all water bodies

with a significant nexus to navigable waters. Cargill, 481 F.3d at 707.

Because EPA can only regulate traditionally protected waterways or a waterways with a "significant nexus" to a water that is navigable-in-fact, plaintiffs cannot demonstrate that EPA regulates the location of their Second Claim spills and plaintiffs have therefore failed to state a claim for all such spills.

## V.    CONCLUSION

For the reasons set forth above, this Court lacks jurisdiction over plaintiffs' Second Claim which, in addition, fails to state a claim for which relief can be granted. Accordingly, this claim must be dismissed with prejudice under Federal Rules 12(b)(1) and (b)(6).


DATED:    Honolulu, Hawaii
          June 12, 2008

Respectfully submitted,
CARRIE OKINAGA
Corporation Counsel

By:  /s/Kathleen A. Kelly
     Kathleen A. Kelly
     Attorneys for Defendant
     The City and County Of Honolulu


MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM