# EXHIBIT F

PERMIT NO. HI 0021296

AUTHORIZATION TO DISCHARGE UNDER THE
NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM

In compliance with the provisions of the Clean Water Act, as amended, (33 U.S.C. § 1251 et seq.; the "Act") and Chapter 342D, Hawaii Revised Statutes, and Chapters 11-54 and 11-55, Administrative Rules, Department of Health, State of Hawaii,

**CITY AND COUNTY OF HONOLULU**
**DEPARTMENT OF ENVIRONMENTAL SERVICES**

(hereinafter "PERMITTEE"),

is authorized to discharge secondary treated wastewater,

to the receiving waters named the Pacific Ocean through Outfall Serial No. 001 at Latitude 21°27'32"N, Longitude 157°42'56"W,

and storm water runoff associated with industrial activity,

to the receiving waters named the Nuupia Pond through Outfall Serial No. 002, at Latitude 21°25'50.3"N, Longitude 157°45'26.5"W,

from its Kailua Regional Wastewater Treatment Plant (hereinafter "FACILITY"),

located at 595 Kaneohe Bay Drive, Kailua, Oahu, Hawaii,

in accordance with the effluent limitations, monitoring requirements and other conditions set forth herein, and in the permit attachments, including the Department of Health "Standard NPDES Permit Conditions," dated May 3, 1999.

All references to Title 40 of the Code of Federal Regulations (40 CFR) are to regulations that are in effect on July 1, 1998, except as otherwise specified. Unless otherwise specified herein, all terms are defined as provided in the applicable regulations in 40 CFR.

This permit will become effective December 17, 1999.

This permit and the authorization to discharge will expire at midnight, **June 30, 2004.**

Signed this 17th day of November, 1999

(For) Director of Health

**FINAL PERMIT**
**DATED:  NOVEMBER 17, 1999**                                  **EXHIBIT F**

PERMIT NO. HI 0021296
Page 2

## TABLE OF CONTENTS

A.  EFFLUENT LIMITATIONS AND MONITORING REQUIREMENTS
    1.  Limitations and Monitoring Requirements
    2.  Sampling Locations

B.  WHOLE EFFLUENT TOXICITY LIMITATIONS AND MONITORING REQUIREMENTS
    1.  Limitations and Monitoring Requirements
    2.  Alternate Monitoring
    3.  Toxicity Reduction Evaluation
    4.  Sampling Frequency Reduction

C.  STORM WATER LIMITATIONS AND MONITORING REQUIREMENTS
    1.  Limitations and Monitoring Requirements
    2.  Sampling Locations
    3.  Storm Water Pollution Control Plan

D.  SPECIFIC CRITERIA FOR RECREATIONAL AREAS
    1.  Limitations and Monitoring Requirements
    2.  Exceptions

E.  ZONE OF MIXING LIMITATIONS AND MONITORING REQUIRMENTS
    1.  Design Criteria
    2.  Limitations and Monitoring Requirements
    3.  Sampling Locations
    4.  Ocean Outfall Monitoring
    5.  Exceptions

F.  SPECIFIC WATER QUALITY PARAMETERS EFFLUENT REQUIREMENTS
    1.  Monitoring Requirements
    2.  Initial Investigation Evaluation Plan
    3.  Increase in Monitoring and Reporting Requirements
    4.  Reduction Evaluation Plan

G.  SLUDGE REQUIREMENTS
    1.  General Conditions and Requirements
    2.  Sludge Limitations and Monitoring Requirements
    3.  Requirements for Sludge Disposed of in Municipal Solid Waste Landfills
    4.  Requirements for Sludge Disposed of in Surface Disposal Sites
    5.  Requirements for Sludge that is Land-Applied
    6.  Notification Requirements
    7.  Annual Report

FINAL PERMIT
DATED:  NOVEMBER 17, 1999

H. PRETREATMENT REQUIREMENTS

I. WASTEWATER POLLUTION PREVENTION PROGRAM
   1. Annual Report
   2. Flow Rate Notification
   3. Implementation of the Schedule of Compliance

J. REPORTING REQUIREMENTS
   1. Monitoring Results
   2. Noncompliance and Other Incidents
   3. Other Reporting Requirements

K. SPECIAL REQUIREMENTS
   1. Schedule of Submission
   2. Operation and Maintenance
   3. Power Failures

L. APPENDIX


ATTACHMENT A:   TCLP PARAMETER LIST

ATTACHMENT B:   PRIORITY POLLUTANT LIST

ATTACHMENT C:   LOCATION MAP

NPDES STANDARD PERMIT CONDITIONS (Updated as of May 3, 1999)

FINAL PERMIT
DATED:   NOVEMBER 17, 1999

STANDARD NPDES PERMIT CONDITIONS

17. Bypass   (based in part on 40 CFR §122.41(m))

   a. Definitions.

      (1) "Bypass" means the intentional diversion of any waste stream from any portion of a treatment facility.

      (2) "Severe property damage" means substantial physical damage to property, damage to the treatment facilities which causes them to become inoperable, or substantial and permanent loss of natural resources which can reasonably be expected to occur in the absence of a bypass. Severe property damage does not mean economic loss caused by delays in production.

   b. Prohibition of bypass. Every bypass is prohibited and the Director of Health may take enforcement action against a Permittee for bypass, except as provided in section 17.c.

   c. Exceptions to bypass prohibition.

      (1) Bypass not exceeding limitations. A bypass is allowable under this paragraph only if it does not cause any effluent limitation to be exceeded, and only if the bypass is necessary for essential maintenance to assure efficient operation.

      (2) Bypass unavoidable to prevent specified harm. A bypass is allowable under this paragraph if,

         (A) The bypass was unavoidable to prevent loss of life, personal injury, or severe property damage;

         (B) There was no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of equipment downtime. This condition is not satisfied if adequate back-up equipment should have been installed in the exercise of reasonable engineering judgment to prevent a bypass which occurred during normal periods of equipment downtime or preventative maintenance; and

20

STANDARD NPDES PERMIT CONDITIONS

   (C) The Permittee submitted notices as required under section 17.d.

 (3) Approved anticipated bypass. An anticipated bypass is allowable if the Director of Health approves it. The Director shall approve the anticipated bypass only if he receives information sufficient to show compliance with section 17.c.2., including information on the potential adverse effects with and without the bypass, and information on the search for and the availability of alternatives, whether the Permittee ultimately considers the alternatives feasible or not.

 d. Notice.

 (1) Anticipated bypass. If the Permittee knows in advance of the need for a bypass, the Permittee shall submit prior notice, if possible at least ten (10) days before the date of the bypass.

 (2) Unanticipated bypass. The Permittee shall submit reports of unanticipated bypasses.

   (A) Reports required by the Reporting Requirements of this permit shall be made in accordance with that section. If the Permittee questions whether the Reporting Requirements apply, the Permittee shall follow the Reporting Requirements of this permit;

   (B) For all other bypasses, reports shall be made orally within 24 hours from the time the Permittee becomes aware of the bypass. Written reports may be required on a case-by-case basis.

 e. Burden of proof. In any enforcement proceeding, the party seeking to establish that any exception to the bypass prohibition applies has the burden of proof. Proof that effluent limitations were met requires effluent monitoring during the bypass.

18. Upset (based in part on 40 CFR §122.41(n))

 a. Definition. "Upset" means an exceptional incident in which there is unintentional and temporary

21