IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SIERRA CLUB, HAWAIʻI CHAPTER; )<br>HAWAIʻI'S THOUSAND FRIENDS; and )<br>OUR CHILDREN'S EARTH FOUNDATION,)<br>                                )<br>          Plaintiffs,          )<br>                                )<br>     vs.                        )<br>                                )<br>CITY AND COUNTY OF HONOLULU, and)<br>FRANK DOYLE, DIRECTOR OF THE    )<br>DEPARTMENT OF ENVIRONMENTAL     )<br>SERVICES, in his official       )<br>capacity,                       )<br>                                )<br>          Defendants.           )<br>_____) | Civil No. 04-00463 DAE/BMK<br><br>**REVISED DECLARATION OF JODENE ISAACS** |

**REVISED DECLARATION OF JODENE ISAACS**

I, JODENE ISAACS, declare as follows:

1.  I am an attorney licensed to practice in the State of California. I am a member of the law firm Environmental Advocates. I make this Declaration on my personal knowledge, unless otherwise stated.

2.  On behalf of Plaintiff Our Children's Earth Foundation, Environmental Advocates submitted Freedom of Information Act ("FOIA") requests to the U.S. Environmental Protection Agency ("EPA") on May 12, 2004 and August 23, 2004. These FOIA requests sought certain documents related to EPA's permitting and enforcement oversight of the City and County of Honolulu ("CCH")'s sewage collection and treatment system.

3.  Exhibits 1, 2, and 3 attached to this Declaration contains true and correct copies of pages of some of the

678003-1 / 7502-3

documents that EPA provided to our firm in response to these FOIA requests.

  4. Exhibit 1 is a true and correct copy of the NPDES Permit for CCH's Honouliuli Waste Water Treatment Plant ("WWTP") provided to Environmental Advocates by EPA as part of EPA's response to these FOIA requests.

  5. Exhibit 2 is a true and correct copy of the NPDES Permit for CCH's Sand Island WWTP provided to Environmental Advocates by EPA as part of EPA's response to these FOIA requests.

  6. Exhibit 3 is a true and correct copy of the Consent Decree entered in *United States, et al. v. City and County of Honolulu*, Civ. No. 94-00765 DAE-KSC ("*EPA I*") in 1995 provided to Environmental Advocates by EPA as part of EPA's response to these FOIA requests.

  7. I have reviewed the 1995 Consent Decree between CCH, Hawai'i State Department of Health ("DOH"), and EPA entered in *EPA I*.

   a. Section IX, ¶¶ B-E of the 1995 Consent Decree requires CCH to submit reports to EPA and DOH on a quarterly basis ("Quarterly Reports") documenting the status of various upgrades to the collection system and WWTPs.

   b. Section VII, ¶F of the 1995 Consent Decree requires that CCH's Quarterly Reports also report to EPA and DOH all collection system spills (dry and wet weather) and all WWTP

emergency bypasses caused by infiltration and inflow in the Quarterly Reports.

  c. The 1995 Consent Decree requires CCH's Quarterly Reports to include the following signed certification:

> I certify under penalty of law that the document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluated the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

  8. Environmental Advocates' May 2004 FOIA request, *inter alia*, asked EPA for all documents in EPA's possession discussing, analyzing, establishing, or providing record of spills of sewage from CCH's collection system, discharge of wastewater at unpermitted locations, and unpermitted bypasses of treatment facilities.

  9. EPA's response to Environmental Advocates' May 2004 FOIA request included the following Consent Decree-mandated Quarterly Reports from CCH:

   -Quarterly Report, First Quarter 1999
   -Quarterly Report, Second Quarter 1999
   -Quarterly Report, Third Quarter 1999
   -Quarterly Report, First Quarter 2000
   -Quarterly Report, Second Quarter 2000
   -Quarterly Report, Third Quarter 2000
   -Quarterly Report, Fourth Quarter 2000
   -Quarterly Report, First Quarter 2001

```
-Quarterly Report, Second Quarter 2001
-Quarterly Report, Third Quarter 2001
-Quarterly Report, First Quarter 2002
-Quarterly Report, Second Quarter 2002
-Quarterly Report, Third Quarter 2002
-Quarterly Report, Fourth Quarter 2002
-Quarterly Report, First Quarter 2003
-Quarterly Report, Second Quarter 2003
-Quarterly Report, Third Quarter 2003
-Quarterly Report, Fourth Quarter 2003
-Quarterly Report, First Quarter 2004
```

10. Exhibit 4 attached to this Declaration includes true and correct copies of relevant selected pages of these Quarterly Reports. As noted below, Exhibit 4 further includes additional CCH sewage spill reports that Environmental Advocates obtained by additional requests for documents from EPA and the DOH.

