EXHIBIT A
UNITED STATES' BRIEF IN  *U.S. V. CITY OF LOS ANGELES*

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
LORI JONAS (State Bar No. 158268)
Senior Attorney
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C.  20044
Telephone:  (202) 514-4080
Facsimile (202) 514-2583

DEBRA W. YANG
United States Attorney
Central District of California
SUZETTE CLOVER (State Bar No. 89066)
Assistant United States Attorney
300 North Los Angeles Street
Los Angeles, California  90012
Telephone:  (213) 894-3996

Attorneys for Plaintiff United States of America

(See next page for listing of Additional Counsel)

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and PEOPLE OF THE STATE OF CALIFORNIA ex rel. CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, LOS ANGELES REGION,<br><br>          Plaintiffs,<br><br>          v.<br><br>CITY OF LOS ANGELES,<br><br>     Defendant.<br>——————————————————— | ) ) ) ) ) ) ) )Civil Action No. 01-191-RSWL ) ) ) ) ) ) ) |
| SANTA MONICA BAYKEEPER, a non-profit corporation; TERRY TAMMINEN, an individual<br><br>          Plaintiffs,<br><br>          v.<br><br>THE CITY OF LOS ANGELES,<br><br>          Defendant.<br>——————————————————— | ) )Civil No. 98-9039- RSWL )<br>          CONSOLIDATED<br><br>**OPPOSITION OF PLAINTIFFS UNITED STATES AND THE STATE OF CALIFORNIA TO CITY'S MOTION TO DISMISS**<br><br>October 28, 2002, 9:00 a.m. |

1  BILL LOCKYER
   Attorney General of the
2  State of California
   MARY E. HACKENBRACHT
3  Senior Assistant Attorney General
   GREGORY J. NEWMARK (State Bar No. 190488)
4  MARILYN LEVIN (State Bar No. 92800)
   Deputy Attorneys General
5  300 South Spring Street, 11th Floor, North Tower
   Los Angeles, California  90013
6  Telephone: (213) 897-2641/ Facsimile: (213) 897-2802

7  Attorneys for Plaintiff People of the State of California *ex rel.*
   California Regional Water Quality Control Board, Los Angeles
8  Region

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ............................... 1

II.  ARGUMENT

     A.   The Court Has Jurisdiction Over
          This Action........................... 2

          1.   28 U.S.C. § 1345 Confers
               Jurisdiction on the Court.......... 2

          2.   This Court has "Federal-Question"
               Jurisdiction...................... 3

          3.   The Court has Jurisdiction over
               the State's Claims Pursuant to
               28 U.S.C. §1367(a) ................ 4

          4.   If this Court Considers the Motion,
               It Should Do So under
               Rule 12(b)(6) or Rule 56........... 5

     B.   There is no Bar to an Action for
          Injunctive Relief to Address Violations
          that Were the Subject of Prior State
          Administrative Enforcement............... 6

          1.   The Regional Board's Actions......... 7

          2.   Section 309(g)(6)(A) Bars Only
               Penalty Claims...................... 8

          3.   State Law Bars Only Duplicative
               Penalty Claims ..................... 11

     C.   Plaintiffs May Enforce Permit Provisions
          Prohibiting Discharges from Unpermitted
          Points and Poor O&M...................... 13

          1.   The United States and Citizen
               Plaintiffs May Enforce the Provisions
               of a Validly Issued Permit.......... 14

          2.   The City May Not Challenge the Terms
               of its Permits in this Proceeding ... 17

          3.   The Challenged Provisions are Within
               the Power of EPA to Include in
               an NPDES Permit..................... 19

    4.    The City's Activities Involve
          Discharges to Navigable Waters and
          thus Do Not Implicate SWANNC........    23

III. CONCLUSION...................................    25

TABLE OF AUTHORITIES

FEDERAL CASES

Page(s)

Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773,
    90 L.Ed. 939 (1946) ........................   3

Black v. Payne, 591 F.2d 83 (9th Cir. 1979)......   3, 5

Borden Ranch Partnership v. United States Army
    Corps of Engineers, 261 F.3d 810 (9th Cir.
    2001), cert. granted, 122 S. Ct. 2355,
    153 L. Ed. 2d 178 (June 10, 2002) ..........   25

California Sportfishing Protection Alliance
    v. City of West Sacramento, 905 F. Supp. 792
    (E.D. Cal. 1995) ..........................   9

Citizens for a Better Environment v. Union Oil
    of Calif., 83 F.3d 1111 (9th Cir. 1996).....   11

Connecticut Fund for the Environment v. Raymark
    Industries, Inc., 631 F. Supp. 1283
    (D. Conn. 1986) ..........................   16

General Motors Corp. v. Environmental Protection
    Agency, 168 F.3d 1377 (D.C. Cir. 1999)......   18

Johnson v. Knowles, 113 F.3d 1114 (9th Cir. 1997)   6

Knee Deep Cattle Company v. Bindana Investment
    Company, 94 F.3d 514 (9th Cir. 1996)........   11

Montgomery Environmental Coalition v. Castle,
    646 F.2d 568 (D.C. Cir. 1980)..............   19

Natural Resources Defense Council v. U.S
    Environmental Protection Agency, 822 F.2d
    104 (D.C. Cir. 1987).......................   20

North and South Rivers Watershed Association,
    Inc. v. Town of Scituate, 949 F.2d 552
    (1st Cir. 1991)............................   10, 11

Northwest Environmental Advocates v. City
    of Portland, 56 F.3d 979 (9th Cir. 1995)....   16

Orange Environmental v. County of Orange,
    860 F. Supp. 1003 (S.D.N.Y. 1994)...........   10

PIRG of New Jersey v. Witco Chemical,
    31 Env't Rep. Cas. 1571 (D.N.J. 1990)........   10

Public Interest Research Group of New Jersey
    v. Powell Duffryn Terminals, Inc.,
    913 F.2d 64 (3d Cir. 1990).................   18

Public Interest Research Group v. Pendelton
    Woolen Mills, 11 F.3d 883 (9th Cir. 1993)...   9

Pymatuning Watershed Citizens for a Hygienic
    Environment v. Eaton, 506 F. Supp. 902
    (W.D. Pa. 1980), aff'd, 644 F.2d 995
    (3d Cir. 1981)............................   16

Roberts v. Corrothers, 812 F.2d 1173
    (9th Cir. 1987) ..........................   3

Romero v. International Terminal Operation Co.,
    358 U.S. 354, 79 S. Ct. 468, 3 L. Ed.
    2d 368 (1959)............................   3

Save Our Bays and Beaches v. City and County
    of Honolulu, 904 F. Supp. 1098
    (D. Haw. 1994)...........................   16

Sierra Club v. Hyundai America, Inc.,
    23 F. Supp. 2d 1177 (D. Or. 1997) .........   10

Sierra Club v. Simkins Industries, Inc.,
    847 F.2d 1109 (4th Cir. 1988)..............   16

Sierra Club v. Union Oil Co., 813 F.2d 1480
    (9th Cir. 1987), judgment vacated,
    485 U.S. 931 (1988)......................   17

Solid Waste Agency of Northern Cook County v.
    United States Army Corps of Engineers,
    531 U.S. 159, 121 S. Ct. 675, 148 L.
    Ed. 2d 576 (2001)........................   24, 25

