CARRIE OKINAGA, 5958
Corporation Counsel
KATHLEEN A. KELLY, 6729
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone:  (808) 768-5235
Facsimile:  (808) 768-5105
Email: kkelly@honolulu.gov

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone:  (213) 680-6400
Facsimile:  (213) 680-6499
Email: nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>　　　　Defendant. | CIVIL NO. CV 04-00463 DAE-BMK<br><br>**CITY AND COUNTY OF HONOLULU'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM; CERTIFICATE OF SERVICE**<br><br>Date:　　June 30, 2008<br>Time:　　9:00 a.m.<br>Judge:　　Hon. David Alan Ezra |

I.  INTRODUCTION

In their Opposition to the City and County of Honolulu's ("CCH") Motion to Dismiss plaintiffs' Second Claim,[1] plaintiffs do not dispute that the United States Supreme Court's recent decisions in Rapanos and SWANCC[2] establish that the scope of the Clean Water Act ("CWA" or "Act") is limited to impacts to "the waters of the United States."  Rather, plaintiffs attempt to get around these seminal CWA decisions by claiming that the Court can enforce under a permit what it cannot enforce under the Act.  No only does this position defy logic, it ignores the fundamental rule that a federal court cannot decide the merits of any issue over which it lacks jurisdiction.  Indeed, plaintiffs do not once even address the threshold jurisdictional issue raised in CCH's Motion.  Further, again deflecting the jurisdictional question, plaintiffs claim that CCH is "in effect" seeking to nullify the permit.  This is not the case.  The permit terms at issue are not necessarily unrelated to the "the waters of the United States" and CCH takes no

---

[1]  Plaintiffs filed a Consolidated Opposition to CCH's Motion to Dismiss Plaintiffs' Second Claim and Reply in Support of Plaintiffs' Motion for Partial Summary Judgment ("Opposition" or "Opp.").  In accordance with the Local Rules, CCH's Reply is confined to arguments raised in opposition to its Motion to Dismiss, to the extent these arguments can be discerned.

[2]  Rapanos v. United States, 547 U.S. 715 (2006) and Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers ("SWANCC"), 531 U.S. 159 (2001).

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

1

position on their validity in light of Rapanos and SWANCC at this time. As Judge Ezra has held in Save our Bays and Beaches v. CCH, 904 F. Supp. 1098, 1114-15 (D. Haw. 1994), the Court can decide its own jurisdiction without deciding the validity of a permit term.

For the reasons below and for the reasons stated in CCH's Motion, plaintiffs' Second Claim should be dismissed in its entirety.

II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' SECOND CLAIM

   A.   Plaintiffs Cannot Get Around The Threshold Jurisdictional Issue Raised In CCH's Motion By Summarily Asserting The Court Can Enforce Any NPDES Permit Term

Plaintiffs do not dispute that the United States Supreme Court in SWANCC and Rapanos found that, given the limits of the federal authority under the Commerce Clause, the CWA is limited to impacts to "the waters of the United States." Plaintiffs also do not dispute that their Second Claim includes only spills that did not enter "waters."[3] The only logical and incontrovertible conclusion

---

[3]    Plaintiffs imply that CCH's Motion to Dismiss only seeks to dismiss the Honouliuli spills at issue under their May 20, 2008 Motion for Partial Summary Judgment ("MPSJ"), as narrowed by their June 23, 2008 Opposition. See Opp. at 7. Although plaintiffs' MPSJ (as it pertains to the Second Claim) is based only on the "overflow" prohibition of the Honouliuli NPDES Permit, plaintiffs' Second Claim is also based on Standard Permit Condition ¶ 9 of the Sand Island, Kailua, and Waiʻanae NPDES Permits. Accordingly, CCH's Motion to Dismiss is more broad than the MPSJ, and seeks to dismiss *all* spills under the Second Claim,

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

2

derived from these facts is that this Court lacks jurisdiction under the CWA to enforce the allegations under the Second Claim, which all parties agree are limited to spills that do not impact "waters." Plaintiffs, however, ignore this threshold jurisdictional issue, and instead summarily assert that "*all* [existing] permit conditions are enforceable under CWA § 505." Opp. at 11. Plaintiffs' theory, which is not supported by any relevant authority in light of the Supreme Court's clarification of the limited scope of the CWA in Rapanos and SWANCC, posits that a claimant under the CWA can get around the limitations of Rapanos and SWANCC by *enforcing under the permit* spills that are *unenforceable under the CWA*.[4]

