RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department Of Justice
ROBERT D. MULLANEY
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6491
Fax: (415) 744-6476
E-mail: Robert.Mullaney@usdoj.gov

R. JUSTIN SMITH
AMBER BLAHA
Law and Policy Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 4390
Ben Franklin Station
Washington, DC 20044-4390
Tel: (202) 514-9369
Fax: (202) 514-4231
E-mail: Amber.Blaha@usdoj.gov

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SIERRA CLUB HAWAI'I CHAPTER, ET AL., | ) ) ) ) ) ) ) ) ) ) ) ) | NO. CV 04-00463-DAE-BMK |
| Plaintiffs, | | |
| v. | | DECLARATION OF JOANN COLA IN SUPPORT OF UNITED STATES' AMICUS CURIAE BRIEF |
| CITY AND COUNTY OF HONOLULU, | | |
| Defendant. | | |

# DECLARATION OF JOANN COLA

I, JoAnn Cola, declare the following:

1.    I am an Environmental Engineer employed by the U.S. Environmental Protection Agency, Region 9 ("EPA Region 9") in San Francisco. I obtained a Bachelor of Science degree in Chemical Engineering from the University of California, Berkeley in 1988. Since 1989, I have been employed in EPA Region 9. From 1989 to 2001, I worked as a Remedial Project Manager in EPA Region 9's Superfund Program. In this job, I was involved in developing cleanup remedies for sites contaminated with hazardous waste. As part of this work, I directed contractors, and managed budgets and schedules for multi-million dollar and multi-year projects. Since 2001, I have worked in the Clean Water Act ("CWA") Compliance Office of EPA Region 9's Water Division. As part of this work, I have had responsibility for inspecting dischargers operating under National Pollutant Discharge Elimination System ("NPDES") permits pursuant to the CWA, providing technical support for CWA enforcement actions, and serving as project officer for several municipal wastewater and infrastructure grants.

2.    I submit this declaration in support of the United States' amicus curiae brief.

3.    Since 2001, I have been assigned to oversight of United States, et al., v. City and County of Honolulu, Civil No. 94-00765 DAE-KSC ("*CCH I*"), and to the matter now known as United States, et al., v. City and County of Honolulu, Civil No. 1:07-00235 DAE-KSC ("*CCH II*").

4.    As part of these responsibilities, I have familiarized myself with records of EPA's oversight of the 1995 Consent Decree in *CCH I*, addressing the City and County of Honolulu's ("CCH") compliance with the CWA. I have on numerous occasions inspected CCH's wastewater treatment and collection system infrastructure. I have participated in the development of several administrative and judicial enforcement actions involving CCH's wastewater system. I was also involved in the negotiations that led to the filing of the Stipulated Order in *CCH II*.

5.    Following the entry of the 1995 Consent Decree in *CCH I*, EPA

1

devoted substantial resources to overseeing CCH's compliance. This oversight included review of reports submitted by CCH, inspections of CCH's facilities, and correspondence addressing compliance issues associated with the 1995 Consent Decree.

6.      Most portions of wastewater collection systems are designed to transport the wastewater from residences, as well as commercial and industrial sources, by gravity to wastewater treatment plants. However, when wastewater reaches low points in the collection system, it needs to be pumped under pressure through force mains to a high point where it can again flow by gravity. Force mains are pipes that are designed to convey wastewater being pumped under pressure. The State of Hawaii Department of Health ("DOH") issued an Administrative Order to CCH in April 2004, requiring CCH to conduct a thorough assessment of the force mains in its wastewater collection system.

7.      In 2004 and 2005, EPA and DOH conducted a comprehensive review of CCH's wastewater collection system. This process included an extensive review of CCH, EPA, and DOH records associated with the collection system, interviews of CCH wastewater staff, and inspections of numerous components of CCH's wastewater collection system. I participated as a member of the review team and also oversaw the work of contractors retained by EPA to assist in conducting this review.

8.      Concurrently with this review, EPA and DOH evaluated the compliance status of the Sand Island Treatment Plant and the Honouliuli Treatment Plant, two major wastewater treatment facilities owned and operated by CCH.

9.      As a result of these efforts, EPA and DOH identified a number of deficiencies with CCH's collection system and wastewater treatment plants and communicated these concerns to CCH. Beginning in March 2006, EPA and DOH met with CCH to discuss compliance issues relating to CCH's collection system and treatment plants. The Sierra Club, Hawaii Chapter, Hawaii's Thousand Friends, and Our Children's Earth Foundation (collectively, "Sierra Club") attended a number of these settlement meetings among the parties.

10.    On March 24, 2006, the Beachwalk Force Main suffered a failure, resulting in CCH's discharge of approximately 48.7 millions gallons of raw sewage into the Ala Wai Canal, which flows into the Pacific Ocean. After this discharge, EPA and DOH conducted investigations into the causes and impacts of the event.

11.    EPA's 2004-05 review of CCH's compliance history had identified a significant number of compliance issues. However, after the March 2006 Beachwalk Force Main failure, EPA determined that it was appropriate to focus immediate attention on upgrades to CCH's most vulnerable force mains and the Beachwalk pump station.

12.    This shift in focus was communicated to CCH in April 2006 and eventually led to the negotiation of the Stipulated Order in *CCH II*.

13.    The Stipulated Order in *CCH II* will require construction of substantial wastewater infrastructure. CCH has informed EPA that it anticipates this work will cost approximately $300 million.

14.    In the Stipulated Order in *CCH II*, the parties stated their intention to negotiate in good faith a comprehensive remedy addressing all compliance issues associated with CCH's wastewater system. Stipulated Order at 2. The parties commenced negotiations on October 1, 2007, to deal with other compliance issues identified by the United States and the State of Hawaii. Both the United States and the State are currently engaged in settlement negotiations with CCH regarding alleged CWA violations and violations of the 1995 Consent Decree in *CCH I* involving CCH's collection system and wastewater treatment plants.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _10th_ day of July, 2008, at San Francisco, California.

JOANN COLA

3