CARRIE OKINAGA, 5958
Corporation Counsel
KATHLEEN A. KELLY, 6729
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii 96813
Telephone: (808) 768-5235
Facsimile: (808) 768-5105
Email: kkelly@honolulu.gov

BINGHAM McCUTCHEN LLP
JAMES J. DRAGNA (CA SBN 91492)
NANCY M. WILMS (CA SBN 111837)
BRYAN K. BROWN (CA SBN 192924)
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400
Facsimile: (213) 680-6499
Email: nancy.wilms@bingham.com

Attorneys for Defendant
City and County of Honolulu

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SIERRA CLUB, HAWAI'I CHAPTER; HAWAI'I'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | CIVIL NO. CV 04-00463 DAE-BMK<br><br>**CITY AND COUNTY OF HONOLULU'S OPPOSITION TO AMICUS CURIAE BRIEF OF THE UNITED STATES OF AMERICA; CERTIFICATE OF SERVICE**<br><br>Date: Hearing on CCH's Motion to Dismiss Held on June 30, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. David Alan Ezra |

A/72601738.2/2017866-0000309724

I.  INTRODUCTION

Amicus Environmental Protection Agency ("EPA") brings nothing new to the table. Rapanos v. United States, 547 U.S. 715 (2006) and Solid Waste Agency Of Northern Cook County v. United States Army Corps of Engineers, 531 U.S. 159 (2001) ("SWANCC"), confirmed the scope of the Clean Water Act ("CWA" or "the Act") is limited to impacts to "the waters of the United States." Without dispute, the discharges at issue do not impact the waters of the United States. Thus the CWA does not apply. Trying to get around this plain rule, EPA rehashes the arguments plaintiffs raised (wrongly claiming CCH is challenging the terms of its NPDES permits and mistakenly arguing that *any* permit term is enforceable under the CWA, even those clearly beyond the CWA's scope).

EPA cites Section 402 of the Act, which authorizes permit conditions the EPA deems appropriate to ensure CWA compliance. However, since ground spills are outside the CWA, by definition permit terms prohibiting such spills cannot be appropriate to achieve CWA compliance. Thus the EPA's argument was rejected by the Fifth Circuit, the only court to address this argument.

EPA also argues the Court has subject matter jurisdiction because the Second Claim asserts a federal question. However, there is no colorable federal claim because spills to the ground are clearly outside the CWA under Rapanos and SWANCC. Moreover, if the Court agrees with CCH and finds ground-only spills

CCH'S OPPOSITION TO AMICUS CURIAE BRIEF OF THE USA

1

are not enforceable under the CWA, EPA acknowledges plaintiffs have failed to state a claim. Whether for lack of jurisdiction or failure to state a claim, the Second Claim must be dismissed.

II. **EPA CANNOT MAKE ENFORCEABLE UNDER A PERMIT WHAT IS UNENFORCEABLE UNDER THE CWA**

CCH must obtain NDPES permits to discharge wastewater from its treatment plants into the *ocean* -- a water of the United States. EPA tries to seize on this fact to gain authority to prohibit *all* discharges from the *collection system* as a "condition" of those permits -- even discharges that do not enter "the waters of the United States" -- as a "condition" of the permits. See Amicus Curiae Brief of the United States ("Amicus") at 16-22. EPA asserts such conditions are authorized by CWA Section 402(a)(2), which allows it to prescribe "conditions for [NPDES] permits *to assure compliance with the requirements of paragraph (1)* of this subsection, including conditions on data and information collection, reporting, and such other requirements as he deems appropriate." 33 U.S.C. § 1342(a)(2) (emphasis added). EPA's argument is wrong on several counts.

First, the *permit conditions'* validity is not at issue here. As CCH plainly stated in its Reply (Docket # 195 at 5-8), CCH is not challenging its NPDES permit terms. EPA's authority to include broad permit conditions to implement the CWA's regulation of discharges into navigable waters is simply not

CCH'S OPPOSITION TO AMICUS CURIAE BRIEF OF THE USA

2

at issue here.[1] What CCH is challenging is the ability of plaintiffs to *enforce* these permit terms in a manner that exceeds the CWA's clearly defined scope.

