IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SIERRA CLUB, HAWAII CHAPTER, HAWAII'S THOUSAND FRIENDS; and OUR CHILDREN'S EARTH FOUNDATION,<br><br>      Plaintiffs,<br><br>  vs.<br><br>CITY AND COUNTY OF HONOLULU, and FRANK DOYLE, DIRECTOR OF THE DEPARTMENT OF ENVIRONMENTAL SERVICES, in his official capacity,<br><br>      Defendants. | CV. NO. 04-00463 DAE-BMK |

ORDER DENYING PLAINTIFFS' MOTION
FOR PERMANENT INJUNCTIVE RELIEF

On November 17, 2008, the Court heard Plaintiffs' Motion. William Tam, Esq., appeared at the hearing on behalf of Sierra Club, Hawai`i Chapter, Hawai`i's Thousand Friends and Our Children's Earth Foundation (collectively, "Plaintiffs"), Christopher Sproul, Esq., appeared at the hearing via telephone on behalf of Plaintiffs; Kathleen A. Kelly, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendant City and County of Honolulu ("CCH"). After

reviewing Plaintiffs' motion and the supporting and opposing memoranda, the Court DENIES Plaintiffs' Motion.

## BACKGROUND

Plaintiffs filed the instant lawsuit against CCH in July 2004, pursuant to the citizen suit provision of the Clean Water Act ("CWA") for violations of the CWA due to sewage spills from the collection system, the wastewater treatment plants ("WWTPs"), and alleged violations of the Sand Island and Honouliuli National Pollution Discharge Elimination System ("NPDES") permits. The NPDES permits require CCH to submit Monthly Wastestream Diversion Reports ("WDRs"), which are monthly summaries of sewage spills.

On May 15, 1995, this Court issued a Consent Decree in a related case, Civ. No. 94-00765 DAE-KSC (the "1995 Consent Decree"). The 1995 Consent Decree requires CCH to submit Quarterly Reports to the United States Environmental Protection Agency ("EPA") and the State of Hawai`i Department of Health ("DOH") regarding any noncompliance with the requirements of the 1995 Consent Decree. The Quarterly Reports must also include all sewage spills and all WWTP emergency bypasses caused by infiltration and inflow in the previous quarter. The Consent Decree requires that the reports be signed and certified as accurate under penalty of law. CCH filed Quarterly Reports through December 31,

2005, but did not file reports for the entire year of 2006 or the first two quarters of 2007.  CCH has since filed Quarterly Reports.

On May 8, 2007, EPA and DOH filed a second related suit against CCH asserting a single CWA claim for injunctive relief for the Beachwalk Spill. Concurrently with the filing of the complaint, EPA and DOH lodged a Stipulated Order purporting to resolve the one claim.  This Court entered the Stipulated Order on October 10, 2007, after a hearing (the "2007 Stipulated Order") .

Plaintiffs[1] have made a number of requests for information pursuant to the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA") and Hawaii's Uniform Information Practices Act, Hawaii Revised Statutes Chapter 92F ("UIPA"), and discovery requests, in the past year and a half in order to obtain information related to this case and related to possible CWA violations.  For example, on September 17, 2007, Plaintiffs made a FOIA request to the EPA for copies of Discharge Monitoring Reports ("DMR") for the Sand Island WWTP from April 1, 2007 onward and sewage spill reports from May 1, 2004 onward.  After initially denying the request and after an appeal, the EPA granted the appeal in part and released 130 documents on March 7, 2008.  However, no DMRs were released, and there were

---

[1] This Court refers to Plaintiffs making the requests, however, requests were made by an attorney representing Plaintiffs, and not each request was made by each Plaintiff.

many gaps in the Quarterly Reports and monthly sewage spill reports. Plaintiffs asked whether the missing records were being withheld, were lost, or were never prepared. Plaintiffs did not receive a response.

On March 31, 2008, Plaintiffs made a UIPA request to DOH for Quarterly Reports. Plaintiffs were informed that CCH never submitted Quarterly Reports for the first quarter of 2006 through the third quarter of 2007 to either DOH or the EPA. CCH has since admitted that it did not file Quarterly Reports with the DOH or EPA for the entire year of 2006 and the first two quarters of 2007.