11. On behalf of all Plaintiffs, Environmental Advocates submitted another FOIA request to the U.S. Environmental Protection Agency ("EPA") on September 18, 2007 asking for documents reporting, listing, documenting, and/or tabulating the discharge of raw or partially treated sewage from CCH's sanitary sewer collection system from May 1, 2004 through the final date EPA searched its records for documents responsive to this request.

12. EPA's response to Environmental Advocates' September 2007 FOIA request included the following additional Consent Decree-mandated CCH Quarterly Reports:

```
-Quarterly Report, Second Quarter 2004
-Quarterly Report, Third Quarter 2004
-Quarterly Report, First Quarter 2005
-Quarterly Report, Second Quarter 2005
-Quarterly Report, Third Quarter 2005
```

13. Exhibit 4 attached to this Declaration includes true and correct copies of relevant selected pages of these Quarterly Reports.

14. On behalf of all Plaintiffs, our co-counsel, Alston Hunt Floyd & Ing submitted a Hawaii Uniform Information Practices Act, Haw. Rev. Stat. Chapter 92F ("UIPA") request to DOH on April 21, 2004.

15. In response to this UIPA request, DOH provided to Alston Hunt Floyd & Ing copies of the following CCH Quarterly Reports mandated by the 1995 Consent Decree:

>   -Quarterly Report, Fourth Quarter 1999
>   -Quarterly Report, Fourth Quarter 2001

16. Exhibit 4 attached to this Declaration also includes true and correct copies of relevant selected pages of these two Quarterly Reports.

17. On behalf of all Plaintiffs, Environmental Advocates submitted an additional UIPA request to DOH on March 31, 2008. This UIPA request asked for copies of CCH's 1995 Consent Decree Quarterly Reports that Environmental Advocates did not already have.

18. In response to this UIPA request, DOH provided to Environmental Advocates copies of the following CCH Quarterly Reports mandated by the 1995 Consent Decree:

>   -Quarterly Report, Fourth Quarter 2004
>   -Quarterly Report, Fourth Quarter 2005
>   -Quarterly Report, Fourth Quarter 2007

19. Exhibit 4 attached to this Declaration contains true and correct copies of relevant selected pages of these three Quarterly Reports.

20. Libby Stoddard of DOH's Clean Water Branch further informed me that it could not produce to Environmental Advocates copies of CCH's Quarterly Reports for all of 2006 and the first, second, and third Quarters of 2007 because CCH had stopped complying with the Consent Decree's requirements to submit these reports to DOH and EPA.

21. Ms. Stoddard further informed me that DOH and EPA never received the Quarterly Reports for any of 2006, nor the 1st, 2nd, and 3rd Quarters of 2007 from CCH.

22. I reviewed the Quarterly Reports submitted to EPA and DOH pursuant to the 1995 Consent Decree between 1999 and 2005.

23. I found that CCH includes an attachment to the Quarterly Report entitled "Collection System Spills (Summary) & Treatment Plant Spills and Bypasses (Summary)" ("Quarterly Report Spill Summary").

24. The Quarterly Report Spill Summary always identifies a geographic location for each spill or bypass, generally a street address close to the point where sewage spilled out of the relevant CCH sewer line or pump station, or overflowed from the relevant CCH treatment facility.

25. The Quarterly Reports Spill Summary provides information on the total spill or bypass volume, the amount

removed, the amount reaching waters, whether the spill or bypass entered a storm drain or waterbody, and the name of the collection system or treatment plant associated with the spill or bypass.

26. The Quarterly Reports include information on the precise discharge point from the CCH collection system or WWTP for the spill or bypass. These Quarterly Reports to EPA and DOH document that in CCH's spills or bypasses, raw or inadequately treated sewage bubbles out of sewer manholes, flows from ruptures in sewer lines, overflows pump stations, or overflows WWTP equipment and flows into public streets, streams, beaches, the ocean, and other areas outside of CCH's collection system or WWTP equipment, including other publicly accessible areas.

27. I reviewed the NPDES permits for the Sand Island, Honouliuli, Wa'ainae, and Kaulia WWTPs.

28. All of these NPDES Permits authorize CCH to discharge treated sewage out these WWTP's deep ocean outfalls subject to various effluent limitations, prohibitions and other requirements.