Sun Valley Gasoline, Inc. v. Ernst Enterprises,
    Inc., 711 F.2d 138 (9th Cir. 1983).........   3, 5

Texas Municipal Power Agency v. EPA,
    836 F.2d 1482 (5th Cir. 1988)..............   18

Turner v. McMahon, 830 F.2d 1003,
    1007 (9th Cir. 1987)).....................   9

United States v. Cargill, Inc., 508 F. Supp.
    734 (D. Del. 1981)........................   16

United States v. Hartz Construction Co.,
     1999 WL 417388 (N.D. Ill. 1999) . . . . . . . . . . .     2

United States v. Mango, 199 F.3d 85
     (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20, 21

United States v. Newdunn Associates,
     195 F. Supp. 2d 751 (E.D. Va. 2002) . . . . . . . . .     25

United States v. Riverside Bayview Homes, Inc.,
     474 U.S. 121, 131, 106 S.Ct. 455,
     88 L.Ed. 2d 419 (1985) . . . . . . . . . . . . . . . . . . . .     20

United States v. Rapanos, 190 F. Supp. 1011
     (E.D. Mich. 2002) . . . . . . . . . . . . . . . . . . . . . . . . .     25

United States v. United States Currency in
     the Amount of $23,481, 740 F. Supp. 950
     (E.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

United States v. U.S. Funds in the Amount
     of $3,035,648, 1991 WL 236843
     (W.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

United States v. Wilson, 133 F.3d 251
     (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . .     25

Wheeldin v. Wheeler, 373 U.S. 647, 83 S. Ct.
     1441, 10 L. Ed. 2d 605 (1963) . . . . . . . . . . . . .     4

Williamson v. Tucker, 645 F.2d 404
     (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . .     5, 6

**FEDERAL STATUTES**

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1, 2, 3

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

28 U.S.C. § 1345 . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

28 U.S.C. § 1367(a) . . . . . . . . . . . . . . . . . . . . . . . . .     1, 2, 4, 5

33 U.S.C. § 1251(a) . . . . . . . . . . . . . . . . . . . . . . . . .     12

33 U.S.C. § 1311 . . . . . . . . . . . . . . . . . . . . . . . . . . .     23

33 U.S.C. § 1311(a) . . . . . . . . . . . . . . . . . . . . . . . . .     14, 23, 24

33 U.S.C. § 1319 (b) and (d) . . . . . . . . . . . . . . . . . .     4, 15

33 U.S.C. § 1319(g)(6)(A) . . . . . . . . . . . . . . . . . . . . .     9

1  33 U.S.C. § 1342(a)(1),(b) .....................   14

2  33 U.S.C. § 1342(a)(2) .........................   14, 18

3  33 U.S.C. § 1362(7) ............................   24

4  33 U.S.C. § 1362(8) ............................   24

5  33 U.S.C. § 1362(12)) ..........................   24

6  33 U.S.C. § 1362(16) ...........................   24

7  33 U.S.C. § 1365(a) ............................   15

8  33 U.S.C. § 1365(f)(6) .........................   15

9  33 U.S.C. § 1369(b)(1) .........................   17

10  33 U.S.C. § 1369(b)(2) ........................   17

11                **FEDERAL REGULATIONS**

12  40 C.F.R. § 122.41 ............................   19

13  40 C.F.R. § 122.41(m) .........................   20

14  44 Fed. Reg. 32861 (1979) .....................   20

15  45 Fed. Reg. 33303 (1980) .....................   20

16

17        **FEDERAL RULES OF CIVIL PROCEDURE**

18  Fed. R. Civ. P. 12  ...........................   5

19  Fed. R. Civ. P. 12(b)(1) ......................   2, 5, 6

20  Fed. R. Civ. P. 12(b)(6) ......................   2, 5, 6, 25

21  Fed. R. Civ. P. 56 ............................   5, 6, 21

22  Fed. R. Civ. P. 56(c) .........................   6

23                    **CONGRESSIONAL**

24  H.R. Conf. Rep. No. 1004, 99th Cong.,
25      2d Sess. at 133 (1986) ....................   10

26                   **STATE STATUTES**

27  Cal. Water Code § 13301 .......................   12

28

Cal. Water Code § 13320 ......................... 17

Cal. Water Code § 13326 ......................... 12

Cal. Water Code § 13350 ......................... 12

Cal. Water Code § 13385 ......................... 12

# I.    INTRODUCTION

The City has moved to dismiss, in part, the Complaint of the United States and the State of California for lack of subject matter jurisdiction on two grounds: (1) that plaintiffs may not seek injunctive relief for violations occurring before September 30, 1998 because there were prior state administrative actions dealing with violations during this time period; and (2) that the United States may not pursue violations of the City's NPDES permits other than discharges to "navigable" waters.  The City's motion should be denied.  This Court clearly has jurisdiction over this action under 28 U.S.C. §§ 1343, 1331 and 1367(a).  The Court need go no further to deny the Motion.

Should the Court consider the merits of the City's arguments despite the existence of subject matter jurisdiction, the motion should nonetheless be denied.  First, the Clean Water Act precludes, in certain circumstances, duplicative actions for penalties, but not actions for injunctive or declaratory relief. Plaintiffs are not seeking penalties for the pre-September 30, 1998 violations and thus their action is not precluded.  Second, the United States has the statutory right to enforce the provisions of valid NPDES permits, such as the ones prohibiting improper operation and maintenance ("O&M") and prohibiting sewage overflows from points other than permitted outfalls.  The City's thousands of violations of these conditions in the form of spills to streets or yards which may not reach "navigable" waters and for noxious odors are thus clearly enforceable by the United States.

1  **II.  ARGUMENT**

2       A.  <u>The Court Has Jurisdiction Over This Action</u>

3       The City has moved to dismiss for lack of subject matter

4  jurisdiction pursuant to Rule 12(b)(1).  As to the United States,

5  the Motion should be denied on the basis of 28 U.S.C. § 1345 and

6  § 1331.  As to the State, the motion should be denied because the

7  Court has jurisdiction pursuant to 28 U.S.C. § 1367(a).  Should

8  the Court nevertheless decide to reach the merits of the City's

9  Motion, it should treat the motion as one for failure to state a

10  claim under Rule 12(b)(6).

11       1.  <u>28 U.S.C. § 1345 Confers Jurisdiction on the Court</u>

12       By statute, this Court has jurisdiction over all cases in

13  which the United States is plaintiff.  28 U.S.C. § 1345 ("the

14  district courts shall have original jurisdiction of all civil

15  actions . . . commenced by the United States. . . ."); <u>see also</u>

16  Complaint at ¶ 3.  Given the clarity of the statute, it is not

17  surprising that a search for cases in which a defendant has urged

18  a district court to dismiss, under Rule 12(b)(1), a case brought

19  by the United States yielded few cases.  Those that were found

20  were uniform in applying the statute literally.  <u>See, e.g.</u>,

21  <u>United States v. Hartz Construction Co.</u>, 1999 WL 417388 (N.D.