       In analogous situations, courts have confirmed that the government cannot create requirements that are beyond the scope of the Act. In American Iron and Steel Institute v. EPA, 115 F.3d 979 (D.C. Cir. 1997), for example, EPA issued a guidance procedure seeking to regulate not just pollutant levels in a wastestream that discharged directly into navigable waters (which the court found

---

regardless of whether such spills are alleged to be in violation of the Honouliuli, Sand Island, Kailua, or Waiʻanae Permits. See CCH's Motion at 5-6.

[4] As described below, CCH does not specifically address in its Motion the issue of whether EPA has the authority to issue *permit conditions* that may not impact "waters" in light of Rapanos and SWANCC, as the only issue here is whether this Court has jurisdiction over *spills* that do not impact "waters."

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM
3

was within EPA's authority), but also sought to regulate pollutant levels in the facility's internal, non-navigable waste stream (which the court found was outside EPA's authority). 115 F.3d at 996. The D.C. Circuit vacated the contested procedure insofar as it imposed requirements that exceeded the scope of the CWA (id.), finding that "[b]y imposing restrictions upon pollutants that are discharged from internal plant sources into internal [non-navigable] plant streams, the agency has . . . exceeded its clearly delimited statutory authority."[5] Id. at 996.

---

[5]  In support of its proposition that the Court can enforce any and all permit terms, despite the limits of the CWA, plaintiffs cite irrelevant caselaw. See Opp. at 10-11. Collectively, these cases are unavailing because (1) they all pre-date SWANCC and Rapanos, which have clarified the reach of the CWA, (2) they did not involve plaintiffs who were trying to enforce permit conditions that were otherwise unenforceable under the CWA, and (3) they did not involve violations regarding discharges to unequivocally non-navigable waters. Judge Ezra in Save our Bays and Beaches v. CCH, 904 F. Supp. 1098, 1115-16 (D. Haw. 1994) held that Ninth Circuit precedent did not dictate that the *only* permit enforcement actions citizens may bring are for effluent limitations. The court in Northwest Envtl. Advocates v. Portland, 56 F.3d 979, 987 (9th Cir. 1995), *rehearing en banc denied*, 74 F.3d 945, *cert. denied*, 518 U.S. 1018 (1996) did not grapple with permit conditions regulating discharges to unequivocally non-navigable waters, and merely held that citizens can enforce state water quality standards. Plaintiffs in Conn. Fund for the Env't v. Raymark Indus., Inc., 631 F. Supp. 1283, 1285 (D. Conn. 1986) did not challenge the court's subject matter jurisdiction. At issue in Conn. Fund were discharges that (1) "may" have reached navigable waters (as opposed to here, where the parties agree they do not reach navigable waters) and (2) may have "settled out" and neutralized each other before reaching navigable waters, a technological determination by the court Congress did not intend (as opposed to here, where there are no such technical quandaries). Finally, the issue in Locust Lane v. Swatara Township Auth., 636 F. Supp. 534, 538-39 (M.D. Pa. 1986) involved defendant's argument that compliance with the construction schedule of its NPDES permit was not an enforceable "condition" under 33 U.S.C.

Because the Court's jurisdiction is defined by the scope the CWA, recently clarified by the Supreme Court to be limited to impacts to "the waters of the United States" -- and not by EPA's permit decisions -- plaintiffs' claim that all permit terms are enforceable under the CWA is irrelevant to the threshold jurisdictional issue raised in CCH's Motion. Accordingly, the Second Claim must be dismissed for the reasons set forth in CCH's Motion.

### B. CCH Is Not Seeking To Amend The Permit Terms But Rather Is Challenging The Court's Jurisdiction Over Spills That Do Not Reach "Waters"

Plaintiffs claim that CCH's Motion to Dismiss is an "attack on EPA and DOH's permit decisions"[6] (Opp. at 8) and an attempt to "amend" the permits without exhausting administrative remedies and/or filing a timely appeal (id. at 10), and therefore CCH "may not now seek judicial amendment to its NPDES permits as written" (id.). As an initial matter, CCH is not seeking to nullify any

---

§ 1365(f).