Second, permit conditions -- to the extent they seek to regulate non-navigable water spills -- are clearly invalid. The statute authorizes only "conditions for [NPDES] permits *to assure compliance with the requirements of paragraph (1)* of this subsection. 33 U.S.C. § 1342(a)(2) (emphasis added). Paragraph (1) requires compliance with the CWA itself (or, if such compliance has not yet been attained, conditions necessary to carry out the CWA). See 33 U.S.C. § 1342(a)(1). Consequently, as EPA acknowledges, NPDES permit conditions must be "necessary to ensure compliance with limits on discharges to the waters of the United States." Amicus at 19.

EPA never explains how conditions limiting discharges that do *not* impact waters of the United States are "necessary to ensure compliance" with the Act, which is limited to such waters. They plainly are not. Thus, in Exxon v. Train, 554 F.2d 1310 (5th Cir. 1977), the Fifth Circuit held that EPA could *not* regulate outside the CWA (injection into wells) as a "condition" of an NPDES permit. There, EPA admitted that the CWA did not authorize it "to regulate

---

[1] Indeed, the regulations governing general NPDES permit terms (which discuss, *e.g.*, "bypasses" and "upsets" and include the duty to monitor, keep records, and operate and maintain, see 40 C.F.R. § 122.41) clearly show the NPDES permit program's focus is on impacts to *waters*.

subsurface disposal directly;" however, as here, EPA asserted that it could regulate such disposal as a "condition" of a NPDES permit required by the CWA: "when a person is disposing of waste both into surface waters and into deep wells, the Administrator may place conditions in the permit required for the surface discharge that limit or prohibit the subsurface disposal." 554 F.2d at 1319. The Fifth Circuit rejected the argument because the CWA granted EPA authority "only to control discharges into navigable waters." Id. at 1322; 1317-18. Moreover, Congress clearly had not intended the Act to regulate deep-well injection. Id. at 1322-29. Because deep-well injection fell outside the CWA, the Fifth Circuit "h[e]ld that the Administrator, *as an incident to his power under § 402(a) to issue permits authorizing the discharge of pollutants into surface waters, does not have the authority* to place conditions in such permits that control the disposal of wastes into deep wells." Id. at 1331 (emphasis added).

The same holds here. As set forth in CCH's Motion, Rapanos and SWANCC establish the CWA does not reach discharges that do not impact "the waters of the United States." All the parties agree the Second Claim spills, like the subsurface injection in Exxon, did not enter "the waters of the United States." Thus the Second Claim spills fall outside the CWA. Accordingly, Exxon

precludes EPA from regulating them by imposing conditions on NPDES permits.[2]

Third, EPA's proposal would nullify the limits on federal authority under the Act and make meaningless the Supreme Court's holding that its interpretation of "navigable waters" was necessary to avoid difficult questions regarding the CWA's constitutionality. SWANCC, 531 U.S. at 172-74. As the Supreme Court admonished, courts should reject administrative interpretations that raise serious constitutional questions absent a "clear indication that Congress intended that result." Id. at 172. Contrary to the Supreme Court's mandate, EPA asks that this Court grant through the back door the very same power that Congress denied through the front -- powers that impose serious constitutional problems. See id. at 172-73 (courts are to "assum[e] that Congress does *not* casually authorize administrative agencies to interpret a statute to push the limit of congressional authority") (emphasis added). There is nothing in the CWA approaching the "clear indication" from Congress that EPA is authorized to impose

---

[2]  Similarly, EPA misses the point in citing pre-Rapanos cases for the proposition that the Court has jurisdiction to enforce any effluent standards or limits in a NPDES permit. See Amicus at 20. See also Pls' Opposition at 11 ("all [existing] permit conditions are enforceable under CWA § 505")). As set forth in CCH's Reply, this theory posits that a claimant under the CWA can get around the limitations of Rapanos and SWANCC by *enforcing under the permit* ground-only spills that are *unenforceable under the CWA*. The government cannot create requirements beyond the scope of the Act. See Am. Iron and Steel Inst. v. EPA, 115 F.3d 979 (D.C. Cir. 1997); Exxon v. Train, 554 F.2d 1310 (5th Cir. 1977); CCH's Reply at 2-5.

potentially unconstitutional federal restrictions on discharges that all agree do not enter "the waters of the United States."