On April 11, 2008, Plaintiffs made discovery requests to CCH for all Quarterly Reports from January 2006 to present, and WDRs. Initially, CCH refused to provide the reports, making many boilerplate objections and asserting that the reports were not relevant. On September 15, 2008, CCH began to produce responsive documents.

On April 10, 2008, Plaintiffs made a UIPA request to CCH for the Quarterly Reports and WDRs from January 1, 2006 onward. CCH responded that such documents could only be obtained via discovery in this case. (Pls.' Mot. at Ex. 4.) Plaintiffs sent another request for production of documents to CCH on April 14, 2008, seeking copies of all reports CCH provides to the EPA and DOH regarding sewage spills, overflows, or bypasses from January 1, 2006 to the

present. After objecting, CCH eventually provided 95 documents. However, the production did not include documents for approximately 226 sewage spills, overflows or bypass incidents that CCH had reported to DOH. CCH has since provided additional responsive documents.

On May 28, 2008, Plaintiffs sent their fourth request for answers to interrogatories and document production regarding CCH's compliance with reporting requirements pursuant to the 1995 Consent Decree and NPDES permits, such as whether CCH had submitted Quarterly Reports or Monthly WDRs. On June 30, 2008, CCH refused to provide responsive documents or answers asserting that the information was unrelated or beyond the scope of Plaintiffs' claims in the instant suit.

On May 13, 2008, Plaintiffs made a UIPA request to DOH for 30 WDRs for Sand Island and Honouliuli WWTPs for certain months between January 2006 and April 2008. DOH provided Plaintiffs with all but seven of the reports by July 2008. DOH stated that their records indicated having received the other seven reports, but DOH was unable to locate them.

On July 10, 2008, Plaintiffs made another UIPA request to DOH for Sand Island WWTP DMRs for the period of April 2007 through May 2008, and yet another request was made on August 27, 2008, for June and July 2008 DMRs. The

DMRs provided allegedly indicate that CCH reported enterocccus levels higher than the amount permitted by the Sand Island NPDES permit for eight of 16 months.

On September 24, 2008, Plaintiffs filed a motion to compel CCH to comply with their discovery requests.[2] After a hearing, on October 29, 2008, Magistrate Judge Barry Kurren ordered the parties to have one more meet and confer within two weeks to reach an agreement with respect to discovery. Where an agreement could not be reached, the parties were to notify the court and submit briefing. The parties were able to resolve some issues but informed the Court that they would be submitting additional briefing.

Last year, on October 30, 2007, this Court granted Plaintiffs' motion for summary judgment on their third and fourth claims finding that CCH was liable for discharging sewage from the Sand Island WWTP that contained elevated levels of the bacterium enterococcus and pesticides chlordane and dieldrin, among other violations. On August 18, 2008, this Court granted in part and denied in part Plaintiffs' motion for summary judgment on their first and second claims. This Court found CCH liable for a total of 149 violations of the CWA under the first

---

[2] Plaintiffs clarify that the current motion seeks only prospective relief, and therefore, there is no overlap between the issues raised in the motion to compel discovery responses and the instant motion.

claim, and 148 violations of the Permit under the second claim.  In granting Plaintiffs' motions, this Court relied upon DMRs and other documents submitted by Plaintiffs that they had received pursuant to requests made under FOIA and UIPA.

On September 22, 2008, Plaintiffs filed the instant motion for permanent injunctive relief (Doc. # 214), requesting that this Court require CCH to concurrently provide them with the following reports and documents:

    1.    Quarterly reports required pursuant to the 1995 Consent Decree;

    2.    Monthly Wastestream Diversion Reports ("WDR") and Discharge Monitoring Reports ("DMR") that CCH is required to submit to EPA pursuant to the NPDES Permits for the Sand Island and Honoliuli WWTPs;

    3.    Annual reports required pursuant to the 2007 Stipulated Order; and

    4.    Individual spill reports required pursuant to Hawaii Administrative Rule sections 11-62-06(g), (h), and Appendix C thereto.

CCH filed its opposition on October 30, 2008.  (Doc. # 225.) Plaintiffs filed a reply on November 6, 2008.  (Doc. # 226.)