29. Both the Sand Island and Honouliuli NPDES Permits contain reporting provisions that require CCH to submit reports of sewage spills or bypasses of sewage from the collection system or WWTPs to EPA and DOH on a monthly basis.

30. To satisfy these permit reporting provisions, CCH must submit monthly "Wastestream Diversion Reports" for each WWTP to EPA and DOH.

31. EPA's response to Environmental Advocates' September 2007 FOIA request included the following monthly Wastestream Diversion Reports for 2006-2007 (submitted by CCH pursuant to the Honouliuli and Sand Island NPDES Permits):

```
-Honouliuli Wastestream Diversion Report, January 2006
-Honouliuli Wastestream Diversion Report, February 2006
-Honouliuli Wastestream Diversion Report, March 2006
-Honouliuli Wastestream Diversion Report, April 2006
-Honouliuli Wastestream Diversion Report, June 2006
-Honouliuli Wastestream Diversion Report, July 2006
-Honouliuli Wastestream Diversion Report, October 2006
-Honouliuli Wastestream Diversion Report, December 2006
-Honouliuli Wastestream Diversion Report, June 2007
-Honouliuli Wastestream Diversion Report, July 2007
-Honouliuli Wastestream Diversion Report, August 2007
-Sand Island Wastestream Diversion Report, January 2006
-Sand Island Wastestream Diversion Report,
 February 2006
-Sand Island Wastestream Diversion Report, March 2006
-Sand Island Wastestream Diversion Report, April 2006
-Sand Island Wastestream Diversion Report, June 2006
-Sand Island Wastestream Diversion Report, July 2006
-Sand Island Wastestream Diversion Report, August 2006
-Sand Island Wastestream Diversion Report,
 September 2006
-Sand Island Wastestream Diversion Report, October 2006
-Sand Island Wastestream Diversion Report,
 November 2006
-Sand Island Wastestream Diversion Report,
 December 2006
-Sand Island Wastestream Diversion Report, January 2007
-Sand Island Wastestream Diversion Report, March 2007
-Sand Island Wastestream Diversion Report, June 2007
-Sand Island Wastestream Diversion Report, August 2007
```

32. Exhibit 4 includes true and correct copies of selected relevant pages of all these monthly Wastestream Diversion Reports to EPA and DOH.

33. I reviewed many of the monthly Wastestream Diversion Reports CCH has submitted to EPA and DOH.

34. I found that these reports identify a geographic location for each spill or bypass, generally a street address close to the point where sewage spilled out of the relevant CCH sewer line or pump station, or overflowed from the relevant CCH treatment facility.

35. The Wastestream Diversion Reports also indicate the total spill or bypass volume, the amount of spilled sewage recovered, the amount of sewage reaching waters, whether the spill or bypass entered a storm drain or waterbody, and the name of the collection system or treatment plant associated with the spill or bypass.

36. In addition, the Wastestream Diversion Reports include information on the precise discharge point from the CCH collection system for the spill or bypass. These monthly Wastestream Diversion Reports to EPA and DOH document that in CCH's spills or bypasses, raw or inadequately treated sewage bubbles out of sewer manholes, flows from ruptures in sewer lines, overflows pump stations, or overflows WWTP equipment and flows into public streets, streams, beaches, the ocean, and other areas outside of CCH's collection system or WWTP equipment, including other publicly accessible areas.

37. On behalf of all Plaintiffs, Environmental Advocates submitted an additional UIPA request to the DOH Clean Water

Branch on March 5, 2008 requesting that the DOH Clean Water Branch query its computer database containing sewage spill, sewage overflow, and bypass information and provide Plaintiffs with list of all sewage spills, overflows and/or bypasses reported by CCH to DOH from May 1999 to present.

38.  DOH Environmental Health Specialist Scott Miyashiro subsequently sent Environmental Advocates via electronic mail two Microsoft Access computer files containing CCH sewage spill, overflow and bypass summary lists prepared by the Clean Water Branch–one for 1999 and the other for 2000 onward.

39.  Exhibits 6A and 6B attached to this Declaration are true and accurate copies of the print-outs of these computer files.

40.  The 1999 database contained a total of 46 entries describing overflow or bypass incidents from May 1, 1999 to December 31, 1999.

41.  The 2000-2008 database contained a total of 834 entries describing overflow or bypass incidents from January 1, 2000 to February 18, 2008.