22  Ill. 1999) (denying 12(b)(1) motion in CWA enforcement case where

23  United States is plaintiff); <u>United States v. U.S. Funds in the</u>

24  <u>Amount of $3,035,648</u>, 1991 WL 236843, *2 (W.D.N.Y. 1991)

25  ("inasmuch as this case was commenced by the United States . . .

26  there is no question but that this Court possesses subject matter

27  jurisdiction over the action."); <u>United States v. United States</u>

28  <u>Currency in the Amount of $23,481</u>, 740 F. Supp. 950, 952

1  (E.D.N.Y. 1990) (district courts have exclusive jurisdiction over

2  all actions in which the United States is a plaintiff).  Since

3  this Court undoubtedly has jurisdiction, the City's motion as to

4  the United States should be denied.

5              2.    This Court has "Federal-Question" Jurisdiction

6          The United States' Complaint is also premised on

7  federal-question jurisdiction, 28 U.S.C. § 1331.  See Complaint

8  at ¶ 3.  This case certainly meets the tests set forth by the

9  Ninth Circuit to invoke federal-question jurisdiction.

10          "Jurisdictional dismissals in cases premised on

11 federal-question jurisdiction are exceptional, and must satisfy

12 the requirements specified in Bell v. Hood, 327 U.S. 678, 66

13 S.Ct. 773, 90 L.Ed. 939 (1946)."  Sun Valley Gasoline, Inc. v.

14 Ernst Enterprises, Inc., 711 F.2d 138, 140(9th Cir. 1983); see

15 also Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987);

16 Black v. Payne, 591 F.2d 83, 85 n. 1 (9th Cir. 1979).  In Bell v.

17 Hood, the Supreme Court held that dismissals for lack of subject

18 matter jurisdiction are permitted only "where the alleged claim

19 under the constitution or federal statutes clearly appears to be

20 immaterial and made solely for the purpose of obtaining federal

21 jurisdiction or where such claim is wholly insubstantial and

22 frivolous."  327 U.S. at 682-83; see also Romero v. International

23 Terminal Operation Co., 358 U.S. 354, 359, 79 S. Ct. 468, 3 L.Ed.

24 2d 368 (1959) (holding that, generally, assertion of a claim

25 under a federal statute alone is sufficient to empower the

26 District Court to assume jurisdiction over the case and determine

27 whether, in fact, the statute does provide the claimed rights).

28      The City has not claimed that the United States' allegations

are frivolous or made solely to obtain federal jurisdiction.  Nor could it.  The United States, in its capacity as enforcer of the CWA, brings a claim for injunctive relief and penalties under 33 U.S.C. § 1319 (b) and (d).

The City's motion argues simply that (1) adjudication of some violations may be precluded by a prior governmental action; and (2) certain violations may be outside of the jurisdictional grant by Congress to the United States.  These claims are garden variety "federal-question" issues that require the Court to interpret the meaning of a federal law.  It is hard to imagine anything more solidly within this Court's jurisdiction.[1/] See Wheeldin v. Wheeler, 373 U.S. 647, 649 83 S.Ct. 1441, 10 L.Ed. 2d 605 (1963) (subject matter jurisdiction exists where the right of plaintiffs "to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another").[2/]

> 3.   The Court has Jurisdiction over the State's Claims
> Pursuant to 28 U.S.C. § 1367(a)

Congress has provided statutory authorization for this Court to exercise supplemental jurisdiction over the Regional Board's State law claims.  Section 1367(a) of the Judicial Code provides:

---

[1]  The City appears to conflate the argument that certain claims are outside of the United States' jurisdiction under the CWA with an assertion that deciding such an issue is outside the jurisdiction of this Court.

[2]  Similarly, the City's argument that the State may not seek additional remedies for spills already addressed in prior state orders, City Mot. at 11-12, calls, at the most, for the Court to interpret the breadth of the prior state administrative order and a state statute.  As set forth below, the Court has jurisdiction over these claims under 28 U.S.C. § 1367(a).

". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . ." 28 U.S.C. § 1367(a). The Regional Board's state law claims are based on the identical violations as the federal claims and thus are indisputably part of the same case or controversy. Indeed, the state law violations are established by precisely the same facts which prove liability under the CWA. See generally Complaint.

        4.   If this Court Considers the Motion, It Should Do So under Rule 12(b)(6) or Rule 56.

Since the Court clearly has jurisdiction over the governments' claims, the City's motion under Rule 12(b)(1) should be denied. If, however, this Court is inclined to consider the substance of the City's motion despite its facial infirmity, it should consider it under the standards applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6). If, under Rule 12(b)(6), the Court considers evidence extrinsic to the Complaint, the motion is converted to a Rule 56 summary judgment motion. Fed. R. Civ. P. 12; Black v. Payne, 591 F.2d at 86 n. 1 (when court considers papers beyond the pleadings, motion is in fact one under Rule 56).[3]

---

[3] Under Rule 12(b)(1), the Court may also consider extrinsic evidence and the City has asked this Court to do so. City Mot. at n.1. But jurisdictional fact finding by a court under Rule 12(b)(1) is significantly different than that done under Rule 56. See Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc., 711 F.2d 138, 139 (9th Cir. 1983); see also Williamson v. Tucker, 645

5

1    Under Rule 12(b)(6), a complaint should not be dismissed

2  unless it appears beyond doubt that the plaintiffs can prove no

3  set of facts in support of their claim that would entitle them to

4  relief.  All allegations of material fact in the complaint must

5  be taken as true and construed in the light most favorable to the

6  plaintiffs.  Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir.

7  1997).  Under Rule 56, the City's motion must be denied if

8  plaintiffs show that there is a genuine issue of material fact.

9  Fed. R. Civ. P. 56(c).

10    If the Court considers the substance of the City's motion,

11  it should apply the standards applicable under Rule 12(b)(6) and

12  Rule 56.

13    B.    There is no Bar to an Action for Injunctive Relief to

14          Address Violations that Were the Subject of Prior State

15          Administrative Enforcement

16    The City ignores the plain language of the Clean Water Act

17  in seeking to dismiss plaintiffs' enforcement action with regard

18  to sewage spills prior to September 30, 1998 based on the

19  Regional Board's prior administrative actions.  These prior

20  actions do not preclude an action seeking injunctive relief to

21  address the City's sewage spills during the time period covered

22  by the Regional Board's action because Section 309(g)(6)

23  precludes only actions for penalties.  Moreover, as a matter of

24  fact, the Regional Board's past enforcement actions, while

25  ———————————————

26  F.2d 404, 412-17(5th Cir. 1981) (describing in detail critical
    distinction between 12(b)(1) and 12(b)(6) motions).  Notably,
    under a Rule 12(b)(1) motion, no presumption of truthfulness

27  attaches to the plaintiff's allegations and the existence of
    disputed material facts does not mandate a ruling for the non-

28  moving party.  See id. at 412-13.