[6] Plaintiffs' reference to the State of Hawaii Department of Health ("DOH") is a red herring. See also Opp. at 7 ("CCH argues that EPA *and DOH* may not include NPDES permit conditions" that do not impact "waters") (emphasis added). CCH's Motion is based entirely on the limits of federal authority under the CWA. DOH, unlike Congress and EPA, is not limited by the Commerce Clause and its authority is presumably more broad than "waters of the United States." CCH, however, has no opinion at this time regarding the extent DOH's authority to issue and/or enforce permit terms that do not impact "waters" and such question is entirety irrelevant to CCH's Motion to Dismiss.

condition in the permits.[7] The assertion that CCH is "in effect" arguing that EPA does not have the authority to issue permit conditions (like Honouliuli Permit Condition B.7) "that categorically prohibit the spill of raw sewage from sewage collection systems" is a red herring. Opp. at 7. The issue raised in CCH's Motion is not the permit term *per se*, but how plaintiffs are *using* the permit term to enforce ground-only spills that the Supreme Court has made clear are unenforceable under the CWA.[8] Thus, the issue is not the validity of the underlying permit terms, but simply whether this Court has jurisdiction over a claim brought solely under the CWA that is based only upon spills that do not impact "waters of the United States." See Save Our Bays, 904 F. Supp. at 1114-15 (Judge Ezra dismissed citizens' enforcement claims for lack of standing without reaching issue of permit's validity).

In their attempt to change the subject from the jurisdictional issue raised in CCH's Motion to whether a challenge to a permit term is timely, *plaintiffs*

---

[7] Accordingly, plaintiffs' reliance on Sierra Club v. UNOCAL, 813 F.2d 1480 (9th Cir. 1987) and PIRG of New Jersey v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3d Cir. 1990) is completely unavailing.

[8] Further, and tellingly, even plaintiffs do not assert that EPA has the authority to issue permit terms unrelated to impact to "waters," stating only that the proposition that EPA does not have the authority to issue permit conditions "that categorically prohibit the spill of raw sewage from sewage collection systems" is "doubtful at best." Opp. at 7.

*never once even attempt to establish that this Court has jurisdiction over the Second Claim.* "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause . . . The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (rejecting the practice of certain circuits, including the Ninth Circuit, of assuming jurisdiction for the purpose of deciding a case's merits) (internal quotes and citations omitted). Plaintiffs' implication that CCH's Motion is "belated" (see Opp. at 5, 10) is therefore clearly wrong as it well-established that a defendant may seek to challenge the threshold issue of the court's subject matter jurisdiction at any time. See, e.g., Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

Furthermore, even if CCH's Motion was "in effect" challenging a permit term, it still would be timely. The legal bases for CCH's Motion -- Rapanos (2006) and SWANCC (2001) -- were issued about 10 years after the Honouliuli Permit became effective on or about June 6, 1991 and about 3 years after the Sand Island Permit was issued on or about November 2, 1998. Jodene Isaacs Declaration in Support of Pls.' MPSJ ("Isaacs Decl.," Docket # 178-3, 178-4),

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM
7

Exhs. 1 and 2. Thus, CCH could not challenge the permit terms based on the Supreme Court's recent decisions in Rapanos and SWANCC because at the time they were issued there was no "'apparent legal deficiency' in the Permits of which defendant should have been aware." Save Our Bays, 904 F. Supp. at 1114.

Finally, CCH was diligent in raising this argument at the first available opportunity. In its initial Motion to Dismiss Plaintiffs' First, Second, Ninth, Eleventh, and Twelfth Claims for Relief, filed on October 8, 2004, CCH sought to dismiss the Second Claim based on the Court's then-recent decision in SWANCC. Docket # 19 at 17-21. Presumably because the Court dismissed the First and Second Claims based on *res judicata*, it did not address this ground for dismissal in its September 30, 2005 Order. See Docket # 100.[9]

Because CCH is not seeking to amend any permit term and is rather challenging this Court's jurisdiction over spills that do not impact "the waters of the United States," plaintiffs' Opposition is without merit and the Second Claim should be dismissed for the reasons set forth in CCH's Motion.