EPA's lack of authority to impose conditions beyond the scope of the CWA is underscored by its own cases. In Arkansas v. Oklahoma, 503 U.S. 91 (1992) (Amicus at 18-19), the narrow issue was whether EPA had the authority "to promulgate reasonable regulations requiring point sources in one State to comply with water quality standards in [other] States." 503 U.S. at 107. The Supreme Court held Section 402(a)(2) authorized the EPA to condition one state's permit on compliance with another state's water-quality laws because compliance with such state laws was both "wholly consistent" with the CWA's broad purpose and the CWA "expressly identifie[d]" achieving such standards as a "central objective" of the Act. Id. at 105-06. Thus, unlike spills to the ground, the CWA itself *requires* attainment of state water-quality standards. 503 U.S. at 103 & n.9.[3] In contrast, here EPA tries to *extend* its regulatory reach to matters the Supreme Court in

---

[3]  Similarly, in Montgomery Environmental Coalition v. Costle, 646 F.2d 568 (D.C. Cir. 1980) (Amicus at 19), the narrow issue was whether EPA had authority to impose permit conditions (a moratorium on sewer system hook-ups and a diversion to land treatment technique) on a wastewater treatment plant whose inflow periodically exceeded the plant's capacity, resulting in discharges of raw and partially-treated sewage to the Potomac river. 646 F.2d at 585. The conditions, because they reflected the "Administrator's power to impose further conditions in the permit that are *designed to assure compliance with those [CWA effluent] limitations*" that the plant routinely exceeded -- *i.e.*, spills into the Potomac River -- were within EPA's authority. See id. at 575, 588-89 (emphasis added).

CCH'S OPPOSITION TO AMICUS CURIAE BRIEF OF THE USA

6

Rapanos and SWANCC has made clear are *outside* the CWA. That it cannot do. See Exxon, *supra*. The Second Claim must be dismissed.

### III. PLAINTIFFS HAVE NOT BROUGHT A COLORABLE FEDERAL CLAIM

EPA incorrectly claims that this Court has subject matter jurisdiction over the Second Claim because it supposedly raises a federal question -- that spills to the ground violate NPDES permit terms and all permit terms are enforceable under the CWA. Amicus at 8-13. But to raise a federal question, a claim must be colorable. See Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n.10 (2006)[4]; United States v. Sarkisian, 197 F.3d 966, 983 (9th Cir. 1999) ("We conclude that [defendant] has not raised a colorable claim, and we lack jurisdiction to reach the merits"). Because they clearly fall outside the CWA as definitively construed by the Supreme Court, spills to the ground raise no colorable claim under the CWA.

Even if the jurisdictional bar were surmounted, EPA acknowledges that plaintiffs fail to state a claim if they cannot use the permit terms at issue to enforce spills to the ground. See Amicus at 11. As non-navigable water spills are not subject to federal regulation under the Act, plaintiffs have failed to state a

---

[4] "A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 ... must be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" (overruled on unrelated statute of limitation grounds and internal citations omitted).

claim and their Second Claim must be dismissed with prejudice under Rule 12(b)(6). See San Francisco Baykeeper v. Cargill Salt Division, 481 F.3d 700 (9th Cir. 2006); CCH's Motion to Dismiss (Docket # 182) at 28-30, incorporated herein by reference.