STANDARD OF REVIEW

> An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable. The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.

Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). "In issuing an injunction, the court must balance the equities between the parties and give due regard to the public interest." High Sierra Hikers Ass'n v. Blackwell, 390 F.3d 630, 642 (9th Cir. 2004). "[A] court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Although particular regard should be given to the public interest[.]" Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987).

DISCUSSION

I. Success on the Merits

Citizen suits are to be regarded as an integral part of the overall enforcement scheme of the CWA. Save Our Bays and Beaches v. City and County of Honolulu, 904 F. Supp. 1098, 1125 (D. Haw. 1994). "Citizen suits are a proven enforcement tool. They operate as Congress intended to both spur and supplement to government actions. They have deterred violators and achieved significant

compliance gains. The Ninth Circuit has recognized that Congress intended citizen suits to be handled liberally, because they perform an important public function." Id. at 1126 (citations and internal quotation marks omitted). "[T]he CWA citizen suit provision allows a district court to 'order the relief it considers necessary to secure prompt compliance with the Act.'" Ala. Ctr. for the Env't v. Reilly, 796 F. Supp. 1374, 1376 (W.D. Wash. 1992) (citing Weinberger, 456 U.S. at 320).

       The CWA requires that reports submitted to the EPA be made available to the public. 33 U.S.C.A. § 1318. In addition, FOIA requires that federal agencies make available for public inspection upon request documents and information, unless the information requested falls within a certain exception. See 5 U.S.C. § 522. UIPA likewise "imposes 'affirmative agency disclosure responsibilities' and establishes the general rule that 'all government records are open to public inspection unless access is restricted or closed by law.'" State of Hawai'i Org. of Police Officers (SHOPO) v. Soc'y of Prof'l Journalists-Univ. of Haw. Chapter, 927 P.2d 386, 391 (Haw. 1996) (quoting Haw. Rev. Stat. § 92F-11 (Supp. 1992) (brackets omitted). Hawaii Administrative rules regarding wastewater provide that "[t]he following information is available for public inspection: . . . notices, sludge and effluent data, and reports required to be submitted under this chapter. This includes information submitted on the forms

themselves and any attachments used to supply information required by the forms." H.A.R. § 11-62-09(a)(2).

Plaintiffs cite a number of cases which found that FOIA was violated where the federal agency failed to provide responsive documents in a timely fashion and that such failure resulted in an injury. (Mot. at 18.) These cases are inapplicable here because the EPA is not a defendant in this case and therefore, Plaintiffs' FOIA requests made to a federal agency and the response, whether complete or timely, is irrelevant as Plaintiffs are not seeking to enjoin the EPA. In addition, UIPA does not have the same timeliness requirements as FOIA. See SHOPO, 927 P.2d at 400 (unlike FOIA "and the Uniform Information Practices Code (UIPC), both of which the legislature considered when drafting the UIPA, the UIPA does not impose deadlines on an agency's response to a records request or specify the potential responses that are subject to judicial review."). This Court notes that the FOIA request to the EPA is only relevant to establish that despite the fact that CCH failed to file required Quarterly Reports between January 1, 2006 and the third quarter of 2007, EPA did not take court action with respect to that failure. For the same reasons, CCH's UIPA requests to the DOH are irrelevant.

As CCH is the sole defendant, only Plaintiffs' UIPA request to CCH is at issue. Pursuant to UIPA, once Plaintiffs requested the documents, CCH[3] was under an affirmative responsibility "to make government records available for inspection and copying during regular business hours[.]" SHOPO, 927 P.2d at 401 (citing Haw. Rev. Stat. § 92F-11(b) (1993)).

Here, Plaintiffs made a UIPA request to CCH. CCH's response was that because there was ongoing litigation between the parties on the same issues, the information sought was available only through discovery and Plaintiffs' request was viewed as a means of circumventing the discovery rules. This response misreads the law. The fact that there happens to be an ongoing lawsuit by a party against an agency, who also makes a UIPA request to that same agency, in no way eviscerates that agency's duty to comply with UIPA. Indeed, CCH cites to no law supporting its reasons for not responding to the UIPA request or in support of its theory.