42.  For 1999, DOH responded to Plaintiff's UIPA request by providing a Microsoft Access database containing the following fields:  Location of Spill/Bypass, Date/Time Began, Date/Time Ended, Duration, Type, Quant (gal), Entered Storm Drain/Contained in Drain, Facility/Receiving Waterbody Affected, Days Posted/Closed, Cause/Corrective Actions Taken.

43. For the years 2000 through 2007, DOH provided Plaintiffs with a Microsoft Access database containing the following fields: Date/Time Began, Date/Time Ended, Overflow Location, Quantity, Type of Overflow, Waterbody Type, Days Posted/Closed, Facility Type, Cause of Overflow, Notes.

44. I used the two DOH Clean Water Branch CCH sewage spills, overflows and bypasses summary lists attached to this Declaration as Exhibits 6A and 6B (collectively, "DOH's Summary Lists") to prepare Table 1, attached as Exhibit 5A to this Declaration.

45. Table 1 summarizes CCH's collection system sewage spills and WWTP bypasses to waters of the United States between May 30, 1999 and December 31, 2007 as documented by Exhibits 5A.

46. To prepare Table 1, I performed the following tasks:

   a. I read through the "Cause of Overflow" field in each of DOH's Summary Lists and excluded from Table 1 any sewage spills whose cause this field of the DOH Summary Lists attributed to problems with private lateral sewage lines (i.e., the privately-owned sewer connection lines that join residences and businesses to CCH's sewer lines).

   b. I excluded from Table 1 any other noncompliance events which appeared to be something other than an overflow or bypass based on the descriptions in DOH's Summary Lists.

   c. I reviewed the "Date/Time Began" and "Date/Time Ended" fields in DOH's Summary Lists. These fields depict the

date and time that a sewage spill or bypass began and the date and time that it ended. If the incident began and ended on the same day, I entered a "1" in the Number of Violations' column that I created in my Table 1. If the incident did not begin and end on the same day, I counted the number of days from the begin date to the end date and entered that number in the 'Number of Violations' column in my Table 1.

  d. I reviewed information in the "Facility Type" field in DOH's Summary List for the 2000-2007 (Exhibit 5B) to determine whether the CCH incident should be categorized as: (1) an overflow or spill from the CCH sewage collection system, (2) an overflow or spill from a CCH WWTP, or (3) a bypass of the WWTP.

  e. If this DOH Summary List identified the CCH "Facility Type" involved in the incident as "collection system," "force main," "lift station," or "pump station," I categorized the CCH incident as an overflow/spill from the collection system and entered an "A" in the "Spill/Bypass" column I created in my Table 1.

  f. If this DOH Summary List identified the "Facility Type" involved in the incident as a "WWTP," I further read the information provided by this DOH Summary List in the "Overflow Location," "Type of Overflow," and "Cause of Overflow" fields for that incident to determine if the incident should be categorized as an overflow or spill from the WWTP or a bypass of the WWTP.

g.  If the incident appeared to involve a discharge of sewage out of the outfall from which the WWTP has NPDES Permit authorization to discharge to waters or if the DOH Summary List expressly labeled the incident as a "bypass," I categorized the incident as bypass and entered a "C" in the "Spill/Bypass" column in my Table 1.

h.  If the incident instead appeared to involve a discharge, spill or release of sewage from a WWTP to waters via a conduit or point source (other than the WWTP's NPDES permit-authorized discharge outfall), I categorized the incident as an overflow or spill from a WWTP and entered a "B" in the "Spill/Bypass" column in my Table 1.

i.  The DOH Summary List for 1999 (Exhibit 6A) lacks a "Facility Type" field.  To further determine how to similarly categorize the 15 incidents from 1999 listed in the DOH Summary List for 1999, I reviewed the totality of all the information provided by this DOH Summary List.

j.  The information provided by the DOH Summary List indicated that all of these incidents were collection system spills because (1) the spills were at locations other than CCH's WWTPs; and (2) the explanation for the overflows indicated that collection system equipment was involved in the spills (e.g. sewer line manholes, force mains or gravity sewer lines, etc.). Accordingly, I categorized all such spills as overflows or spills

from the collection system and entered an "A" for each of these incidents in the "Spill/Bypass" column in my Table 1.

    k.  Table 1 only includes those sewage spills or bypasses set forth in DOH's Summary Lists that CCH expressly reported (1) reached a named water body that is either the Pacific Ocean, a tributary to the ocean, or used for navigation, (i.e. for boating); (2) reached a "Bay," or "Harbor;" and/or (3) reached a "Beach" and caused warning signs about contamination of a waterway to be posted.