1  dealing with some of the problems with the City's sewage system

2  (*i.e.*, spills caused by insufficient capacity in the sewers), do

3  not deal with overflows resulting from sewer blockages caused by

4  grease, roots, debris and other non-capacity related causes.  See

5  Declaration of Sam Unger (Unger Dec.) at ¶¶ 6-8.  The Regional

6  Board's administrative enforcement actions also have not

7  addressed all of the City's substantial problems with odor

8  emissions from the sewer system.  Id. at ¶ 9.  Thus plaintiffs'

9  suit for injunctive relief based on these spills and odors is not

10  only legally viable, it is critical to deal with significant

11  problems with the City's system that were not addressed by the

12  Regional Board's prior actions.

13          1.    The Regional Board's Actions

14      The Regional Board issued Cease and Desist Order No. 98-073

15  (CDO) on September 14, 1998.  The CDO finds that certain raw

16  sewage spills which occurred in 1993, 1995 and 1998 constituted

17  violations of the City's NPDES Permit.  The CDO requires the City

18  to undertake five specific projects to increase capacity at

19  certain discrete "chokepoints" in the system, as well as to

20  assess problems in one additional area and develop interim

21  measures in the Eagle Rock area.  See Declaration of Judith

22  Wilson at ¶ 18.  On September 30, 1998, the Regional Board issued

23  Administrative Civil Liability Complaint No. 98-076 (ACL),

24  assessing an $850,000 penalty against the City for spilling over

25  44 million gallons of raw sewage from the City's collection

26  system to streets, storm drains and area beaches between October

27  1, 1995 and September 30, 1998.

28      The CDO addressed specific, glaring deficiencies in the

7

City's collection system.  In particular, it addressed only known
trouble spots where major sewer lines lacked adequate capacity to
handle wet weather flows.  <u>See</u> Unger Dec. at ¶¶ 5, 6, 7.
Moreover, the CDO, by its terms, only addressed spills during
limited time periods within the three years specified, 1993,
1995, and 1998, and did not address at all non-capacity related
spills.  <u>See</u> Unger Dec. at ¶¶ 6, 8.  There were hundreds of non-
capacity related spills during the time period covered by the
Board's prior actions.  Declaration of Kenneth Greenberg
(Greenberg Dec.) at ¶ 23.  These non-capacity related spills are
ongoing and constitute 99% of the City's spills from January 1,
1999 to the present.  <u>Id</u>.

  The ACL settles only the Regional Board's penalty claims for
sewage spills from October 1, 1995 through September 30, 1998.
The ACL does not mandate remedial or injunctive measures.

    2. <u>Section 309(g)(6)(A) Bars Only Penalty Claims</u>

  In a case where a State has taken administrative
enforcement, section 309(g)(6)(A), by its plain language, is a
limited  bar which applies only to <u>penalty</u> actions.  It has no
application to claims for injunctive and declaratory relief.

  Section 309(g)(6)(A) provides in relevant part: "Actions
taken by the Administrator [of EPA] ...under this subsection
<u>shall not affect or limit the Administrator's ... authority to</u>
<u>enforce any provision of this chapter;</u> except that any violation
... (ii) with respect to which a State has commenced and is
diligently prosecuting an action under a State law comparable to
this subsection, or (iii) for which the ... State has issued a
final order not subject to further judicial review and the

1  violator has paid a penalty assessed under ... comparable State

2  law ... shall not be the subject of a <u>civil penalty action</u> under

3  subsection (d) of this section or section 1365 of this title."

4  33 U.S.C. § 1319(g)(6)(A)(emphasis added).[4]

5      By its very terms, this statutory provision only places

6  limits on the circumstances when a violator may be subjected to a

7  <u>civil penalty action</u>.  As the 9th Circuit has observed in

8  construing section 309(g)(6)(A), "the most persuasive evidence of

9  . . . [congressional] intent is the words selected by Congress,"

10  <u>Public Interest Research Group v. Pendelton Woolen Mills</u>, 11 F.3d

11  883, 886 (9th Cir. 1993) (citing <u>Turner v. McMahon</u>, 830 F.2d

12  1003, 1007 (9th Cir. 1987)).

13      Consistent with the direction of the Ninth Circuit in

14  <u>Pendelton Woolen Mills</u>, all of the district courts in the Ninth

15  Circuit which have addressed the issue have ruled that claims for

16  injunctive relief are unaffected by State enforcement actions.

17  Thus, in <u>California Sportfishing Protection Alliance  v. City of</u>

18  <u>West Sacramento</u>, 905 F. Supp. 792, 806-7 (E.D. Cal. 1995), the

19  Eastern District held that a Regional Board ACL barred only the

20  citizen plaintiff's penalty remedy.  The Court reasoned that

21  allowing injunctive relief was logical, given that, despite a

22  penalty payment, the violations may continue, and the injunctive

23  relief obtained by the State may be inadequate.

24      Similarly, the District Court for the District of Oregon

25  _____

26      [4] On the basis of this statutory provision, since the
    Regional Board has assessed and collected penalties for the
    spills between October 1, 1995 and September 30, 1998, plaintiffs

27  are only seeking civil penalties for permit violations <u>after</u>
    September 30, 1998.  <u>See</u> Complaint of plaintiffs United States

28  and State of California at p. 19 (Prayer For Relief at ¶¶ 2,3).

1  concluded that "regardless of the applicability of the

2  limitations on civil penalties in section 1319(g)(6)(A),

3  plaintiffs' right to seek injunctive or declaratory relief

4  appears to be unimpaired." Sierra Club v. Hyundai America, Inc.,

5  23 F. Supp. 2d 1177, 1179 (D. Or. 1997).[5/]

6      This application of the plain language of the statute is

7  consistent with Congress' express intent: "this limitation would

8  not apply to...an action seeking relief other than civil

9  penalties (e.g., an injunction or declaratory judgment)."    H.R.

10  Conf. Rep. No. 1004, 99th Cong., 2d Sess. at 133 (1986).

11      The City cites only one case in support of its argument that

12  this Court should ignore both the plain language of section

13  309(g)(6)(A) and its unambiguous legislative history.   In North

14  and South Rivers Watershed Association, Inc. v. Town of Scituate,

15  949 F.2d 552 (1st Cir. 1991) ("Scituate"), the First Circuit

16  decided that a claim for injunctive relief could not proceed

17  because of the potential for an "absurd" result if the remedy in

18  a citizens suit conflicted with a State's remedial action.   Id.

19  at 558.   However, the Scituate decision has been roundly

20  criticized within the Ninth Circuit and should not be followed

21  here.   In the context of analyzing whether a Regional Board

22  compliance order is a penalty action for purposes of 1319(g)

23  preclusion, the Ninth Circuit has already rejected the Scituate

24  Court's sweeping application of the bar to citizen enforcement.

25

---

26      [5] See also Orange Environmental v. County of Orange, 860 F.
   Supp. 1003, 1017-18 (S.D.N.Y. 1994)(declining to rewrite the
27  explicit language of the Act precluding only penalties); PIRG of
   New Jersey v. Witco Chemical,   31 Env't Rep. Cas. 1571, 1576
28  (D.N.J. 1990) (same).

1  <u>Citizens for a Better Environment v. Union Oil of Calif.</u>,  83

2  F.3d 1111, 1117-18 (9th Cir. 1996); <u>see also</u> <u>Knee Deep Cattle</u>

3  <u>Company v. Bindana Investment Company</u>, 94 F.3d 514 (9th Cir.

4  1996)(prior State administrative penalty and compliance order not

5  a bar to independent action to enforce terms of NPDES permit).