---

[9] Plaintiffs assert that the permit conditions at issue are common operational restrictions. Opp. at 9. Even if the case, this is just another red herring. As stated above, the point of CCH's Motion is not to challenge the permit terms but rather the Court's jurisdiction over spills that are not enforceable under the CWA. Further, plaintiffs' Second Claim is not based on alleged operation and maintenance failure, it is based entirely on spills.

### III. PLAINTIFFS LARGELY IGNORE CCH'S MOTION TO DISMISS THE SECOND CLAIM UNDER RULE 12(b)(6)

As noted above, plaintiffs imply CCH's Motion to Dismiss only seeks to dismiss the spills at issue under their MPSJ. See Opp. at 7. On the contrary, CCH's Motion sought to dismiss the Second Claim (1) in its entirety for lack of subject matter jurisdiction (see Motion at 7-25) and (2) in part under Rule 12(b)(6), to the extent the Second Claim is based on implied permit conditions, spills at the Honouliuli WWTP, and spills to locations that EPA does not regulate in light of the Ninth Circuit's decision in San Francisco Baykeeper v. Cargill Salt Division, 481 F.3d 700 (9th Cir. 2006) (see Motion at 25-30). Although these categories of alleged violations may not be at issue in the MPSJ, they are still included under plaintiffs' Second Claim and are subject to dismissal *as a matter of law*.

#### A. Implied Permit Conditions

Plaintiffs fail to oppose CCH's argument that plaintiffs cannot base their Second Claim on implied permit conditions. Motion at 26-27. Having conceded they failed to state a claim with regard to those WWTPs (Sand Island, Kailua, and Waiʻanae), plaintiffs' Second Claim as to those WWTPs must be dismissed. See Boone v. Carlsbad Cmty. Church, No. CV-0634, 2008 U.S. Dist. LEXIS 44675, *23-25 (S.D. Cal. June 6, 2008) (granting dismissal where plaintiff failed to address defendants' arguments).

B.  Honouliuli WWTP Spills

Although plaintiffs withdrew 58 violations regarding the Honouliuli WWTP as part of their current MPSJ, these allegations presumably remain part of their Second Claim and are therefore subject to dismissal.  See Opp. at 8 n. 4.  Without citing any authority, and contrary to the plain language of the Permit, plaintiffs baldly claim that the Honouliuli WWTP spills are violations of Honouliuli Standard Provision B.7 because the WWTP is part of the transport system.  Id.  Although plaintiffs attempt to blur the distinction between "collection" and "treatment" systems, the Permit clearly recognizes the distinction.  For example, compare Standard Provision ¶ B.1 (prohibition on introducing pollutants "to the treatment system") with Standard Provision ¶ B.5 (prohibition on introducing pollutants "into the collection, treatment, *or* disposal system") (emphasis added).[10]  The Honouliuli Permit should be interpreted according to its plain language.  United States v. Apfelbaum, 445 U.S. 115, 121 (1980).  Accordingly, CCH requests the Court dismiss allegations based on Honouliuli WWTP spills as a matter of law.

---

[10]  The Honouliuli Permit is attached to the Isaacs Decl. as Exh. 1.  Docket # 178-3.

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM
10

C. *Cargill*

Based on the Ninth Circuit's recent decision in San Francisco Baykeeper v. Cargill Salt Division, 481 F.3d 700 (9th Cir. 2006), CCH sought to dismiss Second Claim spills for which plaintiffs cannot -- as a matter of law -- demonstrate that EPA regulates the location of such spills.  Motion at 28-30. Because the Second Claim spills *by definition* do not enter locations regulated by EPA, they must be dismissed.  Furthermore, plaintiffs do not dispute this basis for dismissal in their Opposition, and dismissal is also warranted on this ground. Boone, 2008 U.S. Dist. LEXIS 44675, *23-25.

IV. CONCLUSION

For the reasons set forth above and in CCH's Motion to Dismiss, this Court lacks jurisdiction over plaintiffs' Second Claim; additionally, in several respects, plaintiffs fail to state a claim for which relief can be granted. Accordingly, the Second Claim must be dismissed with prejudice under Federal Rules 12(b)(1) and (b)(6).

DATED: Honolulu, Hawaii
June 26, 2008

Respectfully submitted,
CARRIE OKINAGA
Corporation Counsel

By: /s/Kathleen A. Kelly
Kathleen A. Kelly
Attorneys for Defendant
The City and County Of Honolulu

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

11