## IV. CCH IS NOT CHALLENGING THE PERMIT'S TERMS

EPA argues CCH's Motion to Dismiss "can be interpreted" as a challenge to CCH's NPDES permit terms because CCH "in effect" asks the Court to "rewrite the NPDES permits to provide that the operation and maintenance conditions address only spills to the waters of the United States." Amicus at 13-15. This is yet another red herring. As set forth in CCH's Reply, CCH is not seeking to challenge the permit terms, *nor is it asking the Court to interpret any term in the permits*. Rather, the issue raised in CCH's Motion is plaintiffs' improper attempt to use the permit terms to enforce ground-only spills that clearly are unenforceable under the CWA. CCH's Reply at 5-8.

## V. *SWANCC* AND *RAPANOS* CONTROL

EPA absurdly tries to distinguish Rapanos and SWANCC as addressing only whether a waterbody is covered by the CWA. Amicus at 17. Rapanos and SWANCC limit what may qualify as "the waters of the United States." A discharge that does *not* impact waters of the United States does not violate the CWA. Accordingly, EPA lacks authority to impose a condition barring

such a discharge. See § 1342(a)(2) (authorizing conditions only to "assure compliance with the requirements of paragraph (1)"); Exxon (no authority to regulate discharges outside CWA as condition of NPDES permit); Amicus at 19 (conditions must be "necessary to ensure compliance with limits on discharges to the waters of the United States"). Because the CWA does not regulate the Second Claim spills, plaintiffs state no colorable claim and the Court lacks jurisdiction.

VI.  APPLICABLE *RAPANOS* STANDARD IN NINTH CIRCUIT

CCH does not disagree with EPA's argument (Amicus at 22-30) that either Justice Scalia's plurality standard or Justice Kennedy's concurring standard in Rapanos may be used to establish which waters comprise "the waters of the United States" under the CWA in the Ninth Circuit. In fact, when evaluated under the more stringent plurality standard,[5] CCH's assertion that discharges to dry stream beds and storm drains are not actionable under the CWA (see CCH's Opp'n to Motion for Partial Summary Judgment ("Opp'n"), Docket # 191 at 29-33) is irrefutable.[6] According to the plurality's interpretation, "the waters of the United

---

[5]  "In sum, on its only plausible interpretation, the phrase 'the waters of the United States' includes only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams[,] . . . oceans, rivers, [and] lakes.'" Rapanos, 547 U.S. at 739 (Scalia, J., plurality).

[6]  CCH's Opp'n (at 27-33) discussed the spills' failure to meet Justice Kennedy's concurring significant nexus test.

States" does not "include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall." Rapanos, 547 U.S. at 739; see also id. at 736 n.7 ("ordinary usage does not treat typically dry beds as 'waters'). Discharges to storm drains are similarly not covered under the plurality's test.[7] Thus discharges to dry stream beds and storm drains do not fall within the CWA's scope.[8]

## VII. CONCLUSION

For the reasons stated herein and in CCH's Motion to Dismiss and Reply, plaintiffs' Second Claim should be dismissed with prejudice.

DATED: Honolulu, Hawaii
July 21, 2008

Respectfully submitted,
CARRIE OKINAGA
Corporation Counsel

By: /s/Kathleen A. Kelly
Kathleen A. Kelly
Attorneys for Defendant
The City and County Of Honolulu

---

[7] "In applying the definition ['the waters of the United States'] to . . . *storm sewers* and culverts . . . drain tiles . . . and dry arroyos in the middle of the desert, the Corps has stretched the term 'waters of the United States' beyond parody. The plain language of the statute simply does not authorize this 'Land Is Waters' approach to federal jurisdiction." Rapanos, 547 U.S. at 734 (Scalia, J., plurality) (emphasis added).

[8] Thus, plaintiffs' Motion for Summary Judgment of such spills must be denied. For an accounting of CCH's disputed discharges to dry stream beds and storm drains, see CCH's Exhibit C (Docket # 202) filed on July 14, 2008 (CCH's Chart of Disputed Spills Based On Plaintiffs' Reply Exhibit 5).