---

[3] Under UIPA, the term "Agency" "means any unit of government in this State, any county, or any combination of counties; department; institution; board; commission; district; council; bureau; office; governing authority; other instrumentality of state or county government; or corporation or other establishment owned, operated, or managed by or on behalf of this State or any county, but does not include the nonadministrative functions of the courts of this State." Haw. Rev. Stat. § 92F-3. Therefore, CCH is covered by UIPA.

Moreover, CCH's response to the instant motion that "[h]ad plaintiffs made a simple informal request to CCH to provide the requested reports, CCH would have agreed to do so," is belied by the record. (Opp'n at 1.) CCH made much more than a simple informal request. CCH made an official UIPA request, in addition to many discovery requests, and CCH refused to provide all of the responsive documents in a timely fashion.

Finally, the fact that CCH provided some documents through discovery does not remedy its failure to respond to the UIPA request. Indeed, pursuant to UIPA, "[t]he agency has the burden of proof to establish justification for nondisclosure." Haw. Rev. Stat. § 92F-15(c). CCH has not established through evidence by bates stamp number that the documents produced through discovery are the only documents responsive to the UIPA request and that there are no other documents responsive to the UIPA request that have not been produced.

For these reasons, Plaintiffs have succeeded in demonstrating success on the merits that CCH violated UIPA.

II.     Irreparable Harm

Plaintiffs assert that an injunction is necessary to prevent CCH, EPA and DOH from further violating Plaintiffs' rights under FOIA and UIPA, and is essential for Plaintiffs to carry out their oversight function in monitoring and

alerting the public and the courts of CWA violations. Plaintiffs contend that because of CCH's past and ongoing CWA violations and unpermitted spills, and DOH and EPA's failure to enforce compliance, irreparable environmental injury is likely to occur via future spills.

This Court has found CCH liable for numerous substantive CWA violations in this case. In addition, this Court has already recognized that the EPA and DOH have not attempted to enforce the 1995 Consent Decree through litigation. For example, CCH failed to file Quarterly Reports for the period between January 1, 2006, and the third quarter of 2007, as required by the 1995 Consent Decree, yet the EPA and DOH have not filed a motion to compel such requirement or for breach of the 1995 Consent Decree.

This history of this case and the related cases, however, does not constitute irreparable harm such that this Court can issue the requested permanent injunction. The link between CCH's failure to comply with UIPA and the likelihood of a CWA violation is too attenuated. Moreover, Plaintiffs can obtain the information they seek through filing a motion to compel disclosure pursuant to UIPA, and/or making other UIPA requests directly to CCH.

To be clear, however, Plaintiffs cannot use UIPA as means to require CCH to create a report or to enforce any failure to prepare a report that is required

by the 1995 Consent Decree or NPDES permits.  The Hawaii Supreme Court has made it clear that only those documents that are within the agency's control must be produced in response to a UIPA request.  UIPA does not impose a duty to create documents.  See SHOPO, 927 P.2d at 401  ("the UIPA requires agencies to provide access to those records that are actually maintained, but nowhere imposes an affirmative obligation to maintain records").  Although not required by UIPA to create reports, documents upon which a report would have been based, had one been made, may be responsive to Plaintiffs' UIPA request, and if so, would be required to be produced.  See Nuuanu Valley Ass'n v. City and County of Honolulu, 194 P.3d 531, __[4] (Haw. 2008) ("A '[g]overnment record' means information maintained by an agency in written, auditory, visual, electronic, or other physical form.") (quoting HRS § 92F-3 (1993)).

        Accordingly, Plaintiffs cannot establish that they or the environment will suffer irreparable harm if Plaintiffs are not given copies of various reports as the reports are made because Plaintiffs can obtain such information through UIPA requests to CCH.

---

[4] Page cite unavailable.

## CONCLUSION

For the reasons stated above, this Court DENIES Plaintiffs' motion.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 18, 2008.



_____
David Alan Ezra
United States District Judge

<u>Sierra Club, Hawaii Chapter, et al. v. City and County of Honolulu et al.</u>, CV. NO. 04-00463 DAE-BMK;  ORDER DENYING PLAINTIFFS' MOTION FOR PERMANENT INJUNCTIVE RELIEF