    In preparing Table 1, I inferred that any CCH sewage spill that CCH reported as reaching a "Bay" or "Harbor" or reaching a "Beach" and causing warning signs about contamination of a waterway to be posted also reached the ocean--given the location of these spills in urban parts of Oʻahu close to bays, harbors, and beaches of the ocean shores of Oʻahu.

    47.  DOH's Summary Lists (attached to this Declaration as Exhibits 6A and 6B) document that CCH's sewage spills and bypasses reached the following named water bodies:

> Ahuimanu Stream, Aiea Stream, Ala Wai Boat Harbor, Ala Wai Canal, Enchanted Lake, Halawa Stream, Inoanole Stream, Kaelepulu Stream, Kahala Stream, Kahana Stream, Kahanaiki Stream, Kalawahine Stream, Kalihi Stream, Kana Stream, Kanaha Stream, Kaneohe Stream, Kapalama Canal, Kawa Stream, Kawainui Marsh, Kawainui Stream, Keaahala Stream, Keehi Lagoon, Kewalo Basin, Komo Mai

Bridge Canal, Kuou Stream, Lake Wilson (Wahiawa Reservoir), Liliha Stream, Makakilo Gulch, Manoa Stream, Maunalua Bay, Maunawili Stream, Moanalua Stream, Nanakuli Stream, Niniko Stream, Nuuanu Stream, Nuupia Ponds, Pacific Ocean, Palolo Stream, Pauoa Stream, Puehuehu Stream, Puekiuehu Stream, Puha Stream, Waiawa Stream, Waikalua Stream, Waikele Stream, Wailupe Stream, Waimalu Stream, Waiola Stream, Waiomao Stream, Waolani Stream.

The Declaration of Matthew McGranaghan in Support of Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' First and Second Claims establishes that these waters are either the Pacific Ocean, a tributary to the ocean, or used for navigation (i.e., for boating).

48. Using the sum function within the Microsoft Word program, I tallied the number of CCH collection system sewage spills, CCH WWTP spills or overflows, and CCH WWTP bypasses to waters in my Table 1 between May 18, 1999 and December 31, 2007.

49. I determined that CCH had a total of: (a) 278 CCH collection system sewage spill violations; (b) 23 WWTP spill or overflow violations; and (c) 31 WWTP bypass violations during this time.

50. There were a total number of 332 unauthorized discharges of sewage to waters of the United States during this time period.

51.  I used the documents attached as Exhibit 4 to oversee the preparation of the Table 2, which is also included in this Declaration, infra.  Table 2 is attached to this declaration as Exhibit 5B.

52.  Table 2 summarizes CCH's sewage spills or overflows/bypasses from the Honouliuli collection system or Honouliuli WWTP that CCH did not unambiguously report reached waters in Consent Decree Quarterly Reports or Honouliuli Wastestream Diversion Reports during the following time periods:

> May 30, 1999 to December 31, 2005, January 2006, February 2006, March 2006, April 2006, June 2006, July 2006, October 2006, December 2006, June 2007, July 2007, August 2007 and the fourth quarter of 2007 (i.e., the time periods for which EPA and DOH have provided Environmental Advocates copies of Consent Decree Quarterly Reports or Honouliuli Wastestream Diversion Reports).

53.  Using the sum function within the Microsoft Word program, I tallied the number of CCH's sewage spills from the Honouliuli collection system or overflows or bypasses from the Honouliuli WWTP in Table 2.

54.  There were a total of 207 such spills, overflows or bypasses.

55.  In Environmental Advocates' review of DOH and EPA's responses to the FOIA and UIPA requests (referenced in this

Declaration), we found no documentation that CCH ever notified or submitted notice to EPA or DOH within the required 24 hour period that <u>any</u> of CCH's bypasses (for which the Citizens are now seeking summary judgment):

    a.   did not cause any effluent limitation to be exceeded; and

    b.   were necessary for essential maintenance to assure efficient operation,

Or alternatively,

    a.   that these bypasses were unavoidable to prevent loss of life, personal injury, or severe property damage, or

    b.   there were no feasible alternatives to the bypasses.

We found no documentation that CCH ever submitted to EPA or DOH the results of any effluent monitoring CCH performed during such bypasses.

I hereby declare under penalty of perjury that the foregoing is true and correct.

DATED: San Francisco, California, June 23, 2008.

                                */s/ Jodene Isaacs*

                              _____
                              Jodene Isaacs