6       Moreover, even if this Court could get past the unambiguous

7  statutory language and legislative history and the adverse view

8  of the <u>Scituate</u> decision in the Ninth Circuit, the rationale

9  behind the <u>Scituate</u> decision is inapplicable here.  The policy

10  underlying the <u>Scituate</u> court's incorrect reading of section

11  309(g)(6)(A) hinged on its fear that citizen enforcement could

12  disrupt ongoing State enforcement action addressing the

13  violations at issue and its conclusion that citizen enforcement

14  should be subsidiary to State and Federal enforcement of the

15  Clean Water Act.  949 F.2d at 558.

16       Unlike <u>Scituate</u>, which involved no government plaintiffs, in

17  this action, government plaintiffs also seek injunctive relief to

18  compel a comprehensive solution to the City's chronic sewage

19  spill problem.  Such a remedy will not conflict with the Regional

20  Board's past remedial efforts given that the Regional Board, as a

21  party to this action, will be central in the development of the

22  comprehensive injunctive relief sought.  Thus, since in this

23  case, not only the Federal government but also the State, are

24  joining the citizens to jointly enforce the Act, the policy

25  rationale underlying the Court's reasoning in <u>Scituate</u> simply

26  does not apply.

27       3.    <u>State Law Bars Only Duplicative Penalty Claims</u>

28       The City's assertion that California Water Code section

1   13326 precludes the Regional Board from seeking injunctive and

2   declaratory relief based on pre-September 30, 1998 spills is

3   erroneous.   Water Code section 13326 bars the Regional Board from

4   seeking "civil liability" in court for actions that have already

5   been the subject of civil liability assessed under article 2.5 of

6   Chapter 5, Division 7 of the Water Code, but "civil liability" in

7   this context means penalties, not injunctive relief.   See Cal.

8   Water Code §§ 13350, 13385 (describing "civil liability" in terms

9   of monetary penalty amounts).   Injunctive relief (including cease

10  and desist orders under Water Code section 13301), is covered by

11  article 1, not article 2.5.   Since the Regional Board does not

12  seek additional penalties for the pre-1998 spills, section 13326

13  is irrelevant and certainly does not bar the Board's request for

14  injunctive relief.

15      The City's argument that the Regional Board should be

16  precluded from seeking different or additional injunctive relief

17  because it would be somehow unfair is also unfounded.   The City

18  argues, essentially, that once the Regional Board issues an

19  enforcement order requiring actions to abate permit violations,

20  it is forever precluded from requiring different or additional

21  actions if the terms of the administrative order are not

22  violated.   This argument would prevent the Regional Board from

23  ever taking action beyond what is required by the CDO even when

24  it is apparent that additional measures are needed to attain

25  compliance with the City's NPDES permits.   Unger Dec. at ¶¶ 6-9.

26  It would be bad public policy, inconsistent with the goals set by

27  Congress at 33 U.S.C. § 1251(a) and the need to protect public

28  health, to limit the Regional Board to a single action in

1  response to Los Angeles' severe sewage spill problem.

2      Neither section 309(g)(A) nor anything in state law bars an

3  action for injunctive relief for violations for which the City

4  previously paid penalties.  Since there is no preclusion, the

5  Court should deny the motion.

6      C.    Plaintiffs May Enforce Permit Provisions Prohibiting

7            Discharges from Unpermitted Points and Poor O&M

8      Without citation to any case, the City baldly asserts that

9  the CWA does not provide for federal enforcement of permit

10 conditions other than those directly related to discharges of

11 pollutants to 'waters of the United States,' and therefore, the

12 United States has no legal authority to pursue such claims.  City

13 Mot. at 16. The City makes a similar claim with regard to the

14 authority of the citizens.  City BayKeeper Mot. at 21-22; City

15 Intervenor Mot. at 12.[6]  In fact, the Act and the cases decided

16 under it are directly contrary to the City's assertion, granting

17 the United States and citizen plaintiffs the right to enforce the

18 provisions of a validly issued NPDES permit, and holding

19 permittees are statutorily prohibited from challenging conditions

20 of their NPDES permits in an enforcement action.  Furthermore,

21 the conditions at issue reasonably relate to the discharge of

22 pollutants and are therefore permissible under the Act.  Thus,

23

24      [6] The City does not argue that plaintiff Regional Board is
   precluded from pursuing these claims or that provisions
25 prohibiting spills that do not reach navigable waters or nuisance
   odors may not be included in its NPDES permits.  City Mot. at 13
26 & n. 11.  Since the Regional Board will be entitled to discovery
   on these claims and the City's liability to the Regional Board
27 for these claims will be unaffected by the Court's ruling on the
   City's motion, the outcome of the motion will not reduce or alter
28 the Court's need to resolve these issues at trial.

1  this Court should deny the City's motion to dismiss claims based

2  on "contained discharges"[7/] and odors.

3        1.   The United States and Citizen Plaintiffs May

4             Enforce the Provisions of a Validly Issued Permit

5  Section 301(a) of the Act prohibits discharges of pollutants

6  except in compliance with, *inter alia*, section 402.  33 U.S.C.

7  § 1311(a).  Section 402 states that the Administrator or a State

8  may issue a permit for discharge of any pollutant.  33 U.S.C.

9  § 1342(a)(1), (b).  Section 402(a)(2) specifically provides that

10 the Administrator "shall prescribe conditions for such permits to

11 assure compliance with the requirements of paragraph (1) of this

12 subsection, including conditions on data and information

13 collection, reporting, and such other requirements as he deems

14 appropriate."  33 U.S.C. § 1342(a)(2)(emphasis added).

15 The City has been issued NPDES permits which, among other

16 things, prohibit discharges of wastewater from points other than

17 those specifically identified in the permits.  City's Mot. at 3.

18 The permits also prohibit overflows or bypasses of sewage.  Id.;

19 Terminal Island Permit Condition E.18.  The permits also require

20 that the City properly operate and maintain all facilities

21 installed to achieve compliance with the permit.  Id.  The

22 Hyperion Permit also requires that collection, treatment, and

23 disposal systems be operated in a manner that precludes public

24 contact with wastewater.  Hyperion Standard Provision C.4. The

25 City does not contend that the permits are in any way

26 _____

27      [7]  This term is used by the City to refer to spills it
   claims did not reach navigable waters.  For the convenience of
   the Court, plaintiffs use it herein.  However, plaintiffs do not

28 in any way concede that any specific spill was "contained."

14

1  defective.[8]

2      Section 309(b) states that whenever "the Administrator finds

3  that any person is in violation of section 1311 . . . of this

4  title, <u>or is in violation of any permit condition</u> or limitation

5  implementing any such sections in a permit issued under section

6  1342 of this title . . . he shall bring a civil action . . . ."

7  33 U.S.C. § 1319(b) (emphasis added).  Section 505(a) states that

8  "any citizen may commence a civil action on his own behalf . . .

9  (1) against any person . . . who is alleged to be in violation of

10 (A) an effluent standard or limitation under this chapter. . . ."

11 33 U.S.C. § 1365(a).[9]

12     Under the plain words of the statute, then, the

13 Administrator or a citizen may bring an action to enforce the

14 terms and conditions of a validly issued NPDES permit.  The

15 United States knows of no case in which a defendant has

16 previously argued that the United States cannot enforce

17 provisions of a validly issued NPDES permit.  Defendants cite to

18 no such cases and research has revealed none.  To the contrary,

19 as discussed below, numerous courts have addressed the issue in

20 the context of citizen suits and found that the provisions of a

21 validly issued permit can be enforced by a citizen.  Such rulings

22 would certainly be precedent for the United States' right to

23 enforce an NPDES permit, as there is no reason of policy, logic

24 or language of the Act that would support a conclusion that a

25 _____

26     [8] Nor could it, since the time for appeal of such permit
conditions has long since passed.  <u>See</u> C.2, below.

27     [9] "Effluent standard or limitation under this chapter" is
defined as, inter alia, "a permit or condition thereof issued
28 under section 1342 of this title. . . ."  33 U.S.C. § 1365(f)(6).

1  citizen's right to enforce an NPDES permit is broader than that

2  of the United States itself.

3      Several courts have entertained lawsuits enforcing

4  requirements other than those dealing directly with discharges to

5  navigable waters.  For example, citizen suits enforcing reporting

6  requirements have been held to be appropriate.  See, e.g., Sierra

7  Club v. Simkins Industries, Inc., 847 F.2d 1109, 1115 (4th Cir.

8  1988).  In another case, citizens were allowed to pursue an

9  action to enforce permit provisions requiring that sewers be

10 "maintained in good condition" and that "the various structures

11 and apparatus of the sewage treatment works herein approved shall

12 be maintained in proper condition so that facilities will

13 individually and collectively perform the functions for which

14 they were designed."  Pymatuning Watershed Citizens for a

15 Hygienic Environment v. Eaton, 506 F. Supp. 902 (W.D. Pa. 1980),

16 aff'd, 644 F.2d 995 (3d Cir. 1981).  These conditions are similar

17 to the conditions at issue in the present case.[10]

18     Courts have also entertained such suits when brought by the

19 United States.  For example, United States v. Cargill, Inc., 508

20 F. Supp. 734 (D. Del. 1981), was a suit by the United States for

21 penalties and injunctive relief for violations of conditions of

22     [10]  See also Northwest Environmental Advocates v. City of
23 Portland, 56 F.3d 979, 986 (9th Cir. 1995) (holding that citizens
   not limited to enforcement of effluent limitations); Save Our
24 Bays and Beaches v. City and County of Honolulu, 904 F. Supp.
   1098, 1115 n. 20 (D. Haw. 1994) (citizens may maintain action for
25 violation of operation and maintenance provisions of NPDES
   permits); Connecticut Fund for the Environment v. Raymark
26 Industries, Inc., 631 F. Supp. 1283, 1284-85 (D. Conn. 1986)
   (holding that citizens may enforce an NPDES permit provision
27 regulating discharges to a "polishing lagoon" even if they could
   not show that the discharges to that lagoon necessarily reach
28 navigable waters).

an NPDES permit intended to abate noxious odors from a wastewater treatment plant.

Thus, as the cases discussed indicate, citizens, and a fortiori, the United States, may enforce the provisions of a validly issued NPDES permit.

### 2. The City May Not Challenge the Terms of its Permits in this Proceeding

Although the City admits "contained discharges and odor violations may be prohibited under the Hyperion and/or Terminal Island Discharge Permit," City Mot. at 13, its argument boils down to a request to this Court to find that the provisions of its permits prohibiting these actions are infirm, and therefore unenforceable by the United States and the citizen plaintiffs.

Pursuant to Section 509 of the Act, review of any federal NPDES permit or federal action on a state issued NPDES permit may be had in the United States Court of Appeals within 120 days from the date of the action taken. 33 U.S.C. § 1369(b)(1). The Act further provides "Action of the Administrator with respect to which review could have been obtained under paragraph (1) of this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement." 33 U.S.C. § 1369(b)(2). Review of a state issued permit is governed by Cal. Water Code § 13320 which states that review of action by the Regional Board must be sought within 30 days.

Numerous courts have precluded defendants in enforcement actions from attempting to challenge terms of their NPDES permits. See, e.g., Sierra Club v. Union Oil Co., 813 F.2d 1480, 1486-87 (9th Cir. 1987), judgment vacated, 485 U.S. 931 (1988);

<u>General Motors Corp. v. Environmental Protection Agency</u>, 168 F.3d 1377, 1381-83 (D.C. Cir. 1999); <u>Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc.</u>, 913 F.2d 64, 78 (3d Cir. 1990) ("By failing to challenge a permit in an agency proceeding, [defendant] has lost forever the right to do so, even though that action might eventually result in the imposition of severe civil or criminal penalties.")(internal citations omitted).

In a challenge similar to the one made by the City here, <u>Texas Mun. Power Agency v. EPA</u>, 836 F.2d 1482 (5th Cir. 1988), the permittee argued that a provision in its NPDES permit exceeded EPA's statutory authority. Specifically, the permit included a provision regulating discharges to settling ponds which were internal to a waste processing system. <u>Id.</u> at 1486. The permittee argued that internal waste streams are not "waters of the United States" and therefore EPA had no authority to regulate discharges into them. <u>Id.</u> at 1487. The permittee, long after expiration of the time period for challenges to permits and after EPA had brought an enforcement action to enforce the provision in question, petitioned the court for review of the permit. <u>Id.</u> at 1484 & n.5. The Fifth Circuit rejected the application as untimely. <u>Id.</u> at 1484. The permittee then petitioned EPA to delete the provision. <u>Id.</u> EPA refused and the permittee appealed to the Fifth Circuit, which held: "While TMPA may be able to show that EPA applied the internal waste stream rule to outfall 301 inappropriately, it is irrelevant here. The place for judicial review of findings of fact behind the application of the internal waste stream rule in TMPA's permit is in a

1   timely challenge after the permit is issued. . . ."  Id. at 1492.

2   The Hyperion permit, which was jointly issued by EPA and the

3   Regional Board, has been in effect since 1994.  The Terminal

4   Island permit has been in effect since 1993.  Exhibits A, J to

5   City's Request for Judicial Notice.  Since the time to challenge

6   any condition of these permits expired many years ago, the City

7   may not in this enforcement action take issue with provisions of

8   the permit or argue that such provisions are unenforceable.

9         3.   The Challenged Provisions are Within the Power of

10              EPA to Include in an NPDES Permit

11        While the Court need go no further to dispose of defendant's

12   arguments and deny its motion, it is apparent that the permit

13   conditions challenged by the City fall squarely within EPA's

14   mandate under the CWA.

15        As set forth above, Section 402(a) specifically provides

16   that the Administrator "shall prescribe conditions for such

17   permits to assure compliance with the requirements of paragraph

18   (1) of this subsection, including . . . such other requirements

19   as he deems appropriate."  33 U.S.C. § 1342(a)(2).  This

20   provision  has been recognized as a broad grant of power to the

21   Administrator to impose such conditions as she deems appropriate

22   to achieve the goals of the Act.  See Montgomery Environmental

23   Coalition v. Castle, 646 F.2d 568, 587 (D.C. Cir. 1980).

24        In reliance on the grant of power in Section 402(a)(2), EPA

25   has promulgated regulations requiring that all NPDES permits

26   contain certain conditions appropriate to achieve compliance with

27   the goals of the Act.  These regulations, set forth in 40 C.F.R.

28   § 122.41, include a requirement that all NPDES permits contain a

requirement that "The permittee shall at all times maintain all facilities of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit." Id. at 122.41(e). EPA has rejected arguments that such a provision is beyond its statutory authority. 44 Fed. Reg. 32861 (1979); 45 Fed. Reg. 33303 (1980). Similarly, EPA has also required that all permits include provisions prohibiting the bypass of waste streams around treatment plants. 40 C.F.R. § 122.41(m).[11] These two provisions are similar to those being challenged by the City.

The Second Circuit recently held that conditions such as those requiring proper O&M are valid in permits issued under Section 404 of the Act. In United States v. Mango, 199 F.3d 85 (2d Cir. 1999), defendants argued the Army Corps of Engineers did not have authority to include in their discharge permit certain conditions not directly related to the "discharge of dredged or fill material into the navigable waters." Specifically, defendants argued that conditions requiring them to undertake certain activities on dry land were invalid. Id. at 92.

The court rejected defendants' arguments, first noting that "the CWA does not itself specify how closely the conditions must relate to the discharge." Id. at 93. In such a case, the court held that it was required to "defer to the interpretation of the agency charged with enforcing the statute . . . ." Id. (citing United States v. Riverside Bayview Homes, Inc., 474 U.S. 121,

---

[11] This regulation was upheld as a valid exercise of EPA's authority under the Act. Natural Resources Defense Council v. U.S Environmental Protection Agency, 822 F.2d 104, 126 (D.C. Cir. 1987).

20

1   131, 106 S.Ct. 455, 88 L.Ed. 2d 419 (1985)). Deference was due,

2   in that case, to the regulations issued by the Corps and EPA.

3   Id. The court found that the "regulations indicate that permit

4   conditions can be indirectly or directly related to the discharge

5   as long as they are reasonably related to it." Id. The court

6   included the regulation requiring appropriate maintenance and

7   operation of equipment in the list of regulations owed deference.

8   Id. Permit conditions similar to the conditions set out in the

9   regulations would presumably be valid. See id.

10      Since the permit conditions before it were not identical to

11  the regulations, the court remanded the case to the district

12  court for further investigation into how the permit conditions

13  related to the discharge at issue, but the court declined to

14  exclude any of the challenged conditions, including those

15  requiring measures on dry land: "if a condition requiring

16  defendants to take measures on dry land reasonably relates to a

17  discharge into navigable waters, it is valid." Id. at 94.[12]/

18      Since EPA has issued regulations requiring the type of O&M

19  and bypass provisions present in the City's permits and

20  challenged herein, these regulations are entitled to deference as

21  set forth in Mango. Thus, if the Court considers the City's

22  challenge to the permit conditions on the merits, the Court

23  should deny the City's motion to dismiss, finding the challenged

24  permit conditions valid.

25      To the extent the Court does not conclude that all the

26

27      [12] Unlike NPDES permits, permits issued under Section 404 of
    the Act are not subject to the 120 day challenge time limit of
28  Section 509.

                                21

provisions being challenged by the City are facially valid and
therefore per se enforceable by the United States in this case,
it should undertake the inquiry set forth in Mango and ask
whether the challenged provisions "are reasonably related to the
discharge."[13]/

As set forth in the Greenberg Declaration, the challenged
conditions, and by extension, the violations of those conditions
plaintiffs allege in the Complaint, are reasonably related to the
discharge of pollutants to navigable waters.  Specifically, Mr.
Greenberg states that design, operation and maintenance
deficiencies may generate nuisance odors.  Greenberg Dec. at ¶ 6.
These odors are generally the result of a generation of hydrogen
sulfide gas within the sewer lines.  Id. at ¶ 7.  This gas can
lead to highly corrosive conditions in a sewer pipe.  Id. at
¶ 10.  Sewer lines suffering from corrosion are subject to
significantly higher risk of failure.  Id.  When a sewer line
fails due to this corrosion, it is reasonable to expect that a
substantial sewage spill will result.  Id.  Also, generation of
hydrogen sulfide gas may be an indication of excessive solids
accumulation in the sewer.  Id. at ¶ 12.  Lines with excessive
solids are much more likely to clog and then spill.  Id.  The
City concurs that there is a relationship between solids
accumulation and the generation of odors and that maintenance
activities can aid in the reduction of odors.  Id. at ¶ 14.

---

[13] As pointed out above, since this motion should be
considered to be brought under 12(b)(6) and the resolution of
this matter involves review of affidavits, the motion should be
considered one raised under a Rule 56 and should be denied if
plaintiffs can show there is a genuine issue of material fact.

1  Moreover, the City recognizes the correlation between full sewers
2  and odors.  Id. at ¶ 15.  Many of the areas experiencing odors
3  related to full sewers have also experienced sewage spills.  Id.
4      Mr. Greenberg also notes that proper O&M is effective at
5  preventing sewage spills in that it can prevent the blockages
6  that cause the spills.  Id. at ¶ 18.  Once a blockage-caused
7  spill occurs, whether or not it reaches receiving waters is
8  dictated by the proximity to waters, topography, volume and the
9  City's response actions.  Id. at ¶ 19.  Spills caused by poor O&M
10 are as likely to reach receiving waters as not.  Id.  Indeed,
11 spills caused by blockages reached receiving waters just about as
12 often as they did not between July 1, 2001 and July 31, 2002.
13 Id. at ¶ 21.  The only reliable way to ensure that spills do not
14 reach waters is to prevent them from occurring.  Id. at ¶ 22.
15 Good O&M can prevent spills.  Id.
16      Thus, as explained by Mr. Greenberg, the permit conditions
17 and related violations alleged are closely related to the
18 discharge of pollutants to navigable waters.  Since there is at
19 least a genuine issue of material fact regarding the issue of the
20 relationship between the permit conditions and the discharge to
21 navigable waters, the City's motion must be denied.
22          4.   The City's Activities Involve Discharges to
23               Navigable Waters and thus Do Not Implicate SWANNC
24      The CWA prohibits the "discharge" of any pollutant except in
25 compliance with a permit issued under the Act.  33 U.S.C. §
26 1311(a).  "Discharge of a pollutant" is defined as (1) the
27 addition of any pollutant to navigable waters from a point source
28 or (2) any addition of any pollutant to the waters of the

1  contiguous zone or the ocean from a point source other than a

2  vessel . . . . 33 U.S.C. § 1362(12), (16). The term "navigable

3  waters" is expressly defined as the "waters of the United States,

4  including the territorial seas." 33 U.S.C. § 1362(7).[14]

5      The City discharges pollutants to the Pacific Ocean.

6  Hyperion NPDES Permit at 1; Terminal Island NPDES Permit at 1.

7  The Pacific Ocean falls squarely within the express statutory

8  definition of "navigable water." Thus, under either prong of the

9  definition of "discharge of a pollutant," the City is required to

10 obtain NPDES permits. 33 U.S.C. § 1311. The City does not

11 dispute this. This simple fact distinguishes this case from the

12 various CWA cases cited by the City in III. D. of its Motion.

13     The City principally relies on Solid Waste Agency of

14 Northern Cook County v. United States Army Corps of Engineers,

15 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed. 2d 576 (2001) ("SWANCC").

16 The issue presented in that case was whether discharge of dredged

17 and fill material into seasonally ponded gravel mining

18 depressions that were habitat to migratory birds required a

19 permit under Section 404 of the Act. Id. at 162. The Court held

20 that the "Migratory Bird Rule," as applied to the particular set

21 of facts at issue, involving wholly isolated, intrastate non-

22 navigable waters, "exceeds the authority granted to [the Corps]

23 under § 404(a) of the CWA." Id. at 174. Neither SWANCC nor any

24

25

_____

26     [14] "Territorial seas" means the belt of the seas measured
   from the line of ordinary low water along that portion of the
27 coast which is in direct contact with the open sea and the line
   marking the seaward limit of inland waters, and extending seaward
28 a distance of three miles. 33 U.S.C. § 1362(8).

1  of the decisions cited by the City[15]/ mention, much less discuss,

2  waters that fall so squarely within the definition of "navigable

3  waters" as the Pacific Ocean and they are thus irrelevant.

4      Since the permit conditions are final and not subject to

5  challenge and if subject to challenge, they would be valid and

6  enforceable under the law, the City's motion should be denied.

7  **III.    CONCLUSION**

8      This Court has jurisdiction over this case and should thus

9  deny the City's motion outright.  If the Court addresses the

10  merits of the City's arguments under Rule 12(b)(6), it should

11  hold, for the reasons stated herein, that no part of the

12  plaintiffs' Complaint is barred by Section 309(g)(6) of the Act,

13  and that the United States may pursue all its claims for

14  violations of the terms of the City's NPDES permits, including

15  its claims for violations, in the form of spills that do not

16  reach navigable waters and noxious odors, of the O&M provisions

17  and the prohibition on spills from non-permitted outfalls.

18

------

19  [15]  United States v. Newdunn Associates, 195 F. Supp. 2d 751
(E.D. Va. 2002), and United States v. Rapanos, 190 F. Supp. 1011

20  (E.D. Mich. 2002), cited by the City, are applications of SWANCC
to cases involving discharges to wetlands which the courts found

21  were not adjacent to navigable waters and therefore not within
the Corps' jurisdiction.  The United States believes these cases

22  were wrongly decided and appeals of them are pending.  Borden
Ranch Partnership v. United States Army Corps of Engineers, 261

23  F.3d 810 (9th Cir. 2001), cert. granted, 122 S. Ct. 2355, 153 L.
Ed. 2d 178 (June 10, 2002), contained no holding relevant to the

24  City's argument.  The United States voluntarily dismissed its
claim with regard to an isolated water.  Lastly, United States v.

25  Wilson, 133 F.3d 251 (4th Cir. 1997), held that a Corps
regulation which defined "waters of the United States" to include

26  isolated waters "the use, degradation or destruction of which
could affect interstate or foreign commerce" is invalid.  Since

27  this case does not involve isolated waters, Wilson is irrelevant

28  as well.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources
  Division


LORI JONAS, Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044


DEBRA W. YANG
United States Attorney
Central District of California
LEON W. WEIDMAN
Chief, Civil Division

SUZETTE CLOVER
Assistant United States Attorney
300 North Los Angeles Street
Los Angeles, California  90012

Attorneys for Plaintiff
United States of America


BILL LOCKYER
Attorney General of the State of
California


GREGORY J. NEWMARK
MARILYN LEVIN
Deputy Attorneys General
300 South Spring Street
11th Floor, North Tower
Los Angeles, CA 90013

Attorneys for Plaintiff People of
the State of California *ex rel.*
California Regional Water Quality
Control Board, Los Angeles Region

26

# DECLARATION OF SERVICE
**United States and People of the State of California v. City of Los Angeles (Civ. No. 01-00191) and Santa Monica Baykeeper, et al., v. City of Los Angeles (Civ. No. 98-9039) CONSOLIDATED**

I, Leticia Aguirre, say:

I am employed in the offices of the State Attorney General in the County of Los Angeles, California. I am over the age of 18 years and not a party to the within entitled action. My business address is 300 S. Spring Street, Los Angeles, California 90013.

On October 7, 2002, I served the foregoing document(s) described as:

## OPPOSITION OF PLAINTIFFS UNITED STATES AND THE STATE OF CALIFORNIA TO CITY'S MOTION TO DISMISS

on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

### [SEE ATTACHED MAILING LIST]

[X]    (BY REGULAR MAIL) I caused such envelope to be deposited in the United States mail at Los Angeles, California, with postage thereon fully prepaid. I am readily familiar with the office's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to C.C.P. §1013(a)(3).

[ ]    (By OVERNIGHT MAIL) I caused such envelope to be delivered to the office/residence of the addressee.

[ ]    (BY FACSIMILE) I caused such copies to be delivered by Facsimile Machine Telephone Number to the numbers stated below, and also by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Los Angeles, California, addressed to the office/residence of the addressee.

STATE

[ ]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on _____, at Los Angeles, California.

FEDERAL

[X]    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on October 7, 2002, at Los Angeles, California.

LETICIA AGUIRRE

1

**MAILING LIST**
**United States and People of the State of California v. City of Los Angeles (Civ. No. 01-**
2
**00191) and Santa Monica Baykeeper, et al., v. City of Los Angeles (Civ. No. 98-9039)**
**CONSOLIDATED**

3

4   Thomas L. Sansonetti
    Assistant Attorney General
5   Environment & Natural Resources
    Division
6   United States Department of Justice
    Lori Jonas
7   Trial Attorney
    Environment Enforcement Section
8   Post Office Box 7611
    Washington, D.C. 20044
9   Facsimile Number: (202) 514-2583

10  Debra W. Yang
    United States Attorney
11  Central District of California
    Suzette Clover
12  Assistant United States Attorney
    300 North Los Angeles Street
13  Los Angeles, CA 90012
    Facsimile Number: (213) 894-0141
14
15  Christopher A. Sproul
    United States Environmental
16  Protection Agency, Region IX
    75 Hawthorne Street
    San Francisco, CA 94105
17  Facsimile Number: (415) 947-3570

18  Daniel Cooper
    Lawyers for Clean Water c/o San Francisco
19  BayKeeper
    The Presidio Building 1004
20  P.O. Box 29921
    San Francisco, CA 94129
21  Facsimile Number: (415) 561-2223

22  James J. Dragna
    Bingham McCutchen LLP
23  355 South Grand Avenue, Suite 4400
    Los Angeles, CA 90071-1560
24  Facsimile Number: (213) 680-6499

25  Lew Hollman, Esq.
    Center for Law in the Public Interest
26  3250 Ocean Park Blvd., Suite 300
    Santa Monica, CA 90405
27

28

Danielle R. Fugere
Environmental Advocates
Building 1004B O'Reilly Avenue
San Francisco, CA 94129
Facsimile Number: (415) 561-2223

Constance L. Rice, Esq.
English, Munger & Rice
1545 Wilshire Blvd., Suite 800
Los Angeles, CA 90017
Facsimile Number: (213) 989-1309

Kathleen Salvaty, Esq.
English, Munger & Rice
1545 Wilshire Blvd., Suite 800
Los Angeles, CA 90017
Facsimile Number: (213) 989-1309